

Page 1

256 F.R.D. 492
**(Cite as: 256 F.R.D. 492)**



United States District Court,
E.D. Pennsylvania.
Richard CHAKEJIAN, Plaintiff,
v.
EQUIFAX INFORMATION SERVICES LLC, Defendant.
**No. 07-cv-2211.**

March 25, 2009.

**Background:** Consumer brought putative class action against credit reporting agency, alleging that agency's reinvestigation letter, following consumer's protest of inclusion of bankruptcy filing in credit report, had featured misstatements and misrepresentations in violation of Fair Credit Reporting Act (FCRA). Consumer moved to certify class action.

**Holdings:** The District Court, Anita B. Brody, J., held that:
(1) numerosity, commonality and typicality requirements for class action certification were satisfied;
(2) consumer's lack of knowledge about suit did not preclude his satisfying adequacy requirement for class action certification;
(3) consumer's choosing to pursue statutory but not compensatory damages did not preclude his satisfying adequacy requirement;
(4) predominance requirement for class action certification was satisfied; and
(5) superiority requirement for class action certification also was satisfied.

Motion granted.

West Headnotes

**[1] Federal Civil Procedure 170A ⚷182.5**

170A Federal Civil Procedure
    170AII Parties
        170AII(D) Class Actions
            170AII(D)3 Particular Classes Represented
                170Ak182.5 k. Consumers, Purchasers, Borrowers, and Debtors. Most Cited Cases
Numerosity requirement for class action certification was satisfied, in consumer's Fair Credit Reporting Act (FCRA) suit against credit reporting agency alleging misstatements in reinvestigation letter, given large number of consumers who met proposed class definition's requirement of having received "substantially similar" letter; however, given vagueness of "substantially similar" criterion, modification of definition was appropriate to narrow class to only those letters that, like named plaintiff's, involved public records disputes. Fair Credit Reporting Act, § 611, 15 U.S.C.A. § 1681i; Fed.Rules Civ.Proc.Rule 23(a)(1), 28 U.S.C.A.

**[2] Federal Civil Procedure 170A ⚷182.5**

170A Federal Civil Procedure
    170AII Parties
        170AII(D) Class Actions
            170AII(D)3 Particular Classes Represented
                170Ak182.5 k. Consumers, Purchasers, Borrowers, and Debtors. Most Cited Cases
Commonality and typicality requirements for class action certification were satisfied, in consumer's Fair Credit Reporting Act (FCRA) suit against credit reporting agency alleging misstatements in reinvestigation letter sent in response to dispute over public record information in credit report; factual and legal basis of claim was common to all proposed class members, i.e., alleged misstatements in standard reinvestigation letter for public-record disputes, and named plaintiff's and class members' claims arose from same course of conduct and were based on same theory of liability. Fair Credit Reporting Act, § 611, 15 U.S.C.A. § 1681i; Fed.Rules Civ.Proc.Rule 23(a)(2-3), 28 U.S.C.A.

**[3] Federal Civil Procedure 170A ⚷164**

170A Federal Civil Procedure
    170AII Parties
        170AII(D) Class Actions
            170AII(D)1 In General
                170Ak164 k. Representation of Class; Typicality. Most Cited Cases
Adequacy requirement for class action certification depends on two factors: (1) plaintiff's attorney must be qualified, experienced, and generally able to con-

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

256 F.R.D. 492
**(Cite as: 256 F.R.D. 492)**

duct proposed litigation, and (2) plaintiff must not have interests antagonistic to those of class members. Fed.Rules Civ.Proc.Rule 23(a)(4), 28 U.S.C.A.

**[4]** Federal Civil Procedure 170A ⚿182.5

170A Federal Civil Procedure
    170AII Parties
        170AII(D) Class Actions
            170AII(D)3 Particular Classes Represented
                170Ak182.5 k. Consumers, Purchasers, Borrowers, and Debtors. Most Cited Cases
Consumer's lack of knowledge about his putative class action, a Fair Credit Reporting Act (FCRA) suit against credit reporting agency alleging misstatements in reinvestigation letter, did not preclude consumer's satisfying adequacy requirement for class action certification, especially given his stated understanding that he had responsibility to look out for class members' best interests. Fair Credit Reporting Act, § 611, 15 U.S.C.A. § 1681i; Fed.Rules Civ.Proc.Rule 23(a)(4), 28 U.S.C.A.

**[5]** Federal Civil Procedure 170A ⚿182.5

170A Federal Civil Procedure
    170AII Parties
        170AII(D) Class Actions
            170AII(D)3 Particular Classes Represented
                170Ak182.5 k. Consumers, Purchasers, Borrowers, and Debtors. Most Cited Cases
Consumer's choosing to pursue statutory but not compensatory damages, in his Fair Credit Reporting Act (FCRA) suit against credit reporting agency alleging misstatements in reinvestigation letter, did not create conflict of interest precluding consumer's satisfying adequacy requirement for class action certification; requiring pursuit of actual damages would cause individual damages issues to quickly overwhelm common questions, and class members with significant actual damages could opt out of class action. Fair Credit Reporting Act, §§ 611, 616, 15 U.S.C.A. §§ 1681i, 1681n; Fed.Rules Civ.Proc.Rule 23(a)(4), 28 U.S.C.A.

**[6]** Federal Civil Procedure 170A ⚿182.5

170A Federal Civil Procedure
    170AII Parties
        170AII(D) Class Actions
            170AII(D)3 Particular Classes Represented
                170Ak182.5 k. Consumers, Purchasers, Borrowers, and Debtors. Most Cited Cases
Predominance requirement for class action certification was satisfied in consumer's Fair Credit Reporting Act (FCRA) suit against credit reporting agency alleging misstatements in reinvestigation letter, contrary to agency's contention that seeking of statutory and punitive damages made individual issues predominant; punitive damages inquiry went to agency's state of mind in implementing its policies/procedures, not to consumer's particular interaction with agency, and amount of statutory damage award was unlikely to differ from consumer to consumer, especially given non-pursuit of actual damages. Fair Credit Reporting Act, § 611, 616, 15 U.S.C.A. §§ 1681i, 1681n; Fed.Rules Civ.Proc.Rule 23(b)(3), 28 U.S.C.A.

**[7]** Credit Reporting Agencies 108A ⚿4

108A Credit Reporting Agencies
    108Ak4 k. Actions by or Against Agency. Most Cited Cases
To prove willful noncompliance with Fair Credit Reporting Act (FCRA), so as to justify award of punitive damages, plaintiff must demonstrate that defendant knowingly and intentionally committed an act in conscious disregard for rights of others. Fair Credit Reporting Act, § 616, 15 U.S.C.A. § 1681n.

**[8]** Constitutional Law 92 ⚿978

92 Constitutional Law
    92VI Enforcement of Constitutional Provisions
        92VI(C) Determination of Constitutional Questions
            92VI(C)2 Necessity of Determination
                92k978 k. Ripeness; Prematurity. Most Cited Cases

Federal Civil Procedure 170A ⚿182.5

170A Federal Civil Procedure
    170AII Parties
        170AII(D) Class Actions
            170AII(D)3 Particular Classes Represented
                170Ak182.5 k. Consumers, Purchasers, Borrowers, and Debtors. Most Cited Cases
Superiority requirement for class action certification

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

256 F.R.D. 492
**(Cite as: 256 F.R.D. 492)**

was satisfied in consumer's Fair Credit Reporting Act (FCRA) suit against credit reporting agency alleging misstatements in reinvestigation letter, regardless of fact that suit did not seek actual damages; case involved large number of potential class members pursuing statutory claims with relatively small amount of potential recovery, class members with claims for actual damages could opt out, and agency's claim that class action would expose it to level of damages violative of Due Process Clause was premature. U.S.C.A. Const.Amend. 5; Fair Credit Reporting Act, § 611, 15 U.S.C.A. § 1681i; Fed.Rules Civ.Proc.Rule 23(b)(3), 28 U.S.C.A.

**\*494** James A. Francis, John Soumilas, Michael J. Szymborski, Francis & Mailman, PC, David A. Searles, Donovan Searles, LLC, Philadelphia, PA, for Plaintiff.

Barry Goheen, Lewis P. Perling, King & Spalding LLP, Atlanta, GA, Catherine Olanich Raymond, Christie Pabarue Mortensen & Young PC, Philadelphia, PA, for Defendant.

### MEMORANDUM AND ORDER

ANITA B. BRODY, District Judge.

Plaintiff moves, pursuant to Rule 23 of the Federal Rules of Civil Procedure, to certify a class of all consumers in the Commonwealth of Pennsylvania who received a letter from the defendant that allegedly contains misstatements and misrepresentations in violation of the Fair Credit Reporting Act. For the reasons stated below, the Court grants plaintiff's motion.

### I. Background

Defendant Equifax Information Services LLC ("Equifax") provides a broad range of services to consumers related to credit data information, including serving as a credit reporting agency ("CRA"). (*See* Declaration of Alicia Fluellen [hereinafter "Fluellen Decl."] ¶ 3.) The credit information reporting practices of Equifax and other CRAs are regulated by the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq. ("FCRA"). The FCRA was enacted "to insure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." 15 U.S.C. § 1681(a). Section 1681i of the FCRA sets forth the procedures that CRAs must follow if a consumer disputes the completeness or accuracy of the information appearing in his or her credit report. Pursuant to section 1681i(a)(1)(A), when a consumer notifies a CRA of a dispute, the CRA must either "conduct a reasonable reinvestigation of that dispute to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file." 15 U.S.C. § 1681i(a)(1)(A). If the CRA conducts a reinvestigation, it must provide the consumer with written notice of the results of the reinvestigation containing, including:

> [A] notice that, if requested by the consumer, a description of the procedure used to determine the accuracy and completeness of the information shall be provided to the consumer by the agency, including the business name and address of any furnisher of information contacted in connection with such information and the telephone number of such furnisher, if reasonably**\*495** available. 15 U.S.C. § 1681i(a)(6)(B)(iii).

In January 2007, Plaintiff Richard Chakejian ("Mr.Chakejian") obtained a credit report from Equifax and noticed that a record of an involuntary bankruptcy filing appeared in error on his credit report.[FN1] On January 16, 2007, Mr. Chakejian sent Equifax a letter disputing the accuracy of the bankruptcy record in the credit report. (See Pl.'s Mot. for Class Cert. Ex. D, Letter dated January 16th, 2007 [hereinafter, the "Dispute Letter"].)

> FN1. Mr. Chakejian had successfully fought the wrongfully filed Chapter 7 bankruptcy filing in the United States Bankruptcy Court for the Eastern District of Pennsylvania and had obtained an order from the bankruptcy court that "any adverse credit report to any credit reporting agency should be stricken from the Chakejians' credit records." (*See* Pl.'s Mot. for Class Cert. Ex. B, Order of the U.S. District Bankruptcy Court for the Eastern District of Pennsylvania dated May 17, 2006 [hereinafter "May 17th Bankruptcy Court Order"] ); Chakejian Dep. 113:25-115:19, July 18, 2008.

While Equifax's credit reports include credit data from the public record, such as bankruptcies, liens,

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

256 F.R.D. 492
**(Cite as: 256 F.R.D. 492)**

and judgments, Equifax is not the primary source of that information. Instead, Equifax employs an independent public records vendor ("PRV") to gather public records directly from courthouses and court filings and to provide relevant data points to Equifax.[FN2] (*See* Declaration of Shawn DeGrace [hereinafter "DeGrace Decl."] ¶ 3.) Pursuant to a contract between Equifax and its PRV, when a customer disputes public record information appearing on a credit report, the PRV is also responsible for going to the original source of the information (generally the courthouse or docket), reviewing the information, and reporting the results to Equifax. (DeGrace Decl. ¶ 17; Fluellen Decl. ¶ 11). Upon receiving this information from the PRV, it is Equifax's practice to then provide consumers with the name and address of the courthouse where the disputed public record originated. (Def.'s Opp. to Pl's. Mot. for Class. Cert. 6-7; Fluellen Decl. ¶ 9.) Equifax does not provide the name and address of its PRV to consumers in responding to public record disputes. (DeGrace Decl. ¶ 14.) In accordance with these practices and policies, Equifax responded to Mr. Chakejian's Dispute Letter with the form reinvestigation letter that is the subject of this litigation (the "Reinvestigation Letter"). (*See* Am. Compl. Ex. A, Letter dated January 26th, 2007 [hereinafter "Reinvestigation Letter"].) The Reinvestigation Letter informed Mr. Chakejian of the following:

> [FN2.] From October 2004 through February 2007, Equifax's PRV was Choicepoint. (DeGrace Decl. ¶ 6.) Equifax's current PRV is LexisNexis. (*Id*. at ¶ 5.)

Below are the results of your request for Equifax to reinvestigate certain elements of your Equifax credit file. Equifax contacted each source directly and our investigation is now completed. If you have any additional questions or concerns, please contact the source of that information directly.

(*Id*.) The Reinvestigation Letter further indicates that Equifax reviewed Mr. Chakejian's "bankruptcy information" and "verified" that the bankruptcy item belonged to him. (*Id*.) The letter directs that Mr. Chakejian should contact the Eastern District of PA, Robert NC NIX Federal Buil., 900 Market St. RM 400, Philadelphia, PA 19107-4233, if he has "any additional questions about this item." (*Id*.) The letter instructs Mr. Chakejian to contact Equifax if he had any questions regarding "the specific information contained in this letter." [FN3] (*Id*.)

> [FN3.] Upon receiving the Reinvestigation letter, Mr. Chakejian telephoned Equifax. (Pl.'s Mot. for Class Cert. 6.) The operator he spoke with suggested to Mr. Chakejian that he send in a certified copy of the May 17th Bankruptcy Court Order with a court seal on it. (*Id*.) Mr. Chakejian went to the Nix Federal Building and found out that the bankruptcy court "was reporting everything correctly." (*Id*.) He nonetheless obtained a certified copy of the May 17th Bankruptcy Court Order and sent it, along with another dispute letter, to Equifax on March 4, 2007. (See Pl.'s Mot. for Class Cert. Ex. F, Letter dated March 4, 2007 [hereinafter the "Second Dispute Letter"].) Equifax responded to the Second Dispute Letter in writing, and informed Mr. Chakejian that the bankruptcy had been deleted from his credit report. (Pl.'s Mot. for Class Cert. 6.)

The Reinvestigation Letter also includes a "Notice to Consumer" that explains Equifax's reinvestigation procedures. The "Notice to Consumers" states in full:

> **\*496** Upon receipt of your dispute, we first review and consider the relevant information you have submitted regarding the nature of your dispute. If the review does not resolve your dispute, and further investigation is required, notification of your dispute, including the relevant information you submitted, is provided to the source that furnished the disputed information, conducts an investigation with respect to the disputed information and reports the results back to us. The credit reporting agency then makes deletions or changes to your credit file as appropriate based on the results of the reinvestigation. The name, address and, if reasonably available, the telephone number of the furnisher(s) of the information contacted while processing your dispute(s) is shown under the "Results of Your Investigation" section on the cover letter that accompanies the copy of your revised credit file.

Mr. Chakejian's claim is that the Reinvestigation Letter misrepresents the source of Equifax's public records information and misstates the results of its reinvestigation and its reinvestigation procedures in

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

256 F.R.D. 492
**(Cite as: 256 F.R.D. 492)**

violation of section 1681i of the FCRA. As a result, Mr. Chakejian experienced "anxiety, frustration, loss of a few hours of his time and the out-of-pocket expense incurred for a certified record from the bankruptcy court." (Pl.'s Mot. for Class Cert. 6-7).

The FCRA contains two damages provisions. Section 1681n provides liability for willful violations of the statute, and section 1681o provides liability for negligent violations. Mr. Chakejian is pursuing his claims under the willful noncompliance section only. This section applies to "[a]ny person who willfully fails to comply with any requirement of [the FCRA] with respect to any consumer," and provides for "any actual damages sustained by the consumer as a result of the failure *or* damages of not less than $100 and not more than $1000," as well as punitive damages, costs, and attorney's fees. 15 U.S.C. § 1681n. (emphasis added). Mr. Chakeijian seeks for himself and for the putative class, statutory damages of not less than $100 and not more than $1,000, punitive damages, and reasonable attorney's fees. (Am.Compl.6-7.)

*II. Discussion*

Plaintiff seeks to certify a class comprised of:

> All consumers in the Commonwealth of Pennsylvania to whom, beginning two years prior to the filing of the Amended Complaint and continuing through the resolution of this action, in response to a dispute, Defendant sent a letter substantially similar to the Letter attached to the Amended Complaint as Exhibit A (i.e. the Reinvestigation Letter).

To prevail on a motion for class certification, a plaintiff must satisfy all of the requirements of Federal Rule of Civil Procedure 23(a) and the requirements of one of the subsections of Rule 23(b). See Johnston v. HBO Film Mgt., Inc., 265 F.3d 178, 183 (3d Cir.2001). The four threshold requirements of Rule 23(a) are (1) numerosity ("the class is so numerous that joinder of all members is impracticable"); (2) commonality ("there are questions of law or fact common to the class"); (3) typicality ("the claims or defenses of the representative parties are typical of the claims or defenses of the class"); and (4) adequacy ("the representative parties will fairly and adequately protect the interests of the class"). Wetzel v. Liberty Mut. Ins. Co., 508 F.2d 239, 246 (3d Cir.1975), cert. denied, 421 U.S. 1011, 95 S.Ct. 2415, 44 L.Ed.2d 679 (1975).

Plaintiff seeks certification under subsection (3) of Rule 23(b), which requires "that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members," and that a class action be "superior to other available methods for the fair and efficient adjudication of the controversy." Fed.R.Civ.P. 23(b)(3); Amchem Prods. v. Windsor, 521 U.S. 591, 615, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997).

Having moved to certify the class, plaintiff bears the burden of demonstrating, by a preponderance of the evidence, that class certification is appropriate. In re Hydrogen Peroxide, 552 F.3d 305, 307 (3d Cir.2008). Courts may approve class actions only after a rigorous analysis and "findings by the court ... that each requirement of Rule 23 is met." Id. at 307. In performing this analysis, "the **\*497** court must resolve all factual or legal disputes relevant to class certification, even if they overlap with the merits." In re Hydrogen Peroxide, 552 F.3d at 307.

1. Rule 23(a) Requirements

a. Numerosity

Rule 23(a)(1) requires that a class be so numerous that joinder of all its members is impracticable. Fed.R.Civ.P. 23(a)(1). There is no precise number that will satisfy the numerosity requirement, but the district court may "make a common sense determination" in order to support the finding of numerosity. Maldonado v. Houstoun, 177 F.R.D. 311, 319 (E.D.Pa.1997); Anderson v. Dep't of Public Welfare, 1 F.Supp.2d 456, 461 (E.D.Pa.1998). At a minimum, the plaintiff must "define the class in a way that enables the court to determine whether a particular individual is a class member." Forman v. Data Transfer, Inc., 164 F.R.D. 400, 403 (E.D.Pa.1995).

[1] Equifax argues that the class definition is faulty because the term "substantially similar" is vague and will require the court to engage in an improper preliminary evaluation of each potential class member's letter to determine whether it is "substantially similar" to the plaintiff's. See e.g. Forman v. Data Transfer, Inc., 164 F.R.D. 400, 403 (E.D.Pa.1995) (finding

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

256 F.R.D. 492
**(Cite as: 256 F.R.D. 492)**

class definition "untenable" where determining membership in the class would "essentially require a mini-hearing on the merits of each case"). In order to maintain a class action, the class sought to be represented must be adequately defined and clearly ascertainable. 5 JAMES W. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 23.21[1], at 23-47 (Matthew Bender 3d ed. 1997) ("Although the text of Rule 23(a) is silent on the matter, a class must not only exist, the class must be susceptible of precise definition. There can be no class action if the proposed class is 'amorphous' or 'imprecise.' ") (citations omitted). However, defining a class by reference to a standardized letter does not require an individualized evaluation of the claims, and courts have had no difficulty in certifying consumer classes based upon similar language. See *Jordan v. Commonwealth Fin. Sys., Inc.,* 237 F.R.D. 132, 140 (E.D.Pa.2006) (certifying consumer class of individuals who had received a form letter, or its "substantial equivalent"); *McCall v. Drive Fin. Services, L.P.,* 236 F.R.D. 246, 250 (E.D.Pa.2006) (Brody, J.) (certifying class of "Pennsylvania residents to whom defendant sent one or more collection letters ... in the form or, or substantially similar to" the letter sent to the named plaintiff); *Seawell v. Universal Fidelity Corp.,* 235 F.R.D. 64, 68 (E.D.Pa.2006) (certifying consumer class of those who were sent a letter "substantially in the form" of that sent to the representative plaintiff).

The court agrees, however, that the term "substantially similar" could be more precise. Where a potential issue with class certification can be resolved by redefining the classes, the district court "should not deny certification on account of such problems without considering the possibility of redefining the classes." See *Finberg v. Sullivan,* 634 F.2d 50, 64 n. 9 (3d Cir.1980). The letter at issue in this case was received in response to a dispute over public records information only. There are no allegations in the complaint regarding disputes over non-public or other categories of information, nor is there any allegation that Equifax used a PRV to furnish information other than information from the public record such as bankruptcies, liens, and judgments. (DeGrace Decl. ¶ 3.) Thus, the defendant's objection that the class definition is vague because it does not define "substantially similar" can be ameliorated by amending the class definition as follows:

    All consumers in the Commonwealth of Pennsylvania to whom, beginning two years prior to the filing of the Amended Complaint and continuing through the resolution of this action, in response to a dispute [over a public record (including, but not limited to a bankruptcy, lien, or judgment) ], Defendant sent a letter substantially similar to the Letter attached to the Amended Complaint as Exhibit A.

Equifax has represented that there are at least 11,839 individuals in Pennsylvania who, during the relevant time period, received a reinvestigation letter in substantially the same form as the one sent to plaintiff. Given the number of potential class members involved, the Court is satisfied that joinder ***498** would be impracticable in this case. The proposed class as redefined above satisfies Rule 23(a)(1).

b. Commonality

[2] Rule 23(a)(2) requires the existence of questions of law or fact common to the class. The Third Circuit has held that the commonality requirement is "not stringent, and that a single common issue of law or fact suffices." *Baby Neal v. Casey,* 43 F.3d 48, 56 (3d Cir.1994) ("The commonality requirement will be satisfied if the named plaintiffs share at least one question of fact or law with the grievances of the prospective class."); *McCall,* 236 F.R.D. at 249 (E.D.Pa.2006). A common issue is one which arises from "a common nucleus of operative facts." *Baby Neal,* 43 F.3d at 56. Here, the factual and legal basis of the claim is common to all plaintiffs: Plaintiff alleges that the standard reinvestigation letter that Equifax sent to prospective class members in response to a dispute over public record information contains misstatements and misrepresentations in violation of the FCRA. The proposed class satisfies the commonality requirement of Rule 23(a)(2).

c. Typicality

The typicality requirement of Rule 23(a)(3) is closely related to the commonality requirement of Rule 23(a)(2). See *In re Prudential Ins. Co. America Sales Practice Litig.,* 148 F.3d 283, 311 (3d Cir.1998) ("The concepts of commonality and typicality are broadly defined and tend to merge.") (citing *Baby Neal,* 43 F.3d at 56). Typicality assesses whether the interests of the class representatives are "typical of the class as a whole" and are aligned with the inter-

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

256 F.R.D. 492
**(Cite as: 256 F.R.D. 492)**

ests of the rest of the class "so that the [class representative] will work to benefit the entire class through the pursuit of their own goals." *In re Prudential,* 148 F.3d at 311. In this respect "the commonality and typicality requirements both seek to ensure that the interests of the absentees will be adequately represented." *Id.* However, "neither of these requirements mandates that all putative class members share identical claims." *Id.* (citations omitted). The typicality requirement will be "deemed met if the claims arise from the same event or course of conduct and are based on the same legal theory." *Baby Neal,* 43 F.3d at 58. Where an action challenges a policy or practice, "the named plaintiffs suffering one specific injury from the practice can represent a class suffering other injuries, so long as all the injuries are shown to result from the practice." *Id.* In this case, each class member received a letter from Equifax in response to a customer dispute over public record information, in which Equifax allegedly failed to disclose the source of their public record information and misrepresented its reinvestigation procedures in violation of the FCRA. The claims of Mr. Chakejian's and each of the prospective class members arise from the same course of conduct, and are based on the same theory of liability. The Court finds that the typicality requirement Rule 23(a)(3) is satisfied.

d. Adequacy

[3] The purpose of the adequacy requirement is to protect the legal rights of absent class members. Adequate representation depends on two factors: (a) the plaintiff's attorney must be qualified, experienced, and generally able to conduct the proposed litigation; and (b) the plaintiff must not have interests antagonistic to those of the class. *Wetzel,* 508 F.2d 239, 247 (3d Cir.1975). Equifax does not challenge plaintiff's contention that their lawyers are adequate to serve as class counsel. The attorneys who represent plaintiffs are experienced in class action litigation, including class actions under the FCRA and other consumer protection laws and are well-qualified to conduct the proposed litigation. (*See* Pl.'s Mot. Class. Cert. Ex. H.)

Equifax argues in its brief that Mr. Chakejian's interested are not aligned with those of the proposed class because (1) he personally lacks an understanding of the case and his role as a class representative, and (2) he has abandoned potentially valuable remedies and causes of action available to members of the class. (Def.'s Opp. 13, 19.) I find that neither of these arguments raises a conflict of interest that would render the plaintiff an inadequate representative of the proposed class.

**\*499** *a. Plaintiff's Lack of Knowledge About the Case Not a Bar to Class Certification*

[4] Equifax claims that plaintiff's lack of knowledge about the case, and apparent lack of interest, make him unable to fairly and adequately protect the interests of the class as class representative. (Def.Opp.13.) Equifax cites the deposition of Mr. Chakejian in which the plaintiff admitted that he had never read the Amended Complaint, and could not identify the law or the part of the FCRA that he claims Equifax violated. (*See* Chakejian Dep. 153:15-20; 167:1-7; 168:5-9.) In addition, Chakejian testified that he did not wholly understand his obligations as class representative (Chakejian Dep. 76:1-3.) While Chakejian's understanding of the instant litigation may be limited, the Supreme Court has held that a class representative's lack of knowledge about his case does not make him an inadequate representative. *Surowitz v. Hilton Hotels, Corp.,* 383 U.S. 363, 86 S.Ct. 845, 15 L.Ed.2d 807 (1966). *See also Lewis v. Curtis,* 671 F.2d 779, 789 (3d Cir.1982) (finding adequacy requirement met even where the named plaintiff "displayed a complete ignorance of facts concerning the transaction that he was challenging"); *McCall,* 236 F.R.D. at 253 ("The adequacy of putative class representatives does not depend on their legal knowledge, nor are they required to know all the facts about the class as a whole."). Mr. Chakejian submitted to a nearly five hour deposition in this case, and testified that he understood that he had a responsibility to look out for the best interests of the class members. (Chakejian Dep. 166:15-21.) Given the cases in this Circuit finding adequacy despite the named plaintiff having a "decidedly minimal knowledge of the case," Mr. Chakejian appears sufficiently interested and engaged in the case to serve as an adequate representative. *Allen v. Holiday Universal,* 249 F.R.D. 166, 185 (E.D.Pa.2008) (concluding that the named plaintiff, who appeared otherwise uninformed about the details of his case, was an adequate representative when he reviewed and verified the original complaint, was aware of the theory of the lawsuit, and participated at his deposition). Mr. Chakejian's "confusion about some aspects of the case does not create

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

256 F.R.D. 492
**(Cite as: 256 F.R.D. 492)**

a conflict to render him inadequate under Rule 23(a)(4)." McCall, 236 F.R.D. at 253.

*b. Plaintiff's Failure to Seek All Available Remedies Not a Conflict of Interest*

[5] Equifax also argues in its brief that Mr. Chakejian's election to forego actual damages or a negligence claim under the FCRA make him an inadequate representative of the class because his interests conflict with the interests of potential class members who may have actual damages in an amount exceeding the statutory cap of $1,000.00. (Def.Opp.22.) However, the defendant has not put forth any evidence that there are class members who may have significant actual damages claims under these circumstances. As pointed out by Chief Judge Easterbrook of the Seventh Circuit Court of Appeals, "[u]nless a district court finds that personal injuries are large in relation to statutory damages, a representative plaintiff must be allowed to forego claims for compensatory damages in order to achieve class certification." Murray v. GMAC Mortgage Corporation, 434 F.3d 948, 953 (7th Cir.2006) (remanding after district court denied certification of a class of consumers who received an allegedly deficient notice under the FCRA). This is because, to deny class certification on the basis that the plaintiff "should have sought compensatory damages for herself and all class members rather than relying on the statutory-damages remedy," would make consumer class actions under the FCRA effectively "impossible." Id. at 952. If the plaintiff were required to pursue actual damages in this case, individual damages issues would quickly overwhelm the common questions and the suit would become unmanageable and uncertifiable. [FN4] I agree with Judge Easterbrook's assessment that "[r]efusing to certify a class because the plaintiff decides not to make the sort of person-specific **\*500** arguments that render class treatment infeasible would throw away the benefits of consolidated treatment." Id. at 953.

> FN4. Furthermore, there are inherent difficulties inherent in tracing and proving the actual harm caused by Equifax's alleged statutory violations. Choosing to pursue only statutory damages under 15 U.S.C. § 1681n in cases like these is a litigation strategy that is not the court's place to second guess.

Furthermore, given the availability of the opt-out mechanism, courts in this Circuit have generally rejected the notion that limiting claims to statutory damages renders class certification inappropriate. *See* Morgan v. Gay, 471 F.3d 469, 476 n. 7 (3d Cir.2006) (noting that the defendants' assertion that limiting damages to the purchase price of the defective item did not undermine class certification: "The availability of opting out by unnamed class members assuages any concerns that [the named plaintiff's] damage limitation harms these other class members"). *See also* Murray, 434 F.3d at 953 ("When a few class members' injuries prove to be substantial, they may opt out and litigate independently."). The fact that some members of the putative class might have claims for actual damages is not a true conflict of interest between the representative and other class members in this case, where class members with significant actual damages may opt-out of the class litigation. Because the plaintiff does not have an interest antagonistic to the interests of the class and his attorneys are qualified to handle this litigation, the proposed class satisfies the adequacy requirement of Rule 23(a)(4).

2. Rule 23(b)(3) Requirements

Mr. Chakejian seeks to certify this class under Fed.R.Civ.P. 23(b)(3). Class certification under Rule 23(b)(3) must satisfy the "twin requirements" of predominance and superiority. *In re Hydrogen Peroxide,* 552 at 310; *Newton v. Merrill Lynch,* 259 F.3d 154, 186 (3d Cir.2001). Predominance "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *In re Hydrogen Peroxide,* 552 F.3d at 310-11 (citing *Amchem,* 521 U.S. at 623, 117 S.Ct. 2231). Superiority tests whether "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed.R.Civ.P. 23(b)(3).

a. Predominance

[6] Predominance requires an evaluation of whether "proposed classes are sufficiently cohesive to warrant adjudication by representation." *Jordan,* 237 F.R.D. at 132 (citing *Amchem,* 521 U.S. at 623). Requiring more than a common claim, predominance requires that "issues common to the class must predominate over individual issues...." *In re Prudential,* 148 F.3d at 313-14. Equifax argues that individual issues pre-

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

256 F.R.D. 492
**(Cite as: 256 F.R.D. 492)**

dominate in this case because proof of "willfulness" under the FCRA is a fact-bound inquiry which turns upon each individual class member's interaction with Equifax. (Def.Opp.25-26.) The plaintiff agrees with the defendant that willfulness is a fact-bound inquiry, but disagrees that such an inquiry will in any way require an examination into a particular class member's interaction with Equifax. (Pl.'s Mot. for Class Cert. 19.)

[7] To prove willful noncompliance with the FCRA, the plaintiff must demonstrate that Equifax "knowingly and intentionally committed an act in conscious disregard for the rights of others." *Cushman v. Trans Union Corp.,* 115 F.3d 220, 227 (3d Cir.1997) (holding that to justify an award of punitive damages under 15 U.S.C. § 1681n, the defendant's actions must "be on the same order as willful concealments or misrepresentations") (citations omitted). Thus, the inquiry is to Equifax's state of mind in implementing its policies and procedures, not on the customer's particular interaction with the CRA. *Id.See also Crane v. Trans Union LLC,* 282 F.Supp.2d 311, 321 (E.D.Pa.2003) (relying on evidence of defendant's reporting practices to determine whether that policy was adopted in knowing or reckless violation of the FCRA); *Sheffer v. Experian Info. Solutions, Inc.,* 2003 WL 21710573, *3 (E.D.Pa. July 24, 2003) (looking at the policies of the defendant to determine whether alleged inaccuracies in plaintiff's credit report were the result of the defendant's conscious or reckless disregard). Like *Crane* and *Sheffer,* the relevant inquiry in this case is what Equifax's state of mind: what information Equifax disclosed or failed to disclose to customers with respect to its reinvestigation procedures, and whether it knew, or consciously disregarded the fact that those disclosures were misleading. To prove willfulness here, a consumer-by-consumer inquiry is not necessary.

**\*501** Equifax also asserts that even though actual damages are not sought in the instant case, individual damages issues will predominate as to the amount of statutory damages. (Def.Opp.26.) Pursuant to 15 U.S.C. § 1681n, statutory damages may be awarded in any amount between $100 and $1,000. Equifax contends that statutory damages cannot be applied with precision on a class-wide basis and individual issues would still need to be litigated, making those individual damages questions predominate over any common issues. (Def. Opp. at 26-27.) Given the nature of plaintiff's claims, this is not a case in which the amount of the damage award is likely to differ from consumer to consumer, particularly in view of the plaintiffs' decision not to pursue actual damages. Thus, I find that issues common to the class predominate over individual issues in this case and the proposed class is sufficiently cohesive to warrant adjudication as a class action.

b. Superiority

The superiority requirement demands that a class action represent the "best available method for the fair and efficient adjudication of the controversy." Fed.R.Civ.P. 23(b)(3). Superiority must be looked at from multiple points of view: the judicial system, the potential class members, the present plaintiff, the attorneys for the litigants, the public at large, the defendant, and the issues. *See e.g. Katz v. Carte Blanche Corp.,* 496 F.2d 747, 760 (3d Cir.1974). In determining whether a class action is the best available method of litigation, the district court must "balance, in terms of fairness and efficiency," the merits of a class action against the merits of "alternative methods of adjudication." *In re Community Bank of Northern Virginia,* 418 F.3d 277, 309 (3d Cir.2005) (citing *Georgine v. Amchem Prods., Inc.,* 83 F.3d 610, 632 (3d Cir.1996)).

[8] Plaintiff contends that a class action is the superior method of adjudication in consumer protection cases, like this one, where the cost of pursuing individual litigation is too high or would result in inefficiencies and a burden on the courts. (Pl.'s Mot. for Class. Cert. 19.) *See also Prudential,* 148 F.3d at 316; *Lake v. First Nationwide Bank,* 156 F.R.D. 615, 626 (E.D.Pa.1994) (finding that the class action form was the superior method of resolving statutory allegations of mortgage agreement violations because "[t]he alternative to pursuing a class action is a series of state court actions by a large number of scattered plaintiffs, an inefficient allocation of judicial and public resources"). Equifax responds that superiority is defeated in this case by the availability of individual FCRA actions that entitle plaintiffs to both actual damages and attorney's fees. (Def.Opp.28.)

This is a case where there are a large number of potential plaintiffs pursuing statutory claims with a relatively small amount of potential recovery. Rule 23(b)(3) is the best method of adjudication for situa-

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

256 F.R.D. 492
**(Cite as: 256 F.R.D. 492)**

tions like these in which the potential recovery is "typically so small ... that litigation of a single claim is, as a general matter, hardly worth the cost and effort of litigation." Seawell v. Universal Fidelity Corp., 235 F.R.D. at 68; *See also* Amchem, 521 U.S. at 617, 117 S.Ct. 2231 ("The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights."). Without the class action suit, many putative class members would lack the incentive to bring individual suits against defendants, "due in part to the small individual losses associated with each potential claim." Jordan, 237 F.R.D. at 140; In re Prudential, 148 F.3d at 316 (affirming district court's finding of superiority where "the court examined the relatively modest size of individuals claims and the sheer volume of those claims in the aggregate, and concluded a class action presented the 'only rational avenue of redress for many class members'") (citations omitted). The presence of a fee shifting provision in the FCRA does not *per se* defeat class certification. Although the availability of attorney's fees to litigants is indicative that a class action is by no means the "only" feasible route for litigants, it remains the superior mechanism here, where there is an inverse relationship between the cost of an individual action relative to the potential recovery, and where meaningful enforcement of the statute through individual consumer litigation is unlikely. *See e.g.,* **\*502**Klotz v. Trans Union, LLC, 246 F.R.D. 208, 217 (E.D.Pa.2007) (acknowledging that the "financial incentives [for violations of the FCRA] might not encourage each putative class member to bring suit, but they dispel the notion that a class action is the only way to adjudicated the lawfulness of the defendant's practices"). Although it could have done so, Congress has not chosen to preclude class actions under the FCRA, and the availability of attorney's fees does not undermine the advantages of class certification in this case.[FN5]

> FN5. With respect to Equifax's argument that a class action is not appropriate because of the availability of actual damages under the FCRA, the court reiterates its position as previously discussed, *supra,* in connection with the adequacy requirement, that the use of opt-out provisions is sufficient to redress "any concern about the financial detriment to individual class members through class action litigation" in this case. Jordan, 237 F.R.D. at 140 (certifying a class under the Fair Debt Collection Practices Act). *See also* In re Community Bank of Northern Virginia, 418 F.3d 277, 309 (3d Cir.2005) ("The presence of certain class members with significant individual ... claims may counsel against a finding of superiority, but there individuals can opt-out and pursue their claims individually.").

Finally, Equifax argues that a class action is not the best method of adjudication here because it would expose the defendant to liability as to potentially thousands of individuals and million of dollars without any showing that any plaintiff actually sustained any injury or damage. (Def.Opp.30.) Equifax argues that this kind of "super penalty" should not be countenanced by the court. (*Id.*) The Seventh Circuit in Murray also addressed the question of whether a class action's superiority is threatened by high potential liability on the part of the defendant. The Murray Court pointed out that damages under the FCRA were instituted by Congress, and therefore, while the statute remained on the books, "it must be enforced rather than subverted." Murray, 434 F.3d at 954 ("The reason that damages can be substantial however, does not lie in an 'abuse' of Rule 23; it lies in the legislative decision to authorize awards as high as $1,000 per person"). The due process clause of the U.S. Constitution provides for the reduction of damage awards that are unconstitutionally high. *See* BMW of North America, Inc. v. Gore, 517 U.S. 559, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996); State Farm Mut. Auto. Ins. Co. v. Campbell, 538 U.S. 408, 416, 123 S.Ct. 1513, 155 L.Ed.2d 585 (2003). But class certification is not the stage at which due process concerns should be addressed, or anticipated. Parker v. Time Warner Entertainment Co. L.P., 331 F.3d 13, 22 (2d Cir.2003) ("[I]t may be that in a sufficiently serious case the due process clause might be invoked, not to prevent certification, but to nullify that effect and reduce the aggregate damage award.... At this point in this case, however, these concerns remain hypothetical."). I concur with the Seventh's Circuit's observation in Murray that "[r]educing recoveries by forcing everyone to litigate independently-so that constitutional bounds are not tested, because the statute cannot be enforced by more than a handful of victims-has little to recommend it." Murray, 434 F.3d at 954. Given the slight potential recovery of each individual claim relative to the aggregate injury, as well as the judicial inefficiency that would accom-

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

256 F.R.D. 492
**(Cite as: 256 F.R.D. 492)**

pany individual resolution of the claims Mr. Chakejian seeks to prosecute on behalf of the proposed class, the Court finds by preponderance of the evidence that a class action presents the best method of adjudicating the instant litigation.

### III. Conclusion

Class certification is appropriate here, where the plaintiff has demonstrated by a preponderance of the evidence that the proposed class, as redefined herein, satisfies all four factors under Rule 23(a) and meets the requirements of Rule 23(b)(3). At the same time, potential class members must be adequately informed as to the opt-out procedure and the pros and cons of class litigation. The Court will direct that the Rule 23(c)(2)(B) notice to class members clearly explain their entitlement to bring individual actions seeking actual damages and the difference in the size of potential recovery, should they choose to pursue recovery as part of the class. An appropriate order follows.

### ORDER

**AND NOW,** this 24th day of March, 2009, it is **ORDERED** that Plaintiff's Motion for **\*503** Class Certification (Doc. # 39) is **GRANTED.** It is further **ORDERED** that this action shall be maintained as a class action in accordance with Federal Rule of Civil Procedure 23 on behalf of the following class of plaintiffs:

> All consumers in the Commonwealth of Pennsylvania to whom, beginning two years prior to the filing of the Amended Complaint and continuing through the resolution of this action, in response to a dispute over a public record (including, but not limited to a bankruptcy, lien, or judgment), Defendant sent a letter substantially similar to the Letter attached to the Amended Complaint as Exhibit A. Excluded from the Class are all officers and directors of the Defendant.

with respect to the following cause of action:

> Willful violation of section 1681i of the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.,*

It is further **ORDERED** that, subject to further order of the court, plaintiff Richard Chakejian is certified as class representative, and the firms of Francis & Mailman, P.C. and Donovan Searles, LLC, shall serve as class counsel.

It is further **ORDERED** that the plaintiff shall submit a proposed form of notice to the class by April 24, 2009. The notice to class members must inform them as to how they may exclude themselves from the class, explain their entitlement to bring individual actions seeking actual damages, and the difference in potential recovery.

E.D.Pa.,2009.
Chakejian v. Equifax Information Services LLC
256 F.R.D. 492

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.