

264 F.R.D. 133
**(Cite as: 264 F.R.D. 133)**



United States District Court,
D. New Jersey.
Bruce A. SUMMERFIELD, on behalf of himself and
all others similarly situated, Plaintiff,
v.
EQUIFAX INFORMATION SERVICES LLC, Defendant.
**Civil Action No. 08-1450.**

Sept. 30, 2009.
Opinion Denying Reconsideration Jan. 4, 2010.

**Background:** Consumer filed purported class action against credit reporting agency alleging that agency falsely represented to consumer, who disputed accuracy of public records information reported about them by agency, that it directly contacted original source of public records in violation of Fair Credit Reporting Act (FCRA). Consumer moved for class certification.

**Holdings:** The District Court, Joseph H. Rodriguez, J., held that:
(1) consumer satisfied "numerosity" requirement for class certification;
(2) consumer satisfied "commonality" requirement for class certification;
(3) consumer satisfied "typicality" requirement for class certification;
(4) consumer was adequate representative of class, as required for class certification;
(5) consumer satisfied "predominance" requirement for class certification; and
(6) consumer satisfied "superiority" requirement for class certification.

Motion granted.

West Headnotes

**[1] Federal Civil Procedure 170A ⟜172**

170A Federal Civil Procedure
    170AII Parties
        170AII(D) Class Actions
            170AII(D)2 Proceedings

170Ak172 k. Evidence; pleadings and supplementary material. Most Cited Cases
The proponent of class certification bears the burden of proving the requirements of a class action. Fed.Rules Civ.Proc.Rule 23, 28 U.S.C.A.

**[2] Federal Civil Procedure 170A ⟜171**

170A Federal Civil Procedure
    170AII Parties
        170AII(D) Class Actions
            170AII(D)2 Proceedings
                170Ak171 k. In general; certification in general. Most Cited Cases

**Federal Civil Procedure 170A ⟜174**

170A Federal Civil Procedure
    170AII Parties
        170AII(D) Class Actions
            170AII(D)2 Proceedings
                170Ak174 k. Consideration of merits. Most Cited Cases
The issue raised by a motion for class certification is whether a class action is an appropriate litigation vehicle, and not the merits of the claims asserted. Fed.Rules Civ.Proc.Rule 23, 28 U.S.C.A.

**[3] Federal Civil Procedure 170A ⟜182.5**

170A Federal Civil Procedure
    170AII Parties
        170AII(D) Class Actions
            170AII(D)3 Particular Classes Represented
                170Ak182.5 k. Consumers, purchasers, borrowers, and debtors. Most Cited Cases
"Numerosity" requirement was satisfied for certification of class of consumers in action against credit reporting agency, alleging that agency falsely represented in letter to consumer, who disputed accuracy of public records information reported about them by agency, that it directly contacted original source of public records, in violation of Fair Credit Reporting Act (FCRA); because agency purportedly stated during discovery that at least 12,516 people received similar letter, proposed class likely included several thousand individuals which would make joinder im-

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

264 F.R.D. 133
**(Cite as: 264 F.R.D. 133)**

practicable. Fair Credit Reporting Act, § 611, 15 U.S.C.A. § 1681i; Fed.Rules Civ.Proc.Rule 23(a)(1), 28 U.S.C.A.

**[4] Federal Civil Procedure 170A ⛓165**

170A Federal Civil Procedure
  170AII Parties
    170AII(D) Class Actions
     170AII(D)1 In General
      170Ak165 k. Common interest in subject matter, questions and relief; damages issues.
Most Cited Cases
To satisfy the "commonality" requirement for class certification, the named plaintiff need only show that it shares at least one question of fact or law with the grievances of the prospective class. Fed.Rules Civ.Proc.Rule 23(a)(2), 28 U.S.C.A.

**[5] Federal Civil Procedure 170A ⛓165**

170A Federal Civil Procedure
  170AII Parties
    170AII(D) Class Actions
     170AII(D)1 In General
      170Ak165 k. Common interest in subject matter, questions and relief; damages issues.
Most Cited Cases
"Commonality," for purposes of class certification, does not require that members of a class share identical claims, but that the plaintiff's interests are representative of the absent class members. Fed.Rules Civ.Proc.Rule 23(a)(2), 28 U.S.C.A.

**[6] Federal Civil Procedure 170A ⛓165**

170A Federal Civil Procedure
  170AII Parties
    170AII(D) Class Actions
     170AII(D)1 In General
      170Ak165 k. Common interest in subject matter, questions and relief; damages issues.
Most Cited Cases
An allegation that the defendants' overall policy injured plaintiffs satisfies the "commonality" requirement for class certification. Fed.Rules Civ.Proc.Rule 23(a)(2), 28 U.S.C.A.

**[7] Federal Civil Procedure 170A ⛓182.5**

170A Federal Civil Procedure
  170AII Parties
    170AII(D) Class Actions
     170AII(D)3 Particular Classes Represented
      170Ak182.5 k. Consumers, purchasers, borrowers, and debtors. Most Cited Cases
"Commonality" requirement was satisfied for certification of class of consumers in action against credit reporting agency, alleging that agency falsely represented in letter to consumer, who disputed accuracy of public records information reported about them by agency, that it directly contacted original source of public records, in violation of Fair Credit Reporting Act (FCRA); claims of consumer and unnamed class members involved same factual and legal theories as they alleged that misleading form disclosure letter was sent following public records dispute, and all plaintiffs claimed they were injured in substantially the same way by execution of agency's allegedly unlawful policies or practices under similar factual circumstances. Fair Credit Reporting Act, § 611, 15 U.S.C.A. § 1681i; Fed.Rules Civ.Proc.Rule 23(a)(2), 28 U.S.C.A.

**[8] Federal Civil Procedure 170A ⛓182.5**

170A Federal Civil Procedure
  170AII Parties
    170AII(D) Class Actions
     170AII(D)3 Particular Classes Represented
      170Ak182.5 k. Consumers, purchasers, borrowers, and debtors. Most Cited Cases
"Typicality" requirement was satisfied for certification of class of consumers in action against credit reporting agency, alleging that agency falsely represented in letter to consumer who disputed accuracy of public records information reported about them by agency that it directly contacted original source of public records in violation of Fair Credit Reporting Act (FCRA); after consumer disputed public record on his credit report, he received a form letter from agency containing numerous allegedly false and deceptive misrepresentations regarding agency's actions in connection with disputes of public records appearing on class members' credit reports, claim was same as those of absent putative class members as members argued that neither agency nor its independent contractor contacted courthouse to verify disputed information, and consumer's incentives in relation to claim aligned with those of rest of putative class. Fair Credit Reporting Act, § 611, 15 U.S.C.A. § 1681i;

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

264 F.R.D. 133
**(Cite as: 264 F.R.D. 133)**

Fed.Rules Civ.Proc.Rule 23(a), 28 U.S.C.A.

**[9] Federal Civil Procedure 170A 🔑164**

170A Federal Civil Procedure
    170AII Parties
        170AII(D) Class Actions
            170AII(D)1 In General
                170Ak164 k. Representation of class;
typicality. Most Cited Cases
A class representative's lack of knowledge about his
case does not render him an inadequate representative
for purposes of class certification. Fed.Rules
Civ.Proc.Rule 23, 28 U.S.C.A.

**[10] Federal Civil Procedure 170A 🔑182.5**

170A Federal Civil Procedure
    170AII Parties
        170AII(D) Class Actions
            170AII(D)3 Particular Classes Represented
                170Ak182.5 k. Consumers, purchasers,
borrowers, and debtors. Most Cited Cases
Consumer's purported lack of knowledge about his
putative class action, a Fair Credit Reporting Act
(FCRA) suit against credit reporting agency alleging
misstatements in reinvestigation letter, did not pre-
clude consumer's satisfying adequacy requirement for
class action certification, where consumer possessed
requisite knowledge about case such that he could
make informed decisions regarding litigation, was
able to articulate basis for lawsuit, and had shown
commitment to the case. Fair Credit Reporting Act, §
611, 15 U.S.C.A. § 1681i; Fed.Rules Civ.Proc.Rule
23(a)(4), 28 U.S.C.A.

**[11] Federal Civil Procedure 170A 🔑182.5**

170A Federal Civil Procedure
    170AII Parties
        170AII(D) Class Actions
            170AII(D)3 Particular Classes Represented
                170Ak182.5 k. Consumers, purchasers,
borrowers, and debtors. Most Cited Cases
Consumer's choosing to pursue statutory, but not
compensatory, damages in his Fair Credit Reporting
Act (FCRA) suit against credit reporting agency al-
leging misstatements in reinvestigation letter did not
create conflict of interest precluding consumer from
satisfying adequacy requirement for class action cer-

tification; opt-out mechanism was available for those
members of putative class with claims for actual
damages even though likelihood of actual damages
was almost non-existent. Fair Credit Reporting Act, §
611, 15 U.S.C.A. § 1681i; Fed.Rules Civ.Proc.Rule
23(a)(4), 28 U.S.C.A.

**[12] Federal Civil Procedure 170A 🔑182.5**

170A Federal Civil Procedure
    170AII Parties
        170AII(D) Class Actions
            170AII(D)3 Particular Classes Represented
                170Ak182.5 k. Consumers, purchasers,
borrowers, and debtors. Most Cited Cases
"Predominance" requirement for class action certifi-
cation was satisfied in consumer's Fair Credit Report-
ing Act (FCRA) suit against credit reporting agency
alleging misstatements in reinvestigation letter, con-
trary to agency's contentions that whether agency's
conduct as to each class member was willful and is-
sues concerning statutory and punitive damages made
individual issues predominant; punitive damages
inquiry went to agency's state of mind in implement-
ing its policies and procedures with respect to issuing
reinvestigation letters and whether agency knew or
consciously disregarded that letters were false or mis-
leading in violation of FCRA, not to consumer's par-
ticular interaction with agency, and amount of statu-
tory damage award was unlikely to differ from con-
sumer to consumer, especially given plaintiffs' deci-
sion not to pursue actual damages. Fair Credit Re-
porting Act, § 611, 616, 15 U.S.C.A. §§ 1681i,
1681n; Fed.Rules Civ.Proc.Rule 23(b)(3), 28
U.S.C.A.

**[13] Federal Civil Procedure 170A 🔑161.2**

170A Federal Civil Procedure
    170AII Parties
        170AII(D) Class Actions
            170AII(D)1 In General
                170Ak161.2 k. Superiority, manage-
ability, and need in general. Most Cited Cases
The "superiority" analysis for purposes of class certi-
fication focuses on whether a class action is the best
method for achieving a fair and efficient adjudica-
tion. Fed.Rules Civ.Proc.Rule 23(b)(3), 28 U.S.C.A.

**[14] Federal Civil Procedure 170A 🔑182.5**

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

264 F.R.D. 133
**(Cite as: 264 F.R.D. 133)**

170A Federal Civil Procedure
   170AII Parties
      170AII(D) Class Actions
        170AII(D)3 Particular Classes Represented
         170Ak182.5 k. Consumers, purchasers,
borrowers, and debtors. Most Cited Cases
"Superiority" requirement for class action certification was satisfied in consumer's Fair Credit Reporting Act (FCRA) suit against credit reporting agency alleging misstatements in reinvestigation letter; putative class members would have little interest in pursuing individual claims against agency, case involved large number of potential class members pursuing statutory claims with relatively small amount of potential recovery, class members with claims for actual damages could opt out, agency's claim that class action would expose it to level of damages violative of Due Process Clause was premature, there was no other FCRA litigation pending by potential class members in district, it was desirable to litigate similar, related claims in one forum, and there was no reason to believe there would be any difficulty in managing action. U.S.C.A. Const.Amend. 5; Fair Credit Reporting Act, § 611, 616, 15 U.S.C.A. §§ 1681i, 1681n; Fed.Rules Civ.Proc.Rule 23(b)(3), 28 U.S.C.A.

**[15]** Federal Civil Procedure 170A   928

170A Federal Civil Procedure
   170AVII Pleadings and Motions
      170AVII(I) Motions in General
        170Ak928 k. Determination. Most Cited Cases
To succeed on a motion for reconsideration, the moving party must show more than a disagreement with the decision it would like reconsidered; instead, there must be some dispositive factual matters or controlling decisions of law that were presented to the court but not considered.

**[16]** Federal Civil Procedure 170A   928

170A Federal Civil Procedure
   170AVII Pleadings and Motions
      170AVII(I) Motions in General
        170Ak928 k. Determination. Most Cited Cases
A motion for reconsideration will fail if the moving party merely raises arguments or presents evidence

that could have been raised or presented before the original decision was reached; thus, the moving party must actually present something new or something overlooked by the court in rendering the earlier decision.
**\*136** Gregory Joseph Gorski, James A. Francis, Joanne Y. Park, John Soumilas, Francis & Mailman, P.C., Philadelphia, PA, for Plaintiff.

Debra Marie Albanesem Traflet & Fabian, Esqs., Morristown, NJ, for Defendant.

MEMORANDUM OPINION & ORDER

JOSEPH H. RODRIGUEZ, District Judge.

This matter has come before the Court on motion of Plaintiff Bruce A. Summerfield for class certification. Oral argument was heard on the motion on September 24, 2009, and the record of that proceeding is incorporated here. For the reasons placed on the record that day, as well as those articulated below, the motion for class certification will be granted.

***BACKGROUND***

Plaintiff Bruce A. Summerfield filed a class action Complaint against Defendant Equifax Information Services LLC in this Court on March 21, 2008. He alleged a violation of the Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681i. Specifically, Plaintiff asserts that Equifax falsely represents to consumers who have disputed the accuracy of public records information reported about them by Equifax that it has directly contacted the original source of the public records. According to Plaintiff, Equifax does not contact the original source of public records when investigating consumer disputes. In addition, Plaintiff alleges that if Equifax fails to remove an inaccurate public record from a consumer's credit report, it advises the consumer to take up his dispute with the "source" of the public record, but fails to disclose the true sources of the public records it reports about consumers.

In the named Plaintiff's case, Equifax allegedly reported false information that Plaintiff had an outstanding judgment of $1,075 owed to a collection agency on behalf of AT & T. In reality, the debt was owed by Plaintiff's son who was serving in Iraq. On

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

264 F.R.D. 133
**(Cite as: 264 F.R.D. 133)**

or about February 22, 2007, Plaintiff disputed the inaccurate public record. On March 2, 2007, Equifax sent Plaintiff correspondence which stated that it had contacted the source of the public record, Camden City, but allegedly "verified" that the inaccurate public record belonged to Plaintiff. Plaintiff contends that Defendant never contacted the source of the inaccurate public record in response to Plaintiff's dispute.

Plaintiff seeks to have the class certified under Rules 23(a) and 23(b) of the Federal Rules of Civil Procedure on behalf of "all consumers in the State of New Jersey to whom, beginning two years prior to the filing of this Complaint and continuing through resolution of this action, in response to a dispute [about the accuracy of a public record Defendant reported], Defendant sent a letter substantially similar to [the one sent to Plaintiff misrepresenting Defendant's reinvestigation activities]."

**\*137 STANDARD FOR CLASS CERTIFICATION**

[1] The proponent of certification bears the burden of proving the requirements of a class action. *Chiang v. Veneman,* 385 F.3d 256, 264 (3d Cir.2004). Class certification under Rule 23 has two primary components. The party seeking class certification must first establish the four prerequisites of Rule 23(a): "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a).

"If all four requirements of Rule 23(a) are met, a class of one of three types (each with additional requirements) may be certified. *See* Fed.R.Civ.P. 23(b)(1)-(3)." *In re Hydrogen Peroxide Antitrust Litig.,* 552 F.3d 305, 309-10 n. 6 (3d Cir.2008). In this case, Plaintiff moves for class certification under Rule 23(b) (3), which provides for certification when "the court finds that the questions of law or fact common to members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed.R.Civ.P. 23(b)(3). "The twin requirements of Rule 23(b)(3) are known as predominance

and superiority." *In re Hydrogen Peroxide Antitrust Litig.,* 552 F.3d at 310.

[2] "Class certification is proper only 'if the trial court is satisfied, after a rigorous analysis, that the prerequisites' of Rule 23 are met." *Id.* at 309 (quoting *Gen. Tel. Co. of Sw. v. Falcon,* 457 U.S. 147, 161, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982)). To be sure, the issue raised by a Rule 23 motion is whether a class action is an appropriate litigation vehicle, and not the merits of the claims asserted. *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 178, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974); *Chiang,* 385 F.3d at 269-70. However, "[b]ecause the decision whether to certify a class 'requires a thorough examination of the factual and legal allegations,' the court's rigorous analysis may include a 'preliminary inquiry into the merits,' and the court may 'consider the substantive elements of the plaintiffs' case in order to envision the form that a trial on those issues would take.' " *In re Hydrogen Peroxide Antitrust Litig.,* 552 F.3d at 317 (citations omitted) (quoting *Newton v. Merrill Lynch, Pierce, Fenner, & Smith, Inc.,* 259 F.3d 154, 166, 168 (3d Cir.2001)); *see also id.* at 319 ("A critical need is to determine how the case will be tried." (quoting Fed.R.Civ.P. 23 adv. comm. note, 2003 Amend.)).

Since class certification requires a finding that each of the requirements of Rule 23 has been met, "[f]actual determinations necessary to make Rule 23 findings must be made by a preponderance of the evidence." *In re Hydrogen Peroxide Litig.,* 552 F.3d at 320. "In other words, to certify a class the district court must find that the evidence more likely than not establishes each fact necessary to meet the requirements of Rule 23." *Id.* "A party's assurance to the court that it intends or plans to meet the requirements is insufficient." *Id.* at 317. "If a class is certified, 'the text of the order or an incorporated opinion must include: (1) a readily discernible, clear, and precise statement of the parameters defining the class or classes to be certified; and (2) a readily discernible, clear, and complete list of the claims, issues or defenses to be treated on a class basis.' " *Id.* at 320-21 (quoting *Wachtel ex rel. Jesse v. Guardian Life Ins. Co. of Am.,* 453 F.3d 179, 187 (3d Cir.2006)).

**ANALYSIS**

The theory of Plaintiff's case seems to be that Defen-

264 F.R.D. 133
**(Cite as: 264 F.R.D. 133)**

dant violated the Fair Credit Reporting Act by failing to reveal, in a letter to Plaintiff, the identity of one of its public record vendors in its notice of results of reinvestigation it sends consumers. He seeks statutory damages under 15 U.S.C. § 1681(n) in the statutory range of $100 to $1,000 for himself and the putative class of New Jersey residents who received a substantially similar letter. The Complaint also requests punitive damages for the allegedly **138** willful conduct of Defendant in misleading consumers.[FN1]

> [FN1.] From the outset, Defendant takes issue with the fact that if putative class members do not opt out of this suit, they will have waived any FCRA claims they may have for negligence or actual damages. (Def.Br., p. 1.)

As a consumer reporting agency, Defendant gathers credit information and stores it in a computer database (Fluellen Decl., ¶ 3, 4.) With respect to public records such as bankruptcies, liens, and judgments, Defendant contracts with a public records vendor ("PRV") whose employees are specifically trained to gather information relating to court filings. (DeGrace Decl., ¶ 3.) The PRV collects this information directly from a "primary source"-the courthouses where judgments, bankruptcies, and liens are filed or from other appropriate electronic databases designated by a court as "official public records." (DeGrace Decl., ¶ 4.) From October 2004 through February 2007, the Defendant's PRV was ChoicePoint, Inc.; Defendant's current PRV is LexisNexis. (DeGrace Decl., ¶ 6, 5.)

Included in Defendant's database is a credit file on Plaintiff. (Fluellen Decl., ¶ 12.) In December 2006, ChoicePoint provided information regarding a judgment filed in a Camden court against "Bruce Summerfield." (Fluellen Decl., ¶ 13.) Plaintiff claims that the judgment was against his son, Bruce R. Summerfield. (Summerfield Dep., 59:22-60:3.) The name and address on the official court record regarding the judgment, however, matched Plaintiff's identification and thus his credit file. (Fluellen Decl., ¶ 14; Summerfield Dep., 22:12-17, 66:2-67:6.) Nothing in the court record indicated that the information concerned Plaintiff's son rather than Plaintiff; there was no date of birth or social security number included in the court record. (Summerfield Dep., 67:7-22.)

On February 22, 2007, Defendant received an on-line dispute on behalf of Plaintiff, sent by Plaintiff's daughter, stating that the judgment "does not belong to Bruce A. Summerfield. Please remove ASAP." (Fluellen Decl., ¶ 15; Summerfield Dep., 76:16-19.) Plaintiff received an online confirmation that his e-mail had been sent. It read:

> Your online investigation request is awaiting answers from the creditor, courthouse, and/or other agency that reported the item originally. Equifax verifies all credit account, public record, and collection account information with the original sources when you initiate an investigation....

(Soumilas Cert., Ex. E.)

Defendant advised ChoicePoint that Plaintiff had stated that the item was not his, and asked ChoicePoint to provide complete identification so that Defendant could compare the item to what it had on file. (Fluellen Decl., ¶ 16.) On February 28, 2007, ChoicePoint verified to Defendant that the identification matched and that the record was reporting accurately.[FN2] (Fluellen Decl., ¶ 16.) On March 2, 2007, Defendant sent a response to Plaintiff stating,

> [FN2.] By contract, in response to a verification request that arises from a consumer dispute, Defendant requires the PRV to verify all information from the primary source with a 100% accuracy rate. (Fluellen Decl., ¶ 11; DeGrace Decl., ¶ 17.)

Equifax contacted each source directly, and our investigation is now completed. If you have any additional questions or concerns, please contact the source of that information directly.

\* \* \*

Equifax verified that this item belongs to you. If you have additional questions about this item, please contact: Camden Cty CT, City Hall Room 311, Camden, NJ 08100.[FN3]

> [FN3.] Plaintiff points out that the actual location in Camden where the judgment was recorded is Superior Court, not Municipal Court, so Plaintiff's contacting any court in

264 F.R.D. 133
**(Cite as: 264 F.R.D. 133)**

City Hall would have proved fruitless in resolving Plaintiff's dispute. (Soumilas Cert., Ex. G.)

(Fluellen Decl., ¶ 16; Soumilas Cert., Ex. F.) Defendant does not provide the name and address of its PRV to consumers in responding to disputes because the PRV, as an independent contractor, is merely acting as Defendant's agent for obtaining public records. (DeGrace Decl., ¶ 14; Klaer Dep., 15:23-16:18, 20:10-20.)

**\*139** Plaintiff admits that he did not seek credit during the two years preceding the filing of the Complaint, (Summerfield Dep., 70:3-23), and Defendant's records show that the disputed judgment was not included in any credit reports, (Fluellen Decl., ¶ 17).

**A. Rule 23(a) Prerequisites**

The requirements of numerosity, commonality, typicality, and adequacy of representation " 'are meant to assure both that class action treatment is necessary and efficient and that it is fair to the absentees under the particular circumstances.' " *Barnes v. American Tobacco Co.,* 161 F.3d 127, 140 (3d Cir.1998) (quoting *Baby Neal v. Casey,* 43 F.3d 48, 55 (3d Cir.1994)). The Court will consider each of these elements in turn.

**1. Numerosity**

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable[.]" " 'No single magic number exists satisfying the numerosity requirement.' " *Banda v. Corzine,* Civil Action No. 07-4508(WJM), 2007 U.S. Dist. LEXIS 80932, at *53, 2007 WL 3243917, at 16 (D.N.J. Nov. 1, 2007) (quoting *Moskowitz v. Lopp,* 128 F.R.D. 624, 628 (E.D.Pa.1989)). However, the Third Circuit has previously held that the numerosity requirement will generally be satisfied "if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40." *Stewart v. Abraham,* 275 F.3d 220, 226-27 (3d Cir.2001).

[3] Plaintiff has asserted that in discovery responses, Defendant stated that at least 12,516 people received a letter "in form" to Plaintiff's letter after disputing a public record with the Defendant. (Pl. Br., pp. 3, 15;

Def. Br., p. 16, Pl. Reply, p. 3.) Accordingly, the proposed class likely includes several thousand individuals. Joinder of such a large number of plaintiffs would surely be impracticable. Numerosity is therefore satisfied, and the defense has not taken issue with the numerosity requirement.

**2. Commonality**

[4][5][6] Rule 23(a)(2) requires that there be "questions of law or fact common to the class[.]" To satisfy this requirement, the named plaintiff need only show that he "share[s] at least one question of fact or law with the grievances of the prospective class." *Stewart,* 275 F.3d at 227 (citation omitted); *see also Baby Neal,* 43 F.3d at 56 (citation omitted) ("Because the requirement may be satisfied by a single common issue, it is easily met ...."). Moreover, commonality does not require that members of the class share identical claims, but that the plaintiff's interests are representative of the absent class members. *In re Community Bank of N. Va.,* 418 F.3d 277, 303 (3d Cir.2005). Finally, an allegation that the defendants' overall policy injured the plaintiffs satisfies the commonality requirement. *See Danvers Motor Co. v. Ford Motor Co.,* Civil Action No. 02-2197(DMC), 2007 U.S. Dist. LEXIS 7262, at *23-24, 2007 WL 419285, at *8-9 (D.N.J. Jan. 31, 2007).

[7] Here, Summerfield and the unnamed proposed class members' claims involve the same factual and legal theories. They allege that a misleading form disclosure letter was sent following a public records dispute. Thus, all plaintiffs claim that they were injured in substantially the same way by the execution of Defendant's allegedly unlawful policies or practices under similar factual circumstances. For this reason, commonality is satisfied. The Court notes that the defense has not argued against commonality.

**3. Typicality**

"The typicality inquiry centers on whether the interests of the named plaintiffs align with the interests of the absent members." *Stewart,* 275 F.3d at 227. "The commonality and typicality requirements of Rule 23(a) tend to merge. Both serve as guideposts for determining whether ... the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Falcon,* 457 U.S.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

264 F.R.D. 133
**(Cite as: 264 F.R.D. 133)**

at 157 n. 13, 102 S.Ct. 2364. The proposed class representatives must "possess the same interest and suffer the same injury as the class members," *Falcon,* 457 U.S. at 156, 102 S.Ct. 2364, but "factual differences will not render a claim atypical if the claim arises from the **\*140** same event or practice or course of conduct that gives rise to the claims of the class members, and if it is based on the same legal theory." *Baby Neal,* 43 F.3d at 58. In addition, "[t]his Court ... has previously rejected the notion that class certification under Rule 23 is 'an all-or-nothing proposition' requiring class certification of all causes of action asserted in a single pleading." *Cannon v. Cherry Hill Toyota, Inc.,* 184 F.R.D. 540, 544 (D.N.J.1999) (citation omitted) (finding the typicality requirement satisfied, despite the fact that the named plaintiff brought an individual action in addition to the claims for which she sought class certification, because there was no indication that her interests failed to align with those of the absent class members). "[T]he threshold for satisfying the typicality prong is a low one." *Weisfeld v. Sun Chem. Corp.,* 210 F.R.D. 136, 140 (D.N.J.2002).

[8] In this case, Plaintiff alleges that after he disputed a public record appearing on his credit report, he received a form letter from Defendant "containing numerous false and deceptive misrepresentations regarding Equifax's actions in connection with disputes of public records appearing on the Class members' credit reports. The form letter, among other things, erroneously claims that: (1) the "source" of the disputed record was a local courthouse; (2) Equifax contacted that courthouse (the "source") directly itself; (3) the courthouse personnel "reviewed" the disputed record, "conducted an investigation" and "reported results" back to Equifax; (4) Equifax "verified" that the record belonged to the consumer; and (5) the consumer should contact the courthouse in order to resolve the dispute." (Pl.Br., p. 1.) This claim is the same as those of the absent putative class members because the Fair Credit Reporting Act, 15 U.S.C. § 1681i [FN4] "requires Equifax to accurately and truthfully disclose to consumers in connection with a dispute of information appearing on their credit report: (1) what Equifax did in connection with the dispute; (2) who is the actual source of the disputed information; and (3) what these entities did in response to the dispute." A significant part of the argument is that not only does Equifax not contact the court to conduct an investigation, but no one from ChoicePoint contacts the courthouse either. (DeGrace Jan. 2009

Dep., 66:8-12; 67:18-25; Fluellen June 2008 Dep., 43:15-19; DeGrace June 2008 Dep., 41:8-22; Fluellen Dec. 2008 Dep., 29:1-4, 37:18-21, 38:25-39:16; DeGrace June 2008 Dep., 83:1-25.) Summerfield's incentives in relation to this claim therefore seem to align with those of the rest of the putative class. Accordingly, the Court concludes that he has satisfied the typicality requirement, which Defendant has not disputed.

FN4. "[I]f the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer and the consumer notifies the agency directly, or indirectly through a reseller, of such dispute, the agency shall, free of charge, conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file in accordance with paragraph (5), before the end of the 30-day period beginning on the date on which the agency receives the notice of the dispute from the consumer or reseller.

Before the expiration of the 5-business-day period beginning on the date on which a consumer reporting agency receives notice of a dispute from any consumer or a reseller in accordance with paragraph (1), the agency shall provide notification of the dispute to any person who provided any item of information in dispute, at the address and in the manner established with the person."

**4. Adequacy of Representation**

The Third Circuit has adopted a two-pronged test for determining the adequacy of representation by the named plaintiffs and their counsel: "(a) the plaintiff's attorney must be qualified, experienced, and generally able to conduct the proposed litigation, and (b) the plaintiff must not have interests antagonistic to those of the class." *Wetzel v. Liberty Mut. Ins. Co.,* 508 F.2d 239, 247 (3d Cir.1975). "A party challenging the class's representation has the burden to prove that the representation is not adequate." *Varacallo v. Mass. Mut. Life Ins. Co.,* 226 F.R.D. 207, 233 (D.N.J.2005); *see also* In re *Prudential Ins. Co. of*

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

264 F.R.D. 133
**(Cite as: 264 F.R.D. 133)**

*Am. Sales Practices Litig.*, 962 F.Supp. 450, 519 (D.N.J.1997).

**\*141** Defendant does not challenge the first prong of the adequacy inquiry. Moreover, after considering the submissions in support of the instant motion, the Court has concluded that the proposed class counsel is indeed "qualified, experienced, and generally able to conduct" this litigation.

Defendant does take issue with the named Plaintiff's adequacy of representation because he "(1) had never seen or read the Complaint until Equifax's counsel showed him a copy at his deposition, (2) has no understanding whatsoever of what a class action is, and (3) ... disagrees with his own counsel's decision to seek only statutory damages under a willfulness theory at the expense of a negligence claim for actual damages for himself and all putative class members." (Def. Br., p. 1. *See also* Summerfield Dep., 44:3-10; 132:22-133:3; 80:6-14, 110:4-13.)

[9][10] A class representative's lack of knowledge about his case does not render him an inadequate representative. *Surowitz v. Hilton Hotels Corp.*, 383 U.S. 363, 86 S.Ct. 845, 15 L.Ed.2d 807 (1966). *See also Lewis v. Curtis*, 671 F.2d 779, 789 (3d Cir.1982) (Even where the named plaintiff "displayed a complete ignorance of the facts concerning the transaction he was challenging," the adequacy requirement was met.). After careful consideration of the record, the Court finds that the named Plaintiff possesses the requisite knowledge about the case such that he can make informed decisions regarding the litigation. He was able to articulate the basis for the lawsuit, and he has shown commitment to the case.

[11] The more difficult question is whether, by electing not to pursue actual damages, Plaintiff is still an adequate class representative. The Court has reviewed the myriad of cases from other jurisdictions which have been briefed by the parties, and has found most persuasive the opinion in *Chakejian v. Equifax Information Services LLC*, 256 F.R.D. 492 (E.D.Pa.2009). There, the Honorable Anita B. Brody granted class certification in an almost identical case where the named plaintiff sought only statutory damages, punitive damages, and fees in Pennsylvania under the willful noncompliance section of FCRA, and eschewed any actual damage claim for negligent violations of the Act. 256 F.R.D. at 496. She wrote:

As pointed out by Chief Judge Easterbrook of the Seventh Circuit Court of Appeals, "[u]nless a district court finds that personal injuries are large in relation to statutory damages, a representative plaintiff must be allowed to forego claims for compensatory damages in order to achieve class certification." *Murray v. GMAC Mortgage Corporation*, 434 F.3d 948, 953 (7th Cir.2006) (remanding after district court denied certification of a class of consumers who received an allegedly deficient notice under the FCRA). This is because, to deny class certification on the basis that the plaintiff "should have sought compensatory damages for herself and all class members rather than relying on the statutory-damages remedy," would make consumer class actions under the FCRA effectively "impossible." *Id.* at 952.

*Id.* at 499.

In finding that the plaintiff's failure to seek all available remedies in the FCRA class action was not a conflict of interest between the named representative and the other class members, the Judge Brody stressed the availability of the opt-out mechanism for those members of the putative class with claims for actual damages. *Id.* at 500. *See also Murray*, 434 F.3d at 953 ("When a few class members' injuries prove to be substantial, they may opt out and litigate independently").

Finally, in this case, as was the case in the Eastern District of Pennsylvania, the likelihood of substantial actual damages is almost non-existent. "Choosing to pursue only statutory damages under 15 U.S.C. § 1681n in cases like these is a litigation strategy that is not the court's place to second guess." *Id.* at 499 n. 4. Accordingly, the Court finds that the named Plaintiff does not have an interest antagonistic to the interests of the class. He is an adequate class representative.

**B. Rule 23(b) Requirements**

To be certified, a class must not only satisfy the requirements of Rule 23(a), but must **\*142** also demonstrate that the action is maintainable under Rule 23(b)(1), (2), or (3). *Amchem Prods. v. Windsor*, 521 U.S. 591, 613, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997). As stated above, Plaintiff seeks class certification under Rule 23(b)(3), which provides for certi-

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

264 F.R.D. 133
**(Cite as: 264 F.R.D. 133)**

fication when

> the court finds that the questions of law or fact
> common to members of the class predominate over
> any questions affecting only individual members,
> and that a class action is superior to other available
> methods for the fair and efficient adjudication of
> the controversy.

Fed.R.Civ.P. 23(b)(3). Class certification under this provision must satisfy the twin requirements of predominance and superiority. *Newton,* 259 F.3d at 186. Each will be discussed in turn.

**1. Predominance**

With regard to predominance, the Third Circuit has explained,

> Predominance tests whether proposed classes are
> sufficiently cohesive to warrant adjudication by
> representation, a standard far more demanding than
> the commonality requirement of Rule 23(a), requir-
> ing more than a common claim. Issues common to
> the class must predominate over individual issues.
> Because the nature of the evidence that will suffice
> to resolve a question determines whether the ques-
> tion is common or individual, a district court must
> formulate some prediction as to how specific issues
> will play out in order to determine whether com-
> mon or individual issues predominate in a given
> case. If proof of the essential elements of the cause
> of action requires individual treatment, then class
> certification is unsuitable.

*In re Hydrogen Peroxide Antitrust Litig.,* 552 F.3d at 310-11 (internal citations and quotations omitted). Thus, the court must "examine the elements of plaintiffs' claim through the prism of Rule 23" to deter-mine whether predominance is established. *Id.* at 311. Plaintiffs must demonstrate that the elements of their case are "capable of proof at trial through evidence that is common to the class rather than individual to its members." *Id.*

The predominance element incorporates, but is more demanding than, the commonality requirement of Rule 23(a). *In re Warfarin Sodium Antitrust Litig.,* 391 F.3d 516, 528 (3d Cir.2004). The inquiry "fo-cuses on whether the efficiencies gained in resolving

these common issues together are outweighed by the individual issues presented for adjudication." *Cannon,* 184 F.R.D. at 545 (citation omitted). "That common issues must be shown to 'predominate' does not mean that individual issue[s] need be non-existent. All class members need not be identically situated upon all issues, so long as their claims are not in conflict with each other." *Id.* (citation omitted).

Defendant argues that the questions of "(1) whether [Defendant's] conduct as to each class member was willful and (2) issues concerning statutory and puni-tive damages" predominate over any common issues in this case.

[12] To show willful noncompliance with the FCRA, a plaintiff must demonstrate that the defendant "knowingly and intentionally committed an act in conscious disregard for the rights of others." *Cushman v. Trans Union Corp.,* 115 F.3d 220, 227 (3d Cir.1997) (holding that to justify an award of punitive damages under 15 U.S.C. § 1681n, the de-fendant's actions must "be on the same order as will-ful concealments or misrepresentations") (citations omitted). Thus, the claim will focus on Defendant's policies and procedures with respect to issuing rein-vestigation letters, and whether Defendant knew, or consciously disregarded, that the form letters were false or misleading in violation of FCRA. As such, although willfulness is necessarily a fact-bound in-quiry, individual issues will not predominate because the Defendant's conduct was consistent with its own policy and practice from one consumer to the next. This case is readily distinguishable from *Nafar v. Hollywood Tanning Systems, Inc.,* No. 08-3994, 2009 WL 2386666, *7 (3d Cir. Aug. 5, 2009) (finding "in-dividual issues regarding plaintiff's behavior may, in certain cases, defeat predominance in a NJCFA class action, despite the uniformity of a defendant's mis-representations or omissions"), because Plaintiffs here are merely recipients **\*143** of the form letter. Nothing about Plaintiffs' behavior or conduct impacts the case; it is Defendant's actions that are judged.

Further, "[g]iven the nature of [P]laintiff's claims, this is not a case in which the amount of the damage award is likely to differ from consumer to consumer, particularly in view of the plaintiffs' decision not to pursue actual damages." *Chakejian,* 256 F.R.D. at 501. The proposed class is sufficiently cohesive to meet the predominance requirement.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

264 F.R.D. 133
**(Cite as: 264 F.R.D. 133)**

**2. Superiority**

[13] The superiority analysis focuses on whether a class action is the best method for achieving a fair and efficient adjudication. *Newton,* 259 F.3d at 186. To this end, Rule 23(b)(3) provides a non-exhaustive list of several factors to help determine whether a class action is the superior method of adjudication:

(A) the class members' interests in individually controlling the prosecution or defense of separate actions;

(B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D) the likely difficulties in managing a class action.

Fed.R.Civ.P. 23(b)(3).

[14] It appears that putative class members would have little interest in pursuing individual claims against Defendants. "It is generally recognized that class certification is preferred where 'the recovery being sought by each of the plaintiffs is not sufficiently large to render individualized litigation a realistic possibility.' " *Cannon,* 184 F.R.D. at 546 (quoting *In re Ford Motor Co. Ignition Switch Prods. Liab. Litig.,* 174 F.R.D. 332, 351 (D.N.J.1997) (in turn citing *Phillips Petroleum Co. v. Shutts,* 472 U.S. 797, 809, 105 S.Ct. 2965, 86 L.Ed.2d 628 (1985))). Plaintiff has sought statutory damages under FCRA in the range of $100 to $1,000. Given the relatively small economic stake that any one class member has in this case, the first factor favors class treatment. *See Murray,* 434 F.3d at 953 ("Only when all or almost all of the claims are likely to be large enough to justify individual litigation is it wise to reject class treatment altogether.").

Defendant has argued that "the fee-shifting provision of the FCRA provides sufficient incentive for an individual to pursue" negligence and actual damage

claims against the Defendant. (Def. Br., p. 2.) "These financial incentives might not encourage each putative class member to bring suit, but they dispel the notion that a class action is the only way to adjudicate the lawfulness of the defendant's practices." *Klotz v. Trans Union, LLC,* 246 F.R.D. 208, 217 (E.D.Pa.2007). Still, class actions have not been foreclosed merely by the presence of a fee shifting provision.

In this case, not only is the potential individual recovery small, but as discussed during oral argument, "meaningful enforcement of the statute through individual consumer litigation is unlikely." *Chakejian,* 256 F.R.D. at 501. Regarding Defendant's argument that it faces a "super penalty" because it could potentially be liable for $12 million without any proof of harm, merely for a technical violation of FCRA, it appears that Defendant's argument is with Congress, who enacted the statute. *See Murray,* 434 F.3d at 953 (observing that many laws that authorize statutory damages also limit the aggregate award to any class, but FCRA does not). In addition, "class certification is not the stage at which due process concerns should be addressed, or anticipated." *Chakejian,* 256 F.R.D. at 502 (citing *Parker v. Time Warner Entertainment Co., LP,* 331 F.3d 13, 22 (2d Cir.2003)).

The second factor also favors class certification. The Court is unaware of any other FCRA litigation pending against the Defendant by the potential class members in New Jersey. The third factor favors certification because it is generally "desirable to litigate similar, related claims in one forum." *Cannon,* 184 F.R.D. at 546 (citation omitted). Lastly, the Court has no reason to believe there will be any difficulty in managing this case. Therefore, the fourth factor also points to the superiority of class treatment in this case.

**\*144 C. Class Definition**

Defendant has argued that due to reference to a "substantially similar" letter to that which the Plaintiff received, the proposed class is not objectively ascertainable, as the proposed class definition "requires individual fact-finding just to determine class membership." (Def.Br., p. 2.) "[D]efining a class by reference to a standardized letter does not require an individual evaluation of the claims, and courts have had no difficulty in certifying consumer classes based

264 F.R.D. 133
**(Cite as: 264 F.R.D. 133)**

upon similar language." *Chakejian, 256 F.R.D. at 497* (citations omitted). Nonetheless, as Judge Brody did in Pennsylvania, this Court will redefine the class to reflect that Defendant issues the form reinvestigation letter in the case of public records disputes only. Therefore, the class is defined as:

All consumers in the State of New Jersey to whom, beginning two years prior to the filing of this Complaint and continuing through resolution of this action, in response to a dispute about the accuracy of a public record that Defendant reported (including, but not limited to bankruptcies, liens, or judgments), Defendant sent a letter substantially similar to the Letter attached to the Complaint as Exhibit A.

**D. Notice to Potential Class Members**

Federal Rule of Civil Procedure 23(c)(2)(B) provides that, in any class action maintained under Rule 23(b)(3), notice shall be given to the class in the best practicable manner. Plaintiff should submit a proposed form of notice to the class within 30 days.

**E. Appointment of Class Counsel**

Rule 23(g)(1) requires the Court to appoint class counsel. As previously discussed, the Court finds that Plaintiff's counsel is "qualified, experienced, and generally able to conduct the proposed litigation," *Wetzel, 508 F.2d at 247.* The Court will therefore appoint them as class counsel.

### *CONCLUSION*

For these reasons, as well as those placed on the record during oral argument on September 24, 2009,

IT IS ORDERED on this 30th day of September, 2009 that Plaintiff's motion for class certification **[29]** is hereby *GRANTED.*

IT IS FURTHER ORDERED, upon consideration of the unopposed motion of Defendant Equifax Information Services, LLC to file a document under seal [33]; and

The Court finding that Exhibit 1 to Shawn DeGrace's Declaration, attached as Exhibit B to Equifax's Response in Opposition to Plaintiff's Motion for Class

Certification, contains sensitive business information that would place Equifax at a competitive disadvantage in the industry if not filed under seal; and

The Court having further found that no reasonable alternative to filing this document under seal exists as Equifax relies upon this document in its Response in Opposition to Plaintiff's Motion for Class Certification; and

For good cause shown,

The unopposed motion of Defendant Equifax Information Services, LLC to file a document under seal **[33]** is hereby *GRANTED;* Equifax's Exhibit 1 to Exhibit B attached to its Response in Opposition to Plaintiff's Motion for Class Certification is to be FILED UNDER SEAL.

### MEMORANDUM OPINION & ORDER

This matter has come before the Court on Defendant's October 15, 2009 motion for reconsideration filed pursuant to Local Civil Rule 7.1(I). The motion seeks reconsideration of this Court's September 30, 2009 Memorandum Opinion and Order granting Plaintiff's motion for class certification. The Court heard oral argument on the issue of class certification on September 24, 2009.

Local Civil Rule 7.1(I), entitled "Motions for Reconsideration," provides

A motion for reconsideration shall be served and filed within 10 business days after the entry of the order or judgment on the original motion by the Judge or Magistrate Judge. A brief setting forth concisely the matter or controlling decisions which the party believes the Judge or Magistrate Judge has overlooked shall be filed ....

**\*145** "The purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence." *Harsco Corp. v. Zlotnicki, 779 F.2d 906, 909 (3d Cir.1985).* It must be stressed, however, that reconsideration is "an extraordinary remedy" and is granted "sparingly." *NL Indus., Inc. v. Commercial Union Ins. Co., 935 F.Supp. 513, 516 (D.N.J.1996).*

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

264 F.R.D. 133
**(Cite as: 264 F.R.D. 133)**

[15] To succeed on a motion for reconsideration, the moving party must show "more than a disagreement" with the decision it would like reconsidered. *Anders v. FPA Corp.,* 164 F.R.D. 383, 387 (D.N.J.1995). Instead, there must be some "dispositive factual matters or controlling decisions of law" that were presented to the Court, but not considered. *Interfaith Cmty. Org. v. Honeywell Int'l, Inc.,* 215 F.Supp.2d 482, 507 (D.N.J.2002); *United States v. Compaction Sys. Corp.,* 88 F.Supp.2d 339, 345 (D.N.J.1999). Thus, a "mere recapitulation of the cases and arguments considered by the court before rendering the original decision" does not warrant a grant of reconsideration. *Carteret Sav. Bank, F.A. v. Shushan,* 721 F.Supp. 705, 706 (D.N.J.1989), *modified,* 919 F.2d 225 (3d Cir.1990); *S.C. v. Deptford Twp. Bd. of Educ.,* 248 F.Supp.2d 368, 381 (D.N.J.2003).

[16] A motion for reconsideration will likewise fail if the moving party merely raises arguments or presents evidence that could have been raised or presented before the original decision was reached. *NL Indus. Inc.,* 935 F.Supp. at 516. Thus, the moving party must actually present "something new or something overlooked by the court in rendering the earlier decision." *Khair v. Campbell Soup Co.,* 893 F.Supp. 316, 337 (D.N.J.1995) (citing *Harsco Corp.,* 779 F.2d at 909). The word "overlooked" is the operative term and has been consistently interpreted as referring only to facts and legal arguments that might reasonably have resulted in a different conclusion had they been considered. *United States v. DeLaurentis,* 83 F.Supp.2d 455, 474 n. 2. (D.N.J.2000).

Here, Defendant has argued that "the Court materially altered the class proposed by Plaintiff by adding certain language to the class definition." Specifically, the Court defined the class as

> All consumers in the State of New Jersey to whom, beginning two years prior to the filing of this Complaint and continuing through resolution of this action, in response to a dispute about the accuracy of a public record that Defendant reported (including, but not limited to bankruptcies, liens, or judgments), Defendant sent a letter substantially similar to the Letter attached to the Complaint as Exhibit A.

The only change made from the definition Plaintiff proposed was the addition of the explanatory modi-

fier "that Defendant reported." If Defendant had not reported an allegedly inaccurate record, there would be nothing for a putative class member to dispute. The plain language used here does not indicate that an official credit report must have been issued to a third party.

In addition, Defendant has reasserted its argument based upon the discussion of claim-splitting by the Third Circuit in *Nafar v. Hollywood Tanning Systems, Inc.,* No. 08-3994, 2009 WL 2386666, *7 (3d Cir. Aug. 5, 2009).* The *Nafar* case was discussed at oral argument, considered by this Court, and deemed inapposite. Indeed, the Court cited to *Nafar* and distinguished it from the instant case in the September 30, 2009 memorandum opinion. Therefore, the Court finds Defendant has restated assertions previously made without pointing to dispositive factual matters or controlling decisions of law that this Court overlooked. Thus, the Court finds no basis to reconsider its decision and the motion for reconsideration is denied.

Accordingly,

IT IS ORDERED on this 4th day of January, 2010 that the Defendant's motion for reconsideration of this Court's grant of class certification [53] is hereby *DENIED.*

D.N.J.,2009.
Summerfield v. Equifax Information Services LLC
264 F.R.D. 133

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.