IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RICHARD CHAKEJIAN, ) <br> on behalf of himself and all others ) <br> similarly situated, ) <br> ) <br> Plaintiffs, ) <br> vs. ) <br> ) <br> EQUIFAX INFORMATION SERVICES LLC, ) <br> ) <br> Defendant. ) <br> ) | C. A. No. 07- 2211 <br><br> CLASS ACTION |

## PLAINTIFFS' PRETRIAL MEMORANDUM

Class Representative Plaintiff Richard Chakejian, by and through his undersigned counsel, on behalf of the Class, submits this Pretrial Memorandum in accordance with the Court's November 30, 2009 Amended Scheduling Order (Docket No. 71) and Local Rule 16.1(c).

### I. NATURE OF THE ACTION AND JURISDICTION

Plaintiff Chakejian brought this class action on behalf of all Pennsylvania consumers who were sent the form letter attached as Exhibit A to the Amended Complaint (Letter) by Equifax. Plaintiff contends that the Letter misrepresented to consumers what Equifax did to investigate their public records disputes. Public records reported by Equifax include bankruptcies, tax liens and civil judgments. The Class certified by this Court in its decision of March 25, 2009 includes all Pennsylvania consumers to whom, beginning October 1, 2005 and continuing through the resolution of this action, in response to a dispute over a public record, Defendant sent the Letter. *Chakejian v. Equifax Info. Servs. LLC*, 256 F.R.D. 492, 503 (E.D. Pa. 2009).

Plaintiff contends in this case that the Fair Credit Reporting Act (FCRA), 15 U.S.C. §§ 1681 *et seq.*, requires Equifax to accurately and truthfully disclose to consumers what it does in

connection with investigating a consumer dispute, who it contacts, and who is the actual source of the information.[1] Unlike other FCRA cases that are primarily brought on an individual basis, this case centers exclusively upon the contents and veracity of a single Equifax form disclosure (*i.e.,* the Letter), not the accuracy or inaccuracy of a credit report, whether a reasonable investigation was conducted in connection with a dispute or whether a disputed item was deleted. By not providing truthful and accurate information regarding its public records source, Equifax sets consumers up for a veritable wild goose chase – running to a courthouse to dispute what Equifax has told them is an erroneous court record, only to find out that the court is reporting nothing incorrect.

Plaintiff here seeks statutory damages of $100 to $1,000 per violation for members of the Class for this inaccurate and false disclosure, as well as punitive damages. Like other parts of the Consumer Credit Protection Act, the FCRA has a statutory damages provision, set forth at section 1681n. When a defendant uniformly fails to provide consumers with a statutorily mandated disclosure or where such a disclosure or letter is false or misleading, class certification is appropriate, as this Court held. *Chakejian*, 256 F.R.D. at 503 (class should be certified for a statutory damages claim with respect to the cause of action that Equifax committed a willful violation of the FCRA). This Court was later joined in that conclusion by the District of New Jersey in *Summerfield v. Equifax Information Services LLC*, 2009 WL 3234191 (D.N.J. Sept. 30, 2009, *recon. denied*, Jan. 4, 2010) (certifying claim for statutory damages on behalf of class of New Jersey consumers who were sent Letter by Equifax).[2]

---

[1]  *See, e.g.*, 15 U.S.C. § 1681i(a)(6).

[2]  Equifax sought Rule 23(f) interlocutory review of both class certification decisions, and the Third Circuit denied the petition in each case. *Summerfield v. Equifax Information Services LLC*, No. 10-8005 (3d Cir. March 4, 2010) (Rule 23(f) petition *denied*); *Chakejian v. Equifax*

Jurisdiction of this Court arises under 15 U.S.C. § 1681p and 28 U.S.C. § 1331.

## II. STATEMENT OF FACTS

In 2005, Mr. Chakejian successfully fought a fraudulent involuntary bankruptcy filing from a business competitor against himself and his wife in the United States Bankruptcy Court for the Eastern District of Pennsylvania. After the fraudulent filing was dismissed, Judge Raslavich issued an order enjoining the individuals who filed the petition from any future bankruptcy filing against Mr. and Mrs. Chakejian. Additionally, pursuant to the order, all references regarding the fraudulent filing were to be stricken from the Chakejians' credit records. It is undisputed that the bankruptcy court record should not have been reporting on Mr. Chakejian's credit record. Nevertheless, at some point thereafter, the bankruptcy filing made its way onto Mr. Chakejian's Equifax credit report. Mr. Chakejian had an otherwise excellent credit history; and this bankruptcy was the only derogatory account or information on his credit report.

Mr. Chakejian noticed the error in January 2007, and promptly disputed the bankruptcy record by sending a letter to Equifax dated January 16, 2007, which specifically identified and explained the erroneous record. Further, Mr. Chakejian provided documentation to Equifax, including the bankruptcy court's May 17 Order and the credit report demonstrating the gross error.

Notwithstanding this, later in January, Mr. Chakejian received a form Letter from Equifax dated January 26, 2007, which Equifax characterized as describing the "results" of Equifax's investigation of his dispute. In the Letter, Equifax made the following representations:

> 1. That Equifax itself had contacted the "source" of the erroneous bankruptcy record, which it identified as "***Eastern District of PA, Robert NC NIX***

---

*Information Services LLC,* No. 09-8020 (3d Cir. May 18, 2009) (same).

3

>   ***Federal Buil [sic], 900 Market St RM 400, Philadelphia PA   19107-4293***"
>   (emphasis in original);
>
> 2. That it had contacted the source (*i.e.*, "NIX Federal Buil") "directly;"
>
> 3. That Equifax had "verified" that the "item" "belong[ed]" to Mr. Chakejian;
>
> 4. That if Mr. Chakejian had any questions regarding the information provided to Equifax, he should contact the "NIX Federal Buil" directly; and
>
> 5. That as part of its usual process (under the "Notice to Consumers" section) upon receiving his dispute, Equifax had:
>
>     i.   provided notification of his dispute to the bankruptcy court;
>
>     ii.  that the bankruptcy court had "review[ed] the information" regarding his dispute;
>
>     iii. "conduct[ed] an investigation" with respect to the disputed information[;]
>
>     iv.  and "report[ed] the results back to [Equifax]."

After receiving the Letter, and having thought that he had solved the problem almost a year before in the bankruptcy court, Mr. Chakejian began to doubt himself and question whether his credit rating would ever be corrected.  He felt misled, violated and possibly tricked on several levels, because he knew that the bankruptcy court had been reporting the record correctly.

On March 4, 2007, Mr. Chakejian sent another dispute letter to Equifax with a certified copy of the Order (that he received by personally visiting Room 400 of the Nix Federal Building), at the instruction of an Equifax operator who told him by telephone that he needed to send a certified copy of the May 17 Order with a court seal on it to verify that it was not fake. This time, Equifax responded with a letter in which it stated that it had deleted the bankruptcy after having contacted the Robert NC Nix Federal Building directly again (false again). Although Mr. Chakejian was relieved that the bankruptcy record was removed, the Equifax letter was false as well for the reasons set forth below.

4

For the time period at issue in this action, Equifax purchased the public records data it sells (such as and including the Chakejian court record originating from the fraudulently-filed involuntary bankruptcy) from another large publicly-traded corporation named ChoicePoint.³ Like Equifax, ChoicePoint is a large corporation that admittedly plays a huge national role in the sale, dissemination, reporting and handling of consumer report information, whose activities are regulated by the FCRA.

Relating to public records, no one from Equifax ever visits or obtains any information from courts or courthouses. Rather, Equifax buys certain public records data from ChoicePoint, which sells this information to other companies as well. The information that Equifax obtains from ChoicePoint is never the full or complete court record or docket; rather it is a series of discrete items of information electronically populated and transmitted to Equifax, such as the person's name, address, bankruptcy chapter type and final status.

As for disputes, pursuant to a contract between Equifax and ChoicePoint, if a consumer disputes a public record appearing on her Equifax credit report with Equifax, Equifax "relays" notification of the dispute electronically (like an email) to ChoicePoint via a record called an Automated Consumer Dispute Verification ("ACDV"), and according to Equifax, its contract with ChoicePoint requires that ChoicePoint handle the investigation of the dispute. As a matter of policy and practice, Equifax does not send the consumer's dispute correspondence and/or any corroborative documentation to ChoicePoint.

Nobody from Equifax visits, communicates with or directly contacts any court or courthouse in connection with a consumer dispute of a public record dispute. It also undisputed that in connection with a routine dispute of a bankruptcy record like Mr. Chakejian's, that

---

³ The role performed by ChoicePoint is now performed by LexisNexis.

5

nobody – *even from ChoicePoint* – goes to or contacts the courthouse; if anything, a ChoicePoint employee may check the public record online through PACER. In fact, Equifax is uncertain as to whether anyone at ChoicePoint did anything at all to investigate to investigate Mr. Chakejian's dispute.

Equifax has admitted that, consistent with its usual procedures, no one from ChoicePoint ever contacted, visited or had any communication with anyone at the Nix Federal Building at 900 Market Street in connection with Mr. Chakejian's dispute. Equifax also never sent his dispute letter or the May 17 Order of Judge Raslavich to the Nix Federal Courthouse, or even ChoicePoint for that matter. The fact is that the only person who had any communication with the Nix Federal Building was Mr. Chakejian himself when he visited in utter disbelief after receiving the Letter.

There was never any communication at all between anyone at Equifax or ChoicePoint and the Nix Building, nor would there ever be for a dispute like Mr. Chakejian's where the court record is on PACER. No one from the Nix Federal Building "reviewed" any information regarding Mr. Chakejian's dispute, "conducted an investigation" regarding his dispute and/or reported results back to Equifax, contrary to what the Letter represents. The Letter was simply a series of gross and reckless misrepresentations.

As was the case with Mr. Chakejian's March 4, 2007 dispute when it finally deleted the bankruptcy record, it is also undisputed that even when Equifax decides to delete a public record from a consumer's credit report on its own, and without any contact with ChoicePoint, it will still send the consumer a letter falsely indicating that it contacted the courthouse, and that the courthouse investigated the dispute.

6

As part of the standardized process, ChoicePoint electronically notifies Equifax as to whether disputed item should be verified, modified or deleted. Equifax then sends the consumer the standardized form Letter that it sent to Mr. Chakejian on January 26, 2008. Equifax never notifies the consumer of the identity or contact information of ChoicePoint as required by the FCRA.

Mr. Chakejian's experience was typical of that experienced by Class members. Following his dispute of the inaccurate bankruptcy record, Equifax sent him the standardized form Letter it uses in such situations. The language contained in the Letter was standard language that Equifax uses with all consumers. The process that was followed in connection with Mr. Chakejian's dispute was the "normal" process that Equifax follows.

Equifax sends one correspondence with all of the data that it is lawfully obligated to disclose about the results of its investigation and the process that was followed. Even if a consumer calls or writes to obtain a description of its procedures, Equifax would refer that consumer back to original Letter that Mr. Chakejian received. Equifax believes that the Letter Mr. Chakejian received described its procedures.

Finally, Equifax continues to use the same form Letter to date when responding to a public records dispute. Notice has been sent at this Court's direction to 10,281 Pennsylvanians, thus far identified, to whom Equifax sent the Letter following a dispute of a public records item.

## III. DAMAGES

Plaintiff seeks statutory damages under the FCRA of $100-$1,000 for every member of the Class, plus punitive damages, under FCRA section 1681n.

IV.     **WITNESSES**

    Richard N. Chakejian, Jr.
    2137 Art School Rd.
    Chester Springs, PA  19425

    Mr. Chakejian is expected to testify about the fraudulent involuntary bankruptcy filed against him, his disputes to Equifax, and his receipt of the form Letter.

    Evan Hendricks, Esquire
    8321 Tomlinson Avenue
    Bethesda, MD  20817

    Mr. Hendricks is expected to testify consistent with his expert report in this matter concerning credit reporting industry practices and standards in connection with public records information, the automated reinvestigation of consumer disputes, FCRA disclosure practices by other CRAs, and the feasibility of alternative procedures and an alternative disclosure to the Letter.

    Shawn DeGrace
    Equifax Information Services, LLC
    1550 Peachtree Street, NW
    Atlanta, GA  30309

    Ms. DeGrace is expected to testify about Equifax's policies and practices concerning Equifax's acquisition and processing of public records information as well as Equifax's representations in the form Letter and regarding the form Letter.

    Alicia Fluellen
    Equifax Information Services, LLC
    1550 Peachtree Street, NW
    Atlanta, GA  30309

    Ms. Fluellen is expected to testify about Equifax's policies and practices concerning Equifax's reinvestigation of consumer disputes of public records information as well as Equifax's representations in the form letter and regarding the form Letter.

    Vicki Banks
    Equifax Information Services, LLC
    1550 Peachtree Street, NW
    Atlanta, GA  30309

    Ms. Banks is expected to testify concerning any purported changes to the form Letter.

    Lewis P. Perling, Esquire
    King & Spalding

   1180 Peachtree Street, NW
   Atlanta, GA 30309-3521

   Mr. Perling is expected to testify concerning any purported changes to the form Letter.

   Andy W. Klaer
   ChoicePoint, Inc.
   1100 Alderman Drive
   Alpharetta, GA 30005

   Mr. Klaer is expected to testify about ChoicePoint's business activities and relationship with Equifax in connection with public records and public records disputes.

   Corporate Representative
   ChoicePoint, Inc.
   1100 Alderman Drive
   Alpharetta, GA 30005

   This ChoicePoint Corporate Representative is expected to testify about ChoicePoint's business activities and relationship with Equifax in connection with public records and public records disputes.

   Mark Johnson or other Corporate Representative
   LexisNexis
   1900 Northwest Expressway, Suite 1600,
   Oklahoma City, Oklahoma 73118

   ChoicePoint's successor corporation is expected to testify about ChoicePoint's business activities and relationship with Equifax in connection with public records and public records disputes.

   **V.     EXHIBITS**

| 1 | Letter from Richard Chakejian to Equifax dated January 16, 2007 | EIS 58-63 |
|---|---|---|
| 2 | ACDV form between Equifax and ChoicePoint dated January 26, 2007 | EIS 72 |
| 3 | Letter from Equifax to Richard Chakejian dated January 26, 2007 | Ex. A to Amnd. Complaint |
| 4 | Letter from Richard Chakejian to Equifax dated March 4, 2007 | EIS 82-89 |
| 5 | Order of U.S. District Bankruptcy Court for the Eastern District of Pennsylvania dated May 17, 2006 | EIS 86-87 |
| 6 | Maintenance Record deleting bankruptcy | EIS 97 |
| 7 | Public Records Agreement with Exhibits | EIS 193-407 |
| 8 | Credit industry & credit reporting terms | EIS 408-925 |

9

| 9  | Written disclosure policy handbook 2005 | EIS 926-1043 |
|----|-----------------------------------------|--------------|
| 10 | Written disclosure policy handbook | EIS 1044 -1201 |
| 11 | FCRA Manual | EIS 1202 – 1524 |
| 12 | Introduction to Equifax Consumer Services Credit Reporting | EIS 1525 -2181 |
| 13 | Mixed File Procedures | EIS 2182-2372 |
| 14 | Consumer Dispute Verification Manual | EIS 2373-2587 |
| 15 | Amendment to Public Record Agreement | EIS 2592-2593 |
| 16 | Equifax Annual Reports for 2005-2009, showing net worth | http://www.equifax.com/investor_center/en_us |

Additionally, Plaintiff reserves the right to also rely upon and enter into evidence any exhibits identified by Defendant.

**VI.   TRIAL TIME**

Plaintiff estimates that the entire trial should last approximately 4-5 days.

**VII.   SPECIAL ISSUES**

Plaintiff intends to present certain demonstrative evidence at trial using software such as PowerPoint with a projector and/or overhead screen. Plaintiff would desire to coordinate such presentation with court staff and/or to use court equipment, and respectfully requests direction from the Court as to how to set up such projector and/or overhead screen presentation.

Respectfully submitted,

**FRANCIS & MAILMAN, P.C.**

BY:   */s/ John Soumilas*
JAMES A. FRANCIS
JOHN SOUMILAS
GREGORY GORSKI
Land Title Building, 19th Floor
100 South Broad Street
Philadelphia, PA 19110
(215) 735-8600

DAVID A. SEARLES
**DONOVAN SEARLES, LLC**
1845 Walnut Street, Suite 1100
Philadelphia, PA  19103
Dated: April 26, 2010                                         (215) 732-6067

10

**CERTIFICATE OF SERVICE**

I, John Soumilas, hereby certify that, on this date, I caused a true and correct copy of Plaintiffs' Pretrial Memorandum to be served by way of ECF Notification upon the following:

Catherine Olanich Raymond, Esquire
Christie Pabarue Mortensen & Young
1880 JFK Boulevard, 10th Floor
Philadelphia, PA 19103

Barry Goheen, Esquire
Lewis P. Perling, Esquire
King & Spalding
1180 Peachtree Street, NW
Atlanta, GA 30309-3521

*Attorneys for Defendant*
*Equifax Information Services LLC*

**FRANCIS & MAILMAN, P.C.**

  /s John Soumilas
JOHN SOUMILAS
Attorneys for Plaintiff
Land Title Building, 19th Floor
100 South Broad Street
Philadelphia, PA 19110
(215) 735-8600

DATE: April 26, 2010