**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

| | | |
|---|---|---|
| DONNA K. SOUTTER | ) | |
| *on behalf of herself and those similarly situated* | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Civil Action |
| v. | ) | No. 3:10-cv-107 |
| | ) | |
| EQUIFAX INFORMATION SERVICES, LLC | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF
MOTION TO OVERRULE OBJECTIONS AND TO COMPEL DISCOVERY
RESPONSES FROM DEFENDANT EQUIFAX INFORMATION SERVICES, LLC**

COME NOW the Plaintiff, by counsel, and for her memorandum in support of Plaintiff's motion to overrule the discovery objections of Defendant Equifax Information Services, LLC ("Equifax") and to compel discovery responses, she states as follows:

## I.     OVERVIEW

As detailed below, Plaintiff has done her best to avoid the need to bring this motion before the Court.  Plaintiff served the subject discovery requests on June 11, 2010.  Equifax requested additional time to provide what it promised would be substantive responses, and it filed a motion for enlargement on June 29, 2010.  Defendant's objections were served on July 26, 2010, and the meet and confer process began immediately thereafter.   Plaintiff's counsel has communicated a series of e-mail requests for more complete responses and a summary list of issues Plaintiff believed in dispute.  In addition to approximately ten telephonic or in person discussions of the matters addressed herein, the parties also held formal telephonic conferences on August 9, 2010 and again on August 30, 2010.  The Plaintiffs have met their obligation to

meet and confer.        While Equifax's non-compliance with discovery has been broad, Plaintiff

seeks a ruling from the Court only on a narrow set of requests that are <u>critical to the</u>

<u>determination that this Court will need to make on class certification</u>.  The requests at issue are:

**Interrogatory No. 6**
**Requests for Production No. 5, 8, 21, 28, 29, 34, and 42.**

Plaintiff has attached Equifax's objections to these various requests as "Exhibit A" to this motion.

The scope and substance of some of the requests has been narrowed or clarified further by the

Plaintiff in the meet and confer process.  Notwithstanding these concessions by the Plaintiff,

Equifax remains obstinate in its discovery position.

This Court is aware of Equifax's history in this District, but its discovery conduct has

continued undeterred even following this Court's rulings in *Faile* and *Robinson*.[1]  Equifax has

been sanctioned for its refusal to cooperate in discovery, including sanctions imposed for its

failure to produce the exact documents presently at issue ("frozen scans").    As the Circuit Court

of Florida's Ninth Judicial District ruled in *Angela Williams v. Equifax Information Services,*

*LLC,* observing the history in this Court and the Alexandria Division*:*

> Other judges under similar circumstances have harshly questioned Equifax's
> conduct.  See the Order dated July 23, 2007 attached as Exhibit N. to Plaintiff's
> motion for sanctions.  In that case, the Senior United States District Judge was so
> outraged by Equifax's conduct that he required a representative of the CEO to be
> present in the Court as well as Equifax's General Counsel, Kent E. Mast.  <u>More</u>
> <u>importantly, after being admonished for the impropriety and inappropriateness of</u>
> <u>Equifax's discovery conduct, Equifax's general counsel reassured Judge Payne</u>
> <u>that there would be no such conduct in the future.  It is clear from the Order that</u>
> <u>Judge Payne was going to enter harsh sanctions against Equifax had it not settled</u>
> <u>the case.  Unfortunately, Equifax's conduct has not stopped.  It continued in this</u>

---

[1] The Plaintiff has filed a copy of this Court's order in Faile and the Robinson sanctions hearing
transcript as Exhibits C and D, respectively.

<u>case.  It represents a pattern of flouting discovery orders.  Equifax had a legal
obligation to produce *all* the (frozen) scans.[2]</u>

Order on Motion for Sanctions, *Williams v. Equifax* (Exhibit B) (emphasis added).

In this case, Equifax has continued its pattern of discovery obstruction.  Plaintiff brings
this motion to discover further evidence rebutting Equifax's stubborn denial that a FCRA class in
this case would be numerous and ascertainable.  Plaintiffs have offered multiple alternatives and
stipulations to avoid the need for this motion.  Equifax has rejected all of these efforts.

## II.   <u>PLAINTIFF'S CLAIM AND THE PROPOSED CLASS</u>

This case is brought as a class action under the federal Fair Credit Reporting Act
(FCRA), 15 U.S.C. § 1681, et seq.  Plaintiff alleges on a class basis that Equifax Information
Services, LLC ("Equifax") violated 15 U.S.C. § 1681e(b) in its failure to use procedures
reasonably adequate to assure the maximum possible accuracy of its Virginia civil judgment
reportings.[3]  More specifically, Plaintiff alleges that Equifax systematically ignored hundreds of
thousands of public records showing that Virginia civil judgments had been satisfied, vacated, or
appealed (hereinafter "terminated").  In fact, Equifax has revealed in discovery that it did not
obtain <u>any</u> judgment terminations for at least a year and a half (ending just this year).  Prior to
that time and continuing through the present, Equifax so inadequately priced and incentivized its
agents to collect such termination records that they were often simply ignored.  Moreover,
Equifax concedes that it has never in its known history reviewed, audited, or otherwise sought to
determine if its third party agents were adequately collecting such records.

---

[2] In *Williams,* the Court struck Equifax's Answer and reserved jurisdiction for purposes of
imposing additional sanctions.  Ultimately, at trial, the jury awarded $219,000 in compensatory
damages and assessed $2.7 million in punitive damages against Equifax.
[3]  The First Amended Complaint alleges a class limited to judgments in the City of Richmond
General District Court.  Contemporaneously with her Motion for Class Certification, Plaintiff is
moving to amend her putative class definition to include all Virginia state court judgments.
Defendant Equifax has confirmed its consent to the amended class expansion.

At this Phase I stage of the litigation, the only issues are those necessary for the Court's consideration of Plaintiff's impending motion for class certification.  Defendant has formally agreed that it will forego any Phase I challenge (summary judgment) to the individual claim of Plaintiff Donna Soutter.  While the present First Amended Complaint pleads a class definition restricted to the Richmond General District Court, the facts in discovery have confirmed that the material issues in the case are uniform amongst Virginia court jurisdictions, and Defendant has consented to Plaintiff's motion to amend the class definition to encompass the entire Commonwealth.   Accordingly, the enlarged 15 U.S.C. § 1681e(b) class that Plaintiff's counsel has communicated to Equifax will include: (1) all natural persons (2) for whom Equifax's records note that a "hard inquiry"[4] credit report was furnished to a third party (3) at a time when any Virginia General District Court or Circuit Court judgment that had been satisfied, appealed, or vacated more than 30 days earlier was reported in Equifax's file as remaining unpaid.

To determine whether or not a consumer is a member of the class, Plaintiff's counsel thus needs information sufficient to answer the following questions:

1.       *Did Equifax furnish a credit report in response to a "hard inquiry" by one of its customers?*  A FCRA claim under 15 U.S.C. § 1681e(b) requires proof that a consumer report was furnished to a third party.  It is not enough that Equifax's internal file contains inaccurate information.  The Plaintiffs must also demonstrate that the consumer's credit report was

---

[4] Equifax defines "Hard Inquiry" on its website as:

> An indication on your credit file that a lender has obtained a copy of the report in order to evaluate your loan or credit application. An excess of hard inquiries within a six-month period may lower your credit rating. All the inquiries Equifax makes when you purchase our products and services are soft inquiries.

http://www.equifax.com/credit-information/credit-glossary#letterh last viewed on September 8, 2010.

published.  Equifax records the date of each "hard inquiry" consumer report furnished regarding a particular person.   The "hard inquiry" notation in Equifax's file is an acknowledgment that a credit report was furnished to a third party and it is the timing of these hard inquiries that Plaintiffs seek to discover.

      2.     *Was the credit report inaccurate?*  The inaccuracy at issue in this case is the failure to note that a reported civil judgment has been terminated.   That is, was the judgment Equifax reported to a third party as unpaid actually recorded at that time in the respective court records as satisfied, appealed, or vacated?  This determination requires an answer to two additional implicit questions: (1) Was there an unpaid judgment reporting in the subject credit report?  (2) If so, was that judgment actually satisfied, appealed, or vacated on that date?  If the answer to these two inquiries is 'Yes,' then Equifax furnished an inaccurate credit report.[5]

      The discovery disputes addressed in this motion all regard the first of these two components – whether Equifax furnished a hard inquiry credit report that contained an unpaid judgment.  Plaintiff's counsel has already discovered the second of these components – whether and when that judgment had been satisfied, vacated, or appealed.   Over the course of the case to date, Plaintiff's attorneys have contacted the Virginia courts and the Virginia court administrative offices.  They have interviewed judges and numerous civil clerks in various Virginia courts, including the General District Court for the City of Richmond.  After doing so, in preparation for the end of Phase I of the case and to demonstrate the ease of the task, Plaintiff's counsel obtained a paper list of all judgment satisfactions from the Petersburg General District Court for the last ten years.  However, more recently, the office of the Executive

_____

[5] Because 15 U.S.C. § 1681e(b) assigns liability only if an agency fails to act reasonably to assure maximum possible accuracy (as opposed to imposing strict liability), Plaintiff has suggested a window of 30 days within which Equifax should have obtained the updated Court record and updated its own credit files with the termination record.

Secretary of the Virginia Supreme Court is providing an electronic spreadsheet comprehensively detailing the judgment terminations for the seven years preceding the filing of this action for every General District and Circuit Court in the Commonwealth.  Plaintiff's counsel is advancing the $24,000 expense for this list.

Accordingly, Plaintiff will be able to answer the second of the above questions - was the subject judgment actually satisfied, appealed, or vacated on a particularly date.   This leaves only the first inquiry – on what dates did Equifax furnish a consumer credit report that contained an unpaid judgment.   With these two packets of tailored information, Plaintiff's counsel will be able to determine an accurate class list simply by juxtaposing the two data sets against one another.   Plaintiff's counsel will look to the first list to determine on what dates an unpaid judgment was reported and then check on those dates to determine if the judgment had already been terminated when the credit report was sold.   Plaintiff's construction of the class list – for numerosity, to prove ascertainability of the class, and for purposes of class notice – is thus a simple exercise of comparing Equifax's records of consumers with reported unpaid judgments on the dates of their hard inquiry credit reports against the electronic spreadsheet obtained from the Virginia Court system.  Regrettably, it is the critical and otherwise fully accessible information in the first regard that is found only in Equifax's computer systems that the Defendant now refuses to produce.

### III.   DISCOVERY REQUESTS AND COMPLIANCE WITH LOCAL RULE 37

#### A.    Plaintiff's Discovery Request are reasonable.

 Plaintiff's Interrogatories and Requests for Production, together with Defendant's objections and responses are attached as "Exhibit A".   Plaintiffs originally sought discovery of information related to Phase I, including both class certification issues as well as Plaintiff

Soutter's individual claim.  The latter overlapped significantly with class liability questions.  It was also unclear as to whether Equifax would even attempt an individual summary judgment motion.  The parties' counsel consulted, and Defendant then agreed to defer any individual summary judgment motion until Phase II.  This further limited the scope of discovery relevant in Phase I.

While Plaintiff does not believe that Equifax has fairly or adequately responded to a number of her liability Interrogatories and document requests, these disputes (e.g. those individual liability issues initially raised in the August 9, 2010 meet and confer summary) would not be properly before the Court at this stage.  Presently, the parties are only focused on class certification issues.  Upon transition of the case to Phase II, Plaintiffs will again commence a meet and confer process as to these later unresolved matters that go to the merits of the case.

The Interrogatory in greatest contention is **Interrogatory 6**, which after the meet and confer process was narrowed and clarified to state:

> **INTERROGATORY NO. 6:** For each consumer about whom Equifax has furnished a hard inquiry consumer report (a.) within the period commencing two years preceding the filing of the Complaint and through the date of this request, ***(b.)*** that contained a (Virginia civil judgment notation)**,** and (c.) in which that judgment was not reported as paid, satisfied, vacated or appealed, list the full name and last known address of that consumer, the date of each such report and the details of the judgment tradeline contained in that consumer's file.

Additionally, in the original text of the Interrogatory, Plaintiff stated:

> ***NOTE:***
>
> A.⠀⠀⠀⠀⠀⠀In lieu of a substantive response to this request, Plaintiff will accept Equifax's stipulations as follows: 1. The putative class is numerous and would exceed 300 persons; 2. The putative class membership is ascertainable through a comparison of the records of Equifax and those of either the General District Court electronic files or those of Lexis Nexis.

      B.         Plaintiff's counsel is familiar with Equifax's argument in other cases that it does not maintain sufficient archives in order to know the content of a specific consumer report on a specific date.   If Equifax asserts this position in this case, Plaintiff insists then that Equifax provide its answer by use of the frozen scans or other monthly archives to provide the above list for consumers about whom the report was furnished during a month in which Equifax's archives show the judgment as described to be in that consumer's file.

In response to this detailed request, Equifax has not stipulated to ascertainability, and in fact, it has contested same.  While its basis for refusing such concession remains unclear, in lieu of such stipulation, Plaintiff's Interrogatory 6 required Equifax to identify those consumers whose file contains both a hard inquiry and an unpaid judgment.

     This Interrogatory was propounded in conjunction with **Request for Production 5**, which requested:

      **REQUEST FOR PRODUCTION NO. 5:** In an electronically readable format, all archived reports you maintain regarding Plaintiff and each person whose credit file in any month during the two years preceding the filing of the Complaint contained a City of Richmond General District Court civil judgment that was not reported as satisfied, vacated, or appealed.

      ***NOTE:*** Plaintiff does not presently need this set of documents if the Defendant will stipulate that the class is numerous – containing at least 300 persons – and that membership is ascertainable.

**Request for Production 34** requested similar documents:

      **REQUEST FOR PRODUCTION NO. 34:** All reports or other documents which you are capable of printing or producing in electronic form from the databases (including your consumer databases and all tables, records, fields, screens and structural information in the databases such as "consumer personal information," "consumer address information," "public record detail," "dispute verification," and "notes" screens or fields) containing any reference to and/or information about Plaintiffs and the members of each proposed class including information provided via Metro Tape Format, Metro Tape 2 Format, or a Universal Data Form, and which regards the Plaintiff or a member of the proposed class.

Request No. 34 has been narrowed within the meet and confer process to seek only two categories of electronic documents for each putative class member from Equifax's database: (1) Frozen Scans and (2) Equifax's archive of consumer disputes within the last two years alleging the inaccurate reporting of Virginia judgments.

Defendant's credit reports are maintained by a system in which it takes a "snapshot" of every consumer's credit file at the end of each month.   Equifax refers to these saved electronic files as "frozen scans."   As the *Williams* court explained:

> This case is about the inaccurate information that Equifax put on plaintiff's credit reports.  The frozen scans are snapshots of those reports and show all the information in Equifax's various files on plaintiff and Angela Williams, for every month from January 2000 through December 2006.  This information is invaluable to plaintiff's case because plaintiff does not have credit reports for all those months. Generally, plaintiff only has a few credit reports from each year.

Williams Discovery Order, Exhibit B, pg. 2.  As detailed below, these "frozen scan" files – one per month per consumer – are easily searched and sorted in the course of Equifax's regularly conducted business and retrieved regularly for business and litigation purposes by various Equifax departments.

To preempt Equifax's predictable theoretical basis for denying ascertainability, Plaintiff also served **Request for Production of Documents 8**:

> **REQUEST FOR PRODUCTION NO. 8:** All Documents which you believe support your claim that generating an accurate class list, or list of putative class members (as the classes are defined in the Plaintiff's Complaint), would be difficult, impossible or expensive.

Despite its refusal to concede ascertainability and its continued assertion of phantom or theoretical arguments to support its refusal, Equifax has not produced any documents in response to this request and has even stated as its answer:

<u>Equifax has not made such a claim in this case. At this time, Equifax is still in the process of researching whether the class can be ascertained without undue burden and expense.</u>

**B.      Equifax's Objections are procedurally improper and substantively meritless.**

For its objections to these three requests (and others addressed below), Equifax asserted the common and improper defense mantra that the requests were "*overly broad, unduly burdensome, and seek[] information that is neither relevant to any issue in this case nor reasonably calculated to lead to the discovery of relevant or admissible evidence*" (Interrogatory 6 and Request for Production 34) and "*overbroad, unduly burdensome and expensive*" (Request for Production 5).[6] As considered below, these objections are meritless. Further, even if there was some theoretical basis for making such assertions – for example, an alleged unreasonable expense to produce such information – Equifax's objections wholly fail to meet the requirements by which to assert such an objection.

**1.      Relevance objections.**

The easiest of these objections to dispose of is that of relevance. "Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). Rule 26 governs the scope of discovery, stating: "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed.R.Civ.P. 26(b)(1). As the Court recently explained:

---

[6] Equifax also objected to Interrogatory 5 and Request for Production 34 because the information sought is confidential, either as to other consumers or as to asserted trade secrets. In both regards, to the extent that such objection was reasonable when first made, they are now moot. The Plaintiff has since agreed to and this Court has entered a comprehensive Protective Order allowing Defendant's designation of such records as confidential or even attorneys eyes only.

Equifax also originally objected to Request for Production 34 as "vague and ambiguous" before the request was simplified and streamlined in the meet and confer process.

> Relevant information "need not be admissible at the trial," and is discoverable "if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Id.* Relevance is construed broadly to include "[a]ny matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 353, 98 S.Ct. 2380, 57 L.Ed.2d 253 (1978).  A request for discovery "should be considered relevant if there is any possibility that the information sought may be relevant to the subject matter of the action." *In re Folding Carton Antitrust Litig.,* 83 F.R.D. 251, 254 (N.D.Ill.1978). The burden is on the party resisting production to show "specifically how, despite the broad and liberal construction afforded the federal discovery rules, each interrogatory is not relevant. *Roesberg v. Johm-Manville Corp.,* 85 F.R.D. 292, 296 (E.D.Pa.1980).

*Cappetta v. GC Services, Ltd*., 2008 WL 5377934, •2 (E.D.Va. 2008).  Equifax has not

proffered and cannot possibly make a good faith argument that information and

documents necessary to establish the size and viability of a putative class are irrelevant.

In fact, this is the single open issue in Phase I. "For a relevance objection to be adequate,

it must be ' 'plain enough and specific enough so that the court can understand in what

way the interrogatories are alleged to be objectionable.' " *Panola Land Buyers Ass'n v.

Shuman,* 762 F.2d 1550, 1559 (11th Cir.1985)(*quoting Davis v. Fendler,* 650 F.2d 1154,

1160 (9th Cir.1981) " *Id*. at *3.  Equifax's objections do not even attempt such

explanation.

### 2.    Overbroad and unduly burdensome objections.

Defendant's remaining "overbroad" and "unduly burdensome" objections should be summarily

stricken.   They are improper on their face.   Equifax does not attempt to articulate any particular

burden or expense, let alone offer testimony by affidavit to support its assertion.  "Just as with

relevance objections, merely stating that a discovery request is "overbroad" or "unduly

burdensome" will not suffice to state a proper objection. *See Josephs v. Harris Corp.,* 677 F.2d

985, 991-91 (3d Cir.1982); *McLeod, Alexander, Powel & Apffel, P.C. v. Quarks,* 894 F.2d 1482,

1485 (5th Cir.1990) (upholding sanction of default judgment against party who objected to

discovery requests with the statement, "Request is overly-broad, not specific, and creates a hardship on the producing party.")." *Id.*

A party asserting such a basis to withhold documents or refuse discovery must support its objection with more than the short "summary" offered as Equifax's objection.   A party asserting such an objection must submit affidavits or other evidence indicating with specificity the nature and extent of the burden.  *Id.* citing *Roesberg v. Johm-Manville Corp.,* 85 F.R.D. 292, 296-297 (E.D.Pa.1980).   Given its obligation to have timely articulated and proved the unique and difficult burden it claims generally to face in discovery compliance, it is significant that Equifax has not only failed to produce such evidence by its objections deadline, but as well that it has failed to provide any documentary support in response to Request for Production 8.  ("All Documents which you believe support your claim that generating an accurate class list, or list of putative class members (as the classes are defined in the Plaintiff's Complaint), would be difficult, impossible or expensive.").

The only substantive basis for Equifax's objections that has been offered in the meet and confer process related to its response to the above requests is the "expense" such compliance would entail.  While Equifax has not suggested any dollar amount or hours of employee time necessary for such production, it has stated to Plaintiff's counsel that the production would be resource intensive – using computer time to complete the data searches requested.   But discovery has revealed a class size easily over 100,000 consumers and the litigation exposure in the case is comparably large.   Even if Equifax had suggested, timely or otherwise, some specific expense or resource burden, this would not render the request objectionable.   The mere fact that responding to discovery requests may require the objecting party "to expend considerable time, effort and expense consulting, reviewing and analyzing 'huge volumes of documents and

information' is an insufficient basis to object" to a relevant discovery request." *Burns v. Imagine Films Entertainment, Inc.,* 164 F.R.D. 589, 593 (W.D.N.Y.1996) (*quoting Roesberg,* 85 F.R.D. at 296-97).   See also *Cappetta v. GC Service Ltd.,* 2008 WL 5377934, •3.

Further, when given an opportunity under oath to articulate or explain such a burden, its responsible employee testified that the process of gathering such information and even creating the more modest electronic spreadsheet would be of routine burden or expense and not cost or resource prohibitive.

### C.    Documents regarding Equifax's Frozen Scan archive file

Counsel for both parties have met and conferred in regards to each of the requests addressed herein.  These have been narrowed further in that process.  Throughout that process, Plaintiff's counsel has consistently offered Equifax an alternative to the subject discovery – simply stipulate that the class is numerous and ascertainable.  Despite the modest threshold of this Rule 23 burden, Equifax has refused both its stipulation as well as its alternative production of documents and information by which the contrived basis for that refusal can be debunked.

Defendant's counsel have not stated in writing any basis for Equifax's refusal to concede ascertainability.  After the meet and confer process, Plaintiff surmises that Equifax's refusal to concede the ability to determine which consumers were subject to an inaccurate credit report arises from its claimed lack of confidence in the completeness and adequacy of its frozen scan archive system.  Equifax apparently claims that it is unable to determine whether or not an unpaid judgment reported in a particular consumer's credit report.  Even with Plaintiff having solved the more difficult evidentiary component – whether or not the reporting was accurate – Equifax claims it cannot help in any regard.

Defendant's disingenuous position is something like the following: "Equifax takes a static snapshot of a consumer's file at one discrete minute in time each month. Therefore, if for example, that snapshot for the month of August 2008 was taken at 1:04 a.m. on August 31, 2008, Equifax can never know whether a credit report sold at 1:03 a.m. or at 1:05 a.m. on that same date (or any other time in the that month) actually looked the same as the snapshot and contained the inaccurate judgment.

Or put another way, if a frozen scan snapshot was taken on July 31 and again on August 31, and the inaccurate judgment appeared in both snapshots, Equifax asserts as a barrier to ascertainability and numerosity the theoretical possibility, however improbable, that at some time during the period between these two dates, the inaccurate judgment could have been removed from the file and then added back in before the later frozen scan date. And theoretically, the "hard inquiry" report could have been furnished while the judgment at issue was temporarily removed from the file, such that it would not have been contained in the credit report.

This theoretical difficulty, even if somehow material, would not justify Equifax's refusal to provide the requested files. The information sought would still be calculated to lead to the discovery of admissible evidence. At its very worst such evidence would be circumstantial, but still admissible. Further, although it has raised the possibility in the meet and confer process, Equifax's actual assertion of such an argument before the Court would be patently in bad faith. When the issue was considered at the deposition of Margaret Leslie, Equifax's responsible employee, she testified that the possibility that any unarchived changes were made to a public record judgment and then reversed during a frozen scan period is so negligible as to be meaningless in practice:

*Then if you see a judgment on a frozen scan and the next month see it on the frozen scan and it is in the same state, the same data, the same state, I would then make the assumption that I had not seen any update to that, that it's -- there were no changes during the month.  I don't have a problem with making that assumption because generally that would be true.*

*Then if you had a hard inquiry on the file during that time between those two snapshots, then in all likelihood that judgment was a part of credit report information returned with that hard inquiry.*

*[...]*

*Now, I was also saying that if they are exact on those two end points, there's a probability it was -- it was perpetual through the month. [...]*
*So I don't want you -- I don't want lead you to conclude it drops off and comes back on. That's not true.*

Deposition of Margaret Leslie, August 11, 2919, page 122: lines 3-15; page 125: lines 4-11.

Equifax has also floated a second argument as to why a frozen scan archive file would be imperfect for determining class membership.  That argument is similarly based on Equifax's apparent lack of confidence in the accuracy and completeness of its frozen scan credit files.  As explained above, Equifax's files are archived at the end of each month.  Equifax claims that it does not record the exact day of the month that an initial judgment or a later termination of a judgment is added to a consumer's credit file.  For example, if Equifax received a civil judgment and placed it in a consumer's credit file on March 15, 2008, it claims that such event would be dated in the archive only by the month and year, March 2008.  If that judgment was then updated to the Equifax credit file as satisfied a full year later, perhaps on July 17, 2009 (despite satisfaction in the courthouse on an earlier date), Equifax's archive frozen scan would have recorded the date that satisfaction occurred only as a month and year and not as an exact day – July 2009 in the above example.  The Equifax argument then concludes that if Plaintiff's counsel received the documents and information as requested in discovery, they could still not determine whether a credit report that occurred in the month of July 2009, when the Equifax file was finally

changed, occurred before or after the satisfaction was recorded to the file that same month.  For example, assuming a July 17, 2009 date the satisfaction was added to the file, if the credit report was furnished on July 10, 2009, the inaccurate judgment would have remained in the credit report; if the inquiry occurred on July 23, 2009, however, the inaccuracy would have been previously corrected.  Without knowing the critical date of the satisfaction update in Plaintiff's file (July 17, 2009 in this example), Plaintiff and the Court would be unable to determine if a specific credit report was inaccurate.

As with the first argument, this limitation would not justify Equifax's wholesale refusal to provide <u>any</u> information or documents as requested.  Equifax's failure to retain or keep information in an ideal manner does not support its desire to prevent all discovery not withstanding such limitations.  "Sometimes in an effort to delay or defeat the litigation, the defendant will assert that the information is not readily available from its records or that retrieving the information is burdensome.  This may or may no be the case.  […]  [T]he fact that a business maintains records in a manner that makes it difficult to retrieve information does not relieve it from the obligation to do so."  National Consumer Law Center, *Consumer Class Actions,* Sixth Edition (2006), *Section 7.1.2.5 Discovery Directed to Identification of Class Members*, p. 97.  Accord *Kozlowski v. Sears, Roebuck and Co.*, 73 F.R.D. 73. 76 (D.Mass. 1976) ("The defendant may not excuse itself from compliance with Rule 34 by utilizing a system of record-keeping that conceals rather than discloses relevant records, or makes it unduly difficult to identify or locate them, thus rendering the production of documents an excessively burdensome and costly expedition."); See also *In re Brand Name Prescription Drugs Litig.*, 1995 U.S.Dist. LEXIS 8281 (N.D. Ill. 1995); *Baine v. Gen. Motor Corp.*, 141 F.R.D. 328, 331 (M.D. Ala. 1991).

Beyond the procedural problems with Defendant's position, it is also likely to have only a negligible impact on ascertainability, if any at all.   The evidence requested is still relevant and admissible as a means to ascertain class membership outside of such theoretical exceptions.  This informational obstacle raised by Equifax's whole cloth "defense" would only appear when the only hard inquiry credit report furnished for a specific consumer occurred in the same month that Equifax updated a judgment to show it as satisfied, appealed, or vacated.  None of these difficulties arise if Equifax has not yet properly updated an otherwise terminated judgment. These difficulties also do not arise if the consumer also has one or more other hard inquiry consumer reports furnished in any other earlier month.  In the above example, if there is an inquiry dated July 10, 2009 showing in the same July 2009 frozen scan in which the judgment was first updated as satisfied, it would be immaterial so long as there is at least one such inquiry in previous months before the judgment was satisfied.  FCRA recoveries are per person, not per violation. *Stillmock v. Weis Markets, Inc.*, 2010 WL 2621041 (July 1, 2010).  Because Equifax has refused to provide this data, neither party has been able to ascertain the size of the subset of consumers with just one credit report furnished and in the month when the subject judgment was then updated.  Even if there was more than a handful of such persons with uncertain class membership status, they could be easily carved out of the Court's certified class definition.  In the meet and confer process, one of the alternatives Plaintiff's counsel offered was just such a carve out.

Equifax also makes much ado about nothing as regards ascertainability.   By its rejection of Plaintiff's offered stipulations and its opposition to and refusal to comply with discovery, Equifax suggests a burden of exact precision not actually found in or imposed by Fed. R. Civ. P. 23.

Given the core dispute regarding the adequacy and completeness of Equifax's data

retention and archive system, several of Plaintiff's requests – narrowed even further in the meet

and confer process – are certainly calculated to lead to the discovery of evidence relevant and

admissible regarding the frozen scan system.   **Request for Production 21, Request for**

**Production 28** and **Request for Production 29** each in a different manner request Equifax's

documents with respect to its frozen scan and archive process and policies:

> **REQUEST FOR PRODUCTION NO. 21:**  Without regard to date,
> documents sufficient to identify your policy or policies with respect to
> the retention of documents, including, without limitation, any data stored
> in computer readable form.

> **REQUEST FOR PRODUCTION NO. 28:**  Documents which explain
> and/or describe when, how and under what circumstances you archive, retain,
> or capture data or information for files concerning Plaintiff's and consumers'
> respective personal identifiers.

> **REQUEST FOR PRODUCTION NO. 19:**  Documents which explain or
> refer to any of the following:

> a)      Archival of consumer reports and electronic data maintained;
> b)      On-line maintenance and storage of consumer reports accessed by
> subscribers and you;
> c)      On-line maintenance, storage, archival process, and microfiche process of
> consumer reports captured due to maintenance activity;
> d)      Generation and dissemination of summary profiles, derogatory data flags,
> credit scores, and adverse action codes/denial codes.

**Request for Production 27** seeks to discover the code dictionary or manual for reading and

understanding the frozen scan variables, abbreviations, codes and fields:

> **REQUEST FOR PRODUCTION NO. 27:**  All manuals which describe,
> detail, or explain the operation of or any codes within any computer
> program or software in which data or information has been compiled,
> created, stored, or organized for purposes of generating consumer reports.

Equifax has refused to produce any documents responsive to these requests, and the objections it

has asserted are identical in process and substance as those addressed above – relevance,

confidentiality, overbredth, and the assertion that the requests are overly burdensome. These

objections should be stricken for the reasons stated herein.

**D.    Identity of Consumers who have made Judgment disputes.**

Plaintiffs have also served a second set of requests. Not surprisingly, Equifax has

asserted similar objections. The lone request that Plaintiff herein prosecutes is **Request for**

**Production of Documents 42**, which stated:

> **REQUEST FOR PRODUCTION NO. 42 :** Produce the dispute
> letters, ACDVs and ACIS cases for each consumer with a Virginia address
> who your records show has made a dispute (request for reinvestigation) to
> you at any time since February 17, 2008 and which your employee or agent
> thereafter coded with any of the following dispute codes: 101, 102, 103 or 112.

This request attempts a different approach to establishing the existence of a certifiable class.

Equifax claims that it cannot identify class members who incurred the challenged reporting

inaccuracy. But, it maintains detailed records of each consumer dispute from which – using

codes 101, 102, 103 and 112 as stated in the request – Defendant can use to determine who made

a dispute that a Virginia judgment was inaccurately reporting as unpaid. To this request, Equifax

has objected:

> Equifax objects to this request on the basis that it is overbroad, unduly
> burdensome, expensive, not limited in time and seeks information which is
> neither relevant to this case, nor reasonably calculated to lead to the
> discovery of admissible evidence.

Plaintiffs ask the Court to strike these objections, as they are improper and inadequate. In fact,

they appear to have been merely cut and pasted from the similar objection paragraphs. For

example, the assertion that the request is "not limited in time" is facially contradicted by the text

of the request. No specific burden or difficulty is presented, let alone evidenced. It is difficult to

conceive of a way to more appropriately narrow such a request beyond the qualifiers "Virginia

judgment" and "coded with any of the following [4] dispute codes[.]"

19

With respect to the information requested, Plaintiff has compromised in the 'Meet and Confer' process to limit the information requested in this Phase of discovery to the names and addresses of each of the Virginia consumers who made a dispute to Equifax in the last two years in which they asserted that the judgment Equifax was reporting had been previously satisfied, vacated or appealed.  Equifax otherwise refuses to provide other information about this likely putative subclass and has not agreed to provide even the addresses of such individuals so that Plaintiff's counsel can contact them for further details and evidence.  Instead, Equifax has agreed only to produce this list to the Magistrate Judge to await this Court's determination as to whether or not the list is discoverable.[7]

Because Equifax has not made any proper objection to this request, the information sought should be provided without restriction.   However, even if Equifax's objections were somehow validly asserted, they are also substantively without merit.  Equifax's objections to Request 42 are in two categories.  The first category of objections are those based solely on the difficulty and burden Equifax would face in compiling and producing the requested information – now narrowed to the name and address list.  These include claims that the request was "overbroad, unduly burdensome, [or] expensive[.]"  These objections, valid or not, have been resolved by the narrowed scope of the request agreed to by the Plaintiff (just a list of names and addresses) and have been objectively disproven for this narrowed scope by Equifax's acknowledged completion of the task of compiling that list for its production to the Magistrate Judge.  Equifax also objected on its assertion that the request was "not limited in time", a claim that is obviously rebutted by the inclusion of the phrase "at any time since February 17, 2008" in the original request.

---

[7] This solution was conceived solely by the Parties' counsel, and without input by the Magistrate Judge.

The second category of objection is relevance and admissibility.  Plaintiff has addressed the limited reach of a "relevance" objection in the liberal discovery process.  It is incredible that Equifax claims as irrelevant the number and identity of Virginia consumers who have (or may have) endured the same FCRA violation and circumstances as those experienced by the Plaintiff.  The Plaintiff will need to establish the size of a class, to show that it is reasonably ascertainable; to show that the claims of the Plaintiff are common to those of a defined class and typical of the claims of other consumers in such a class.  Further, the Plaintiff will likely proffer alternate subclasses in her Motion for Class Certification and one such subclass could include those consumers who affirmatively informed Equifax of the judgment inaccuracy in their credit file.

Equifax has already compiled the described list and is producing it to the Magistrate Judge.  Plaintiff asks only that it also do so to the Plaintiff.

### IV.   <u>CONCLUSION</u>

Equifax's boilerplate objections to discovery are not sustainable.  The information sought could not be more relevant to the Phase I class certification issues now before the Court.  Accordingly, the Plaintiff moves that the Court overrule the Equifax's objections to her discovery requests and order it to immediately and completely comply with regard to the same as stated herein.

Respectfully submitted,
**DONNA K. SOUTTER AND**
**TONY L. WEBB**,


_____/s/_____
Matthew J. Erausquin, VSB#65434
Counsel for the Plaintiffs
CONSUMER LITIGATION ASSOCIATES, P.C.
1800 Diagonal Road, Suite 600
Alexandria, VA  22314
Tel: 703-273-7770

Fax: 888-892-3512
matt@clalegal.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 13th day of September, 2010 I have electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification to the following:

John Anthony Love
King & Spalding
1180 Peachtree St NE
Atlanta, GA 30309-3521
TLove@KSLAW.com

Keasha Ann Broussard
King & Spalding (GA-NA)
1180 Peachtree St NE
Atlanta, GA 30309-3521
abroussard@kslaw.com

Barry Goheen
King & Spalding (GA-NA)
1180 Peachtree St NE
Atlanta, GA 30309-3521
bgoheen@kslaw.com

John Willard Montgomery, Jr.
Montgomery & Simpson, LLLP
2116 Dabney Rd
Suite A-1
Richmond, VA 23230
jmontgomery@jwm-law.com



                                        _____/s/_____
                                        Matthew J. Erausquin, VSB#65434
                                        Counsel for the Plaintiffs
                                        CONSUMER LITIGATION ASSOCIATES, P.C.
                                        1800 Diagonal Road, Suite 600
                                        Alexandria, VA  22314
                                        Tel:  703-273-7770
                                        Fax: 888-892-3512
                                        matt@clalegal.com