1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

```
------------------------------:
                              :
NICOLE M. ROBINSON,           :
                              :
                              :
     -vs-                     :     Case No. 1:06-cv-1336
                              :
                              :
EQUIFAX INFORMATION           :
SERVICES, LLC,                :
               Defendant.     :
                              :
------------------------------:
```

HEARING ON MOTIONS

May 11, 2007

Before:  T. Rawles Jones, Jr., Magistrate Judge

APPEARANCES:

A. Hugo Blankingship, III and Thomas B. Christiano,
Counsel for the Plaintiff

Lewis P. Perling and John W. Montgomery, Jr.,
Counsel for the Defendant

EXHIBIT
D
Blumberg No. 5118

1        NOTE:   The case is called to be heard at 10:15 a.m.

2   as follows:

3        THE CLERK:   Nicole Robinson versus Equifax

4   Information Services, case number 06-cv-1336.

5        MR. MONTGOMERY:   Good morning, Your Honor.   I am

6   John Montgomery.

7        THE COURT:   Good morning.

8        MR. MONTGOMERY:   And I want to begin by thanking the

9   Court and Your Honor for your indulgence last Friday when I

10  was unable to change my schedule to be up here as local

11  counsel on behalf of Equifax for a couple weeks.

12       THE COURT:   Happy to oblige.   I have not seen Mr.

13  Blankingship or Mr. Christiano this morning.

14       MR. PERLING:   Neither have we, Your Honor.

15       THE COURT:   Traffic is a mess out there.   And it's

16  not like them, or anybody else for that matter, to be late for

17  court in this courthouse.

18       MR. PERLING:   I came in from out of town and made

19  it, Your Honor, with all respect.

20       THE COURT:   Well--

21       MR. MONTGOMERY:   Maybe we can--  I mean, we haven't

22  gotten a call.  Of course, we don't have a cell phone with us

23  either, that's our problem.

24       THE COURT:   Well, I see Ms. Kabaoui has arrived, I

25  am going to call her case, and then we will take a brief

3

1    recess and see what we can find out.

2            All right.

3            NOTE:  At this point a recess is taken; at the

4    conclusion of which the case continues as follows:

5            THE COURT:  And in the meantime, plaintiff's counsel

6    have arrived in Robinson versus Equifax.

7            MR. BLANKINGSHIP:  Good morning, Your Honor.  Hugo

8    Blankingship for the plaintiff, with Thomas Christiano.

9            THE COURT:  Good morning.  Where were you at

10   10 o'clock, Mr. Blankingship?

11           MR. BLANKINGSHIP:  Your Honor, I called your

12   chambers on Tuesday to explain to them that I was upstairs in

13   Judge Brinkema's chambers, and had spoken with your law clerk

14   and--

15           THE COURT:  All right.  We may just have gotten, let

16   that get lost in the shuffle.  Not a problem.

17           MR. BLANKINGSHIP:  I thought we had gotten that all

18   straightened out earlier in the week.  My apologies, Judge.

19           THE COURT:  No.  If you did it, then I apologize to

20   you for bringing it back up again.

21           All right.  Now, we are here on plaintiff's motions

22   for sanctions.  The pleasantries that I have exchanged with

23   counsel on both sides thinly paper over a very unhappy

24   relationship between the parties in this case.

25           I have read your papers.  Mr. Blankingship, do you

1    need to add anything to what you have already said?

2         MR. BLANKINGSHIP:   I am not certain.   Unless you

3    have any questions, Judge, I think we have addressed them

4    rather fully.   I think that they speak for themselves.

5         We can't get answers to critical questions in this

6    case.   We can't get the documents that we need to put the case

7    together.   I received an affidavit last night from counsel for

8    Equifax from an individual who is allegedly looking for these

9    documents.

10        What I found that was most interesting from that

11   affidavit was there was no statement that these documents

12   don't exist, merely that they are having a difficult time

13   locating the documents.

14        These documents are in the computer.   These

15   documents are there.   These documents can be obtained and

16   produced.   And they simply have not been produced.

17        And the fact that the two critical documents that we

18   are looking for to explain how this file was able to change

19   miraculously from the identity thief's information to all of

20   my client's information, there just isn't a record on how this

21   transformation occurred.

22        And we can't get an answer from them.   We can't get

23   documents from them.   And their response is:   We don't know.

24   And I just find that very, very difficult to believe.   That a

25   company that is charged with such great responsibility in

5

1  credit reporting agencies, can come forward and say, I don't

2  know how all of this vital information moved from one file to

3  another and it's beyond us.

4       It's as if the computer has taken control of their

5  business and they have no understanding or control over their

6  own, their own computer system that they developed and

7  maintained and maintain that it's, you know, priority software

8  and we can't disclose how this thing works, but we don't even

9  know.  And I just find that just shocking.

10      There is an answer to this question.  It didn't just

11 accidentally happen.

12      The other problem that we have in this case is that

13 we have produced to them a long time ago, long before their

14 supplemental responses were due, a copy of the credit report

15 that came back from the mortgage lender.  And in that credit

16 report it clearly states that this 110899 file information is

17 in there.  It mentions the 110899 file.  It not only mentions

18 the 110899 file, but everything that is in the frozen data

19 scans for the 110899 file is in this credit report.

20      To say that it did not happen is not possible.  It

21 is there in black and white.  They didn't make it up.  These

22 people are not credit reporting agencies.  This is a mortgage

23 lender.  This information didn't just miraculously appear on a

24 credit report.  They got it when they downloaded the

25 information from Equifax.  And it says it came from Equifax.

6

1   And Equifax is the only one that has this information.

2          She doesn't have a problem with Experian.  She

3   doesn't have a problem Trans Union.  She has a continuing

4   problem with Equifax.

5          And they have an obligation to explain it.  And

6   slowly it starts coming out.  You know, well, actually, there

7   are other people who were involved in this case.  And it turns

8   out there is this woman in Manila in the Philippines who works

9   for some law office that they can't tell us anything about

10  that was handling the file on the critical day that all of a

11  sudden everything changes.  And they are not going to tell us

12  what she did, how she did it or what happened.  And they

13  simply say, well, she is not our employee.

14         We don't even know if she was their employee.  We

15  don't know if she was a lawyer.  It doesn't appear that way

16  because she has a code number just like all other Equifax

17  employees.  And she is in the file doing maintenance, changing

18  things in this file, but they are not explaining to us what

19  she did or how she did it.

20         All of which were requested and all of which this

21  Court ordered to be full and complete.  And these responses

22  simply aren't full and complete.  And if that's what they are

23  telling us, that that's all we have for you, then that's fine,

24  we can live with that going to trial, but I can't live with

25  them changing the story as we come to trial.  They are either

7

1   full and complete, or they are not.

2          And if they are, then you are stuck.  And don't come

3   forward and start being a chameleon and changing to whatever

4   it is that you want to change into on the day of trial and

5   then saying, well, yeah, okay, we did that and we are really

6   sorry.

7          That's just--  That's what we are concerned about.

8   We are concerned about the, the great transformation we are

9   going to see between the end of discovery and trial.

10         Thank you.

11         THE COURT:  Thank you.

12         Mr. Perling.

13         MR. PERLING:  Thank you, Your Honor.

14         I'd like to address a number of those points.  I do

15   have a declaration I would like to present to the Court that

16   Ms. Simpson has prepared.  We e-mailed a copy yesterday to Mr.

17   Blankingship's office.

18         THE COURT:  All right, let me see it.  A fax to

19   chambers would have been helpful or an e-mail.

20         MR. PERLING:  My apologies, Your Honor.  I got on a

21   plane late yesterday afternoon.

22         THE COURT:  Well, you are from a big firm, Mr.

23   Perling.

24         MR. PERLING:  Yes, you are right, Your Honor.

25         THE COURT:  Let me read it.

8

1          MR. PERLING:  Absolutely.

2          THE COURT:  All right.

3          MR. PERLING:  Your Honor, I think the point of the

4    declaration and the point, of course, we make in our response

5    is that this is not a situation where Equifax is hiding

6    information.  They are not refusing to respond.  They are not

7    refusing to comply with the Court order.  They are not

8    objecting to discovery and failing to produce it based on some

9    frivolous objection.

10          They are in fact producing the critical documents.

11    They are issuing responses per the Court's order based on all

12    the information in its possession as the rules require and, in

13    effect, has acted in compliance with the Court's order by

14    providing all the information in its possession.

15          Mr. Blankingship said it exactly perfectly, these

16    are full and complete responses.  Equifax stands behind its

17    full and complete responses.

18          Now, if he asks a question on deposition and

19    somebody makes a conclusion based upon a question that he

20    asks, should Equifax be precluded from making that same

21    statement at trial?  We would submit to the Court that they

22    shouldn't.

23          However, the responses to the interrogatories and

24    the responses to the production of documents and the documents

25    that have been produced are all of the information that

9

1    Equifax has.

2         We have presented in our brief the BizProLink case

3    which we think is very comparable to this situation.   In

4    effect, in that case the movant was complaining that they only

5    got certain documents and that there were other documents they

6    thought to be in existence and they didn't get them.   And

7    BizProLink came out or the respondent came out and said, this

8    is all we have, we are fully complying with the discovery by

9    providing all that we have.

10        As the declaration states, they have made diligent

11   efforts to find the needle in the haystack.   They have

12   produced everything that is in fact available to Equifax in

13   producing that information.

14        THE COURT:  Well, a skeptic, Mr. Perling, and again,

15   as I did at the last hearing, I accept your representations as

16   an officer of the court about what you have done and what you

17   have told your client to do, but a skeptical view of the

18   situation here would be that Equifax has not produced

19   everything it has.   It has produced everything that it has

20   found.

21        And Ms. Simpson's declaration is perfectly conducive

22   to this reading, they have produced what they have found as a

23   result of the effort that they have made.

24        MR. PERLING:  Exactly, Your Honor.

25        THE COURT:  Not necessarily everything that's there.

1        MR. PERLING:  I can't disagree with Your Honor.  And

2   I think that our point with regard to the motion for sanctions

3   is that is an extremely drastic measure to lodge against

4   Equifax when as, they are essentially acting in good faith and

5   searching for the needle in the haystack and producing as it

6   comes up with everything it can in these search programs and

7   in these thousands of pages of documents and culling through

8   these thousands of Nicole Robinsons, an admittedly common

9   name, from both Texas and Maryland, that it is in fact

10  producing everything it can that these searches come up with.

11       Of course, we live in the day and age of electronic

12  discovery.  And Equifax is in fact culling its database for

13  that information and it has produced everything it can.

14       Just--  You know, I think a lot of this could be

15  cleared up aside from sanctions, Your Honor.  Plaintiff's

16  counsel has said he wants to take Equifax's depositions.  That

17  would be the appropriate step, to come forward and say, look,

18  here are your interrogatory--  In fact, I talked to the

19  counsel who handled the Sloan case that Mr. Blankingship, his

20  other Fair Credit Reporting Act case.  And they said that when

21  he came to the deposition of Equifax, he handed them the

22  interrogatory responses and said, are these full and complete?

23  Let's go through them.  And went through them line by line.

24       He is going to do that anyway.  And that's how

25  discovery works.  You get full and complete responses that the

11

1   client says, that Equifax says these are full and complete.

2   And the way discovery works is if he wants to try to impeach

3   them or, you know, show where he thinks the facts are

4   differently, that's what litigation is about.

5          THE COURT:  The way discovery works is that he is

6   entitled to all the documents that Equifax has that are

7   relevant to the claims and defenses of the parties and are not

8   subject to some protective order.

9          And I am not satisfied at all that he has all the

10  documents that Equifax has that fall into that category,

11  whether the interrogatory answers are as complete as they can

12  be under that circumstance or not.

13         Go ahead.

14         MR. PERLING:  And in response to that, Judge, all I

15  can do is rely on the, on the client's declaration.

16         THE COURT:  I appreciate that.

17         MR. PERLING:  Okay.  Thank you, Your Honor.

18         THE COURT:  Equifax's conduct in the discovery phase

19  of this litigation has been a little short of unconscionable.

20  And the only reason that I am inclined to do anything other

21  than strike Equifax's answer is that plaintiff's counsel has

22  had the good judgment not to ask for that drastic relief.

23         I find that at least the relief, specifically

24  including striking the affirmative defenses, that at least the

25  relief that plaintiff asks for in her memorandum at page 16 is

1  appropriate.

2          I can't craft an order that grants that relief in a

3  way that would be useful at trial at this point because I

4  think it will require completion of depositions before

5  plaintiff can say, for instance, which facts stated in the

6  complaint that have not been specifically refuted with factual

7  responses are to be taken as established.

8          But on that initial finding, the Court grant's the

9  motion for sanctions, strikes the affirmative defenses, and

10  takes the matter under advisement for the purpose of making

11  further findings as soon as reasonably possible after the

12  depositions are completed.

13          Have you-all talked about deposition dates?

14          MR. BLANKINGSHIP:  We have, Judge.

15          THE COURT:  Well, when are the depositions going to

16  be completed?

17          MR. BLANKINGSHIP:  We are talking about taking them

18  next week, Judge.  There are some--  I think it was a little

19  bit unclear from the last hearing exactly what your order was

20  with regard to those, whether or not they were supposed to

21  come here and what was going to happen and how we were going

22  to handle that.

23          And then also we wanted to wait and see what the

24  ruling was from--

25          THE COURT:  Well, my recollection is I left that

13

1  somewhat open intentionally.

2          MR. BLANKINGSHIP:  You did.

3          THE COURT:  In the expectation that today's hearing

4  would not be necessary.

5          MR. PERLING:  And Equifax offered to cover

6  plaintiff's counsel's expenses of traveling to Atlanta.

7          THE COURT:  I understand.

8          MR. PERLING:  As I might have informed counsel,

9  there is one deposition of Alysha Fluellen that I gave you

10  some dates of and I haven't heard back from you for next week,

11  but she is extremely willing to work on that.

12          MR. BLANKINGSHIP:  Judge, there is also a deposition

13  issue that we raised in our papers regarding--

14          THE COURT:  Well, let me, let me nail down a date,

15  unless you are going to tell me that this other issue affects

16  the date for further hearing, Mr. Blankingship.

17          What I am inclined to do is to continue this hearing

18  so that I can make further findings based on supplemental

19  briefing after the depositions are completed, continue it to

20  Friday June 8 on the 10 o'clock docket.

21          Now, what was the other deposition issue?

22          MR. BLANKINGSHIP:  Judge, the issue regards the

23  deposition of a Phyllis Doreman.  Ms. Doreman has appeared as

24  an expert witness for Equifax in a number of cases, including

25  the last case that I did.  She is the, I think she is a

14

1   vice-president or something of Equifax.  And she is the one

2   that is in charge of this computer system.  She is the one

3   that maintains it, she understands it.  And I don't think

4   there is anybody at Equifax that knows better about this

5   computer system who could look at these documents and put it

6   together and tell us what happened.

7           And so, we have advised them that we want to take

8   the deposition of their employee, Phyllis Doreman.  And they

9   are telling us, she is not a witness.

10          And I am sensing, although, you know, I have tried

11  to get an answer from them, we are not going to make her

12  available, you are going to have to subpoena her, you are

13  going to have to do something, but she is not a witness that

14  we have identified in the case and we are not going to produce

15  her.

16          And I just think that is ridiculous.  I mean, she is

17  an employee of the company.  She is the one that knows this

18  computer system.  And they need to make her available

19  without--

20          THE COURT:  Is she a vice-president?

21          MR. BLANKINGSHIP:  I believe so.  She is way up in

22  the company.

23          THE COURT:  Is she an officer?

24          MR. PERLING:  Honestly, Judge, I don't know.

25          THE COURT:  Well, on Mr. Blankingship's

1   representation that she is an officer of the company,

2   plaintiff may seek her deposition by notice.  And if defendant

3   feels that it has good grounds for a protective order to

4   prevent the deposition, then defendant can file a motion for a

5   protective order and that will tee up the issue and I will

6   deal with it.

7            MR. PERLING:  That was my point exactly, Your Honor.

8            THE COURT:  Notice her deposition.

9            MR. BLANKINGSHIP:  Thank you, Judge.

10            MR. PERLING:  I mean, I can kind of cut to the chase

11   a little bit, if you want to, right here.  Essentially he is

12   asking for a 30(b)(6)--

13            THE COURT:  It is about time to do that across the

14   board, Mr. Perling.

15            MR. PERLING:  I am happy to do it later.

16            THE COURT:  No, go ahead.  Let's--

17            MR. PERLING:  Okay.  I am happy to do it.

18   Essentially he is asking for a 30(b)(6) deposition of someone

19   who knows the computer system.  Ms. Doreman is not the sole--

20            THE COURT:  No, he is asking for a 30(b)(1)

21   deposition of somebody whose opinion and information he wants

22   to get.  He may also ask for a 30(b)(6) deposition before,

23   during or after her deposition.

24            MR. PERLING:  Certainly, certainly.  And if she is

25   an officer, of course, we will put her up, Your Honor.

1          THE COURT:  All right.

2          MR. PERLING:  Judge, two other issues.

3          THE COURT:  All right.

4          MR. PERLING:  Actually, maybe three.  We were

5   talking about scheduling a settlement conference.

6          MR. BLANKINGSHIP:  Yes, sir.

7          THE COURT:  What time frame were you looking at?

8          MR. PERLING:  This afternoon?  Any time, any time

9   that is convenient for the parties as well as--

10         THE COURT:  I am going to be in court all afternoon

11  on other matters.

12         MR. PERLING:  That's fine with me.

13         THE COURT:  Does the settlement conference--  I

14  understand different cases have different dynamics.  Does the

15  settlement conference need to await the completion of

16  deposition discovery, or would it be better for it to occur

17  before the end of deposition discovery?

18         MR. PERLING:  I am happy to go forward now.  I will

19  leave your question, Judge, with the plaintiff.

20         MR. BLANKINGSHIP:  I have no problem starting it

21  before deposition--  Is this something you are going to handle

22  or are you going to send it to another--

23         THE COURT:  Well, unless there is a good reason for

24  me not to, the case has my initials on it and I would normally

25  do the settlement conference.

17

1          MR. BLANKINGSHIP:  Okay.  No, that would be

2    fantastic.

3          MR. PERLING:  Your Honor already knows much about

4    the case.

5          THE COURT:  Flattery will get you nowhere.

6          MR. MONTGOMERY:  Your Honor, if you are

7    contemplating that, may I ask if local counsel be excused from

8    the settlement conference?

9          THE COURT:  Sure.

10          MR. MONTGOMERY:  Okay.

11          THE COURT:  But somebody from Equifax is going to

12    have to be here.

13          MR. PERLING:  I understand.  We plan--

14          THE COURT:  I want somebody in my chambers with full

15    authority to settle the case on any terms.

16          MR. PERLING:  We understand, Your Honor.  My only

17    caution is next week, Your Honor, maybe not next week, the

18    week of the 21st, Equifax has a trial which plaintiff's

19    counsel actually mentioned in his response or reply brief down

20    in Richmond.

21          THE COURT:  Well--

22          MR. PERLING:  So, maybe the week of the 28th?  28th.

23          THE COURT:  I can do it the afternoon of Tuesday

24    May 29, that's really the only time that works that week.

25    That's the day after Memorial Day.

1          MR. PERLING:  Then an afternoon time would be better

2   for Equifax, who is going to come down, come up.

3          THE COURT:  I think it may make more sense to try to

4   do it the following week.  I will do it on the afternoon of

5   the 29th if you-all ask me to.

6          MR. PERLING:  And, of course, we do have a pretrial

7   on the 24th, but I don't know if that factors into when you

8   might want to have the settlement conference.

9          THE COURT:  Well--

10         MR. PERLING:  Your choice.

11         THE COURT:  Maybe I misunderstood.  I thought you

12  said you didn't want to do it that week?

13         MR. PERLING:  It's funny you say that.  I am not the

14  person trying the case in Richmond.  What I am, what I am

15  suggesting is that Equifax's person with full authority might

16  not be available because they might actually be attending the

17  trial.

18         THE COURT:  Well, let's do this.  I can do it on the

19  24th.  I can do it on the 29th.  I can do it the afternoon of

20  Tuesday the 5th.  I will try to hold all three afternoons open

21  until Monday.  And, Mr. Perling, you ought to find out whether

22  you can have--  Well--

23         MR. PERLING:  I will see if we can get somebody here

24  on the 24th.

25         THE COURT:  Do your decisiontry and find out which

19

1   date works best for you.  I gather from silence on the other

2   side that any of those three dates would work equally well for

3   the plaintiff.

4           MR. BLANKINGSHIP:  Unless my client has got a

5   problem there, they are going to be fine with those, Judge.

6           THE COURT:  Okay.

7           MR. BLANKINGSHIP:  So, we will work with Mr.

8   Perling.

9           THE COURT:  You-all talk --

10          MR. PERLING:  We will call your chambers.

11          THE COURT:  -- between now and Monday afternoon and

12  call Mr. Leichter and get a date, and then you will get a

13  directive from me very quickly on what I want in preparation

14  for the conference.

15          MR. PERLING:  Certainly.  Finally, Your Honor, there

16  is--

17          THE COURT:  Mr. Perling, you said there were a

18  couple other things?

19          MR. PERLING:  Yes.  Finally, Mr. Montgomery was

20  certainly nice enough to come with me today, of course

21  required by the rules.  We have another motion that we

22  anticipate being on the calendar next Friday, and then the

23  final pretrial on the 24th.

24          I wanted to ask the Court's permission for me to

25  appear without Mr. Montgomery on those.

20

1          THE COURT:  What's on the calendar next Friday?

2          MR. PERLING:  We are filing today a motion to

3    compel.  We mentioned it in our--

4          THE COURT:  All right.  If it's before me, then Mr.

5    Montgomery need not be here.

6          With respect to the final pretrial conference, I

7    expect Judge Lee is going to want to see local counsel as well

8    as trial counsel, but you are more than welcome to contact his

9    chambers and ask that Mr. Montgomery be excused.  That's up to

10   Judge Lee.

11         MR. MONTGOMERY:  That's, as you recall, we talked,

12   of course, on the date of trial in Richmond that, of course, I

13   have to be there for, but we will work something out.

14         THE COURT:  All right.

15         MR. PERLING:  Nothing else, Judge.

16         THE COURT:  All right.  Thank you, counsel.

17         NOTE:  The hearing is concluded at 10:42 a.m.

18   --------------------------------------------------

19

20

21

22

23

24

25

21

1

2        C E R T I F I C A T E  of  T R A N S C R I P T I O N

3

4

5          I hereby certify that the foregoing is a true and

6    accurate transcript that was typed by me from the recording

7    provided by the court.  Any errors or omissions are due to the

8    inability of the undersigned to hear or understand said

9    recording.

10

11         Further, that I am neither counsel for, related to,

12    nor employed by any of the parties to the above-styled action,

13    and that I am not financially or otherwise interested in the

14    outcome of the above-styled action.

15

16

17

18

19

20                           _____

21

22                           Norman B. Linnell

23                           Court Reporter - USDC/EDVA

24

25