**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

**DONNA K. SOUTTER,**
**For herself and on behalf of all similarly**
**situated individuals,**

        **Plaintiff,**

**v.**                                   CIVIL ACTION NO. 3:10-cv-00107

**EQUIFAX INFORMATION SERVICES LLC,**

        **Defendant.**

**MEMORANDUM IN SUPPORT OF DEFENDANT EQUIFAX INFORMATION**
**SERVICES LLC'S MOTION TO FILE DOCUMENTS UNDER SEAL**

      Defendant, Equifax Information Services LLC ("Equifax"), through its undersigned counsel, files its Memorandum in Support of its Motion to File Documents Under Seal.   In support of the motion, Equifax would show the Court as follows:

**<u>INTRODUCTION</u>**

      This case is a proposed class action lawsuit under the Fair Credit Reporting Act ("FCRA").  Plaintiff alleges that Equifax violates the FCRA in the manner in which it, through its public records vendors, collects satisfactions, appeals, and other dispositions of judgments in the Richmond General District Court.

      Plaintiff has notified Equifax that she intends to attach Equifax's confidential public records agreements and certain, as yet unidentified, e-mails between Equifax and LexisNexis in her opposition to the LexisNexis Motion.  Equifax designated these documents as "Confidential" under the Stipulated Protective Order (Doc. 51) in this case and files the present motion to have the documents filed under seal rather than made publicly available as part of Plaintiff's

opposition to the LexisNexis Motion.  For the reasons set forth below, Equifax's motion should

be granted and Plaintiff should be ordered to file these confidential documents under seal.

## RELEVANT FACTUAL BACKGROUND

### I.     THE SIGNIFICANT DISCOVERY IN THIS CASE

Equifax has produced 9,742 pages of documents to Plaintiff in response to her requests.

Included within those documents are (1) copies of Equifax's vendor agreements between the

three public records vendors that it has used at various points in time -- Hogan, Superior

Information Services (Choicepoint) and LexisNexis; and (2) over 2,200 pages of e-mails,

including a substantial number between Equifax and LexisNexis.  Plaintiff has now indicated

that she intends to attach the vendor agreements to her opposition to the LexisNexis Motion.

Plaintiff also indicates that she intends to attach e-mails that have been marked as "Confidential"

to her opposition to the LexisNexis Motion.  However, despite repeated requests, Plaintiff has

not identified the specific bates numbered pages of the e-mails she intends to attach to her

opposition so Equifax does not know exactly which e-mails are at issue.  *See* Declaration of J.

Anthony Love ("Love Decl."), ¶ 3, attached hereto as Exhibit A and e-mail correspondence

attached hereto as Exhibit A-1.  Equifax properly designated these documents as "Confidential"

under the terms of the Stipulated Protective Order in this case and they should remain designated

as such.

### II.    THE VENDOR AGREEMENTS

Equifax has produced the following vendor agreements in this case:   (1) Master

Agreement for Service between Equifax and Choicepoint, dated September 17, 2001 (EIS-

SOUTTER-000321-000358); (2) Public Record Agreement between Equifax and Choicepoint,

dated October 2004 (EIS-SOUTTER-000211-000320); (3) Amendments to Public Record

Agreement between Equifax and Choicepoint, dated October 2004 and February 5, 2007 (EIS-SOUTTER-001077-001082), and; (4) Public Record Acquisition Agreement between Equifax and LexisNexis, dated December 1, 2008 (EIS-SOUTTER-000359-000380). Each of these agreements was produced subject to the SPO in this case. Further, these agreements themselves contain confidentiality provisions requiring that "the terms of this agreement shall remain in trust and confidence by both parties hereto, and shall not be disclosed to any third parties without the express written consent of both parties hereto… ."

Without disclosing the specific confidential information in the contracts, they contain sensitive information on the following areas: (1) the manner in which LexisNexis and the other vendors will collect public records, (2) the courts from which the records will be collected, (3) the frequency with which the records will be collected, (4) the amounts that the vendors will be paid for collecting the records, (5) the remedies of the parties should a breach occur, (6) the manner in which the vendor's compliance with the contract terms will be measured, (7) the duration of the contract and other legal rights and obligations of the parties. *See* Declaration of James Kegley ("Kegley Decl."), ¶ 4, attached hereto as Exhibit B.

## III.    THE LEXISNEXIS E-MAILS

Plaintiff has, despite repeated requests, refused to identify which specific bates numbered e-mails, of the 2,200 pages of e-mails that Equifax has produced in this litigation, that she seeks to introduce without a protective order. The e-mails between Equifax and LexisNexis directly impact and discuss the business relationship between Equifax and third party LexisNexis. Equifax has generally designated the "Confidential" e-mails as such because they contain information concerning the manner in which Equifax has communicated with its vendors about the day-to-day operation of its public records operations, its data and statistics concerning

contract compliance, any issues that have arisen concerning that content of the data transmitted by the vendors, and the manner in which the vendors collect and transmit the data to Equifax. Kegley Decl., ¶ 13.  Should they be made publicly available, these e-mails contain confidential information that could harm Equifax's competitive position in the marketplace and its ability to negotiate the best terms in future vendor agreements.  *Id*., ¶ 14.

## ARGUMENT AND CITATION OF AUTHORITY

**I.      THE CONFIDENTIALITY OF THE DOCUMENTS AT ISSUE IS PROTECTED.**

Federal Rule of Civil Procedure 26(c)(1)(G) expressly provides for the protection of confidential, trade secret and or proprietary information.  Courts in this Circuit have recognized the protection provided by this Rule.  *See, e.g., Mt. Hawley Ins. Co. v. Felman Prod'ns, Inc.*, 2010 WL 1254682, *2 (S.D. W. Va. Mar. 25, 2010 (granting motion for protective order); *Ring Indus. Group, LP v. Set Tank Co., Inc*., 2008 WL 2413996, *2 (W.D.N.C. June 11, 2008) (granting motion for protective order under Rule 26(c)(1)(G) with respect to confidential information).  The parties in this case negotiated and agreed to the Stipulated Protective Order so that confidential information, like that at issue here, could be exchanged.  *See* Doc. 51.  With respect to the present motion to seal, a district court may seal documents provided that the court (1) provides public notice of the request to seal and allows interested parties a reasonable opportunity to object; (2) considers less drastic alternative to sealing the documents, and; (3) provides specific reasons and factual findings supporting its decision to seal the documents and for rejecting alternatives.  *See Ashcraft v. Conoco, Inc.*, 218 F.3d 282, 302 (4th Cir. 2000) (citing *Stone v. Univ. of Md. Med. Sys. Corp*., 855 F.2d 178, 181 (4th Cir. 1988); *In Re the Knight Publ'g Co*., 743 F.2d 231, 235 (4th Cir. 1984)).

Each of these elements is satisfied here -- both the vendor agreements and the e-mails should be protected in this case and Plaintiff should be required to file them under seal.  In fact, courts in this Circuit have routinely granted motions to seal when sensitive and proprietary company information is at issue as in this case.  In *Flexible Benefits Council v. Feltman*, 2008 WL 4924711, *1 (E.D. Va. Nov. 13, 2008), the plaintiff moved to seal an affidavit and certain exhibits in support of its motion for summary judgment.  In granting the motion to seal, this Court  determined that the affidavit and exhibits "contain[ed] confidential financial data that [were] normally unavailable to the public, the public's interest in access [was] outweighed by the [p]laintiff's interest in preserving confidentiality, [and] [t]here [were] no alternatives that appropriately serve[d] these interests."  *Id.*; *see also GTSI Corp. v. Wildflower Int'l, Inc.*, 2009 WL 1248114, **8-9 (E.D. Va. Apr. 30. 2009) (granting both parties' motion to seal agreements and documents containing confidential and trade secret information, including product and pricing information); *Moller-Maersk A/S v. Escrub Systems, Inc.*, Civ. Action No. 1:07-cv-1276-JCC (E.D. Va. Dec. 21, 2007) ("plaintiff's motion to seal is granted as to [specified documents] … insofar as they reveal [p]laintiff's and [d]efendant's confidential and proprietary information") (order attached as Exhibit C); *Muri v. Killeen*, 2004 WL 1124929, *3 (W.D. Va. May 18, 2004) ("it appearing to the court that the exhibits contain engineering data, client names, and other potentially confidential and proprietary information, the court grants the motion [to seal]"); *Walker Systems v. Hubbell Inc.*, 188 F.R.D. 428, 430 (S.D. W.Va. 1999) (granting motion to file documents under seal because documents contained confidential trade secrets).

## II.	THE VENDOR AGREEMENTS SHOULD BE FILED UNDER SEAL.

Equifax properly designated the vendor agreements under the SPO.  Kegley Decl., ¶ 3. The SPO expressly provides:

> Any documents, testimony, or information submitted, either voluntarily or pursuant to   any subsequent order, which is asserted in good faith by the producing party or by any   other party to contain or constitute information protected by the Federal Rule of Civil Procedure 26(c)(7) or other provision of law, shall be so designated in writing, or orally   at a deposition, hearing or trial and shall be segregated from other information being   submitted.   Materials so designated shall be clearly marked on their face with the legend: "CONFIDENTIAL" or "CONFIDENTIAL-ATTORNEY'S EYES ONLY."   Such documents, transcripts, or other materials are referred herein as CONFIDENTIAL MATERIALS" and "CONFIDENTIAL-AEO MATERIALS," respectively."

Doc. 51, ¶ 2.

In this case, Equifax complied with the SPO and designated the vendor agreements as "Confidential."   Kegley Decl., ¶ 3.   It has now, after receiving notification of Plaintiff's challenge to these designations, filed this motion to seal the documents with the supporting declaration of its employee, Mr. Kegley.   As explained by Mr. Kegley in his attached declaration, there are many reasons to maintain the confidentiality of these vendor agreements. As set forth above, the agreements contain sensitive information on the following areas:  (1) the manner in which the vendor will collect public records, (2) the courts from which the records will be collected, (3) the frequency with which the records will be collected, (4) the amounts that the vendors will be paid for collecting the records, (5) the remedies of the parties should a breach occur, (6) the manner in which the vendor's compliance with the contract terms will be measured, (7) the duration of the contract and other legal rights and obligations of the parties. *Id.*, ¶ 4.  Further, Equifax is in competition with other consumer reporting agencies such as Trans Union and Experian.  *Id.*, ¶ 5.  If the confidentiality of these vendor agreements is not maintained, then Equifax's competitors will have access to the terms and provisions of Equifax's agreement with its vendors and the ability to obtain an "inside view" of Equifax's negotiated terms with the vendors.  *Id.*  It would serve no purpose to make these confidential agreements publicly available so that they can be posted on the internet and for Equifax's competitor and

current and future business partners to see.   Such an occurrence could harm Equifax competitively.   "Courts have refused to permit their files to serve as … sources of business information that might harm a litigant's competitive standing."   *Nixon v. Warner Comm'ns, Inc.*, 435 U.S. 589, 598 (1978).

It is critical to Equifax that it not be damaged competitively by permitting the release of its confidential vendor agreements in a non-confidential manner.  Kegley Decl., ¶ 6.  Equifax has no objection to having these documents available for the Court's use only in this litigation, but Equifax's competitors and the public at large have no use for such information.   *Id*.  In addition to the concern over Equifax's competitors obtaining the vendor agreements, Equifax is also concerned about the general public having access to such information.   *Id*., ¶ 8.  In today's age with the internet and other methods of disseminating documents and information to large groups of people almost instantly, it is possible that Equifax's confidential vendor agreements could be placed on a public website or otherwise distributed across the internet.   *Id*.

Equifax is extremely sensitive to consumer privacy and permitting its confidential vendor agreements to be broadly distributed in such a non-confidential manner risks providing such information to third parties with no use for it and who may use it in an improper manner, which could infringe on the consumer privacy Equifax diligently strives to protect.   *Id*., ¶ 9.  If Equifax ever has a need to retain a different public records vendor in the future, disclosure of the current vendor agreements could harm it in the bidding process by providing other providers with the terms of the current and past agreements.   *Id*., ¶ 10.  Such information would be an unfair negotiation tool in the hands of such third parties that would possibly harm Equifax in its negotiations.  *Id*.

Equifax is charged with protecting the private information of millions of consumers. Permitting its confidential records to be publicly displayed in such a manner would potentially provide additional information about the company and its business operations to computers hackers, identity thieves and others who might seek to interfere with such private data.  To the contrary, Plaintiff suffers no harm at all should the documents remain confidential.  She is still able to use them in this action and attach them, under seal, to her opposition to the LexisNexis Motion.  These agreements should be kept under seal permanently and there is no less restrictive means to protect them.  For these reasons, Equifax's motion should be granted as to the vendor agreements.

## III.    THE E-MAILS SHOULD BE FILED UNDER SEAL.

Plaintiff has refused, despite repeated requests, to identify the specific e-mails that she intends to attach to her opposition to the LexisNexis Motion.  Love Decl., ¶ 3.  It is unreasonable to require Equifax to guess which of the e-mails, out of the 2,200 pages that have been produced to date, are at issue for the purposes of this motion.  For this reason alone, Plaintiff should be required to file them under seal.  Notwithstanding this basis, the e-mails are entitled to retain their Confidential designation for those reasons set forth in the Kegley Declaration.  Specifically, they contain confidential business communications between Equifax and LexisNexis as well as internal communications about Equifax's business operations.  Kegley Decl., ¶¶ 14, 15.  It would risk Equifax's competitive advantage as well as consumer security for these e-mails to be made publicly available for posting on the internet or elsewhere for every identity thief or other person with an improper motive.  Plaintiff, on the other hand, will still be able to use them in her opposition brief if they are filed under seal.  These e-mails should be maintained under seal

permanently and there is no less restrictive means to produce them in this case.  For these reasons, Equifax's motion should be granted as to the e-mails.

## **<u>CONCLUSION</u>**

For the foregoing reasons, Defendant Equifax respectfully requests that the Court grant its Motion to Seal and such other appropriate relief as the Court deems just and proper.

Respectfully submitted this 23rd day of September, 2010.

<div style="margin-left:40%">

/s/
John W. Montgomery, Jr.
Virginia State Bar No. 37149
Counsel for Equifax Information Services, LLC
Montgomery & Simpson, LLLP
2116 Dabney Road, Suite A-1
Richmond, VA 23230
Telephone (804) 355-8744
Facsimile (804) 355-8748
Email: jmontgomery@jwm-law.com

</div>

## CERTIFICATE OF SERVICE

I hereby certify that on the 23rd day of September, 2010, I will electronically file the

foregoing with the Clerk of Court using the CM/ECF system, which will then send a

notification of such filing (NEF) to the following:

Leonard A. Bennett
Consumer Litigation Associates
12515 Warwick Boulevard
Suite 100
Newport News, Virginia  23606
***Counsel for Plaintiff***

/s/
John W. Montgomery, Jr.
Virginia State Bar No. 37149
Counsel for Equifax Information Services, LLC
Montgomery & Simpson, LLLP
2116 Dabney Road, Suite A-1
Richmond, VA 23230
Telephone (804) 355-8744
Facsimile (804) 355-8748
Email: jmontgomery@jwm-law.com