**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

**DONNA K. SOUTTER, for herself and on behalf
of others similarly situated individuals,**

**Plaintiffs,**

**v.**

Civil Action. No. 3:10cv107-REP

**EQUIFAX INFORMATION SERVCES, LLC,**

**Defendants.**

## PLAINTIFF'S MEMORANDUM IN OPPOSITION TO
## DEFENDANT'S MOTION TO CONSOLIDATE

COMES NOW the Plaintiff, Donna K. Soutter, by counsel, for herself and on

behalf of other similarly situated individuals, by counsel, and for her Memorandum in

Opposition to Defendant's Motion to Consolidate, she states:

### I.      OVERVIEW

Equifax filed its Answer to Plaintiff's Complaint on March 26, 2010 and, with

Plaintiff, agreed to a lengthy "Phase I" discovery period that now ends October 8, 2010

and a deadline for Plaintiff's Motion for Class Certification of October 29, 2010.  Six

months later with "Phase I" essentially completed, Equifax asks to disrupt Plaintiff's case

by grafting Defendant's newly filed Breach of Contract claim against LexisNexis Risk

Solutions FL, Inc. ("LexisNexis") onto Plaintiff's tangentially related case under the

Federal Fair Credit Reporting Act (FCRA), 15 U.S.C. §1681, et seq.  Even if there were

good faith merit to Equifax's attempt to deflect blame onto a third party – and there is not

-, such discretionary consolidation at this stage of the litigation would inflict material

prejudice on the Plaintiff and her case, impose significant expense and delay to her

prosecution of the class and individual claims and add rather than reduce the burden on this Court. Equifax's motion should be denied.

## II.     BACKGROUND

### A.     *Procedural History*

The Plaintiff's Complaint (Dkt. No. 1) was filed on February 17, 2010 and answered on March 26, 2010 (Dkt. No. 15).[1] At the Rule 16(b) conference, the parties' counsel confirmed to the Court their preferred schedule for the case, which was then reduced into the consented Scheduling Order entered by the Court on June 18, 2010. (Dkt No. 42). Upon stipulation of the parties, the Court ordered October 8, 2010 as the end of "Phase I" discovery (to include class certification and individual liability issues). Plaintiff's motion for class certification is due by October 29, 2010.

During this lengthy discovery period, both parties have exchanged significant written discovery requests including two sets from the Plaintiff. Depositions of Equifax employees were taken on multiple days. One deposition of a LexisNexis employee was taken (the one described in Defendant's Memorandum) and completed in approximately one hour. Third party subpoenas have been propounded and Equifax long ago set the Plaintiff's deposition for September 28, 2010. During the discovery period, Plaintiff's counsel also sought and obtained an Access database file of Virginia terminated judgments from the Executive Secretary of the Supreme Court. Equifax has scheduled and coordinated depositions of two employees of the Executive Secretary of the Supreme Court of Virginia, for September 28 and October 8, 2010. Neither party disclosed an expert witness and the deadline to do so has long passed.

---

[1] An Amended Complaint (Dkt. No. 3) was filed on February 26, 2010 to add the claims of Toni Webb. These have now been settled and severed (Dkt. No. 49).

For two months of this process, the parties met and conferred, and negotiated Equifax's compliance with Plaintiff's discovery requests.  Ultimately these negotiations ended with the presentation to the Court of a consent order resolving Plaintiff's Motion to Compel.  As an aside to this agreement, Plaintiff also confirmed that she would not seek further "Phase I" depositions.

While a settlement conference remains scheduled for December 9, 2010, Plaintiff and Equifax have also scheduled two days of private mediation in Atlanta on October 19 and 20, 2010.  At Equifax's suggestion, the parties have retained the Hon. Stanley F. Birch, Jr. (Ret.), former U.S. Circuit Judge on the United States Court of Appeals, Eleventh Circuit.

     **B.**     ***Equifax's Motion***

Equifax prosecutes the present motion under Fed. R. Civ. P. 42(a).  Defendant seeks to consolidate Ms. Soutter's FCRA case against Equifax with its Breach of Contract case against LexisNexis.  Plaintiff's class action complaint alleges a violation by Equifax of the FCRA, 15 U.S.C. §1681e(b), which requires Equifax, a consumer reporting agency, to use "reasonable procedures to assure maximum possible accuracy" in the credit reports it furnishers regarding consumers.  *Amended Complaint*.  No allegations are made as to third party LexisNexis, and as addressed below, none could be.

Equifax's lawsuit against LexisNexis alleges one count, *Indemnification*.  *Equifax Complaint*.  Equifax's allegation is simpler – it contends that there is a contract between it and LexisNexis that requires LexisNexis to indemnify it if a claim is made by a consumer.  Equifax does not allege that LexisNexis acted unreasonably.  It does not even allege that any conduct of LexisNexis caused Equifax to violate the FCRA.  Nothing is

alleged as to Equifax or LexisNexis' actual procedures to gather public records information.  The only issues in dispute within the Equifax complaint is (a.) is there a contractual obligation based on the language in the agreement that LexisNexis indemnify it from some consumer claims and (b.) is Donna Soutter's particular pre-trial unliquidated claim the type of claim that is governed by the Equifax/LexisNexis contract.

### III.    ARGUMENT

**A.    Equifax does not meet its burden to show common issues of fact or law central to disposition of the two cases.**

Fed. R. Civ. P. 42(a) states:

(a) Consolidation.

If actions before the court involve a common question of law or fact, the court may:

(1) join for hearing or trial any or all matters at issue in the actions;
(2) consolidate the actions; or
(3) issue any other orders to avoid unnecessary cost or delay.

Fed. R. Civ. P. 42(a).   To satisfy the first threshold of the Rule, there must be a common question of law or fact.   The shared question must be more than incidental or marginal. A motion under Rule 42(a) is properly denied "if the common issue is not central to the resolution of the cases[.]"  FPP § 2383, 9A Fed. Prac. & Proc. Civ. § 2383 (3d ed.).   The presence of a small number of related facts is insufficient to trigger the Rule 42(a) threshold. *U.S. v. 43.47 Acres of Land*, 45 F.Supp.2d 187 (D.C. Conn. 1999) (Consolidation was denied because only one question was common to both cases and the actions arose under different legal theories, with different defendants, different plaintiffs, and different legal claims); *Maschmeijer v. Ingram*, 97 F.Supp. 639 (D.C. N.Y.1951).

A survey of cases supports the conclusion that Rule 42(a) is most often considered for the purpose of consolidating multiple cases between the same parties. FPP § 2384, 9A Fed. Prac. & Proc. Civ. § 2384 (3d ed.).  When the parties are not identical, consolidation is still sometimes considered when similar claims are prosecuted by different Plaintiffs against the same Defendant or against different Defendants by the same Plaintiff. *Id.*  However, where the claims or parties in the two cases are different, consolidation will more often be inappropriate.  *Molever v. Levenson*, 539 F.2d 996 (4th Cir. 1976), *certiorari denied* 97 S.Ct. 643, 429 U.S. 1024, 50 L.Ed.2d 625  (The trial court erred in consolidating an action for alleged deception in the sale of bank stock, a derivative action against the bank's stockholders involving two separate transactions, and a libel action against two stockholders of the bank); *see also e.g. Shump v. Balka*, 574 F.2d 1341, 1344 (10th Cir. 1978) (We will not hold that the court erred in refusing to consolidate Appellants' action with Plaintiffs' actions, when, as here, the relief sought varied substantially); *Shumate & Co. v. National Ass'n of Secs. Dealers, Inc*., 509 F.2d 147 (5th Cir. 1975), certiorari denied 96 S.Ct. 131, 423 U.S. 868, 46 L.Ed.2d 97 (The district court did not abuse its discretion in refusing to consolidate another case pending between the plaintiff and the same defendants with the plaintiff's private antitrust action when the plaintiff conceded that the issue in the nonconsolidated suit was separate from the issues of the antitrust action and when numerous defendants in the other suit were not parties to the present antitrust action); *Nnebe v. Daus*, 2008 WL 706579 (S.D.N.Y. 2008); *In re Consolidated Parlodel Litigation*, 182 F.R.D. 441 (D.C. NJ. 1998); *Servants of Paraclete v. Great American Ins. Co*., 866 F.Supp. 1560 (D.C.N.M.1994); *Scardino v. Amalgamated Bank of New York*, 1994 WL 408180 (D.C.Pa. 1994); *Liberty Lincoln*

*Mercury, Inc. v. Ford Marketing Corp.*, 149 F.R.D. 65 (D.C.N.J.1993). Standing alone, the existence of a possible indemnity right is not sufficiently central common question of fact. *Cont'l Bank & Trust Co. v. Ols. E. D. Platzer*, 304 F. Supp. 228, 229 (S.D. Tex. 1969).

The burden is on the moving party to persuade the court to grant a motion to consolidate. *MacAlister v. Guterma,* 263 F.2d 65, 70 (2nd Cir.1958); *see also Solvent Chem. Co. ICC Indus., Inc. v. E.I. Dupont De Nemours & Co.*, 242 F. Supp. 2d 196, 221 (W.D.N.Y. 2002). A party cannot simply assert as self-evident the presence of a material common issue. *Schacht v. Javits,* 53 F.R.D. 321, 325 (S.D.N.Y.1971) ("Plaintiff in his motion papers gives the Court no assistance in comparing the ... actions in order to determine the desirability of consolidation. Plaintiff's failure to marshal facts supporting consolidation and the reasoned opposition by ... the defendants are persuasive grounds for denying the motion."). Nevertheless, such bald assertions are all that are offered in Equifax's supporting memorandum.

Confronted with the disparate claims, parties and allegations in the two complaints, Equifax proffers in support of its Rule 42(a) motion five (5) common questions of fact:

1. "[O]n what schedule and with what frequency did LexisNexis provide Equifax with information regarding the updated status of civil judgments?" *Def. Mem.*, p.4;

2. "Was Equifax aware of LexisNexis' procedures for collecting information on civil judgments in the General District Court for the City of Richmond?" *Id.,* p.5, no.1;

3.  "What information regarding civil judgments (including updates to the status of judgments) was available from the General District Court for the City of Richmond?" *Id.,* p.5, no.2;

4.  "Assuming LexisNexis did not collect civil judgment data from the General District Court for the City of Richmond and provide it to Equifax on a uniform schedule, was it reasonable to do so?" *Id.,* p.5, no.3; and

5.  "What were the costs associated with different data collection schedules for information on civil judgments and updates thereto?" *Id.,* p.5, no.4

Though these five issues are factual questions, or at least are worded as such by Equifax, Defendant does not suggest that there are any common questions of law. More importantly, few of these "questions" could be substantively contested by the parties in the two cases and none of them are material to the allegations of the Equifax complaint.

As to Question One above, the schedule and frequency by which the vendors were to collect judgment satisfactions, appeals or vacates ("terminations") is not materially disputed. In fact, they were spelled out in the contracts referenced in the Equifax complaint:

> (d)  Dispositions on Judgment and Lien Data shall be submitted to Equifax as they are made available from the primary source consistent with the visit frequency schedule in Exhibit B and where commercially reasonable to obtain.

*Equifax/LexisNexis Agreement*, Exhibit "A" to Agreement, ¶C.3.d[2]. Even if LexisNexis or the preceding unrelated vendors delivered judgment terminations to Equifax at some other frequency, Equifax was actively receiving the records. If there were no

---

[2] To resolve the dispute between the parties as to whether the Equifax-LexisNexis contract can be appropriately filed under seal, Equifax has consented to the use of the cited contract text without filing or attaching the full contract documents.

terminations delivered, Equifax would know this.  It is also disingenuous for Defendant to assert this as a contested question.  Whatever the frequency or schedule for the delivery of terminations, such information is objectively determinable.   Regardless, Equifax offers no explanation as to how such factual question is material to its own Complaint, in which it alleges that the event triggering the indemnification obligation is the mere threat of a consumer's claim.

Similarly, Defendant does not offer any explanation as to how Question Two – whether Equifax had access to the procedures used by LexisNexis to collect judgment information – is material to one or both lawsuits.  In Plaintiff's FCRA action, the question is whether Equifax's credit reports were accurate; whether the procedures used to furnish such reports reasonably assured maximum possible accuracy.  There is not a word in Equifax's brief to fill in the gap between the allegations in either complaint and Equifax's access to the LexisNexis collection procedures.   In fact, not only is there no explanation as to how this question is material to the Equifax complaint, but there is not an explanation as to how it is material or dispositive of the Plaintiff's complaint.

Equifax's assertion of a theoretical dispute or question as to its knowledge of LexisNexis' procedures is itself created from whole cloth.  Defendant cannot possibly in good faith allege lack of knowledge of LexisNexis' procedures.  The very contracts that form the basis of the Equifax complaint state:

> LexisNexis will provide Equifax with its' procedures for collecting dispositions.  Changes to these procedures must be provided to Equifax 10 business days prior to implementation by LexisNexis.  If the proposed change adversely affects any Equifax businesses, or puts Equifax in a position of non-compliance with any local, state or federal legislation, Equifax reserves the right to reject the procedure change with stated reasons.  Equifax will not unreasonably withhold its' approval from LexisNexis.

8

*Equifax/LexisNexis Agreement*, Exhibit "A" to Agreement, ¶C.3.d.   By Defendant's own account in the subject complaint, it has had an ongoing relationship with LexisNexis and preceding vendors since at least 2004.  Whether or not Equifax had actual or constructive knowledge of LexisNexis' procedures is not be an important fact.  It is also one that is not reasonably contested and is not a common question of fact, but rather simply a fact.

The remaining three questions on which Equifax's motion is premised are all of limited use for most of the same reasons.  Each poses a question as to how and at what expense judgment terminations could be collected from the Virginia courthouses, and whether it was reasonable for LexisNexis to use any particular collection method.  As above, Equifax fails to offer any explanation as to how such issues are material or dispositive of one let alone both lawsuits.  And as above, the issues suggested in Equifax's third and fifth questions are not contestable.   What information was available from the Richmond court clerk?  What were the costs for various data collection frequencies?  Are these really core disputed questions of fact?

The Court could properly question the motives for Equifax's prosecution of the present motion and even the Equifax lawsuit against LexisNexis.  Any basic review of Defendant's own documents in the case or the deposition testimony by Equifax employees should caution against viability of a claim against LexisNexis.  As detailed above, Equifax had ongoing and near complete access to the procedures, frequency and results of all of LexisNexis' records collection.  The delayed frequency to obtain satisfactions was built into the contract.  Unlike Equifax under the FCRA, by contract LexisNexis was only obligated to obtain those records that it determined commercially reasonable. *Equifax/LexisNexis Agreement*, Exhibit "A" to Agreement, ¶C.3.d.

Equifax's claim that a material common question of fact could include its uncertainty regarding LexisNexis collections practices is just false. There is no dispute that Equifax understood the LexisNexis process. For example, at a point prior to November 2009, LexisNexis lost its ability to buy judgment termination records in bulk. LexisNexis informed Equifax's responsible management employee, Shawn DeGrace. In relevant part, LexisNexis stated:

> Good Morning Equifax Team:
>
> In our ongoing effort to keep you informed of public record issues, I am writing to let you know we have reached an impasse with the Virginia Court Administration as our source of statewide District court judgments.
>
> […]
>
> As always, court access status updates stemming from this collection issue and others are available on your extranet site under **Tools➞Court Status**. The VA District courts have been updated to a "Limited Access" status, as we will be collecting satisfaction records. Client Services will keep you apprised of any new developments.
>
> Please let me know if you have any questions,

Then, to that email Equifax responded: "Thanks so much for keeping us posted."

Standing alone, these emails establish: (a.) Equifax was kept up to speed and was actively aware that it was not receiving judgment terminations and was "apprised of any new developments." (b.) It also knew that "Virginia District Courts have been updated to a 'Limited Access' status."

Thereafter, when LexisNexis obtained a large batch of the judgment termination records, Equifax refused to purchase them because they would exceed its budget:

> I discussed this with James today.  He asked if the 2008 records were
> included in the forecast that you gave us earlier this year – meaning were
> you anticipating receiving these records when you gave us the forecast?
>
> Regardless, due to the end of the year budget stuff, I still have to obtain
> approval before we can start receiving the records for 2008.  However, if
> they were part of your original forecast, then this will probably help me
> get approval.  Once I hear back, I will ask for a rush approval.  Hopefully,
> will get it.

By Equifax's argument, every FCRA case in the nation – thousands of them –

could be consolidated.  Each poses common factual and legal questions:  For example, is

Equifax a consumer reporting agency governed by the FCRA?  Defendant cannot

reasonable dispute that it is a CRA, yet every FCRA complaint filed against Equifax has

to make such allegation.  There is a difference between uncontroversial common facts

and disputed ones and a case is not appropriate for Rule 42(a) consolidation merely

because it shares one or even multiple simple proof elements.

**B.    Consolidation would unfairly prejudice the Plaintiff and the putative class as
well as waste significant party and judicial resources.**

Assuming that Equifax had established material common questions of fact or law

between Plaintiff's FCRA case and Equifax's third party contract claim, the Court would

then consider Equifax's argument and evidence to support the conclusion that on balance

consolidation would be better than not.  The Court of Appeals for the Fourth Circuit

stated the Rule 42(a) standard:

> The critical question for the district court in the final analysis was whether
> the specific risks of prejudice and possible confusion were overborne by
> the risk of inconsistent adjudications of common factual and legal issues,
> the burden on parties, witnesses and available judicial resources posed by
> multiple lawsuits, the length of time required to conclude multiple suits as
> against a single one, and the relative expense to all concerned of the
> single-trial, multiple-trial alternatives. See Fed. R. Civ. P. 42; see
> generally 9 C. Wright & A. Miller, Federal Practice & Procedure: Civil s
> 2383 (1971).

*Arnold v. E. Air Lines, Inc.*, 681 F.2d 186, 193 (4th Cir. 1982) *on reh'g,* 712 F.2d 899

(4th Cir. 1983).  In its attempted application of this balancing test, Equifax makes four

arguments, each of which Plaintiff will address herein within Plaintiff's application of the

*Arnold* factors.

1.      **Consolidation will greatly prejudice the Plaintiff.**

Equifax asserts, "consolidation of these cases will not prejudice any party."   The

basis for this assertion is Equifax's belief that "there is nothing inherently prejudicial

about third-party claims for indemnity" and that these "are routinely litigated and tried at

the same time as the underlying claims."  These claims are made without any further

support – no cases are cited; no analysis is provided; no details are offered.  Certainly

there are circumstances in the history of litigation in which an indemnity claim was

litigated or tried with a direct claim.  However, anecdotally, of the approximately 600

Federal cases Plaintiff's lead counsel has litigated, not a single one included such

consolidation or a joined indemnification claim.  In fact, FCRA jurisprudence generally

has impaired such a posture. Courts have found that the FCRA does not provide a right to

indemnification. *See Kay v. First Continental Trading, Inc.,* 966 F.Supp. 753, 754-55

(N.D.Ill.1997) (right to contribution for violations of FCRA is matter of federal law;

contribution not an available remedy).  Courts have rejected CRA or creditor attempts to

seek indemnification from third party identity thieves. *McSherry v. Capital One FSB*, 236

F.R.D. 516, 519 (W.D. Wash. 2006).   Attempts to consolidate a third party claims

against a CRA in a case against a creditor/credit report user have been rejected. *Miller v.*

*Wolpoff & Abramson, LLP*, 106-CV-207-TS, 2007 WL 2473431 (N.D. Ind. 2007).

Indemnification in a FCRA case is available only when the third party is itself

responsible to the Plaintiff, either directly or as the primary wrongdoer. *Yohay v. City of Alexandria Employees Credit Union, Inc.*, 827 F.2d 967, 973-74 (4th Cir. 1987) (Third party employee unlawfully obtained the credit report that was the subject of the consumer's claim and was thus the "primary wrongdoer.").

In the present case, the indemnification claim is solely a contractual one. There is no privity between the Plaintiff and third party LexisNexis. In fact, Equifax's contracts expressly disclaim and third party beneficiary protections:

> 21. **No Third party Benefits.** Equifax and LexisNexis acknowledge, agree and intend that this Agreement was entered into solely for the respective benefit of each of them and their respective successors and assigns, and nothing in this Agreement shall be construed as giving any person, firm, corporation or other entity, other than the parties hereto and their respective successors and permitted assigns, any right, remedy or claim under or in respect of this Agreement or any provision hereof.

*Equifax/LexisNexis Agreement*, ¶21. The FCRA is also without any remedy between Plaintiff and LexisNexis. The only furnisher liability created under the FCRA arises when a consumer makes an affirmative dispute to the furnisher (theoretically LexisNexis) that it then fails to properly investigate. 15 U.S.C. §1681s-2(b). The Plaintiff's claim in this case is solely against the CRA under 15 U.S.C. §1681e(b), a provision that by its terms imposes no obligation on LexisNexis as a data collector.

Equifax is also wrong that consolidate of the tangential breach of contract claim would not materially prejudice the Plaintiff and the putative class. Plaintiff will address below the resource burdens and delays that would be necessitated by this late stage posture change. In addition to these prejudicial impacts, consolidation would also materially change the tone and presentation of the Plaintiff's case. This is not a case about negligent hiring or supervision. Plaintiff does not allege that LexisNexis harmed

her, violated her rights or did anything at all that was unlawful.   Equifax however wants

to cast blame away from itself and onto another – and LexisNexis apparently offers

Defendant such a target.  Beyond such forced change in the tone and characterization of

the case, the consolidation will force Plaintiff and her counsel to absorb the discovery

efforts and motions practice of two parties instead of one.

At trial, consolidation would be a disaster.[3]  There is no similarity between the

burdens of proof, elements of claims or even sources of law between the claims in the

two cases.  Instead of a single cause of action with its requisite elements under the FCRA,

the jury would now also require a series of instructions detailing principles of contract

and third party indemnification law.  And these instructions and the related argument

would add smoke and confusion to what would have otherwise been a very simple case.

Plaintiff's argument on closing would need to address the entire Equifax case against

LexisNexis.  It would be prejudicially possible for a jury to blame LexisNexis and thus

excuse Equifax, leaving the Plaintiff and the class uncompensated despite obvious

Equifax liability.

Consolidation would also confuse the jury as the burdens of proof and elements

between the two cases could incorrectly appear comparable.  The standard at issue in the

Plaintiff's case is whether or not Equifax followed reasonable procedures to assure

maximum possible accuracy.  15 U.S.C. §1681e(b).  Equifax is liable to the Plaintiff and

the putative class if its conduct was negligent or willful (reckless).  15 U.S.C. §§1681o

and n.  These are not standard's of conduct imposed in the Equifax – LexisNexis

---

[3] While Rule 42(a) would allow consolidation without requiring a single trial, Equifax
has not asked for such a posture.  It asks solely for a joint trial consolidation.
Accordingly, Plaintiff addresses only that motion.  However, most of the factors against
consolidation addressed herein are just as compelling for pre-trial consolidation.

contract.   Instead, as quoted above, the LexisNexis contract requires the vendor to obtain judgment terminations only if it is "commercially reasonable" to do so for the extremely low price at which Equifax pays per record.  Despite the similar sound to the shared use of the word "reasonable", the thresholds are incomparable.

The reverse of this position is the assertion by Equifax as its own potential prejudice – that "if these cases are not consolidated, Equifax will be exposed to a risk of inconsistent adjudications on common factual issues." *Def. Mem.*, p.8.  This has been addressed in part above.  None of the proffered "common factual issues" suggested by Equifax are both contested and material to the two cases.

**2. Consolidation would materially disrupt litigation of the Plaintiff's case, waste judicial resources and resources of Plaintiff and her counsel.**

The most remarkable thing about Equifax's motion is that it waited until the point at which discovery and "Phase I" were essentially complete before filing the third party lawsuit and then motion to consolidate.   This case was filed in February.  Equifax agreed to the governing scheduling order – "Phase I" discovery is formally over on October 8, 2010 and Plaintiff's motion for class certification is due on or before October 29 2010. Plaintiff has no more depositions scheduled or discovery requests propounded.  She is simply awaiting the Equifax data ordered on September 17, 2010 and then will file her Rule 23 motion.  Similarly, all discovery of LexisNexis has been completed.  The deposition that is offered in Equifax's motion as proof of the importance of LexisNexis in the case was actually completed in about one hour and addressed a much shortly list of topics than first contemplated in the original notice.   There was very little contested information sought or obtained in that deposition.  In fact, Equifax did not ask a single question of the LexisNexis employee.

Throughout this discovery process, only Equifax and the Plaintiff were represented.  LexisNexis was not a party and thus was not present for or part of discovery exchanges or the discovery meet and confer conferences.  It was not present on any of the days that Plaintiff's counsel deposed Equifax employees.  It will not be present when Equifax takes the deposition of Ms. Soutter that Equifax has noticed for September 28, 2010, or the Virginia judicial employees it is deposing on that date and October 8, 2010.  Accordingly, if LexisNexis were consolidated into the Plaintiff's case it would have a right, and certainly a justifiable one, to require the full restart of the discovery process.  New depositions would be required.  New written discovery would be propounded.   The restart would also thus provide Equifax the benefit of additional time to attempt new discovery or devise an alternate strategy to delay or defer what is otherwise certain liability.

Such delay will have an oversized impact on the putative class.  As to the Plaintiff individually, counsel is regularly in contact with her and she is active in the case.  But, this is of course not true for yet unknown putative class members.  As time passes, it will become more difficult to reach class members in a notice process or to obtain their cooperation in litigation of the case.  As similarly suggested in a comparable case:

> Furthermore, the respective procedural postures of these cases strongly weigh against consolidation the actions. [. . .] Second, the procedural postures of the two actions indicate that consolidation would not further the efficient progress of these cases by resulting in the joint conduct of discovery. Finally, it is clear that consolidation of the actions would likely disserve the convenience of the parties in the *Nnebe* action. Specifically, due to the relatively advanced procedural posture of the *Nnebe* action, joining the two actions would inevitably stall the progress of the *Nnebe* action due to the need for the Court and the parties to wait for the proceedings in the *Rothenberg* action to "catch up." *See In re Argo Communications Corp.,* No. 91 Civ. 7226(MJL), 1992 WL 75144, at *3-*4 (S.D.N.Y. March 30, 1992).

16

*Nnebe v. Daus*, 06CIV.4991(RJS), 2008 WL 706579 (S.D.N.Y. Mar. 5, 2008). *See also*

*Miller v. Wolpoff & Abramson, LLP*, 106-CV-207-TS, 2007 WL 2473431 (N.D. Ind.

Aug. 28, 2007) (In rejecting consolidation of two cases at different stages of litigation,

the court held, "Consolidation would not allow for this Court to resolve all disputes

before the parties in an expedited manner, but would prolong an already protracted

case.").

Given the history of the case to date and the fact that much of the discovery for

both phases is completed, it is incredible that Equifax asserts as a benefit of consolidation

the claim that absent consolidation the parties will face two sets of depositions or

discovery. Nearly the opposite is true. As stated above, Plaintiff's primary depositions

are completed. If the case were consolidated, and after early stage motions practice and

the Rule 26(f) and 16(b) processes, all discovery would have to start over so that

LexisNexis would have its opportunity to examine witnesses and gauge their credibility,

or propound its own written discovery. And Plaintiff and her counsel would have to

absorb all of that expense and all of these attorney hours to be allocated to reading,

watching and considering discovery in the otherwise entirely irrelevant Equifax contract

claim.

Equifax suggests two responses to what were the obvious points above. First, it

asserts that because the case is a class action and discovery is divided into two phases,

consolidation could still add benefit (time and money savings) for "Phase II" of the case.

This is certainly untrue, for the reasons stated above. "Phase I" discovery was significant

and most of it will be immediately relevant for "Phase II". As importantly, Defendant's

argument concedes that any benefit to consolidation would not be reached until "Phase

17

II". There is not a benefit suggested, offered or argued for the premature consolidation now sought by Equifax. As Equifax agrees, "only after the class certification motion is decided will discovery on other merits and liability issues commence." *Def. Mem.*, p. 9. At its most optimistic outcome, the Motion to Consolidate should be presently denied, with reconsideration of the motion after the Court has ruled on class certification.

Defendant also suggests that Plaintiff presently intends to file a second amended complaint. She does not. The current complaint alleges a class definition that would be geographically limited to the City of Richmond General District Court. After completion of discovery, the Plaintiff has learned and Equifax has conceded that the Equifax procedures challenged as to the City of Richmond are consistent statewide. The parties have agreed that Plaintiff will seek certification of a class that is geographically limited to all state courts in Virginia, rather than just the City of Richmond General District Court. However, the change in the class definition does not require an amended complaint. In fact, regardless of what is alleged as a proffered class definition in a complaint, the Court is free to define the class as it finds more appropriate. "Holding plaintiffs to the plain language of their definition would ignore the ongoing refinement and give-and-take inherent in class action litigation, particularly in the formation of a workable class definition." *Bratcher v. Nat'l Standard Life Ins. Co. (In re Monumental Life Ins. Co.*), 365 F.3d 408, 414 (5th Cir. 2004) *cert. denied*, 125 S.Ct. 277 (2004); *Meyer v. Citizens & S. Nat'l Bank,* 106 F.R.D. 356, 360 (M.D. Ga. 1985) ("The Court has discretion in ruling on a motion to certify a class. This discretion extends to defining the scope of the class."); *Bafus v. Aspen Realty, Inc.*, 236 F.R.D. 652, 655 (D. Idaho 2006) ("At the hearing in this matter, Plaintiffs offered this revised definition. The Court finds that the revised

definition better reflects Plaintiffs' claims in these actions. Therefore, the Court will consider the revised definition in making its class certification determination.") Accordingly, and particularly with the previously stated consent of Equifax, Plaintiff intends to move for certification upon a class definition that includes all Virginia state courts.  This will not impose the theoretical delay that Equifax suggests.

The grafting of the manufactured *Equifax v. LexisNexis* claim into the Plaintiff's straightforward FCRA case would certainly impose and require significantly greater judicial time and resources.  All hearings would then include briefing and as necessary argument from three parties; the dates previously and firmly locked in would have to be abandoned; if the case tried to a jury the limine, jury selection, trial and instruction stages would become significantly more complex – certainly adding more burden and difficulty than saved with the possibility of a modest time savings.

Finally, as important as all of the above – consolidation will derail the settlement process already underway.  Plaintiff and Equifax have agreed to a private mediation process, selected a mediator acceptable to Plaintiff and Equifax, and scheduled two days of mediation in Atlanta before the end of October.  Further, the Magistrate settlement conference is scheduled shortly thereafter in early December.  LexisNexis has not participated in any of these mediation-planning discussions.  And it makes little sense for LexisNexis to participate, as there really is no responsibility lawfully attributed to it based on the evidence now known to all parties.  Plaintiff's counsel assumes an ulterior motive – such as delay or reopening of "Phase I" discovery – as the actual objective of Equifax's motion.

## IV.    CONCLUSION

Equifax fails entirely to make a showing under Rule 42(a) sufficient to support consolidation. For the reasons stated herein, Plaintiff asks that Equifax's Motion to Consolidate be denied.

**DONNA K. SOUTTER for herself** *and on behalf of others similarly situated individuals,*

_____/s/_____
Leonard A. Bennett, Esq.
VSB #37523
Attorney for Plaintiff
CONSUMER LITIGATION
ASSOCIATES, P.C.
12515 Warwick Boulevard, Suite 100
Newport News, Virginia 23606
(757) 930-3660 - Telephone
(757) 930-3662 – Facsimile
lenbennett@cox.net

## CERTIFICATE OF SERVICE

I hereby certify that on this 24th day of September, 2010, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

| | |
|---|---|
| John W. Montgomery, Jr., Esq.<br>Montgomery & Simpson, LLLP<br>2116 Dabney Road<br>Suite A-1<br>Richmond, VA  23230<br>jmontgomery@jwm-law.com | Barry Goheen, Esq.<br>King & Spalding<br>1180 Peachtree Street, NE<br>Atlanta, GA  30309-3521 |
| John Anthony Love<br>King & Spalding<br>1180 Peachtree Street, NE<br>Atlanta, GA  30309-3521<br>tlove@kslaw.com | Keasha Ann Broussard, Esq.<br>King & Spalding<br>1180 Peachtree Street, NE<br>Atlanta, GA  30309-3521<br>abroussard@kslaw.com |

_____/s/_____

Leonard A. Bennett, Esq.
VSB #37523
Attorney for Plaintiff
CONSUMER LITIGATION
ASSOCIATES, P.C.
12515 Warwick Boulevard, Suite 100
Newport News, Virginia 23606
(757) 930-3660 - Telephone
(757) 930-3662 – Facsimile
lenbennett@cox.net