UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF VIRGINIA

RICHMOND DIVISION

*****************************************************

DONNA K. SOUTTER, For Herself and On Behalf of All Similarly Situated Individuals,

Plaintiffs,

v. Civil Action Number 3:10cv107

EQUIFAX INFORMATION SERVICES, LLC,

Defendant.

*****************************************************

DEPOSITION OF

KEN MITTENDORFF

October 6, 2010

10:00 a.m. - 11:44 a.m.

Richmond, Virginia

JOB NO: 33526

REPORTED BY: GWENDA E. APPLEGATE, RPR, CRR

Deposition of KEN MITTENDORFF, taken and transcribed on behalf of the Defendant, by and before Gwenda E. Applegate, Court Reporter, Notary Public in and for the Commonwealth of Virginia at large, pursuant to Rule 30 of the Rules of Civil Procedure, and by Notice to Take Depositions; commencing at 10:00 a.m., October 6, 2010, at McGuire Woods, 901 East Cary Street, Richmond, Virginia.

APPEARANCES OF COUNSEL:

By: CONSUMER LITIGATION ASSOCIATES, P.C.
12515 Warwick Boulevard, Suite 100
Newport News, VA 23606
LEONARD A. BENNETT, ESQ.,
-- and --
MATTHEW J. ERAUSQUIN, ESQ.,
Counsel for the Plaintiffs

By: KING & SPALDING
1180 Peachtree Street, N.E.
Atlanta, GA 30309
J. ANTHONY LOVE, ESQ.,
Counsel for the Defendant

By: OFFICE OF THE ATTORNEY GENERAL
900 East Main Street
Richmond, VA 23219
PAUL KUGELMAN, JR., ESQ.,
Counsel for the Deponent

INDEX

WITNESS:
KEN MITTENDORFF
Examination by Mr. Love..................4, 70
Examination by Mr. Bennett...............54

EXHIBITS

NUMBER DESCRIPTION: MARKED:
Exhibit 1 ...Soutter documents...............17
Exhibit 2 ...Disposition Update..............21
Exhibit 3 ...User's Guide....................26
Exhibit 4 ...Internet screen shots...........32
Exhibit 5 ...Warrant in Debt.................51

* * * * * *

(October 6, 2010, 10:00 a.m.)

KEN MITTENDORFF
first duly sworn, testified as follows:
EXAMINATION
BY MR. LOVE:

Q Mr. Mittendorff, my name is Tony Love, and I represent Equifax, the defendant in the lawsuit which is pending in federal court in Richmond, Virginia.
You and I spoke on the phone one time before about this case; is that right?
A That's true.
Q We've never met before today; correct?
A That's true.
Q All right, sir. If you would, please just tell us your job title.
A I'm an assistant director of the Department of Information Systems, and that's at the Supreme Court of Virginia, Office of Executive Secretary.
Q Sure. And how long have you held that position?
A About ten years.
Q And what are your responsibilities in your current position?
A I do a big list. One of mine is to solve

problems. One is to assist people. I handle administrative office functions. I do grants. I work with other state agencies like the state police, DMV, and go to meetings and probably solve problems. That's the biggest part. If it gets to be a really tough problem, then I usually get it.
Q All right.
A And I do anything when the director is not there. I sign anything that he would normally sign and work on procurement and stuff like that.
Q Are you familiar with the records that are maintained by the clerks in the Richmond General District Court in Virginia, just generally familiar with those records?
A Yes.
Q And are you generally familiar with the records that are maintained by the general district courts of all the general district courts throughout the State of Virginia?
A Yes.
Q And are you also familiar generally with the records maintained by the circuit courts throughout the State of Virginia?
A Yes.
Q How did you gain familiarity with the types of

records maintained by the clerks in the general district courts and the circuit courts throughout the State of Virginia?

A I've worked in automation at the supreme court for 35 years, and I was there when we started automating the courts. And that was back in early '80s was when we first did a study. And then the first systems we put in were about 1984, '85. And the first systems we put in were J&DR, general district, and then we moved on to circuit court. And we installed case management systems in all three layers of courts.

Q When you say case management systems, could you give a little more information about that? Is that a system that was set up at the court level so that the clerks of the various courts and the general district courts could use an automated system?

A That's correct.

Q And what types of things would a clerk of a general district court or, later, a circuit court -- let me back up.

'84 to '85, that was when the system was set up in the general district courts; is that correct?

A Right.

Q Okay. When was the computerized system set up in the circuit courts?

A It would have been after that but not much more.

Q Okay.

A I mean, the systems were started in pilot courts and they expanded. And most everybody was on by -- because we had to do it slow, almost everybody was on by about 1995, around that time, except for three courts. And those are circuit courts.

Q Was there a particular reason those three circuit courts weren't on by '95 like the others?

A They had their own systems before we ever started.

Q Let's go back to the '84-'85 time period when the system was set up for the general district courts. What type of information could a clerk of a court or an employee of general district court enter into the computer system at that time?

A Primarily indexing and docketing. You could get, you could get a docket out and you entered information, and that's primarily what it would do in the early part. It got better over time. So what we have today is not the same as what's there. It does a lot of the same functions but it's not, it's not the same. Later we added a financial management system, so those two interface. So we interface financial

management records with case management records.

Q Let's move -- is it fair to say that the computerized system developed and evolved over the years so that more data and more information could be included?

A Yes.

Q Let's talk about the last five years. Over the last five years, have the clerks of the general district courts throughout Virginia had a computerized system that they could use to enter information about court records?

A Yes.

Q And when I say court records, would that include information about judgments and the appeals, satisfactions or setting aside of those judgments?

A Yes.

Q And what types of information can the clerks of the general district courts throughout Virginia enter into their computer system over the last five years concerning judgments and the appeals, satisfactions or vacating of those judgments?

A The first thing they do is they enter the cases. They can put witnesses in the cases. They have an ability to set hearing dates. They have the ability to put in dispositions of those cases. And they can put

in whether dismissed, settled, judgments. And later if we change something, it will allow them to put in whether there was a satisfaction and what the date was the court received the satisfaction. And they can also note appeals.

Q Is there a name for the system that the general district court clerks use to enter this information? What do you call the system that you use?

A The general name for it is CAIS, Computer Automated Information System, but that has multiple parts. The case management system would be general district court case management system, and it has the ability to enter criminal data, traffic data and civil data.

Q Is the general district court case management system the computer system that the clerks of the general district courts in Virginia would use to enter information about judgments and the dispositions or termination of those judgments?

A Yes.

Q Is the information that the general district court clerks throughout Virginia would enter into the general district court case management system available over the internet?

A Some of the information is available over the

internet.
Q If you would, please just tell us how information from the general district court case management system came to be available over the internet.
A Okay. Years ago we purchased a used processor and disk drives, and we would copy the data each night from a production machine which is what the courts use to a second machine, and then we made that information available to the people on the internet. And it went through our web site. And that data is limited and that's not the official record of the court.
Q When did the internet access first become available or go on line?
A Probably around 2000, in that, in that era. I don't have the exact date, but it's been up about ten years.
Q And do you have a name for that system that delivers information from the general district court case management system through the internet?
A No. It's just, it's just the internet portion.
Q And is access to the internet portion made through the website of the Supreme Court of Virginia?
A That's correct.

Q Are there any other portals for that information other than the Supreme Court of Virginia website?
A No, other than vendors that have copies of that data.
Q Do the circuit courts in Virginia also have their own case management system where they can enter information about judgments and the dispositions of those judgments?
A Yes.
Q And is there a name for the circuit court system, or is it just called the circuit court case management system?
A Circuit court case management system.
Q And when information became available through the Virginia Supreme Court website around 2000, did that include information from the general district courts and also the circuit courts or just one of the two?
A At first the information was from the general district courts, and later we made the circuit court data available. But the clerks have to opt in to include their data. So not all circuit court data is on the internet. If a clerk doesn't want their data shown on the internet, then we don't put it up.
Q Do you have a rough idea for what percentage

of circuit court clerks have opted in to use the web to make their information available?
A It would be an estimate. I don't have the exact number. There's probably only around 20 or 25 that don't have it, but I'd have to check the number. I don't know that number off the top of my head. I could get it for you but I don't know it.
Q Now, you created or were primarily involved in creating the web-based court information for the Supreme Court of Virginia website; is that correct?
A No. I don't create the data. I work on procuring the, getting the personnel, getting the people to do the work, but I didn't create it by myself. I mean, it was an idea and I guess I fostered the idea by getting the other, the additional machine. But that's about what I did.
Q Okay. If you would, just describe what your role was in creating the web-based information through the Virginia website that went on line around 2000 and just all the steps that were required to get that up and running.
A Well, first we had to procure the money to get that. One of the things we wanted to do was make it so that it started a project with the law, with the bar because they wanted to be able to see court data and we

also wanted to make the public see court data so that people who had a case would be able to look that case up, know what their date was, as well as attorneys and the public, because people would not know what day they're supposed to appear. They would have lost their summons.
And then later we started a pilot project which would allow you to prepay a traffic ticket on the web. And so it was basically if you want to know something, general information about the court, you could go there and look it up. And you can only look the data up by court. You can't look it up by defendant across the state. You have to know which court the data is in. And so it was made -- that's how the data was made. It was made -- just the way we do it, it's not indexed across the state. It's indexed by individual courts. And we gradually added courts to it.
And then we changed something in it now that we can replicate the data. When we moved to DB2, which is a different database, we can put that data out the same day instead of overnight.
Q When did you move to DB2?
A It depends on which system, but it was about, for general district, it was about 2007.
Q And what is the difference between DB2 and the

Page 14

old system that you were using?

A Well, the old one was going to go out of support. That's called DL1. That's the old database. And the new one is DB2. And one of the big advantages of DB2 is you can have other indexes, but it's supported and DL1 is not going to be supported. It's the big thing, you have to move to it, but the other one isn't.

One of the advantages is, it allows you to replicate the data. So instead of having to take copies every night and put them, you can replicate the data and it can look at -- the second database can look at the first database and get the changes that were made so you didn't have to replicate -- you'd have to back up the data and restore it on the internet machine every day.

Q Let's -- I want to try to create a flow chart of information so that I understand how it moves through the system. So let's take a matter in the general district court. You're aware, sir, that in the general district court, oftentimes an action can be initiated by the filing of what's called a warrant in debt; is that correct?

A That's true.

Q Let's assume that a warrant is filed in the general district court which results in a judgment being entered. If you would, tell us how that information

Page 15

flows from the courtroom to the general district court case management system to the web system that you described that was launched in 2000.

A Okay. The warrant comes in, a case number is assigned to each warrant. The parties are entered. If there are attorneys, those are entered, the data entry is done. For every case that's entered, a hearing date has to be set. Once the hearing date is set, a courtroom's assigned. A judge is assigned. And it's set for a time.

In civil cases, there are continuances, quite a few continuances a lot of times, so the cases are continued from one day to another day, maybe to the second or third day. And on that day a hearing is held. And if the judge enters a judgment or dismisses the case, that's written on the papers, usually signed by the judge. There's a docket sheet that's there; they put it on a docket sheet. There's a clerk in the court who can record the information while they're in court at a terminal, or it can be done in the clerk's office by the papers later that day or the next day.

Once the data is in the machine in the first computer, then that night, until we had DB2, the data would be copied to the internet machine so it's available. Not all the fields that are in the case

Page 16

management system are available on the internet. So you can't look at somebody's address. Personal information is not on the internet.

Q And with DB2, the main difference was that instead of waiting until that night so that information could be loaded from the general district court case management system to the web system, it's automatic?

A Yeah.

Q What information -- you mentioned that no address or personal information would appear on the website. Is there any other information that would be available through the general district court case management system that would not be available through the court's website?

A Remarks. Most of the information is available. Remarks are not. That's about -- there may be some other fields that aren't there but I'd have to do a comparison. It's a, it's a general abstract of the case is what really is on the internet. If you know something about the case, you can go and look at it. And that's primarily what it is.

Not all the information about the case is on the internet. There's no personal information on there. And if you want the detailed information, then you have to look at the court papers.

Page 17

Q And no one from the Supreme Court of Virginia actually goes and looks at the actual court papers that are filed in the various general district courts or the circuit courts for use in preparing the information that's available on the website; is that right?

A No one in our office enters data for them. They enter their own data on that system.

Q Right. And would you agree that if one of the clerks or other personnel that are entering this information at the general district court level or the circuit court level make an error in what they enter into their computer system, then that error will also be reflected in the information that's available on the supreme court website?

A That would be correct.

Q Now, have -- let me show you what we will mark as Exhibit 1 to your deposition.

(Mittendorff Deposition Exhibit Number 1 was marked for identification)

MR. LOVE: And at this point we will go ahead and designate this deposition as subject to the protective order in this case since we're dealing with some personal information of a consumer.

BY MR. LOVE:
Q Have you ever seen this document before?
A No.
Q Do you recognize this generally as a warrant in debt that would be filed in a general district court in Virginia?
A Yes.
Q Have you ever reviewed any records of Donna Soutter, the plaintiff in this case, prior to today?
A On the web, yes; the actual documents, no.
Q All right, sir. Have you ever seen a copy of Ms. Soutter's credit file?
A No.
Q You've never spoken to Ms. Soutter, have you?
A No.
Q In looking at this document that's been marked as Exhibit 1, can you help us understand from your knowledge in working with public records in Virginia the type of information that appears here and what's reflected?
First of all, I think you said this is a warrant in debt, this is how a lawsuit would be started in a general district court in Virginia; is that correct?
A Yes.

Q And the way it would be started is the person, the plaintiff in a case, would type in the information here or write in the information concerning the claim that they were making against a defendant; is that right?
A That's correct.
Q And you mentioned earlier that in general district courts, there are often several hearing dates that are set. And over on the right-hand side of the first page, it says hearing date and time, and it has a number of dates; right?
A That's correct.
Q Is that the section of a warrant in debt where a court would write in all the different hearing dates that apply to a particular case?
A That's correct.
Q And then under case disposition in the bottom left-hand side, is that the area where a court would write the final disposition of a case?
A Yes.
Q And for this particular judgment -- or, excuse me. For this particular warrant in debt, under the case disposition section, does it indicate that a judgment was entered against Ms. Soutter for $14,403.79 with an interest rate at 9.99 percent from February 22 of 2007?

A Yes.
Q And it also appears that the Court awarded $48 in costs against Ms. Soutter; is that correct?
A That's correct.
Q And then down below we see some handwritten notes, and one of them says "3/20/08, see order J vacated, case dismissed without prejudice." Do you see that part?
A Yes.
Q Does that mean that on 3/20/2008 the Court entered the notation that the judgment had been vacated and case dismissed without prejudice?
A I wouldn't know. I mean, what I'm reading is that, but I don't know who put it there.
Q Certainly. That's how you would generally understand that a court could make that type of note in a record like that; is that fair to say?
A Yes.
Q Okay. So this is the type of record that would be generated, going back to our flow chart discussion, this is where the trail would begin, so to speak? When a document or a record like this is entered in the record of a general district court or a circuit court in Virginia, something like this would have to happen before any information was entered about a case

into the general district court case management system; is that right?
A That's correct.
Q And from here, let's go to the next step. The next step would be the clerk of the general district court or a circuit court would enter information about the events that are shown in these documents, like what's been marked as Exhibit 1, into the general district court case management system; is that right?
A That's correct.
Q Or if we were in circuit court, then a circuit court clerk would enter information about its case into the circuit court case management system; right?
A That's correct.
Q Let me show you what we'll mark as Exhibit 2.

(Mittendorff Deposition Exhibit Number 2 was marked for identification)

BY MR. LOVE:
Q Can you identify what's been marked as Exhibit 2?
A It's a screen print of the case management system.
Q And is this a screen print for Donna Soutter's

Page 22

lawsuit in the Richmond General District Court?
A Yes.
Q And are you familiar with this type of screen shot and the information contained in this type of screen shot?
A Yes.
Q If you would, just walk us through this document and tell us what it reflects about Donna Soutter's case.
A Okay. If you look at the original one, you could tell there was a judgment, and that hearing date occurred on 1/29. And that's, that's the number 05 hearing here. So on that day there was a judgment entered. On 03/20/08 they had a re-hearing of some kind, and this was amended to be that the case was dismissed.
Q And the person who entered this information that's reflected on this exhibit would have been an employee of the Richmond General District Court; is that correct?
A Civil court, yes.
Q The civil division of the Richmond General District Court. And going back to our flow chart, this document reflects the second step in the process, the first step being the events that happened in the court

Page 23

and a judgment or some other action occurs, the second step being that an employee of the Richmond General District Court civil division enters information about those events into its case management system; correct?
A Right. You're just missing one. This is after the re-hearing, but you're missing what it looked like before the final, before the March 20th. This is a screen shot of March 20th, and you don't have the one from January 29th, '08; okay? But it would not have shown that last hearing. But other than that, you're correct.
Q Okay. In other words, what you're saying is there could be, there's usually -- there could be a screen shot that reflects the events that occurred at each separate hearing?
A That's correct.
Q Okay. But this screen shot that's been marked as Exhibit 2 reflects what happened at the last hearing in this case?
A That's correct.
Q And what happened at the last hearing is the hearing was held and then an employee of the general district court entered information about that last hearing, and what they entered was that the case had been dismissed; is that correct?

Page 24

A That's correct.
Q And if you look in the upper right-hand corner of this document, you'll see in bold the letter "I." Do you see that?
A Uh-huh.
Q What does that letter "I" indicate?
A Actually, it's where the case disposition is, but the "I" means that means the case has been dismissed.
MR. KUGELMAN: I think he's talking about the upper right here. Is this correct, Tony (indicating)?
BY MR. LOVE:
Q Yes, sir.
A Okay. That's dismissed for Donna Soutter. That's the judgment for her.
Q All right. And the "I" that you were looking at when you spoke earlier is actually right in the middle on the top where it says JI; is that right?
A Right, plus the other one that's down in the lower left where it says case disposition. That's the one I look at first.
Q Okay. And those three Is that are reflected on Exhibit 2, that's all information or codes that would have been entered by an employee of the Richmond General

Page 25

District Court after this final hearing?
A That's correct.
Q And the "I" -- these employees of the general district courts use codes to indicate certain events that occurred; right?
A That's correct.
Q And they use codes so they don't have to type out the longer verbiage of what happened; right?
A That's correct.
Q And an "I" code means dismissed; is that right?
A That's correct.
Q Now, there are other codes that could have been entered following this disposition of this case in March of 2008; is that right?
A You mean that were entered after this?
Q Well, let me rephrase the question. When an employee of the Richmond General District Court or any district court throughout Virginia goes to enter this information after a hearing about this case or any other case, there are a number of codes available to them that they can use to describe the events that occurred in the hearing; is that fair to say?
A That's correct.
Q Okay. "I" is one of the codes, and "I" means

dismissed?

A Correct.

Q One of the other codes that an employee could use is a code for appealed; is that right?

A That's noted. It's not -- I don't believe there's a code for appeal. It would be noted in the bottom, down on the bottom where it says -- there's a place on the -- the appeal noted is located on the bottom of it, of the form. Like it says bankruptcy, appeal noted, appeal perfected.

Q Okay. You're talking about the section that says "APPL noted"?

A Right.

Q And "APPL perfected"; correct?

A Right.

Q And we'll come back to discussing appeals in a little while. But in the meantime, let's take a look at what's been marked as Exhibit 3.

(Mittendorff Deposition Exhibit Number 3 was marked for identification)

BY MR. LOVE:

Q Can you identify that document, sir?

A It's a training tool that's used for courts so

they know what case -- what to enter on a case management entry screen.

Q All right, sir. And if you take a look at page A5 of that document, it's in the upper right-hand corner.

A Okay.

Q Is page A5 a page from this training document that's provided to the employees of the general district courts that shows them how to code civil hearing disposition information?

A That's correct.

Q And if you look in the bottom left-hand corner of this page, there's a box. And it has the letters and the words A-vacated, P-plaintiff, D-defendant, I-dismissed, N-nonsuit, U-not found/unserved, and O-other. Do you see that box?

A Uh-huh.

Q Are those the codes that employees of the general district courts can use when they enter information into the case management system to show the dispositions of cases in their courts?

A That's correct.

Q And if we go back to Exhibit 2 and look at the three "I" codes that appear on the first page of that document, those "I" codes are the same "I" codes that

are reflected on Exhibit 3 down in the box that we just looked at, where it says "I-dismissed"; is that right?

A That's correct.

Q And when the employees of the general district court enter the information that's shown on Exhibit 2, they had available to them the option to enter code A, vacated; is that right?

A That's correct.

Q But they didn't choose A, vacated; instead, they chose I, dismissed; is that correct?

A That's correct.

Q Now, does someone from your office conduct the training for the clerks of the general district courts and the clerks of the circuit courts on how to code this type of information into their case management systems?

A Yes.

Q Who does that actual training?

A Judicial Services Department.

Q Is there a particular individual that does that?

A There are a lot of individuals that do that.

Q Okay. They just travel throughout the state and conduct this training?

A A lot of the training is done in our office.

Q Okay. So the clerks actually have to come to

you?

A Right.

Q How long has this document been out that's marked as Exhibit 3?

A It would be out for years. I mean, I don't know the exact date. It's basically a screen shot of the -- and it's been probably in use for at least ten years or something. I don't know the exact date when it was done. This is 7/10, so it was revised in July of this year. So they may have added a code or something, but, so I can't tell you exactly. But it's a training tool is what it is.

Q Based upon your review of Exhibit 2 and your knowledge of the court systems, Donna Soutter's judgment was never marked as vacated, it was marked as dismissed; is that correct?

MR. BENNETT: Objection, leading question, also assumes facts not in evidence. The witness has already said that the only screen print you're showing is the ultimate one, not necessarily the one when it was noted vacated before, thereafter the dismissal with prejudice was entered.

MR. KUGELMAN: You may answer the question. It's all right.

THE WITNESS: What's shown here on this screen

print is dismissed. Was there something else in between? I can't -- I don't know. I don't have that. Was there something after this date? I don't know.

One thing about case management that everybody needs to understand is when you take a picture of something, it's the picture that this was on that particular day. It can be changed. So I don't even have the date this screen shot was made. But if you knew the date that screen shot, that's the way it appeared on that day. Ten days later, two days later, somebody makes a change on it, you get a different -- there will be something out there that's different.

And I can't -- usually they're not going to make a change unless something occurs. That's not usually done unless there is a mistake, okay? So...

BY MR. LOVE:

Q How did you get this -- is this a screen shot that you obtained?

A No. You just gave it to me.

Q Okay. Well, did it initially come from -- have you, have you ever requested or obtained any screen shots from the Richmond General District Court

concerning Donna Soutter's case?

A Yes.

Q Is this one of those screen shots?

A Yes.

Q Okay.

A Not -- I'd like to say, I can't tell you if it's the one I have, but it is one that I recognize, appears to be exactly the same as the one I have.

Q Okay. And would it be possible to go back and get screen shots from all these different hearing dates?

A No.

Q You can only get a screen shot for the most recent activity?

A That's correct. Unless you got one earlier, you can't, you can't replace that. It's like you took a picture and now you have it. Something changes and now you've got another picture. But you can't recreate the screen shot for 2008 or 2007. You can't do that. The system has been changed.

Q Okay. But what we can say based on Exhibit 2 is that as of March 20, 2008, this was being reported as a dismissed lawsuit; is that correct?

A Right. And it should be -- yeah. It matches -- there is a date on the, on Exhibit 1 that says this is March 20th, '08, and that matches with

this. So as of that date, this matches with your Exhibit 1.

Q And if you go back to Exhibit 1 and go to the next-to-last page, does this appear to be an order that was entered in Ms. Soutter's lawsuit?

A Yes.

Q And if you look at the next-to-last sentence, it says "ordered that the judgment entered against Donna K. Soutter in the captioned matter be, and is hereby, set aside and dismissed without prejudice." Do you see that part?

A Yes.

MR. LOVE: All right. Could we go off the record just for a moment?

(Discussion off the record, Mittendorff Deposition Exhibit Number 4 was marked for identification)

BY MR. LOVE:

Q All right, sir. Can you identify what's been marked as Exhibit 4?

A Okay. This is copies of screen shots of what is on the internet machine for -- and it shows first, the first page is the index to cases in the Richmond General District Court civil case, and it shows two

cases for Ms. Soutter. And those cases are the one you have as Exhibit 1, and a second case that's 02, or it's actually a suffix case. And the second page is a screen shot of the actual case, the A2-00, shows the file date. And it shows the last date is March 20th, 2008, reopened, re-hearing and has a judgment of case dismissed. So it matches what's on the warrant in debt which was Exhibit 1.

Q All right. And is Exhibit 4, does it appear to be a copy of the screen shot for Ms. Soutter's case from September of this year?

A It would be September of 2000 -- the case was September, started in September 2007, correct. It wasn't this year. And the screen print was made this year. Okay.

Q And so that is, that represents the information for Ms. Soutter's case, the one that we're talking about in this lawsuit, as it appeared on the supreme court website in September 2010?

A Yes.

Q And in September of 2010 it was still being reported as dismissed; is that correct?

A That's correct.

Q And it wasn't being reported as vacated; correct?

A That's correct.
Q In the coding of the documents for public records in the general district courts of Virginia and the circuit courts of Virginia, going back to the codes that are used, do the clerks make a distinction between vacated and set aside or is that generally treated as the same thing?
A I can't answer that question. I mean, if the order -- if the way the order is written or the way the judge says it, the clerk records it that way. The clerks aren't allowed to change it. So if somebody says it's dismissed, then it's dismissed. They wouldn't put vacated unless the judge said vacated, normally.
Now, I can't speak to how they do it in one court versus another court. The codes are there. And I'm not there when they do it so I can't tell you how they do it. I don't know if that helps you any but, I mean, everything says dismissed here and they put dismissed, and the order said dismissed.
Q Based on your knowledge of court records in Virginia, is there a difference in Virginia between a vacated judgment and one that's set aside?
A I can't answer that.
Q Okay. There's not a separate code here on Exhibit 3, on page A5 of Exhibit 3 for a set-aside

judgment, is there?
A Let me get the right one (perusing document). No. There's vacated and dismissed, but set aside is not shown.
Q All right, sir. Now, that document that we just looked at, Exhibit 4, going back to our discussion earlier of the flow of this information and building a flow chart of this information, that represents the final step in our flow chart; right?
It goes from the actual documents in the court that would be in the court file which are represented in Exhibit 1, which is the warrant in debt and the order and those types of documents. That's step one. Step two is when the clerk of the court enters it into the general district court or circuit court case management system, and that can be reflected in documents like Exhibit 2, which is the screen shot?
A Uh-huh.
Q And then finally, it shows up here on the Virginia Supreme Court website with select information about a case that's available to the public through the court's website. Is that the final step in our flow chart?
A That's correct.
Q I want to ask you some questions now, sir,

about public record vendors in Virginia. Now, are you aware that -- do you know what a public record vendor is?
A Basically.
Q Okay. What is your basic understanding of what a public record vendor is?
A Some vendors gather data from courts and they report it. Some try to put it on their own websites. Some are good at it and some are not so good at it. But anyway, that's what people do. Some people, what we call them I guess in the courts are some people are list makers. They go to court and they get lists, and that's what they do. Other people -- we used to report data. But the data on their website is one way for somebody to get information. And if they want more information, they'd have to go to the court to look that up. But that's what the data is used for.
Q All right, sir.
MR. LOVE: And just for the record, I move to strike the portions that are nonresponsive.
MR. BENNETT: I'm sorry?
MR. LOVE: Move to strike the portions that are nonresponsive. The --
MR. BENNETT: Which, of course, you can say. He says I move to strike the portions that are not

responsive, but the typed transcript --
BY MR. LOVE:
Q Are you aware of a public records vendor called LexisNexis?
A Yes.
Q What is your knowledge of LexisNexis?
A They are a big company. They do -- well, they do keep records. Okay. They received records from us and they know how to use the web. And that's about what I could tell you about them. Anything else would be -- okay.
Q All right. Did the State of Virginia through your office at some point provide information about public records, including judgments and dispositions of judgments, to LexisNexis?
A That's true.
Q And could you just explain how that worked, when it started and what the process was, how the information was transmitted?
A Okay. We have a -- we had. We no longer have that. But we could provide you dispositional information for civil cases. And I'll just speak to civil since this is what that's about. And we would send, based on somebody's request, we would send monthly dispositions. And the data we would send is equivalent

to an abstract of judgment. And let me explain what that's -- why we did that.

Abstracts of judgments are placed on the court's calendar for list makers, it used to be placed on there for list makers to gather that information. And at one time, sometime long ago, people asked if we could automate that portion so that list makers wouldn't have to just copy the data that's on the abstract of judgments. So that's what we did.

Abstracts of judgments are based on a judgment or an other judgment. So the only dispositions that appear on abstracts of judgments are cases in which the defendant, there was a judgment entered against the defendant or an other judgment was made. And so those would be reported on those, on those cases.

And so to get it -- to make the data better, because if a court was -- didn't complete something by the end of the month, we started sending two months. So you would get two months each month, try to make sure that -- and you could request updates, which means you could request a whole year's worth of data to refresh your database. Because if changes were made on the record, you wouldn't have those unless you went on line and looked at those records.

Q When did the State of Virginia through your

office start providing this information to public records vendors in this manner approximately?

A Probably in around 2000 or so, maybe a little earlier than that. I don't know the exact date when we started doing it.

Q And when did you stop providing it in this manner?

A The last records we sent were March of 2009.

Q How was the information transmitted to public records vendors?

A By cartridges.

Q Cartridges?

A Computer cartridges.

Q Were those sent by overnight mail or --

A UPS.

Q Did the cartridges contain information about new judgments that were entered in the district courts?

A Yes.

Q Did the cartridges contain information from both the general district courts and the circuit courts or just the general district courts?

A You could get whichever one you wanted. If you wanted circuit court, you could get circuit court. If you just wanted general district, you could get general district.

Q All right, sir. And you mentioned earlier that some of the circuit courts have elected not to participate in the web information that's now available. Did some circuit courts also opt out of participating in providing information that could be included in providing those computer cartridges?

A No.

Q So that included all circuit courts?

A That's correct.

Q Did the computer --

A Only the ones on case management, less the three circuit courts that are not on the system.

Q Yes, sir. So the information that was included on those cartridges came from the case management systems of the general district courts and the circuit courts in Virginia?

A That's correct.

Q Now, how would your office extract the information from the case management systems of the general district courts and the circuit courts to include on this information that was on these computer cartridges?

A We do it by hearing date. So if you're going to run for, say, January 2009, you're going to run all the hearing dispositions that occurred in which a

judgment was ordered in that period of time. And we're only talking civil now. So if judgments were entered in January for hearings, then we would report those. And it's similar to the screen shots that you have here.

Q Did the information that was included on the computer cartridges also include new satisfactions of judgments?

A Yes, if the judgments had been satisfied when the tapes were made. So if you satisfied the judgment within a month, then yes. To get it later, you would have had to ask for the tapes that covered the hearings that were done. In other words, the way it was made was the same thing you'd see on an abstract of judgment. So if you got a picture in January of it, it might not be satisfied. But in -- when we ran two months in February, if it had been satisfied, you would see it. If you re-ran it you would see it, or if you went on the web you would see it.

But to get the satisfied, you would have to, you would have to either get new data or go look at it on the web.

Q Did the information that was provided on the computer cartridges contain information about appeals?

A No.

Q Did the information on the computer cartridges

contain information about judgments that had been vacated or set aside?

A No.

Q I'd like to go back for a minute to Exhibit 3, please. And if you would, look at page A5. Down in the bottom left, we talked about the box that contains the various codes that the court clerks could use to enter information about cases, and none of those codes says satisfied, does it?

A No.

Q How would a court clerk enter information into the case management system to show that a judgment had been satisfied?

A There is another -- you'd have to look at one of the other exhibits. It's not shown on this page. If you look at Exhibit 2 -- oh, yeah. There, it is. I'm sorry. It is on the bottom of this page.

If you look on page A5 at the bottom, there is a place to put judgment satisfied.

Q Yes. It says "JGMT SAT"?

A Right. And there is a place there to put a checkmark or an "x." And there is also another space. And that's where, if the judgment was satisfied, the Court could note it and put the satisfied amount in, put that it had been satisfied. That's where they would put

the date.

Q Okay. So there's not a code that a court clerk would use to indicate that a judgment had been satisfied, there is a different process for that?

A Right. They -- because it's usually done at a different time, they would go back and update the record. It wouldn't be a hearing. They would just go in and mark judgment satisfied and put the date they received the document that the judgment had been satisfied.

Q Okay. And that would have to be done by the clerk for each case in which a judgment had been satisfied; correct?

A Yes.

Q And also --

A Let me just clarify one thing. They can only do it if they received a document from the plaintiff that the judgment has been satisfied. If they have not received it, then it still wouldn't show that the judgment's been satisfied.

Q And the reason for that is the only way that a court will know if a judgment has been satisfied or not is if somebody advises the court of that fact?

A That's correct.

Q Okay. Because the court doesn't know whether

the judgment debtor is making payments to pay off the judgment unless somebody tells the court about that.

A Right. There's no way to see if he's making his hundred-dollar-a-month payment. You don't -- there's nothing between the disposition until the judgment's satisfied. The court's not keeping records of how many payments have been made, if payments have been missed until a plaintiff comes back in, in which case they could issue a garnishment or something, other action.

Q And for that reason it's possible that a judgment debtor could have already satisfied a judgment by paying everything off over a period of several months, yet it still shows as an open judgment on the court's records until someone notifies the court of that satisfaction?

A That's correct.

Q Now let's talk for a minute about appeals, because in the box on the left on page A5, there is no code for appeal; correct?

A That's correct.

Q So how --

A It's on the bottom line. You can note the appeal and then you can have the appeal's been perfected.

Q Now, explain to me, sir, the difference between an appeal noted and an appeal perfected.

A One would be if somebody wants to appeal, and the other one is they set the bond up to have the case heard in circuit court.

Q Okay. So are there different date requirements for that? For example, is one done within 10 days and one done within 30 days?

A Usually it's ten days.

Q So they can file for the appeal noted within ten days; is that generally correct?

A Yes. I know that's true on criminal. I'm not sure on civil but I believe it's the same. But I couldn't say that.

Q And so what information would the clerk enter if an appeal is noted? Would that be a date or a check or an "x" or something else?

A I'd have to look at the screen shot. They'd enter the date.

Q And appeal perfected, same thing, the clerk would enter the date?

A They'd enter the date.

Q So is it accurate to say that the manner in which the clerks record information about these three different types of dispositions, vacated, satisfied,

Page 46

appealed, are done in different ways?
A Yes.
Q There is a code for vacated but there is not a code for satisfied or appeal; right?
A That's correct.
Q And for satisfied, that information and what they enter into the system for that depends on information that comes from outside the court's records?
A That's correct.
Q And for appeal, there are two different time periods that could be relevant for appeals, both appeal noted and appeal perfected?
A That's correct.
Q Let's go back to the discussion of the information that was provided to public record vendors on these computer cartridges that you were talking about.
Was the information on those computer cartridges the same information that was in the -- for the types of -- well, strike that.
You said earlier that the information on the computer cartridges came from the case management systems in the general district courts and the circuit courts; right?
A That's correct.

Page 47

Q So if the clerks of the courts made a mistake in how they entered information into the case management system, then the information about that particular case on the computer cartridge would also be erroneous; is that correct?
A That's correct.
MR. BENNETT: We would so stipulate.
BY MR. LOVE:
Q Ms. Soutter's attorneys in this case requested the state to provide certain information as part of this lawsuit. Are you familiar with that?
A Yes.
Q Okay. What is your knowledge of the information that was requested by Ms. Soutter's counsel in this case?
A I believe the cases they asked for were vacated cases, cases dismissed, satisfied and appealed. I'm not sure if they asked for dismissals. Somebody would have to help you with that. But I think there were only three and it was vacated, satisfied and appealed, and maybe dismissal. I'm sorry. I don't know that part.
Q And were you involved in preparing that information?
A No.

Page 48

Q Who was involved in preparing that information, if you know?
A Eddie Macon talked to the attorneys, Dave Savage and Mamiko Barnard.
Q Did you ever see a copy of the final list of information that was produced?
A No.
Q Do you know whether Donna Soutter appeared on a list of information that was produced?
A I do.
Q Did she appear?
A No.
Q And why didn't she appear on that list?
A Because the request for information only asked for certain types of cases, and the case that was brought, the subsequent action that was brought, which is the 01, was closed out with an other judgment which was not vacated, and it wasn't satisfied, it wasn't dismissed and it wasn't appealed. And that's the reason it wasn't on there.
Q What does that mean, that it was closed out with an other judgment?
A Well, okay. That was -- the 01 case which is shown on Exhibit 2, I believe, okay, it shows the case dismissed as other. So what occurred in the court is

Page 49

someone asked for a motion to vacate or dismiss the original case, which was a judgment against Donna Soutter. And the judge basically agreed with them. And instead of the 01, that particular case shouldn't be dismissed because that would say we're not going to correct the record. So what the judge entered or what they did was they entered favorably for this, which is a judgment. They're saying okay, we approve your motion and we're going to dismiss, we're going to enter a dismissal on the 00 case. So it wouldn't have shown on their list.
Q Was that the correct way to do it under the policies and procedures that had been established by the Supreme Court of Virginia?
A We don't have a policy on how they should do that. That's one way of doing it.
Q Okay.
A I can't say -- it was a judgment so it can't be a J, so it has to be an other judgment. There aren't any other codes unless you put vacated. But that was a clerk, a clerk's decision, I guess, who entered it. But they enter it as an O.
Q All right. Before information was provided to public record vendors through the computer cartridges that you described earlier, to your knowledge was there

another way that public records would pick up information from the court about dispositions of judgments?
A List makers.
Q What do you mean by list makers?
A They go to the court and they get the information from the court.
Q Do you mean list makers being a company?
A No. Some are. Some are companies that, like Lexis probably has list makers. A lot of companies sub out work to somebody who goes to courts and looks judgments up for them. Like if there's a question on a judgment, they go and look at the court papers. So that's what list makers do. They basically sell their services. They go to court because they're local, and they research data and they provide that data back.
Q Have you ever heard of the word "strike" used by any of these court clerks to describe a disposition of a judgment?
A I've heard the word "strike," meaning -- it probably means they -- I don't know exactly what they're doing when they do that. So I don't know how that word would apply in a legal term, okay? So I couldn't answer that.
Q To your knowledge did any of the clerks of the

general district courts ever put disposition documents concerning judgments into a box that would be made available to the public record vendors?
A Yes. That's the abstract of judgment. That's how we created what we give to the vendors, is an abstract of judgments. And most people aren't concerned with the ones that are settled or dismissed. They're primarily interested in the ones that have a judgment or an other judgment, something occurs in the case, not the settlements. Those cases are not of interest to most people.
Q All right, sir. Let me show you what we'll mark as Exhibit 5.

(Mittendorff Deposition Exhibit Number 5 was marked for identification)

BY MR. LOVE:
Q Can you identify this document?
A No. I'll have to read it more. I've never heard of the case, I don't think.
Q When you say abstract of judgment, is this the type of document that you're talking about?
A No.
Q If you look on this document, it has two

stamps on it. One says "judgment of," and then it gives a date, "is set aside and case disposed of as follows," and then it has some handwritten notes. And there's another stamp that says "on" and then it gives a date and it says "strike from your records, Sandra C. Blount, Clerk," and then a deputy clerk's signature. Do you see those two stamps?
A Yes.
Q To your knowledge, is this the type of thing that a court clerk might put in a box for collection by public record vendors, or do you have knowledge of that?
A I don't have knowledge.
Q Okay, sir. Have you ever heard of a report called a judgment satisfied report?
A Yes. That is when -- I think there is a report you can run, that we could run for the clerks if they ask for one. But it's, it's -- I don't know if people make it available. I don't know, they don't have to run it. Sometimes it's used to check on stuff. So I can't, I can't speak to that.
Q When the information on computer cartridges was made available to public record vendors, did the public record vendors pay for that service?
A Yes, they did.
Q And that process has been stopped now; is that

right?
A That's true.
Q And to your knowledge, since the information on computer cartridges is no longer being sent to public record vendors, do you know how public record vendors are obtaining that same type of information now?
A They get information off the web.
Q Is the information that's on the web the same information that was made available on the computer cartridges?
A No.
Q How is it different?
A It doesn't have address information.
Q Aside from address information, are there any other substantial differences between the information on the web and the information that was provided on the computer cartridges?
A I don't think there would be many, but I haven't done a comparison of all fields. So it's close. I mean, I can get a general information about the case from what's on the web versus what's on the cartridges. I can't say.
MR. LOVE: All right. Those are all the questions I have. Thank you.

EXAMINATION

BY MR. BENNETT:

Q Sir, my name is Leonard Bennett. Actually, I haven't shaken your hand. I don't want to be rude. Good to meet you in person.

You and I spoke, maybe to your regret now, months ago by telephone if I recall; is that correct?

A I don't recall the conversation, but okay.

Q The -- you understand the allegation in this case is that -- well, let me proffer to you what the allegation in the case is and ask what knowledge you have as to that.

The allegation in this case is that the most accurate information available on court records, judgments and any disposition after judgment is in the actual courthouse where the records are. And the allegation is that by automating this process, the significant number of post-judgment changes that would have, in a credit reporting context, been favorable to the consumer, satisfactions, appeals or vacates or anything that wipes away the judgment, were missed; that the credit bureaus regularly, systematically picked up the judgment event and irregularly and less than systematically picked up the post-judgment events.

MR. LOVE: Object to the form.

BY MR. BENNETT:

Q What knowledge do you have as to this case as to the basic allegations? I understand this isn't your, this isn't your -- you don't have a dog in this fight, as the cliche is, right? But what knowledge do you have as to what allegations have been made?

A For one, if you get a new copy of the database, you will get the satisfieds because the satisfieds are in those cartridges. In other words, it gives you another picture of the case later. It doesn't give you the appeals. But the original intent was to create an abstract of judgment, and that's what it did.

We didn't do dismissals so it doesn't show dismissals. I know the numbers of how many appeals there are. It's like .4 percent, okay? The number of satisfied is 15 percent, 15 to 16 percent. So I know what those numbers are.

But on every invoice that we send out with those, we're not able to ask questions about what you use the data for, who you give it to. We're not able to ask that under freedom of information, so we didn't ask those questions. But we did include in every invoice, we said this is an abstract of the official record that's in the court, depending on your use of the data, you might need to check or you may need to check with a

clerk. And that is on every invoice that went with every copy.

Q So LexisNexis, for example, when it would have received invoices about the Virginia civil data, would have received that disclaimer or that caution?

A That's correct. Just like if you go on the web, it says on the web this is an abstract of a case, it's not the official case on the web. For the official information, you have to go to a court.

Q To the courthouses?

A To the courthouse.

Q When I -- I've only been practicing since '94, which is getting to be longer than it was ten years ago, but -- and at the time I grew up practicing in general district court in Newport News. The public record vendors or list makers or whoever these individuals are would come into the courthouse, often with laptops once laptops were around. I remember the big cellphone in the bag. You remember further back than that, of course. But they would come in with laptops and they would review documents.

There was a weekly satisfactions report that they would print out and then other -- the satisfaction papers themselves, the orders vacating it and perfected appeals would all be kept in a folder in a file cabinet.

We picked up this pattern when we asked six, seven years ago -- well, longer than that, before you started selling the lists to LexisNexis -- that why are these folders always full. And the clerks, they actually consistently said, including the Richmond and Petersburg clerks that we've spoken with in this case, that they just, the list makers whose job it was to pick these up never picked them up. And that's why we got motivated. That's questioned. I mean, that's a statement and that doesn't make it part of the record.

But with respect to the process for gathering information, prior to the point when bulk data was available, what is your understanding of how post-judgment changes to the judgment would have been made available to what you called list makers?

MR. LOVE: Object to the form.

THE WITNESS: Well, the biggest one was the abstract of judgment. And we were asked to automate that one because that -- we weren't asked to automate appeals or no one's ever asked us to add additional fields on the jobs that we did to cover the other items.

It's difficult for some of them, satisfactions is one, because they occur at different times. So it's really difficult, but it's possible to run a

Page 58

satisfied, a list just like the job we ran for you. Had someone asked us to run a list, we could have run a list.

BY MR. BENNETT:

Q And the list that -- and I wasn't the one who spoke with Mr. Macon. And I understand it was -- we have two other employees that Equifax is deposing who participated in the, sort of the hands-on part of preparing the data in response to our request; is that correct?

A Correct.

Q And who are those individuals?

A Dave Savage and Mamiko Barnard.

Q Do you supervise those individuals?

A No, not directly.

Q Not directly. But have you seen the list that the state produced in our instance?

A I saw part of the list.

Q And that was for a specific task, as you just said?

A Right.

Q For example, if we had asked for individuals who had a satisfaction noted between -- in 2009, that small -- that would be a subset, but that could have been produced?

Page 59

A Yes.

Q In this instance with Ms. Soutter, the first page of the judgment disposition record -- and, I'm sorry, I don't know what it was -- what does the green sticker say on the bottom?

MR. KUGELMAN: Just make sure we have the right one. Is that it?

MR. BENNETT: That's it.

MR. KUGELMAN: Exhibit 2.

BY MR. BENNETT:

Q Exhibit 2, this is, at the top, it has a case number.

A Uh-huh.

Q And it then says dash 00. Do you see that?

A Yes.

Q On the second page of this, it has the same case number and then it says dash 01?

A That's correct.

Q In Virginia when we have post-judgment actions, in this instance a dismissal or a motion to vacate, but maybe debtor interrogatories or garnishment summons, how are those noted as connected to or a subset of the original case?

A They get a dash 01. It's a suffix. The case number basically tells you the court. It gives you the

Page 60

year that it started. It gives a sequential number and then a dash. And that suffix 01 tells you that this is part of the original case. It's a subsequent action. Another subsequent action would be a garnishment. So on garnishments, they would have been included in the bulk data as well.

Q And on the first page of this Exhibit 2, under case disposition, on the left middle, that field has "I"; is that correct?

A That's correct.

Q And that corresponds with the status case dismissed; correct?

A That's correct.

Q At the top right of this document, it says DEF1, and below that, DEF2. Do you see that?

A That's correct.

Q This field is when there are multiple defendants; is that correct?

A Yes, that's correct.

Q It's possible that you have judgment or a vacate with respect to one defendant but not the other?

A That's correct.

Q And that's why you actually have different, what I'll say status fields available for each defendant here, and then you have just sort of the overall case

Page 61

for the case disposition field on the left; correct?

A That's correct.

Q In this instance, the code for Donna Soutter, DEF1 at the top right, is also "I"; correct?

A That's correct.

Q That is, I note from Exhibit 1, page five, the code for case dismissed?

A That's correct.

Q Now, if -- let's -- I think you've already suggested that if you looked at this screen on a different day than this final output, if the status at that time was different, the screen would look different?

A That's correct.

Q For example, in this instance there was a judgment that had been entered on the 29th of January. If you were to look at the screen on the 29th of January, it would be fair to presume that the case disposition code would not have an "I" in it?

A That's correct.

Q Would it have a "P" in it for plaintiff if judgment were taken in favor of the plaintiff, or is there a different way that a judgment itself is noted?

A No. It would have a "P."

Q And the top right corner for Donna Soutter

where it currently says "I," if the record at that time was for a judgment that was still in favor of the creditor, the plaintiff, what would that code say?
A "P."
Q Now, we are going back in time using what tools are available to try to, from our perspective, the plaintiff's side, try to fix credit reporting data that we allege is inaccurate. So that we're not suggesting that this is -- that the data that you provided is the best data in the history of data to measure what might have happened in '06 or '05 or '08. Your data records the status as of today, the data you produced to us; correct?
A What we just produced on your --
Q Yes.
A Yes.
Q The question Mr. Love asked was if the court data that had been inputted into the CMS or the court management system, if the actual mechanical input into the computer was less accurate than the actual court record in the clerk's office, your computer wouldn't have a way to pick up that discrepancy.
A That's correct.
Q And the only way to have picked up that discrepancy would actually have reviewed the court

record itself?
A That's correct.
Q We didn't ask for the "I" fields or the data we have doesn't include any Is. It doesn't include tax liens. It doesn't include circuit court data. But is there any -- would there be any difficulty -- I mean, there is certainly work required, computer time required. But had we gone back and requested the "I" field, is there any technical limitation that the supreme court case management system would have in providing that information?
A We could do it.
Q The --
A But like you said before, we could do it, but it would only be as accurate as whoever put the information in.
Q That's right.
A Even your list may have some errors in it.
Q That's right.
A I can't tell you that.
Q In our list, we're trying to compare -- we also have received from Equifax data of who they are reporting with judgments, and so we're going to overlay. And so it's an imperfect process, but...
Are you aware of any better means to obtain

the current state of data within the computer systems in our court system as to the current status of judgments as of today?
That is, going back, we've asked for data going back for the last decade. Are you aware, is there any other data source that would be more --
A Yeah. You could ask for every case.
Q Every case.
A And then the problem with your request and somewhat what's on the cartridges, we create a job, that creates the abstract of judgment. That's what it was because that's what people wanted. They didn't want the dismissals; okay?
Q Right.
A Now, this is -- and I don't know how many cases this occurred. It's kind of unusual for a case in the district court to be later dismissed. I don't know how many there are but I don't imagine it happens very often. But the best way to do it would be that we go through, and every court case has a final hearing. It wouldn't matter what happened earlier. You'd get the final hearing. And it's -- and that way you would know for every case, which one should be included and which ones should not. Because even if you got a copy of 00, you would not see a "P" any more in there. You would

see an "I." So it was dismissed.
But the problem is, no one ever asked us to produce a list of all the dismissals. We got, we got the dispositions that were in the abstract for judgment file and that's what we provided. If somebody said can you run all the dismissals, of course. We can give you whichever way you want to cut it. The problem is, sometimes you have to think about the problem that you're trying to solve.
And that's one of the things I said before. I do problem solving. If you tell me the problem, we'll figure out how we could run the job, because somebody else trying to figure out how to run the job is going to probably make some mistakes. Just like the mistake you made. You missed the one that you wanted because you didn't ask for J. You just asked for the dismissals and the other thing. That's why you didn't see the case. It wasn't on your list.
Q Talk to my wife. That's the least of my mistakes.
A Okay. Anyway, well, it's possible to -- if everybody wanted to fix the problem, we could work to fix the problem.
Q Now, is this also true with circuit court data for those circuit courts that report to the supreme

court system?

A We could -- you know, if we ran the data and we ran what it has, we could potentially correct -- provide a means to correct. You still have the little problem of did somebody make a data entry error. You know, on the one side people are looking like they didn't vacate it, you put dismissed in, you put in other judgment versus a vacated; well --

Q Well, let me talk about that. The vacating, you understand, is the reopening of a case or elimination of the previous final judgment; correct?

MR. LOVE: Object to the form.

BY MR. BENNETT:

Q Is that --

A I'm not an attorney.

Q Okay. But you can vacate, have a judgment -- it's possible to have a judgment vacated and then have a trial later. Let's assume that there is -- a common reason for vacating is that there is no service or there was a mistake in service. They thought that they had service of process on someone and they didn't. So then the judgment could be vacated, later have a trial after service is corrected, and then the creditor plaintiff wins again at that trial and you have a judgment.

And another instance could be like this one,

where it's vacated, and in addition to being vacated, is dismissed. In circumstances where a judgment is vacated and then later tried again with judgment being entered again in favor of the plaintiff, how would that be properly displayed in the case management system?

MR. LOVE: Object to the form.

THE WITNESS: That's a combination question.

BY MR. BENNETT:

Q Sure. Just the last one instead of all the talking stuff that I won't get to use.

A Well, in each case, if the case was vacated, the court clerk could enter vacated and there wouldn't be -- at that time, let's suppose it was failed to deliver. In other words, it didn't get delivered correctly, couldn't find the thing and they vacated the case, whatever. It would be vacated. That would be the last action on the case until you got service.

When you got service, there would have to be a hearing date. So everything goes by hearing dates. If there is a hearing date set, when you open a case, there is a hearing date. Every case has to have a hearing date. So right now it's an active case if there is an open hearing date.

Until you get service, you're trying to schedule it for a date in the future. If you don't get

service, then until you get service, you'd have to continue the case because we weren't able to do it, or you could vacate it because you couldn't find them. But in some cases the parties would just come back and put a new hearing date on the case. So it depends on what happens.

Yeah, there are ways to handle almost anything that occurs in the court to put a disposition in for that particular hearing. Doesn't close the case out but -- and that's why we have this nifty little thing, we put the hearing dates on the side so we know what's the last thing that happened. But if you go to the file, there is something actually for all those dates. But what principally shows on here is what happens, it just gives you an abstract of the case. It's not the whole case.

So yeah, we can put different codes in. And for every hearing, there has to be some action. A lot of times that's just a "C," it's just continued and a new date is set. But there are ways to handle it.

Q And if a case is vacated and then later dismissed, what should be reflected in the case disposition?

A I can't answer that.

Q There's no right answer, is that -- I mean no

official --

A I can't answer that.

MR. LOVE: Object to the form.

THE WITNESS: I'm not, I'm not in judicial services. I'm in automation. I could handle it either way you put it in.

BY MR. BENNETT:

Q Got it.

A But I can't tell you the way to do it because I haven't gone to that training session to say, Oh, yeah, that's the way. You'd have to get somebody from judicial services who would give you the procedure. Dave Savage or Mamiko can't answer that question either.

Q Got it.

MR. LOVE: Can we go off the record just a moment while Mr. Bennett is looking at his notes here?

(Discussion off the record)

BY MR. BENNETT:

Q You have made a couple statements, and I want to delve more into that, about when LexisNexis and other, we call vendors, they vend to the credit bureaus, requested to purchase data from the supreme court

system, they never asked to purchase vacated, appealed, or dismissed judgments or dispositions; correct?
A No.
Q And is that true through today?
A No one's asked for that except for you.
Q Except for us. Okay.
MR. BENNETT: Let's go off the record a second.

(Recess)

MR. BENNETT: We don't have any more questions. I appreciate your time. Mr. Love is going to ask you something, I guess.

FURTHER EXAMINATION

BY MR. LOVE:
Q I just have a few follow-ups here.
First of all, you mentioned some data earlier, .4 percent for appeals. Does that include -- is that a statistic that covers both the judgments in general district court and circuit court?
A Just general district.
Q Just general district court. So of all the

judgments that are entered in general district courts in Virginia, on average only .4 percent are actually appealed?
A That's numbers that I ran for 2008 and 2009.
Q And then for satisfied you mentioned 15 to 16 percent. Is that also just for the general district court?
A For the whole years of 8 and 9, and that allows for cases up to now. So if anything was satisfied from 2000 -- ran the numbers yesterday so I would know that number. But if anybody ran a case in 2008 all the way up to 2010, that includes all of the ones. All the cases that were appealed from those two years would have been .4 percent. And any satisfactions in that was actually 15.75, I believe, but it's not quite 16 percent.
Q Did you run the numbers on the percentage of judgments that are vacated in the general district court?
A No.
Q Do you have any idea what the percentage of judgments are in the general district courts on average that are vacated or set aside?
A I'd just have to look at their numbers. I could use their numbers and give you your answer, but...

Q Let's talk about -- you talked about satisfactions being difficult to automate. And I wanted to ask you to take another look at what was marked as Exhibit 3 which is the training materials.
A Okay. Right.
Q On page A5, in the middle of that page is a sample screen shot from civil hearing disposition update screen; right?
A Right.
Q And down at the bottom left of that screen shot, we talked about this entry before, it says "JGMT SAT"; right?
A Right.
Q And that means judgment satisfied?
A Right.
Q And on that line, if a district court clerk, general district court clerk receives information from a plaintiff or some outside source that notifies the clerk that a judgment has been satisfied, then the clerk will enter a date on that line; correct?
A That's correct.
Q And the date that it enters will be the date that the clerk received notice of the satisfaction?
A That's correct.
Q Satisfaction could have been conducted or --

that's not the right word. The satisfaction could have occurred prior to the date the clerk received notice?
A Certainly.
Q But for uniformity and the court's purposes, the date that's entered for the judgment satisfied is the date the court receives notice?
A And there's a reason for that.
Q What is the reason for that?
A The reason for that is, that way someone can't go back and say some decision was made based on -- we used to just put a mark satisfied but we didn't know when. So somebody could claim that, Oh, it was done in 2007, when really as far as the clerk's office knew, it didn't occur until 2009. So if somebody went back and checked judgments, they would see it wasn't satisfied and it wasn't satisfied until 2009. It may have been satisfied in 2007, but the plaintiff didn't let the clerk's office know. And until the defendant said I don't know why you still have that, it's been paid, well, then you need to get the plaintiff to get in here and get us a notice; okay?
I notice -- I know it's a problem sometimes because somebody tries to close on a house and there is a judgment outstanding, and they didn't realize it because the judgment had been recorded in the circuit

court and it's on the judgment lien docket in circuit court. So somebody can't, can't get a closing until they get that removed. But anyway, I've been in clerk's office when that has occurred. But anyway, so everybody runs around real quick and tries to get that paperwork in so you can purchase your house; okay?

Q And the information on the list that Ms. Soutter's attorneys requested recently, that information is all just from the general district courts in Virginia; correct?

A That's correct.

Q It doesn't contain any information from any circuit courts in Virginia?

A That's correct.

MR. LOVE: Those are all the questions I have. Thank you, sir.

THE WITNESS: Okay.

MR. KUGELMAN: Any other --

MR. BENNETT: No. That's all. Thank you.

AND FURTHER THIS DEPONENT SAITH NOT.

SIGNATURE OF THE WITNESS WAIVED BY AGREEMENT OF COUNSEL AND THE WITNESS.

(Deposition concluded at 11:44 a.m.)

* * * * *

COMMONWEALTH OF VIRGINIA AT LARGE, to wit:

I, Gwenda E. Applegate, Court Reporter, Notary Public in and for the Commonwealth of Virginia at Large, and whose commission expires November 30, 2013, do certify that the aforementioned appeared before me, was sworn by me, and was thereupon examined by counsel; and that the foregoing is a true, correct, and full transcript of the testimony adduced.

I further certify that I am neither related to nor associated with any counsel or party to this proceeding, nor otherwise interested in the event thereof.

Given under my hand and notarial seal at Charlottesville, Virginia, this 8th day of October 2010.

____________________________________

Gwenda E. Applegate, Notary Public
Commonwealth of Virginia at Large
Registration Number 115863

CHANGES REQUESTED TO THE DEPOSITION OF:
KEN MITTENDORFF
TAKEN: October 6, 2010

PAGE/LINE: DESCRIPTION

________________________________________________
________________________________________________
________________________________________________
________________________________________________
________________________________________________
________________________________________________
________________________________________________
________________________________________________

DATE: ____________________

SIGNATURE: ________________________________

NOTARY PUBLIC: ________________________________

MY COMMISSION EXPIRES: _________________________

REPORTED BY: GWENDA E. APPLEGATE, RPR, CRR

**A**

**ability** 8:24,24 9:13
**able** 12:25 13:2 55:19,20 68:2
**abstract** 16:18 38:1 38:8 41:13 51:4,6 51:22 55:12,23 56:7 57:18 64:11 65:4 68:15
**abstracts** 38:3,10 38:12
**access** 10:13,23
**accurate** 45:23 54:14 62:20 63:15
**action** 1:6 14:19 23:1 44:10 48:16 60:3,4 67:17 68:18
**actions** 59:20
**active** 67:22
**activity** 31:13
**actual** 17:2 18:10 28:17 33:4 35:10 54:16 62:19,20
**add** 57:21
**added** 7:24 13:17 29:10
**addition** 67:1
**additional** 12:15 57:21
**address** 16:2,10 53:13,14
**adduced** 76:8
**administrative** 5:2
**advantages** 14:4,8
**advises** 43:23
**aforementioned** 76:5
**agencies** 5:3
**ago** 10:6 38:6 54:7 56:13 57:2
**agree** 17:8
**agreed** 49:3
**AGREEMENT** 74:24
**ahead** 17:22
**allegation** 54:9,11 54:13,17
**allegations** 55:3,6
**allege** 62:8
**allow** 9:2 13:8
**allowed** 34:11
**allows** 14:8 71:9
**amended** 22:15
**amount** 42:24
**answer** 29:23 34:8 34:23 50:23 68:24 68:25 69:2,13 71:25
**ANTHONY** 2:17
**anybody** 71:11
**anyway** 36:10 65:21 74:3,4
**appeal** 26:6,8,10,10 44:20,24 45:2,2,3 45:10,16,20 46:4 46:10,11,12
**appealed** 26:4 46:1 47:17,21 48:19 70:1 71:3,13
**appeals** 8:14,20 9:5 26:16 41:23 44:18 46:11 54:20 55:11 55:14 56:25 57:20 70:21
**appeal's** 44:24
**appear** 13:5 16:10 27:24 32:4 33:9 38:12 48:11,13
**APPEARANCES** 2:10
**appeared** 30:11 33:18 48:8 76:6
**appears** 18:19 20:2 31:8
**APPL** 26:12,14
**Applegate** 1:25 2:3 76:2,21 77:25
**apply** 19:15 50:23
**appreciate** 70:13
**approve** 49:8
**approximately** 39:2
**area** 19:18
**aside** 8:15 32:10 34:6,22 35:3 42:2 52:2 53:14 71:23
**asked** 38:6 47:16 47:18 48:14 49:1 57:1,18,19,20 58:2,22 62:17 64:4 65:2,16 70:1 70:5
**assigned** 15:5,9,9
**assist** 5:1
**assistant** 4:17
**associated** 76:10
**ASSOCIATES** 2:11
**assume** 14:23 66:18
**assumes** 29:18
**Atlanta** 2:17
**attorney** 2:20 66:15
**attorneys** 13:3 15:6 47:9 48:3 74:8
**automate** 38:7 57:19,20 72:2
**automated** 6:16 9:10
**automatic** 16:7
**automating** 6:5 54:17
**automation** 6:4 69:5
**available** 9:23,25 10:4,10,14 11:15 11:21 12:2 15:25 16:1,12,13,16 17:5,13 25:21 28:6 35:21 40:3 51:3 52:18,22 53:9 54:14 57:13 57:15 60:24 62:6
**average** 71:2,22
**awarded** 20:2
**aware** 14:18 36:2 37:3 63:25 64:5
**A-vacated** 27:14
**a.m** 1:16,16 2:7 4:1 75:1
**A2-00** 33:4
**A5** 27:4,7 34:25 42:5,18 44:19 72:6

**B**

**B** 3:10
**back** 6:6,20 7:13 14:13 20:20 22:23 26:16 27:23 31:9 32:3 34:4 35:6 42:4 43:6 44:8 46:14 50:16 56:19 62:5 63:8 64:4,5 68:4 73:10,14
**bag** 56:19
**bankruptcy** 26:9
**bar** 12:24
**Barnard** 48:4 58:13
**based** 29:13 31:20 34:20 37:24 38:10 73:10
**basic** 36:5 55:3
**basically** 13:9 29:6 36:4 49:3 50:14 59:25
**behalf** 1:4 2:2
**believe** 26:5 45:13 47:16 48:24 71:15
**Bennett** 2:12 3:6 29:17 36:21,24 47:7 54:2,3 55:1 58:4 59:8,10 66:13 67:8 69:7 69:16,21 70:7,12 74:19
**best** 62:10 64:19
**better** 7:21 38:16 63:25
**big** 4:25 14:4,6 37:7 56:18
**biggest** 5:5 57:17
**Blount** 52:5
**bold** 24:3
**bond** 45:4
**bottom** 19:17 26:7 26:7,9 27:12 42:6 42:17,18 44:23 59:5 72:10
**Boulevard** 2:11
**box** 27:13,16 28:1 42:6 44:19 51:2 52:10
**brought** 48:16,16
**building** 35:7
**bulk** 57:12 60:5
**bureaus** 54:22 69:24

**C**

**C** 52:5 68:19
**cabinet** 56:25
**CAIS** 9:9
**calendar** 38:4
**call** 9:8 36:11 69:24
**called** 11:12 14:3 14:20 37:4 52:14 57:15
**captioned** 32:9
**cartridge** 47:4
**cartridges** 39:11,12 39:13,16,19 40:6 40:14,22 41:6,23 41:25 46:16,19,22 49:24 52:21 53:4 53:10,17,21 55:9 64:10
**Cary** 2:8
**case** 4:11 6:10,12 8:1 9:11,12,15,23 10:3,20 11:7,12 11:14 13:2,2 15:2 15:4,7,16,25 16:6 16:12,19,20,22 17:24 18:9 19:2 19:15,17,19,22 20:7,12,25 21:1,9 21:12,13,23 22:9 22:15 23:4,19,24 24:7,8,21 25:14 25:20,21 27:1,1 27:20 28:15 30:5 31:1 32:25 33:2,3 33:4,6,10,12,17 35:15,21 40:11,14 40:19 42:12 43:12 44:9 45:4 46:22

47:2,3,9,15 48:15 48:23,24 49:2,4 49:10 51:9,21 52:2 53:20 54:10 54:11,13 55:2,10 56:7,8 57:6 59:11 59:17,23,24 60:3 60:8,11,25 61:1,7 61:18 63:10 64:7 64:8,16,20,23 65:17 66:10 67:5 67:11,11,16,17,20 67:21,22 68:2,5,9 68:15,16,21,22 71:11
**cases** 8:23,23,25 15:11,12 27:21 32:24 33:1,1 37:22 38:12,15 42:8 47:16,17,17 48:15 51:10 64:16 68:4 71:9,13
**caution** 56:5
**cellphone** 56:18
**certain** 25:4 47:10 48:15
**certainly** 20:15 63:7 73:3
**certify** 76:5,9
**change** 9:2 30:12 30:16 34:11
**changed** 13:18 30:8 31:19
**changes** 14:12 31:16 38:22 54:18 57:14 77:2
**Charlottesville** 76:14
**chart** 14:15 20:20 22:23 35:8,9,23
**check** 12:5 45:16 52:19 55:25,25
**checked** 73:15
**checkmark** 42:22
**choose** 28:9
**chose** 28:10
**circuit** 5:22 6:2,10 6:19,25 7:8,10 11:6,11,12,14,18 11:20,22 12:1 17:4,11 20:23 21:6,11,11,13 28:14 34:4 35:15 39:20,23,23 40:2 40:4,8,12,16,20 45:5 46:23 63:5 65:24,25 70:23 73:25 74:1,13
**circumstances** 67:2
**civil** 1:6 2:5 9:13 15:11 22:21,22 23:3 27:9 32:25 37:22,23 41:2 45:13 56:4 72:7
**claim** 19:3 73:12
**clarify** 43:16
**clerk** 6:18 7:15 11:23 15:18 21:5 21:12 34:10 35:14 42:11 43:3,12 45:15,20 49:21 52:6,10 56:1 67:12 72:16,17,18 72:19,23 73:2
**clerks** 5:12 6:1,15 8:8,17 9:7,16,22 11:21 12:1 17:9 28:13,14,25 34:5 34:11 42:7 45:24 47:1 50:18,25 52:16 57:4,6
**clerk's** 15:20 49:21 52:6 62:21 73:13 73:18 74:3
**cliche** 55:5
**close** 53:19 68:9 73:23
**closed** 48:17,21
**closing** 74:2
**CMS** 62:18
**code** 25:10 26:4,6 27:9 28:6,14 29:10 34:24 43:2 44:20 46:3,4 61:3 61:7,19 62:3
**codes** 24:24 25:4,7 25:13,21,25 26:3 27:18,24,25,25 34:4,15 42:7,8 49:20 68:17
**coding** 34:2
**collection** 52:10
**combination** 67:7
**come** 26:16 28:25 30:23 56:17,20 68:4
**comes** 15:4 44:8 46:8
**commencing** 2:7
**commission** 76:4 77:22
**common** 66:18
**Commonwealth** 2:4 76:1,3,22
**companies** 50:9,10
**company** 37:7 50:8
**compare** 63:21
**comparison** 16:18 53:19
**complete** 38:17
**computer** 7:17 8:19 9:9,16 15:23 17:12 39:13 40:6 40:10,21 41:6,23 41:25 46:16,18,22 47:4 49:24 52:21 53:4,9,17 62:20 62:21 63:7 64:1
**computerized** 6:24 8:3,9
**concerned** 51:6
**concerning** 8:20 19:3 31:1 51:2
**concluded** 75:1
**conduct** 28:12,23
**conducted** 72:25
**connected** 59:22
**consistently** 57:5
**consumer** 2:11 17:25 54:20
**contain** 39:16,19 41:23 42:1 74:12
**contained** 22:4
**contains** 42:6
**context** 54:19
**continuances** 15:11 15:12
**continue** 68:2
**continued** 15:13 68:19
**conversation** 54:8
**copied** 15:24
**copies** 11:4 14:9 32:22
**copy** 10:7 18:11 33:10 38:8 48:5 55:7 56:2 64:24
**corner** 24:2 27:5,12 61:25
**correct** 4:13 6:17 6:22 10:25 12:10 14:21 17:15 18:24 19:6,12,16 20:3,4 21:3,10,14 22:20 23:4,11,16,20,25 24:1,11 25:2,6,9 25:12,24 26:2,14 27:11,22 28:3,8 28:10,11 29:16 31:14,22 33:13,22 33:23,25 34:1 35:24 40:9,17 43:13,24 44:17,20 44:21 45:11 46:5 46:9,13,25 47:5,6 49:6,12 54:7 56:6 58:10,11 59:18 60:9,10,12,13,16 60:18,19,22 61:1 61:2,4,5,8,14,20 62:13,23 63:2 66:3,4,11 70:2 72:20,21,24 74:10 74:11,14 76:8
**corrected** 66:23
**correctly** 67:15
**corresponds** 60:11
**costs** 20:3
**counsel** 2:10,14,18 2:22 47:14 74:24 76:7,10
**couple** 69:22
**course** 36:24 56:20 65:6
**court** 1:1 2:3 4:9,18 5:13 6:4,10,14,19 6:19 7:15,16 8:11 8:13 9:4,7,12,15 9:22,23 10:3,12 10:19,24 11:2,11 11:12,14,16,20,22 12:1,9,10,25 13:1 13:10,12,13 14:18 14:19,24 15:1,18 15:19 16:6,12,25 17:1,2,10,11,14 18:5,23 19:14,18 20:2,10,16,23,24 21:1,6,6,9,11,12 21:13 22:1,19,21 22:23,25 23:3,23 25:1,18,19 28:5 29:14 30:25 32:25 33:19 34:15,15,20 35:10,11,14,15,15 35:20 36:12,16 38:17 39:23,23 42:7,11,24 43:2 43:22,23,25 44:2 44:15 45:5 48:25 49:14 50:2,6,7,13 50:15,18 52:10 54:14 55:24 56:9 56:15 59:25 62:17 62:18,20,25 63:5 63:10 64:2,17,20 65:24 66:1 67:12 68:8 69:25 70:23 70:23,25 71:7,19 72:16,17 73:6 74:1,2 76:2
**courthouse** 54:16 56:11,17
**courthouses** 56:10
**courtroom** 15:1
**courtroom's** 15:9
**courts** 5:18,18,22 6:2,2,6,11,15,16 6:22,25 7:5,8,8,10 7:14 8:9,18 9:17

10:8 11:6,17,18
11:20 13:17,17
17:3,4 19:8 25:4
26:25 27:9,19,21
28:13,14 34:3,4
36:7,11 39:17,20
39:20,21 40:2,4,8
40:12,15,16,20,20
46:23,24 47:1
50:11 51:1 65:25
71:1,22 74:9,13
**court's** 16:14 35:22
38:4 44:6,15 46:8
73:4
**cover** 57:22
**covered** 41:11
**covers** 70:22
**create** 12:11,13
14:15 55:12 64:10
**created** 12:8 51:5
**creates** 64:11
**creating** 12:9,18
**credit** 18:12 54:19
54:22 62:7 69:24
**creditor** 62:3 66:23
**criminal** 9:13
45:12
**CRR** 1:25 77:25
**current** 4:24 64:1,2
**currently** 62:1
**cut** 65:7

**D**

**D** 3:2
**dash** 59:14,17,24
60:2
**data** 8:4 9:13,13,14
10:7,11 11:5,21
11:22,22,23 12:11
12:25 13:1,12,13
13:14,19,20 14:9
14:10,14 15:6,22
15:23 17:6,7 36:7
36:13,14,17 37:25
38:8,16,21 41:20
50:16,16 55:20,24
56:4 57:12 58:9
60:6 62:7,9,10,10

62:11,12,18 63:3
63:5,22 64:1,4,6
65:24 66:2,5
69:25 70:20
**database** 13:20
14:3,11,12 38:22
55:8
**date** 9:3 10:16 13:3
15:7,8 19:10
22:11 29:6,8 30:3
30:9,10 31:24
32:1 33:4,5 39:4
40:23 43:1,8 45:6
45:16,19,21,22
52:2,4 67:19,20
67:21,22,23,25
68:5,20 72:20,22
72:22 73:2,5,6
77:18
**dates** 8:24 19:8,11
19:14 31:10 67:19
68:11,13
**Dave** 48:3 58:13
69:13
**day** 13:4,21 14:14
15:13,13,14,14,21
15:21 22:13 30:8
30:11 61:11 76:14
**days** 30:11,12 45:8
45:8,9,11
**DB2** 13:19,22,25
14:4,5 15:23 16:4
**dealing** 17:24
**debt** 3:16 14:20
18:5,22 19:13,22
33:7 35:12
**debtor** 44:1,12
59:21
**decade** 64:5
**decision** 49:21
73:10
**defendant** 1:8 2:2
2:18 4:8 13:12
19:4 38:13,14
60:21,24 73:18
**defendants** 60:18
**DEF1** 60:15 61:4
**DEF2** 60:15

**deliver** 67:14
**delivered** 67:14
**delivers** 10:19
**delve** 69:23
**Department** 4:17
28:18
**depending** 55:24
**depends** 13:23 46:7
68:5
**Deponent** 2:22
74:21
**deposing** 58:7
**deposition** 1:13 2:1
17:17,19,23 21:17
26:20 32:16 51:15
75:1 77:2
**Depositions** 2:6
**deputy** 52:6
**describe** 12:17
25:22 50:18
**described** 15:3
49:25
**DESCRIPTION**
3:11 77:7
**designate** 17:23
**detailed** 16:24
**developed** 8:3
**difference** 13:25
16:4 34:21 45:1
**differences** 53:15
**different** 13:20
19:14 30:13,14
31:10 43:4,6 45:6
45:25 46:1,10
53:12 57:24 60:23
61:11,12,13,23
68:17
**difficult** 57:23,25
72:2
**difficulty** 63:6
**directly** 58:15,16
**director** 4:17 5:8
**disclaimer** 56:5
**discrepancy** 62:22
62:25
**discussing** 26:16
**discussion** 20:21
32:16 35:6 46:14

69:19
**disk** 10:7
**dismiss** 49:1,9
**dismissal** 29:22
47:21 49:10 59:20
**dismissals** 47:18
55:13,14 64:13
65:3,6,16
**dismissed** 9:1 20:7
20:12 22:16 23:25
24:9,15 25:10
26:1 28:10 29:15
30:1 31:22 32:10
33:7,22 34:12,12
34:18,19,19 35:3
47:17 48:19,25
49:5 51:7 60:12
61:7 64:17 65:1
66:7 67:2 68:22
70:2
**dismisses** 15:15
**displayed** 67:5
**disposed** 52:2
**disposition** 3:13
19:17,19,23 24:7
24:21 25:14 27:10
44:5 50:18 51:1
54:15 59:3 60:8
61:1,19 68:8,23
72:7
**dispositional** 37:21
**dispositions** 8:25
9:18 11:8 27:21
37:14,25 38:11
40:25 45:25 50:2
65:4 70:2
**distinction** 34:5
**district** 1:1,2 5:13
5:17,18 6:1,9,15
6:19,22 7:14,16
8:9,18 9:7,12,15
9:17,21,23 10:3
10:19 11:17,20
13:24 14:18,19,24
15:1 16:6,12 17:3
17:10 18:5,23
19:8 20:23 21:1,5
21:9 22:1,19,23

23:3,23 25:1,4,18
25:19 27:8,19
28:4,13 30:25
32:25 34:3 35:15
39:17,20,21,24,25
40:15,20 46:23
51:1 56:15 64:17
70:23,24,25 71:1
71:6,18,22 72:16
72:17 74:9
**division** 1:3 22:22
23:3
**DL1** 14:3,6
**DMV** 5:3
**docket** 7:19 15:17
15:18 74:1
**docketing** 7:18
**document** 18:2,16
20:22 22:8,24
24:3 26:24 27:4,7
27:25 29:3 35:2,5
43:9,17 51:19,23
51:25 60:14
**documents** 3:12
18:10 21:7 34:2
35:10,13,16 51:1
56:21
**dog** 55:4
**doing** 39:5 49:16
50:22
**Donna** 1:4 18:8
21:25 22:8 24:15
29:14 31:1 32:8
48:8 49:2 61:3,25
**drives** 10:7
**duly** 4:4
**D-defendant** 27:14

**E**

**E** 1:25 2:3 3:2,10
4:5 54:1 70:16,17
76:2,21 77:25
**earlier** 19:7 24:18
31:14 35:7 39:4
40:1 46:21 49:25
64:21 70:20
**early** 6:6 7:21
**East** 2:8,20

**EASTERN** 1:2
**Eddie** 48:3
**either** 41:20 69:6
  69:13
**elected** 40:2
**elimination** 66:11
**employee** 7:16
  22:19 23:2,22
  24:25 25:18 26:3
**employees** 25:3
  27:8,18 28:4 58:7
**enter** 7:16 8:10,18
  8:22 9:7,13,17,22
  11:7 17:7,11 21:6
  21:12 25:19 27:1
  27:19 28:5,6 42:7
  42:11 45:15,19,21
  45:22 46:7 49:9
  49:22 67:12 72:20
**entered** 7:19 14:25
  15:5,6,7 19:24
  20:11,22,25 22:14
  22:17 23:23,24
  24:25 25:14,16
  29:22 32:5,8
  38:13 39:17 41:2
  47:2 49:6,7,21
  61:16 67:3 71:1
  73:5
**entering** 17:9
**enters** 15:15 17:6
  23:3 35:14 72:22
**entry** 15:6 27:2
  66:5 72:11
**Equifax** 1:7 4:8
  58:7 63:22
**equivalent** 37:25
**era** 10:15
**ERAUSQUIN** 2:13
**erroneous** 47:4
**error** 17:11,12 66:5
**errors** 63:18
**ESQ** 2:12,13,17,21
**established** 49:13
**estimate** 12:3
**event** 54:23 76:12
**events** 21:7 22:25
  23:4,14 25:4,22

54:24
**everybody** 7:5,6
  30:5 65:22 74:4
**evidence** 29:18
**evolved** 8:3
**exact** 10:16 12:4
  29:6,8 39:4
**exactly** 29:11 31:8
  50:21
**Examination** 3:5,6
**examined** 76:7
**example** 45:7 56:3
  58:22 61:15
**excuse** 19:21
**Executive** 4:19
**exhibit** 3:12,13,14
  3:15,16 17:17,19
  18:17 21:8,15,17
  21:21 22:18 23:18
  24:24 26:18,20
  27:23 28:1,5 29:4
  29:13 31:20,24
  32:2,3,17,21 33:2
  33:8,9 34:25,25
  35:6,12,17 42:4
  42:16 48:24 51:13
  51:15 59:9,11
  60:7 61:6 72:4
**exhibits** 42:15
**expanded** 7:5
**expires** 76:4 77:22
**explain** 37:17 38:1
  45:1
**extract** 40:18

**F**

**F** 70:16
**fact** 43:23
**facts** 29:18
**failed** 67:13
**fair** 8:2 20:17 25:23
  61:18
**familiar** 5:11,13,16
  5:21 22:3 47:11
**familiarity** 5:25
**far** 73:13
**favor** 61:22 62:2
  67:4

**favorable** 54:19
**favorably** 49:7
**February** 19:25
  41:16
**federal** 4:9
**field** 60:8,17 61:1
  63:9
**fields** 15:25 16:17
  53:19 57:21 60:24
  63:3
**fight** 55:4
**figure** 65:12,13
**file** 18:12 33:4
  35:11 45:10 56:25
  65:5 68:13
**filed** 14:23 17:3
  18:5
**filing** 14:20
**final** 19:19 23:7
  25:1 35:9,22 48:5
  61:11 64:20,22
  66:11
**finally** 35:19
**financial** 7:24,25
**find** 67:15 68:3
**first** 4:4 6:7,7,8
  8:22 10:13 11:19
  12:22 14:12 15:22
  18:21 19:10 22:25
  24:22 27:24 32:23
  32:24 59:2 60:7
  70:20
**five** 8:7,8,19 61:6
**fix** 62:7 65:22,23
**flow** 14:15 20:20
  22:23 35:7,8,9,22
**flows** 15:1
**folder** 56:25
**folders** 57:4
**following** 25:14
**follows** 4:4 52:2
**follow-ups** 70:19
**foregoing** 76:7
**form** 26:9 54:25
  57:16 66:12 67:6
  69:3
**fostered** 12:14
**found/unserved**

27:15
**freedom** 55:21
**full** 57:4 76:8
**functions** 5:2 7:23
**further** 56:19
  74:21 76:9
**future** 67:25

**G**

**GA** 2:17
**gain** 5:25
**garnishment** 44:9
  59:21 60:4
**garnishments** 60:5
**gather** 36:7 38:5
**gathering** 57:11
**general** 2:20 5:12
  5:17,18 6:1,9,15
  6:19,22 7:14,16
  8:8,18 9:7,9,11,15
  9:17,21,23 10:3
  10:19 11:17,19
  13:10,24 14:17,18
  14:24 15:1 16:6
  16:12,18 17:3,10
  18:5,23 19:7
  20:23 21:1,5,8
  22:1,19,22 23:2
  23:22 24:25 25:3
  25:18 27:8,19
  28:4,13 30:25
  32:25 34:3 35:15
  39:20,21,24,25
  40:15,20 46:23
  51:1 53:20 56:14
  70:22,24,25 71:1
  71:6,18,22 72:17
  74:9
**generally** 5:13,16
  5:21 18:4 20:15
  34:6 45:11
**generated** 20:20
**getting** 12:12,12,15
  56:13
**give** 6:13 51:5
  55:11,20 65:6
  69:12 71:25
**Given** 76:13

**gives** 52:1,4 55:10
  59:25 60:1 68:15
**go** 5:4 7:13 10:14
  13:11 14:2 16:20
  17:22 21:4 27:23
  31:9 32:3,3,13
  36:12,16 41:20
  42:4 43:6,7 46:14
  50:6,13,15 56:6,9
  64:19 68:12 69:15
  70:7 73:10
**goes** 17:2 25:19
  35:10 50:11 67:19
**going** 14:2,6 20:20
  22:23 30:15 34:4
  35:6 40:23,24
  49:5,9,9 62:5
  63:23 64:4,5
  65:13 70:14
**good** 36:9,9 54:5
**gradually** 13:17
**grants** 5:2
**green** 59:4
**grew** 56:14
**guess** 12:14 36:11
  49:21 70:14
**Guide** 3:14
**Gwenda** 1:25 2:3
  76:2,21 77:25

**H**

**H** 3:10 70:16
**hand** 54:4 76:13
**handle** 5:1 68:7,20
  69:5
**hands-on** 58:8
**handwritten** 20:5
  52:3
**happen** 20:25
**happened** 22:25
  23:18,21 25:8
  62:11 64:21 68:12
**happens** 64:18 68:6
  68:14
**head** 12:6
**heard** 45:5 50:17
  50:20 51:21 52:13
**hearing** 8:24 15:7,8

15:14 19:8,10,14
22:11,13 23:10,15
23:18,21,22,24
25:1,20,23 27:9
31:10 40:23,25
43:7 64:20,22
67:19,19,20,21,21
67:23 68:5,9,11
68:18 72:7
**hearings** 41:3,11
**held** 4:20 15:14
23:22
**help** 18:17 47:19
**helps** 34:17
**history** 62:10
**house** 73:23 74:6
**hundred-dollar-...**
44:4

**I**

**idea** 11:25 12:14,14
71:21
**identification**
17:20 21:18 26:21
32:17 51:16
**identify** 21:21
26:24 32:20 51:19
**imagine** 64:18
**imperfect** 63:24
**inaccurate** 62:8
**include** 8:14 11:17
11:22 40:21 41:6
55:22 63:4,4,5
70:21
**included** 8:5 40:5,8
40:14 41:5 60:5
64:23
**includes** 71:12
**including** 37:14
57:5
**index** 32:24
**indexed** 13:16,16
**indexes** 14:5
**indexing** 7:18
**indicate** 19:23 24:6
25:4 43:3
**indicating** 24:12
**individual** 13:16

28:19
**individuals** 1:5
28:21 56:16 58:12
58:14,22
**information** 1:7
4:18 6:13 7:15,20
8:4,10,14,17 9:8
9:10,18,21,25
10:3,9,19 11:2,8
11:15,17,19 12:2
12:9,18 13:10
14:16,25 15:19
16:2,5,9,10,11,15
16:22,23,24 17:4
17:10,13,25 18:19
19:2,3 20:25 21:6
21:12 22:4,17
23:3,23 24:24
25:20 27:10,20
28:5,15 33:17
35:7,8,20 36:15
36:15 37:13,19,22
38:5 39:1,9,16,19
40:3,5,13,19,21
41:5,22,23,25
42:1,8,11 45:15
45:24 46:6,8,15
46:18,19,21 47:2
47:3,10,14,24
48:2,6,9,14 49:23
50:2,7 52:21 53:3
53:6,7,8,9,13,14
53:15,16,20 54:14
55:21 56:9 57:12
63:11,16 72:17
74:7,9,12
**initially** 30:23
**initiated** 14:19
**input** 62:19
**inputted** 62:18
**installed** 6:10
**instance** 58:17 59:2
59:20 61:3,15
66:25
**intent** 55:11
**interest** 19:25
51:10
**interested** 51:8

76:11
**interface** 7:25,25
**internet** 3:15 9:24
10:1,5,10,13,20
10:21,23 11:23,24
14:14 15:24 16:1
16:3,19,23 32:23
**interrogatories**
59:21
**invoice** 55:18,22
56:1
**invoices** 56:4
**involved** 12:8
47:23 48:1
**irregularly** 54:23
**issue** 44:9
**items** 57:22
**I-dismissed** 27:15
28:2

**J**

**J** 2:13,17 20:6
49:19 65:16
**January** 23:9 40:24
41:3,14 61:16,18
**JGMT** 42:20 72:11
**JI** 24:19
**job** 1:24 4:16 57:7
58:1 64:10 65:12
65:13
**jobs** 57:21
**JR** 2:21
**judge** 15:9,15,17
34:10,13 49:3,6
**judgment** 14:24
15:15 19:21,23
20:11 22:11,13
23:1 24:16 29:14
32:8 33:6 34:22
35:1 38:1,10,11
38:13,14 41:1,9
41:13 42:12,19,23
43:3,8,9,12,18,22
44:1,2,12,12,14
48:17,22 49:2,8
49:18,19 50:13,19
51:4,8,9,22 52:1
52:14 54:15,21,23

55:12 57:14,18
59:3 60:20 61:16
61:22,23 62:2
64:11 65:4 66:8
66:11,16,17,22,24
67:2,3 72:14,19
73:5,24,25 74:1
**judgments** 8:14,15
8:20,21 9:1,18,19
11:8,9 37:14,15
38:3,9,10,12
39:17 41:2,7,8
42:1 50:3,12 51:2
51:6 54:15 63:23
64:2 70:2,22 71:1
71:18,22 73:15
**judgment's** 43:20
44:6
**judicial** 28:18 69:4
69:12
**July** 29:9
**J&DR** 6:9

**K**

**K** 1:4 32:9
**keep** 37:8
**keeping** 44:6
**KEN** 1:14 2:1 3:4
4:3 77:3
**kept** 56:25
**kind** 22:15 64:16
**KING** 2:16
**knew** 30:10 73:13
**know** 12:6,7 13:3,4
13:9,13 16:19
20:13,14 27:1
29:6,8 30:2,4
34:17 36:2 37:9
39:4 43:22,25
45:12 47:21 48:2
48:8 50:21,22
52:17,18 53:5
55:14,16 59:4
64:15,17,22 66:2
66:6 68:11 71:11
73:11,18,19,22
**knowledge** 18:18
29:14 34:20 37:6

47:13 49:25 50:25
52:9,11,12 53:3
54:11 55:2,5
**KUGELMAN** 2:21
24:10 29:23 59:6
59:9 74:18

**L**

**laptops** 56:17,18,20
**large** 2:5 76:1,4,22
**launched** 15:3
**law** 12:24
**lawsuit** 4:8 18:22
22:1 31:22 32:5
33:18 47:11
**layers** 6:11
**leading** 29:17
**left** 24:21 42:6
44:19 60:8 61:1
72:10
**left-hand** 19:18
27:12
**legal** 50:23
**Leonard** 2:12 54:3
**letter** 24:3,6
**letters** 27:13
**let's** 7:13 8:2,7
14:15,17,23 21:4
26:17 44:18 46:14
61:9 66:18 67:13
70:7 72:1
**level** 6:14 17:10,11
**Lexis** 50:10
**LexisNexis** 37:4,6
37:15 56:3 57:3
69:23
**lien** 74:1
**liens** 63:5
**limitation** 63:9
**limited** 10:11
**line** 10:14 12:19
38:23 44:23 72:16
72:20
**list** 4:25 36:11 38:4
38:5,7 48:5,9,13
49:11 50:4,5,8,10
50:14 56:16 57:7
57:15 58:1,2,3,5

58:16,18 63:18,21
65:3,18 74:7
**lists** 36:12 57:3
**LITIGATION**
2:11
**little** 6:13 26:17
39:3 66:4 68:10
**LLC** 1:7
**loaded** 16:6
**local** 50:15
**located** 26:8
**long** 4:20 29:3 38:6
**longer** 25:8 37:20
53:4 56:13 57:2
**look** 13:2,11,11,12
14:11,11 16:2,20
16:25 22:10 24:2
24:22 26:17 27:3
27:12,23 32:7
36:16 41:20 42:5
42:14,16,18 45:18
50:13 51:25 61:12
61:17 71:24 72:3
**looked** 23:6 28:2
35:6 38:24 61:10
**looking** 18:16
24:17 66:6 69:16
**looks** 17:2 50:11
**lost** 13:5
**lot** 7:23 15:12
28:21,24 50:10
68:18
**Love** 2:17 3:5 4:6,7
17:22 18:1 21:20
24:13 26:23 30:19
32:13,19 36:19,22
37:2 47:8 51:18
53:23 54:25 57:16
62:17 66:12 67:6
69:3,15 70:13,18
74:15
**lower** 24:21

**M**

**M** 4:5 54:1 70:17
**machine** 10:8,9
12:15 14:14 15:22
15:24 32:23

**Macon** 48:3 58:6
**mail** 39:14
**main** 2:20 16:4
**maintained** 5:12,17
5:22 6:1
**makers** 36:12 38:4
38:5,7 50:4,5,8,10
50:14 56:16 57:7
57:15
**making** 19:4 44:1,3
**Mamiko** 48:4
58:13 69:13
**management** 6:10
6:12 7:24 8:1,1
9:11,12,15,23
10:4,20 11:7,13
11:14 15:2 16:1,7
16:13 21:1,9,13
21:23 23:4 27:2
27:20 28:15 30:5
35:15 40:11,15,19
42:12 46:22 47:2
62:19 63:10 67:5
**manner** 39:2,7
45:23
**March** 23:7,8
25:15 31:21,25
33:5 39:8
**mark** 17:16 21:15
43:8 51:13 73:11
**marked** 3:11 17:20
18:16 21:8,18,21
23:17 26:18,21
29:4,15,15 32:17
32:21 51:16 72:3
**matches** 31:24,25
32:1 33:7
**materials** 72:4
**matter** 14:17 32:9
64:21
**MATTHEW** 2:13
**McGuire** 2:8
**mean** 7:4 12:14
20:10,13 25:16
29:5 34:8,18
48:21 50:5,8
53:20 57:9 63:6
68:25

**meaning** 50:20
**means** 24:8,8 25:10
25:25 38:20 50:21
63:25 66:4 72:14
**measure** 62:10
**mechanical** 62:19
**meet** 54:5
**meetings** 5:4
**mentioned** 16:9
19:7 40:1 70:20
71:5
**met** 4:13
**middle** 24:19 60:8
72:6
**mine** 4:25
**minute** 42:4 44:18
**missed** 44:8 54:21
65:15
**missing** 23:5,6
**mistake** 30:17 47:1
65:14 66:20
**mistakes** 65:14,20
**Mittendorff** 1:14
2:1 3:4 4:3,7
17:19 21:17 26:20
32:16 51:15 77:3
**moment** 32:14
69:16
**money** 12:22
**month** 38:18,19
41:10
**monthly** 37:24
**months** 38:18,19
41:15 44:14 54:7
**motion** 49:1,8
59:20
**motivated** 57:8
**move** 8:2 13:22
14:7 36:19,22,25
**moved** 6:9 13:19
**moves** 14:16
**multiple** 9:10 60:17

**N**

**N** 3:2 4:5,5 54:1,1
70:17,17
**name** 4:7 9:6,9
10:18 11:11 54:3

**necessarily** 29:20
**need** 55:25,25
73:20
**needs** 30:6
**neither** 76:9
**never** 4:13 18:14
29:15 51:20 57:8
70:1
**new** 14:4 39:17
41:6,20 55:7 68:5
68:20
**Newport** 2:12
56:15
**News** 2:12 56:15
**next-to-last** 32:4,7
**nifty** 68:10
**night** 10:7 14:10
15:23 16:5
**nonresponsive**
36:20,23
**normally** 5:9 34:13
**notarial** 76:13
**Notary** 2:3 76:3,21
77:21
**notation** 20:11
**note** 9:5 20:16
42:24 44:23 61:6
**noted** 26:5,6,8,10
26:12 29:21 45:2
45:10,16 46:12
58:23 59:22 61:23
**notes** 20:6 52:3
69:16
**notice** 2:6 72:23
73:2,6,21,22
**notifies** 44:15
72:18
**November** 76:5
**number** 1:6 3:11
12:4,5,6 15:4
17:19 19:11 21:17
22:12 25:21 26:20
32:17 51:15 54:18
55:15 59:12,17,25
60:1 71:11 76:23
**numbers** 55:14,17
71:4,10,17,24,25
**N-nonsuit** 27:15

**N.E** 2:16

**O**

**O** 4:5 49:22 54:1
70:17
**Object** 54:25 57:16
66:12 67:6 69:3
**Objection** 29:17
**obtain** 63:25
**obtained** 30:21,24
**obtaining** 53:6
**occur** 57:24 73:14
**occurred** 22:12
23:14 25:5,22
40:25 48:25 64:16
73:2 74:4
**occurs** 23:1 30:16
51:9 68:8
**October** 1:15 2:7
4:1 76:14 77:4
**office** 2:20 4:19 5:2
15:20 17:6 28:12
28:24 37:13 39:1
40:18 62:21 73:13
73:18 74:4
**official** 10:12 55:23
56:8,8 69:1
**oftentimes** 14:19
**oh** 42:16 69:10
73:12
**okay** 6:24 7:3 10:6
12:17 15:4 20:19
22:10 23:9,12,17
24:15,23 25:25
26:11 27:6 28:22
28:25 30:17,23
31:5,9,20 32:22
33:15 34:24 36:5
37:8,11,20 43:2
43:11,25 45:6
47:13 48:23,24
49:8,17 50:23
52:13 54:8 55:15
64:13 65:21 66:16
70:6 72:5 73:21
74:6,17
**old** 14:1,2,3
**once** 15:8,22 56:17

**ones** 40:11 51:7,8 64:24 71:13
**one's** 57:20 70:5
**open** 44:14 67:20 67:23
**opt** 11:21 40:4
**opted** 12:1
**option** 28:6
**order** 17:24 20:6 32:4 34:9,9,19 35:12
**ordered** 32:8 41:1
**orders** 56:24
**original** 22:10 49:2 55:11 59:23 60:3
**output** 61:11
**outside** 46:8 72:18
**outstanding** 73:24
**overall** 60:25
**overlay** 63:23
**overnight** 13:21 39:14
**O-other** 27:16

**P**

**P** 61:21,24 62:4 64:25
**page** 19:10 27:4,7,7 27:13,24 32:4,24 33:3 34:25 42:5 42:15,17,18 44:19 59:3,16 60:7 61:6 72:6,6
**PAGE/LINE** 77:7
**paid** 73:19
**papers** 15:16,21 16:25 17:2 50:13 56:24
**paperwork** 74:5
**part** 5:5 7:21 20:8 32:11 47:10,22 57:10 58:8,18 60:3
**participate** 40:3
**participated** 58:8
**participating** 40:4
**particular** 7:9 19:15,21,22 28:19 30:8 47:3 49:4 68:9
**parties** 15:5 68:4
**parts** 9:11
**party** 76:10
**pattern** 57:1
**PAUL** 2:21
**pay** 44:1 52:23
**paying** 44:13
**payment** 44:4
**payments** 44:1,7,7
**Peachtree** 2:16
**pending** 4:9
**people** 5:1 10:10 12:12 13:2,4 36:10,10,11,13 38:6 51:6,11 52:18 64:12 66:6
**percent** 19:25 55:15,16,16 70:21 71:2,6,14,16
**percentage** 11:25 71:17,21
**perfected** 26:10,14 44:25 45:2,20 46:12 56:24
**period** 7:13 41:1 44:13
**periods** 46:11
**person** 19:1 22:17 54:5
**personal** 16:2,10 16:23 17:25
**personnel** 12:12 17:9
**perspective** 62:6
**perusing** 35:2
**Petersburg** 57:5
**phone** 4:10
**pick** 50:1 57:7 62:22
**picked** 54:22,24 57:1,8 62:24
**picture** 30:6,7 31:16,17 41:14 55:10
**pilot** 7:4 13:7
**place** 26:8 42:19,21 36:8 42:19,21,24 42:24,25 43:8 49:20 51:1 52:10 63:15 66:7,7 68:4 68:8,11,17 69:6 73:11
**placed** 38:3,4
**plaintiff** 18:9 19:2 43:17 44:8 61:21 61:22 62:3 66:23 67:4 72:18 73:17 73:20
**Plaintiffs** 1:6 2:14
**plaintiff's** 62:7
**please** 4:15 10:2 42:5
**plus** 24:20
**point** 17:22 37:13 57:12
**police** 5:3
**policies** 49:13
**policy** 49:15
**portals** 11:1
**portion** 10:22,23 38:7
**portions** 36:20,22 36:25
**position** 4:21,24
**possible** 31:9 44:11 57:25 60:20 65:21 66:17
**post-judgment** 54:18,24 57:14 59:19
**potentially** 66:3
**practicing** 56:12,14
**prejudice** 20:7,12 29:22 32:10
**preparing** 17:4 47:23 48:1 58:9
**prepay** 13:8
**presume** 61:18
**previous** 66:11
**primarily** 7:18,20 12:8 16:21 51:8
**principally** 68:14
**print** 21:23,25 29:19 30:1 33:14 56:23
**prior** 18:9 57:12 73:2
**probably** 5:4 10:15 12:4 29:7 39:3 50:10,21 65:14
**problem** 5:6 64:9 65:2,7,8,11,11,22 65:23 66:5 73:22
**problems** 5:1,4
**procedure** 2:6 69:12
**procedures** 49:13
**proceeding** 76:11
**process** 22:24 37:18 43:4 52:25 54:17 57:11 63:24 66:21
**processor** 10:6
**procure** 12:22
**procurement** 5:10
**procuring** 12:12
**produce** 65:3
**produced** 48:6,9 58:17,25 62:12,14
**production** 10:8
**proffer** 54:10
**project** 12:24 13:7
**properly** 67:5
**protective** 17:24
**provide** 37:13,21 47:10 50:16 66:4
**provided** 27:8 41:22 46:15 49:23 53:16 62:9 65:5
**providing** 39:1,6 40:5,6 63:11
**public** 2:4 13:1,4 18:18 34:2 35:21 36:1,2,6 37:3,14 39:1,9 46:15 49:24 50:1 51:3 52:11,22,23 53:4 53:5 56:15 76:3 76:21 77:21
**purchase** 69:25 70:1 74:6
**purchased** 10:6
**purposes** 73:4
**pursuant** 2:5
**put** 6:7,8 8:23,25 8:25 9:2 11:24 13:20 14:10 15:18 20:14 34:12,18
**P-plaintiff** 27:14
**P.C** 2:11

**Q**

**question** 25:17 29:17,23 34:8 50:12 62:17 67:7 69:13
**questioned** 57:9
**questions** 35:25 53:24 55:19,22 70:13 74:15
**quick** 74:5
**quite** 15:11 71:16

**R**

**R** 70:16,16
**ran** 41:15 58:1 66:2 66:3 71:4,10,11
**rate** 19:25
**read** 51:20
**reading** 20:13
**real** 74:5
**realize** 73:24
**really** 5:5 16:19 57:25 73:13
**reason** 7:9 43:21 44:11 48:19 66:19 73:7,8,9
**recall** 54:7,8
**received** 9:4 37:8 43:9,17,19 56:4,5 63:22 72:23 73:2
**receives** 72:17 73:6
**Recess** 70:10
**recognize** 18:4 31:7
**record** 10:12 15:19 20:17,19,22,23 32:14,16 36:1,2,6 36:19 38:23 43:7 45:24 46:15 49:6 49:24 51:3 52:11 52:22,23 53:5,5

55:23 56:15 57:10 59:3 62:1,21 63:1 69:15,19 70:7
**recorded** 73:25
**records** 5:11,14,17 5:22 6:1 8:1,1,11 8:13 18:8,18 34:3 34:10,20 37:3,8,8 37:14 38:24 39:2 39:8,10 44:6,15 46:8 50:1 52:5 54:14,16 62:11
**recreate** 31:17
**reflected** 17:13 18:20 22:18 24:23 28:1 35:16 68:22
**reflects** 22:8,24 23:14,18
**refresh** 38:21
**Registration** 76:23
**regret** 54:6
**regularly** 54:22
**related** 76:10
**relevant** 46:11
**Remarks** 16:15,16
**remember** 56:18 56:19
**removed** 74:3
**reopened** 33:6
**reopening** 66:10
**rephrase** 25:17
**replace** 31:15
**replicate** 13:19 14:9,10,13
**report** 36:8,13 41:3 52:13,14,16 56:22 65:25
**reported** 1:25 31:21 33:22,24 38:15 77:25
**Reporter** 2:3 76:2
**reporting** 54:19 62:7 63:23
**represent** 4:8
**represented** 35:11
**represents** 33:16 35:8
**request** 37:24 38:20,21 48:14 58:9 64:9
**requested** 30:24 47:9,14 63:8 69:25 74:8 77:2
**required** 12:20 63:7,8
**requirements** 45:7
**research** 50:16
**respect** 57:11 60:21
**response** 58:9
**responsibilities** 4:23
**responsive** 37:1
**restore** 14:14
**results** 14:24
**review** 29:13 56:21
**reviewed** 18:8 62:25
**revised** 29:9
**re-hearing** 22:14 23:6 33:6
**re-ran** 41:17
**Richmond** 1:3,17 2:8,21 4:9 5:12 22:1,19,22 23:2 24:25 25:18 30:25 32:24 57:5
**right** 4:11,15 5:7 6:23 17:5,8 18:11 19:5,11 21:2,9,13 23:5 24:11,17,18 24:19,20 25:5,8 25:11,15 26:4,13 26:15 27:3 28:2,7 29:2,24 31:23 32:13,20 33:9 35:2,5,9 36:18 37:12 40:1 42:21 43:5 44:3 46:4,24 49:23 51:12 53:1 53:23 55:5 58:21 59:7 60:14 61:4 61:25 63:17,19 64:14 67:22 68:25 72:5,8,9,12,13,15 73:1
**right-hand** 19:9 24:2 27:4
**role** 12:18
**rough** 11:25
**RPR** 1:25 77:25
**rude** 54:4
**Rule** 2:5
**Rules** 2:5
**run** 40:24,24 52:16 52:16,19 57:25 58:2,3 65:6,12,13 71:17
**running** 12:21
**runs** 74:5

## S

**S** 3:10
**SAITH** 74:21
**sample** 72:7
**Sandra** 52:5
**SAT** 42:20 72:12
**satisfaction** 9:3,4 44:16 56:23 58:23 72:23,25 73:1
**satisfactions** 8:15 8:20 41:6 54:20 56:22 57:23 71:14 72:2
**satisfied** 41:8,9,15 41:16,19 42:9,13 42:19,23,24,25 43:4,8,10,13,18 43:20,22 44:6,12 45:25 46:4,6 47:17,20 48:18 52:14 55:16 58:1 71:5,10 72:14,19 73:5,11,15,16,17
**satisfieds** 55:8,9
**Savage** 48:4 58:13 69:13
**saw** 58:18
**saying** 23:12 49:8
**says** 19:10 20:6 24:19,21 26:7,9 26:12 28:2 31:25 32:8 34:10,11,18 36:25 42:8,20 52:1,4,5 56:7 59:14,17 60:14 62:1 72:11
**schedule** 67:25
**screen** 3:15 21:23 21:25 22:3,5 23:8 23:14,17 27:2 29:6,19,25 30:9 30:10,20,24 31:3 31:10,12,18 32:22 33:3,10,14 35:17 41:4 45:18 61:10 61:12,17 72:7,8 72:10
**seal** 76:13
**second** 10:9 14:11 15:14 22:24 23:1 33:2,3 59:16 70:8
**Secretary** 4:19
**section** 19:13,23 26:11
**see** 12:25 13:1 20:5 20:6,7 24:3,4 27:16 32:10 41:13 41:16,17,18 44:3 48:5 52:6 59:14 60:15 64:25 65:1 65:17 73:15
**seen** 18:2,11 58:16
**select** 35:20
**sell** 50:14
**selling** 57:3
**send** 37:24,24,25 55:18
**sending** 38:18
**sent** 39:8,14 53:4
**sentence** 32:7
**separate** 23:15 34:24
**September** 33:11 33:12,13,13,19,21
**sequential** 60:1
**service** 52:23 66:19 66:20,21,23 67:17 67:18,24 68:1,1
**services** 1:7 28:18 50:15 69:5,12
**session** 69:10
**set** 6:14,21,24 7:14 8:24 15:8,8,10 19:9 32:10 34:6 34:22 35:3 42:2 45:4 52:2 67:20 68:20 71:23
**setting** 8:15
**settled** 9:1 51:7
**settlements** 51:10
**set-aside** 34:25
**seven** 57:1
**shaken** 54:4
**sheet** 15:17,18
**shot** 22:4,5 23:8,14 23:17 29:6 30:9 30:10,20 31:12,18 33:4,10 35:17 45:18 72:7,11
**shots** 3:15 30:25 31:3,10 32:22 41:4
**show** 17:16 21:15 27:20 42:12 43:19 51:12 55:13
**showing** 29:20
**shown** 11:23 21:7 23:10 28:5 29:25 35:4 42:15 48:24 49:10
**shows** 27:9 32:23 32:25 33:4,5 35:19 44:14 48:24 68:14
**side** 19:9,18 62:7 66:6 68:11
**sign** 5:9,9
**signature** 52:6 74:23 77:19
**signed** 15:16
**significant** 54:18
**similar** 41:4
**Similarly** 1:5
**sir** 4:15 14:18 18:11 24:14 26:24 27:3 32:20 35:5 35:25 36:18 40:1 40:13 45:1 51:12 52:13 54:3 74:16
**site** 10:11

**Situated** 1:5
**six** 57:1
**slow** 7:6
**small** 58:24
**solve** 4:25 5:4 65:9
**solving** 65:11
**somebody** 30:12 34:11 36:14 43:23 44:2 45:3 47:18 50:11 65:5,12 66:5 69:11 73:12 73:14,23 74:2
**somebody's** 16:2 37:24
**somewhat** 64:10
**sorry** 36:21 42:17 47:21 59:4
**sort** 58:8 60:25
**source** 64:6 72:18
**Soutter** 1:4 3:12 18:9,14 19:24 20:3 24:15 32:9 33:1 48:8 49:3 59:2 61:3,25
**Soutter's** 18:12 21:25 22:9 29:14 31:1 32:5 33:10 33:17 47:9,14 74:8
**space** 42:22
**SPALDING** 2:16
**speak** 20:22 34:14 37:22 52:20
**specific** 58:19
**spoke** 4:10 24:18 54:6 58:6
**spoken** 18:14 57:6
**stamp** 52:4
**stamps** 52:1,7
**start** 39:1
**started** 6:5 7:4,12 12:24 13:7 18:22 19:1 33:13 37:18 38:18 39:5 57:2 60:1
**state** 5:3,3,19,23 6:2 13:13,16 28:22 37:12 38:25 47:10 58:17 64:1
**statement** 57:9
**statements** 69:22
**STATES** 1:1
**statistic** 70:22
**status** 60:11,24 61:11 62:12 64:2
**step** 21:4,5 22:24 22:25 23:2 35:9 35:13,13,22
**steps** 12:20
**sticker** 59:5
**stipulate** 47:7
**stop** 39:6
**stopped** 52:25
**Street** 2:8,16,20
**strike** 36:20,22,25 46:20 50:17,20 52:5
**study** 6:7
**stuff** 5:10 52:19 67:10
**sub** 50:10
**subject** 17:23
**subsequent** 48:16 60:3,4
**subset** 58:24 59:22
**substantial** 53:15
**suffix** 33:3 59:24 60:2
**suggested** 61:10
**suggesting** 62:8
**Suite** 2:11
**summons** 13:6 59:22
**supervise** 58:14
**support** 14:3
**supported** 14:5,6
**suppose** 67:13
**supposed** 13:5
**supreme** 4:18 6:4 10:24 11:2,16 12:9 17:1,14 33:19 35:20 49:14 63:10 65:25 69:25
**sure** 4:20 38:19 45:13 47:18 59:6 67:9
**sworn** 4:4 76:6
**system** 6:14,16,21 6:24 7:14,17,24 8:3,10,19 9:6,8,10 9:11,12,16,16,23 10:4,18,20 11:7 11:12,13,14 13:23 14:1,17 15:2,2 16:1,7,7,13 17:7 17:12 21:1,9,13 21:24 23:4 27:20 31:19 35:16 40:12 42:12 46:7 47:3 62:19 63:10 64:2 66:1 67:5 70:1
**systematically** 54:22,24
**systems** 4:18 6:7,8 6:10,12 7:4,11 28:15 29:14 40:15 40:19 46:23 64:1

**T**

**T** 3:10 4:5 54:1 70:16,17
**take** 2:6 14:9,17 26:17 27:3 30:6 72:3
**taken** 2:1 61:22 77:4
**talk** 8:7 44:18 65:19 66:9 72:1
**talked** 42:6 48:3 72:1,11
**talking** 24:10 26:11 33:18 41:2 46:16 51:23 67:10
**tapes** 41:9,11
**task** 58:19
**tax** 63:4
**technical** 63:9
**telephone** 54:7
**tell** 4:16 10:2 14:25 22:8,11 29:11 31:6 34:16 37:10 63:20 65:11 69:9
**tells** 44:2 59:25 60:2
**ten** 4:22 10:16 29:7 30:11 45:9,11 56:13
**term** 50:23
**terminal** 15:20
**termination** 9:19
**testified** 4:4
**testimony** 76:8
**Thank** 53:24 74:16 74:19
**thereof** 76:12
**they'd** 36:16 45:18 45:22
**thing** 8:22 14:7 30:5 34:7 41:13 43:16 45:20 52:9 65:17 67:15 68:10 68:12
**things** 6:18 12:23 65:10
**think** 18:21 24:10 47:19 51:21 52:15 53:18 61:9 65:8
**third** 15:14
**thought** 66:20
**three** 6:11 7:7,9 24:23 27:24 40:12 45:24 47:20
**ticket** 13:8
**time** 4:10 7:7,13,17 7:21 15:10 19:10 38:6 41:1 43:6 46:10 56:14 61:12 62:1,5 63:7 67:13 70:13
**times** 15:12 57:24 68:19
**title** 4:16
**today** 4:13 7:22 18:9 62:12 64:3 70:4
**Tony** 4:7 24:11
**tool** 26:25 29:12
**tools** 62:6
**top** 12:6 24:19 59:11 60:14 61:4 61:25
**tough** 5:5
**traffic** 9:13 13:8
**trail** 20:21
**training** 26:25 27:7 28:13,17,23,24 29:11 69:10 72:4
**transcribed** 2:2
**transcript** 37:1 76:8
**transmitted** 37:19 39:9
**travel** 28:22
**treated** 34:6
**trial** 66:18,22,24
**tried** 67:3
**tries** 73:23 74:5
**true** 4:12,14 14:22 37:16 45:12 53:2 65:24 70:4 76:7
**try** 14:15 36:8 38:19 62:6,7
**trying** 63:21 65:9 65:13 67:24
**two** 7:25 11:18 30:11 32:25 35:14 38:18,19 41:15 46:10 51:25 52:7 58:7 71:13
**type** 7:15 18:19 19:2 20:16,19 22:3,4 25:7 28:15 51:23 52:9 53:6
**typed** 37:1
**types** 5:25 6:18 8:17 35:13 45:25 46:20 48:15

**U**

**U** 70:16
**Uh-huh** 24:5 27:17 35:18 59:13
**ultimate** 29:20
**understand** 14:16 18:17 20:16 30:6 54:9 55:3 58:6 66:10
**understanding** 36:5 57:13
**uniformity** 73:4

**UNITED** 1:1
**unusual** 64:16
**update** 3:13 43:6 72:7
**updates** 38:20
**upper** 24:2,11 27:4
**UPS** 39:15
**use** 6:16 8:10 9:7,8 9:17 10:8 12:1 17:4 25:4,7,22 26:4 27:19 29:7 37:9 42:7 43:3 55:20,24 67:10 71:25
**User's** 3:14
**usually** 5:6 15:16 23:13 30:15,17 43:5 45:9
**U-not** 27:15

**V**

**v** 1:6
**VA** 2:12,21
**vacate** 49:1 59:21 60:21 66:7,16 68:3
**vacated** 20:7,11 28:7,9 29:15,21 33:24 34:6,13,13 34:22 35:3 42:2 45:25 46:3 47:17 47:20 48:18 49:20 66:8,17,22 67:1,1 67:2,11,12,15,16 68:21 70:1 71:18 71:23
**vacates** 54:20
**vacating** 8:21 56:24 66:9,19
**various** 6:15 17:3 42:7
**vend** 69:24
**vendor** 36:2,6 37:3
**vendors** 11:4 36:1 36:7 39:2,10 46:15 49:24 51:3 51:5 52:11,22,23 53:5,5 56:16 69:24
**verbiage** 25:8
**versus** 34:15 53:21 66:8
**Virginia** 1:2,17 2:4 2:9 4:9,19 5:13,19 5:23 6:3 8:9,18 9:17,22 10:24 11:2,6,16 12:10 12:19 17:1 18:6 18:18,23 20:24 25:19 34:3,4,21 34:21 35:20 36:1 37:12 38:25 40:16 49:14 56:4 59:19 71:2 74:10,13 76:1,4,14,22

**W**

**waiting** 16:5
**WAIVED** 74:23
**walk** 22:7
**want** 11:23 13:9 14:15 16:24 35:25 36:15 54:4 64:12 65:7 69:22
**wanted** 12:23,25 13:1 39:22,23,24 64:12 65:15,22 72:2
**wants** 45:3
**warrant** 3:16 14:20 14:23 15:4,5 18:4 18:22 19:13,22 33:7 35:12
**Warwick** 2:11
**wasn't** 33:14,24 48:18,18,19,20 58:5 65:18 73:15 73:16
**way** 13:15 19:1 30:11 34:9,9,10 36:14 41:12 43:21 44:3 49:12,16 50:1 61:23 62:22 62:24 64:19,22 65:7 69:6,9,11 71:12 73:9
**ways** 46:1 68:7,20
**web** 10:11 12:1 13:9 15:2 16:7 18:10 37:9 40:3 41:18,21 53:7,8 53:16,21 56:7,7,8
**website** 10:24 11:3 11:16 12:10,19 16:11,14 17:5,14 33:19 35:20,22 36:14
**websites** 36:8
**web-based** 12:9,18
**weekly** 56:22
**went** 10:10 12:19 38:23 41:17 56:1 73:14
**weren't** 7:10 57:19 68:2
**we'll** 21:15 26:16 51:12 65:11
**we're** 17:24 33:17 41:1 49:5,9,9 55:19,20 62:8 63:21,23
**we've** 4:13 57:6 64:4
**whichever** 39:22 65:7
**wife** 65:19
**wins** 66:24
**wipes** 54:21
**wit** 76:1
**witness** 3:3 29:18 29:25 57:17 67:7 69:4 74:17,23,24
**witnesses** 8:23
**Woods** 2:8
**word** 50:17,20,22 73:1
**words** 23:12 27:14 41:12 55:9 67:14
**work** 5:2,10 12:11 12:13 50:11 63:7 65:22
**worked** 6:4 37:17
**working** 18:18
**worth** 38:21
**wouldn't** 20:13 34:12 38:7,23 43:7,19 49:10 62:21 64:21 67:12
**write** 19:3,14,19
**written** 15:16 34:9

**X**

**x** 3:2,10 4:5 42:22 45:17 54:1 70:17

**Y**

**yeah** 16:8 31:23 42:16 64:7 68:7 68:17 69:11
**year** 29:10 33:11 33:14,15 60:1
**years** 4:22 6:5 8:3,7 8:8,19 10:6,17 29:5,8 56:13 57:1 71:8,14
**year's** 38:21
**yesterday** 71:10

**$**

**$14,403.79** 19:24
**$48** 20:3

**0**

**00** 49:10 59:14 64:24
**01** 48:17,23 49:4 59:17,24 60:2
**02** 33:2
**03/20/08** 22:14
**05** 22:12 62:11
**06** 62:11
**08** 23:9 31:25 62:11

**1**

**1** 3:12 17:17,19 18:17 21:8 31:24 32:2,3 33:2,8 35:12 61:6
**1/29** 22:12
**10** 45:8
**10:00** 1:16 2:7 4:1
**100** 2:11
**11:44** 1:16 75:1
**115863** 76:23
**1180** 2:16
**12515** 2:11
**15** 55:16,16 71:5
**15.75** 71:15
**16** 55:16 71:6,16
**17** 3:12
**1984** 6:8
**1995** 7:7

**2**

**2** 3:13 21:15,17,22 23:18 24:24 27:23 28:5 29:13 31:20 35:17 42:16 48:24 59:9,11 60:7
**20** 12:4 31:21
**20th** 23:7,8 31:25 33:5
**2000** 10:15 11:16 12:19 15:3 33:12 39:3 71:10
**2007** 13:24 19:25 31:18 33:13 73:13 73:17
**2008** 25:15 31:18 31:21 33:5 71:4 71:12
**2009** 39:8 40:24 58:23 71:4 73:14 73:16
**2010** 1:15 2:7 4:1 33:19,21 71:12 76:15 77:4
**2013** 76:5
**21** 3:13
**22** 19:25
**23219** 2:21
**23606** 2:12
**25** 12:4
**26** 3:14
**29th** 23:9 61:16,17

**3**

**3** 3:14 26:18,20 28:1 29:4 34:25 34:25 42:4 72:4
**3/20/08** 20:6
**3/20/2008** 20:10

**3:10cv107** 1:7
**30** 2:5 45:8 76:5
**30309** 2:17
**32** 3:15
**33526** 1:24
**35** 6:5

**4**

**4** 3:5,15 32:17,21
 33:9 35:6 55:15
 70:21 71:2,14

**5**

**5** 3:16 51:13,15
**51** 3:16
**54** 3:6

**6**

**6** 1:15 2:7 4:1 77:4

**7**

**7/10** 29:9
**70** 3:5

**8**

**8** 71:8
**8th** 76:14
**80s** 6:6
**84** 6:21 7:13
**85** 6:8,21 7:13

**9**

**9** 71:8
**9.99** 19:25
**900** 2:20
**901** 2:8
**94** 56:12
**95** 7:10