Page 1

1 UNITED STATES DISTRICT COURT

2 EASTERN DISTRICT OF VIRGINIA

3 RICHMOND DIVISION

4 *******************************************************

DONNA K. SOUTTER, For Herself and On Behalf of All
5 Similarly Situated Individuals,

6         Plaintiffs,
    v.                  Civil Action Number
7                            3:10cv107
EQUIFAX INFORMATION SERVICES, LLC,
8
        Defendant.
9 *******************************************************

10

11

12

13                DEPOSITION OF

14                DAVID SAVAGE

15              October 6, 2010

16         2:04 p.m. - 2:21 p.m.

17           Richmond, Virginia

18

19

20

21

22

23

24 JOB NO: 33526

25 REPORTED BY: GWENDA E. APPLEGATE, RPR, CRR

Page 2

1  Deposition of DAVID SAVAGE, taken and
2  transcribed on behalf of the Defendant, by and
3  before Gwenda E. Applegate, Court Reporter, Notary
4  Public in and for the Commonwealth of Virginia at
5  large, pursuant to Rule 30 of the Rules of Civil
6  Procedure, and by Notice to Take Depositions;
7  commencing at 2:04 p.m., October 6, 2010, at McGuire
8  Woods, 901 East Cary Street, Richmond, Virginia.
9  APPEARANCES OF COUNSEL:
10     By: CONSUMER LITIGATION ASSOCIATES, P.C.
        12515 Warwick Boulevard, Suite 100
11      Newport News, VA 23606
        LEONARD A. BENNETT, ESQ.,
12         -- and --
        MATTHEW J. ERAUSQUIN, ESQ.,
13      Counsel for the Plaintiffs
14
15     By: KING & SPALDING
        1180 Peachtree Street, N.E.
16      Atlanta, GA 30309
        J. ANTHONY LOVE, ESQ.,
17      Counsel for the Defendant
18
19     By: OFFICE OF THE ATTORNEY GENERAL
        900 East Main Street
20      Richmond, VA 23219
        PAUL KUGELMAN, JR., ESQ.,
21      Counsel for the Deponent
22
23
24
25

Page 3

 I N D E X
WITNESS:
 DAVID SAVAGE
   Examination by Mr. Love.................4, 16
   Examination by Mr. Bennett...............10


 E X H I B I T S
NUMBER       DESCRIPTION:      MARKED:
    (NONE)
  * * * * * *

Page 4

1  (October 6, 2010, 2:04 p.m.)
2
3          DAVID SAVAGE
4     first duly sworn, testified as follows:
5          E X A M I N A T I O N
6  BY MR. LOVE:
7     Q  Would you state your name for the record,
8  please.
9     A  David Savage.
10    Q  Mr. Savage, my name is Tony Love, and I'm one
11 of the attorneys representing Equifax, the defendant in
12 the case filed against it by Donna Soutter in federal
13 court. Some of Ms. Soutter's attorneys are here as
14 well.
15        You and I spoke recently on the telephone one
16 time about this case; is that right?
17    A  That is correct.
18    Q  But that was the only conversation we've had
19 about it, and we've never met in person, have we?
20    A  That is correct.
21    Q  Okay. Would you state your -- who do you work
22 for?
23    A  Agency-wise or personnel-wise?
24    Q  Well, agency-wise.
25    A  Okay. I work for the supreme court. It's

Page 5

1  really the Office of the Executive Secretary. My
2  paycheck comes out of the supreme court, but I actually
3  work for the Office of the Executive Secretary in the IT
4  department.
5     Q  All right, sir. And what is your job title?
6     A  My job title is district team leader.
7     Q  And what are your responsibilities as a
8  district team leader there with the supreme court?
9     A  I oversee a portion of the programming for our
10 district CMS systems. We have two district CMS systems,
11 a JDR case management system and a general district CMS,
12 case manage system. And I'm responsible for the
13 programming and installation of those systems.
14    Q  How long have you had this position?
15    A  I've been working for the supreme court since
16 1982. And my job as the district team leader, I
17 really -- I don't know. At least 15 years.
18    Q  All right, sir. And are you familiar with the
19 types of court records including judgments and the
20 dispositions of judgments that are maintained by the
21 general district courts and the circuit courts
22 throughout the State of Virginia?
23    A  I have a general knowledge, not a detailed
24 knowledge. That is another group. But I do have a
25 general knowledge.

Page 6

1  Q   Are you aware that Ms. Soutter's attorneys in
2  this case contacted the State of Virginia and requested
3  the state to provide certain information about consumers
4  related to this case?
5  A   I am aware of that, yes.
6  Q   And how did you become aware of the request by
7  Ms. Soutter's attorneys for this information?
8  A   I believe it was through an e-mail from Eddie
9  Macon.
10 Q   And who is Eddie Macon?
11 A   That's a good question.  I just know he works
12 in the -- he's either assistant executive secretary.  I
13 don't know his official title.
14 Q   Do you know whether he's an attorney or not?
15 A   I do not know if he's an attorney or not.
16 Q   He's not a computer programmer in your group,
17 is he?
18 A   No, he is not.
19 Q   Okay.  What did Mr. Macon ask you to do?
20 A   He asked us to create a query from our
21 database to extract civil cases in the general district
22 court that had either an appeal, a vacated judgment or a
23 satisfied judgment.  And he gave a timeframe.  I don't
24 remember the exact timeframe without looking at the
25 request.

Page 7

1  Q   Did you ask someone in your group to assist
2  with processing that request?
3  A   Yes, I did.
4  Q   Who did you ask?
5  A   That was Mamiko Barnard.
6  Q   Did the state charge Ms. Soutter's counsel for
7  creating this list?
8  A   Yes, they did.
9  Q   And what was the cost for creating the list?
10 A   I do not know.  Eddie Macon had put all that
11 together.  We gave him the hours that it took us to
12 create the job and the number of hours it took to
13 create -- to run the job.  And that's all I know.
14 Q   Does $2,400 sound right?
15 A   That could be right.  I'm sure Eddie Macon has
16 sent an e-mail about that.  But I'm -- I don't remember
17 things like I used to.  But it was way under what we had
18 projected it to be.  We thought it was going to be a lot
19 more intense but we were able to streamline it.
20 Q   How much did you originally project that it
21 would be?
22 A   I thought it was somewhere around 20,000, to
23 be quite honest, but I don't -- again, Eddie did all
24 the -- we gave him the hours that it would be projected
25 it would take to do this request and then he puts a

Page 8

1  price on it because it's a different hourly rate based
2  on programming effort and run time.  And it ran a lot
3  sooner, a lot faster than we thought.
4  Q   Did you have to hire anyone outside of your
5  normal employees, your normal full-time employees to
6  help process any of this?
7  A   No.
8  Q   What was your involvement in preparing the
9  list?
10 A   I helped to interpret the request because
11 people that submit queries don't usually use the same
12 jargon language that we're used to, and so we have to
13 kind of interpret what they want.  There was a lot of
14 e-mails going back and forth between me, Eddie Macon and
15 Soutter's representatives to make sure we had the
16 request exactly as they wanted it.
17 Q   Do you have any recollection of any issues
18 that arose in terms of coming up with the final search
19 elements that were going to be used?
20 A   There were several questions.  I don't have
21 e-mails in front of me.  But there were questions just,
22 again, to make sure that we had the right data elements
23 and make sure they understood what they were getting.
24 But I don't recall any specific one offhand.
25 Q   Did you review the final list of data

Page 9

1  requested by Ms. Soutter's attorneys before it was
2  produced to them?
3  A   No, I did not.
4  Q   Have you ever reviewed it?
5  A   No, I have not.
6  Q   Do you know whether Ms. Soutter appears on the
7  list?
8  A   I've heard that it was not on the list.
9  Q   Do you know why she wasn't on the list?
10 A   Yes.
11 Q   Why wasn't she on the list?
12 A   The request was very specific for vacated
13 judgments, judgment satisfieds and appeal dates, and
14 that did not apply to the case, Ms. Soutter's case.
15 Q   Was she listed with a different status in her
16 case?
17 A   On our case management system she was listed
18 with a different status.
19 Q   And what was that status?
20 A   That status was dismissed.
21 Q   Now, all of the information that was on the
22 list comes from the case management systems from the
23 general district courts throughout the State of
24 Virginia; is that right?
25 A   That is correct.

Page 10

1 Q And that information goes to the database
2 maintained by the Virginia Supreme Court?
3 A That is correct.
4 Q And if court clerks make mistakes in entering
5 the data that is entered into their case management
6 system at the various clerks' offices throughout the
7 State of Virginia, then that same error will be
8 transmitted to the Virginia Supreme Court's database; is
9 that right?
10 A That is correct.
11 Q And so if any of those types of errors
12 occurred in the collection or entry of data by the
13 clerks throughout the general district courts in
14 Virginia, then the information on the list that was
15 produced to plaintiff's counsel could also contain those
16 errors; is that fair to say?
17 A That is correct.
18 MR. LOVE: Those are all the questions I have.
19 Thank you.
20
21 E X A M I N A T I O N
22 BY MR. BENNETT:
23 Q I have a couple, not many.
24 The role that you described yourself as having
25 served was essentially to translate the request coming

Page 11

1 from outside the system into the data fields and the
2 elements within the actual state's computer system;
3 correct?
4 A That is correct.
5 Q And the questions that were asked about Donna
6 Soutter, when you received the request for vacates, that
7 was translated into cases that had the A code, which
8 means -- that's correct, right?
9 A That is correct.
10 Q All right. And that means that is the last
11 activity, judgment activity that has occurred in that
12 case, if it's an A?
13 A I cannot say that.
14 Q Well, for example, if a case -- do you know
15 what a vacation of a judgment is generally?
16 A I have a general idea. Do I have a complete
17 understanding? No. As a programmer we get
18 requirements. They tell us these are the codes that we
19 need and we implement that.
20 Q But you, you would have knowledge that a case
21 can be -- a judgment, rather, can be vacated, and then
22 after it's vacated, could then be dismissed?
23 A From a legal standpoint, I cannot answer that
24 question. From a computer standpoint, our system will
25 allow that.

Page 12

1 Q And the way that the computer system would
2 reflect that type of event is by putting in as the last
3 disposition code the "I" code for case dismissed;
4 correct?
5 A That is correct.
6 Q And? I mean, I don't want to ever hold a
7 witness --
8 A I know. I just want to clarify that vacated
9 is not a case disposition as such. And I just want to
10 make sure, if you understand that, --
11 Q Yes.
12 A -- it's really a judgment on an individual,
13 which could be different than the case disposition.
14 Q That's right.
15 A Okay.
16 Q But you -- and we've gone through -- as a
17 matter of fact, why don't I offer you the Donna Soutter
18 record which is Exhibit Number 2? As I understand, this
19 document was sent to my co-counsel during the meeting
20 that they had with you and other employees of the
21 executive secretary of the supreme court last week.
22 Were you the person who participated in getting this
23 outputted?
24 A That is correct.
25 Q And as I understand, the first page is the 00

Page 13

1 screen for this judgment number, and the second page is
2 the 01 screen?
3 A That is correct.
4 Q This is the same type of -- for example, 01 or
5 02 or so forth would be sort of a sub-filing for
6 post-judgment activity?
7 A That is correct.
8 Q So garnishments might also be included?
9 A That is correct.
10 Q Right. And in this instance, the
11 post-judgment activity would -- in this instance, I
12 guess you could divine it from the remarks section that
13 there was a motion to vacate filed. Do you see that?
14 A I see it. I --
15 Q You wouldn't know necessarily?
16 A I can divine it also but I can't say that's
17 exactly what was going on with this case.
18 Q Got it. But it would show, for the line
19 number one on the 01 sub screen, it would show zero for
20 the March 20th, '08 date, and that would mean some other
21 event besides continued, default judgment or judgment?
22 A Right. That would be "other." It's an "O"
23 for "other."
24 Q Now going back to the front page, the primary
25 screen, the -- we've already, I think all of us have

Page 14

1 talked through this with the prior witnesses and our own
2 knowledge base now, that is the event of a judgment
3 being -- a case being dismissed could occur for the case
4 in general as to every defendant in the case, or it
5 could just occur as to one; for example, if you had a
6 husband and wife, maybe it's dismissed as to the husband
7 but not as to the wife?
8     A   That is correct.
9     Q   All right. If the case overall is dismissed,
10 then that is coded on the field on the left that says
11 "case DISP," case disposition?
12     A   That is correct.
13     Q   And the "I" that's on this exhibit reflects
14 that it was dismissed as to Donna Soutter?
15     A   That is correct.
16     Q   The top right has DEF or defendant 1 and DEF2.
17 Do you see that?
18     A   Yes.
19     Q   And this to the right of that is the "J"
20 field. This would be where the defendant specific
21 judgment event would be noted?
22     A   That is correct.
23     Q   And in this instance it also is "I," which
24 means it was dismissed as to Donna Soutter?
25     A   That is correct.

Page 15

1     Q   Had we requested the "I" field instead of
2 simply vacate which became interpreted as the A field,
3 there's nothing -- I mean, I understand expense and time
4 and the like. But there isn't any structural or
5 technical difficulty in having included that?
6     A   No. There is no difficulty.
7     Q   Okay. It might take more computer time, might
8 cost us more, but it's basically the same --
9     A   It probably wouldn't have made any difference.
10     Q   Okay. As far as from a data organization
11 perspective, the field that you searched for in this "J"
12 under DEF1 field, I mean the values you would search
13 for, are -- the computer interprets them as just a
14 letter?
15     A   That is correct.
16     Q   So you search for "A" or "I" or "D," it's just
17 whatever letter you want, the computer could find it?
18     A   That is correct.
19     Q   And the search would be -- well, that's all I
20 need to ask.
21         MR. BENNETT: I don't have any other questions
22     and I appreciate your time.
23
24
25

Page 16

1            F U R T H E R
2          E X A M I N A T I O N
3 BY MR. LOVE:
4     Q   Just a few follow-ups. On the document, the
5 screen shot that Ms. Soutter's counsel was just asking
6 you about, this would show whether Ms. Soutter appealed
7 the judgment against her; correct?
8     A   That is correct.
9     Q   And according to the records here, there's no
10 indication that she appealed the judgment against her;
11 right?
12     A   That is correct.
13     Q   This record would show whether the judgment
14 against Ms. Soutter was satisfied; is that right?
15     A   That is correct.
16     Q   And this doesn't show that the judgment
17 against Ms. Soutter was satisfied, does it?
18     A   That is correct.
19     Q   And this document could also show whether the
20 judgment against Ms. Soutter was vacated; is that right?
21     A   That is correct.
22     Q   And it doesn't show that the judgment against
23 her was vacated?
24     A   That is correct.
25     Q   It shows that the judgment against her was

Page 17

1 dismissed?
2     A   That is correct.
3     Q   Now, Mr. Bennett asked you or he mentioned a
4 meeting that you had with him and maybe other members of
5 Ms. Soutter's team --
6         MR. BENNETT: It wasn't with me.
7         MR. LOVE: I apologize.
8 BY MR. LOVE:
9     Q   Or with certain counsel --
10     A   Right.
11     Q   -- for Ms. Soutter. And let me just ask it
12 this way. After you prepared the list, you and your
13 team prepared the list that was requested by
14 Ms. Soutter's counsel, did you meet with certain of her
15 counsel to discuss the list and the outcome of your
16 search?
17     A   Yes.
18     Q   And when did that meeting occur?
19         MR. KUGELMAN: Answer to the best of your
20     recollection. I mean, I --
21         THE WITNESS: It was last week. It was just
22     last week. It was not right after we had created
23     the list. It was when we were all getting ready to
24     do the deposition and we were meeting individually.
25 BY MR. LOVE:

Page 18

1  Q Did Ms. Soutter's counsel have any questions
2 about the outcome of the search and the contents of the
3 list?
4  A To my recollection they were asking the
5 general questions such as the ones that were asked here,
6 if that's what you're referring to.
7  Q Did they have any concerns about any people
8 that were missing from the list?
9  A They had concerns about why they received
10 certain records, and we explained to them why they
11 received certain records.
12  Q Which records were they concerned about
13 receiving?
14  A They received somewhere like 16,000 vacated
15 judgments, and for some reason I don't remember, they
16 were not -- I think they were looking at the list and
17 they were misinterpreting, they thought it was -- they
18 were looking for the judgment satisfieds and the
19 appeals. And it turned out that these records weren't
20 satisfied or appealed but they were vacated. And I'm
21 not sure why they -- I know why. I know what the reason
22 is now.
23    When you have multiple defendants, you can
24 have one vacated and you can have another defendant with
25 a space, a dismissed or another judgment. And they were

Page 19

1 looking specifically for vacated, judgment satisfied and
2 appeals. But they also wanted all parties. Whenever we
3 found one defendant, they wanted a list of all the
4 related defendants on that case. So there was a slew of
5 cases or defendant records that didn't have any one of
6 those criteria, and it was because they were related to
7 another defendant on that same case.
8    And so that was the reason they were asking
9 the question they had. They wanted to know why that
10 defendant showed up on a list when they weren't vacated,
11 they weren't satisfied, and it wasn't dismissed --
12 appealed, but it was because another defendant had been.
13  Q So on the list that was put together, there
14 are individuals or businesses on the list who didn't
15 have a judgment that was appealed, vacated or --
16  A I believe that's what we --
17  Q -- satisfied?
18  A I believe that's what we determined.
19  Q Was there any concern expressed over Donna
20 Soutter not being on the list?
21  A I, I honestly don't remember. I don't
22 remember.
23    MR. LOVE: Thank you. Those are all the
24 questions I have.
25    MR. BENNETT: Thank you very much.

Page 20

2    AND FURTHER THIS DEPONENT SAITH NOT.

4    SIGNATURE OF THE WITNESS WAIVED BY
5 AGREEMENT OF COUNSEL AND THE WITNESS.

7    (Deposition concluded at 2:21 p.m.)
8       * * * * *

Page 21

1 COMMONWEALTH OF VIRGINIA AT LARGE, to wit:
2    I, Gwenda E. Applegate, Court Reporter,
3 Notary Public in and for the Commonwealth of
4 Virginia at Large, and whose commission expires
5 November 30, 2013, do certify that the aforementioned
6 appeared before me, was sworn by me, and was thereupon
7 examined by counsel; and that the foregoing is a true,
8 correct, and full transcript of the testimony adduced.
9    I further certify that I am neither
10 related to nor associated with any counsel or party
11 to this proceeding, nor otherwise interested in the
12 event thereof.
13    Given under my hand and notarial seal at
14 Charlottesville, Virginia, this 8th day of October
15 2010.

21   Gwenda E. Applegate, Notary Public
22   Commonwealth of Virginia at Large
23     Registration Number 115863

```
 1
 2        CHANGES REQUESTED TO THE DEPOSITION OF:
 3              DAVID SAVAGE
 4          TAKEN:  October 6, 2010
 5
 6
 7   PAGE/LINE:      DESCRIPTION
 8   _____
 9   _____
10   _____
11   _____
12   _____
13   _____
14   _____
15   _____
16
17
18        DATE: _____
19     SIGNATURE: _____
20
21   NOTARY PUBLIC: _____
22   MY COMMISSION EXPIRES: _____
23
24
25   REPORTED BY: GWENDA E. APPLEGATE, RPR, CRR
```

**A**

able 7:19
Action 1:6
activity 11:11,11 13:6,11
actual 11:2
adduced 21:8
aforementioned 21:5
agency-wise 4:23 4:24
AGREEMENT 20:5
allow 11:25
answer 11:23 17:19
ANTHONY 2:16
apologize 17:7
appeal 6:22 9:13
appealed 16:6,10 18:20 19:12,15
appeals 18:19 19:2
APPEARANCES 2:9
appeared 21:6
appears 9:6
Applegate 1:25 2:3 21:2,21 22:25
apply 9:14
appreciate 15:22
arose 8:18
asked 6:20 11:5 17:3 18:5
asking 16:5 18:4 19:8
assist 7:1
assistant 6:12
associated 21:10
ASSOCIATES 2:10
Atlanta 2:16
attorney 2:19 6:14 6:15
attorneys 4:11,13 6:1,7 9:1
aware 6:1,5,6

**B**

B 3:10

back 8:14 13:24
Barnard 7:5
base 14:2
based 8:1
basically 15:8
behalf 1:4 2:2
believe 6:8 19:16 19:18
Bennett 2:11 3:6 10:22 15:21 17:3 17:6 19:25
best 17:19
Boulevard 2:10
businesses 19:14

**C**

Cary 2:8
case 4:12,16 5:11 5:12 6:2,4 9:14,14 9:16,17,22 10:5 11:12,14,20 12:3 12:9,13 13:17 14:3,3,4,9,11,11 19:4,7
cases 6:21 11:7 19:5
certain 6:3 17:9,14 18:10,11
certify 21:5,9
CHANGES 22:2
charge 7:6
Charlottesville 21:14
circuit 5:21
civil 1:6 2:5 6:21
clarify 12:8
clerks 10:4,6,13
CMS 5:10,10,11
code 11:7 12:3,3
coded 14:10
codes 11:18
collection 10:12
comes 5:2 9:22
coming 8:18 10:25
commencing 2:7
commission 21:4 22:22
Commonwealth 2:4 21:1,3,22
complete 11:16
computer 6:16 11:2,24 12:1 15:7 15:13,17
concern 19:19
concerned 18:12
concerns 18:7,9
concluded 20:7
CONSUMER 2:10
consumers 6:3
contacted 6:2
contain 10:15
contents 18:2
continued 13:21
conversation 4:18
correct 4:17,20 9:25 10:3,10,17 11:3,4,8,9 12:4,5 12:24 13:3,7,9 14:8,12,15,22,25 15:15,18 16:7,8 16:12,15,18,21,24 17:2 21:8
cost 7:9 15:8
counsel 2:9,13,17 2:21 7:6 10:15 16:5 17:9,14,15 18:1 20:5 21:7,10
couple 10:23
court 1:1 2:3 4:13 4:25 5:2,8,15,19 6:22 10:2,4 12:21 21:2
courts 5:21,21 9:23 10:13
Court's 10:8
co-counsel 12:19
create 6:20 7:12,13
created 17:22
creating 7:7,9
criteria 19:6
CRR 1:25 22:25

**D**

D 3:2 15:16
data 8:22,25 10:5 10:12 11:1 15:10
database 6:21 10:1 10:8
date 13:20 22:18
dates 9:13
David 1:14 2:1 3:4 4:3,9 22:3
day 21:14
DEF 14:16
default 13:21
defendant 1:8 2:2 2:17 4:11 14:4,16 14:20 18:24 19:3 19:5,7,10,12
defendants 18:23 19:4
DEF1 15:12
DEF2 14:16
department 5:4
Deponent 2:21 20:2
deposition 1:13 2:1 17:24 20:7 22:2
Depositions 2:6
described 10:24
DESCRIPTION 3:11 22:7
detailed 5:23
determined 19:18
difference 15:9
different 8:1 9:15 9:18 12:13
difficulty 15:5,6
discuss 17:15
dismissed 9:20 11:22 12:3 14:3,6 14:9,14,24 17:1 18:25 19:11
DISP 14:11
disposition 12:3,9 12:13 14:11
dispositions 5:20
district 1:1,2 5:6,8 5:10,10,11,16,21 6:21 9:23 10:13
divine 13:12,16
DIVISION 1:3
document 12:19 16:4,19

Donna 1:4 4:12 11:5 12:17 14:14 14:24 19:19
duly 4:4

**E**

E 1:25 2:3 3:2,10 4:5 10:21 16:1,2 21:2,21 22:25
East 2:8,19
EASTERN 1:2
Eddie 6:8,10 7:10 7:15,23 8:14
effort 8:2
either 6:12,22
elements 8:19,22 11:2
employees 8:5,5 12:20
entered 10:5
entering 10:4
entry 10:12
Equifax 1:7 4:11
ERAUSQUIN 2:12
error 10:7
errors 10:11,16
ESQ 2:11,12,16,20
essentially 10:25
event 12:2 13:21 14:2,21 21:12
exact 6:24
exactly 8:16 13:17
Examination 3:5,6
examined 21:7
example 11:14 13:4 14:5
executive 5:1,3 6:12 12:21
exhibit 12:18 14:13
expense 15:3
expires 21:4 22:22
explained 18:10
expressed 19:19
extract 6:21
e-mail 6:8 7:16
e-mails 8:14,21

**F**

F 16:1

Case 3:10-cv-00107-REP   Document 77-23   Filed 11/23/10   Page 9 of 11

Page 24

| | | | | |
|---|---|---|---|---|
| **fact** 12:17 | **hire** 8:4 | **K** 1:4 | 9:17,22 10:5 | **occurred** 10:12 |
| **fair** 10:16 | **hold** 12:6 | **kind** 8:13 | **March** 13:20 | 11:11 |
| **familiar** 5:18 | **honest** 7:23 | **KING** 2:15 | **MARKED** 3:11 | **October** 1:15 2:7 |
| **far** 15:10 | **honestly** 19:21 | **know** 5:17 6:11,13 | **matter** 12:17 | 4:1 21:14 22:4 |
| **faster** 8:3 | **hourly** 8:1 | 6:14,15 7:10,13 | **MATTHEW** 2:12 | **offer** 12:17 |
| **federal** 4:12 | **hours** 7:11,12,24 | 9:6,9 11:14 12:8 | **McGuire** 2:7 | **offhand** 8:24 |
| **field** 14:10,20 15:1 | **husband** 14:6,6 | 13:15 18:21,21 | **mean** 12:6 13:20 | **Office** 2:19 5:1,3 |
| 15:2,11,12 | | 19:9 | 15:3,12 17:20 | **offices** 10:6 |
| **fields** 11:1 | **I** | **knowledge** 5:23,24 | **means** 11:8,10 | **official** 6:13 |
| **filed** 4:12 13:13 | **idea** 11:16 | 5:25 11:20 14:2 | 14:24 | **Okay** 4:21,25 6:19 |
| **final** 8:18,25 | **implement** 11:19 | **KUGELMAN** 2:20 | **meet** 17:14 | 12:15 15:7,10 |
| **find** 15:17 | **included** 13:8 15:5 | 17:19 | **meeting** 12:19 17:4 | **ones** 18:5 |
| **first** 4:4 12:25 | **including** 5:19 | | 17:18,24 | **organization** 15:10 |
| **follows** 4:4 | **indication** 16:10 | **L** | **members** 17:4 | **originally** 7:20 |
| **follow-ups** 16:4 | **individual** 12:12 | **language** 8:12 | **mentioned** 17:3 | **outcome** 17:15 |
| **foregoing** 21:7 | **individually** 17:24 | **large** 2:5 21:1,4,22 | **met** 4:19 | 18:2 |
| **forth** 8:14 13:5 | **individuals** 1:5 | **leader** 5:6,8,16 | **misinterpreting** | **outputted** 12:23 |
| **found** 19:3 | 19:14 | **left** 14:10 | 18:17 | **outside** 8:4 11:1 |
| **front** 8:21 13:24 | **information** 1:7 | **legal** 11:23 | **missing** 18:8 | **overall** 14:9 |
| **full** 21:8 | 6:3,7 9:21 10:1,14 | **LEONARD** 2:11 | **mistakes** 10:4 | **oversee** 5:9 |
| **full-time** 8:5 | **installation** 5:13 | **letter** 15:14,17 | **motion** 13:13 | |
| **further** 20:2 21:9 | **instance** 13:10,11 | **line** 13:18 | **multiple** 18:23 | **P** |
| | 14:23 | **list** 7:7,9 8:9,25 9:7 | | **page** 12:25 13:1,24 |
| **G** | **intense** 7:19 | 9:8,9,11,22 10:14 | **N** | **PAGE/LINE** 22:7 |
| **GA** 2:16 | **interested** 21:11 | 17:12,13,15,23 | **N** 3:2 4:5,5 10:21 | **participated** 12:22 |
| **garnishments** 13:8 | **interpret** 8:10,13 | 18:3,8,16 19:3,10 | 10:21 16:2,2 | **parties** 19:2 |
| **general** 2:19 5:11 | **interpreted** 15:2 | 19:13,14,20 | **name** 4:7,10 | **party** 21:10 |
| 5:21,23,25 6:21 | **interprets** 15:13 | **listed** 9:15,17 | **necessarily** 13:15 | **PAUL** 2:20 |
| 9:23 10:13 11:16 | **involvement** 8:8 | **LITIGATION** | **need** 11:19 15:20 | **paycheck** 5:2 |
| 14:4 18:5 | **issues** 8:17 | 2:10 | **neither** 21:9 | **Peachtree** 2:15 |
| **generally** 11:15 | | **LLC** 1:7 | **never** 4:19 | **people** 8:11 18:7 |
| **getting** 8:23 12:22 | **J** | **long** 5:14 | **Newport** 2:11 | **person** 4:19 12:22 |
| 17:23 | **J** 2:12,16 14:19 | **looking** 6:24 18:16 | **News** 2:11 | **personnel-wise** |
| **Given** 21:13 | 15:11 | 18:18 19:1 | **normal** 8:5,5 | 4:23 |
| **goes** 10:1 | **jargon** 8:12 | **lot** 7:18 8:2,3,13 | **notarial** 21:13 | **perspective** 15:11 |
| **going** 7:18 8:14,19 | **JDR** 5:11 | **Love** 2:16 3:5 4:6 | **Notary** 2:3 21:3,21 | **Plaintiffs** 1:6 2:13 |
| 13:17,24 | **job** 1:24 5:5,6,16 | 4:10 10:18 16:3 | 22:21 | **plaintiff's** 10:15 |
| **good** 6:11 | 7:12,13 | 17:7,8,25 19:23 | **noted** 14:21 | **please** 4:8 |
| **group** 5:24 6:16 7:1 | **JR** 2:20 | | **Notice** 2:6 | **portion** 5:9 |
| **guess** 13:12 | **judgment** 6:22,23 | **M** | **November** 21:5 | **position** 5:14 |
| **Gwenda** 1:25 2:3 | 9:13 11:11,15,21 | **M** 4:5 10:21 16:2 | **number** 1:6 3:11 | **post-judgment** |
| 21:2,21 22:25 | 12:12 13:1,21,21 | **Macon** 6:9,10,19 | 7:12 12:18 13:1 | 13:6,11 |
| | 14:2,21 16:7,10 | 7:10,15 8:14 | 13:19 21:23 | **prepared** 17:12,13 |
| **H** | 16:13,16,20,22,25 | **Main** 2:19 | **N.E** 2:15 | **preparing** 8:8 |
| **H** 3:10 16:1 | 18:18,25 19:1,15 | **maintained** 5:20 | | **price** 8:1 |
| **hand** 21:13 | **judgments** 5:19,20 | 10:2 | **O** | **primary** 13:24 |
| **heard** 9:8 | 9:13 18:15 | **Mamiko** 7:5 | **O** 4:5 10:21 13:22 | **prior** 14:1 |
| **help** 8:6 | | **manage** 5:12 | 16:2 | **probably** 15:9 |
| **helped** 8:10 | **K** | **management** 5:11 | **occur** 14:3,5 17:18 | |

| | | | | |
|---|---|---|---|---|
| **Procedure** 2:6 | 18:10,11,12,19 19:5 | 19:11,17 | **specifically** 19:1 | **thought** 7:18,22 8:3 18:17 |
| **proceeding** 21:11 | **satisfieds** 9:13 18:18 | **spoke** 4:15 | **time** 4:16 8:2 15:3 15:7,22 |
| **process** 8:6 | **referring** 18:6 | **Savage** 1:14 2:1 3:4 4:3,9,10 22:3 | **standpoint** 11:23 11:24 | **timeframe** 6:23,24 |
| **processing** 7:2 | **reflect** 12:2 | **says** 14:10 | **state** 4:7,21 5:22 6:2,3 7:6 9:23 10:7 | **title** 5:5,6 6:13 |
| **produced** 9:2 10:15 | **reflects** 14:13 | **screen** 13:1,2,19,25 16:5 | **Tony** 4:10 |
| **programmer** 6:16 11:17 | **Registration** 21:23 | **STATES** 1:1 | **top** 14:16 |
| **related** 6:4 19:4,6 21:10 | **seal** 21:13 | **state's** 11:2 | **transcribed** 2:2 |
| **programming** 5:9 5:13 8:2 | **remarks** 13:12 | **search** 8:18 15:12 15:16,19 17:16 18:2 | **status** 9:15,18,19 9:20 | **transcript** 21:8 |
| **project** 7:20 | **remember** 6:24 7:16 18:15 19:21 19:22 | **streamline** 7:19 | **translate** 10:25 |
| **projected** 7:18,24 | **searched** 15:11 | **Street** 2:8,15,19 | **translated** 11:7 |
| **provide** 6:3 | **second** 13:1 | **structural** 15:4 | **transmitted** 10:8 |
| **Public** 2:4 21:3,21 22:21 | **REPORTED** 1:25 22:25 | **secretary** 5:1,3 6:12 12:21 | **sub** 13:19 | **true** 21:7 |
| **Reporter** 2:3 21:2 | **submit** 8:11 | **turned** 18:19 |
| **pursuant** 2:5 | **representatives** 8:15 | **section** 13:12 | **sub-filing** 13:5 | **two** 5:10 |
| **put** 7:10 19:13 | **see** 13:13,14 14:17 | **Suite** 2:10 | **type** 12:2 13:4 |
| **puts** 7:25 | **representing** 4:11 | **sent** 7:16 12:19 | **supreme** 4:25 5:2,8 5:15 10:2,8 12:21 | **types** 5:19 10:11 |
| **putting** 12:2 | **request** 6:6,25 7:2 7:25 8:10,16 9:12 10:25 11:6 | **served** 10:25 | | ——— |
| **P.C** 2:10 | **SERVICES** 1:7 | **sure** 7:15 8:15,22 8:23 12:10 18:21 | **U** |
| **p.m** 1:16,16 2:7 4:1 20:7 | **shot** 16:5 | | **U** 16:1 |
| | **requested** 6:2 9:1 15:1 17:13 22:2 | **show** 13:18,19 16:6 16:13,16,19,22 | **sworn** 4:4 21:6 | **understand** 12:10 12:18,25 15:3 |
| ——— | **system** 5:11,12 9:17 10:6 11:1,2 11:24 12:1 | **understanding** 11:17 |
| **Q** | **requirements** 11:18 | **showed** 19:10 |
| **queries** 8:11 | **shows** 16:25 | **understood** 8:23 |
| **query** 6:20 | **responsibilities** 5:7 | **SIGNATURE** 20:4 22:19 | **systems** 5:10,10,13 9:22 | **UNITED** 1:1 |
| **question** 6:11 11:24 19:9 | **responsible** 5:12 | | **use** 8:11 |
| **review** 8:25 | **Similarly** 1:5 | ——— | **usually** 8:11 |
| **questions** 8:20,21 10:18 11:5 15:21 18:1,5 19:24 | **reviewed** 9:4 | **simply** 15:2 | **T** | ——— |
| **Richmond** 1:3,17 2:8,20 | **sir** 5:5,18 | **T** 3:10 4:5 10:21 16:1,2 | **V** |
| **Situated** 1:5 | **v** 1:6 |
| **quite** 7:23 | **right** 4:16 5:5,18 7:14,15 8:22 9:24 10:9 11:8,10 12:14 13:10,22 14:9,16,19 16:11 16:14,20 17:10,22 | **slew** 19:4 | **take** 2:6 7:25 15:7 | **VA** 2:11,20 |
| ——— | **sooner** 8:3 | **taken** 2:1 22:4 | **vacate** 13:13 15:2 |
| **R** | **sort** 13:5 | **talked** 14:1 | **vacated** 6:22 9:12 11:21,22 12:8 16:20,23 18:14,20 18:24 19:1,10,15 |
| **R** 16:1,1 | **sound** 7:14 | **team** 5:6,8,16 17:5 17:13 |
| **ran** 8:2 | **Soutter** 1:4 4:12 9:6 11:6 12:17 14:14,24 16:6,14 16:17,20 17:11 19:20 | **technical** 15:5 |
| **rate** 8:1 | **role** 10:24 | **telephone** 4:15 |
| **ready** 17:23 | **RPR** 1:25 22:25 | **tell** 11:18 | **vacates** 11:6 |
| **really** 5:1,17 12:12 | **Rule** 2:5 | **terms** 8:18 | **vacation** 11:15 |
| **reason** 18:15,21 19:8 | **Rules** 2:5 | **testified** 4:4 | **values** 15:12 |
| **run** 7:13 8:2 | **Soutter's** 4:13 6:1,7 7:6 8:15 9:1,14 16:5 17:5,14 18:1 | **testimony** 21:8 | **various** 10:6 |
| **recall** 8:24 | ——— | **Thank** 10:19 19:23 19:25 | **Virginia** 1:2,17 2:4 2:8 5:22 6:2 9:24 10:2,7,8,14 21:1,4 21:14,22 |
| **received** 11:6 18:9 18:11,14 | **S** |
| **receiving** 18:13 | **S** 3:10 | **space** 18:25 |
| **recollection** 8:17 17:20 18:4 | **SAITH** 20:2 | **SPALDING** 2:15 | **thereof** 21:12 |
| **SPALDING** 2:15 | **things** 7:17 | ——— |
| **satisfied** 6:23 16:14 16:17 18:20 19:1 | **specific** 8:24 9:12 14:20 | **think** 13:25 18:16 | **W** |
| **record** 4:7 12:18 16:13 | | | | **WAIVED** 20:4 |
| **records** 5:19 16:9 | | | | |

**want** 8:13 12:6,8,9 15:17
**wanted** 8:16 19:2,3 19:9
**Warwick** 2:10
**wasn't** 9:9,11 17:6 19:11
**way** 7:17 12:1 17:12
**week** 12:21 17:21 17:22
**weren't** 18:19 19:10,11
**we're** 8:12
**we've** 4:18,19 12:16 13:25
**wife** 14:6,7
**wit** 21:1
**witness** 3:3 12:7 17:21 20:4,5
**witnesses** 14:1
**Woods** 2:8
**work** 4:21,25 5:3
**working** 5:15
**works** 6:11
**wouldn't** 13:15 15:9

**X**
**X** 3:2,10 4:5 10:21 16:2

**Y**
**years** 5:17

**Z**
**zero** 13:19

**$**
**$2,400** 7:14

**0**
**00** 12:25
**01** 13:2,4,19
**02** 13:5
**08** 13:20

**1**
**1** 14:16
**10** 3:6
**100** 2:10
**115863** 21:23
**1180** 2:15
**12515** 2:10
**15** 5:17
**16** 3:5
**16,000** 18:14
**1982** 5:16

**2**
**2** 12:18
**2:04** 1:16 2:7 4:1
**2:21** 1:16 20:7
**20th** 13:20
**20,000** 7:22
**2010** 1:15 2:7 4:1 21:15 22:4
**2013** 21:5
**23219** 2:20
**23606** 2:11

**3**
**3:10cv107** 1:7
**30** 2:5 21:5
**30309** 2:16
**33526** 1:24

**4**
**4** 3:5

**6**
**6** 1:15 2:7 4:1 22:4

**8**
**8th** 21:14

**9**
**900** 2:19
**901** 2:8