IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

MAR 3 0 2011

DONNA K. SOUTTER, *For herself*
*and on behalf of all similarly*
*situated individuals,*

      Plaintiff

v.

                              Civil Action No.: 3:10cv107

EQUIFAX INFORMATION
SERVICES, LLC,

      Defendant.

## MEMORANDUM OPINION

This matter is before the Court on PLAINTIFF'S MOTION FOR CLASS CERTIFICATION (Docket No. 72). For the reasons that follow, the motion is GRANTED.

## BACKGROUND

### A.   The Proposed Class and Class Claims

Plaintiff Donna K. Soutter filed a Class Complaint on behalf of herself and other similarly situated individuals against Equifax Information Services, LLC ("Equifax") for violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681, et. seq. An Amended Complaint soon followed, adding Tony Webb as a Plaintiff. The Court subsequently granted Webb's motion to sever Counts Two and Three from the Amended Complaint and transfer them to the Eastern District of Pennsylvania. On

October 29, 2010, Soutter filed a Motion for Class Certification. The proposed class is defined as follows:

- All natural persons;

- For whom Equifax's records note that a credit report was furnished to a third party who requested the credit report in connection with an application for credit, on or after February 17, 2008 to the present;

- Other than for an employment purpose;

- At a time when any Virginia General District Court or Circuit Court judgment that had been satisfied, appealed, or vacated in the court file more than 30 days earlier was reported in Equifax's file as remaining unpaid;

- Which persons suffered actual damages less than $1,000 as a result of an erroneous report by Equifax.

Count One of the Amended Complaint alleges:

- Equifax violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the consumer reports it furnished regarding the Plaintiff and other class members;

- As a result of Equifax's conduct, actions, and inactions as alleged in Count One, the Plaintiff and other class members suffered credit score damage;

- Equifax's violation of 15 U.S.C. § 1681e(b) was willful, rendering Equifax liable under 15 U.S.C. § 1681n, or, in the alternative, Equifax was negligent, entitling the Plaintiffs to recover under 15 U.S.C. § 1681o.

B.   **Equifax's Collection of Information Through the use of Public Records Vendors**

Equifax is a consumer reporting agency. In its credit reports, Equifax reports whether individuals have had judgments

2

entered against them.   Equifax obtains that information by contracting with a public records vendor that specializes in gathering information related to court filings.   The use of a public records vendor is a standard practice in the consumer reporting industry, and Equifax has maintained relationships with such vendors since at least the 1980s.

Since February 2007, Equifax has used LexisNexis as its public records vendor in Virginia.   The contract between the two parties requires LexisNexis to meet certain quality and performance standards and to comply with all applicable laws and regulations.   Equifax claims that it also performs certain data quality checks of the information provided by its public records vendors.

In Virginia, LexisNexis collects information about all civil judgments entered in cases in the general district courts, and a small number of judgments from the circuit courts. Soutter alleges that, sometime after 2006, Equifax and its vendors stopped the more careful process of in-person manual reviews of civil courthouse records, a process which had been in effect for some considerable time, and began collection of judgment information solely from automated resources.   Both Soutter and Equifax agree that, when the change in method occurred, the Supreme Court of Virginia provided information

3

about district court judgments in bulk by way of electronic media. From the bulk feed, LexisNexis received the court name, case number, name and address of the defendant, name and address of the plaintiff, date filed, and judgment amount.

In addition to information provided by way of the bulk feed, Equifax asserts that LexisNexis also used independent contractors to perform in-person review of source documents at courthouses using a variety of methods. On this point, Equifax describes the variable access given to data collectors at the different courthouses and the fact that some courts use varied terminology and different forms of order to report "dispositions" of judgments. The term "dispositions" means whether a judgment has been satisfied, vacated, appealed, or otherwise had its effect terminated. LexisNexis, according to Equifax, also retrieved selected information about dispositions from the Supreme Court of Virginia's public access website. However, in December 2009, the Supreme Court of Virginia altered the access procedures for its website, thereby preventing the ability of LexisNexis to use the site.

Soutter alleges, that, at least since 2007, Equifax has not once sought to purchase data about satisfied, vacated or appealed judgments. Soutter further alleges that, under the terms of the contract between LexisNexis and Equifax, while

4

LexisNexis was obligated to collect and report the existence of judgments, it only was obligated to collect information about the disposition of judgments if LexisNexis determined that it was "commercially reasonable" to do so.  According to Soutter, LexisNexis never concluded that it was commercially reasonable to collect and report dispositions of judgments.

In order to demonstrate that Equifax was aware of the procedures used by LexisNexis to gather Virginia judgment records, Soutter cites a requirement in Equifax's contract with LexisNexis that required LexisNexis to apprise Equifax of its procedures, and any changes to those procedures, and an email exchange between LexisNexis and Equifax when LexisNexis learned that it would no longer be allowed to buy judgment records in bulk.  The contract plus the email exchange establish, according to Soutter, that Equifax was fully aware that it was not receiving information about satisfied, vacated, appealed or otherwise terminated judgments, and that access to the records of the district courts had been updated to a "Limited Access" status.

Soutter also alleges, that Equifax was aware that LexisNexis was having difficulty processing judgment records in a timely fashion, and ultimately became unable to obtain them at all at a certain point, the result being that Equifax did not

receive, or add to its files, any judgment records for over a year. That circumstance did not end until sometime in 2010. When, thereafter, LexisNexis did receive a large batch of termination records, Equifax refused to purchase them because the purchase price exceeded the amount Equifax had budgeted for that purpose, according to Soutter.

Soutter alleges that Equifax's conduct in seeking out, purchasing, and then integrating the judgment records into its credit reports, when it had no means to ensure the accuracy of that information, was unreasonable and willfully so.

## C.  Class Representative -- Donna Soutter

Donna Soutter is a Virginia resident who had a Visa Platinum credit card with Virginia Credit Union ("Credit Union"). In June 2007, Soutter, a self-employed court reporter, became sick, was unable to work and fell behind on her payment obligations. At that time, she owed approximately $15,000 to the Credit Union, which then sued Soutter in the General District Court for the City of Richmond by filing a Warrant in Debt on June 21, 2007. Shortly thereafter, she resolved the matter by entering into a payment plan with the Credit Union. However, the Credit Union failed to communicate the settlement to its attorney. As a result, the attorney obtained an uncontested civil judgment against Soutter on January 29, 2008

6

in the amount of $14,403.79.  Soutter learned about the mistake when she received a copy of the judgment by mail, and she immediately contacted the Credit Union to have the matter corrected.  Counsel for the Credit Union then filed a motion to have the judgment set aside, and the court entered an order on March 20, 2008 setting the judgment aside and dismissing the action without prejudice.  Soutter concedes that the judgment was not appealed or marked "satisfied."  The case was reported as dismissed.

Soutter then sent Equifax a letter to ensure that it did not report the judgment as unpaid.  She explained that the judgment had been entered against her in error, and she also enclosed a copy of the order setting it aside and dismissing the case.  Equifax responded on May 23, 2008, informing her that it was not reporting the judgment on her credit file.  Soutter alleges that, by July 2008, Equifax in fact was reporting the judgment as unpaid and not vacated.[1]  Soutter sent a second letter to Equifax on December 28, 2008 after she was denied credit because of an Equifax report.  In that letter, she disputed the judgment and again enclosed the order setting it aside.  In response, Equifax sent Soutter a letter on December

---

[1]     Technically, Soutter's judgment was set aside and dismissed, not vacated.

30, 2008 advising her that the judgment had been removed from her credit file.[2]   All told, Equifax furnished at least three credit reports with the inaccuracy.   Soutter's brief calls these "hard inquiry" reports which, in the trade usage, means reports made in response to a request by a credit card company or lender in connection with an application for credit that a consumer made to the requesting credit card company or lender.[3]

In addition to this action, Soutter previously has filed separate actions in this Court against Experian Information Solutions, Inc. and Trans Union LLC, asserting similar claims that arose from the same set of events.   Soutter settled with Experian for an undisclosed sum of money, dismissed the case, and did not seek class certification.   To date, she has not served Trans Union.

---

[2]     Consumers who believe that a judgment is being inaccurately reported in their credit files can dispute the entry with Equifax.   If Equifax receives such a dispute, it contacts the public records vendor, which then contacts the original sources of the information, reviews the information, and reports the results to Equifax.   Equifax asserts that, if a dispute is lodged, it requires the public records vendor to verify all information from the "primary source," defined as the courthouse from which the record was obtained. Def.'s Resp. in Opp'n to Mot. for Class Certification at 5.

[3]   In contrast, a "soft inquiry," though not at issue in this case, is an inquiry that is not made in connection with any application for credit.   And, when a consumer requests her own credit report or credit score, that is not treated as an inquiry at all.

## D.   The Class Claim Under the FCRA

"Congress enacted FCRA in 1970 to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." Safeco Ins. Co. of Am. v. Burr, 551 U.S. 47, 52 (2007); see also Saunders v. Branch Banking & Trust Co. of Va., 526 F.3d 142, 147 (4th Cir. 2008). "To this end, [the] FCRA requires [consumer reporting agencies] to follow procedures in reporting consumer credit information that both 'meet[] the needs of commerce' and are 'fair and equitable to the consumer.'" Saunders, 526 F.3d at 147 (third alteration in original) (quoting 15 U.S.C. § 1681(b)).

Souter claims that Equifax violated § 1681e(b) of the FCRA, which provides that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b). A consumer reporting agency violates § 1681e(b) if:   (1) the consumer report contains inaccurate information, and (2) the reporting agency did not follow reasonable procedures to assure maximum possible accuracy. Dalton v. Capital Associated Indus., Inc., 257 F.3d 409, 415 (4th Cir. 2001). More specifically, Souter alleges that Equifax systematically ignored hundreds of thousands of

public records showing that Virginia civil judgments had been satisfied, vacated, or appealed.   Souter claims that Equifax did not obtain any judgment dispositions for at least one year before 2010, and that, before then and to the present, "Equifax so inadequately incentivized its agents to collect such [disposition] records that they were often simply ignored." Pl.'s Mem. in Supp. of Mot. for Class Certification at 1.   In addition, Souter asserts that Equifax "concedes that it has never in its known history reviewed, audited, or otherwise sought to determine if its [third] party agents were adequately collecting such records," id. at 1-2, notwithstanding Equifax's claim that it "performs certain data quality checks of the information provided by the [public records vendor]," Def.'s Resp. in Opp'n to Mot. for Class Certification at 5.

## CLASS CERTIFICATION DISCUSSION

To obtain class certification, a plaintiff must satisfy the four prerequisites of Fed. R. Civ. P. 23(a).   The case must be consistent with at least one of the classes defined in Fed. R. Civ. P. 23(b).   Each will be addressed in turn.

## A. Rule 23(a)

Rule 23(a)'s four prerequisites for class certification are that:   (1) the class is so numerous that joinder of all members

10

is impracticable; (2) there are questions of law or fact common to the class; (3) the representative's claims or defenses are typical of those of the class; and (4) the representative will fairly and adequately represent the interests of the class.  See Broussard v. Meineke Disc. Muffler Shops, Inc., 155 F.3d 331, 337 (4th Cir. 1998) (noting that every class action must satisfy the four requirements of Rule 23(a): numerosity, typicality, commonality, and adequacy of representation, with "the final three requirements . . . 'tend[ing] to merge'" (quoting Gen. Tel. Co. of Sw. v. Falcon, 457 U.S. 147, 157 n.13 (1982))).

The plaintiff bears the burden of proving all requirements of Rule 23.  Lienhart v. Dryvit Systs., Inc., 255 F.3d 138, 146 (4th Cir. 2001).  The Court is not required "to accept plaintiffs' pleadings when assessing whether a class should be certified."  Gariety v. Grant Thornton, LLP, 368 F.3d 356, 365 (4th Cir. 2004).  Rather, "[a]t the class certification phase, the district court must take a 'close look' at the facts relevant to the certification question and, if necessary, make specific findings on the propriety of certification."  Thorn v. Jefferson-Pilot Life Ins. Co., 445 F.3d 311, 319 (4th Cir. 2006) (quoting Gariety, 368 F.3d at 365).  "Such findings can be necessary even if the issues tend to overlap into the merits of the underlying case," but "[t]he likelihood of the plaintiffs'

11

success on the merits . . . is not relevant to the issue of whether certification is proper." Id. (internal citations omitted).

## 1. Ascertainability of the Proposed Class

In addition to the explicit requirements in Rule 23(a), "the definition of the class is an essential prerequisite to maintaining a class action." Roman v. ESB, Inc., 550 F.2d 1343, 1348 (4th Cir. 1976); see also Kirkman v. N.C. R. Co., 220 F.R.D. 49, 53 (M.D.N.C. 2004). "The court should not certify a class unless the class description is 'sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member.'" Solo v. Bausch & Lomb Inc., C/A Nos. 2:06-MN-77777-DCN, 2:06-CV-02716-DCN, 2009 WL 4287706, at *4 (D.S.C. Sept. 25, 2009) (quoting 7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice & Procedure § 1760 (3d ed. 2005)). "The proposed class definition must not depend on subjective criteria or the merits of the case or require an extensive factual inquiry to determine who is a class member." Cuming v. S.C. Lottery Comm'n, Civ. A. No. 3:05-cv-03608-MBS, 2008 WL 906705, at *1 (D.S.C. Mar. 31, 2008) (citing In re Copper Antitrust Litig., 196 F.R.D. 348, 353 (W.D. Wis. 2000)); see also Wm. Moore et al., 5 Moore's Federal Practice § 23.21[1] (3d ed.) ("A class action is possible only

12

when the class definition provides a court with tangible and practicable standards for determining who is and who is not a member of the class."). Rather, "[f]or a class to be sufficiently defined, the court must be able to resolve the question of whether class members are included or excluded from the class by reference to objective criteria." Moore, supra, § 23.21[3][a]. "Where the practical issue of identifying class members is overly problematic, the court should consider that the administrative burdens of certification may outweigh the efficiencies expected in a class action." Cuming, 2008 WL 906705, at *1.

Equifax challenges the ascertainability of Soutter's proposed class definition in two ways. Equifax first argues that data supplied to Soutter by it in discovery and evidence obtained from the Supreme Court of Virginia does not identify members of the class. This contention was spawned as a result of evidence that Soutter offered to demonstrate numerosity and ascertainability in her opening brief. There, Soutter cited three sets of data: (1) Equifax's production of the names and addresses of consumers who, during the previous two years, disputed Virginia civil judgments upon the basis that the judgment had been satisfied, vacated, or appealed; (2) a list of consumers from three sample Virginia zip codes who had a

13

Virginia judgment in their Equifax file; and (3) a database of information Soutter's counsel requested from the Supreme Court of Virginia that contains each judgment satisfaction record and many of the vacated and appealed judgments in the state's judicial computer system.

With respect to the last set of data, Soutter claims that "[i]t is a simple exercise to compare judgment records in Equifax's files against the Supreme Court [d]atabase to determine which Equifax records continued to omit the accurate current status." Pl.'s Mem. in Supp. of Mot. for Class Certification at 12. In addition, she says that it is a simple "mathematical exercise to measure the length of delay between the date that the judgment was terminated (marked satisfied, vacated, or appealed) in the Court records and the month it was later updated by Equifax." Id. at 13.

In challenging the data, Equifax points out that Soutter's name does not appear in any of the three sets of data. Thus, how, says Equifax, can a class be ascertained and identified if Soutter's name does not appear in any of the data sets she has proffered as representative of her ability to define a class?

Soutter's name is not on the first data set because Equifax never annotated her credit file with a dispute code because it resolved her letter challenging the Credit Union judgment based

14

on the documents she provided to Equifax.   Her name does not appear on the second data set because the judgment was deleted from her file in December 2008 before the data at issue was produced.   Finally, her name does not appear on the third data set because she made no request for information from the Supreme Court of Virginia about dismissed judgments after Equifax agreed not to report the Credit Union judgment.

Souter acknowledges that the data sets are incomplete, explaining that they were obtained in the current form only: (1) to show that certain categories of data exist electronically; (2) to illustrate the breadth of the problem; and (3) to illustrate the numerosity of the proposed class. Souter has explained why her name is not in any of the data sets for logical reasons that do not in any way undermine use of the data to determine numerosity.   Furthermore, as to the third data set of which Equifax complains, Souter represents that the "full set of judgment data, without the data code limitations that resulted in the exclusion of the Plaintiff's name from the list, is available from the Virginia Supreme Court upon request and payment."   Id. at 9.   Her counsel represents that the full data set will be purchased and that counsel will simply design a more complete and final data request to submit to the Supreme Court of Virginia.   That puts to rest the aspect of the Equifax

15

argument based on the third data set.  In sum, the arguments of Equifax on those points are without merit.

The degree of precision that Equifax attempts to place on Soutter in ascertaining class members simply is not required in order to certify a class.  A "class does not have to be so ascertainable that every potential member can be identified at the commencement of the action," because "'[t]o place such a burden on plaintiffs would seem harsh and unnecessary . . . [and] make the maintenance of class actions . . . very difficult, if not impossible . . . .'"  Wright, Miller & Kane, supra, § 1760 (quoting Fischer v. Kletz, 41 F.R.D. 377, 384 (S.D.N.Y. 1966)).  Soutter's proposed class definition sets forth objective parameters with which a class can be ascertained and identified: either an individual has had a Virginia judgment, or not; either an individual has had that judgment modified, satisfied, vacated, appealed, dismissed or otherwise extinguished, or not; either Equifax reported the judgment, or it did not; and either Equifax reported the update to the judgment, or it did not.  Thus, Equifax's first argument on ascertainability fails.

Equifax's second argument challenging ascertainability is equally unavailing.  In that argument, Equifax contends that Soutter's proposed exclusion of those individuals who have

16

suffered actual damages in excess of $1,000 because of Equifax's alleged FCRA violations would allow putative class members to self-identify. Self-identification would be problematic, according to Equifax, because it would allow class members to await resolution of the case before they decide whether to include themselves in the class. In this case, an exclusion of class members who have suffered actual damages in excess of $1,000 is not required in order to ascertain the class. Instead, allowing putative class members to opt-out under Rule 23 will be a sufficient mode to permit those who have suffered actual damages greater than $1,000 to seek redress from Equifax in other litigation. Therefore Equifax's second challenge to ascertainability will be rejected.[4]

## 2. Rule 23(a)(1) Numerosity

Rule 23(a)(1) provides that one of the requirements for a class action is that the class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "No specified number is needed to maintain a class action under Fed. R. Civ. P. 23; [rather], application of the rule is to be

---

[4] Equifax also maintains in its papers that a class cannot be ascertained because the class definition wrongly assumes homogeneity in court processes, disposition volumes, and pick-up frequencies. That argument must be addressed in another context, but it does not bear on the ascertainability requirement.

17

considered in light of the particular circumstances of the case
. . . ." <u>Cypress v. Newport News Gen. & Nonsectarian Hosp.
Ass'n</u>, 375 F.2d 648, 653 (4th Cir. 1967).

Soutter argues that the proposed class is more than
sufficiently numerous to make joinder impracticable.  In support
of this assertion, she cites Equifax's stipulation that the
class size is at least 300.  Equifax does not dispute that
statement.  A class of 300 members is sufficient to make joinder
impracticable.[5]  Thus, Soutter has established the numerosity of
the proposed class.

3.    Rule 23(a)(2) Commonality

Rule 23(a)(2) requires that there be questions of law or
fact common to the class.  Fed. R. Civ. P. 23(a)(2); <u>Lienhart v.
Dryvit Sys., Inc.</u>, 255 F.3d 138, 146 (4th Cir. 2001).   The
commonality requirement focuses on the claims of the class as a
whole, and it "turn[s] on questions of law [or fact] applicable
in the same manner to each member of the class." <u>Califano v.
Yamasaki</u>, 442 U.S. 682, 701 (1979).   To satisfy this
requirement, there need be only a single issue common to the

---

[5]    In her reply brief, Soutter points to data that Equifax
provided late in Phase I discovery that supports a conclusion
that, in reality, approximately 304,000 Virginians currently
remain subject to Equifax's inaccurate credit reporting of civil
judgments.   Pl.'s Reply Mem. in Supp. of Mot. for Class
Certification at 1.

class. See Cent. Wesleyan Coll. v. W.R. Grace & Co., 143 F.R.D. 628, 636 (D.S.C. 1992), aff'd 6 F.3d 177 (4th Cir. 1993).

In this case, Souter alleges that her claim presents a number of common issues of law or fact. These questions include:

1. Were Equifax's procedures for reporting Virginia civil judgments and judgment dispositions unreasonable?

2. Did these procedures violate § 1681e(b)?

3. Were credit reports that omitted the current status of a terminated judgment inaccurate?

4. Were Equifax's FCRA violations willful?

5. If Equifax's FCRA violations were willful, what is the proper damage measure per violation?

Pl.'s Mem. in Supp. of Mot. for Class Certification at 17.

These factual and legal issues are necessary to the resolution of the litigation and are common to all putative class members. Furthermore, Equifax does not contest that Souter is able to satisfy the commonality prerequisite. Nonetheless, the Court must be satisfied that all prerequisites to certification are satisfied, and the record here shows that the commonality requirement is met.

### 4. Rule 23(a)(3) Typicality

While the numerosity and commonality prerequisites focus on the characteristics of the class members in comparison to each

19

other, the typicality prerequisite focuses on the general similarity of the named representative's legal and remedial theories to those of the proposed class. See <u>Jenkins v. Raymark Indus., Inc.</u>, 782 F.2d 468, 472 (5th Cir. 1986). The Fourth Circuit has described the typicality requirement as follows:

> The typicality requirement goes to the heart of a representative [party's] ability to represent a class, particularly as it tends to merge with the commonality and adequacy-of-representation requirements. The representative party's interest in prosecuting [her] own case must simultaneously tend to advance the interests of the absent class members. For that essential reason, plaintiff's claim cannot be so different from the claims of absent class members that their claims will not be advanced by plaintiff's proof of [her] own individual claim. That is not to say that typicality requires that the plaintiff's claim and the claims of class members be perfectly identical or perfectly aligned. But when the variation in claims strikes at the heart of the respective causes of actions, we have readily denied class certification. In the language of the Rule, therefore, the representative party may proceed to represent the class only if the plaintiff establishes that [her] <u>claims or defenses</u> are typical of the <u>claims or defenses</u> of the class.

<u>Deiter v. Microsoft Corp.</u>, 436 F.3d 461, 466-67 (4th Cir. 2006) (emphasis in original) (internal citations and quotation marks omitted). Thus, the appropriate analysis of typicality "involve[s] a comparison of the plaintiffs' claims or defenses

with those of the absent class members." Id. at 467. "To conduct that analysis, [the district court] begin[s] with a review of the elements of [the plaintiff's] prima facie case and the facts on which the plaintiff would necessarily rely to prove it." Id. Then, the district court must determine "the extent to which those facts would also prove the claims of the absent class members." Id.

To establish a violation of § 1681e(b), Soutter must prove two elements: (1) her consumer report contained inaccurate information; and (2) Equifax failed to follow reasonable procedures to assure maximum possible accuracy. Dalton v. Capital Associated Indus., Inc., 257 F.3d 409, 415 (4th Cir. 2001). "A report is inaccurate when it is 'patently incorrect' or when it is 'misleading in such a way and to such an extent that it can be expected to [have an] adverse []' effect." Id. (alterations in original) (quoting Sepulvado v. CSC Credit Servs., 158 F.3d 890, 895 (5th Cir. 1998)). Plaintiff bears the burden under § 1681e(b) of demonstrating that the consumer reporting agency did not follow reasonable procedures, though in the overwhelming majority of cases, this will be a jury question. Id. at 416.

According to Equifax, Soutter is not a typical class for the reason that the facts needed to prove the inaccuracy of

her credit report will not advance the claims of absent class members because examination of individual court records and credit files will be required for each class member. In addition, Equifax asserts that the variety of procedures used in Virginia courts and by LexisNexis to gather information means that, even if Soutter can prove inaccurate reporting and unreasonable procedures in her specific case, the procedures may not be unreasonable with respect to other putative class members.

In response, Soutter has shown that examination of thousands, potentially hundreds of thousands, individual credit files will not be necessary because she can present a specific and detailed search request to the Supreme Court of Virginia that would encompass all judgment dispositions. The Executive Secretary of the Supreme Court of Virginia maintains a database that records electronically a judgment, satisfaction, vacation, dismissal, or appeal when it is entered in the court file the same day. It is then a matter of comparing relatively few data fields to determine whether the judgment disposition event occurred more than 30 days before the "snapshot date," i.e., the date on which Equifax takes a snapshot of a consumer's file at one discrete minute in time each month. Pl.'s Mem. in Supp. of Mot. for Class Certification at 14. Thus, comparison of the

22

Supreme Court of Virginia database with Equifax's records will prove the inaccuracy of Soutter's credit report as well as the inaccuracy of the putative class members' consumer reports and thus advance the interests of the class. This will not be an insubstantial undertaking, but it is sufficient to establish typicality.

With respect to the second element of a § 1681e(b) claim, Soutter is challenging Equifax's alleged uniform failure to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the consumer reports it furnished regarding Soutter and other class members. Equifax's knowledge of the allegedly unreasonable uniform procedures used by LexisNexis, the actual vendor collecting the information, was the same for Soutter, as for the class. Thus, the evidence Soutter would offer to prove the second element of the § 1681e(b) claim would also advance the claims of the other putative class members.

Equifax contends that some courts follow different procedures than others in the recording of judgment satisfactions, vacations, and appeals and that those differences foreclose a finding of typicality. Equifax offered no evidence to support this contention. Moreover, the substantive issue is not how the clerks of court do their jobs. The focus, instead,

is on what the official court records show once the clerks have made the entries respecting dispositions of judgments and when those entries were made. That information is readily obtainable from the Supreme Court of Virginia's database. Hence, the differences to which Equifax points do not stand as an impediment to a finding that the typicality requirement is met.

In sum, the record shows that Soutter's claim is typical of other class members' claims.

## 5.   Rule 23(a)(4) Adequacy of Representation

The adequacy of representation prerequisite requires the Court to be satisfied that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).   This standard is met if "the named plaintiff has interests common with, and not antagonistic to, the [c]lass' interests; and . . . the plaintiff's attorney is qualified, experienced and generally able to conduct the litigation."   In re Se. Hotel Props. Ltd. P'ship Investor Litig., 151 F.R.D. 597, 606-07 (W.D.N.C. 1993).

Taking the second part of the standard first, the Court finds that Soutter's counsel is qualified, experienced, and able to conduct this litigation.   Counsel is experienced in class action work, as well as consumer protection issues, and has been approved by this Court and others as class counsel in numerous

cases.    Furthermore,   Equifax   does   not   contest   Soutter's counsel's adequacy.

Equifax, however, does mount a challenge to Soutter's adequacy as representative for the class.    The adequacy prerequisite seeks to ensure that the named plaintiff will protect the class in matters germane to the claims in the litigation, and it also looks to the personal characteristics of the named plaintiff to see whether he or she is a fit representative.   See Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 625-26 (1997).   "The premise of a class action is that litigation by representative parties adjudicates the rights of all class members, so basic due process requires that named plaintiffs possess undivided loyalties to absent class members." Broussard v. Meineke Disc. Muffler Shops, Inc., 155 F.3d 331, 338 (4th Cir. 1998).

First, Equifax argues that Soutter is not an adequate representative because she previously settled her case against Experian and dismissed the class claim in that case.   However, Equifax has failed to explain why Soutter's settlement of her claim against Experian renders her an inadequate representative in this litigation.   Furthermore, unlike this case, Soutter's case against Experian alleged an individual dispute

reinvestigation claim under § 1681i(a),[6] and the case occurred at a point in time at which Soutter's counsel had far more limited knowledge respecting Experian's source of information from public records.  In that case, Soutter, to avoid any suggestion of impropriety, also dismissed her own claim under § 1681e(b) with prejudice and the class claim without prejudice.  For the foregoing reasons, Equifax's challenge to Soutter's adequacy as a class representative fails on this point.

Equifax also claims that Soutter does not satisfy the adequacy of representation prerequisite because she has a conflict of interest with the absent class members.  This is so,

---

[6]    This section of the FCRA states:

>    Subject to subsection (f) of this section, if the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer and the consumer notifies the agency directly, or indirectly through a reseller, of such dispute, the agency shall, free of charge, conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file in accordance with paragraph (5), before the end of the 30-day period beginning on the date on which the agency receives the notice of the dispute from the consumer or reseller.

15 U.S.C. § 1681i(a).

26

argues Equifax, because Soutter has unilaterally capped any putative class member's recovery by asserting only statutory and punitive damages, and therefore is waiving actual damages as to herself and the putative class members. By choosing not to pursue actual damages for herself or on behalf of the class, Equifax argues that Soutter is in conflict with those in the class who may want to pursue actual damages. Furthermore, allowing opt-out, according to Equifax, will not ameliorate the problem with respect to those putative class members with significant actual damages claims under § 1681e(b) because, if that were the law, then there would be no need for Rule 23(a)(4). Soutter asserts that, notwithstanding the completion of Phase I discovery, Equifax has offered no proof or identification of putative class members who would seek to litigate substantial actual damage claims, nor does Equifax admit that Soutter or any class member could prove significant actual damages.

"For a conflict of interest to defeat the adequacy requirement, 'that conflict must be fundamental.'" Ward v. Dixie Nat. Life Ins. Co., 595 F.3d 164, 180 (4th Cir. 2010) (quoting Gunnells v. Healthplan Servs., Inc., 348 F.3d 417, 430 (4th Cir. 2003)). "A conflict is not fundamental when . . . all class members share common objectives and the same factual and

legal positions and have the same interest in establishing the liability of [the defendant]. Moreover, a conflict will not defeat the adequacy requirement if it is merely speculative or hypothetical . . . ." Id. (citations and internal quotation marks omitted).

The conflict alleged by Equifax rests on the hypothetical and speculative prediction that there are numerous putative class members who would seek to litigate substantial actual damage claims. Equifax has identified only two individuals, a married couple, out of potentially hundreds of thousands of putative class members, who have sued Equifax for allegedly violating § 1681e(b) and claimed a substantial amount of actual damages. Def.'s Resp. in Opp'n to Mot. for Class Certification at 38 (citing Holloway v. Sterling Church St. Furniture P'ship, No. CL09-5897 (Cir. Ct. City of Norfolk, filed Sept. 15, 2009)).

The Court can discern no fundamental conflict between Soutter and putative class members who may wish to assert actual damages based on this record. See Clark v. Experian Info. Solutions, Inc., Nos. Civ. A. 8:00-1217-24, 8:00-1218-24, 8:00-1219-24, 2002 WL 2005709, at *3 (D.S.C. June 26, 2002) (finding that plaintiffs adequately represented class despite seeking only statutory damages in claim under § 1681e(b) because over a three-year period, only twenty-two lawsuits out of a potential

class of 40,000 to 100,000 members had been filed against the defendants addressing the practices challenged by plaintiffs). Rule 23(c)(2) contemplates the protection of a class member's opt-out right, which is sufficient in this case to allow those class members who desire to pursue actual damage claims under § 1681e(b) to do so. Thus, representation is not inappropriate on those grounds.

Because Soutter has demonstrated that both she and her counsel are adequate representatives of the putative class to conduct this litigation, the adequacy prerequisite is satisfied.

**B.    Rule 23(b)(3)**

In order to be certified as a class action, the class must satisfy at least one of the class categories defined in Rule 23(b).    Soutter here moves for certification under Rule 23(b)(3).[7]    Certification under Rule 23(b)(3) is appropriate where the Court finds that questions of law or fact common to the members of the class <u>predominate</u> over any questions affecting only individual members, and that a class action is

---

[7]    In the First Amended Class Complaint, Soutter also sought certification under Rule 23(b)(2) because Equifax allegedly has acted on grounds generally applicable to the class, making equitable injunctive relief appropriate.  Pl.'s First. Am. Class Compl., ¶ 34.  However, counsel for Soutter confirmed at oral argument that she was not seeking certification under Rule 23(b)(2).  Class Certification Hr'g Tr. at 20:8-10.

<u>superior</u> to other available methods for the fair and efficient adjudication of the controversy.

### 1.   Predominance

"Rule 23(b)(3)'s predominance requirement is 'far more demanding' than Rule 23(a)'s commonality requirement . . . ." <u>Gariety v. Grant Thornton, LLP</u>, 368 F.3d 356, 362 (4th Cir. 2004) (quoting <u>Amchem Prods., Inc. v. Windsor</u>, 521 U.S. 591, 623-24 (1997)).   "Whereas commonality requires little more than the presence of common questions of law and fact, Rule 23(b)(3) requires that 'questions of law or fact common to the members of the class predominate over any questions affecting only individual members.'"   <u>Thorn v. Jefferson-Pilot Life Ins. Co.</u>, 445 F.3d 311, 319 (4th Cir. 2006) (internal citation omitted) (quoting Fed. R. Civ. P. 23(b)(3)).   The predominance requirement "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation."   <u>Grant Thornton</u>, 368 F.3d at 362 (internal citation and quotation marks omitted).

Soutter argues that questions of law or fact common to the members of the class predominate over individual issues because "the most significant issues in the case all pertain to uniform conduct by Equifax -- its uniform credit reporting procedures[;] its knowledge and notice of the defects in its systems; the

willfulness of its conduct." Pl.'s Mem. in Support of Mot. for Class Certification at 25. Individual inquiries, Soutter states, are minimal if extant at all. The record to date establishes that the members of the proposed class have the following facts in common: (1) they are individuals who had a judgment entered against them; (2) at some point, this judgment was satisfied, appealed, or vacated, and that disposition was entered into a court file; and (3) at least 30 days after the entry into the court file of the satisfaction, appeal, or vacation, Equifax failed to reflect the satisfaction, appeal, or vacation when it issued a "hard inquiry" credit report. Therefore the issue of whether Equifax's failure to update class members' credit files with the satisfaction, appeal, or vacation renders the subsequently issued credit reports inaccurate is a common question for all class members. Other common issues are whether Equifax had a uniform procedure for collecting judgment dispositions or whether, as Soutter alleges, it had a standard practice of not collecting judgment dispositions and whether that standard practice was reasonable.

Equifax claims that common questions of law or fact do not predominate, for three reasons. First, Equifax asserts that inaccuracy is an individual issue that cannot be made on a classwide basis because a determination of inaccuracy will

require an assessment of whether or not each class member's report was inaccurate. As discussed above, however, Souter's counsel has paid for judgment data from the Supreme Court of Virginia, which for illustrative purposes, has been matched against Equifax data as to three categories of judgments: satisfied, appealed, and vacated judgments.[8] That process illustrates that there exists a ready source of proof as to the accuracy of class member credit reports. Of course, as Souter explains, the task of demonstrating inaccuracy for the entire class likely will involve substantial work, but that does not mean that the predominance requirement has not been established.

Indeed, Equifax's argument is essentially that the task will involve comparing a large volume of documents (its reports and the data from the Supreme Court of Virginia), the reconciliation of which will be time-consuming. Tasks of this sort are regularly accompanied in complex civil litigation in the federal courts with the use of expert witness and reliance

---

[8]   As an example of this matching process, Souter explains that on September 16, 2004, a default judgment was entered against a consumer in Chesterfield County, Virginia in the amount of $110.00.   This consumer's judgment satisfaction was recorded with the Chesterfield County General District Court on July 27, 2007, but three years later, the judgment was still shown as outstanding in Equifax's records.   Pl.'s Reply Mem. in Support of Mot. for Class Certification, Ex. 1, Erausquin Decl., ¶ 11.

on Federal Rule of Evidence 1006. Both tools are commonly employed in class actions.

For the foregoing reasons, notwithstanding Equifax's assertion to the contrary, Soutter has demonstrated how she can prove inaccuracy on a classwide basis.

Furthermore, the two cases that Equifax cites in support of its argument with respect to inaccuracy are distinguishable from the facts in this action. In Owner-Operator Independent Drivers Ass'n, Inc. v. USIS Commercial Services, Inc., 537 F.3d 1184, 1194 (10th Cir. 2008), the Tenth Circuit affirmed a district court's denial of class certification under § 1681e(b) because the district court found that determining the inaccuracy of a report may require an individualized inquiry. However, Owner-Operator involved plaintiffs who were alleging that the defendant company violated the FCRA when it disseminated their employment histories with inaccurate information, id. at 1186, a far different situation than assessing whether Equifax inaccurately reported a judgment as owing when the public record indicates otherwise.

Equifax also cites Harper v. Trans Union, LLC, Civ. A. No. 04-3510, 2006 WL 3762035 (E.D. Pa. Dec. 20, 2006), wherein the district court, after determining that the plaintiffs' claim under § 1681e(b) satisfied the four Rule 23(a) prerequisites,

33

found that determining whether credit reports contained inaccurate information and whether individual consumers' injuries were caused by the inclusion of the inaccuracies would "require highly individualized proofs as to the injuries suffered by the putative class members." Id. at *8. The district court thus denied certification. Id. at *9.

However, the plaintiff in Harper conceded that individual factual inquiries into damages would be required for those class members choosing to pursue actual damages because both statutory and actual damages were asserted on behalf of the class. Id. at *8. In this action, Soutter seeks only statutory and punitive damages for the putative class, and those putative class members who wish to pursue actual damages may opt out, thus rendering the individualized inquiries into actual damages and harm suffered that the district court worried about in Harper inapposite in this litigation.

Second, Equifax argues that the issue of "reasonable procedures" cannot be determined on a classwide basis because the procedures used in the Virginia courts vary widely, and there is no single, uniform procedure followed. Equifax's argument that Virginia courts go about the process of docketing and reporting judgment dispositions obfuscates the fact that LexisNexis, and Equifax, were obligated to use "reasonable

procedures" to ensure the maximum possible accuracy of credit reports. The FCRA does not tolerate a different degree of inaccuracy for consumers who live in more rural jurisdictions than it does for those in metropolitan areas simply because LexisNexis and Equifax do not find it economically advantageous to visit rural jurisdictions more often.

Moreover, the inquiry at the core of this action is what the court records reflect, not how the clerks of court go about their docketing duties. Thus, even if different courts use different docketing procedures, that will present no barrier to proof of whether the procedures used by Equifax, or LexisNexis on its behalf, reasonably accurately capture the results recorded by the state courts.

In a related argument, Equifax asserts that, because LexisNexis sometimes used different methods to record data obtained from the Virginia courts, whether there were reasonable procedures is incapable of being decided on a classwide basis. That argument, too, misses the point. Again, it is whether the procedures used accurately captured recorded results that is the focus of the issue here.

Moreover, Soutter alleges, and already has made a credible showing that, the procedure used never captured the facts that a judgment was satisfied, vacated, or appealed. Of course, if the

procedure was thusly infirm, the differences in Equifax's method in reporting on the fact of judgment would make no difference.

To support its argument, Equifax has made only general assertions about unspecified differences in the LexisNexis procedure. That information lies uniquely within the knowledge of Equifax and its vendor, and the failure to be specific has to be resolved against Equifax, not against Soutter.

Finally, Equifax claims that statutory damages are an individualized issue because Soutter stated that the amount of damages between $100 and $1000 will depend on the number of violations suffered by each respective customer. In Stillmock v. Weis Markets, Inc., 385 F. App'x 267 (4th Cir. 2010), the Fourth Circuit rejected the district court's conclusion that under the Fair and Accurate Credit Transactions Act of 2003 ("FACTA"), determining the quantum of damages with respect to each class member who had a receipt printed with his or her 10-digit credit card number would be too individualized for classwide treatment under Rule 23(b)(3), id. at 272. In Stillmock, the plaintiffs had asserted statutory and punitive damages under the same type of damages scheme that is at issue in the present case. Id. at 268. In rejecting the district court's conclusions, the Fourth Circuit found that the predominance test is qualitative rather than quantitative. Id.

at 273. "[T]he qualitatively overarching issue," held the court, "is the liability issue of the defendant's willfulness, and the purported class members were exposed to the same risk of harm every time the defendant violated the statute in the identical manner," and the "individual statutory damages issues are insufficient to defeat class certification under Rule 23(b)(3)." Id.

In this case, the qualitatively overarching issues are whether the class members' credit reports contained inaccurate information and whether Equifax used reasonable procedures to assure maximum possible accuracy when issuing those credit reports. The putative class members were exposed to the same risk of harm every time an inaccurate credit report was furnished because of Equifax's allegedly unreasonable procedures for collecting judgment information. The amount of individual statutory damages for each consumer will necessitate a very simple individualized computation of damages, but that, under Stillmock, is insufficient to defeat certification of this class under Rule 23(b)(3). Indeed, mathematical calculations based on the number of shares owned and share prices at different dates must be done on most securities fraud class actions. The "individualized" calculations at the base of Equifax's contention are no more complicated than those regularly done in

securities fraud class actions. Thus, they do not militate against satisfaction of the predominance requirement.

For the foregoing reasons, the Court finds that Soutter has fulfilled the predominance prerequisite.

## 2.   Superiority

Superiority requires that use of a class action be "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Superiority "'depends greatly on the circumstances surrounding each case,'" but "'[t]he rule requires the court to find that the objectives of the class-action procedure really will be achieved.'" Stillmock, 385 F. App'x at 274 (quoting 7A Wright, Miller & Kane, supra, § 1779). "'In determining whether the answer to this inquiry is to be affirmative, the court initially must consider what other procedures, if any, exist for disposing of the dispute before it. The court must compare the possible alternatives to determine whether Rule 23 is sufficiently effective to justify the expenditure of the judicial time and energy . . . and to assume the risk of prejudice'" to putative class members not before it. Id.

Soutter argues that a class action is superior because: (1) it is the only realistic means of adjudicating these disputes; (2) the statutory damages under the FCRA are too

38

slight to support individual suits; (3) large majorities of class members may be unaware that their rights have been violated; (4) class treatment will not raise any significant manageability hurdles because of the common issues; and (5) judicial resources are best economized and focused by handling this case as a class action. Equifax, of course, disputes that class treatment is superior in this case, specifically citing the presence of the FCRA's fee-shifting provision and Soutter's own lawsuit as reasons why individual actions are an appropriate way to adjudicate this controversy.

In _Stillmock_, the defendant asserted that the availability of attorney's fees and punitive damages under FACTA makes individual lawsuits feasible, and therefore the class action device was not the superior method of adjudication. _Id._ The Fourth Circuit cited four reasons why this was an untenable position. First, the Court of Appeals found that the low amount of statutory damages available, the same amount at issue in the present case, means "no big punitive damages award on the horizon, thus making an individual action unattractive from a plaintiff's perspective." _Id._ Second, the Court of Appeals determined that there is no basis to conclude that the fact that an individual plaintiff can recover attorney's fees in addition to $1,000 in statutory damages will result in individual

39

enforcement of FACTA on a comparable scale to potential enforcement by way of a class action. Id. Equifax's own evidence in the present case demonstrates this point with respect to the FCRA. Only two other individuals, a married couple, have brought a lawsuit in Virginia alleging a violation of § 1681e(b) and seeking actual damages. Two individuals filing a lawsuit, out of hundreds (perhaps many more) of class members that likely will be represented in a class action, illustrates that individual enforcement under the FCRA cannot occur on a comparable scale to a class action, and therefore the class action is a superior method to trying this claim. Third, there was no indication in Stillmock, nor is there any indication in the present case given the one other suit filed, that class members would have a strong interest in individual litigation. Id. at 275. Finally, class certification would promote consistency of results, id., another factor which would occur in the present case as well, and support a finding of superiority.

Thus, a class action is a superior method for the fair and efficient adjudication of Soutter's claim.

## CONCLUSION

For the reasons set forth above, the Plaintiff's MOTION FOR CLASS CERTIFICATION (Docket No. 72) is granted.  The class will be defined as:  All natural persons, for whom Equifax's records note that a credit report was furnished to a third party who requested the credit report in connection with an application for credit on or after February 17, 2008 to February 17, 2010, other than for an employment purpose, at a time when any Virginia General District Court or Circuit Court judgment that had been satisfied, appealed, or vacated in the court file more than 30 days earlier was reported in Equifax's file as remaining unpaid, which persons suffered actual damages of less than $1,000 as a result of a report by Equifax that did not accurately report that the judgment had been satisfied, appealed, or vacated.

It is so ORDERED.

_____/s/_____ REP

Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date:  March 30, 2011