CASE NO. 11-168

FILED

APR 1 3 2011

U.S. Court of Appeals
Fourth Circuit

## IN THE
## UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

---

EQUIFAX INFORMATION SERVICES, LLC,

Defendant–Petitioner,

v.

DONNA K. SOUTTER, For herself and on behalf of all similarly situated individuals,

Plaintiffs–Respondents.

---

On Appeal from United States District Court for the
Eastern District of Virginia, Richmond Division, No. 3:10cv107

---

## DEFENDANT'S PETITION FOR LEAVE TO APPEAL CLASS CERTIFICATION ORDER PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 23(f)

---

Barry Goheen
KING & SPALDING LLP
1180 Peachtree Street N.E.
Atlanta, GA 30309-3521
Telephone: (404) 572-4600
Facsimile: (404) 572-5100

Paul D. Clement
Jeffrey S. Bucholtz
Candice Chiu
KING & SPALDING LLP
1700 Pennsylvania Avenue, N.W.
Washington, D.C. 20006
Telephone: (202) 737-0500
Facsimile: (202) 626-3737

*Counsel for Defendant-Petitioner*

April 13, 2011

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Only one form needs to be completed for a party even if the party is represented by more than one attorney. Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case. Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements. Counsel has a continuing duty to update this information.

No. __11-168__   Caption: __Equifax Information Services, LLC v. Soutter__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__Equifax Information Services__ who is __Petitioner__, makes the following disclosure:
(name of party/amicus)        (appellant/appellee/amicus)

1. Is party/amicus a publicly held corporation or other publicly held entity? ☐ YES ☑ NO

2. Does party/amicus have any parent corporations? ☑ YES ☐ NO
   If yes, identify all parent corporations, including grandparent and great-grandparent corporations:
   Equifax Inc.

3. Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity? ☑ YES ☐ NO
   If yes, identify all such owners:
   Equifax Inc.

4. Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))? ☐ YES ☑ NO
   If yes, identify entity and nature of interest:

5. Is party a trade association? (amici curiae do not complete this question) ☐ YES ☑ NO
   If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6. Does this case arise out of a bankruptcy proceeding? ☐ YES ☑ NO
   If yes, identify any trustee and the members of any creditors' committee:

## CERTIFICATE OF SERVICE
**************************

I certify that on ____04-13-2011____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

Leonard Anthony Bennett
Robin Ann Abbott
Consumer Litigation Associates PC
12515 Warwick Blvd., Ste. 100
Newport News, VA 23606

Matthew James Erausquin
Consumer Litigation Associates PC
1800 Diagonal Rd., Ste. 600
Alexandria, VA 22314

Dale Wood Pittman
The Law Office of Dale W. Pittman, P.C.
112-A W Tabb St.
Petersburg, VA 23803-3212

__s/Paul D. Clement__                    __04-13-2011__
(signature)                              (date)

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................... ii

INTRODUCTION ................................................................................ 1

STATEMENT OF FACTS ...................................................................... 5

QUESTIONS PRESENTED..................................................................... 7

REASONS FOR GRANTING THE PETITION......................................... 7

I.     THE CERTIFIED CLASS IS ASCERTAINABLE ONLY
       THROUGH SELF-IDENTIFICATION. ........................................... 7

II.    THE CLASS REPRESENTATIVE IS NOT REPRESENTATIVE OF
       THE CLASS. .............................................................................. 10

III.   INDIVIDUALIZED ISSUES PREDOMINATE. ............................. 13

IV.    THIS CLASS ACTION IS NOT THE "SUPERIOR" MEANS OF
       ADJUDICATION.......................................................................... 16

CONCLUSION..................................................................................... 19

CERTIFICATE OF SERVICE ................................................................. 21

ADDENDUM

District Court Opinion Granting Class Certification,
*Soutter v. Equifax Information Servs., LLC,*
No. 3:10cv107 (E.D. Va. Mar. 30, 2011) ....................................... Exhibit A

District Court Order Granting Class Certification,
*Soutter v. Equifax Information Servs., LLC,*
No. 3:10cv107 (E.D. Va. Mar. 30, 2011) ....................................... Exhibit B

Motions Hearing Transcript,
*Soutter v. Equifax Information Servs., LLC,* No. 3:10cv107 (E.D. Va. Feb.
22, 2011) ..................................................................................... Exhibit C

# TABLE OF AUTHORITIES

**Cases**                                                                     **Page(s)**

*Allison v. Citgo Petroleum Corp.,*
   151 F.3d 402 (5th Cir. 1998) ...................................................................19

*Amati v. City of Woodstock,*
   176 F.3d 952 (7th Cir. 1999) ....................................................................9

*American Pipe & Constr. Co. v. Utah,*
   414 U.S. 538 (1974).....................................................................................9

*Bertrand ex rel. Bertrand v. Maram,*
   495 F.3d 452 (7th Cir. 2007) ...................................................................10

*Broussard v. Meineke Disc. Muffler Shops, Inc.,*
   155 F.3d 331 (4th Cir. 1998) ...........................................................10, 13

*Byerson v. Equifax Info. Servs. LLC,* No. 6:07-cv-00005-GRA,
   2009 WL 82497 (D.S.C. Jan. 9, 2009) ............................................8, 13

*Castano v. American Tobacco Co.,*
   84 F.3d 734 (5th Cir. 1996) .....................................................................19

*Deiter v. Microsoft Corp.,*
   436 F.3d 461 (4th Cir. 2006) ...........................................................10, 13

*Gariety v. Grant Thornton, LLP,*
   368 F.3d 356 (4th Cir. 2004) ...........................................................10, 11

*Gen. Tel. Co. v. Falcon,*
   457 U.S. 147 (1982)...................................................................................10

*Go-Bart Importing Co. v. United States,*
   282 U.S. 344 (1931)...................................................................................15

*In re New Motor Vehicles Canadian Export Antitrust Litig.,*
   522 F.3d 6 (1st Cir. 2008).........................................................................17

*In re Rhone-Poulenc Rorer, Inc.,*
   51 F.3d 1293 (7th Cir. 1995) ...................................................................18

*Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*,
 130 S. Ct. 1605 (2010) ..................................................................15

*Lienhart v. Dryvit Sys., Inc.*,
 255 F.3d 138 (4th Cir. 2001) ...............................................1, 4, 19

*London v. Wal-Mart Stores, Inc.*,
 340 F.3d 1246 (11th Cir. 2003) ................................................9, 17

*Parker v. Time Warner Entm't Co.*,
 331 F.3d 13 (2d Cir. 2003) .........................................................17

*Prado-Steiman ex rel Prado v. Bush*,
 221 F.3d 1266 (11th Cir. 2000) ....................................................4

*Stillmock v. Weis Mkts., Inc.*,
 No. 09-1632, 2010 WL 2621041 (4th Cir. 2010)........................passim

*Thorn v. Jefferson-Pilot Life Ins. Co.*,
 445 F.3d 311 (4th Cir. 2006) ...............................................11, 14, 19

*Wilcox v. Commerce Bank of Kansas City*,
 474 F.2d 336 (10th Cir. 1973) .....................................................17

*Windham v. American Brands*,
 565 F.2d 59 (4th Cir. 1977) ...................................................11, 15

## Statutes

15 U.S.C. § 1681e(b) ....................................................................1, 3

15 U.S.C. §§ 1681n(a) .............................................................4, 17, 18

# INTRODUCTION

Plaintiff, Donna Soutter, alleges that Equifax Information Services, LLC ("Equifax") violated the Fair Credit Reporting Act ("FCRA") by failing to follow "reasonable procedures to assure maximum possible accuracy" of her consumer reports and reporting inaccurately that she owed a judgment that had been set aside. 15 U.S.C. § 1681e(b). Specifically, plaintiff attacks the reasonableness of Equifax's procedures for retrieving and reporting the disposition of judgments by Virginia circuit and general district courts. That is a novel claim: It is undisputed that no court anywhere has ever decided a FCRA challenge to retrieval-of-disposition procedures. On the theory that Equifax's alleged FCRA violations were willful as to her and hundreds of thousands of Virginians, plaintiff seeks statutory damages of up to $1,000 and punitive damages.

The district court committed significant errors in granting class certification, and its order clearly satisfies the criteria for review under Rule 23(f). The order imposes tremendous unwarranted pressure on Equifax to settle regardless of the case's merits, so review will occur now or not at all; the case raises "unsettled" but highly consequential issues for the entire credit reporting industry nationwide; and the order is manifestly wrong in at least four respects. *See Lienhart v. Dryvit Sys., Inc.*, 255 F.3d 138, 144 (4th Cir. 2001).

1

*First*, there is no way to ascertain who is a class member because the class definition excludes all persons who believe they have sustained over $1,000 in actual damages. If Equifax prevails on the merits, individuals wishing to escape the class judgment can simply allege they suffered more than $1,000 in actual damages and thus were never members of the class. They then could bring individual claims against Equifax despite not having opted out. This heads-plaintiffs-win, tails-Equifax-loses class definition is indefensible.

*Second*, the single named plaintiff is not representative of the class the district court has permitted her to represent. As an initial matter, plaintiff's claim concerns a general district court judgment that appeared in her credit file, yet the certified class includes individuals with either district court or circuit court judgments. Second, plaintiff's counsel's search for a common issue focused on the allegation that Equifax willfully violated the FCRA during parts of 2009 and 2010 by taking no action to replace a data stream concerning district court judgments that was cut off in 2009. Yet that has nothing to do with plaintiff, whose sole dispute with Equifax was resolved in 2008. Adjudicating the reasonableness of the procedures Equifax used vis-à-vis plaintiff in 2008 will not advance the claims of the class that relate to different procedures, in different courts, under different circumstances, used in 2009 and 2010. Plaintiff, therefore, cannot satisfy Rule 23(a)'s typicality or adequacy requirements. Indeed, plaintiff supplied proof of her

2

inability to represent the class: She proffered three data sets to the district court to show that class membership and inaccuracy could be determined manageably on a class-wide basis, *but those data sets did not include plaintiff herself.*

*Third*, the district court erred in holding that common issues predominate. The court reached that conclusion only by ignoring the different procedures used by Equifax at different times during the two-year class period, in different courts, and under different circumstances. Those differences go to the heart of whether Equifax followed "reasonable procedures to assure maximum possible accuracy" as required by § 1681e(b) and whether any unreasonable procedures willfully violated the provision. Plaintiff tried to circumvent this problem by relying on the time period in 2009-2010 during which Equifax's data feed was cut off and Equifax allegedly did not replace it. But as already explained, that maneuver at best trades a predominance defect for a typicality and adequacy defect, because those allegations have nothing to do with the named plaintiff's claim.

In addition, even if those allegations were true, they would not obviate the consideration of multiple individual issues. To begin with, whether a particular class member's credit report was accurate—a *sine qua non* of a claim under § 1681e(b)—cannot be determined on a class-wide basis. There is simply no way to determine whether hundreds of thousands of individuals had reports that were inaccurate without reviewing each report individually. That remains true even if

3

plaintiff's counsel is able to secure a data set from the Supreme Court of Virginia that will serve as a prima facie basis to show inaccuracy. But there is no basis for that assumption given that plaintiff's counsel's attempts so far have failed even to capture the named plaintiff herself.

*Fourth*, the district court erred in finding class treatment to be superior to the alternatives. The district court has exponentially aggregated statutory and punitive damages in a case that presents an entirely novel substantive claim. The coercive combination of a novel legal issue, statutory damages, and Rule 23 "radically reshape[s]" defendant's "risk-benefit calculation," *Prado-Steiman ex rel Prado v. Bush*, 221 F.3d 1266, 1274 (11th Cir. 2000), creating a "perfect storm" of pressures on Equifax to settle irrespective of the merits. *Stillmock v. Weis Mkts., Inc.*, No. 09-1632, 2010 WL 2621041, at *8 (4th Cir. 2010) (Wilkinson, J., concurring). There is no justification for this rush to class treatment. The FCRA provides for either actual damages or statutory damages ranging from $100 to $1,000, plus attorney's fees, precisely to ensure that individual plaintiffs have meaningful access to court. 15 U.S.C. §§ 1681n(a)(1)-(3).

In short, "Rule 23(f) was enacted by the Supreme Court … pursuant to an express grant of authority by Congress" in anticipation of cases like this. *Lienhart*, 255 F.3d at 145. The unusual confluence of sweeping liability exposure, novel questions, and a seriously flawed certification order necessitates immediate review.

## STATEMENT OF FACTS

Equifax, a consumer reporting agency, contracts with a specialized public records vendor to gather court filing-related information incorporated in credit reports. Dist. Ct. Op. ("Op.") at 3 (attached as Ex. A). Since February 2007, Equifax has used LexisNexis as its Virginia vendor. *Id.* LexisNexis collects information about all civil judgments entered in the 140 general district courts and a portion of judgments from the 120 circuit courts. *Id.*

LexisNexis uses a variety of information-collection methods. Until May 2009, LexisNexis used an electronic bulk feed issued by the Supreme Court of Virginia that aggregated detailed information about district court judgments. Op. 4. In May 2009, the Supreme Court terminated the feed. LexisNexis also conducted automated searches or "webscrapes" of the Supreme Court website to identify dispositions relating to district court cases previously reported in the bulk feed, but new website access procedures in December 2009 made those searches infeasible. *Id.* LexisNexis also used in-person reviews of documents at circuit courts and, in some instances, at district courts.

Plaintiff's claim against Equifax pertains to events in 2008. The Virginia Credit Union sued plaintiff for approximately $15,000. Op. 6. She entered into a payment plan, which the Union failed to communicate to its attorney, leading to the entry of a $14,403.79 judgment against her in the Richmond City General

District Court in January 2008. Op. 6-7. On March 20, 2008, after the Union moved to set aside the judgment, the court "dismissed" the judgment without prejudice. Op. 7. Plaintiff alleges that Equifax furnished three credit reports that inaccurately reported the judgment as unpaid, before removing the judgment from her file in December 2008. Op. 7-8. As a result, she claims, she (and all class members) "suffered credit score damage," First Am. Cmplt. ¶ 26, and she testified that she personally sustained actual damages. *See* Souter Dep. 68:18-69:23 (confirming her allegation of "actual," "cognizable damages with respect to Equifax"). Plaintiff claims that Equifax knew "LexisNexis was having difficulty processing judgment records in a timely fashion, and ultimately became unable to obtain them at all at a certain point," such that "Equifax did not receive, or add to its files, any judgment records for over a year" until "sometime in 2010." Op. 5-6.

The district court granted plaintiff's motion for class certification for "[a]ll natural persons" about whom Equifax issued credit reports for non-employment purposes from February 17, 2008 to February 17, 2010, when "any Virginia General District Court or Circuit Court judgment that had been satisfied, appealed, or vacated in the court file more than 30 days earlier was reported in Equifax's file as remaining unpaid." Class Cert. Order ("Order") at 1 (attached as Ex. B). The district court agreed with plaintiff's request to limit the class to individuals who "suffered actual damages of less than $1,000." *Id.*

6

## QUESTIONS PRESENTED

1. Whether the district court erred in certifying a class that is ascertainable only through self-identification and that offers Equifax no practical protection against later individual actions if it prevails in the class action.

2. Whether the district court erred in finding plaintiff to be a "typical" and "adequate" class representative when adjudication of her own claim, which relates to a dispute resolved in 2008, would not advance the claims of class members whose claims relate to different procedures, disposition types, and courts in 2009 and 2010.

3. Whether the district court erred in finding common issues to predominate when Equifax followed different procedures at different times, in different parts of the Commonwealth, and under different circumstances, and when determining whether a report was "inaccurate" requires individualized review.

4. Whether the district court erred in concluding that this class action with novel and disputed claims was "superior" when the FCRA includes multiple provisions that incentivize and facilitate individual suits.

## REASONS FOR GRANTING THE PETITION

### I. THE CERTIFIED CLASS IS ASCERTAINABLE ONLY THROUGH SELF-IDENTIFICATION.

The class certified below leaves Equifax with no way to ascertain who is a member of the class and no way to protect itself if it prevails. After plaintiff

7

proffered a succession of changing definitions, the district court certified a class defined to include persons who have "suffered actual damages of less than $1,000" as a result of an inaccurate Equifax credit report. Order 1. That definition renders class membership contingent on self-identification: Individuals may await resolution of the merits and only then decide whether they are in fact members of the class. If the class prevails, it will be easy for individuals to self-determine that they have less than $1,000 in actual damages and can partake of the favorable class award or settlement. But if the class loses, it will be just as easy for individuals to self-determine that they have over $1,000 in actual damages and thus never were class members to begin with, meaning that they could bring their own actions against Equifax without being bound by the unfavorable class judgment. In effect, the class definition allows potential members to "sit idly by, watch what happens, and then make a tactical decision to secure the benefits of … the class action." *Byerson v. Equifax Info. Servs. LLC*, No. 6:07-cv-00005-GRA, 2009 WL 82497, at *2 (D.S.C. Jan. 9, 2009).

When this defect was pointed out to the district court, it responded with a non-sequitur: It stated that class members with over $1,000 in actual damages could "opt out" and this solved the self-identification problem. *See* Op. 17. But someone who is excluded from the class as defined need not—indeed, cannot—opt out. The district court's "opt out" possibility would exist only if, contrary to fact,

8

the class definition included individuals with more than \$1,000 in actual damages.[1]
In that event, however, class members would face the customary choice whether to
opt out before knowing the result of the class action. If they did not opt out, they
could not escape being bound by the class judgment after the fact by the simple
expedient of declaring that they sustained over \$1,000 in actual damages. By
defining the class to exclude anyone who may claim to have sustained over \$1,000
in actual damages, rather than forgoing a damages cap as a definitional matter and
leaving it to class members who incurred extensive actual damages to opt out, the
district court certified an all-upside, no-risk class action for plaintiff and the class.

There is no conceivable justification for the district court's one-way-option
class definition, which makes class membership contingent on a subjective
judgment within each potential class member's discretion. It is axiomatic that
class members may not "benefit from a favorable judgment without subjecting
themselves to the binding effect of an unfavorable one." *American Pipe & Constr.
Co. v. Utah*, 414 U.S. 538, 547 (1974); *see also Amati v. City of Woodstock*, 176
F.3d 952, 957 (7th Cir. 1999).[2] Equifax now faces a lose-lose proposition: all the

---

[1] Of course, such a class would include individuals with entirely unique damages
claims ill-suited for class treatment, which is presumably why plaintiff's counsel
sought to gerrymander them out of the class. Op. 34. Correcting the district
court's ascertainability error thus would exacerbate an already-serious
predominance problem. *See infra* at 13-16.

[2] Rule 23 was amended in 1966 in part to prevent this problem. *See London v.
Wal-Mart Stores, Inc.*, 340 F.3d 1246, 1252-53 (11th Cir. 2003) (Congress

risk and burden of a class action without any of the certainty and efficiency advantages. And this problem with the class definition is not easily remedied; indeed, the court recognized that actual damages claims would involve "individualized inquiries" ill-suited for class treatment. Op. 34.

## II. THE CLASS REPRESENTATIVE IS NOT REPRESENTATIVE OF THE CLASS.

To be "adequate," class representatives must "possess undivided loyalties to absent class members." *Broussard v. Meineke Disc. Muffler Shops, Inc.*, 155 F.3d 331, 338 (4th Cir. 1998). To be "typical," they must "possess the same interest and suffer the same injury as the class members." *Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 156 (1982). Any "rigorous analysis" of those factors would have revealed that plaintiff is neither. *Gariety v. Grant Thornton, LLP*, 368 F.3d 356, 359 (4th Cir. 2004). The district court concluded otherwise only by watering down plaintiff's burden to demonstrate typicality and adequacy and assessing these requirements at "an unacceptably general level." *Deiter v. Microsoft Corp.*, 436 F.3d 461, 467 (4th Cir. 2006).

The disconnect between plaintiff's interests and those of the class is vividly illustrated by the extraordinary—and conceded—absence of plaintiff's name from the very data she proffered to show that she could define and represent the class.

---

intended "Rule 23(c)(2)'s requirement that, in opt-out class actions, notice be given to all class members as soon as practicable ... to prevent one-way intervention"); *Bertrand ex rel. Bertrand v. Maram*, 495 F.3d 452, 455 (7th Cir. 2007).

Op. 14-15.   Plaintiff proffered three lists intended to reflect putative class members:  (1) an Equifax list of persons who disputed Virginia civil judgments on grounds that the judgment had been satisfied, vacated, or appealed; (2) an Equifax list of persons from three zip codes with current Virginia judgments in their credit files; and (3) a list supplied by the Supreme Court of Virginia of individuals against whom judgments and judgment dispositions have been entered.

The district court dismissed plaintiff's revealing absence from all three by predicting that "counsel represents that the full data set will be purchased and that counsel will simply design a more complete and final data request."  Op. 15, 24.  But that speculation, and the district court's conjecture that comparing Equifax's database to this never-before-seen database would be "simple," Op. 14, 22, was antithetical to the "rigorous analysis" required by Rule 23.  *See Gariety*, 368 F.3d at 359 ("reliance on mere assertions did not fulfill the requirements that the district court take a 'close look' … and make findings [that] plaintiffs have [satisfied] the requirements of Rule 23(b)(3)").  This Court has repeatedly warned that the "record must affirmatively reveal that resolution of the [claim] on its merits may be accomplished on a class-wide basis," *Thorn v. Jefferson-Pilot Life Ins. Co.*, 445 F.3d 311, 321 (4th Cir. 2006), and that courts should not certify "merely on the assurance of counsel that some solution will be found."  *Windham v. American Brands*, 565 F.2d 59, 70 (4th Cir. 1977) (en banc).

Equally fundamentally, the district court failed to recognize that plaintiff's absence from her own picture of the putative class reflected her lack of typicality. Plaintiff's name was missing from the second list, for example, due to the *timing* of Equifax's deletion of the judgment from her credit file; her own dispute had been resolved by December 2008. *See* Op. 15. The certified class, however, covers inaccuracies reported from February 2008 to February 2010, sweeping in the distinct claims and facts of individuals impacted in later months, when LexisNexis allegedly was unable to add any judgment records. *See* Op. 5. As the court should have recognized, the two-year span encompasses periods when disparate access and record-collection policies were in place: months before May 2009, when the Supreme Court facilitated access by providing a bulk feed, and months after, when it terminated the feed; months before December 2009, when LexisNexis conducted "webscrapes," and months after, when LexisNexis had to abandon the searches because of changed website access rules. *See* Def. Opp. to Class Cert. at 7.

In short, the facts needed to decide plaintiff's claims as to the "inaccuracy" of her report and "unreasonableness" of Equifax's procedures are radically different from those needed to litigate absent class members' claims. Yet contrary to this Court's precedents, the district court permitted plaintiff to strategically broaden the class to sweep in the more "dramatic" and arguably more common allegations of others impacted by different access policies and record-collection

methods in different courts (including circuit courts) that were never applied to her. *Broussard*, 155 F.3d at 344; *see also id.* at 345 (plaintiffs may not "strike [defendant] with selective allegations, which may or may not have been available to individual named plaintiffs"); *Deiter*, 436 F.3d at 468 (upholding denial of certification given "substantial gap between what [representative] plaintiffs proved for their individual cases and what would be required proof for the [other] customer[s]"). Moreover, by combining plaintiff's atypical facts—such as her claim to have suffered actual damages even though she will forgo them to seek class-wide relief—with the distinct alleged injuries suffered by other class members in 2009-2010, the order runs afoul of *Broussard*'s admonition that Rule 23 does not allow the construction of a "'perfect plaintiff.'" 155 F.3d at 344.

## III. INDIVIDUALIZED ISSUES PREDOMINATE.

This Court's review is additionally needed because plaintiff did not and cannot show that common issues predominate. The district court repeatedly referenced Equifax's supposedly "uniform conduct" and "uniform procedure for collecting judgment dispositions." Op. 30-31. But the court maintained this position only by disregarding Equifax's and LexisNexis's explicit assertions to the contrary, presuming that individualized issues were negligible, and putting the burden on *Equifax* to disprove that presumption. *See* Op. 36 ("Equifax has made only general assertions about unspecified differences in the LexisNexis

13

procedure…. [T]he failure to be specific has to be resolved against Equifax."). And contrary to the court's statement, Equifax described its disparate procedures in detail. *See* Johnson Decl. ¶¶ 3-17.

At the same time it saddled Equifax with this stringent burden, the district court speculated that plaintiff's hypothetical Supreme Court database would facilitate a simple, class-wide determination of "inaccuracy." In thus concluding that individualized questions would be "minimal if extant at all," Op. 31, the court failed to heed this Court's warning that "[e]valuating the merits of individual cases is not a common manner of resolving them." *Thorn*, 445 F.3d at 323 n.13. There is no way to determine whether an individual's report is inaccurate without examining it; finding that some other individual's report is inaccurate does not answer the question.

The district court then compounded its error by dismissing any individualized issues surrounding the key issue of the "reasonableness" of Equifax's procedures on the erroneous assumption that any inaccuracy *necessarily* demonstrates unreasonable procedures. *See* Op. 35 ("even if different courts use different docketing procedures, that will present no barrier to proof of whether the procedures used … accurately capture the [judgments]"). Whether a given individual's inaccurate credit report stemmed from procedures that were reasonable, unreasonable but only negligently so, or willfully unreasonable cannot

14

be determined without considering the circumstances and the procedures in effect at the relevant time and place. As the Supreme Court has recognized in other contexts, "reasonableness" analysis is inherently fact-specific. *See Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 130 S. Ct. 1605, 1633 (2010) (Kennedy, J., dissenting) ("Procedures to avoid mistakes—whether legal or otherwise—must be 'reasonable,' which is always a context-specific inquiry."); *Go-Bart Importing Co. v. United States*, 282 U.S. 344, 357 (1931) ("There is no formula for the determination of reasonableness. Each case is to be decided on its own facts and circumstances."). That is far from a simple, unitary determination that can be made once and applied to the entire class.

Moreover, the district court failed to grapple with the individualized issues surrounding the calculation of statutory damages. As Equifax explained, whether FCRA damages are calculated at $100 or $1,000 turns on individualized considerations. *See* Opp. to Class Cert. at 36; *Windham*, 565 F.2d at 68 (lack of predominance where damages issue "does not lend itself to … a mechanical calculation"). Sidestepping these individualized damages questions, however, the district court treated the issue as foreclosed by this Court's unpublished decision in *Stillmock*, which it viewed as all but foreordaining certification. *See* Op. 37 (acknowledging "'individualized' calculations" of statutory damages but deeming it insufficient "under *Stillmock*" to defeat certification). In *Stillmock*, this Court

15

found that the need to determine statutory damages under the Fair and Accurate Credit Transactions Act did not prevent satisfaction of the predominance requirement. But it so reasoned because, "[u]nder the[] circumstances," the individual damages issues appeared "simple and straightforward": Liability was conceded, and "putative class members were exposed to the identical risk of identity theft in the identical manner by the repeated identical conduct of the same defendant, and none suffered actual damages from identity theft." 2010 WL 2621041, at *5. Nothing in *Stillmock* warrants the district court's suggestion that statutory damages claims are somehow *per se* suitable for class treatment. And nothing warrants extending its conclusion to this case, where liability is contested, Equifax vigorously disputes that class members were exposed to "identical risk[s]" and "identical conduct," and the named plaintiff claims to have sustained actual damages. *Supra* at 6.

## IV.    THIS CLASS ACTION IS NOT THE "SUPERIOR" MEANS OF ADJUDICATION.

By seeking punitive damages, plus statutory damages of $1,000 *per violation*, plus attorney's fees on behalf of untold "hundreds of thousands" of as-yet-unidentified consumers, this suit threatens Equifax with uncertain and devastating liability. Op. 9. And all of this is in the context of entirely novel claims that may not have merit, but that a defendant could not rationally defend given the enormous potential exposure. Such "exponential expansion of statutory

16

damages through the aggressive use of the class action device" could never have been contemplated by the drafters of the FCRA or Rule 23. *Stillmock*, 2010 WL 2621041, at *8 (Wilkinson, J., concurring). Judge Wilkinson's persuasive concurrence in *Stillmock*—a case substantially more appropriate for class treatment because, *inter alia*, liability was conceded—joined a chorus of other opinions recognizing the dangers of transforming modest statutory damages provisions into "corporate death by a thousand cuts through Rule 23." *Id.*[3]

But while the FCRA's statutory damages regime and Rule 23 are a volatile combination in the best of circumstances, it is especially clear that Rule 23 is not the superior avenue for trying wholly novel theories of liability like that concededly at issue here. *See* 2/22/2011 Hearing Transcript ("Tr.") at 48 (attached as Ex. C) (plaintiff agreeing that "there aren't any court decisions saying that what [Equifax is] doing is wrong"); *see also In re New Motor Vehicles Canadian Export Antitrust Lit.*, 522 F.3d 6, 26 (1st Cir. 2008).

Moreover, multiple provisions of the FCRA make individual suits a practical alternative; this is not a context where it is a class action or nothing. Rather than limiting plaintiffs to actual damages, Congress provided the alternative of statutory damages within a $100-$1,000 range, anticipating that amounts will vary with

---

[3] *See, e.g., London*, 340 F.3d at 1255 n.5; *Parker v. Time Warner Entm't Co.*, 331 F.3d 13, 26 (2d Cir. 2003) (Newman, J., concurring); *Wilcox v. Commerce Bank of Kansas City*, 474 F.2d 336, 341-47 (10th Cir. 1973).

consumer-specific evidence. 15 U.S.C. § 1681n(a)(1)(A). Congress further incentivized individual suits by providing for punitive damages on top of statutory damages, *id.* § 1681n(a)(2), and authorizing attorney's fees to plaintiffs in "any successful action" establishing willful or negligent violations. *Id.* §§ 1681n(a)(3), 1681o(a)(2). This statutory scheme means that individual suits are a meaningful, practical alternative to class actions, and they are clearly the superior mechanism for resolving novel claims like those at issue. Individual trials will demonstrate *both* whether these claims have merit and whether they are amenable to class treatment. But allowing novel claims carrying substantial aggregated statutory (and punitive) damages to proceed initially as a class action creates enormous pressure to settle such that the merits of the claims will never be tested. *See In re Rhone-Poulenc Rorer, Inc.*, 51 F.3d 1293, 1299 (7th Cir. 1995) (defendants are forced "to stake their companies on the outcome of a single trial, or be forced by fear of the risk of bankruptcy to settle even if they have no legal liability").

Dismissing the tensions between the FCRA's damages scheme and the class action device out of hand, the district court acted as if *Stillmock* established a general rule that individual suits are *never* superior in the FCRA context. Indeed, its entire superiority analysis consisted of a paragraph reciting "four reasons" from the unpublished *Stillmock* opinion for why the availability of attorney's fees and punitive damages *there* did not defeat superiority. Op. 39-40. That is not only an

overreading of *Stillmock*'s more modest rationale, *see supra* at 16, but it also ignores that precedential cases in this Circuit and elsewhere have long held that the availability of punitive or statutory damages and fee-shifting can demonstrate the viability of "individual actions in the absence of a class action." *Thorn*, 445 F.3d at 328 n.20; *see also, e.g.*, *Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 420 (5th Cir. 1998) (statutory damages and attorney's fees "eliminate[d] financial barriers that might make individual lawsuits unlikely"). Especially when liability is contested and turns on novel questions of law, individual actions are not just viable, but superior, to a class action. Here, there was no basis for finding class treatment to be "the only realistic means of adjudicating these disputes." Op. 38. Indeed, plaintiff's counsel urged the court to certify the class or else he would "flood[] the courts with individual cases." Tr. 50; *cf. Castano v. American Tobacco Co.*, 84 F.3d 734, 748 (5th Cir. 1996) (noting, in rejecting superiority, that "plaintiffs' counsel in this case has promised to inundate the courts with individual claims if class certification is denied").

## CONCLUSION

This petition readily satisfies the factors warranting Rule 23(f) review. The "substantial weakness[es]" in the district court's certification decision contravene settled principles and precedents and make reversal "'inevitabl[e].'" *Lienhart*, 255 F.3d at 144. Plaintiff, moreover, has raised novel and "unsettled" legal issues that

are not only uniquely ill-suited to adjudication for the first time in a class action, but also are particularly ripe for Rule 23(f) review. *See id.* Finally, because the exponential aggregation of claims creates intense settlement pressure that renders certification "likely dispositive of the litigation," this petition is likely the Court's one and only opportunity to correct the district court's manifest errors. Accordingly, Equifax respectfully requests that this Court grant the petition.

Respectfully submitted, this 13th day of April, 2011.

|  |  |
|---|---|
| | _____/s/_____ |
| Barry Goheen | Paul D. Clement |
| KING & SPALDING LLP | Jeffrey S. Bucholtz |
| 1180 Peachtree Street N.E. | Candice Chiu |
| Atlanta, GA 30309-3521 | KING & SPALDING LLP |
| (404) 572-4600 | 1700 Pennsylvania Ave. NW |
| (404) 572-5100 | Washington, DC 20006 |
| | (202) 737-0500 |
| | (202) 636-3737 |

*Counsel for Defendant-Petitioner*

## CERTIFICATE OF SERVICE

This is to certify that I have electronically filed the foregoing Petition for Leave to Appeal Class Certification Order Pursuant To Federal Rule of Civil Procedure 23(f) and Addendum with the Clerk of Court using the CM/ECF system, and will deposit a copy of the same in the United States mail in a properly addressed envelope with sufficient postage affixed thereto to the following:

Leonard Anthony Bennett
Robin Ann Abbott
Consumer Litigation Associates PC
12515 Warwick Boulevard, Suite 100
Newport News, VA 23606

Matthew James Erausquin
Consumer Litigation Associates PC
1800 Diagonal Road, Suite 600
Alexandria, VA 22314

Dale Wood Pittman
The Law Office of Dale W. Pittman, P.C.
112-A W Tabb St.
Petersburg, VA 23803-3212

*Counsel for the Plaintiff*

This 13th day of April, 2011.

/s/
_____
Paul D. Clement
KING & SPALDING LLP
1700 Pennsylvania Ave. NW
Washington, DC 20006
(202) 737-0500
(202) 636-3737
