1

1              IN THE UNITED STATES DISTRICT COURT
          FOR THE EASTERN DISTRICT OF VIRGINIA
2                   RICHMOND DIVISION

3  _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _
                                    :
4  DONNA K. SOUTTER,                :
        on behalf of herself and   :
5       those similarly situated,   :
                                    :
6                   Plaintiffs,     :
    v                               : Civil Action
7                                   : No. 3:10CV107
   EQUIFAX INFORMATION SERVICES,    :
8                                   : May 16, 2011
                    Defendant.      :
9  _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ :

10

11

12          COMPLETE TRANSCRIPT OF CONFERENCE CALL
          BEFORE THE HONORABLE ROBERT E. PAYNE
13              UNITED STATES DISTRICT JUDGE

14

15  APPEARANCES: (All via telephone)

16  Leonard A. Bennett, Esq.
    Matthew J. Erausquin, Esq.
17  Consumer Litigation Associates, PC
    3615-H Chain Bridge Road
18  Fairfax, VA    22030

19  Dale W. Pittman, Esq.
    The Law Office of Dale W. Pittman, P.C.
20  112-A W. Tabb Street
    Petersburg, VA    23803-3212
21
                Counsel for the Plaintiffs
22

23              DIANE J. DAFFRON, RPR
              OFFICIAL COURT REPORTER
24           UNITED STATES DISTRICT COURT

25

1   APPEARANCES:   (Cont'd.)

2   Barry Goheen, Esq.
    John A. Love, Esq.
3   King & Spalding
    1180 Peachtreet Street, NE
4   Atlanta, GA   30309-3521

5   John W. Montgomery, Jr., Esq.
    Montgomery & Simpson
6   2116 Dabney Road, Suite A-1
    Richmond, VA   23230

7
                Counsel for the defendant
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1              (The proceedings in this matter commenced at

2    10:00 a.m.)

3

4              THE COURT:  Hello.

5              MR. BENNETT:  Good morning, Judge.

6              THE COURT:  Good morning.  This is Soutter

7    against Equifax.  Who's here for whom?

8              MR. BENNETT:  Judge, for the plaintiff this

9    is Leonard Bennett.  Also on the line are Mr. Erasquin

10   and Mr. Pittman.

11             MR. GOHEEN:  Your Honor, Barry Goheen, Tony

12   Love and I think Mr. Montgomery either is on or is

13   going to be on in just a moment for Equifax.

14             THE COURT:  All right.  I gather the Fourth

15   Circuit has made no decision yet; is that correct?

16             MR. GOHEEN:  This is Barry Goheen.  That's

17   correct, Your Honor.

18             John, is that you?

19             MR. MONTGOMERY:  This is John Montgomery.

20   I'm back on.

21             MR. GOHEEN:  Thanks.

22             Your Honor, again, this is Barry Goheen.

23   That's correct, we have not received any word from the

24   Fourth Circuit.  We did submit the Court's order of

25   last week on Friday, but that's the last activity that

1  I'm aware of in the Fourth Circuit.

2       THE COURT:  Well, I thought maybe they might

3  do something last week because they were sitting last

4  week.  Sometimes they'll act on things like that while

5  they're sitting.  Well, I've read your status reports

6  and your proposed class notices.  Have you all had any

7  further discussions on these notices?

8       MR. BENNETT:  Judge, this is Len Bennett.

9  The answer to the question is we have not had any

10  further discussions since the filings as to the

11  notice.  We have had further discussions that we

12  continued even after the filings Friday, and then this

13  morning Mr. Love and I have been back and forth

14  regarding the generation of the class list.

15       The exchanges regarding the notice with the

16  Equifax counters to our notice and then our revisions

17  back, all that occurred Friday.  So there has not been

18  multiple rounds of exchanges regarding the notices in

19  the way that there had with respect to the list.

20       MR. GOHEEN:  This is Barry Goheen.  Let me

21  add to what Len was saying there.  I think we're very

22  close.  We, as Len just suggested, we traded -- I

23  guess Equifax sent a red line or proposed red line of

24  suggested edits off of what the plaintiff had

25  suggested earlier, and then, looks from what we're

1   able to tell, a lot of our suggestions were accepted.

2   A couple were not.  But I think those are, you know, a

3   couple that can either be worked out or we're very,

4   very close on notice, I guess, is the point.  I think

5   probably Len would agree with that.  I think we're

6   pretty close.

7           THE COURT:  Well --

8           MR. BENNETT:  Judge --

9           THE COURT:  I read what was filed with

10  Equifax, and then I matched it up with what was filed

11  in the Soutter filing, and the red line doesn't match

12  what actually was filed.  And just in a couple of

13  places it looks like, for example, how does Equifax

14  answer, it looks like that was picked up in what I

15  have from Soutter.  So it's been very hard for me to

16  go through these things.

17          Where is the difference now in the notice?

18          MR. BENNETT:  Judge, actually, the large is

19  in the (unintelligible) opening fold --

20          THE COURT:  What?  Wait a minute.  We lost

21  you.  I don't know what's happened, Mr. Bennett, but

22  something cut you off right in the middle of what you

23  were saying.  What?

24          MR. BENNETT:  Sorry, Judge.

25          THE COURT:  I asked you where is the

1  difference now using the Soutter filing that came with

2  the Soutter status report?

3        MR. BENNETT:  Yes, sir.  The first paragraph

4  right after the style of the case.  For us, it begins,

5  "If you resided in Virginia," and --

6        THE COURT:  Who was snoring there?

7        MR. BENNETT:  Probably everybody as I talk,

8  Judge.

9        But the defendant has really tried to just

10 use the class definition, and we include the class

11 definition later in the notice, but in that opening we

12 followed the Federal Judicial Center's study and

13 advice on really simplifying the introduction and

14 heading.  And so we have not legalized or whatever, if

15 such a word existed, we have not tried to use overly

16 complex language in our opening paragraph.

17        That's really the largest difference between

18 the parties in the notices.  There are some other

19 differences, but that's the biggest one.

20        MR. GOHEEN:  This is Barry Goheen.  I would

21 agree with that.  That's probably the largest

22 difference.  I guess our view is it seems like right

23 out of the box one would want to be advised of what

24 exactly the class definition is as opposed to a

25 paraphrasing of the definition, but I guess that's

1  just a difference maybe in philosophy.

2          I do think, however, on that point, the

3  plaintiff's bolded text does not mention Equifax.   It

4  says, "If you resided in Virginia during the time

5  frames or were subject to Virginia civil judgment."

6  It seems like you would at least want to disclose

7  Equifax as the defendant even though, of course, the

8  style of the case right above it does that.

9          THE COURT:  Well, I agree with that.  But I

10  believe that the simplified notice, the more readable

11  notice, is probably preferable.  I don't see that it

12  does any violence to the -- well, the problem that I'm

13  having with the simplified notice is this.  There are

14  restrictions to Virginia courts and the time period,

15  and I guess my reaction, Mr. Bennett, is that you

16  ought to use the class notification, the class

17  definition.

18          I understand what the Federal Judicial Center

19  has done, but sometimes it's better to stay with the

20  tested method.  So I think you-all ought to use that.

21          Are there any other differences that you-all

22  can't resolve immediately?

23          MR. GOHEEN:  I think the other differences

24  are defined as suggestions that Equifax made that were

25  not put in.  As far as we can tell, I think we're okay

1  with those not being put in.  There were a couple of

2  wordsmithing issues, and a couple of other things, but

3  I don't think anything that Equifax would characterize

4  as particularly significant.  So I think anything

5  further can be or will be worked out.

6         THE COURT:  I do think this, Mr. Bennett.

7  The format used in the Equifax proposal, which puts

8  the class up and across the page instead of halfway

9  down, I think it makes it more readable if you set it

10  up their way.

11        MR. BENNETT:  Yes, sir.  I actually agree

12  with that.  Your Honor, one of the challenges is that

13  we've not -- and it's not as if anybody has been

14  sitting on their hands.  I understand Equifax's

15  counsel has been interacting with us every hour about

16  the other issues we're working to resolve, but we have

17  not focused as heavily on resolving the differences,

18  and it's not because we don't think it's important, of

19  course, it's just Equifax's resources have been

20  diverted to our issues regarding the list.

21        THE COURT:  Has the law firm representing

22  Equifax diminished in size recently, Mr. Goheen?

23        MR. GOHEEN:  Not the team devoted to this

24  case, Your Honor.  I think I'll tactfully answer it in

25  that way.

1          THE COURT:  Well, I guess there has been the

2    other matter, hasn't there?

3          MR. GOHEEN:  Maybe I'll defer on that if it's

4    all right with the Court.

5          THE COURT:  I think that's a prudent

6    deferral.

7          MR. GOHEEN:  Thank you, Your Honor.

8          In seriousness, the answer is no.  Mr.

9    Bennett is correct.  We have focused, very diligently,

10   and I'm talking about both sides, Mr. Bennett and his

11   team and our team, on trying to get schedule and get

12   the class list issue, and this is just, you know, me

13   talking, not trying to attribute anything to Mr.

14   Bennett.  The notice is, obviously, very important,

15   but the notice likely is not going to go out for some

16   period of weeks just because the class list needs to

17   be generated first.  And I think that's what has had a

18   lot of attention, most of the attention, by the

19   parties.  But having said that, I do think the notice

20   is pretty much in its final stages at this point.

21         THE COURT:  Let's get that agreed and tender

22   a final notice.  Get that done right away.

23         MR. GOHEEN:  Yes, Your Honor.

24         THE COURT:  We'll have that done.  Now,

25   what's the problem with the class list?  It says the

1    issue is whether Equifax will generate the list or be

2    ordered to produce access to its general database so

3    the plaintiffs' experts may generate the list.  Who

4    wants what and what are the considerations?

5              MR. BENNETT:  Judge, the considerations are

6    --

7              THE COURT:  First, who wants what?  Mr.

8    Bennett, who wants what?  Who is it that wants Equifax

9    to generate the list and who is it that wants the

10   expert of the plaintiffs to generate the list?

11             MR. BENNETT:  I believe that both sides would

12   want Equifax to generate the list.  I'm not trying to

13   be Bennettese, but all other things equal, the

14   question is the timing restrictions that Equifax would

15   impose in Equifax's cost demands with respect to its

16   internal generation of those.

17             The parties, even just minutes before this

18   status call, have exchanged again another draft

19   internally of our proposed plan, and I believe, Your

20   Honor, that if we had another 24 hours that the matter

21   could be worked out.

22             We have compromised as to the timing

23   restrictions, the length of time Equifax has wanted.

24   It has been --

25             THE COURT:  What is the length of time that

1    Equifax wants?

2              MR. BENNETT:  Mr. Love or Mr. Goheen?

3              MR. GOHEEN:  The time that we discussed with

4    plaintiff and that we've agreed to with plaintiff

5    subject to, of course, the Court's approval is by

6    July 31 Equifax will provide 25 months of archive

7    credit file data on consumer's meeting certain

8    criteria.

9              And I agree with Mr. Bennett's comment that

10   if we had another 24 hours, we could probably resolve

11   the very narrow issues that remain, which primarily at

12   this point based on this mornings' conversation, it's

13   really one issue, which is the scope of plaintiff's

14   counsels' access to the data that would be produced to

15   the vendor that plaintiff eventually retains.

16             So we have negotiated, as Mr. Bennett said,

17   literally every day and sometimes, you know, every

18   hour to try to get this resolved, and we have it down

19   to this one very narrow issue.

20             THE COURT:  So you-all have agreed on how to

21   handle the costs, what they are, and how they'll be

22   handled?

23             MR. GOHEEN:  The agreement there, Your

24   Honor -- this is Barry Goheen.  The agreement there is

25   that the parties will or, I guess, Equifax would file

1   a motion for reimbursement or recoupment after those

2   costs are incurred.  In a sense, Equifax is advancing

3   the cost with the right to move the Court for

4   reimbursement and just essentially brief the issue

5   with the plaintiffs and put that issue before the

6   Court.

7           THE COURT:  How much are the anticipated

8   costs?  Surely you-all have a feel.

9           MR. GOHEEN:  We believe they'll be into the

10  six figures to be sure, Your Honor.

11          MR. BENNETT:  And, Judge, this is actually a

12  point of disagreement.  Our proposal and what I

13  understood that we were agreeing to, and we're

14  exchanging documents that would clarify that there

15  isn't any such disagreement, is that this matter would

16  be deferred.  It isn't that we agree that they would

17  have to petition the Court and that the Court will

18  determine the amount of the costs.

19          We intend to oppose Equifax's entitlement to

20  such costs on multiple bases, including that this is

21  the path, that this method of generating the list is

22  the path that Equifax has selected as opposed to the

23  alternative of providing the data unfiltered to us at

24  a less cost effective -- I mean, a more cost effective

25  level.

1          So what we have done, and I understood one of

2     the greatest concerns Equifax has, is not setting a

3     public precedent about its willingness to incur such

4     costs.  So we suggested that they could paper it and

5     document it, that they reserve, that Equifax reserves

6     the right to seek such costs if there is such a right.

7          THE COURT:  Is the that right, Mr. Love?  Is

8     that what you-all have agreed to?

9          MR. LOVE:  That's not exactly how we view it,

10    Your Honor.  Our view is that Equifax would advance

11    the costs and then reserve the right to seek those

12    costs through a motion filed with the Court at a later

13    date.

14         The plaintiff would not be precluded from

15    asserting any objections to those costs, not just the

16    amount of the costs, but these entitlement arguments

17    that Mr. Bennett raised and those types of things.

18    It's fair game any arguments he wants to make.

19         THE COURT:  What's the difference between

20    what you said and what he said?  I didn't see any

21    based on what you just told me, but you-all have been

22    talking about this a lot more than I have and

23    understand the subtleties of your conversation.  I

24    didn't pick them up.  What is it?  What's the

25    difference?

1          MR. GOHEEN:  This is Barry Goheen.  I do

2    think there's not a lot of difference.  I think what

3    Mr. Bennett was saying, he must have interpreted what

4    I said as sort of a concession that there'll be some

5    payment, and if I suggested that, then I don't think

6    that's right.  I think what Mr. Bennett said is

7    largely correct.

8          Equifax is reserving the right to make an

9    appropriate motion with the Court for payment of those

10   costs.  Plaintiffs have reserved the right or if

11   Equifax files such a motion, plaintiffs can object to

12   the payment of any costs or make an entitlement

13   argument.

14         THE COURT:  You mean take the position that

15   costs aren't allowed at all because of whatever

16   reason?

17         MR. GOHEEN:  Correct.

18         THE COURT:  All right.  Well, it sounds to me

19   like you-all are in agreement on that.  Get that

20   straight.

21         Now, I am a little bit concerned about it

22   being the 16th of May, and you-all are talking about

23   10 more weeks to generate a class list.  All of June,

24   all of July, and two weeks of May.  That seems right

25   long to me.

1      What's the situation there, Mr. Love?  Why is

2  it going to take so long?

3      MR. LOVE:  Your Honor, we have had

4  consultations with Equifax's computer programmers and

5  technology experts who would be in charge of running

6  this data.  The July 31 date is actually, from

7  Equifax's view, extremely conservative given all the

8  steps that are required to produce this data.

9      They have provided to us a list of items that

10 they have to go through in order to design the search,

11 run the search, do quality and data assessment on the

12 search, and all this for a very large number of

13 consumers.  Nothing like this has been done before and

14 it's not something that can be done with the push of a

15 button.

16     These searches are very complex and

17 especially when you start narrowing it to the

18 criteria, the specific criteria, like is done here.

19 So that is what requires so much time.  It's the

20 design, the development, the implementation, the Q.A.,

21 it's a very time consuming and resource consuming

22 process.

23     THE COURT:  Mr. Bennett, if their database

24 were turned over tomorrow to your expert, how long

25 would your expert take to get it done?

1          Mr. Bennett, are you on the phone?

2          MR. BENNETT:  I am, Judge.  Sorry.  I had

3    mooted my phone.

4          THE COURT:  No, you didn't moot your phone.

5          MR. BENNETT:  I thought I did.

6          THE COURT:  You muted your phone.

7          MR. BENNETT:  I'm sorry, Judge.  I muted my

8    phone.

9          I do think that the middle of July if we had

10   a third party do it -- we negotiated with Equifax that

11   it would produce this information on a rolling basis

12   and, thus, it would not really slow down the process

13   of taking that data and matching it against the

14   Virginia Supreme Court data as we go through this.

15         THE COURT:  What do you mean producing it on

16   a rolling basis?

17         MR. BENNETT:  As Equifax searches and

18   compiles the list on a monthly tape basis, then we

19   would have that data to then run through our vendor.

20         THE COURT:  But, according to Mr. Love, what

21   takes the time is not the actual running of the data,

22   it's the design of the system unless I misunderstood.

23         When do you expect the design of the system

24   to be completed, Mr. Love?

25         MR. LOVE:  It's both things, Your Honor.  It

1   is not just the design of the system.  It is also the

2   running of the programs.  And the design of the system

3   does not take as long as the actual running, but the

4   design takes a few weeks, and then the running takes

5   the longer period of time.  But I don't think that

6   we've heard any estimate from any vendor because I

7   don't know that any vendor has been retained yet.

8          So that's just complete speculation, whereas

9   our people who do this every day or at least manage

10  Equifax's data and design computer programs every day,

11  they have very detailed estimates of how much time

12  this would take.

13         THE COURT:  Do you think it could all be done

14  by the end of July?

15         MR. LOVE:  Yes, sir.

16         THE COURT:  All right.  And you're in

17  agreement with that, Mr. Bennett?

18         MR. BENNETT:  Yes, sir, I am.

19         THE COURT:  All right.  Then I think we'll

20  entrust it to Equifax to do it that way with this

21  caveat:  I would like to have someone from the law

22  firm intimately involved in the process, someone like

23  Mr. Goheen or Mr. Love, to follow through on a regular

24  basis to make sure these people are not putting this

25  project off for some other project, to make sure that

1  any problems are being addressed immediately, and that

2  it's sorted out, and then I want the law firm to

3  report regularly to Mr. Bennett so that if there's any

4  problem, we don't come up with something on July 31 in

5  the way of a request to have more time.

6       Is there any reason that can't be done,

7  Mr. Goheen or Mr. Love?

8       MR. LOVE:  No, Your Honor, we understand the

9  Court and we will do exactly as Your Honor just

10 outlined.

11      THE COURT:  It has been my experience in

12 having to deal with like problems in other settings

13 that as a general proposition the people who handle IT

14 departments see a lot of bugaboos that actually aren't

15 bugaboos and are apprehensive where there's no need

16 for apprehension and can end up spending a fair amount

17 of time dithering over things that don't make a lot of

18 difference, and it's for that reason that I have

19 asked, and I tend usually to do this, to have an

20 intimate involvement by the law firms so we make sure

21 it's done.

22      On the other hand, I also have seen law firms

23 create such problems that the IT people throw up their

24 hands, pull out their hair, and want to shoot their

25 lawyers.  So I don't want anybody exposed to that risk

 1   either.  So you-all be reasonable while you're doing

 2   it.

 3         All right.  Now, what's the issue about

 4   access of class counsel to the -- what data is it

 5   we're talking about?  Are you talking about the

 6   ultimate list generated or the underlying data or

 7   what?

 8         MR. LOVE:  No, Your Honor.  This is Mr. Love.

 9   The issue is this:  Equifax is going to produce a very

10   large set of data to plaintiff's outside vendor yet to

11   be named.  And that large group of data will contain

12   information about people who may or may not be in the

13   class.  If plaintiff's vendor through its search

14   determines that people on the data from Equifax are in

15   the class, Equifax doesn't have any problem with

16   plaintiff's counsel having access to that information

17   about the class members subject to appropriate

18   security vetting and things like that.

19         It's the information about people who are not

20   in the class that Equifax wants to restrict so that

21   plaintiff's counsel does not have access to people

22   who, though on the initial set of data, are not

23   determined to be in the class by plaintiff's vendor.

24         THE COURT:  Mr. Bennett.

25         MR. BENNETT:  Judge, we don't have any

1    difficulty with that limitation and we've worked

2    through that.  I think both sides agree.  That is, we

3    would not have access to the pre-class list data.

4         THE COURT:  Mr. Bennett, it sounds to me like

5    from what you said and Mr. Love said you-all have

6    agreed on this point; is that right?

7         MR. BENNETT:  We have not entirely, Your

8    Honor.

9         THE COURT:  Well, then why not?

10        MR. BENNETT:  Because there are two other

11   reasons in which we would need to be able to interact

12   with the vendor or the administrator. Number one is

13   process by which the vendor would create the full

14   protocol.  So we're going to have raw data as we work

15   it through and we debug the administrator's system to

16   make sure that they are correctly generating a list.

17   And I think the parties have talked about a sample.

18   We have exchanged a proposal about that, and

19   hopefully, again, within short order we would have

20   agreed.

21        The second difficulty is that as this process

22   is ongoing there will be some anomalies in which the

23   administrator needs to seek feedback not just from us

24   but from the defense counsel.  So we have, as well,

25   exchanged the process.

1          So, for example, if the administrator says,

2     "I have these files where the names appear in

3     different fields in Equifax systems, how shall I

4     handle these?" then the administrator needs to be able

5     to share that information with us.

6          And we don't, as I've explained, and

7     certainly I think that they count on this explanation,

8     to defendant's counsel, our expectation is the

9     defendant would be involved in this process.  So what

10    we have suggested, and I think that Mr. Love's current

11    draft is close, we just received real shortly before

12    the call, is that there is -- a proposal will have an

13    obligation to meet and confer about any such

14    anomalies, and if they can be resolved, we would be

15    asking Your Honor to just set in it the order, the

16    notice order, sending those issues to a magistrate

17    judge.

18         We certainly don't mind if Your Honor has it,

19    but given the limitations on the district court

20    dockets right now, the suggestion that the parties

21    would be proposing, I think, is that if there are

22    questions such as can Rust share the file of these 10

23    files that have stuck out, and we can't work it out,

24    and we most certainly likely can, but then we would go

25    to whatever magistrate judge Your Honor would task

1   with that for -- to sort that out.

2          THE COURT:  All right.  Well, it sounds to me

3   like you-all are fairly close.  I agree that in the

4   process of making sure the system works, that counsel

5   for the class has to have access to the information in

6   order to do that, and that in cases of close calls or

7   problems, the class counsel has to have access to that

8   kind of information.

9          I also believe that in both instances counsel

10  for Equifax has the right to know and understand what

11  is happening and why the information is being given

12  and why the information is given and to whom it is

13  given and ought to all be able to work that out with a

14  little bit of further drafting it sounds to me like.

15  So let's work to get that done and to get that

16  agreement tendered with a consent order forthwith.

17         We will agree that a magistrate judge will be

18  assigned to handle the matter.  Is there a magistrate

19  judge assigned to settlement already?

20         MR. BENNETT:  I believe Judge Dohnal had been

21  assigned to settlement.

22         MR. GOHEEN:  I believe it was Judge Lauck.

23         MR. BENNETT:  All right.  Judge Lauck.

24         THE COURT:  In this case it might be best to

25  let Judge Lauck actually handle the disagreements over

1  this issue, too, wouldn't it?  Actually, I'll just

2  assign it to Judge Dohnal and let him handle any

3  disagreements.  All right?

4           MR. BENNETT:  Yes, sir.

5           THE COURT:  When are we going to get these

6  consent orders in here so we can get this all

7  straightened out?

8           MR. BENNETT:  I'll be optimistic and say

9  tomorrow, but I would like if the Court could permit

10 us to get them filed by close of business Wednesday.

11          THE COURT:  All right.  File them by close of

12 business Wednesday.  It looks be me like everything

13 else has been sorted out.

14          Also file the revised notice with the

15 statement that that's what you-all have reached by

16 agreement.

17          The notice is not going to go out until

18 there's a list anyway, but we'll have to cross the

19 bridge about what to do if there's a list and the

20 Fourth Circuit hasn't decided the issue, if and when

21 that comes, because we sure don't want to send

22 something out and have to issue a recall.  That just

23 creates confusion.

24          I really don't think the Fourth Circuit is

25 going to have any trouble with this class definition

1    or the class certification, but if it does, that's all

2    right, and we'll work through it.  If I thought it was

3    a close call, I would just slow the whole process

4    down, but I don't think it is, and I think doing what

5    you're doing is a useful and productive effort that

6    will allow the matter to get litigated promptly.

7            So I expect to hear from you on Wednesday.

8    Is there anything else you-all need to take up?  I

9    think your proposed schedule is fine.

10           MR. GOHEEN:  Your Honor, this is Barry

11   Goheen.  The Court when we were last on the phone with

12   the Court had mentioned working through the Court's

13   schedule with regard to trial.  I don't know if

14   there's been an update on that from the Court's end or

15   not.

16           THE COURT:  Well, we're looking to -- before

17   the notice goes out, I'd like to have a trial date, at

18   least a tentative trial date, but I think right now I

19   still don't -- I need to know how long the trial would

20   take.  I need a reasonable estimate to know how long

21   the trial will take.  And I'm not sure we know that

22   yet.

23           Also on the discovery, you can have the

24   discovery you want, Mr. Bennett.  That's all right.

25   Just don't abuse it.  Just because you have 45

1  interrogatories doesn't mean you have to use them all.

2          MR. BENNETT:  Yes, sir.  We understand that.

3          THE COURT:  And you don't have to be abusive

4  if it.  And if I find there's a problem, Mr. Goheen

5  will have access to the Court to reconsider the whole

6  thing.  So we're not going to worry about that.

7          How long before you think you'll be in a

8  position for me to know how long this trial would take

9  if it goes to trial?

10         MR. BENNETT:  Judge, I understand the

11 importance of setting aside the docket, but it may not

12 be until after summary judgment that Your Honor has a

13 full answer.

14         THE COURT:  Well, I'm looking at sometime in

15 the spring of next year for a trial date, but we'll

16 just have to be flexible and wait and see.  I think

17 artificially setting a trial date is not necessary.

18         I guess right now what I can do is give you

19 one date.  I don't think it's going to take more than

20 a week to try the case.

21         MR. BENNETT:  Yes, sir.

22         THE COURT:  Right now I want you to -- let's

23 see.  The summary judgments will be in by the end of

24 the year?

25         MR. GOHEEN:  Yes, Your Honor.

```
 1              THE COURT:  I'm looking for a calendar for
 2     next year.  Let's look at the week of May the 15th
 3     tentatively for the trial.  Just reserve that on your
 4     books so that we don't have any problems.
 5              How does that suit you-all?  Anybody got any
 6     long-term plans that that will interfere with?
 7              MR. BENNETT:  Judge, that's the best part
 8     about being in this docket.  Plaintiff doesn't.
 9              MR. LOVE:  That's fine, Your Honor.  Thank
10     you.
11              THE COURT:  Well, it avoids spring vacations
12     and Mother's Day and all that kind of thing.
13              MR. GOHEEN:  That's the week that begins
14     Monday, May 14, 2012?
15              THE COURT:  I thought it was the 15th, but
16     maybe I was looking at the calendar wrong.  Let me
17     look and see what I did wrong.  Yes, it's May 14.
18     When is Mother's Day?  It's the second Sunday in May,
19     isn't it?
20              MR. LOVE:  Right.  I think it would be the
21     previous Sunday, I think, Your Honor, meaning the
22     13th.
23              THE COURT:  Yes.  Well, maybe we ought to do
24     May 1 then.  Is that a problem for anybody?
25              MR. BENNETT:  No, sir.
```

 1          MR. GOHEEN:  No, sir.

 2          THE COURT:  All right.  Let's tentatively set

 3  the trial for the week of May 1, 2012.  I'll issue an

 4  order that says it is done and it is tentatively set.

 5          In fact, why don't you just redo -- well,

 6  I'll just take what's in your schedule and put it into

 7  a schedule that will take care of everything including

 8  the tentative trial date, but realizing that we don't

 9  know the dimensions yet, if there's a problem, we're

10  just going to have to be flexible.  But now it's on

11  your book and mine and we can have something or not

12  depending upon what ultimately happens with a lot of

13  things that are to occur between now and then.

14          Is there anything else that you-all need to

15  take up?  Mr. Bennett?

16          MR. BENNETT:  No.

17          THE COURT:  Mr. Goheen?

18          MR. GOHEEN:  No, Your Honor.

19          THE COURT:  All right.  Well, again, I

20  appreciate the productive manner in which you-all have

21  worked together trying zealously to advocate for your

22  clients at the same time comporting yourselves in a

23  highly professional way, and it has resulted in some

24  decisions.  And we'll just abide the events.

25          I don't remember whether the Fourth Circuit

1    hears any arguments on these motions or not.  Does it

2    usually, Mr. Bennett or Mr. Goheen?  What do you all

3    know?

4            MR. GOHEEN:  I think it may be, in my

5    experience, Mr. Bennett may have a different one, it's

6    a case by case.  Certainly not whether to grant the

7    petition.  There won't be an argument on that.

8            THE COURT:  Yes, I've never known them to do

9    an argument on whether to grant it.  Am I wrong about

10   that?  Has that happened?

11           MR. GOHEEN:  I've never heard of it before,

12   Your Honor.  If it were granted, then I would say it's

13   probably a likelihood there might be a --

14           THE COURT:  They usually put it on the

15   calendar then, I think.

16           All right.  Well, we'll just abide the event,

17   and we're set up to go forward if they deny the

18   petition.  If they grant it, we'll just have to

19   revisit what we're doing.

20           MR. GOHEEN:  Thank you, Your Honor.

21           THE COURT:  All right.  Thank you all very

22   much.

23           MR. BENNETT:  Thank you.

24           THE COURT:  Bye.

25

1          (The proceedings were adjourned at 10:43

2    a.m.)

3

4          I, Diane J. Daffron, certify that the

5    foregoing is a true and accurate transcription of my

6    stenographic notes.

7

8                    /s/
     _____        _____
     DIANE J. DAFFRON, RPR, CCR           DATE

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25