**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

**No. 11-1564**

---

DONNA K. SOUTTER, For herself and on behalf of all similarly situated individuals; TONY LEE WEBB,

   Plaintiffs – Appellees,

  v.

EQUIFAX INFORMATION SERVICES, LLC,

   Defendant – Appellant.

------------------------------------

CHAMBER OF COMMERCE OF THE UNITED STATES OF AMERICA; CONSUMER DATA INDUSTRY ASSOCIATION,

   Amici Supporting Appellant,

VIRGINIA POVERTY LAW CENTER; VIRGINIA TRIAL LAWYERS ASSOCIATION; RAPPAHANNOCK LEGAL SERVICES, INC.; LEGAL AID JUSTICE CENTER; NATIONAL ASSOCIATION OF CONSUMER ADVOCATES,

   Amici Supporting Appellees.

---

Appeal from the United States District Court for the Eastern District of Virginia, at Richmond.  Robert E. Payne, Senior District Judge. (3:10-cv-00107-REP)

---

Argued:  September 19, 2012   Decided:  December 3, 2012

---

Before GREGORY, SHEDD, and AGEE, Circuit Judges.

Reversed and remanded by unpublished opinion. Judge Shedd wrote the opinion, in which Judge Agee joined. Judge Gregory wrote a dissenting opinion.

---

**ARGUED:** Paul D. Clement, BANCROFT, PLLC, Washington, D.C., for Appellant. Deepak Gupta, Washington, D.C., for Appellees. **ON BRIEF:** Jeffrey S. Bucholtz, KING & SPALDING LLP, Washington, D.C.; Barry Goheen, Merritt E. McAlister, KING & SPALDING LLP, Atlanta, Georgia, for Appellant. L. Steven Emmert, SYKES, BOURDON, AHERN & LEVY, PC, Virginia Beach, Virginia; Leonard A. Bennett, CONSUMER LITIGATION ASSOCIATES, PC, Newport News, Virginia; Stuart T. Rossman, NATIONAL CONSUMER LAW CENTER, Boston, Massachusetts, for Appellees. Robin S. Conrad, Kate Comerford Todd, NATIONAL CHAMBER LITIGATION CENTER, INC., Washington, D.C.; John H. Beisner, Jessica Davidson Miller, Geoffrey Wyatt, SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP, Washington, D.C., for Chamber of Commerce of the United States of America, Amicus Supporting Appellant. Brad D. Weiss, Emily D. Barnes, CHARAPP & WEISS, LLP, McLean, Virginia, for Consumer Data Industry Association, Amicus Supporting Appellant. Thomas D. Domonoske, Harrisonburg, Virginia, for Amici Supporting Appellees.

---

Unpublished opinions are not binding precedent in this circuit.

SHEDD, Circuit Judge:

Equifax Information Services, a credit reporting agency (CRA), appeals the district court's certification of a class of Virginia residents with potentially inaccurate Virginia court judgments on their credit reports. Because the certified class does not satisfy the requirements of Federal Rule of Civil Procedure 23, we reverse.

I.

A.

On June 22, 2007, the Virginia Credit Union filed suit against Donna Soutter in the Richmond General District Court to recover a $15,000 credit card debt. After Soutter and the Credit Union agreed to a payment plan, the Credit Union agreed to dismiss the suit. Unfortunately, the Credit Union's attorney failed to inform the District Court, and a default judgment was entered against Soutter. At Soutter's request, the Credit Union moved to set aside the judgment, and on March 20, 2008, the District Court entered an order that noted Soutter's case was "set aside and dismissed without prejudice." (J.A. 430).

After this order, Soutter sent notice to Equifax, requesting that Equifax remove the judgment from her credit report. At that time, Equifax informed Soutter that the judgment was not yet on her file. On December 20, 2008, Soutter

sent an additional letter to Equifax, claiming that she was denied credit because of the judgment. She included a copy of the District Court order dismissing the action against her with this letter. In response, Equifax removed the judgment from her report.

Although it is not required to do so, Equifax chooses to record court judgments on consumer credit reports. Equifax has never directly collected these judgments itself, instead relying on vendors to provide the information. Since February 2007, LexisNexis has been Equifax's vendor for collecting Virginia court records. Virginia's court system is comprised of more than 250 individual circuit and general district courts. Each county and independent city has a general district court with jurisdiction over small claims—those less than $25,000. There are 120 circuit courts of general jurisdiction. The court records are managed by the Office of Executive Secretary of the Supreme Court of Virginia, which operates a shared case management system for the state's courts. The clerk of each local court uses a uniform system for recording judgments, and the judgment sheet available in the case management system lists only the most recent case disposition. For example, if a case is vacated and then later dismissed, the system would record the case simply as dismissed.

LexisNexis used several different collection methods for capturing the court records. It used in-person review for all circuit courts through independent contractors. These in-person reviews have some variety as well-some clerks provide a weekly summary printout to the reviewer, some let the reviewer peruse paper records, and some permit the reviewer use of the computer and case management system. For the general district courts, the Supreme Court provided LexisNexis with bulk data feeds until May 2009. LexisNexis then used independent contractors to verify the bulk feeds in person. In May 2009, the Supreme Court stopped providing these feeds. LexisNexis then used a "webscrape" program to grab the data from the Court's website. This practice ended in December 2009 when the Virginia Supreme Court enacted new security measures, including a challenge-response test, that limited the ability of automated programs to access the public records. LexisNexis thus had to switch exclusively to in-person review from December 2009 to February 2010 for general district court records. LexisNexis admittedly had difficulty performing its task of collecting records from time to time.

B.

On February 17, 2010, Soutter filed this civil action against Equifax in the Eastern District of Virginia, alleging that Equifax violated the Fair Credit Reporting Act (FCRA) by

using unreasonable procedures in reporting judgments from the Virginia court system. In her initial class complaint, Soutter sought to represent a class of "[a]ll consumers for whom Equifax furnished a consumer report which reported a judgment that was either set aside, vacated or dismissed with prejudice." (J.A. 14). Nine days later, Soutter filed an amended class complaint narrowing the proposed class to all consumers in Virginia "about whom Equifax furnished a consumer report to a third party that showed a civil judgment in the General District Court for the City of Richmond at any time on or after February 17, 2008" when, as of the date of the report, the judgment had been set aside. (J.A. 25). During discovery, Soutter changed her proposed class for the second time, amending it to include judgments from all Virginia trial courts. (J.A. 450). In moving to certify the class, she changed the class definition for the third time, while also "suggest[ing]" that persons with actual damages of more than $1,000 should be excluded. (J.A. 216). Soutter offered a fourth change to the class definition in her reply brief to the certification motion, leading the district court to begin the subsequent hearing on class certification by noting "this giving me a dartboard to throw at doesn't help me much. I want to know what the class is now that you think ought to be certified." (J.A. 624). Soutter

confirmed that the class she sought to certify was the class defined in her reply brief.

During this hearing, Equifax attacked Soutter's ability to ascertain the size and scope of the class. In response, Soutter explained that, by ordering judgment disposition data from the Virginia Supreme Court, the class could be readily ascertained. Unfortunately, Soutter's efforts were counterproductive in that the data she ordered did not even contain her own name.

Despite the ever-evolving class definition, on March 30, 2011, the district court granted Soutter's motion and certified the following class:

> All natural persons, for whom Equifax's records note that a credit report was furnished to a third party who requested the credit report in connection with an application for credit on or after February 17, 2008 to February 17, 2010, other than for an employment purpose, at a time when any Virginia General District Court or Circuit Court judgment that had been satisfied, appealed, or vacated in the court file more than 30 days earlier was reported in Equifax's file as remaining unpaid, which persons suffered actual damages of less than $1,000 as a result of a report by Equifax that did not accurately report that the judgment had been satisfied, appealed, or vacated.

(J.A. 717-18).

Equifax filed a petition for permission to appeal under Rule 23(f) raising, among other issues, the difficulty with ascertaining the class given the exclusion of individuals with actual damages claims of greater than $1,000. In response, during a status conference, Soutter requested that the class

definition be amended again—marking at least the fifth proposed change to the class definition. The district court agreed and amended the class definition by deleting the reference to persons who suffered actual damages. The parties informed us of this new class definition, and we granted Equifax's petition for permission to appeal.

## II.

### A.

On appeal, Equifax contests the district court's certification of the class. We review a class certification order for abuse of discretion. Gunnells v. Healthplan Services, Inc., 348 F.3d 417, 424 (4th Cir. 2003). Under Rule 23(a), a party moving for class certification must meet the following four prerequisites: (1) the class is so numerous that joinder is impossible; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the class representative are typical of the claims or defenses of the class; and (4) the representative will adequately protect the class interests. Fed. R. Civ. P. 23(a). These requirements are referred to as numerosity, commonality, typicality, and adequacy of representation. Rule 23(b) further requires that the class meet one of three additional requirements. As relevant here, Rule 23(b)(3) provides for class certification if the court

determines that common questions of law or fact predominate over any questions affecting only individuals and that a class action is superior to other available litigation methods.

Importantly, the Supreme Court recently reminded courts that "[a] party seeking class certification must affirmatively demonstrate his compliance with the Rule." Wal-Mart Stores, Inc. v. Dukes, 131 S.Ct. 2541, 2551 (2011). In determining if a party has met this burden, "sometimes it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question." Id. (internal quotation marks omitted). The district court must perform a "rigorous analysis," id. (internal quotation marks omitted), to ensure that a class certification is appropriate, because class actions remain "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only," Califano v. Yamasaki, 442 U.S. 682, 700-01 (1979).

### B.

On appeal, Equifax contends that Soutter cannot satisfy the typicality or adequacy standards in Rule 23(a) or the predominance and superiority standards in Rule 23(b)(3). We agree with Equifax that Soutter failed to show typicality under Rule 23(a)(3) and, accordingly, that the district court abused its discretion in certifying the proposed class.

9

Soutter's action arises under the FCRA. That statute provides, in relevant part:

> Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates.

15 U.S.C. § 1681e(b). A CRA violates § 1681e(b) if (1) the credit report contains inaccurate information; and (2) the CRA did not follow reasonable procedures to assure maximum possible accuracy. Dalton v. Capital Associated Indus., 257 F.3d 409, 415 (4th Cir. 2001). Soutter has claimed only statutory damages, which are authorized by 15 U.S.C. § 1681n(a)(1)(A) for willful violations and range from $100 to $1,000.

Typicality "goes to the heart of a representative['s] ability to represent a class." Deiter v. Microsoft Corp., 436 F.3d 461, 466 (4th Cir. 2006). Thus, Soutter's "interest in prosecuting [her] own case must simultaneously tend to advance the interests of the absent class members." Id. Typicality "tend[s] to merge" with commonality, insofar as both "serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." General Tele. Co. of Southwest v. Falcon, 457 U.S. 147, 158 n.13 (1982).

10

Thus, "[t]he essence of the typicality requirement is captured by the notion that 'as goes the claim of the named plaintiff, so go the claims of the class.'" Deiter, 436 F.3d at 466 (quoting Broussard v. Meineke Discount Muffler Shops, Inc., 155 F.3d 331, 340 (4th Cir. 1998)). While Soutter's claim need not be "perfectly identical" to the claims of the class she seeks to represent, typicality is lacking where "the variation in claims strikes at the heart of the respective causes of action." Id. at 467.

To determine if Soutter has shown typicality, we compare her claims and Equifax's defenses to her claims with those of purported class members by reviewing the elements of Soutter's prima facie case and the fact supporting those elements and examining "the extent" to which those facts "would also prove the claims of the absent class members." Id.

In this case, Soutter's claim under § 1681e(b) requires her to prove that (1) her credit report was inaccurate; (2) Equifax's unreasonable procedures caused the inaccuracy; and (3) Equifax's behavior was willful. Facts supporting Soutter's claim include that her report was inaccurate because her judgment had been dismissed and that she sent letters to Equifax informing them of the possible inaccuracy before it occurred. This second fact bears upon whether Equifax's behavior was willful. Soutter's facts would also include the manner in which

11

LexisNexis procured judgment data for general district courts in 2008.

This evidence, however, illustrates that Soutter's claim is not typical. As in Deiter, Soutter's claim is "typical" only on an "unacceptably general level." Deiter, 436 F.3d at 467. That is, Soutter is an Equifax customer whose report was inaccurate because Equifax incorrectly reported a judgment that had later been dismissed. On "a more directly relevant level," her claim has "meaningful differences" from the class she seeks to represent. Id. LexisNexis used in-person review for the circuit court records while employing at least three different means of collecting general district court records during the class period. Proof that Equifax's behavior was unreasonable because of the manner in which LexisNexis collected data from the Richmond General District Court in Soutter's case does not "advance" the claim of a class member whose judgment was from a circuit court in 2010. Soutter's claim simply varies from any potential class plaintiff with a circuit court judgment, and from many potential plaintiffs with general district court judgments, depending on the date of the judgment.

In addition, to recover statutory damages, Soutter must show willfulness. Proof that Equifax's conduct was willful toward Soutter because she sent letters in advance informing Equifax that the case against her was dismissed will not advance

12

the claims of other class members. These problems are exacerbated because Soutter is claiming only statutory damages, which typically require an individualized inquiry. See Stillmock v. Weis Markets, Inc., 385 Fed. App'x 267, 277 (4th Cir. 2010), (Wilkinson, J. concurring) (noting "because statutory damages are intended to address harms that are small or difficult to quantify, evidence about particular class members is highly relevant to a jury charged with this task").

In certifying the class, the district court concluded that Soutter was typical of the class she seeks to represent because she was "challenging Equifax's alleged uniform failure to establish or to follow reasonable procedures." (J.A. 698). This analysis is conducted at the same "general level" we rejected in Deiter. Wal-Mart clarified, in examining commonality under Rule 23(a)(2), that "the members of a proposed class do not establish that 'their claims can productively be litigated at once,' merely by alleging a violation of the same legal provision by the same defendant." M.D. ex rel. Stukenberg v. Perry, 675 F.3d 832, 840 (5th Cir. 2012) (quoting Wal-Mart, 131 S.Ct. at 2551). Likewise, Soutter cannot satisfy typicality simply by asserting a violation of § 1681e(b) by Equifax.

In sum, if the district court had performed the rigorous analysis Wal-Mart dictates, it would have concluded a

13

"substantial gap" exists between Soutter's proof and that of class members. Deiter, 436 F.3d at 468.

### III.

For the foregoing reasons, we reverse the district court's order granting class certification and remand for further proceedings.*

REVERSED AND REMANDED

---

* Because we conclude that Soutter failed to satisfy Rule 23(a)(3)'s typicality requirement, we have not addressed Equifax's additional arguments on appeal. If, on remand, the district court is presented with a renewed request for certification, any proposed class is subject to the "rigorous analysis" under all four Rule 23(a) factors.

GREGORY, Circuit Judge, dissenting:

I disagree with the majority's holding that the district court abused its discretion in certifying Soutter's class. While the majority correctly recites the standard guiding this Court's typicality analysis under Federal Rule of Civil Procedure 23, its application impermissibly narrows the class representative's claim and greatly impedes the future of class actions against Credit Reporting Agencies (CRAs) under the pertinent provisions of the Fair Credit Reporting Act (FCRA). Therefore, I respectfully dissent.

The typicality requirement of Rule 23(a)(3), as underscored by the majority, is not satisfied where "the variation in claims strikes at the heart of the respective causes of action." Deiter v. Microsoft Corp., 436 F.3d 461, 466 (4th Cir. 2006). At the "heart" of § 1681e(b) are two requirements: (1) that the credit report is inaccurate; and (2) that the CRA did not employ reasonable procedures to ensure maximum possible accuracy of the credit reports it furnished. Dalton v. Capital Associated Indus., 257 F.3d 409, 415 (4th Cir. 2001). For Soutter, so long as proving these elements for her claim advances the claims of other class members, she is a typical class representative. See Deiter, 436 F.3d at 466 ("The essence of the typicality requirement is captured by the notion that 'as goes the claim of the named plaintiff, so go the claims of the class.'") (quoting

15

Broussard v. Meineke Disc. Muffler Shops, Inc., 155 F.3d 331, 340 (4th Cir. 1998)).

Inhibiting Soutter's ability to satisfy the second requirement, the majority narrows the scope of the reasonableness inquiry by creatively assessing the handful of procedures employed by Equifax's vendor, LexisNexis. The majority asserts: "Proof that Equifax's behavior was unreasonable because of the manner in which LexisNexis collected data from the Richmond General District Court in Soutter's case does not 'advance' the claim of a class member whose judgment was from a circuit court in 2010." This analysis, however, misses the point; liability under 15 U.S.C. § 1681e(b) is not limited to the actions of a CRA vendor. Rather, it reaches the CRA itself. In fact, § 1681e(b) provides: "Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." (Emphasis added). The reasonableness of preparing a consumer report extends beyond how a CRA vendor collects data; included in the inquiry is the CRA's reliance on the information it receives.

Consistent with this understanding, we have held that where a CRA "had no procedures governing the sources that a subvendor could rely upon," a court could determine that the CRA did not

employ reasonable procedures under § 1681e(b). Dalton, 257 F.3d at 416-17. Likewise, a court could determine that Equifax's procedures were unreasonable because they fashioned an inefficient system that failed to monitor, review, and correct the prevalent errors caused by its vendor. Proving that these procedures -- or lack thereof -- were unreasonable would not only advance Soutter's claim, but would advance the claims of the entire class. Put differently, the district court would not need to conduct mini-trials for each member of Soutter's class.

This is the argument posited by Soutter in her Complaint and argued in her brief. Additionally, in light of the facts presented before it, this is the position the district court relied on in exercising its discretion to certify the class. See Soutter v. Equifax Info. Services, LLC, 3:10CV107, 2011 WL 1226025 (E.D. Va. Mar. 30, 2011) ("Equifax's knowledge of the allegedly unreasonable uniform procedures used by LexisNexis, the actual vendor collecting the information, was the same for Soutter, as for the class.") (emphasis added). The majority, however, evades this argument by misdirecting the inquiry into a determination of what LexisNexis did.

In the same vein, the majority narrows its focus as to whether the class can prove wilfullness by looking at the individual circumstances surrounding Soutter. While demonstrating that Soutter sent letters to Equifax would

17

certainly advance her individual claim, such specific proof is not necessary to prove that Equifax acted willfuly to the entire class. Instead, to prove willfulness under the FCRA, the class would need to establish that Equifax acted either knowingly or recklessly. See Safeco Ins. Co. of Am. v. Burr, 551 U.S. 47, 59-60 (2007). Thus, if Equifax's procedures -- or again, lack thereof -- entailed "an unjustifiably high risk of harm that is either known or so obvious that it should be known," this finding would advance the claims of the entire class. See id. at 68 (quoting Farmer v. Brennan, 511 U.S. 825, 836 (1994)).

Ultimately, under the majority's constricted analysis, CRA's are encouraged to hide behind the inconsistencies of their vendors and, in turn, are shielded from significant liability -- even if they fail to assure maximum possible accuracy in their credit reports. This is because, so long as vendors use varying procedures, no plaintiff will be a typical class representative, and consequently, no class will be certified. CRAs will remain subject to only small individual claims, such as those covered by Soutter's class (between $100 and $1,000). Yet, because potential plaintiffs might not be aware of their claims or are otherwise unwilling to pursue such small amounts, it is likely that these claims will go without redress. If we follow the majority's reasoning, little can be done to carry out the FCRA's purpose of eliminating CRA reports that "are systematically

18

biased against the consumer." 115 Cong. Rec. 2410, 2412 (1969) (statement of Sen. Proxmire); see also Saunders v. Branch Banking & Trust Co. of Va., 526 F.3d 142, 147 (4th Cir. 2008) ("To this end, FCRA requires CRAs to follow procedures in reporting consumer credit information that . . . are 'fair and equitable to the consumer.'") (citing 15 U.S.C. § 1681(b)). For these reasons, I dissent.