UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Richmond Division

**DONNA K. SOUTTER,**
**For herself and on behalf of all**
**similarly situated individuals,**

      **Plaintiff,**

v.                          **CIVIL ACTION NO. 3:10-cv-00107**

**EQUIFAX INFORMATION SERVICES, LLC,**

      **Defendant.**

### PLAINTIFF'S MEMORANDUM IN SUPPORT OF
### AMENDED MOTION FOR CLASS CERTIFICATION

Comes now the Plaintiff, DONNA K. SOUTTER, for herself and on behalf of all other

similarly situated individuals, by counsel, and for her Memorandum in Support of her Amended

Motion for Class Certification, she states as follows:

### OVERVIEW

The Court has previously considered and granted Plaintiff's initial Motion for Class

Certification.  The Court found that Plaintiff's claim and this class satisfied all of the elements of

Fed. R. Civ. P. 23(a) and 23(b)(3).  Soutter v. Equifax Info. Services, LLC, 3:10CV107, 2011

WL 1226025 (E.D. Va. Mar. 30, 2011) *rev'd and remanded,* 11-1564, 2012 WL 5992207 (4th

Cir. Dec. 3, 2012).  In reaching this decision, the District Court considered 108 pages of briefing,

including Equifax's 77 page opposition.  (Docket No. 77).  In same, Equifax mentioned the word

"typicality" six times.  That argument of course changed entirely on appeal and while Plaintiff

does not now have a right or a means to complain or question the governance of the Court of

Appeal's decision, certainly Equifax's opposition to the present motion should not be overly

ambitious or optimistic in its reliance upon the limited ruling of the Court of Appeals based upon an argument hardly briefed on a record not fully presented.

In considering this record and this Court's previous decision, the Court of Appeals entertained a laundry list of Equifax's substantive challenges.  As it did before this Court, Defendant/Appellant challenged literally every Rule 23(a) and 23(b)(3) element other than numerosity.  Yet, despite the substantial briefing and argument before the District Court, and then on appeal, the Court of Appeals summarized *Soutter* and its outcome as follows:

> On appeal, Equifax contends that Soutter cannot satisfy the typicality or adequacy standards in Rule 23(a) or the predominance and superiority standards in Rule 23(b)(3). We agree with Equifax that Soutter failed to show typicality under Rule 23(a)(3) and, accordingly, that the district court abused its discretion in certifying the proposed class.

Soutter, No. 11-1564, 2012 WL 5992207, at *3.

Though the Court of Appeals disclaimed having taken a position on Equifax's various other arguments, there is no doubt that it contemplated the return of this case to a Rule 23 posture before the District Court.  Equifax raised numerous challenges to this Court's findings and decision and yet the Court of Appeals agreed with and reversed only one of Equifax's challenges – the typicality challenge.  Though it cautiously disclaimed that it was finding neither one way or the other on these separate grounds raised by Equifax, the reality is that the Court's conclusions that were not reversed remain the law of the case.  United States v. Kayser-Roth Corp., Inc., 103 F. Supp. 2d 74, 83 (D.R.I. 2000), *aff'd sub nom.* United States v. Kayser-Roth Corp., 272 F.3d 89 (1st Cir. 2001) ("Generally, 'when a higher court reverses [on] one ground and remands a case without disturbing other determinations made by a lower court, the determinations not reversed continue to be the law of the case.' American Title Ins., 817 F. Supp. at 257. That is precisely the situation presented in this case." (citation omitted)); American Title

Ins. Co., 817 F. Supp. 251, 257 (D.R.I. 1993), *aff'd in part and rev'd in part*, 16 F.3d 449 (1st

Cir. 1994) ("Generally speaking, when a higher court reverses one ground and remands a case

without disturbing other determinations made by a lower court, the determinations not reversed

continue to be the 'law of the case.'"); Cowgill v. Raymark Indus., Inc., 832 F.2d 798, 802 (3d

Cir. 1987) (trial court determinations which are not reversed on appeal become the law of a case)

("When a court of appeals reverses a judgment and remands for further consideration of a

particular issue, leaving other determinations of the trial court intact, the unreversed

determinations of the trial court normally continue to work an estoppel. 1B J. MOORE, J. LUCAS

& T. CURRIER, MOORE'S FEDERAL PRACTICE ¶ 30.416[2] (3d ed. 1984). When the estoppel is

operative in proceedings in the same case on remand, courts frequently speak in terms of the law

of the mandate or the law of the case rather than collateral estoppel but the underlying principle

is the same.").

Plaintiff is not asserting that the Court of Appeals actually affirmed this Court's other core

rulings.  To the contrary, it stated:

> Because we conclude that Soutter failed to satisfy Rule 23(a)(3)'s typicality
> requirement, we have not addressed Equifax's additional arguments on appeal. If,
> on remand, the district court is presented with a renewed request for certification,
> any proposed class is subject to the "rigorous analysis" under all four Rule 23(a)
> factors.

Soutter, No. 11-1564, 2012 WL 5992207, at *4.  The Court of Appeals has not stated any

opinion on any of the case issues beyond typicality.  Its caution that the Court not ignore its

continuing obligation to apply the rigorous analysis Rule 23 demands is nothing other than an

explanation that it had not stated a position – affirmance or reversal – on the many other issues in

the case and Equifax's appeal.  But that is the point – absent such a conclusion, the Court is left

with the factual and legal conclusions previously reached.  They are the law of the case.  This

Court has previously rigorously resolved disputes of fact and of law.  There is not now a clean slate for either party.  Plaintiff does not suggest that the previous rulings of this Court have the finality and strength of having received appellate affirmance, but they certainly have the finality and strength of an existing District Court decision.

## STATEMENT OF FACTS AND PROPOSED CLASS CLAIMS

### A.    The Amended Complaint alleges that Equifax violated 15 U.S.C. § 1681e(b).

The conduct of consumer reporting agencies (CRAs) is governed by the FCRA, the principal purposes of which are "to preserve the integrity of the consumer banking system and to protect the right of consumers to fairness and accuracy in the reporting of information about their financial affairs."  Acosta v. Trans Union, LLC, 240 F.R.D. 564, 566 (C.D. Cal. 2007).  To serve these purposes, the FCRA obligates CRAs to follow "reasonable procedures to assure maximum possible accuracy" in their credit reporting.  15 U.S.C. § 1681e(b).  "[A] consumer reporting agency violates § 1681e(b) if (1) the consumer report contains inaccurate information and (2) the reporting agency did not follow reasonable procedures to assure maximum possible accuracy."  Dalton v. Capital Associated Indus., Inc., 257 F.3d 409, 415 (4th Cir. 2001).  This requirement is independent of a consumer's right to dispute and obtain correction of inaccurate information.  As the objective of § 1681e(b) is to ensure "maximum possible accuracy," the statute accordingly imposes a high standard for CRAs. Andrews v. TRW, Inc., 225 F.3d 1063 (9th Cir. 2000) ("very high standard set by statute"), rev'd on other grounds, 534 U.S. 19 (2001).  They must adopt procedures not just to catch many of the errors, but to ensure "maximum possible accuracy." "[W]hen a consumer reporting agency learns or should reasonably be aware of errors in its reports that may indicate systematic problems (by virtue of information from consumers, report users, from periodic review of its reporting system, or otherwise) it must review its procedures

for assuring accuracy." 16 C.F.R. Part 600 FTC Commentary Appendix 607 (3)(A). In short, CRAs should be doing everything possible, within the limits of economic reality, to ensure maximum accuracy. A CRA is required under § 1681e(b) to ensure that paid debts are so reported and the current status of a public record is accurately included. Id. at 3(f) and (G). Equifax does not escape its FCRA liability by relying on its public records vendor. Thompson v. Equifax Credit Info. Services, Inc., CIV.A. 00-D-1468-S, 2001 WL 34142847 (M.D. Ala. Dec. 14, 2001); Dennis v. BEH-1 LLC, 520 F.3d 1066 (9th Cir. 2008).

Donna Souter is currently a self-employed court reporter and previously was a Senior Dispatcher for the Virginia State Police. (Exhibit "A", Souter Dep. at 8:1-6; 11:5-9). She has not been involved in other litigation besides that involving her credit report. She has no criminal history. (Exhibit "B", Plaintiff's Responses to Interrogatories, No. 13). She is committed to the class because she understands this issue has affected the lives of other Virginians. (Exhibit "A", Souter Dep. at 40:5-10; 41:16-21).

In June 2007, Ms. Souter became sick and unable to work and thereafter fell behind on a credit card with Virginia Company Bank. (Id., 20:3-7). Prior to that date she had otherwise exemplary credit. The Bank sued her in Richmond General District Court. (Exhibit "C", Richmond GDC Court File). Almost immediately, she made direct payment arrangements with the Bank (and has continued to meet this obligation to this day). (Exhibit "A", Souter Dep. at 23:6-10; 27:9-18). However, there was thereafter a miscommunication between the Bank and its attorney. Without Ms. Souter's knowledge, the Bank's attorney obtained an uncontested civil judgment on January 29, 2008 in the amount of $14,403.79. (Id. at 23:10-19). The Plaintiff then learned about the mistake when she received a mailed copy of the judgment. (Id.). She immediately contacted the Bank to get the matter corrected. Internally, Bank employees

documented this contact.

On February 25, 2008, the Bank's attorney filed a motion to vacate the mistaken judgment, which motion was granted on March 20, 2008.  Upon vacating the judgment, the Richmond General District Court then dismissed the case. (Exhibit "C", Richmond GDC Court File).

After obtaining the vacated judgment, Plaintiff almost immediately contacted Equifax to ensure that it did not report the judgment as unpaid. (Exhibit "B", Plaintiff's Responses to Defendant's Interrogatories, No. 1).  In response to her April 11, 2008 letter, on May 23, 2008 Equifax informed Ms. Soutter that it was not reporting the Virginia Credit Union judgment. (Id.).   Whether or not this was true at that time, by July 2008, Equifax was reporting the judgment and was reporting it as unpaid and not as vacated.  (Exhibit "D", Equifax Responses to Plaintiff's First Set of Interrogatories, No. 3). The Plaintiff's Equifax file was not corrected until December 30, 2008.  (Exhibit "B", Plaintiff's Responses to Defendant's Interrogatories, No. 1). In that delayed period, Equifax had furnished at least three (3) hard inquiry credit reports with the inaccuracy. (Exhibit "D", Equifax Responses to Plaintiff's First Set of Interrogatories, No.3). It also furnished three account review credit reports to Plaintiff's existing creditors.  (Id.). Virginia's court records are maintained in a uniform and centralized manner.  As the Court of Appeals explained in summarizing the record on appeal:

> The court records are managed by the Office of Executive Secretary of the Supreme Court of Virginia, which operates a shared case management system for the state's courts. The clerk of each local court uses a uniform system for recording judgments, and the judgment sheet available in the case management system lists only the most recent case disposition. For example, if a case is vacated and then later dismissed, the system would record the case simply as dismissed.

Soutter, 11-1564, 2012 WL 5992207.

Unlike credit accounts, Equifax affirmatively seeks out and purchases public records data,

including Virginia civil judgments, to report to the world about Virginians when it sells their

credit files.  It proactively gathers and disseminates this derogatory information even though

there is nothing in the FCRA that requires it to do so.  Equifax has used a series of different

vendors over the years.  Originally, these vendors relied on in-person manual reviews of civil

courthouse records.  Typically, clerk's offices would make available copies of termination

records – satisfactions, vacates and appeals.  (Exhibit "E". Declaration of Denise Hain. at ¶ 10).

Weekly update reports were made available. (Id.)  Docket books were examined.  (Id.)

However, sometime after 2006, Equifax and its vendors stopped this more careful process and

began collection of judgment information solely from automated resources.  (Id. at ¶ 11).

According to Equifax, there was a material distinction in the manner it and its vendor collected

judgment and disposition information prior to May 2009, versus after that time.  The Court of

Appeals accepted that representation and stated:

> LexisNexis used several different collection methods for capturing the court
> records. It used in-person review for all circuit courts through independent
> contractors. These in-person reviews have some variety as well-some clerks
> provide a weekly summary printout to the reviewer, some let the reviewer peruse
> paper records, and some permit the reviewer use of the computer and case
> management system. For the general district courts, the Supreme Court provided
> LexisNexis with bulk data feeds until May 2009.

Soutter, 11-1564, 2012 WL 5992207.[1]

Under the terms of its contract with Equifax, LexisNexis was obligated to collect and

provide all affirmative judgments.  However, in contrast, it was only obligated to collect

---

[1] Equifax's claim is demonstrably and completely false.  It never once picked up anything
beyond some satisfactions until the filing of this lawsuit.  (Exhibit "F", Deposition of Ken
Mittendorf Dep. at 69:22-70:5).  And the only "in person" review to verify the automated data
was attempted only after a consumer made a formal dispute, and even then only rarely.  This is a
distinction that Equifax knowingly omitted in drafting its earlier declaration for Mark Johnson.
(Def. Mem. Opp. Cert., Docket No. 77, Exhibit 9).  Still, until Phase II discovery, Plaintiff
remains bound by the Court of Appeal's acceptance of this factual deception.

judgment terminations if it determined it "commercially reasonable" to do so.

*Equifax/LexisNexis Agreement*, Exhibit "A" to Agreement, ¶C.3.d.

Equifax has been fully aware of the procedures used by LexisNexis to gather Virginia

judgment records.  Its contract with the vendor states:

> LexisNexis will provide Equifax with its' procedures for collecting dispositions. Changes to these procedures must be provided to Equifax 10 business days prior to implementation by LexisNexis.  If the proposed change adversely affects any Equifax businesses, or puts Equifax in a position of non-compliance with any local, state or federal legislation, Equifax reserves the right to reject the procedure change with stated reasons.  Equifax will not unreasonably withhold its' approval from LexisNexis.

*Equifax/LexisNexis Agreement*, Exhibit "A" to Agreement, ¶C.3.d.

However, perhaps the most amazing fact is that for a numerous class of consumers as pled

for this amended motion, Equifax had earlier received direct notice from the consumer regarding

the judgment status.  A large number of consumers actually contacted Equifax and even still,

Equifax has stipulated as to numerosity for this class of consumers for whom Equifax ignored

such notice and failed to thereafter report the correct judgment disposition. Plaintiff alleges that

these procedures followed by Equifax to seek out, purchase and integrate judgment records about

which it had no means to ensure completeness – whether the judgment has been terminated – are

unreasonable.    Willfully so.[2]

**B.      The Proposed Amended Class Definition.**

The breadth of previously ordered class definition was the sole basis for the appellate

reversal.  The Court of Appeals found that it included consumers with time periods in which

Equifax claimed different methods of gathering dispositions, Circuit Court judgments and both

---

[2] Amazingly, this exact same problem has continued unabated even through the present. Plaintiff's counsel has identified a large number of comparable consumers – both with notice to Equifax and without – for satisfactions and vacaturs that occurred in 2012.

8

consumers who had notified Equifax of the judgment disposition as well as those who had not. Soutter, 11-1564, 2012 WL 5992207, *4-5 ("Soutter's claim simply varies from any potential class plaintiff with a circuit court judgment, and from many potential plaintiffs with general district court judgments, depending on the date of the judgment.[3]  In addition, to recover statutory damages, Soutter must show willfulness. Proof that Equifax's conduct was willful toward Soutter because she sent letters in advance informing Equifax that the case against her was dismissed will not advance the claims of other class members.")

Accordingly, Plaintiff proposes a narrowed class definition that is both fully consistent with the boundaries imposed by the Court of Appeals as well was with the demands of Rule 23. Class membership is readily ascertainable as the definition is based entirely on objective criteria and class members are identifiable, mostly even through electronic data analysis. (Declaration of Leonard Bennett, P. 5) (Ex. "G").  The Court should certify a class as follows:

> All natural persons who meet every one of the following definitional requirements:
>
> a.      the computer database of the Executive Secretary of the Supreme Court of Virginia shows that the person was the defendant in a Virginia General District Court civil action or judgment;
>
> b.      the computer database of the Executive Secretary of the Supreme Court of Virginia shows that as of the date 20 days after the Court's certification of this class, the civil action or judgment was dismissed, satisfied, appealed, or vacated on or before April 1, 2009 ("the disposition date");
>
> c.      Equifax's records note receipt of a communication or dispute from that person about the accuracy of Equifax's reporting of that civil action or judgment status; and
>
> d.      Equifax's records note that a credit report regarding the person was furnished to a third party who requested the credit report, other than for an

---

[3] Plaintiff interprets the "date of judgment" to mean the "date of the disposition of the judgment."  No other construction makes sense in the context of the text of the Fourth Circuit's unpublished opinion.

employment purpose: (1.) no earlier than February 17, 2008, (2.) no later than February 21, 2013, (3.) after the date Equifax's records note its receipt of the consumer dispute regarding the judgment status, and (4.) at least thirty (30) days after the disposition date.

Beyond the proposal suggested by the Plaintiff herein, the Court retains its discretion to adapt or modify the class definition to resolve typicality, predominance or other defense concerns it concludes have merit. Fed. R. Civ. P. 23(c)(1)(C) gives District Courts broad discretion to modify the class definition until there is a decision on the merits. *See* 2 H. NEWBERG AND A. CONTE, NEWBERG ON CLASS ACTIONS § 6.14 (4th ed. 2006) ("broad discretion [under Rule 23] to modify the definition of the class even after certification.").

<div align="center">

**ARGUMENT**

</div>

I.     <u>**PLAINTIFF'S CLAIM SATISFIES EACH OF THE THRESHOLD REQUIREMENTS FOR CLASS CERTIFICATION UNDER RULE 23(a) and RULE 23b(3).**</u>

In this case, the Fourth Circuit has explained the basic Rule 23(a) and 23(b)(3) thresholds required for class certification:

> Under Rule 23(a), a party moving for class certification must meet the following four prerequisites: (1) the class is so numerous that joinder is impossible; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the class representative are typical of the claims or defenses of the class; and (4) the representative will adequately protect the class interests. Fed.R.Civ.P. 23(a). These requirements are referred to as numerosity, commonality, typicality, and adequacy of representation. Rule 23(b) further requires that the class meet one of three additional requirements. As relevant here, Rule 23(b)(3) provides for class certification if the court determines that common questions of law or fact predominate over any questions affecting only individuals and that a class action is superior to other available litigation methods.

<u>Soutter</u>, 11-1564, 2012 WL 5992207.

The Court should resolve any doubt regarding the propriety of certification in favor of allowing certification. <u>Eisenberg v. Gagnon</u>, 766 F.2d 770, 785 (3rd Cir. 1985), *cert. denied*, 474 U.S. 946 (1985). The Fourth Circuit has agreed, cautioning:

<div align="center">

10

</div>

If a lawsuit meets these requirements, certification as a class action serves important public purposes. In addition to promoting judicial economy and efficiency, class actions also "afford aggrieved persons a remedy if it is not economically feasible to obtain relief through the traditional framework of multiple individual damage actions." 5 James Wm. Moore et al., MOORE'S FEDERAL PRACTICE § 23.02 (3d ed.1999). Thus, federal courts should "give Rule 23 a liberal rather than a restrictive construction, adopting a standard of flexibility in application which will in the particular case 'best serve the ends of justice for the affected parties and ⋯ promote judicial efficiency.' " In re A.H. Robins, 880 F.2d 709, 740 (4th Cir.1989).

Gunnells v. Healthplan Services, Inc., 348 F.3d 417, 424 (4th Cir. 2003). *Accord*, In re Data Corp. Securities Litigation, 116 F.R.D. 216 (D. Minn. 1986); In re Folding Cartons Antitrust Litigation, 75 F.R.D. 727 (N.D. Ill. 1977). *See also*, Lozada v. Dale Baker Oldsmobile, Inc., 197 F.R.D. 321, 327 (W.D. Mich. 2000).

Federal courts have long regarded "consumer claims" as "particularly appropriate for class resolution." *see* Amchem Prods. v. Windsor, 521 U.S. 591, 625 (1997); In re Mexican Money Transfer Litig., 267 F.3d 743, 747 (7th Cir. 2001); Cavin v. Home Loan Ctr., Inc., 236 F.R.D. 387, 395-96 (N.D. Ill. 2006) ("[c]onsumer claims are among the most commonly certified for class treatment"). As set forth below, there is no basis for regarding this case any differently.

**A.     The Class Satisfies Rule 23(a).**

**1.        The Class is Sufficiently Numerous to make Joinder Impracticable.**

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." Talbott v. GC Servs., Ltd. Pshp., 191 F.R.D. 99, 102 (W.D.Va. 2000). *See* Shelton v. Pargo, Inc., 582 F.2d 1298, 1312 (4th Cir. 1978). There is no set minimum number of potential class members that fulfills the numerosity requirement. See Holsey v. Armour & Co., 743 F.2d 199, 217 (4th Cir.1984) (citing Kelley v. Norfolk & Western Ry. Co., 584 F.2d 34 (4th Cir.1978)). However, where the class numbers 25 or more, joinder is usually impracticable.

Cypress v. Newport News General & Nonsectarian Hosp. Assn, 375 F.2d 648, 653 (4th Cir. 1967).

In this case, the proposed class is more than sufficiently numerous to make joinder impossible.  Equifax has stipulated to numerosity. (Bennett Decl., P6, Ex A and B attached thereto). Plaintiff's counsel estimates that the class will include roughly 1,000 persons.

**B.      An Ascertainable and Identifiable Class Exists.**

"Though not specified in the Rule, establishment of a class action implicitly requires both that there be an identifiable class and that the plaintiff or plaintiffs be a member of such class. 7A C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure:* Civil 2d § 1760, pp. 115 *et seq.* (2d ed. 1986)." In re A.H. Robins Co., Inc., 880 F.2d 709, 728 (4th Cir. 1989) *abrogated on other grounds by* Amchem Products, Inc. v. Windsor, 521 U.S. 591, 117 S. Ct. 2231, 138 L. Ed. 2d 689 (1997).  This necessity is sometimes referred to as ascertainability – the requirement that the class description be "sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member."  FPP § 1760, 7A Fed. Prac. & Proc. Civ. § 1760 (3d ed.). Plaintiff has sought a stipulation as such, and Equifax has refused.  Out of an abundance of caution, Plaintiff peremptorily addresses the issues Defendant may suggest. However, it must be noted that Plaintiff has already established and this Court has already found that the much larger class previously defined was ascertainable <u>and</u> identifiable, a conclusion not rejected by the Fourth Circuit.

The ascertainability requirement is at this early stage only a theoretical burden.  "[T]he class does not have to be so ascertainable that every potential member can be identified at the commencement of the action. … If the general outlines of the membership of the class are determinable at the outset of the litigation, a class will be deemed to exist." FPP § 1760, 7A Fed.

Prac. & Proc. Civ. § 1760 (3d ed.).  In fact, "Where the plaintiff has demonstrated that the class

of persons he or she wishes to represent exists, that they are not specifically identifiable supports

rather than bars the bringing of a class action, because joinder is impracticable."  Doe v.

Charleston Area Med. Ctr., Inc., 529 F.2d 638, 645 (4th Cir. 1975) (citing cases under both Rule

23(b)(2) and 23(b)(3)).  A class like this one is ascertainable because it is "defined by the

activities of the defendant[.]"  Alliance to End Repression v. Rochford, 565 F.2d 975, 978 (7th

Cir. 1977); see also Lewis v. Tully, 96 F.R.D. 370, 376 (N.D. Ill. 1982) on reconsideration, 99

F.R.D. 632 (N.D. Ill. 1983) ("a class that is defined by the contested practices of the defendant is

sufficiently ascertainable.").  Membership is determined by whether or not Equifax furnished a

credit report regarding that person and the manner in which it did so.

Defendant's position earlier in this litigation has evidenced its confusion of

"ascertainability" with class member "identifiability."  Equifax has not suggested in discovery

any logical impediment to the proposed class definition.  Instead, it has resisted an

ascertainability stipulation on the grounds that it believes Plaintiff could not identify all such

persons.  The Court has already properly dispensed with these opposition claims:

> The degree of precision that Equifax attempts to place on Souter in ascertaining
> class members simply is not required in order to certify a class. A "class does not
> have to be so ascertainable that every potential member can be identified at the
> commencement of the action," because " '[t]o place such a burden on plaintiffs
> would seem harsh and unnecessary [and] make the maintenance of class actions ...
> very difficult, if not impossible....' " Wright, Miller & Kane, *supra,* § 1760
> (quoting *Fischer v. Kletz,* 41 F.R.D. 377, 384 (S.D.N.Y.1966)). Souter's proposed
> class definition sets forth objective parameters with which a class can be
> ascertained and identified: either an individual has had a Virginia judgment, or
> not; either an individual has had that judgment modified, satisfied, vacated,
> appealed, dismissed or otherwise extinguished, or not; either Equifax reported the
> judgment, or it did not; and either Equifax reported the update to the judgment, or
> it did not.

Soutter v. Equifax Info. Services, LLC, 2011 WL 1226025 (E.D. Va. Mar. 30, 2011) *rev'd and remanded on other basis,* 11-1564, 2012 WL 5992207 (4th Cir. Dec. 3, 2012).  (Bennett Decl., P. 7)

The newly narrowed class is even simpler and easier to both ascertain and identify.  The first two elements are based upon a review of the database available from the Executive Secretary of the Supreme Court of Virginia.  (Bennett Decl., P.7, 11-12).  A set of consumers will be narrowed from the database to include only those identified as a defendant in a Virginia General District Court civil action or judgment.  This information of course is included. GENERAL DISTRICT COURT CASE MANAGEMENT SYSTEM USER'S GUIDE: QUICK REFERENCE GUIDES, Executive Secretary of the Supreme Court of Virginia, July 2012, at A-4.[4]  The second element is also simple.  The Supreme Court of Virginia database includes the name and address of the consumer defendant. It contains the case number and Plaintiff.  Id.  This is the information used by Equifax to match a judgment record to a particular consumer.

The Supreme Court of Virginia database also includes, for civil judgments, two fields that are easily used to identify the case and judgment status.  Id. at A-5.  The first field is connected separately to each defendant in the case and reflects the most recent "judgment status code" for each specific defendant/debtor.  A case record will show either show a blank field, which indicates that no disposition has occurred, or it contains one of these values:

---

[4] Plaintiff proffers the content of the General District Court Case Management System User's Guide, a copy of which Equifax has earlier received.  Although the document is technically not subject to the Court's protective order, the Office of the Executive Secretary has requested that the manual not be publically distributed.  Plaintiff asks Equifax's agreement to accept this proffer.  If it objects in opposition, Plaintiff will provide the actual document in Reply.



Id.  A case that has been dismissed as to the specific consumer is indicated with judgment status code "I" for that consumer; a judgment that is vacated as to the specific consumer will be indicated with judgment status code "A" as to the specific consumer, until it is then either again entered as a judgment against the defendant, with a code "P", or dismissed, at which point the judgment status code will indicate dismissal with code "I".  Id.  If a judgment is appealed, the case will be noted with a judgment status code of "P" or "D", but an additional "Appeal" field will note that the case was appealed.  Id.  Finally, a satisfied judgment is indicated with a judgment status code of "P" or "D", reflecting a verdict for the Plaintiff or counter-claim Defendant, but an additional "Satisfied Date" field will reflect the date that the satisfaction was filed with the Clerk.  Id.



The third class definition requirement substantially narrows the class.  Equifax's records note receipt of a communication or dispute from that person about the accuracy of Equifax's reporting of that civil action or judgment status.  (Bennett Decl., P. 8).  In addition, Equifax retains an archived copy of every written communication received from a consumer and every written communication it sends to a consumer.  Id. ¶13.  The substance of such communications

is also retained electronically in Equifax's "Automated Consumer Interview System," referred to by Equifax as "ACIS," and outputted as various related documents such as the Equifax maintenance sheet.  Equifax has produced each of these documents in this case regarding Donna Soutter.  It regularly produces such documents in its standard Rule 26(a)(1) disclosures in individual FCRA cases.  (Bennett Decl., P. 9)  Equifax would simply do a search for each consumer included in the narrowed list of individuals culled from the judicial database.  (This list itself would already be narrowed and would include only consumers who were sued and had the judgment and case dismissed, vacated, appealed or satisfied prior to May 2009).  Of those with whom it has a record of communication, it would generate an even shorter list.  Equifax has already performed an even more burdensome task in generating a list of every Virginia consumer who had made any dispute regarding a judgment.  (Bennett Decl. P.9; DOC. 61).  It generated that list without first having narrowed the search pool.

Once Equifax has generated this list, the only remaining mechanical step is to determine for each person in the remaining small set: (1) When, if at all, Equifax updated the judgment status[5]; and (2) Whether, after the consumer notice to Equifax, but before any corrective update, Equifax then furnished a credit report to a third party.  This information is contained in an archived file for each consumer that Equifax has named its "Frozen Scans."  (Bennett Decl., P.15). Margaret Leslie, Equifax's responsible employee, testified that there were few if any meaningful limitations to the Frozen Scan data:

> Then if you see a judgment on a frozen scan and the next month see it on the frozen scan and it is in the same state, the same data, the same state, I would then make the assumption that I had not seen any update to that, that it's -- there were

---

[5] The nature of the Consumer's communication and Equifax's communication in response are also easily determinable by the letters Defendant has archived.  Any changes to update the judgment status as a result of the communication would be available in the ACIS case and maintenance sheet documents. (LAB DEC)

no changes during the month.  I don't have a problem with making that assumption because generally that would be true.

Then if you had a hard inquiry on the file during that time between those two snapshots, then in all likelihood that judgment was a part of credit report information returned with that hard inquiry.

[...]

Now, I was also saying that if they are exact on those two end points, there's a probability it was -- it was perpetual through the month. […] So I don't want you -- I don't want to lead you to conclude it drops off and comes back on. That's not true.

(Exhibit "J", Deposition of Margaret Leslie, August 11, 2919, page 122: lines 3-15; page 125: lines 4-11).

Even if Equifax did not want to participate in the data culling process, it need simply produce after certification, the consumer communication file and other documents in the ACIS as well as a set of frozen scans for each person in the narrowed set (those who had been sued in Virginia General District Court, had a status other than judgment at the time the class list is created, and who had made a direct communication with Equifax after the date of this disposition).  Plaintiff's counsel would then absorb the burden of completing the class list.

Nearly all consumers have experienced multiple, hard-inquiry credit reports over the period starting two years before this case and only one inaccurate report is necessary for class membership.  The degree of precision Equifax has to date suggested is unnecessary.  "Every potential member of the class is not required to be identifiable, but merely circumscribed by some objective set of criteria." FPP § 1760, 7A Fed. Prac. & Proc. Civ. § 1760 (3d ed.) citing Hendrix v. Faulkner, 525 F.Supp. 435 (D.C.Ind.1981) *affirmed in part, vacated in part on other grounds sub nom*. Wellman v. Faulkner, 715 F.2d 269 (7th Cir. 1983).  Even if there was more

than a handful of such persons with uncertain class membership status, they could be easily carved out of the Court's certified class definition.

## C.      There Are Questions Of Law and Fact Common To The Class.

Rule 23(a)(2) requires that there be a common question of law <u>or</u> fact.   Commonality requires that there be at least one question of law or fact common to the members of the class. <u>Jeffreys v. Communications Workers</u>, 212 F.R.D. 320, 322 (E.D.Va. 2003); <u>Central Wesleyan College v. W.R. Grace & Co.</u>, 143 F.R.D. 628, 636 (D.S.C. 1992), *aff'd* 6 F.3d 177 (4th Cir. 1993) (stating that commonality "does not require that all, or even most, issues be common, nor that common issues predominate, but only that common issues exist.")  More recently, the Fourth Circuit has restated the standard for commonality, based upon the Supreme Court's clarification of the concept:

> Commonality is generally established when a plaintiff's claims have "questions of law or fact common to the class." Fed.R.Civ.P. 23(a)(2). As the Supreme Court recently clarified, in order to satisfy the commonality requirement, the plaintiff must "demonstrate that the class members 'have suffered the same injury,' " *Wal–Mart Stores, Inc., v. Dukes,* ––U.S. ––––, ––––, 131 S.Ct. 2541, 2551, 180 L.Ed.2d 374 (2011) (quoting *Gen. Tel. Co. of Southwest v. Falcon,* 457 U.S. 147, 156, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982)), and that the claim "depend[s] upon a common contention" that "is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke," *id.*

<u>Gray v. Hearst Communications, Inc.</u>, 444 F. App'x 698, 700-01 (4th Cir. 2011).

Commonality is a liberal standard, and the fact that there are some factual variations in individual grievances among class members does not defeat commonality. <u>Jeffreys,</u> 212 F.R.D. at 322.  Not all factual or legal questions raised in the litigation need be common so long as at least one issue is common to all class members. <u>McGlothlin v. Connors</u>, 142 F.R.D. 626 (W.D. Va. 1992).  The commonality requirement requires that the classes present dispositive questions which will propel the case through the system.  See <u>Stott v. Haworth</u>, 916 F.2d 134, 145 (4th

Cir.1990); <u>Lienhart v. Dryvit Systems, Inc.</u>, 255 F.3d 138, 146 (4th Cir. 2001).   The

commonality requirement of Rule 23(a)(2) is satisfied if "common questions [are] dispositive

and overshadow other issues." <u>Id.</u>  "'Minor differences in the underlying facts of individual

class members cases do not defeat a showing of commonality where there are common questions

of law.'" <u>DiFelice v. U.S. Airways, Inc.</u>, 235 F.R.D. 70, 78 (E.D. Va. 2006).

There are a large number of common issues – most are so.  *Were Equifax's procedures for*

*obtaining and reporting the status of civil judgments updated prior to May 2009 unreasonable?*

*Did these procedures violate § 1681e(b)?  Were credit reports that omitted the current status of*

*a terminated judgment inaccurate?  Were Equifax's FCRA violations willful?  If so, what is the*

*proper damage measure per violation?*  In fact, even Defendant's proffered "core" issues

suggested in its Motion to Consolidate are all common issues.  In contrast, as discussed below,

there are very few individual issues.

**D.      The Claims Of The Named Plaintiff Are Typical Of Those Of All Other Class Members.**

While Plaintiff asks the Court to accept the incorporation by reference of her more

extensive discussion of the "typicality" standard in previous briefing.  ((Pl.'s Mem. in Supp. of

Motion Class Cert. at 17-18 (Doc. 73); Pl.'s Reply Mem. in Supp. of Motion Class Cert. at 18-

20)), it is simpler still to restate and consider the Fourth Circuit's explanation and conclusion in

this case.  The majority stated:

> Typicality "goes to the heart of a representative['s] ability to represent a class."
> *Deiter v. Microsoft Corp.,* 436 F.3d 461, 466 (4th Cir.2006). Thus, Soutter's
> "interest in prosecuting [her] own case must simultaneously tend to advance the
> interests of the absent class members." *Id.* Typicality "tend[s] to merge" with
> commonality, insofar as both "serve as guideposts for determining whether under
> the particular circumstances maintenance of a class action is economical and
> whether the named plaintiff's claim and the class claims are so interrelated that the
> interests of the class members will be fairly and adequately protected in their
> absence." *General Tele. Co. of Southwest v. Falcon,* 457 U.S. 147, 158 n. 13

(1982). Thus, "[t]he essence of the typicality requirement is captured by the notion that 'as goes the claim of the named plaintiff, so go the claims of the class.' " *Deiter*, 436 F.3d at 466 (quoting *Broussard v. Meineke Discount Muffler Shops, Inc.,* 155 F.3d 331, 340 (4th Cir.1998)). While Soutter's claim need not be "perfectly identical" to the claims of the class she seeks to represent, typicality is lacking where "the variation in claims strikes at the heart of the respective causes of action." *Id.* at 467.

To determine if Soutter has shown typicality, we compare her claims and Equifax's defenses to her claims with those of purported class members by reviewing the elements of Soutter's prima facie case and the fact supporting those elements and examining "the extent" to which those facts "would also prove the claims of the absent class members." *Id.*

In this case, Soutter's claim under § 1681e (b) requires her to prove that (1) her credit report was inaccurate; (2) Equifax's unreasonable procedures caused the inaccuracy; and (3) Equifax's behavior was willful.

Soutter, 11-1564, 2012 WL 5992207, *4.  As the opinion then explained, Soutter's claims were not sufficiently typical of those of consumers who had not sent letters to Equifax informing it of the inaccuracy before the § 1681e(b) violation occurred, were not sufficiently typical of the claims of consumers whose judgment was updated in the public court database prior to May 2009, and were not sufficiently typical of those of consumers who were the subject of a Circuit Court judgment.  Id.  The Court of Appeals ignored all of Equifax's remaining typicality objections.  The Plaintiff's narrowed class definition remedies each of these failures.

Donna Soutter's claim is typical of those of other class members.  She, as every class member, alleges a violation of the same FCRA provision, 15 U.S.C. §1681e(b).  This claim challenges the credit reporting procedures of Equifax and does not depend on any individualized facts.  Equifax obtains all of its Virginia judgment records under the same contract from the same vendor.  During the period at issue in this case, those records were gathered from a single source – the Virginia Supreme Court's website.  Equifax's notice and knowledge of the challenged reporting problem is the same for Plaintiff as for the Class.  Plaintiff's proof of each of these elements in her own case will advance the class claims in proportionate degree.

**E.      Donna Soutter Adequately Represents the Class.**

The final component of Rule 23(a) requires that the "representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This prerequisite is met when: "(1) the named plaintiff[s] [have] interests common with, and not antagonistic to, the Class' interests; and (2) the plaintiff[s'] attorney is qualified, experienced and generally able to conduct the litigation." In re Southeast Hotel Properties Ltd. Pushup Investor Legit., 151 F.R.D. 597, 607 (W.D.N.C.1993); Wiseman v. First Citizens Bank & Trust Co., 212 F.R.D. 482, 489 (W.D.N.C. 2003).

 "The burden is on the defendant[] to demonstrate that the representation will be inadequate." Johns v. Rozet, 141 F.R.D. 211, 217 (D.D.C. 1992); *see also* In re Southeast Hotel Properties Ltd. P'ship Investor Litig., *supra* at 607; Lewis v. Curtis, 671 F.2d 779, 788 (3rd Cir. 1982); Trautz v. Weisman, 846 F. Supp. 1160, 1167 (S.D.N.Y. 1994). Equifax cannot possibly satisfy that burden since both components of the "adequacy'" test are plainly met here.

Plaintiff does not have any interests antagonistic to those of the proposed class and is prepared to pursue this litigation vigorously to redress the wrongs alleged. Both the named Plaintiff and the proposed class share an identical interest in establishing Defendant's liability. To establish liability, all members of the proposed class seek the same findings on the common questions of law and fact.  No apparent or even imagined antagonism exists between the named Plaintiff and the members of the putative class.

Plaintiff's counsel is experienced in class action work as well as consumer protection issues under the Consumer Credit Protection Act, 15 U.S.C. § 1601 *et seq*, and have been approved as Class counsel in multiple cases before this Court.  Soutter v. Equifax Info. Services,

LLC, 3:10CV107, 2011 WL 1226025 (E.D. Va. Mar. 30, 2011) *rev'd and remanded on other basis,* 11-1564, 2012 WL 5992207 *10 (4th Cir. Dec. 3, 2012).

## II.   PLAINTIFF'S CLAIMS SATISFY THE REQUIREMENTS FOR CLASS CERTIFICATION UNDER RULE 23(b)(3).

Under Fed. R. Civ. P. 23(b)(3), an action that satisfies the threshold prerequisites for certification may be maintained as a class action if the court finds that: (1) "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members"; and (2) "a class action is superior to other available methods for the fair and efficient adjudication of the controversy."  Plaintiff's claim satisfies those requirements.

### A.   Common Questions Of Law Or Fact Predominate Over Individual Ones.

Rule 23(b)(3)'s predominance inquiry does not require Plaintiff to "show that the legal and factual issues raised by the claims of each class member are identical."  In re Napster, 2005 U.S. Dist. LEXIS 11498, at *28.  Rather, the focus of that inquiry is on whether the proposed classes are "sufficiently cohesive to warrant adjudication by representation."  Amchem, 521 U.S. at 623.  Thus, "[w]hen common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis."  Hanlon, 150 F.3d at 1022.  "This standard is met . . . where there exists generalized evidence that proves or disproves an element of the class member's claim on a simultaneous, class-wide basis."  White, 2002 U.S. Dist. LEXIS 26610, at *58.

Rule 23(b)(3) requires that the questions of law or fact common to all members of the class predominate over questions pertaining to individual members.  Lienhart v. Dryvit Systems, Inc., 255 F.3d 138, 142 (4th Cir.2001); Simmons v. Poe, 47 F.3d 1370, 1380 (4th Cir. 1995). The predominance requirement tests whether proposed classes are sufficiently cohesive to warrant

adjudication by representation.  Gariety v. Grant Thornton, LLP, 368 F.3d 356, 362(4th Cir. 2004)(citing Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 623_24, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997));  Lienhart v. Dryvit Systems, Inc., 255 F.3d 138, 142 (4th Cir.2001). This criterion is normally satisfied when there is an essential common factual link between all class members and the defendants for which the law provides a remedy.  Talbott v. GC Servs., Ltd. Pshp., supra, 191 F.R.D. at 105 citing Halverson v. Convenient FoodMart, Inc., 69 F.R.D. 331 (N.D. Ill. 1974).

The plurality, if not the majority of Equifax's arguments in the first class certification briefing and on appeal were focused on the predominance element.  And yet, the Court of Appeals did not reverse, criticize or even imply criticism of the Court's previous conclusion that class proofs will predominate.  Resolution of the common issues of fact and law in this case in a single proceeding will not only promote the efficient adjudication of these matters; it will dispose of them almost entirely.   As suggested above, the most significant issues in the case all pertain to uniform conduct by Equifax – its uniform credit reporting procedures, its knowledge and notice of the defects in its systems; the willfulness of its conduct.  In contrast, the individual inquiries are modest at best: *Did Equifax furnish a credit report about that consumer in response to a "hard inquiry" by one of its customers?   Did Equifax receive notice from the consumer regarding the inaccuracy? Did the credit report contain a dismissed, appealed, satisfied or vacated Virginia General District Court civil judgment as unpaid after such notice? How many times did Equifax commit this violation for that consumer?*

Inasmuch as the issues of liability are unquestionably common to the class, Equifax can defeat certification under Rule 23(b)(3) only by showing that individual issues relating to each class member's entitlement to damages predominate over that issue.  But it cannot make that

showing.  Class members would not be required to prove causation or actual damages in order to obtain statutory damages. Accordingly, far from raising any individual questions, the statutory damages determination is itself an issue that is largely common to the classes as a whole, and the availability of such damages would "weigh[] in favor rather than against class certification*."*  In re Napster, 2005 U.S. Dist. LEXIS 11498, at *36. As the Fourth Circuit just this summer explained in reversing denial of certification in a FCRA case:

> Where, as here, the qualitatively overarching issue by far is the liability issue of the defendant's willfulness, and the purported class members were exposed to the same risk of harm every time the defendant violated the statute in the identical manner, the individual statutory damages issues are insufficient to defeat class certification under Rule 23(b)(3).

Stillmock v. Weis Markets, Inc., 09-1632, 2010 WL 2621041 (4th Cir. July 1, 2010).

The lone individual issue for each class member is the amount of statutory damages and punitive damages appropriate for each class member.  The amount of statutory damages between $100 and $1,000 and the amount of awarded punitive damages will depend on the number of violations suffered by each respective consumer.  Id. at *6.  This is a simple determination – each consumer report that the Defendant furnished during the period in which its credit reporting was inaccurate is a violation of §1681e(b).   Accordingly, Plaintiff's statutory damage claims raise no individual questions in relation to the amount of damages.  *See, e.g.*, Acosta, 260 F.R.D. at 571 (noting that any distinction among claims of class members relating to the §1681e(b) damages they suffered "is immaterial here where the FCRA awards statutory damages"); Bonner, 2006 U.S. Dist. LEXIS 54418, at *18-19; White, 2002 U.S. Dist. LEXIS 26610, at *56-57.[6]

---

[6]  Inasmuch as Plaintiff is not seeking class treatment with regard to actual damage determinations, these cases raise no individual questions with regard to such determinations.

**B.      The Class Action Device Is Superior To Other Available Methods For Adjudicating These Controversies.**

Finally, the Court must determine whether a class action be superior to other methods for the fair and efficient adjudication of the controversy under Fed. R. Civ. P. 23(b)(3).   Lienhart v. Dryvit Systems, Inc., 255 F.3d 138, 142 (4th Cir.2001); In re A.H. Robins Co., Inc., 880 F.2d 709, 713 (4th Cir. 1989).  The factors to be considered in determining the superiority for the class mechanism are: (1) the interest in controlling individual prosecutions; (2) the existence of other related litigation; (3) the desirability of concentrating the litigation in the forum; and (4) manageability.  Hewlett v. Premier Salons Int'l, Inc., 185 F.R.D. 211, 220 (D.Md.1997); Newsome v. Up_To_Date Laundry, Inc.,    219 F.R.D. 356, 365 (D.Md. 2004).

Efficiency is the primary focus in determining whether the class action is the superior method for resolving the controversy presented.  Talbott, 191 F.R.D. at 106 citing Eovaldi v. First Nat'l Bank, 57 F.R.D. 545 (N.D. Ill. 1972).    In examining these factors, it is proper for a court to consider the "...inability of the poor or uninformed to enforce their rights, and the improbability that large numbers of class members would possess the initiative to litigate individually." Citifinancial v. Logan Furniture Mart, Inc., 503 F.2d 1161, 1164 (7th Cir. 1974). "In determining superiority, courts also consider the anticipated amount of recovery for each plaintiff.  Class actions are particularly appropriate where multiple lawsuits would not be justified because of the small amount of money sought by the individual plaintiffs." *See Advisory Committee Note* to 1996 Amendment to Rule 23.  Thus, the class mechanism permits a large group of claimants to have their claims adjudicated in a single lawsuit.  In so doing, certification enables the court to manage a large number of small and medium sized claims

See, e.g., Murray, 434 F.3d at 953 ("a representative plaintiff must be allowed to forego claims for compensatory damages in order to achieve class certification").

where the awesome costs of discovery and trial could easily prevent any adjudication of those claims and preclude any relief to the class.  See Lozada v Dale Baker Oldsmobile Inc., 197 F.R.D. 321, 332-333 (W.D. Mich. 2000).

Class litigation is not only the most efficient means of adjudicating these disputes; it is the only means.  Separately litigating the common issues that bind the two classes, whether in hundreds or hundreds of thousands of individual lawsuits would be a practical impossibility— even assuming it were economically feasible for consumers to pursue these claims on their own.  Furthermore, even if just a small fraction of the classes were to bring individual suits, the adjudication of common issues in a single proceeding would be infinitely more efficient than would be the separate adjudication of thousands of individual claims.[7]

The reality, however, is that the alternative to class treatment in these cases is not hundreds of thousands, or even hundreds, of individual actions.  "As courts have repeatedly recognized, the statutory damages available under the FCRA are 'too slight to support individual suits.'" E-Loan, 2006 U.S. Dist. LEXIS 62654, at *28; *see also* In re Farmers, 2006 U.S. Dist. LEXIS 27290, at *44; White, 2002 U.S. Dist. LEXIS 26610, at *52; Braxton, 209 F.R.D. at 662.  Moreover, even if that were not the case, the large majority of class members would never think to bring individual claims because they are unaware their rights have been violated—having little lay knowledge of the complex blanket of FCRA protections.  See, e.g., Bonner, 2006 U.S. Dist. LEXIS 54418, at *22 ("[M]any of the persons in these classes may be unaware that the form

---

[7] See, e.g., White v. E-Loan, 2006 U.S. Dist. LEXIS 62654, at *28 (N.D. Cal. Aug. 18, 2006) ("given that thousands of consumers may have suffered identical injury, a class action is certainly the most efficient way to adjudicate disputes over those consumers' rights"); Cavin, 236 F.R.D. at 396; Bonner, 2006 U.S. Dist. LEXIS 54418, at *21; White, 2002 U.S. Dist. LEXIS 26610, at *53 ("the piecemeal approach is rife with shortcomings, not the least of which is the possibility of inconsistent adjudications with regard to an identical course of conduct").

letter sent by Defendants may violate the FCRA, and a class action suit may help to safeguard their rights."); <u>White</u>, 2002 U.S. Dist. LEXIS 26610, at *58 ("Because . . . individual putative class members may not be aware of the violation of their [FCRA] rights, it appears improbable that the putative class members would possess the initiative to litigate their claims individually.").

"[T]here is a strong presumption in favor of a finding of superiority" where, as here, "the alternative to a class action is likely to be no action at all for the majority of class members." <u>Cavin</u>, 236 F.R.D. at 396.[8]  This presumption is rooted in the policy that lies "at the very core of the class action mechanism"—namely, "overcom[ing] the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights." *Amchem*, 521 U.S. at 625.  Thus, as Judge Easterbrook noted in <u>Murray v. GMAC Mortgage</u>, "Rule 23(b)(3) was designed for situations such as [those involving FCRA statutory damage claims for impermissible use], in which the potential recovery is too slight to support individual suits, but injury is substantial in the aggregate." 434 F.3d at 953; see also <u>Bonner</u>, 2006 U.S. Dist. LEXIS 54418, at *21-22.

Given the commonality that characterizes all of the issues in these cases, such treatment will not raise any significant manageability hurdles, despite the large size of the proposed classes.  Even if it did, however, "[a] class action has to be unwieldy indeed before it can be

---

[8] The minute fraction of consumers who theoretically might bring individual claims were this action not certified for class treatment can hardly assert any substantial interest in controlling the prosecution of their claims.  Such individual control "matters mainly when absent class members have personal injury claims."  <u>White</u>, 2002 U.S. Dist. LEXIS 26610, at *50.  "Where as here, the focus of the proceeding will be the alleged course of conduct of the defendants in conscious disregard of the consumers' rights, the purpose of which is to determine whether statutory and punitive damages are due, the interest in personally controlling the litigation is small."  Id.  To the extent any individual does wish to retain such control, he or she can always opt out of the Class.

pronounced an inferior alternative—no matter how massive the . . . wrongdoing that will go unpunished if class treatment is denied—to no litigation at all." Carnegie v. Household Int'l, Inc., 376 F.3d 656, 661 (7th Cir. 2004). In short, absent class action treatment, "there is unlikely to be any meaningful enforcement of the FCRA by consumers whose rights have been violated[.]" E-Loan, 2006 U.S. Dist. LEXIS 62654, at *28.

Finally, judicial resources are best economized and focused by handling this case as a class action. Mitchell-Tracey, 237 F.R.D. at 560; Arrington, 2001 WL 34117734 at *8. Indeed, unless Class members obtain relief through this class action, most will likely obtain no relief at all. There simply is no other practical means for this Class to challenge a practice which stands in clear violation of federal law. "The desirability of providing recourse for the injured consumer who would otherwise be financially incapable of bringing suit and the deterrent value of class litigation clearly render the class action a viable and important mechanism in challenging fraud on the public." 6 H. NEWBERG AND A. CONTE, NEWBERG ON CLASS ACTIONS § 21:30 (4th ed. 2003). Alternatively, in the unlikely event that Class members become aware of their rights and are able to locate counsel, this would result in a multiplicity of scattered suits resulting in the inefficient administration of litigation. The remarks of one district court faced with common issues of similar import are no less applicable here: "[t]here can be no serious dispute that . . . that considerations of judicial economy heavily favor litigating these common issues once, as part of a single class action, rather than rehashing the same questions of law and fact in each of what could likely amount to [hundreds of] thousands of individual lawsuits." In re Napster, 2005 U.S. Dist. LEXIS 11498, at *29.

## CONCLUSION

The proposed class meets the requirements of Rule 23(a) as well as Rule 23(b)(3).  On this basis, the Plaintiff respectfully moves that the Court grant her Amended Motion for Class Certification.

<div style="margin-left: 40%;">

DONNA K. SOUTTER, for herself and on behalf of others similarly situated individuals,

_____/s/_____
Leonard A. Bennett, Esq.
VSB #37523
Attorney for Plaintiff
CONSUMER LITIGATION ASSOCIATES, P.C.
763 J. Clyde Morris Blvd., Suite 1-A
Newport News, Virginia 23601
(757) 930-3660 - Telephone
(757) 930-3662 – Facsimile
lenbennett@clalegal.com

</div>

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 21st day of February, 2013, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

| | |
|---|---|
| John W. Montgomery, Jr., Esq.<br>Montgomery & Simpson, LLLP<br>2116 Dabney Road<br>Suite A-1<br>Richmond, VA  23230<br>jmontgomery@jwm-law.com | Barry Goheen, Esq.<br>King & Spalding<br>1180 Peachtree Street, NE<br>Atlanta, GA  30309-3521 |
| John Anthony Love<br>King & Spalding<br>1180 Peachtree Street, NE<br>Atlanta, GA  30309-3521<br>tlove@kslaw.com | Keasha Ann Broussard, Esq.<br>King & Spalding<br>1180 Peachtree Street, NE<br>Atlanta, GA  30309-3521<br>abroussard@kslaw.com |

                    _____/s/_____
                    Leonard A. Bennett, Esq.
                    VSB #37523
                    Attorney for Plaintiff
                    CONSUMER LITIGATION ASSOCIATES, P.C.
                    763 J. Clyde Morris Blvd., Suite 1-A
                    Newport News, Virginia 23601
                    (757) 930-3660 - Telephone
                    (757) 930-3662 – Facsimile
                    lenbennett@clalegal.com