## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Richmond Division

DONNA K. SOUTTER, *for herself and on behalf*
*of other similarly situated individuals*

       Plaintiff,

                                   Civil Action No. 3:10cv107

v.

EQUIFAX INFORMATION SERVICES, LLC

       Defendant.

### PLAINTIFF'S MEMORANDUM IN SUPPORT OF HER MOTION TO STRIKE
### THE MARK JOHNSON DECLARATIONS

COMES NOW the Plaintiff, Donna K. Soutter ("Soutter" or "Plaintiff"), by counsel and in support of her Motion to Strike the Declarations of Mark Johnson, she states as follows:

### INTRODUCTION

After this case was filed on February 17, 2010, Plaintiff sought the deposition of third party LexisNexis Risk Data Retrieval Services, LLC ("LexisNexis") pursuant to Fed. R. Civ. 30(b)(6). LexisNexis produced Mark Johnson as its witness. The September 15, 2010 deposition was uneventful as Mr. Johnson did not possess any meaningful knowledge that would impair class certification. Thereafter, Plaintiff filed her original Motion for Class Certification on October 29, 2010 (Docket No. 72). On November 23, 2010, Defendant Equifax Information Services, LLC ("Equifax") filed its first Response in Opposition to Plaintiff's Motion for Class Certification (Docket No. 77). However, along with this opposition brief, Equifax submitted a Declaration of Mark Johnson on behalf of third party LexisNexis dated November 23, 2010 (Docket No. 77-12, attached hereto as Exhibit "A"). This declaration presented allegations regarding the manner in which LexisNexis collected information about civil judgments in

Virginia, including, to a detailed extent, the manner by which individual collectors obtain records from individual courts.  While this declaration was inconsistent with Mr. Johnson's actual knowledge and prior testimony, it appeared to Plaintiff's counsel to be tangential to Plaintiff's motion.  However, after the Court granted Plaintiff's Motion for Class Certification, and Equifax subsequently appealed this certification to the Fourth Circuit, the Court of Appeals reversed certification based largely on the false November 23, 2010 declaration "testimony" of Mr. Johnson, which Equifax claimed as his own.

After the Fourth Circuit reversed the class certification and remanded the case, Plaintiff filed her Amended Motion for Class Certification on February 21, 2013 (Docket No. 131).  On April 19, 2013, Equifax filed its Response In Opposition to Plaintiff's Amended Motion for Class Certification (Docket No. 135).  In its opposition, the Defendant presented a new declaration from Mark Johnson on behalf of LexisNexis (Docket No. 135-1, attached hereto as Exhibit "B").  This declaration contained additional allegations regarding LexisNexis's supposed review of information maintained in the Virginia Supreme Court database and comparison between the database and LexisNexis's own records of case information.  In this declaration dated April 19, 2013, as in his earlier declaration, Mr. Johnson again purported to have personal knowledge of the facts set forth in the declaration.

Learning the lesson from the prior appellate loss, Plaintiff's counsel took a second deposition of Mark Johnson, on June 12, 2013, regarding his 2010 and 2013 declarations and related documentary evidence (partial transcript attached as Exhibit "C") and pressed him on the factual support for these allegations and his personal knowledge thereof.  During his deposition, it quickly became clear that Mr. Johnson did not possess personal knowledge or even any substantive knowledge of the facts set forth in his declarations, despite sworn statements

contained therein.  In fact, during Mr. Johnson's deposition, it was apparent that Mr. Johnson himself did not have any first-hand knowledge with respect to LexisNexis's procedures of collecting civil judgment information from the various general district courts in Virginia.[1]  In short, he simply signed a piece of paper placed in front of him by counsel and swore to personal knowledge of those facts under oath.

Further, in addition to not possessing personal knowledge as to the facts asserted in Mr. Johnson's declarations on behalf of LexisNexis, LexisNexis is not a disinterested third party by any standard.  It refused to produce documents to Plaintiff's counsel in this case, citing a "common interest" privilege with Equifax.  Further, during the period in which Mr. Johnson was presented with the declaration to sign, LexisNexis *and Mr. Johnson specifically* was actively involved in the negotiation of a new contract for services between LexisNexis and Equifax. *See* Johnson Dep. 21:24–22:9.  Additionally, Equifax is one of LexisNexis's top three customers, and the difference between the amount of business generated by LexisNexis's top three customers and any other customer is significant. Johnson Dep. 23:6–23:14; 25:5–25:21.  Setting aside the clear bias and lack of factual support for his allegations, the simple fact remains - Mr. Johnson's testimony was not based on his personal knowledge.  As a result, these declarations are inadmissible and should be stricken from the record.

## ARGUMENT

## I.      Mark Johnson's Declarations Should Be Stricken for Their Failure to Meet Evidentiary Standards.

### A.      Standard of Law

---

[1] *See, e.g.*, Johnson Dep. 38:18–24 (Mr. Johnson admitting that he does not have personal knowledge specific to Virginia for LexisNexis's handling of judgment disputes); 40:11–41:1 (demonstrating Mr. Johnson's lack of personal knowledge with respect to how LexisNexis's process for collecting Virginia judgment dispositions has changed); 44:25–45:6; 45:12–22 (Mr. Johnson admitting that he does not have knowledge as to the process LexisNexis uses to check judgment dispositions).

When considering a motion for class certification, or an opposition to a motion for class certification, evidence in support of or opposition to such a motion must satisfy evidentiary standards of admissibility. *See Mars Steel Corp. v. Continental Bank, N.A.*, 880 F.2d 928 (7th Cir. 1989); *Harrison v. McDonald's Corp.*, 411 F. Supp. 2d 862, 865–68 (S.D. Ohio 2005); *Richards v. Computer Sciences Corp.*, 2004 WL 2211691 (D. Conn. Sept. 28, 2004); *McElmurry v. U.S. Bank Nat'l Ass'n*, 2004 WL 1675925, at *10 (D. Or. July 27, 2004); *Clark v. Dollar Gen. Corp.*, 2001 WL 878887, at *1–2 (M.D. Tenn. May 23, 2001); *Sjoblom v. Charter Commc'ns, LLC*, 2007 WL 4560541, at *10 (W.D. Wis. Dec.19, 2007); *Threatt v. Residential CRF, Inc.*, 2005 WL 4631399 (N.D. Ind. Aug. 31, 2005); *see also* Fed. R. Evid. 101; 1101.  Recent dictum by the Supreme Court of the United States in *Wal-Mart Stores, Inc. v. Dukes* further suggests that evidence offered in support of a class certification motion must satisfy admissibility requirements.[2]  By analogy, the same is true for evidence offered in opposition to a class certification motion, such as in the declarations at issue in the present case.

Additionally, Rule 43 provides that, when a motion relies on facts outside the record, the court may rely on affidavits to render its decision. Fed. R. Civ. P. 43(c); *see Richardson v. Nat'l Post Office Mail Handlers*, 76-0540-5, 1978 WL 1771 (E.D. Va. Oct. 6, 1978). However, it is well established that an affidavit must first meet certain requirements in order to be properly considered by a court. For example, the affidavit must contain specific facts based on personal knowledge and cannot "simply recite[ ] that the affiant has been 'apprised' of certain information". *Transo Envelope Co. v. Murray Envelope Co.*, 227 F. Supp. 240, 242 (D.N.J. 1964). The affidavit may not contain hearsay or rely on facts not within the affiant's personal

---

[2] *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2553–54 (2011) ("The District Court concluded that *Daubert* [standards for admission of expert testimony] did not apply to expert testimony at the certification stage of class-action proceedings.  We doubt that is so . . . .") (internal citation omitted).

knowledge. *Spivey v. U.S.,* 912 F.2d 80, 85 (4th Cir. 1990).  "Furthermore, if the credibility of the affiant is at issue, the court may disregard the affidavit unless the affiant has been produced to give oral testimony and submit to cross-examination." *Iannella v. Sullivan*, CIV. A. 93-CV-0620, 1995 WL 273608 (E.D. Pa. May 5, 1995) (citing *United Commercial Ins. v. Paymaster Corp.,* 962 F.2d 853, 858 (9th Cir. 1992).

While Rule 43 does not enumerate the specific requirements of an affidavit or declaration before it can be considered by a court in connection with a motion, at least one major treatise on class actions has compared affidavits offered in support or opposition to a Motion for Class Certification as analogous to Rule 56(e)'s treatment of affidavits in support of a motion for summary judgment. 3 Alba Conte & Herbert Newburg, *Newburg on Class Actions* § 7:26 (4th ed. 2002). Other courts routinely evaluate Rules 43 and 56 together. *See, e.g., Transo Envelope Co.*, 227 F. Supp. at 242. Accordingly, Rule 43 affidavits must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters addressed in the affidavit. Fed. R. Civ. P. 56(c)(4). *See also Williams v. Griffin,* 952 F.2d 820, 823 (4th Cir.1991); *Rohrbough v. Wyeth Labs. Inc.*, 916 F.2d 970, 975 (4th Cir. 1990); *Maryland Highways Contractors Ass'n v. Maryland,* 933 F.2d 1246, 1252 (4th Cir.), *cert. denied,* 502 U.S. 939, 112 S.Ct. 373, 116 L.Ed.2d 325 (1991); *Evans v. Technologies Applications & Serv. Co.*, 80 F.3d 954, 962 (4th Cir. 1996).

Federal Rule of Civil Procedure 56(c)(4) provides that "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Similarly, Federal Rule of Evidence 602 further requires that "a witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness

has personal knowledge in the matter." Federal Rule of Evidence 1101 provides that the Federal Rules of Evidence apply to all proceedings before the United States district courts, which would include a motion for class certification. *See Lewis v. First Am. Title Ins. Co.*, 265 F.R.D. 536, 544 (D. Idaho 2010).

The Fourth Circuit has routinely held that affidavits that do not meet the requirements of Rule 56 may be disregarded by the trial court and even stricken. *See, e.g.*, *Mascone v. Am. Physical Soc'y, Inc.*, 404 F. App'x 762, 765 (4th Cir. 2010); *Evans,* 80 F.3d at 962; *Cline v. Harmon*, 2012 WL 3822189, at *2 (S.D.W. Va. Sept. 4, 2012). The spirit of the Federal Rules of Civil Procedure, the Federal Rules of Evidence, as well as case law relating to this issue, demand that affidavits and declarations be made on personal knowledge regardless of the stage of litigation in which they are presented and evaluated. Those that are not based upon personal knowledge, are not admissible. Therefore, for the reasons discussed below, the Court should strike the 2010 and 2013 declarations of Mark Johnson.

**B.      Mark Johnson's Declarations Are Not Based on Personal Knowledge**

During the June 12, 2013 deposition of Mr. Johnson, it became evident that Mr. Johnson did not possess personal knowledge about the statements made in his November 2010 and April 2013 declarations, nor could he identify the persons that did possess such knowledge. In fact, Mr. Johnson did not draft the 2013 declaration but merely read and signed what was presented to him. Johnson Dep. 118:6–8 ("Q. And again, did you draft this – you didn't draft any of this declaration. Right? A. I did not."). He does not even know who wrote or provided the information in his declaration. Johnson Dep. 52:4–8. ("Q. Who wrote the declaration? A. I assume someone from our legal staff."). With respect to the 2010 declaration, Mr. Johnson estimates that he contributed to writing about 10–20 percent of the total declaration. Johnson

Dep. 96:9–24.  Instead, Mr. Johnson claims that his personal knowledge of the statements set

forth within his declarations is based on the mere fact that he read the declarations before signing

them and that the information was relayed to him by another person.[3]

### 1.    *Mr. Johnson's 2013 Declaration Is Not Based on Personal Knowledge*

According to Mr. Johnson's 2013 declaration, LexisNexis conducted a review of the

Virginia Supreme Court Database to determine whether it was reliable for purposes of

determining when a case disposition was first made publicly available.  Decl. ¶ 5.  Mr. Johnson

then purports to have directed a sampling of the database provided by the Virginia Supreme

Court database to test for anomalies.  Decl. ¶ 6.  His declaration—alleged to be based upon his

personal knowledge of the review that was conducted—then explained the process of the review

and the results that LexisNexis apparently observed.  *See* Johnson Decl. ¶¶ 5–18.  During Mr.

Johnson's deposition, Plaintiff's counsel questioned Mr. Johnson extensively about this review

of the Virginia Supreme Court Database.  Despite this contention that he had personal

knowledge of this review and the results of this review, it became readily apparent during Mr.

Johnson's deposition that, in reality, he did not have much knowledge at all about the review that

had taken place. In fact, despite claiming that LexisNexis "confirmed that the Virginia Supreme

Court Database has no audit logs or other means by which to report when a record or case

disposition was first added to the database", Decl. ¶ 5, Mr. Johnson did not obtain this

---

[3] *See, e.g.*, Johnson Dep. 52:24–53:7 (Mr. Johnson admitting that he did not do any analysis of the Brown
and Pate documents referenced in his declaration); 53:18–54:4 (stating that Mr. Johnson did not read the
cases prior to receiving the declaration and did not know where the cases came from or who gathered
them); 54:18–22 (Mr. Johnson stating that he read the declaration at the time it was provided to him with
the documents); 98:4–99:19 (Mr. Johnson explaining that his understanding of "personal knowledge"
includes that *he merely read the declaration before signing it* and was provided the information by
others); 100:17–101:4; 102:16–103:4 (Mr. Johnson stating that a LexisNexis employee, and not the
Supreme Court of Virginia, advised him that the disposition date shown in some records was the date a
satisfaction was recorded, or the date a judgment was vacated by order of the court or after an appeal,
despite the claim in his declaration that it was the Supreme Court of Virginia that provided this
information).

information on his own but obtained the knowledge from another LexisNexis employee, Melissa Autin. Johnson Dep. 119:4–5.

LexisNexis supposedly created a spreadsheet as part of the review of the Supreme Court of Virginia database referenced in Mr. Johnson's declaration. *See* Johnson Decl. ¶¶ 5–6.  Mr. Johnson claimed that this spreadsheet constituted the analysis of the differences between LexisNexis's own records and that of the information provided by the Supreme Court of Virginia in response to a Freedom of Information Act (FOIA) request that the Plaintiff submitted to the Court.  Johnson Dep. 56:7–15; *see also* Johnson 2013 Decl. ¶5–7.  Plaintiff's counsel questioned Mr. Johnson about the process of creating this spreadsheet, how the information was analyzed, and even what the columns in the spreadsheet meant.  Mr. Johnson admitted that he did not compile the spreadsheet.  Johnson Dep. 56:25–57:6.   It became clear that Mr. Johnson did not have any personal knowledge about this review of data.

For example, when questioned about the meaning of the column "days" contained within the spreadsheet, he was only able to provide a generic description that the column represented the difference between the Supreme Court of Virginia data and LexisNexis's own data but was unable to explain what the various values reflected, despite being perhaps the most important column for purposes of the review.  *See* Johnson Dep. 61:7–15.  Additionally, Mr. Johnson was not aware of whether the spreadsheet represented all of the differences between the Supreme Court data and LexisNexis's own data, or whether it was merely a subset of a larger pool of differences between the data. Johnson Dep. 126:21–127:7.  Further, Mr. Johnson did not know how the subset of the analysis was determined and whether it analyzed only satisfactions filed with the Virginia courts, or whether it also included dismissals and vacaturs. Johnson Dep. 63:2–22.

The first sentence in paragraph six of Mr. Johnson's 2013 declaration states that LexisNexis sampled the listings in the Supreme Court of Virginia database to test for date anomalies. Johnson 2013 Decl. ¶ 6.  Although Mr. Johnson believed that this sampling in paragraph six of his declaration referred to the spreadsheet he directed his employee to prepare, he was merely assuming that fact and did not have personal knowledge whether that was true. *See* Johnson Dep. 127:21–128:14.  The 2013 declaration further states, "Based on the above sampling, [LexisNexis] assembled a set of entries from the Supreme Court Database for manual examination."  Johnson 2013 Decl. ¶ 7.  However, Mr. Johnson did not review this set of entries. Johnson Dep. 127:8–14.  More shockingly, despite claiming to have personal knowledge of this set of entries that was assembled, Mr. Johnson further stated, "I'm honestly not sure what it's in reference to, what sampling or what was assembled. You know, there was a lot of analysis going on, I'm not sure exactly what part of the analysis that's referring to." Johnson Dep. 127:16–20. Instead, he assumed that the overall sampling referenced in paragraph six of his declaration consisted of the spreadsheet, from which the set of entries referenced in paragraph seven of his declaration was then obtained.  Johnson Dep. 128:7–14.

Mr. Johnson's 2013 declaration next states that LexisNexis directed independent contractors to visit the appropriate courthouses and pull the physical case file for a small number of samples. Johnson 2013 Decl. ¶ 8.  Although, he did not know how many cases were actually investigated as referenced in paragraph eight of his 2013 declaration.  *See* Johnson Dep. 68:7–19. Additionally, Mr. Johnson testified in his deposition that he did not gather the documents, nor did he actually know who it was that collected the case documents.  Johnson Dep. 52:13–23; 72:15–19.  Similarly, Mr. Johnson had no knowledge of when the sampling of documents was collected.  Johnson Dep. 73:8–12.  Moreover, Mr. Johnson admitted that he did not conduct the

analysis with respect to the Brown, Jennings, Lane, and Pate case documents referenced in

paragraphs 10–16 of his 2013 declaration. Johnson Dep. 53:5–7.  In fact, the first time he saw

these documents was when he signed the declaration. Johnson Dep. 53:8–54:22.  He did not

gather the case documents, analyze the case documents, extract the information to be included in

his declaration, or even see them prior to when he signed the declaration. *See* Johnson Dep.

52:9–54:22; 55:11–21.  Moreover, Mr. Johnson does not even contest that he lacks personal

knowledge with respect to the court cases referenced in his declaration, where they came from,

or who gathered and collected them audaciously stating, "It seems irrelevant to me."  Johnson

Dep. 54:4.

Despite these discrepancies within Mr. Johnson's 2013 declaration and his testimony, Mr.

Johnson repeatedly claims that he has personal knowledge of the analysis conducted and the

claims made with regard to these supposed anomalies and the cases because he read the

declaration that was provided to him—by an unknown legal employee—along with copies of the

case documents. Johnson Dep. 52:24–53:24; 54:12–22; 55:11–21.  However, after being

questioned about his declaration, the reality is that Mr. Johnson has no personal knowledge of

the review of the Supreme Court Database that LexisNexis conducted and no personal

knowledge of the manual collection of court records testing for anomalies—including when it

was performed, who collected the records and how the records were collected, who analyzed the

records, and whether these were the only anomalies discovered.  The entirety of Mr. Johnson's

2013 declaration is based upon the personal knowledge of other people who actually participated

in or conducted the review of the Supreme Court Database and then subsequently collected and

analyzed certain case documents. In essence, Mr. Johnson was merely the person who signed the

pre-written declaration provided to him despite possessing no personal knowledge as to its

contents.

### 2.    *Mr. Johnson's 2010 Declaration Is Not Based on Personal Knowledge*

Paragraph 6 of Mr. Johnson's November 2010 declaration states that LexisNexis "was advised by personnel at the Virginia Supreme Court that the disposition date shown in some records was the date a satisfaction was recorded, or the date a judgment was vacated by order of the court or after an appeal." Johnson 2010 Decl. ¶ 6.  When questioned about his personal knowledge that this is what the Virginia Supreme Court told LexisNexis, Mr. Johnson stated that he didn't have "direct hands-on personal knowledge" but knew of this from being informed by other people that this was true. Johnson Dep. 102:16–103:4.  Thus, this statement constitutes inadmissible hearsay, and it further evidence Mr. Johnson's lack of personal knowledge.

Paragraph 7 of Mr. Johnson's November 2010 declaration states, "To supplement known gaps in the Bulk Feed relating to vacated judgments, [LexisNexis] employed independent contractors to conduct in-person reviews of source documents in the District Courts as described below." Johnson 2010 Decl. ¶ 7. Similarly, Mr. Johnson claimed to have personal knowledge that between 2005–2009, LexisNexis had a procedure in place to have its contractors regularly collect satisfactions and vacaturs from every Virginia court.  *See* Johnson Dep. 106:13–107:9. However, the deposition testimony of the subcontractors hired to collect Virginia court records contradicts Mr. Johnson's assertions. *See* infra Part II. Additionally, throughout his deposition, Mr. Johnson admits to not having interaction with the individual collectors, nor overseeing the collection of Virginia court records. Johnson Dep. 19:6–9; 20:2–11; 72:18–19.  Similarly, Mr. Johnson is unaware of how LexisNexis's procedures in collecting satisfactions and vacaturs differs by Virginia jurisdiction, Johnson Dep. 32:16–25, or how often LexisNexis collects updated disposition information for a specific judgment—at least with respect to its collection of

this information electronically using a web scrape.  Johnson Dep. 35:25–37:1.  Nor is Mr.

Johnson familiar with the last time LexisNexis's procedures changed for collecting Virginia

judgment dispositions. Johnson Dep. 40:11–21. Yet, despite not having only a generalized and

limited knowledge of LexisNexis's electronic and manual Virginia judgment collection

processes, Mr. Johnson claims to have personal knowledge that specifically from 2005–2009

LexisNexis had procedures in place to have its contractors regularly collect satisfactions and

vacaturs from every Virginia court.  His testimony simply does not support this allegation.

Additionally, Mr. Johnson's November 2010 declaration describes, in extensive detail,

the process by which LexisNexis's subcontractors allegedly collect judgment and case

disposition information from Virginia Courts. *See* Johnson 2010 Decl. ¶¶ 10–15.  Mr. Johnson

admitted that he did not write these paragraphs, although he believes he may have contributed to

the final edits.  Johnson Dep. 110:16–22.  When questioned about his personal knowledge

pertaining to these statements, Mr. Johnson admitted that his knowledge relating to the process

of collecting public records from courts in Virginia was provided by others and not obtained

directly from any first-hand experience.  *See* Johnson Dep. 109:19–113:12; 117:3–18.  The level

of detailed information that Mr. Johnson provided in his 2010 declaration is particularly

surprising considering he has never himself visited a Virginia general district court, Johnson

Dep. 112:16–113:9, spoken with anyone from the Office of the Executive Secretary for the

Supreme Court of Virginia or a judge, clerk, or other employee in a Virginia court, Johnson Dep.

18:7–19:9, nor even been to Virginia other than possibly "stepp[ing] foot into it" during a visit to

a family member residing in Washington, D.C approximately fifteen years ago.  Johnson Dep.

17:15–18:6.  In fact, Mr. Johnson was not involved in the collection of or even directly

overseeing the collection of these records, *See* Johnson Dep. 20:2–11, nor has he ever observed a

LexisNexis employee gather Virginia judgment disposition information.  Johnson Dep. 39:7–11. Prior to this litigation, Mr. Johnson had no knowledge at all about the process by which Virginia General District Courts provide access of judgment information to LexisNexis's subcontractors until someone else explained the process to him in connection with this litigation.  *See* Johnson Dep. 111:1–18; 112:2–11.

Moreover, on August 28, 2013, Plaintiff conducted depositions of several of LexisNexis's subcontractors who collect Virginia public record information, including Cynthia Long, Karen Christian, and Pamela Vicari.  None of these agents have ever heard of Mr. Johnson, let alone had any interaction with him. *See* Long Dep. 16:1–10 (Exhibit "D"); Vicari Dep. 11:6–11 (Exhibit "E"); Christian Dep. 9:8–13 (Exhibit "F").  In fact, Mr. Johnson admits in his own deposition that he is not personally involved with LexisNexis's subcontractors, Johnson Dep. 72:18–19, nor has he ever spoken to one of LexisNexis's subcontractors. Johnson Dep. 19:6–9.  Despite having no interaction with these subcontractors or any first-hand experience or knowledge of how the subcontractors collect public record information, Mr. Johnson's November 2010 declaration falsely represents that he has personal knowledge of the collection process to extensive detail.  *See* Johnson 2010 Decl. ¶¶ 10–15.

Mr. Johnson fares no better with respect to his personal knowledge of the manner in which LexisNexis currently collects Virginia judgment information. For instance, Mr. Johnson is not aware of how long the current collection process has been in effect or who would have personal knowledge of that information, how the procedures for collection of satisfactions or vacates varies by Virginia jurisdiction (despite claiming to have personal knowledge of this in paragraphs 10–15 of his 2010 declaration), or how often LexisNexis currently checks for updated judgment or case disposition information.  *See* Johnson Dep. 29:10–30:15; 32:16–25; 35:25–

36:4. Plaintiff's counsel questioned Mr. Johnson about how far back in terms of years of Virginia judgments that LexisNexis searches to determine whether a new disposition has been entered in a case. Johnson Dep. 36:13–16.  Again, Mr. Johnson responded that it should be for every open judgment but did not have personal knowledge as to whether this was true. *See* Johnson Dep. 36:5–21.  Furthermore, he did not know for sure whether there was a written process describing LexisNexis's web scrape procedures.  Johnson Dep. 36:22–37:1.  It is hard to believe that Mr. Johnson had the level of knowledge alleged in his 2010 and 2013 declarations with respect to LexisNexis's process of collecting Virginia judgment and case disposition information on the dates he signed the declarations, but does not possess the same knowledge at his deposition.  The reality is that Mr. Johnson's declarations were not based on his own personal knowledge but were written by lawyers -- presumably the same lawyers who would later claim a "common interest" privilege with Equifax -- and were based upon the personal knowledge that other people besides Mr. Johnson possessed.

**II.    Mr. Johnson's Declarations and Deposition Testimony Contradict the Testimony of LexisNexis's Subcontractors**

In addition to lacking personal knowledge for the statements contained within his declaration, Mr. Johnson's declaration and deposition testimony is substantially inconsistent with that of LexisNexis's subcontractors who are responsible for actually collecting the public record information from the individual Virginia courts.  The fact that Mr. Johnson's declarations are substantially inaccurate is itself a reason to strike the declarations as unreliable.  However, it is also indicative of Mr. Johnson's lack of substantive personal knowledge regarding the process by which Virginia judgment and disposition information is collected.

Mr. Johnson's November 2010 declaration states that LexisNexis's subcontractors in Virginia obtain case dispositions entered since the subcontractors' last visit.  *See* Johnson 2010

Decl. ¶ 10.  Mr. Johnson not only claims to have personal knowledge of this fact, but represents under oath that it is true.  Similarly, Mr. Johnson's deposition testimony asserts the notion that LexisNexis subcontractors were tasked with gathering all vacatures and dismissals from the courts manually prior to May of 2009.  Johnson Dep. 104:18–105:7.  However, after deposing LexisNexis's court runners that are physically on the ground visiting the courthouses, it turns out that Johnson's testimony is simply untrue.  During the deposition of Pamela Vicari on August 28, 2013, Ms. Vicari testified that as part of her duties in collecting public records from Virginia courts, she was never required to regularly check previous judgments that had been provided to LexisNexis for any more recent case dispositions such as satisfactions or vacaturs.  *See* Vicari Dep. 19:5–9; 23:12–21. Similarly, in the deposition of Cynthia Long on August 28, 2013, Ms. Long testified that she was not required collect information on judgments and dispositions entered since her last visit to collect the original judgment information. Long Dep. 66:20–67:5; 68:5–25; 69:7–70:4 ("Q:   But if you had collected that judgment a month earlier, you would not, unless you received those individualized disputes, you would not check into that judgment for satisfactions or vacates or otherwise?  A:   That's correct. I would not know to continually keep going backwards and backwards and backwards.   Q:  That's not a part of your job?  A:  No.").  Additionally, Ms. Christian testified that she obtained case dispositions such as satisfactions or vacaturs when the courts provided them for her, that consisted of only a few of her approximately eighteen assigned court jurisdictions. *See* Christian Dep. 20:18–22:20.

The court runners' testimony is directly contrary to Mr. Johnson's November 2010 declaration, in which he claims that LexisNexis's independent contractors collect, and are actually required to collect, information about civil judgments as well as any case dispositions, such as satisfactions or vacations, since their last visit. Johnson Decl. ¶ 10; 12.  Again, the

individual contractors were never required to collect this information.  Instead, they only collected case dispositions from a few Virginia courts that provided the information or when case dispositions were already available upon their initial collection of the judgment information. This is consistent with the terms of the Equifax-Lexis Nexis contract which require precise and regular collection of the actual judgments within a firm timeframe, but only require collection of dispositions that benefit the class members when "commercially feasible".  This disparity is one of the core issues in this case.  As a general rule, the court runners collecting Virginia judgment information did not update previously collected judgment information with more recently entered dispositions such as satisfactions or vacaturs.

Mr. Johnson's 2010 declaration discusses several different means of collecting judgment information that LexisNexis's subcontractors use, depending on the various courts: 1) through the individual courts' public computer terminals, 2) through the individual courts' computer terminals available only to court staff, 3) by reviewing the original court records, or 4) by reviewing print-outs or summaries of records prepared by the court staff.  Johnson 2010 Decl. ¶¶ 13–14.  Mr. Johnson presented this information for the purpose of alleging that these different collection methods somehow have an effect on the ability to uniformly obtain case judgment and disposition information.  However, the information obtained from these methods is the same, regardless of what method is used.  Information is not any different for judgments whether obtained electronically or by in person paper review and equally reliable.  *See* Long Dep. 37:20– 39:5; 42:5–44:12; 44:20–45;1; 61:7–62:6; Vicari Dep. 26:8–16; Christian Dep. 18:18–19:2.

Additionally, Mr. Johnson's 2013 declaration asserts that the Virginia Supreme Court data is not reliable because there are anomalies that occur in which the court reports the date of satisfaction as something other than when the notice of satisfaction of judgment is actually filed

with the court and thus first made publicly available. However, based on the testimony of

LexisNexis's subcontractors who actually collect Virginia court records, these types of

anomalies occur much less than Mr. Johnson represents in his declaration. Ms. Christian

testified that she only sees an anomaly like this approximately once every three months.

Christian Dep. 27:4–13; 28:4–6. By that estimate, since 2007 this anomaly would have occurred

only about 26 times. Similarly, Ms. Long testified that she has seen this anomaly occur only

"several" times in the time she has been collecting Virginia court records for LexisNexis. *See*

Long Dep. 81:21–82:9; 83:16–84:4; 92:2–7.

## CONCLUSION

Mr. Johnson's deposition testimony revealed that he possesses no personal knowledge as

to LexisNexis's procedures for collecting Virginia judgment disposition information despite

representing otherwise in his 2010 and 2013 declarations. Similarly, he has never visited or

spoken with anyone at a Virginia general district court, nor was he involved in directly

overseeing the collection of Virginia judgment records. Notwithstanding the detailed extent to

which Mr. Johnson's declaration describes LexisNexis's supposed procedures for collecting

these records as well as LexisNexis's review of the Supreme Court of Virginia database, when

questioned about these subjects, Mr. Johnson repeatedly could not provide answers to Plaintiff's

questions. Moreover, Mr. Johnson's declarations conflict with LexisNexis's actual procedures in

place for collection judgments and judgment dispositions, as shown by the testimony of several

of LexisNexis's court runners responsible for collecting Virginia court records. It is clear that

Mr. Johnson's declarations are not based on his personal knowledge, but that of the other

individuals – the lawyers who actually drafted the declarations to defend LexisNexis and/or

Equifax in this matter. Because Mr. Johnson's declarations are unreliable and not based on his

personal knowledge, they are inadmissible as evidence and should not be relied upon by this

Court in ruling on Plaintiff's motion for class certification.

For these reasons, Plaintiff respectfully requests that this Court strike the 2010 and 2013

declarations of Mark Johnson from the record.

Respectfully submitted,
**DONNA K. SOUTTER,**
*individually and on behalf of all*
*others similarly situated*


By: _____/s/_____
            Of Counsel

Matthew J. Erausquin, VSB No. 65434
Janelle Mason Mikac, VSB No. 82389
Casey S. Nash, VSB No. 84261
*Counsel for the Plaintiffs*
CONSUMER LITIGATION ASSOCIATES, P.C.
1800 Diagonal Road, Suite 600
Alexandria, VA 22314
Tel:    (703) 273-7770
Fax:    (888) 892-3512
matt@clalegal.com
janelle@clalegal.com
casey@clalegal.com

Leonard A. Bennett, VSB No. 37523
Susan M. Rotkis, VSB No. 40693
*Counsel for the Plaintiffs*
CONSUMER LITIGATION ASSOCIATES, P.C.
763 J. Clyde Morris Blvd., Suite 1-A
Newport News, VA 23601
Tel:    (757) 930-3660
Fax:    (757) 930-3662
lenbennett@clalegal.com
srotkis@clalegal.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 13th day of November, 2013, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

John W. Montgomery, Jr.
MONTGOMERY & SIMPSON, LLP
2116 Dabney Road, Suite A-1
Richmond, Virginia 23230
Tel:    (804) 355-8744
Fax:    (804) 355-8748
Email: jmontgomery@jwm-law.com

Barry Goheen
*PRO HAC VICE*
King & Spalding (GA-NA)
1180 Peachtree St NE
Atlanta, GA 30309-3521
Tel:    (404) 572-4618
Fax:    (404) 572-5142
Email: bgoheen@kslaw.com

John Anthony Love
*PRO HAC VICE*
King & Spalding (GA-NA)
1180 Peachtree St NE
Atlanta, GA 30309-3521
Tel:    (404) 215-5913
Fax:    (404) 572-5100
Email: tlove@kslaw.com

Keasha Ann Broussard
*PRO HAC VICE*
King & Spalding (GA-NA)
1180 Peachtree St NE
Atlanta, GA 30309-3521
Tel:    (404) 215-5725
Fax:    (404) 572-5100
Email: abroussard@kslaw.com

*Counsel for the Defendant*

_____
                    /s/
Matthew J. Erausquin, VSB No. 65434
*Counsel for the Plaintiff*
CONSUMER LITIGATION ASSOCIATES, P.C.
1800 Diagonal Road, Suite 600
Alexandria, VA 22314
Tel:    (703) 273-7700
Fax:    (888) 892-3512
matt@clalegal.com