# EXHIBIT D

```
 1           IN THE UNITED STATES DISTRICT COURT
           FOR THE EASTERN DISTRICT OF VIRGINIA
 2                    RICHMOND DIVISION

 3

 4
     DONNA K. SOUTTER, for herself
 5   and on behalf of all similarly
     situated individuals,
 6
                    Plaintiff,
 7           v.                            Civil Action No.
                                           3:10-cv-00107
 8   EQUIFAX INFORMATION SERVICES,
     LLC,
 9
                    Defendant.
10

11

12

13
                DEPOSITION OF PAMELA VICARI
14

15
                       August 28, 2013
16
                       Richmond, Virginia
17

18

19

20

21

22

23          HALASZ REPORTING & VIDEOCONFERENCE
                       P.O. Box 1644
24           Richmond, Virginia 23218-1644
                       (804) 708-0025
25      Reported by:  Lori Jo Krenik, CCR, RPR, CRR
```

```
 1      Q    Well, I'll give you this overview then.
 2  We represent a woman named Donna Soutter who has sued
 3  Equifax alleging that Equifax reported in her credit
 4  report to potential creditors that she had a judgment
 5  that was unpaid when it turned out that she had --
 6  that judgment had been vacated.  Her judgment was in
 7  the Richmond General District Court.  She is
 8  attempting to represent other people who she contends
 9  have similar set of circumstances.  Equifax is denying
10  a number of the allegations in the case, all the ones
11  that are really hotly contested, and LexisNexis is the
12  vendor who provides that information to Equifax.  The
13  statute that we're suing under is called the Fair
14  Credit Reporting Act, which relates to credit reports
15  obviously.
16      A    Okay.
17      Q    So let's start with some basic biography
18  as it pertains to your job.  When did you get into --
19  when did you first get into the records gathering
20  business?
21      A    About 12 years ago.
22      Q    And how old are you now?
23      A    I'm 51.
24      Q    And what did you do before you got into
25  the records gathering business?
```

```
                                                      Page 12
 1      A     I don't.  I'm assuming it's probably four,
 2  five years ago, but I could be wrong.  Could be
 3  longer.
 4      Q     How many general district court
 5  jurisdictions or counties or cities are you
 6  responsible for today?
 7      A     Ten.
 8      Q     Can you name them for me?
 9      A     I can.  I do Hanover, Henrico --
10      Q     You've got to go slow for me.
11      A     King William, King and Queen, Essex, New
12  Kent.
13      Q     It's so much more comforting than
14  Ms. Christian.  I've heard of these.
15      A     Charles City, Gloucester, Middlesex,
16  Mathews.  I think that was ten.  Is that ten?
17      Q     Yes.  While we have you here, which of
18  these ten have computer terminals that you can access
19  to obtain judgment information?
20      A     All of them.
21      Q     And how long have you had these ten as
22  your assigned territories?
23      A     Probably -- I'm trying to remember if I've
24  had all of them for the whole time.  I don't believe I
25  have.  Probably all of them, about eight years.
```

```
                                                              Page 13
 1      Q     That takes me where I need to be.
 2      A     Okay.
 3      Q     And since 2007, have any of these
 4  jurisdictions during the period January 2007 to
 5  present, have any of these jurisdictions not had
 6  access to the computer terminal as a way to obtain the
 7  judgment information?
 8      A     From 2007 till now?
 9      Q     Yes.
10      A     I don't know.  I was doing this from home
11  on LOPAS, so I didn't go into the general district
12  court area to see if they had computers.  New Kent,
13  they did not have a public access computer.  I asked
14  them, requested one and they put one in I would say
15  less than a year ago they put one back in there.
16      Q     Can you tell me what LOPAS is?
17      A     LOPAS was a computer system that they had
18  set up with the Supreme Court and you could dial into
19  it in the morning and it would put you on to their Web
20  site and you could go into any court in the state and
21  get any record information that you needed.
22      Q     And it would give you the same information
23  that would have otherwise been available if you were
24  actually at the computer terminal?
25      A     Correct.
```

```
 1   years or so, would be to look at new judgments?
 2        A     Correct.
 3        Q     Correct?
 4        A     Correct.
 5        Q     You were never asked by Choice Point or
 6   LexisNexis to go back and regularly check previous
 7   judgments to determine if they had been satisfied or
 8   vacated?
 9        A     Not that I recall.
10        Q     But if you were to do that, so, for
11   example, if LexisNexis were to say check the judgments
12   entered in 2007 in King and Queen County to update
13   their status to determine whether they've been
14   satisfied or vacated, you could have done that in
15   LOPAS; you could have gone back and looked at those
16   2007 judgments?
17        A     If they wanted me to do that, it would
18   have taken days because you would have to go back to
19   each and every day and see if there was a court date
20   and see if there was a judgment and write all of those
21   down and then go back and then look again to see if
22   they were satisfied.
23        Q     I'm not criticizing you at all.
24        A     I know.
25        Q     You did everything you were supposed to
```

```
 1      Q     Let me try it this way:  Using your
 2   earlier example you were picking up a May 1 or May 2
 3   court date and you were to look at that May 2 court
 4   date and there was a judgment entered.
 5      A     Correct.
 6      Q     The consumer may have appealed that
 7   judgment or the debtor may have appealed that
 8   judgment; correct?
 9      A     Correct.
10      Q     Is there or was there a procedure at
11   LexisNexis for handling or determining whether or not
12   the debtor has appealed a judgment?
13      A     Right now we have to wait 45 days before
14   you can collect any judgment.  By that time, if it has
15   been appealed, it's no longer there, it's been taken
16   up to circuit court so we would not see that appeal
17   judgment.
18      Q     What do you mean you wouldn't see it?
19      A     When they appeal a judgment, it goes up to
20   circuit court and they take it out of the system.
21      Q     Well, you could still search for the case
22   number; right?
23      A     You can search for the case number.  It
24   says appealed on the bottom on some of them and you
25   can ask for a copy if you'd like a copy.  But in the
```

Page 25

1    example of Henrico, they'll let me go through their
2    files and it's no longer in the file.
3        Q    Well, let's talk about today.  Can you
4    tell me which of the courthouses you previously listed
5    as yours provide you access to the original or hard
6    copy judgments?
7        A    Henrico.
8        Q    Is that the only one of your ten
9    courthouses where you obtain the judgment information
10   by hard copy as opposed to computer?
11       A    Correct.
12       Q    So what you're saying is with Henrico
13   County, if a judgment has been appealed, the hard copy
14   would not be in the stack that you would examine?
15       A    Correct.
16       Q    But for the rest of the jurisdictions, it
17   would still be in the computer?
18       A    On the bottom of the computer screen is a
19   space where it would tell you that it was appealed.
20       Q    And then if you saw that, what would you
21   do with it?
22       A    I would not type it.
23       Q    At all?
24       A    Never.
25       Q    Henrico also has computer terminals?

Page 26

```
 1      A    They do.
 2      Q    You may just choose to look at the hard
 3   copies; correct?
 4      A    I look at the hard copies because for me
 5   it's my largest court and I would be monopolizing the
 6   computer and there's several people that need to use
 7   them.
 8      Q    Is there any material difference in the
 9   data that you are able to obtain using hard copy
10   versus computer?
11      A    No.
12      Q    It's materially the same process; yes?
13      A    Correct.
14      Q    And that materially was the same process
15   when you were using the LOPAS system?
16      A    Correct.
17      Q    Just now you have to drive to the
18   courthouses; right?
19      A    Correct.
20      Q    So you testified that currently the policy
21   is to wait 45 days before you pick up appeals;
22   correct?
23      A    Not before I pick up appeals.  Before I
24   pick up a judgment.
25      Q    Before you pick up a judgment?
```