IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | | |
|---|---|---|
| DONNA K. SOUTTER, *for herself and on behalf of all similarly situated individuals*, | : : : : : | CIVIL ACTION NO. |
| Plaintiff, | : : | 3:10-CV-00107-REP |
| v. | : : | |
| EQUIFAX INFORMATION SERVICES LLC, | : : : | |
| Defendant. | : : | |

**EQUIFAX INFORMATION SERVICES LLC'S
RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION
TO STRIKE THE MARK JOHNSON DECLARATIONS**

Defendant, Equifax Information Services LLC ("Equifax"), submits this response in opposition to Plaintiff's Motion to Strike the Mark Johnson Declarations (Doc. 156). The motion is procedurally improper and substantively without merit. Accordingly, the motion should be denied.

**INTRODUCTION**

Mark Johnson is the Vice President, Data Services at LexisNexis Risk Data Retrieval Services, LLC ("LexisNexis") and has worked in the industry for approximately 18 years. As Vice President, he oversees collection of civil judgment information from courts across the county. As he testified both in declaration and at deposition, he is quite familiar with methods used by LexisNexis generally of data (especially judgment) collection in Virginia.

1

Mr. Johnson has been deposed twice by Plaintiff in this case and has executed two declarations that Equifax has submitted to the Court in conjunction with class certification-related briefs. One deposition was taken and one declaration was submitted in 2010; neither should be subject to a strike motion at this late date given that Plaintiff made no effort to challenge Mr. Johnson's 2010 deposition and declaration testimony in her first effort at class certification in 2010-11. The Fourth Circuit having rendered its opinion on class certification in December 2012 based on the record before it at that time, which included Mr. Johnson's first deposition and declaration testimony, it is far too late for Plaintiff now to ask the Court to strike his testimony when they failed to make such a motion three years ago.

The other round of deposition and declaration testimony occurred in 2013. In response to a subpoena Plaintiff served on LexisNexis, Mr. Johnson was designated as the LexisNexis corporate representative for purposes of the deposition. Thereafter, he provided a declaration that Equifax submitted in opposition to Plaintiff's Amended Motion for Class Certification. As a Rule 30(b)(6) representative, Mr. Johnson had authority to provide testimony on behalf of LexisNexis and was not required to base that information on personal knowledge. Plaintiff's argument to the contrary has no merit.

Mr. Johnson's testimony at two depositions and his two declarations, in combination, show that the methods for collecting public record information in the General District Courts of Virginia varied during the relevant time period and that the claims asserted by Plaintiff in this case require a highly individualized analysis that makes this case unsuitable for class certification. Contrary to Plaintiff's argument, the depositions of four of LexisNexis independent contractors, who collection judgment in formation in Virginia, further support this conclusion. Accordingly, Plaintiff's motion to strike Mr. Johnson's declarations should be denied.

## RELEVANT FACTS

I.    **MR. JOHNSON'S 2010 TESTIMONY**

    A.    **Plaintiff's 2010 Rule 30(b)(6) Deposition Of LexisNexis**

In August 2010, Plaintiff served a subpoena on LexisNexis seeking a deposition of LexisNexis pursuant to Federal Rule of Civil Procedure 30(b)(6). (Ex. A.) The subpoena required LexisNexis to produce a witness competent to testify regarding the following matters (among others):

> The history and details regarding how you have collected civil judgment information – including terminations of judgments – in the City of Richmond General District Court and other General District courts in Virginia during the last ten years.
>
> Your knowledge regarding any changes to the process.
>
> Plaintiff's investigation determined that the clerks in the Virginia General District Courts, including in the City of Richmond, have made available a periodic printout or "Satisfaction Report" to you and other public records vendors for at least the last decade. Please provide all knowledge you have regarding your systematic use of such reports, the history of such use, whether it varied by court or time period, how such reports were used, if they were not used – why not, and what was done by you to monitor, supervise and required the gathering of data from such reports.

(*Id.*, Topic Nos. 7, 15, 16.)

LexisNexis designated Mr. Johnson as its corporate representative, and the deposition took place on September 15, 2010. (Ex. B at 1.) Mr. Johnson is Vice President, Data Services at LexisNexis and, as of 2010, had worked in the business of gathering public-record information for approximately 15 years. (*Id.* at 8:6-7, 10:17-19.) His direct reports include the Directors of Civil Acquisitions, Civil Automation, Information Technology, Bankruptcy Collection, and Property Data Acquisition. (*See* Ex. C at 14:9-15:2.) Mr. Johnson oversees the entire civil-data-collection process at LexisNexis. (*Id.* at 26:14-16.)

Prior to his involvement in this lawsuit, Mr. Johnson did not have any specific knowledge about the collection process in Virginia. (*Id*. at 111:7-12.) Nevertheless, he was at that time, and still is, very familiar with the various processes used by LexisNexis in states across the country, including those in Virginia. (*See id.* at 111:13-115:18.) Mr. Johnson testified: "The general process, the general awareness of how things are different from court to court, that's an awareness that I gained from years of experience working at the company." (*Id*. at 112:11-15.) Mr. Johnson, for example, is "very familiar with our laptop collection methodologies," "how we engage contractors," and LexisNexis's "process of collecting across the board, whether it's Virginia or California or wherever." (*Id*. at 114:8-12.)

### B. Mr. Johnson's 2010 Declaration

On November 23, 2010, Equifax filed its opposition to Plaintiff's first motion for class certification and supported it, in part, with a declaration from Mr. Johnson. (Docs. 77, 77-12.) Although Plaintiff believed the declaration to be "inconsistent with Mr. Johnson's actual knowledge and prior testimony," she did not object to the declaration at that time, or at any time prior to filing the present motion to strike – three years after the declaration was filed. (Doc. 157 at 2.) Among other things, the declaration states:

> Until May 2009, the Supreme Court of Virginia made available information regarding civil judgments and case dispositions in the Virginia District Courts through regularly scheduled Bulk Feeds. . . . [LexisNexis] was advised by personnel at the Virginia Supreme Court that the disposition date shown in some records was the date a satisfaction was recorded, or the date a judgment was vacated by order of the court on after an appeal.
>
> The Office of the Executive Secretary of the Supreme Court of Virginia provided this information to [LexisNexis] via a bulk electronic load file that was designed and managed solely by Supreme Court personnel. . . . To supplement known gaps in the Bulk Feed relating to vacated judgments, [LexisNexis] employed

> independent contractors to conduct in-person reviews of source documents in the District Courts as described below.
>
> [LexisNexis] also uses independent contractors to collect information about civil judgment and case disposition records from the Virginia District Courts. . . .

(Doc. 77-12 ¶¶ 6-7, 10.)

Mr. Johnson's declaration also described procedures used by the independent contracts to collect information. (*Id.* ¶¶ 10-15.) That description noted, among other things, that LexisNexis uses independent contractors to collect information from Virginia Courts and the type of information they collect (such as name, address, amount of judgment, etc.). (*Id.* ¶¶ 10-11.) Mr. Johnson also stated that source documents for information regarding case dispositions are not consistent in content or format and that "access to the records varies according to the means of access provided by each District Court." (*Id.* ¶¶ 12-13.) With respect to case dispositions, for example, Mr. Johnson stated:

> [S]ome clerks in in the Virginia District Courts prepare weekly spreadsheets of the dispositions entered and keep the spreadsheets for the collectors. Other clerks create a pile, sometimes placed in a box, of the disposition records entered between visits by the collectors. In other courts, the collectors must search the case numbers in the public access terminals to determine in which cases dispositions have been filed, or review the original records if in a District Court with a smaller docket.

(*Id.* ¶ 14.) Mr. Johnson also observed that the level of access depends to some extent on relationships the contractors develop with court personnel and that those relationships vary across courts and time. (*See id.* ¶ 15.)

### C. Plaintiff's Failure To Challenge Mr. Johnson's 2010 Testimony

As Plaintiff concedes, she made no effort to challenge any aspect of Mr. Johnson's 2010 testimony, whether the deposition or declaration testimony, prior to the Court's 2011 order on

5

the 2010 class certification or the Fourth Circuit's 2012 opinion on Equifax's appeal of the Court's class certification ruling. Plaintiff expressed no disagreement with Mr. Johnson's testimony in making her class certification arguments, nor did she move to strike any, let alone all, of Mr. Johnson's 2010 testimony prior to the Court's grant of class certification in 2011. Nor did Plaintiff make any effort to strike or exclude the Fourth Circuit's consideration of Mr. Johnson's 2010 testimony in the Fourth Circuit.

Plaintiff professes surprise at a couple of stray sentences in the Fourth Circuit's opinion as they relate to LexisNexis and Mr. Johnson, but her reaction is belied by the fact that she never called the Fourth Circuit's attention to these purported erroneous statements while the case was on appeal. And, critically, after receiving the Fourth Circuit's opinion that, she (erroneously) asserts, turned on the court's acceptance of certain factual assertions made by Mr. Johnson, Plaintiff made no effort to move for rehearing to call that court's attention to these supposed misstatements.

## II. MR. JOHNSON'S 2013 DECLARATION AND DEPOSITION

On April 19, 2013, Equifax filed a brief in response to Plaintiff's Amended Motion for Class Certification. (Doc. 135.) Equifax supported its response (in part) with a second declaration from Mr. Johnson. (Doc. 135-1.) In that declaration, Mr. Johnson described a study LexisNexis had undertaken, at his direction, to compare information Plaintiff had obtained from the Virginia Supreme Court ("VSC") database to the actual paper records found in the relevant Virginia courthouses. (*See id.* ¶¶ 5-8; *see also* Ex. C at 128:8-10.) The purpose of the study was "to gauge whether the information in the database regarding recorded date of receipt for case dispositions can be relied upon as the date for when that information was first made publicly available." (*Id*. ¶ 5.) To conduct the study, LexisNexis "took a small sample of entries from the

VSC database." (*Id*. ¶ 6.) LexisNexis then "assembled a set of entries" from the database "for manual examination" by its independent contractors. (*Id*. ¶¶ 7-8.) For each entry in the sample, the contractors "visit[ed] the appropriate courthouse, pull[ed] the physical file for the case, and cop[ied] the actual original, paper, notices of satisfaction of judgment for that small number of examples. The purpose was to determine whether the [VSC] Database accurately reflects, for those individual records, the date of notice of satisfaction as shown on the actual filed document." (*Id*. 8.) Mr. Johnson noted that the study "showed a number of inaccurate dates in the [VSC] Database" and described in detail "[a] few of those inaccuracies." (*Id*. ¶¶ 9-16.)

In June 2013, Plaintiff deposed Mr. Johnson for a second time. (*See* Ex. C.) Plaintiff's counsel questioned Mr. Johnson extensively about both the 2010 and 2013 declarations and inquired about his personal knowledge regarding the subject matter of those declarations. (*See*, *e.g.*, *id.* at 127:8-128:14 (questioning Mr. Johnson about the 2013 study).)

## ARGUMENT

Plaintiff asks the Court to strike both of Mr. Johnson's declarations based on her assertion that Mr. Johnson does not have personal knowledge of some of the information in those declarations. (*See* Doc. 157 at 2-3.) Plaintiff also contends that some information in the declarations is contradicted by the deposition testimony of LexisNexis's Virginia contractors. Plaintiff's motion should be denied for at least three reasons. First, Plaintiff waived any objection she might have had to the 2010 declaration. Second, as a Rule 30(b)(6) witness, Mr. Johnson was not required to have direct personal knowledge of all of the information he provided. Third, none of the information in Mr. Johnson's declarations is contradicted by the contractor depositions. Furthermore, even if the Court were to find some statements in the declarations unsupported, striking an entire declaration would not be an appropriate remedy. At

7

bottom, nothing in Mr. Johnson's testimony should be stricken, and even if that drastic remedy were deemed appropriate here, it would not alter the conclusion that Plaintiff's Amended Motion for Class Certification should be denied.

I.   **MOTIONS TO STRIKE ARE A "DRASTIC REMEDY" AND DISFAVORED.**

Motions to strike are "generally viewed with disfavor because striking a portion of a pleading is a drastic remedy and because it is often sought by the movant simply as a dilatory tactic." *Waste Mgt. Holdings, Inc. v. Gilmore*, 252 F.3d 316, 348 (4th Cir. 2001) (quotations omitted); *see also Int'l Longshoremen's Ass'n, S.S. Clerks Local 1624, AFL-CIO v. Virginia Int'l Terminals, Inc.*, 904 F. Supp. 500, 504 (E.D. Va. 1995); *Clark v. Milam*, 152 F.R.D. 66, 70 (S.D. W.Va. 1993). As this Court has observed, "[e]ven a properly made motion to strike is a drastic remedy which is disfavored by the courts and infrequently granted." *Int'l Longshoremen's Ass'n*, 904 F. Supp. at 504.

"Thus, a motion to strike should be denied unless the challenged allegations have no possible relation or logical connection to the subject matter of the controversy and may cause some form of significant prejudice to one or more of the parties to the action." *Bailey v. Fairfax County, Va.*, No. 1:10-cv-1031, 2010 WL 5300874, *4 (E.D. Va. Dec. 21, 2010) (quotations omitted). Indeed, "motions to strike are rather strictly considered and have often been denied even when literally within the provisions of Rule 12(f) where there is no showing of prejudicial harm to the moving party." *Godfredson v. JBC Legal Group, P.C*, 387 F. Supp. 2d 543, 547-48 (E.D.N.C. 2005).[1]

---

[1] The better course of action would be for the Court to consider Plaintiff's arguments when addressing her motion for class certification. *See*, *e.g.*, *City of Shawnee, Kan. v. Argonaut Ins. Co.*, 546 F. Supp. 2d 1163 (D. Kan. 2008) (rather than striking affidavit, court may enforce personal-knowledge requirement by disregarding portions of affidavit it finds insufficient); *Smith v. Southeastern Stages, Inc.*, 479 F. Supp. 593, 594-95 (N.D. Ga. 1977); *see also Chambers v.*

## II. IT IS FAR TOO LATE FOR PLAINTIFF TO CHALLENGE MR. JOHNSON'S 2010 DECLARATION AND DEPOSITION TESTIMONY.

Equifax filed Mr. Johnson's 2010 declaration with the Court three years ago, almost to the day. (Doc. 77-12.) Plaintiff did not object to the declaration at that time, or at any other time prior to November of this year. Furthermore, Plaintiff did not challenge the content of the 2010 declaration in her reply in support of her first motion for class certification (Doc. 79), in the brief she filed on appeal, or in the brief filed in support of her amended motion for class certification (Doc. 132). Plaintiff has long since waived any objection she might have to its content.

As discussed above, Plaintiff concedes that she waited for three years before challenging any aspect of Mr. Johnson's 2010 testimony, whether the deposition or declaration testimony. She further concedes that, although she was aware at the time that the 2010 declaration "was inconsistent with Mr. Johnson's actual knowledge and prior testimony," she declined to pursue an objection because the declaration "appeared to Plaintiff's counsel to be tangential to Plaintiff's [first] motion [for class certification]." Doc. 157 at 2. Plaintiff apparently continued to believe the matter to be tangential when the case was on appeal, even after the Fourth Circuit briefly described some of the evidence provided by Mr. Johnson when it reversed this Court's class certification. Plaintiff expressed no disagreement with Mr. Johnson's testimony in making her class certification arguments, nor did she move to strike any, let alone all, of Mr. Johnson's 2010 testimony prior to the Court's grant of class certification in 2011. Nor did Plaintiff make any effort to strike or exclude the Fourth Circuit's consideration of Mr. Johnson's 2010 testimony in the Fourth Circuit, or to file a motion for a rehearing in the Court of Appeals, which

---

*McLean Trucking Co.*, 550 F. Supp. 1335 (M.D.N.C. 1981), *aff'd*, 701 F.2d 163 (4th Cir. 1983) (Table) (affidavits in support of summary judgment not stricken in their entirety merely because they contained a few statements as to the affiants' understandings rather than knowledge).

 

would be the proper course of action if Plaintiff thought that court's decision rested on what Plaintiff perceived to be an erroneous fact. *Cf. Perera v. U.S. Fid. and Guar. Co.*, 544 F.3d 1271, 1277 n.4 (11th Cir. 2008) (on first appeal, plaintiff "should certainly have alerted this panel so that the additional factual issue could have been resolved on remand . . . [but plaintiff] failed to move for rehearing, or otherwise alert us"); *Eubank Heights Apts.. Ltd. v. Lebow*, 669 F.2d 20, 23 (1st Cir. 1982) ("If [party] felt the court had overstepped its bounds, she should have petitioned for rehearing. . . . Only upon a showing of injustice of major proportions – not mere arguable error – would we entertain reopening an issued opinion under these circumstances.").

For three years, Plaintiff's counsel made a strategic decision to forego any objection to Mr. Johnson based on counsel's belief that the testimony was "tangential." Plaintiff's attempt to obtain a do-over at this late date should not be allowed. Plaintiff's challenge to Mr. Johnson's 2010 testimony should be disregarded.

### III. BECAUSE RULE 30(b)(6) WITNESSES ARE NOT REQUIRED TO HAVE DIRECT PERSONAL KNOWLEDGE OF ALL INFORMATION ABOUT WHICH THEY TESTIFY OR ATTEST, PLAINTIFF'S MOTION TO STRIKE MR. JOHNSON'S TESTIMONY SHOULD BE DENIED.

#### A. Rule 30(b)(6) Witnesses Speak On Behalf Of The Corporation And Are Not Required To Have Personal Knowledge.

Mr. Johnson was LexisNexis's corporate witness in this case for certain matters of testimony sought by Plaintiff. Federal Rule of Civil Procedure 30(b)(6)was designed to resolve problems associated with deposing organizational entities, such as corporations. "The provision was added in 1970 in order to avoid the difficulties encountered by both sides when the examining party is unable to determine who within the corporation would be best able to provide the information sought, to avoid the 'bandying' by corporations where individual officers disclaim knowledge of facts clearly known to the corporation, and to assist corporations which

found an unnecessarily large number of their officers and agents were being deposed." *U.S. v. Taylor*, 166 F.R.D. 356, 360 (M.D.N.C. 1996); *see also Humanscale Corp. v. CompX Intern., Inc.*, No. 3:09-CV-86, 2009 WL 5091648, *2 (E.D. Va. Dec. 24, 2009) (quoting *Taylor*).

To obtain a Rule 30(b)(6) deposition, the deposing party (in this case, Plaintiff) must provide a deposition notice or subpoena that "describe[s] with reasonable particularity the matters for examination." Fed. R. Civ. P. 30(b)(6). "The named organization must then designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on its behalf," and "[t]he persons designated *must* testify about information known or reasonably available *to the organization*." *Id.* (emphasis added). In other words, "[t]he testimony elicited at the Rule 30(b)(6) deposition represents the knowledge of the corporation, not of the individual deponents." *U.S. v. Taylor*, 166 F.R.D. 356, 361 (M.D.N.C. 1996). He "speaks for the corporation and gives binding answers for the corporation." *NewMarket Corp. v. Innospec Inc.*, No. 3:10-cv-503, 2011 WL 1306008, *5 (E.D. Va. Apr. 1, 2011) (quotations and brackets omitted).

      **B.    As A Designated Rule 30(b)(6) Witness, Mr. Johnson Was Not Required To Have Direct Personal Knowledge Regarding All Matters In His Declarations.**

Once a Rule 30(b)(6) witness has been designated and deposed, numerous courts have held that the designee may provide a declaration on behalf of the corporation he represents. In *Joseph v. Pa. Dept. of Environmental Protection*, 2009 WL 3849696, *5 (E.D. Pa. Nov. 16, 2009), for example, the court considered Rule 30(b)(6) declarations, for purposes of summary judgment, because the declarations could "only do one of three things: (1) make statements that are consistent with the declarant's prior 30(b)(6) testimony; (2) make statements inconsistent with the declarant's prior 30(b)(6) testimony, thus providing [the plaintiff] with an opportunity to demonstrate that there is a material issue of fact in dispute; or (3) make a new statement which is

neither contradicted nor uncontradicted by the witness's prior 30(b)(6) testimony." The court overruled the plaintiff's objection to new statements made by the declarant because the plaintiff "had an opportunity to ask questions and elicit the responses at the deposition." *Id.* Other courts have held similarly. *See*, *e.g.*, *Weinstein v. D.C. Housing Authority*, 931 F. Supp. 2d 178, 186-87 (D.D.C. 2013) (denying motion to strike affidavits); *Williamson v. Life Ins. Co. of N. Am.*, 2012 WL 3262857, *1 n.1 (D. Nev. Aug. 8, 2012); *Schwendimann v. Arkwright Advanced Coating Inc.*, 2012 WL 928214, *1 n.1 (D. Minn. Mar. 19, 2012); *Sunbelt Worksite Mktg., Inc. v. Metro. Life Ins. Co.*, 2011 WL 3444256, *2 (M.D. Fla., Aug. 8, 2011) ("an affidavit by a Rule 30(b)(6) designee . . . is expected to be based on the organization's collective knowledge"); *Carl Zeiss Vision Int'l GMBH v. Signet Armorlite Inc.*, 2010 WL 1641144, **1-2 (S.D. Cal. Apr. 22, 2010); *Atlantic Marine Florida, LLC. v. Evanston Ins. Co.*, 2010 WL 1930977, *2 (M.D. Fla. May 12, 2010); *Hijeck v. Mania Logistics, Inc.*, 2008 WL 465274, *4 (N.D. Tex. Feb. 21, 2008) (citing *Brazos River Authority v. GE Ionics, Inc.*, 469 F.3d 416, 433 (5th Cir. 2006)); *ABN Amro Mortgage Group, Inc. v. Maximum Mortgage, Inc.*, 2006 WL 2598034, *7 (N.D. Ind. Sept. 8, 2006). In short, "it is not necessary for a corporate representative designated as a Rule 30(b)(6) witness to have direct, personal knowledge of each and every fact discussed in an affidavit or deposition because a Rule 30(b)(6) representative or designee can be inferred to have knowledge on the behalf of the corporation as the corporation is meant to appear vicariously through them." *Sunbelt*, 2011 WL 3444256, *2.

Here, statements in Mr. Johnson's declarations are limited to information within the scope of topics identified by Plaintiff in the Rule 30(b)(6) subpoena. Accordingly, as in *Joseph*, Plaintiff had an opportunity (indeed, two opportunities) to elicit all of the information Mr. Johnson provided in his declarations. In fact, because Plaintiff took Mr. Johnson's second

deposition after both declarations had been submitted, Plaintiff also had a chance to question Mr. Johnson about the particular statements he made. Accordingly, Plaintiff's motion should be denied.

## IV. MR. JOHNSON'S DECLARATIONS ARE CONSISTENT WITH OTHER EVIDENCE.

Plaintiff incorrectly asserts that "Mr. Johnson's declaration and deposition testimony is substantially inconsistent with that of LexisNexis's subcontractors who are responsible for actually collecting the public record information from the individual Virginia courts." Doc. 157 at 14. In particular, Plaintiff challenges paragraph 10 of the 2010 declaration, which states:

> [LexisNexis] also uses independent contractors to collect information about civil judgment and case disposition records from the Virginia District Courts. . . . The collector visits each District Court to identify and obtain information on judgments and dispositions entered since the last visit. . . .

Doc. 77-12 ¶ 10. According to Plaintiff, the contractors collected case dispositions only "from a few Virginia courts that provided the information or when case dispositions were already available upon their initial collection of the judgment information." Doc. 157 at 16.

Plaintiff does not dispute that, during the relevant time period, LexisNexis collected information regarding judgments and satisfactions through the VSC bulk feed. *See* Doc. 73 (Plf. Motion for Class Cert.) at 5; Doc. 132 (Plf. Am. Motion for Class Cert.) at 7; Ex. C (2013 Johnson Dep.) at 31:10-13, 101:16-20. The only question is whether and how LexisNexis gathered information regarding vacated judgments during this time period.

Plaintiff deposed four of LexisNexis's Virginia independent contractors, Sandra Arrington, Karen Christian, Cynthia Long, and Pamela Vicari, each of whom testified regarding

procedures they had used for collecting judgment dispositions, including dismissals.[2] Ms. Arrington testified that the court clerks "at one time . . . did a printout for us at the courthouse and put satisfactions, but they stopped." Doc. 159-1, Arrington Dep. at 25:13-15. When asked how she collected dispositions when printouts were not available, Ms. Arrington explained that she obtained them from the underlying court record folders. *Id.* at 25:13-27:1. Ms. Christian testified that the process for collecting dispositions "depended on the county" and "on whether the clerk wanted to cooperate with us or not. Some counties would provide me with a monthly printout of all of the releases and then they would put the vacated judgments in a file folder and I would pick those up. Some counties just absolutely refused. The clerks just would not do that for us." Doc. 159-2, Christian Dep. at 21:8-21. Ms. Long also collected information about vacated judgments from at least some of the courts where she worked. *See* Doc. 159-3, Long Dep. at 63:12-65:21. Ms. Vicari testified that she collected some information regarding dispositions through printouts and computerized court records. *See* Ex. D, Vicari Dep. at 17:9-18:12. This testimony is fully consistent with the quoted paragraph from Mr. Johnson's 2010 declaration. Plaintiff's assertion that the contractors' "testimony is directly contrary to Mr. Johnson's November 2010 declaration" is plainly erroneous.

Mr. Johnson's 2013 declaration, according to Plaintiff, "asserts that the Virginia Supreme Court data is not reliable because there are anomalies that occur in which the court reports the date of satisfaction as something other than when the notice of satisfaction of judgment is actually filed with the court and first made publically available." Doc. 157 at 16-17. Plaintiff does not deny that anomalies are present; she merely asserts that, "based on the testimony of

---

[2] In general, Plaintiff's counsel did not question these individuals about the timeframe for various procedures they described. Consequently, the transcript is not always clear as to which procedures were used during the relevant time period.

LexisNexis's subcontractors who actually collect Virginia court records, these types of anomalies occur much less than Mr. Johnson represents in his declaration." *Id*. at 17. Again, Plaintiff exaggerates the difference, which – even as described by Plaintiff – does not rise to the level of a contradiction. Ms. Christian testified, that "Goochland [County] did not record the correct date on their computer system of updates, releases" and that she has seen similar "human error" in dates listed in public records in other courts during her career including a recent error in a court record in Chesterfield County where a judgment amount was incorrectly entered in a case that had been transferred to another venue. Doc. 159-2 at 25:13-26:15. Ms. Long similarly testified satisfaction-date errors occur "really more often than your three in a hundred seems to be. It seems like – it's an aggravation to me as a researcher, you know, inputting the information and when I see something that's not correct, you know, then it's kind of upsetting, and I do remember – you're saying three in a hundred." Doc. 159-3 at 85:11-23.)

Plaintiff's assertion that Mr. Johnson's declarations are "substantially inconsistent" with the contractor testimony is plainly wrong. The testimony and declarations are consistent. Any small differences that are present are far from sufficient to discredit Mr. Johnson.

V.  **REGARDLESS OF MR. JOHNSON'S TESTIMONY, CLASS CERTIFICATION SHOULD BE DENIED.**

At bottom, Plaintiff's Motion to Strike is little more than a tempest in a teapot. As argued in Equifax's responses to Plaintiff's Amended Motion for Class Certification (Docs. 135, 159), numerous grounds for denial of Plaintiff's request for class certification are present in this case even without Mr. Johnson's testimony. Mr. Johnson's testimony, for example, had no impact on the Fourth Circuit's holding that willfulness is an individualized issue. *See Soutter v. Equifax Info. Services, LLC*, 498 Fed. Appx. 260, 265 (4th Cir. 2012) ("Proof that Equifax's

conduct was willful toward Soutter because she sent letters in advance informing Equifax that the case against her was dismissed will not advance the claims of other class members.").

Similarly, the individualized nature of inquiries related to inaccuracy and statutory damages have no relationship to the disputed testimony. *See* Doc. 159 at 13-14, 16-17. Mr. Johnson's testimony has no bearing on the individualized determination of inaccuracy, which may be achieved only through comparison of each individual's consumer report with the corresponding court file, an obviously individualized issue. His testimony likewise has no bearing on determination of statutory damages, which, the Fourth Circuit found in this case, "typically require an individualized inquiry." *Soutter*, 498 Fed. Appx. at 265 (quoting *Stillmock v. Weis Markets, Inc.*, 385 Fed. Appx. 267, 277 (4th Cir. 2010) (Wilkinson, J., concurring)).

In short, Mr. Johnson's testimony does not control this case. Plaintiff's exaggeration of the importance of that testimony notwithstanding, the Fourth Circuit's decision did not depend upon it, and it is not required here for denial of Plaintiff's Amended Motion for Class Certification. Accordingly, at the end of the day, there is no reason to strike Mr. Johnson's declarations and certainly no reason to, as Plaintiff desperately wants, use the motion to strike as a stalking horse to grant class certification.

## CONCLUSION

For the reasons stated, Plaintiff's Motion to Strike the Mark Johnson Declarations (Doc. 156) should be denied.

Respectfully submitted this 25th day of November 2013.

/s/
John W. Montgomery, Jr.
Virginia State Bar No. 37149
Counsel for Equifax Information Services LLC
John W. Montgomery, Jr., Attorney, PLC
2116 Dabney Road, Suite A-1
Richmond, VA 23230
Telephone (804) 355-8744
Facsimile (804) 355-8748
Email jmontgomery@jwm-law.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 25th day of November, 2013, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

Leonard A. Bennett
Robin A. Abbott
Consumer Litigation Associates PC
12515 Warwick Boulevard
Suite 100
Newport News, Virginia 23606

Dale Wood Pittman
The Law Office of Dale W. Pittman, P.C.
112-A W Tabb St
Petersburg, VA 23803-3212

Matthew James Erausquin
Consumer Litigation Associates PC
1800 Diagonal Road
Suite 600
Alexandria, VA 22314


Dated: November 25, 2013


/s/
John W. Montgomery, Jr.
Virginia State Bar No. 37149
Counsel for Equifax Information Services LLC
John W. Montgomery, Jr., Attorney, PLC
2116 Dabney Road, Suite A-1
Richmond, VA 23230
Telephone (804) 355-8744
Facsimile (804) 355-8748
Email jmontgomery@jwm-law.com