# EXHIBIT C

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

```
DONNA K. SOUTTER           )
on behalf of herself and   )
those similarly situated,  )
                           )
    Plaintiff(s),          ) CIVIL ACTION NO.
                           ) 3:10-cv-00107(REP)
-vs-                       ) (Pending in the Eastern
                           ) District of Virgina,
EQUIFAX INFORMATION        ) Richmond Division)
SERVICES, LLC,             )
                           )
    Defendant(s).          )
___________________________)
```

FOR ATTORNEY'S EYES ONLY

PROTECTIVE ORDER

DEPOSITION OF MARK JOHNSON

TAKEN ON BEHALF OF

THE PLAINTIFF(S)

IN OKLAHOMA CITY, OKLAHOMA

ON JUNE 12, 2013

10:02 A.M. - 2:23 P.M.

REPORTED BY: SHELLEY MARBURGER, CSR

[redacted]

Q. All right. Now, can you -- let's start with structure. Can you identify the employees who directly report to you?

A. Yes.

Q. Who are they?

A. Today? Currently?

Q. Yes.

A. Tiffany Stern is a director.

Q. And what is her job?

A. Civil acquisition. So we also have Scott Goldman, Director of I.T. Melissa Autin, Director of Civil Automation. I have a manager of bankruptcy collection that reports to me.

Q. Anyone else?

A. Mike -- Michael Williams, who's a manager, title's just manager.

Q. What does Michael Williams do?

CONFIDENTIAL



A. He manages our property data acquisition and currently --



[redacted]

Q. (By Mr. Bennett) Now, you have -- well, let's talk about your job. We know your job title. What is your actual job description?

A. Oh, in a summary, oversee the operation.

[redacted]



CONFIDENTIAL

[redacted]

A. If I recall, the judge or the supreme court stating or making it clear that the bulk feed would no longer be available.

Q. And that was in 2009?

A. That sounds about right.

[redacted]



[redacted]

Q. And I'm going to skip to Page 3 of -- this is the first -- this is the 2010 exhibit, I'm going to skip to Page 3. So 2003 -- I mean, 2009, it's Page 3, Paragraph 6, your first declaration stated that, "Until May of 2009, the Supreme Court of Virginia made available information regarding judgments and dispositions through regularly scheduled Bulk Feeds." And that's true. Correct?

A. Yes.

[redacted]



Prior to this litigation, what personal knowledge did you have about the way that Virginia General District Court clerks provide access to your subcontractors?

A. I have none.

[redacted]

A. A lot of the very specific information about the difficulties in collecting in Virginia became aware -- I became aware of. Yes. As part of the litigation and the deposition. The general process, the general awareness of how things are different from court to court, that's an awareness that I gained from years of experience working at the company that I --

Q. Have you yourself ever picked up or gone to any of these court houses in Virginia to gather records? Obviously not. You've never been here. Right?

A. Correct.

Q. For work. As a regular part of your job at LexisNexis, or Hogan before it, did you ever have a period of time when you worked as a collector to go around to a court system and gather records --

A. No. I have not.

Q. -- to get experience maybe?

A. No.

Q. So all of your knowledge, whatever it may be, even generally about the way that it's done in various courts, that itself is secondhand from what you've been told by people that work under you. Right?

A. Correct.

Q. And then in Virginia itself, that knowledge would be secondhand. Right?

A. Correct.

Q. But in Virginia itself, to be specific Virginia knowledge, even the secondhand knowledge you obtained, you obtained in creation of this declaration and in this litigation. Right?

A. Say that again. Even in Virginia, I -- it was second --

Q. The Virginia -- The Virginia-specific secondhand knowledge that you obtained, you obtained in the process of creating this declaration. Correct?

A. Not -- not -- It's like I said earlier, very specific details in Virginia, I became aware of as result of this deposition and the

litigation, but in general, my awareness of our collection processes was obtained over many years.

Q. I understand. But your Virginia-specific knowledge, even the secondhand knowledge, you obtained as part of preparing for your deposition or this declaration. Right?

A. It depends on how you characterize that. I'm very familiar with our laptop collection methodologies, I'm very familiar with how we engage contractors, I'm very familiar with our process of collecting across the board, whether it's Virginia or California or wherever, so that general --

Q. All right. Well, so what reports are available at the Richmond General District Court civil division clerk's office for your company or subcontractors to obtain?

A. Well, in general, many courts through a request will provide a list of -- what we call an index. And that index lists out all of the events that have occurred the previous day or week or whatever period. From that list of events --

Q. What court -- I'm sorry. Continue.

A. So in some courts you may have a report or a list that details out the events case by case

of what has occurred at that court in the previous time period.

Q. And in what courts in Virginia is that report -- will a clerk not provide that report to LexisNexis or its subcontractors?

A. I'm not aware of --

MR. RAETHER: Objection to form. Go ahead.

A. I'm not aware of that level of detail.

Q. (By Mr. Bennett) In what courts is it available in Virginia?

A. I'm sorry? What? Repeat.

Q. Sure. Well, are you aware of any court in Virginia which it is available?

A. I'm not aware of the specific courts, but I am aware of dialogue around the collection practices in Virginia, that some courts provide a list and some courts do not.

[redacted]

[redacted]

Q. Paragraph 7, which is Page 3 of Exhibit 3. It says, "Based on the above sampling," LexisNexis, "assembled a set of entries from the Virginia Supreme Court Database for manual examination." Have you reviewed that list, that set of entries?

A. Not personally.

Q. Have you seen it?

A. I'm honestly not sure what it's in reference to, what sampling or what was assembled. You know, there was a lot of analysis going on, I'm not sure exactly what part of the analysis that's referring to.

Q. In Paragraph 6, above it, LexisNexis, "including persons acting under your direction, sampled the listings in the database to test for date anomalies." It says, "rather than undertaking that massive analysis, it merely took

a small set of entries." Is this referring to Paragraph 4 -- I mean, Exhibit 4? This is just a sample of entries?

A. That would be my logical assumption.

Q. But you don't have personal knowledge as to whether it's true or not?

A. I don't believe that listing's outside of the comparison so, I mean, I directed that our production data be compared against the FOIA data and that differences be identified. And my assumption is that those differences or some subset of those differences is in -- Section 4. And from Section 4, document copies were obtained as described in Paragraph 7.

[redacted]