1            UNITED STATES DISTRICT COURT

2            EASTERN DISTRICT OF VIRGINIA

3               RICHMOND DIVISION

4    ********************************************************

     DONNA K. SOUTTER, For Herself and On Behalf of All
5    Similarly Situated Individuals,

6               Plaintiffs,
                 v.                    Civil Action Number
7                                      3:10cv107

     EQUIFAX INFORMATION SERVICES, LLC,
8
                Defendant.
9    ********************************************************

10

11

12

13               DEPOSITION OF

14               KEN MITTENDORFF

15               October 6, 2010

16          10:00 a.m.  -  11:44 a.m.

17               Richmond, Virginia

18

19

20

21

22

23

24   JOB NO: 33526

25   REPORTED BY:  GWENDA E. APPLEGATE, RPR, CRR

PLAINTIFF'S
EXHIBIT
F

Blumberg No. 5113

Page 2

```
1          Deposition of KEN MITTENDORFF, taken and
2    transcribed on behalf of the Defendant, by and
3    before Gwenda E. Applegate, Court Reporter, Notary
4    Public in and for the Commonwealth of Virginia at
5    large, pursuant to Rule 30 of the Rules of Civil
6    Procedure, and by Notice to Take Depositions;
7    commencing at 10:00 a.m., October 6, 2010, at
8    McGuire Woods, 901 East Cary Street, Richmond,
9    Virginia.
10   APPEARANCES OF COUNSEL:
11     By:  CONSUMER LITIGATION ASSOCIATES, P.C.
            12515 Warwick Boulevard, Suite 100
12          Newport News, VA  23606
            LEONARD A. BENNETT, ESQ.,
13          -- and --
            MATTHEW J. ERAUSQUIN, ESQ.,
14          Counsel for the Plaintiffs
15
16     By:  KING & SPALDING
            1180 Peachtree Street, N.E.
17          Atlanta, GA  30309
            J. ANTHONY LOVE, ESQ.,
18          Counsel for the Defendant
19
20     By:  OFFICE OF THE ATTORNEY GENERAL
            900 East Main Street
21          Richmond, VA  23219
            PAUL KUGELMAN, JR., ESQ.,
22          Counsel for the Deponent
23
24
25
```

Page 3

```
1
2                    I N D E X
3    WITNESS:
4      KEN MITTENDORFF
5        Examination by Mr. Love.................4, 70
6        Examination by Mr. Bennett..............54
7
8
9
10                 E X H I B I T S
11   NUMBER          DESCRIPTION:         MARKED:
12   Exhibit 1 ...Soutter documents...............17
13   Exhibit 2 ...Disposition Update.............21
14   Exhibit 3 ...User's Guide...................26
15   Exhibit 4 ...Internet screen shots..........32
16   Exhibit 5 ...Warrant in Debt................51
17                 * * * * * *
18
19
20
21
22
23
24
25
```

Page 4

```
1    (October 6, 2010, 10:00 a.m.)
2
3            KEN MITTENDORFF
4       first duly sworn, testified as follows:
5         E X A M I N A T I O N
6    BY MR. LOVE:
7       Q   Mr. Mittendorff, my name is Tony Love, and I
8    represent Equifax, the defendant in the lawsuit which is
9    pending in federal court in Richmond, Virginia.
10          You and I spoke on the phone one time before
11   about this case; is that right?
12      A   That's true.
13      Q   We've never met before today; correct?
14      A   That's true.
15      Q   All right, sir.  If you would, please just
16   tell us your job title.
17      A   I'm an assistant director of the Department of
18   Information Systems, and that's at the Supreme Court of
19   Virginia, Office of Executive Secretary.
20      Q   Sure.  And how long have you held that
21   position?
22      A   About ten years.
23      Q   And what are your responsibilities in your
24   current position?
25      A   I do a big list.  One of mine is to solve
```

Page 5

```
1    problems.  One is to assist people.  I handle
2    administrative office functions.  I do grants.  I work
3    with other state agencies like the state police, DMV,
4    and go to meetings and probably solve problems.  That's
5    the biggest part.  If it gets to be a really tough
6    problem, then I usually get it.
7       Q   All right.
8       A   And I do anything when the director is not
9    there.  I sign anything that he would normally sign and
10   work on procurement and stuff like that.
11      Q   Are you familiar with the records that are
12   maintained by the clerks in the Richmond General
13   District Court in Virginia, just generally familiar with
14   those records?
15      A   Yes.
16      Q   And are you generally familiar with the
17   records that are maintained by the general district
18   courts of all the general district courts throughout the
19   State of Virginia?
20      A   Yes.
21      Q   And are you also familiar generally with the
22   records maintained by the circuit courts throughout the
23   State of Virginia?
24      A   Yes.
25      Q   How did you gain familiarity with the types of
```

1  records maintained by the clerks in the general district
2  courts and the circuit courts throughout the State of
3  Virginia?
4      A  I've worked in automation at the supreme court
5  for 35 years, and I was there when we started automating
6  the courts.  And that was back in early '80s was when we
7  first did a study.  And then the first systems we put in
8  were about 1984, '85.  And the first systems we put in
9  were J&DR, general district, and then we moved on to
10  circuit court.  And we installed case management systems
11  in all three layers of courts.
12      Q  When you say case management systems, could
13  you give a little more information about that?  Is that
14  a system that was set up at the court level so that the
15  clerks of the various courts and the general district
16  courts could use an automated system?
17      A  That's correct.
18      Q  And what types of things would a clerk of a
19  general district court or, later, a circuit court -- let
20  me back up.
21         '84 to '85, that was when the system was set
22  up in the general district courts; is that correct?
23      A  Right.
24      Q  Okay.  When was the computerized system set up
25  in the circuit courts?

1      A  It would have been after that but not much
2  more.
3      Q  Okay.
4      A  I mean, the systems were started in pilot
5  courts and they expanded.  And most everybody was on
6  by -- because we had to do it slow, almost everybody was
7  on by about 1995, around that time, except for three
8  courts.  And those are circuit courts.
9      Q  Was there a particular reason those three
10  circuit courts weren't on by '95 like the others?
11      A  They had their own systems before we ever
12  started.
13      Q  Let's go back to the '84-'85 time period when
14  the system was set up for the general district courts.
15  What type of information could a clerk of a court or an
16  employee of general district court enter into the
17  computer system at that time?
18      A  Primarily indexing and docketing.  You could
19  get, you could get a docket out and you entered
20  information, and that's primarily what it would do in
21  the early part.  It got better over time.  So what we
22  have today is not the same as what's there.  It does a
23  lot of the same functions but it's not, it's not the
24  same.  Later we added a financial management system, so
25  those two interface.  So we interface financial

1  management records with case management records.
2      Q  Let's move -- is it fair to say that the
3  computerized system developed and evolved over the years
4  so that more data and more information could be
5  included?
6      A  Yes.
7      Q  Let's talk about the last five years.  Over
8  the last five years, have the clerks of the general
9  district courts throughout Virginia had a computerized
10  system that they could use to enter information about
11  court records?
12      A  Yes.
13      Q  And when I say court records, would that
14  include information about judgments and the appeals,
15  satisfactions or setting aside of those judgments?
16      A  Yes.
17      Q  And what types of information can the clerks
18  of the general district courts throughout Virginia enter
19  into their computer system over the last five years
20  concerning judgments and the appeals, satisfactions or
21  vacating of those judgments?
22      A  The first thing they do is they enter the
23  cases.  They can put witnesses in the cases.  They have
24  an ability to set hearing dates.  They have the ability
25  to put in dispositions of those cases.  And they can put

1  in whether dismissed, settled, judgments.  And later if
2  we change something, it will allow them to put in
3  whether there was a satisfaction and what the date was
4  the court received the satisfaction.  And they can also
5  note appeals.
6      Q  Is there a name for the system that the
7  general district court clerks use to enter this
8  information?  What do you call the system that you use?
9      A  The general name for it is CAIS, Computer
10  Automated Information System, but that has multiple
11  parts.  The case management system would be general
12  district court case management system, and it has the
13  ability to enter criminal data, traffic data and civil
14  data.
15      Q  Is the general district court case management
16  system the computer system that the clerks of the
17  general district courts in Virginia would use to enter
18  information about judgments and the dispositions or
19  termination of those judgments?
20      A  Yes.
21      Q  Is the information that the general district
22  court clerks throughout Virginia would enter into the
23  general district court case management system available
24  over the internet?
25      A  Some of the information is available over the

1  internet.
2     Q   If you would, please just tell us how
3  information from the general district court case
4  management system came to be available over the
5  internet.
6     A   Okay.  Years ago we purchased a used processor
7  and disk drives, and we would copy the data each night
8  from a production machine which is what the courts use
9  to a second machine, and then we made that information
10 available to the people on the internet.  And it went
11 through our web site.  And that data is limited and
12 that's not the official record of the court.
13    Q   When did the internet access first become
14 available or go on line?
15    A   Probably around 2000, in that, in that era.  I
16 don't have the exact date, but it's been up about ten
17 years.
18    Q   And do you have a name for that system that
19 delivers information from the general district court
20 case management system through the internet?
21    A   No.  It's just, it's just the internet
22 portion.
23    Q   And is access to the internet portion made
24 through the website of the Supreme Court of Virginia?
25    A   That's correct.

1     Q   Are there any other portals for that
2  information other than the Supreme Court of Virginia
3  website?
4     A   No, other than vendors that have copies of
5  that data.
6     Q   Do the circuit courts in Virginia also have
7  their own case management system where they can enter
8  information about judgments and the dispositions of
9  those judgments?
10    A   Yes.
11    Q   And is there a name for the circuit court
12 system, or is it just called the circuit court case
13 management system?
14    A   Circuit court case management system.
15    Q   And when information became available through
16 the Virginia Supreme Court website around 2000, did that
17 include information from the general district courts and
18 also the circuit courts or just one of the two?
19    A   At first the information was from the general
20 district courts, and later we made the circuit court
21 data available.  But the clerks have to opt in to
22 include their data.  So not all circuit court data is on
23 the internet.  If a clerk doesn't want their data shown
24 on the internet, then we don't put it up.
25    Q   Do you have a rough idea for what percentage

1  of circuit court clerks have opted in to use the web to
2  make their information available?
3     A   It would be an estimate.  I don't have the
4  exact number.  There's probably only around 20 or 25
5  that don't have it, but I'd have to check the number.  I
6  don't know that number off the top of my head.  I could
7  get it for you but I don't know it.
8     Q   Now, you created or were primarily involved in
9  creating the web-based court information for the Supreme
10 Court of Virginia website; is that correct?
11    A   No.  I don't create the data.  I work on
12 procuring the, getting the personnel, getting the people
13 to do the work, but I didn't create it by myself.  I
14 mean, it was an idea and I guess I fostered the idea by
15 getting the other, the additional machine.  But that's
16 about what I did.
17    Q   Okay.  If you would, just describe what your
18 role was in creating the web-based information through
19 the Virginia website that went on line around 2000 and
20 just all the steps that were required to get that up and
21 running.
22    A   Well, first we had to procure the money to get
23 that.  One of the things we wanted to do was make it so
24 that it started a project with the law, with the bar
25 because they wanted to be able to see court data and we

1  also wanted to make the public see court data so that
2  people who had a case would be able to look that case
3  up, know what their date was, as well as attorneys and
4  the public, because people would not know what day
5  they're supposed to appear.  They would have lost their
6  summons.
7         And then later we started a pilot project
8  which would allow you to prepay a traffic ticket on the
9  web.  And so it was basically if you want to know
10 something, general information about the court, you
11 could go there and look it up.  And you can only look
12 the data up by court.  You can't look it up by defendant
13 across the state.  You have to know which court the data
14 is in.  And so it was made -- that's how the data was
15 made.  It was made -- just the way we do it, it's not
16 indexed across the state.  It's indexed by individual
17 courts.  And we gradually added courts to it.
18        And then we changed something in it now that
19 we can replicate the data.  When we moved to DB2, which
20 is a different database, we can put that data out the
21 same day instead of overnight.
22    Q   When did you move to DB2?
23    A   It depends on which system, but it was about,
24 for general district, it was about 2007.
25    Q   And what is the difference between DB2 and the

1  old system that you were using?
2     A   Well, the old one was going to go out of
3  support.  That's called DL1.  That's the old database.
4  And the new one is DB2.  And one of the big advantages
5  of DB2 is you can have other indexes, but it's supported
6  and DL1 is not going to be supported.  It's the big
7  thing, you have to move to it, but the other one isn't.
8        One of the advantages is, it allows you to
9  replicate the data.  So instead of having to take copies
10  every night and put them, you can replicate the data and
11  it can look at -- the second database can look at the
12  first database and get the changes that were made so you
13  didn't have to replicate -- you'd have to back up the
14  data and restore it on the internet machine every day.
15    Q   Let's -- I want to try to create a flow chart
16  of information so that I understand how it moves through
17  the system.  So let's take a matter in the general
18  district court.  You're aware, sir, that in the general
19  district court, oftentimes an action can be initiated by
20  the filing of what's called a warrant in debt; is that
21  correct?
22    A   That's true.
23    Q   Let's assume that a warrant is filed in the
24  general district court which results in a judgment being
25  entered.  If you would, tell us how that information

1  flows from the courtroom to the general district court
2  case management system to the web system that you
3  described that was launched in 2000.
4     A   Okay.  The warrant comes in, a case number is
5  assigned to each warrant.  The parties are entered.  If
6  there are attorneys, those are entered, the data entry
7  is done.  For every case that's entered, a hearing date
8  has to be set.  Once the hearing date is set, a
9  courtroom's assigned.  A judge is assigned.  And it's
10  set for a time.
11        In civil cases, there are continuances, quite
12  a few continuances a lot of times, so the cases are
13  continued from one day to another day, maybe to the
14  second or third day.  And on that day a hearing is held.
15  And if the judge enters a judgment or dismisses the
16  case, that's written on the papers, usually signed by
17  the judge.  There's a docket sheet that's there; they
18  put it on a docket sheet.  There's a clerk in the court
19  who can record the information while they're in court at
20  a terminal, or it can be done in the clerk's office by
21  the papers later that day or the next day.
22        Once the data is in the machine in the first
23  computer, then that night, until we had DB2, the data
24  would be copied to the internet machine so it's
25  available.  Not all the fields that are in the case

1  management system are available on the internet.  So you
2  can't look at somebody's address.  Personal information
3  is not on the internet.
4     Q   And with DB2, the main difference was that
5  instead of waiting until that night so that information
6  could be loaded from the general district court case
7  management system to the web system, it's automatic?
8     A   Yeah.
9     Q   What information -- you mentioned that no
10  address or personal information would appear on the
11  website.  Is there any other information that would be
12  available through the general district court case
13  management system that would not be available through
14  the court's website?
15    A   Remarks.  Most of the information is
16  available.  Remarks are not.  That's about -- there may
17  be some other fields that aren't there but I'd have to
18  do a comparison.  It's a, it's a general abstract of the
19  case is what really is on the internet.  If you know
20  something about the case, you can go and look at it.
21  And that's primarily what it is.
22        Not all the information about the case is on
23  the internet.  There's no personal information on there.
24  And if you want the detailed information, then you have
25  to look at the court papers.

1     Q   And no one from the Supreme Court of Virginia
2  actually goes and looks at the actual court papers that
3  are filed in the various general district courts or the
4  circuit courts for use in preparing the information
5  that's available on the website; is that right?
6     A   No one in our office enters data for them.
7  They enter their own data on that system.
8     Q   Right.  And would you agree that if one of the
9  clerks or other personnel that are entering this
10  information at the general district court level or the
11  circuit court level make an error in what they enter
12  into their computer system, then that error will also be
13  reflected in the information that's available on the
14  supreme court website?
15    A   That would be correct.
16    Q   Now, have -- let me show you what we will mark
17  as Exhibit 1 to your deposition.
18
19        (Mittendorff Deposition Exhibit Number 1
20         was marked for identification)
21
22        MR. LOVE:  And at this point we will go ahead
23  and designate this deposition as subject to the
24  protective order in this case since we're dealing
25  with some personal information of a consumer.

Page 18

```
1    BY MR. LOVE:
2        Q   Have you ever seen this document before?
3        A   No.
4        Q   Do you recognize this generally as a warrant
5    in debt that would be filed in a general district court
6    in Virginia?
7        A   Yes.
8        Q   Have you ever reviewed any records of Donna
9    Soutter, the plaintiff in this case, prior to today?
10       A   On the web, yes; the actual documents, no.
11       Q   All right, sir.  Have you ever seen a copy of
12   Ms. Soutter's credit file?
13       A   No.
14       Q   You've never spoken to Ms. Soutter, have you?
15       A   No.
16       Q   In looking at this document that's been marked
17   as Exhibit 1, can you help us understand from your
18   knowledge in working with public records in Virginia the
19   type of information that appears here and what's
20   reflected?
21           First of all, I think you said this is a
22   warrant in debt, this is how a lawsuit would be started
23   in a general district court in Virginia; is that
24   correct?
25       A   Yes.
```

Page 19

```
1        Q   And the way it would be started is the person,
2    the plaintiff in a case, would type in the information
3    here or write in the information concerning the claim
4    that they were making against a defendant; is that
5    right?
6        A   That's correct.
7        Q   And you mentioned earlier that in general
8    district courts, there are often several hearing dates
9    that are set.  And over on the right-hand side of the
10   first page, it says hearing date and time, and it has a
11   number of dates; right?
12       A   That's correct.
13       Q   Is that the section of a warrant in debt where
14   a court would write in all the different hearing dates
15   that apply to a particular case?
16       A   That's correct.
17       Q   And then under case disposition in the bottom
18   left-hand side, is that the area where a court would
19   write the final disposition of a case?
20       A   Yes.
21       Q   And for this particular judgment -- or, excuse
22   me.  For this particular warrant in debt, under the case
23   disposition section, does it indicate that a judgment
24   was entered against Ms. Soutter for $14,403.79 with an
25   interest rate at 9.99 percent from February 22 of 2007?
```

Page 20

```
1        A   Yes.
2        Q   And it also appears that the Court awarded
3    $48 in costs against Ms. Soutter; is that correct?
4        A   That's correct.
5        Q   And then down below we see some handwritten
6    notes, and one of them says "3/20/08, see order J
7    vacated, case dismissed without prejudice."  Do you see
8    that part?
9        A   Yes.
10       Q   Does that mean that on 3/20/2008 the Court
11   entered the notation that the judgment had been vacated
12   and case dismissed without prejudice?
13       A   I wouldn't know.  I mean, what I'm reading is
14   that, but I don't know who put it there.
15       Q   Certainly.  That's how you would generally
16   understand that a court could make that type of note in
17   a record like that; is that fair to say?
18       A   Yes.
19       Q   Okay.  So this is the type of record that
20   would be generated, going back to our flow chart
21   discussion, this is where the trail would begin, so to
22   speak?  When a document or a record like this is entered
23   in the record of a general district court or a circuit
24   court in Virginia, something like this would have to
25   happen before any information was entered about a case
```

Page 21

```
1    into the general district court case management system;
2    is that right?
3        A   That's correct.
4        Q   And from here, let's go to the next step.  The
5    next step would be the clerk of the general district
6    court or a circuit court would enter information about
7    the events that are shown in these documents, like
8    what's been marked as Exhibit 1, into the general
9    district court case management system; is that right?
10       A   That's correct.
11       Q   Or if we were in circuit court, then a circuit
12   court clerk would enter information about its case into
13   the circuit court case management system; right?
14       A   That's correct.
15       Q   Let me show you what we'll mark as Exhibit 2.
16
17           (Mittendorff Deposition Exhibit Number 2
18            was marked for identification)
19
20   BY MR. LOVE:
21       Q   Can you identify what's been marked as Exhibit
22   2?
23       A   It's a screen print of the case management
24   system.
25       Q   And is this a screen print for Donna Soutter's
```

6 (Pages 18 to 21)

Page 22

1  lawsuit in the Richmond General District Court?
2      A   Yes.
3      Q   And are you familiar with this type of screen
4  shot and the information contained in this type of
5  screen shot?
6      A   Yes.
7      Q   If you would, just walk us through this
8  document and tell us what it reflects about Donna
9  Soutter's case.
10     A   Okay.  If you look at the original one, you
11  could tell there was a judgment, and that hearing date
12  occurred on 1/29.  And that's, that's the number 05
13  hearing here.  So on that day there was a judgment
14  entered.  On 03/20/08 they had a re-hearing of some
15  kind, and this was amended to be that the case was
16  dismissed.
17     Q   And the person who entered this information
18  that's reflected on this exhibit would have been an
19  employee of the Richmond General District Court; is that
20  correct?
21     A   Civil court, yes.
22     Q   The civil division of the Richmond General
23  District Court.  And going back to our flow chart, this
24  document reflects the second step in the process, the
25  first step being the events that happened in the court

Page 23

1  and a judgment or some other action occurs, the second
2  step being that an employee of the Richmond General
3  District Court civil division enters information about
4  those events into its case management system; correct?
5      A   Right.  You're just missing one.  This is
6  after the re-hearing, but you're missing what it looked
7  like before the final, before the March 20th.  This is a
8  screen shot of March 20th, and you don't have the one
9  from January 29th, '08; okay?  But it would not have
10  shown that last hearing.  But other than that, you're
11  correct.
12     Q   Okay.  In other words, what you're saying is
13  there could be, there's usually -- there could be a
14  screen shot that reflects the events that occurred at
15  each separate hearing?
16     A   That's correct.
17     Q   Okay.  But this screen shot that's been marked
18  as Exhibit 2 reflects what happened at the last hearing
19  in this case?
20     A   That's correct.
21     Q   And what happened at the last hearing is the
22  hearing was held and then an employee of the general
23  district court entered information about that last
24  hearing, and what they entered was that the case had
25  been dismissed; is that correct?

Page 24

1      A   That's correct.
2      Q   And if you look in the upper right-hand corner
3  of this document, you'll see in bold the letter "I."  Do
4  you see that?
5      A   Uh-huh.
6      Q   What does that letter "I" indicate?
7      A   Actually, it's where the case disposition is,
8  but the "I" means that means the case has been
9  dismissed.
10         MR. KUGELMAN:  I think he's talking about the
11  upper right here.  Is this correct, Tony
12  (indicating)?
13  BY MR. LOVE:
14     Q   Yes, sir.
15     A   Okay.  That's dismissed for Donna Soutter.
16  That's the judgment for her.
17     Q   All right.  And the "I" that you were looking
18  at when you spoke earlier is actually right in the
19  middle on the top where it says JI; is that right?
20     A   Right, plus the other one that's down in the
21  lower left where it says case disposition.  That's the
22  one I look at first.
23     Q   Okay.  And those three Is that are reflected
24  on Exhibit 2, that's all information or codes that would
25  have been entered by an employee of the Richmond General

Page 25

1  District Court after this final hearing?
2      A   That's correct.
3      Q   And the "I" -- these employees of the general
4  district courts use codes to indicate certain events
5  that occurred; right?
6      A   That's correct.
7      Q   And they use codes so they don't have to type
8  out the longer verbiage of what happened; right?
9      A   That's correct.
10     Q   And an "I" code means dismissed; is that
11  right?
12     A   That's correct.
13     Q   Now, there are other codes that could have
14  been entered following this disposition of this case in
15  March of 2008; is that right?
16     A   You mean that were entered after this?
17     Q   Well, let me rephrase the question.  When an
18  employee of the Richmond General District Court or any
19  district court throughout Virginia goes to enter this
20  information after a hearing about this case or any other
21  case, there are a number of codes available to them that
22  they can use to describe the events that occurred in the
23  hearing; is that fair to say?
24     A   That's correct.
25     Q   Okay.  "I" is one of the codes, and "I" means

1  dismissed?
2      A    Correct.
3      Q    One of the other codes that an employee could
4  use is a code for appealed; is that right?
5      A    That's noted.  It's not -- I don't believe
6  there's a code for appeal.  It would be noted in the
7  bottom, down on the bottom where it says -- there's a
8  place on the -- the appeal noted is located on the
9  bottom of it, of the form.  Like it says bankruptcy,
10  appeal noted, appeal perfected.
11     Q    Okay.  You're talking about the section that
12  says "APPL noted"?
13     A    Right.
14     Q    And "APPL perfected"; correct?
15     A    Right.
16     Q    And we'll come back to discussing appeals in a
17  little while.  But in the meantime, let's take a look at
18  what's been marked as Exhibit 3.
19
20         (Mittendorff Deposition Exhibit Number 3
21          was marked for identification)
22
23  BY MR. LOVE:
24     Q    Can you identify that document, sir?
25     A    It's a training tool that's used for courts so

1  they know what case -- what to enter on a case
2  management entry screen.
3      Q    All right, sir.  And if you take a look at
4  page A5 of that document, it's in the upper right-hand
5  corner.
6      A    Okay.
7      Q    Is page A5 a page from this training document
8  that's provided to the employees of the general district
9  courts that shows them how to code civil hearing
10  disposition information?
11     A    That's correct.
12     Q    And if you look in the bottom left-hand corner
13  of this page, there's a box.  And it has the letters and
14  the words A-vacated, P-plaintiff, D-defendant,
15  I-dismissed, N-nonsuit, U-not found/unserved, and
16  O-other.  Do you see that box?
17     A    Uh-huh.
18     Q    Are those the codes that employees of the
19  general district courts can use when they enter
20  information into the case management system to show the
21  dispositions of cases in their courts?
22     A    That's correct.
23     Q    And if we go back to Exhibit 2 and look at the
24  three "I" codes that appear on the first page of that
25  document, those "I" codes are the same "I" codes that

1  are reflected on Exhibit 3 down in the box that we just
2  looked at, where it says "I-dismissed"; is that right?
3      A    That's correct.
4      Q    And when the employees of the general district
5  court enter the information that's shown on Exhibit 2,
6  they had available to them the option to enter code A,
7  vacated; is that right?
8      A    That's correct.
9      Q    But they didn't choose A, vacated; instead,
10  they chose I, dismissed; is that correct?
11     A    That's correct.
12     Q    Now, does someone from your office conduct the
13  training for the clerks of the general district courts
14  and the clerks of the circuit courts on how to code this
15  type of information into their case management systems?
16     A    Yes.
17     Q    Who does that actual training?
18     A    Judicial Services Department.
19     Q    Is there a particular individual that does
20  that?
21     A    There are a lot of individuals that do that.
22     Q    Okay.  They just travel throughout the state
23  and conduct this training?
24     A    A lot of the training is done in our office.
25     Q    Okay.  So the clerks actually have to come to

1  you?
2      A    Right.
3      Q    How long has this document been out that's
4  marked as Exhibit 3?
5      A    It would be out for years.  I mean, I don't
6  know the exact date.  It's basically a screen shot of
7  the -- and it's been probably in use for at least ten
8  years or something.  I don't know the exact date when it
9  was done.  This is 7/10, so it was revised in July of
10  this year.  So they may have added a code or something,
11  but, so I can't tell you exactly.  But it's a training
12  tool is what it is.
13     Q    Based upon your review of Exhibit 2 and your
14  knowledge of the court systems, Donna Soutter's judgment
15  was never marked as vacated, it was marked as dismissed;
16  is that correct?
17         MR. BENNETT:  Objection, leading question,
18     also assumes facts not in evidence.  The witness
19     has already said that the only screen print you're
20     showing is the ultimate one, not necessarily the
21     one when it was noted vacated before, thereafter
22     the dismissal with prejudice was entered.
23         MR. KUGELMAN:  You may answer the question.
24     It's all right.
25         THE WITNESS:  What's shown here on this screen

Page 30

1   print is dismissed.  Was there something else in
2   between?  I can't -- I don't know.  I don't have
3   that.  Was there something after this date?  I
4   don't know.
5       One thing about case management that everybody
6   needs to understand is when you take a picture of
7   something, it's the picture that this was on that
8   particular day.  It can be changed.  So I don't
9   even have the date this screen shot was made.  But
10  if you knew the date that screen shot, that's the
11  way it appeared on that day.  Ten days later, two
12  days later, somebody makes a change on it, you get
13  a different -- there will be something out there
14  that's different.
15      And I can't -- usually they're not going to
16  make a change unless something occurs.  That's not
17  usually done unless there is a mistake, okay?
18  So...
19  BY MR. LOVE:
20      Q   How did you get this -- is this a screen shot
21  that you obtained?
22      A   No.  You just gave it to me.
23      Q   Okay.  Well, did it initially come from --
24  have you, have you ever requested or obtained any screen
25  shots from the Richmond General District Court

Page 31

1   concerning Donna Soutter's case?
2       A   Yes.
3       Q   Is this one of those screen shots?
4       A   Yes.
5       Q   Okay.
6       A   Not -- I'd like to say, I can't tell you if
7   it's the one I have, but it is one that I recognize,
8   appears to be exactly the same as the one I have.
9       Q   Okay.  And would it be possible to go back and
10  get screen shots from all these different hearing dates?
11      A   No.
12      Q   You can only get a screen shot for the most
13  recent activity?
14      A   That's correct.  Unless you got one earlier,
15  you can't, you can't replace that.  It's like you took a
16  picture and now you have it.  Something changes and now
17  you've got another picture.  But you can't recreate the
18  screen shot for 2008 or 2007.  You can't do that.  The
19  system has been changed.
20      Q   Okay.  But what we can say based on Exhibit 2
21  is that as of March 20, 2008, this was being reported as
22  a dismissed lawsuit; is that correct?
23      A   Right.  And it should be -- yeah.  It
24  matches -- there is a date on the, on Exhibit 1 that
25  says this is March 20th, '08, and that matches with

Page 32

1   this.  So as of that date, this matches with your
2   Exhibit 1.
3       Q   And if you go back to Exhibit 1 and go to the
4   next-to-last page, does this appear to be an order that
5   was entered in Ms. Soutter's lawsuit?
6       A   Yes.
7       Q   And if you look at the next-to-last sentence,
8   it says "ordered that the judgment entered against Donna
9   K. Soutter in the captioned matter be, and is hereby,
10  set aside and dismissed without prejudice."  Do you see
11  that part?
12      A   Yes.
13          MR. LOVE:  All right.  Could we go off the
14      record just for a moment?
15
16  (Discussion off the record, Mittendorff Deposition
17      Exhibit Number 4 was marked for identification)
18
19  BY MR. LOVE:
20      Q   All right, sir.  Can you identify what's been
21  marked as Exhibit 4?
22      A   Okay.  This is copies of screen shots of what
23  is on the internet machine for -- and it shows first,
24  the first page is the index to cases in the Richmond
25  General District Court civil case, and it shows two

Page 33

1   cases for Ms. Soutter.  And those cases are the one you
2   have as Exhibit 1, and a second case that's 02, or it's
3   actually a suffix case.  And the second page is a screen
4   shot of the actual case, the A2-00, shows the file date.
5   And it shows the last date is March 20th, 2008,
6   reopened, re-hearing and has a judgment of case
7   dismissed.  So it matches what's on the warrant in debt
8   which was Exhibit 1.
9       Q   All right.  And is Exhibit 4, does it appear
10  to be a copy of the screen shot for Ms. Soutter's case
11  from September of this year?
12      A   It would be September of 2000 -- the case was
13  September, started in September 2007, correct.  It
14  wasn't this year.  And the screen print was made this
15  year.  Okay.
16      Q   And so that is, that represents the
17  information for Ms. Soutter's case, the one that we're
18  talking about in this lawsuit, as it appeared on the
19  supreme court website in September 2010?
20      A   Yes.
21      Q   And in September of 2010 it was still being
22  reported as dismissed; is that correct?
23      A   That's correct.
24      Q   And it wasn't being reported as vacated;
25  correct?

9 (Pages 30 to 33)

1    A   That's correct.
2    Q   In the coding of the documents for public
3  records in the general district courts of Virginia and
4  the circuit courts of Virginia, going back to the codes
5  that are used, do the clerks make a distinction between
6  vacated and set aside or is that generally treated as
7  the same thing?
8    A   I can't answer that question.  I mean, if the
9  order -- if the way the order is written or the way the
10  judge says it, the clerk records it that way.  The
11  clerks aren't allowed to change it.  So if somebody says
12  it's dismissed, then it's dismissed.  They wouldn't put
13  vacated unless the judge said vacated, normally.
14       Now, I can't speak to how they do it in one
15  court versus another court.  The codes are there.  And
16  I'm not there when they do it so I can't tell you how
17  they do it.  I don't know if that helps you any but, I
18  mean, everything says dismissed here and they put
19  dismissed, and the order said dismissed.
20    Q   Based on your knowledge of court records in
21  Virginia, is there a difference in Virginia between a
22  vacated judgment and one that's set aside?
23    A   I can't answer that.
24    Q   Okay.  There's not a separate code here on
25  Exhibit 3, on page A5 of Exhibit 3 for a set-aside

1  judgment, is there?
2    A   Let me get the right one (perusing document).
3  No.  There's vacated and dismissed, but set aside is not
4  shown.
5    Q   All right, sir.  Now, that document that we
6  just looked at, Exhibit 4, going back to our discussion
7  earlier of the flow of this information and building a
8  flow chart of this information, that represents the
9  final step in our flow chart; right?
10       It goes from the actual documents in the court
11  that would be in the court file which are represented in
12  Exhibit 1, which is the warrant in debt and the order
13  and those types of documents.  That's step one.  Step
14  two is when the clerk of the court enters it into the
15  general district court or circuit court case management
16  system, and that can be reflected in documents like
17  Exhibit 2, which is the screen shot?
18    A   Uh-huh.
19    Q   And then finally, it shows up here on the
20  Virginia Supreme Court website with select information
21  about a case that's available to the public through the
22  court's website.  Is that the final step in our flow
23  chart?
24    A   That's correct.
25    Q   I want to ask you some questions now, sir,

1  about public record vendors in Virginia.  Now, are you
2  aware that -- do you know what a public record vendor
3  is?
4    A   Basically.
5    Q   Okay.  What is your basic understanding of
6  what a public record vendor is?
7    A   Some vendors gather data from courts and they
8  report it.  Some try to put it on their own websites.
9  Some are good at it and some are not so good at it.  But
10  anyway, that's what people do.  Some people, what we
11  call them I guess in the courts are some people are list
12  makers.  They go to court and they get lists, and that's
13  what they do.  Other people -- we used to report data.
14  But the data on their website is one way for somebody to
15  get information.  And if they want more information,
16  they'd have to go to the court to look that up.  But
17  that's what the data is used for.
18    Q   All right, sir.
19       MR. LOVE:  And just for the record, I move to
20  strike the portions that are nonresponsive.
21       MR. BENNETT:  I'm sorry?
22       MR. LOVE:  Move to strike the portions that
23  are nonresponsive.  The --
24       MR. BENNETT:  Which, of course, you can say.
25  He says I move to strike the portions that are not

1  responsive, but the typed transcript --
2  BY MR. LOVE:
3    Q   Are you aware of a public records vendor
4  called LexisNexis?
5    A   Yes.
6    Q   What is your knowledge of LexisNexis?
7    A   They are a big company.  They do -- well, they
8  do keep records.  Okay.  They received records from us
9  and they know how to use the web.  And that's about what
10  I could tell you about them.  Anything else would be --
11  okay.
12    Q   All right.  Did the State of Virginia through
13  your office at some point provide information about
14  public records, including judgments and dispositions of
15  judgments, to LexisNexis?
16    A   That's true.
17    Q   And could you just explain how that worked,
18  when it started and what the process was, how the
19  information was transmitted?
20    A   Okay.  We have a -- we had.  We no longer have
21  that.  But we could provide you dispositional
22  information for civil cases.  And I'll just speak to
23  civil since this is what that's about.  And we would
24  send, based on somebody's request, we would send monthly
25  dispositions.  And the data we would send is equivalent

Page 38

1  to an abstract of judgment. And let me explain what
2  that's -- why we did that.
3         Abstracts of judgments are placed on the
4  court's calendar for list makers, it used to be placed
5  on there for list makers to gather that information.
6  And at one time, sometime long ago, people asked if we
7  could automate that portion so that list makers wouldn't
8  have to just copy the data that's on the abstract of
9  judgments. So that's what we did.
10        Abstracts of judgments are based on a judgment
11 or an other judgment. So the only dispositions that
12 appear on abstracts of judgments are cases in which the
13 defendant, there was a judgment entered against the
14 defendant or an other judgment was made. And so those
15 would be reported on those, on those cases.
16        And so to get it -- to make the data better,
17 because if a court was -- didn't complete something by
18 the end of the month, we started sending two months. So
19 you would get two months each month, try to make sure
20 that -- and you could request updates, which means you
21 could request a whole year's worth of data to refresh
22 your database. Because if changes were made on the
23 record, you wouldn't have those unless you went on line
24 and looked at those records.
25    Q   When did the State of Virginia through your

Page 39

1  office start providing this information to public
2  records vendors in this manner approximately?
3     A   Probably in around 2000 or so, maybe a little
4  earlier than that. I don't know the exact date when we
5  started doing it.
6     Q   And when did you stop providing it in this
7  manner?
8     A   The last records we sent were March of 2009.
9     Q   How was the information transmitted to public
10 records vendors?
11    A   By cartridges.
12    Q   Cartridges?
13    A   Computer cartridges.
14    Q   Were those sent by overnight mail or --
15    A   UPS.
16    Q   Did the cartridges contain information about
17 new judgments that were entered in the district courts?
18    A   Yes.
19    Q   Did the cartridges contain information from
20 both the general district courts and the circuit courts
21 or just the general district courts?
22    A   You could get whichever one you wanted. If
23 you wanted circuit court, you could get circuit court.
24 If you just wanted general district, you could get
25 general district.

Page 40

1     Q   All right, sir. And you mentioned earlier
2  that some of the circuit courts have elected not to
3  participate in the web information that's now available.
4  Did some circuit courts also opt out of participating in
5  providing information that could be included in
6  providing those computer cartridges?
7     A   No.
8     Q   So that included all circuit courts?
9     A   That's correct.
10    Q   Did the computer --
11    A   Only the ones on case management, less the
12 three circuit courts that are not on the system.
13    Q   Yes, sir. So the information that was
14 included on those cartridges came from the case
15 management systems of the general district courts and
16 the circuit courts in Virginia?
17    A   That's correct.
18    Q   Now, how would your office extract the
19 information from the case management systems of the
20 general district courts and the circuit courts to
21 include on this information that was on these computer
22 cartridges?
23    A   We do it by hearing date. So if you're going
24 to run for, say, January 2009, you're going to run all
25 the hearing dispositions that occurred in which a

Page 41

1  judgment was ordered in that period of time. And we're
2  only talking civil now. So if judgments were entered in
3  January for hearings, then we would report those. And
4  it's similar to the screen shots that you have here.
5     Q   Did the information that was included on the
6  computer cartridges also include new satisfactions of
7  judgments?
8     A   Yes, if the judgments had been satisfied when
9  the tapes were made. So if you satisfied the judgment
10 within a month, then yes. To get it later, you would
11 have had to ask for the tapes that covered the hearings
12 that were done. In other words, the way it was made was
13 the same thing you'd see on an abstract of judgment. So
14 if you got a picture in January of it, it might not be
15 satisfied. But in -- when we ran two months in
16 February, if it had been satisfied, you would see it.
17 If you re-ran it you would see it, or if you went on the
18 web you would see it.
19        But to get the satisfied, you would have to,
20 you would have to either get new data or go look at it
21 on the web.
22    Q   Did the information that was provided on the
23 computer cartridges contain information about appeals?
24    A   No.
25    Q   Did the information on the computer cartridges

1    contain information about judgments that had been
2    vacated or set aside?
3        A   No.
4        Q   I'd like to go back for a minute to Exhibit 3,
5    please.  And if you would, look at page A5.  Down in the
6    bottom left, we talked about the box that contains the
7    various codes that the court clerks could use to enter
8    information about cases, and none of those codes says
9    satisfied, does it?
10       A   No.
11       Q   How would a court clerk enter information into
12   the case management system to show that a judgment had
13   been satisfied?
14       A   There is another -- you'd have to look at one
15   of the other exhibits.  It's not shown on this page.  If
16   you look at Exhibit 2 -- oh, yeah.  There, it is.  I'm
17   sorry.  It is on the bottom of this page.
18           If you look on page A5 at the bottom, there is
19   a place to put judgment satisfied.
20       Q   Yes.  It says "JGMT SAT"?
21       A   Right.  And there is a place there to put a
22   checkmark or an "x."  And there is also another space.
23   And that's where, if the judgment was satisfied, the
24   Court could note it and put the satisfied amount in, put
25   that it had been satisfied.  That's where they would put

1    the date.
2        Q   Okay.  So there's not a code that a court
3    clerk would use to indicate that a judgment had been
4    satisfied, there is a different process for that?
5        A   Right.  They -- because it's usually done at a
6    different time, they would go back and update the
7    record.  It wouldn't be a hearing.  They would just go
8    in and mark judgment satisfied and put the date they
9    received the document that the judgment had been
10   satisfied.
11       Q   Okay.  And that would have to be done by the
12   clerk for each case in which a judgment had been
13   satisfied; correct?
14       A   Yes.
15       Q   And also --
16       A   Let me just clarify one thing.  They can only
17   do it if they received a document from the plaintiff
18   that the judgment has been satisfied.  If they have not
19   received it, then it still wouldn't show that the
20   judgment's been satisfied.
21       Q   And the reason for that is the only way that a
22   court will know if a judgment has been satisfied or not
23   is if somebody advises the court of that fact?
24       A   That's correct.
25       Q   Okay.  Because the court doesn't know whether

1    the judgment debtor is making payments to pay off the
2    judgment unless somebody tells the court about that.
3        A   Right.  There's no way to see if he's making
4    his hundred-dollar-a-month payment.  You don't --
5    there's nothing between the disposition until the
6    judgment's satisfied.  The court's not keeping records
7    of how many payments have been made, if payments have
8    been missed until a plaintiff comes back in, in which
9    case they could issue a garnishment or something, other
10   action.
11       Q   And for that reason it's possible that a
12   judgment debtor could have already satisfied a judgment
13   by paying everything off over a period of several
14   months, yet it still shows as an open judgment on the
15   court's records until someone notifies the court of that
16   satisfaction?
17       A   That's correct.
18       Q   Now let's talk for a minute about appeals,
19   because in the box on the left on page A5, there is no
20   code for appeal; correct?
21       A   That's correct.
22       Q   So how --
23       A   It's on the bottom line.  You can note the
24   appeal and then you can have the appeal's been
25   perfected.

1        Q   Now, explain to me, sir, the difference
2    between an appeal noted and an appeal perfected.
3        A   One would be if somebody wants to appeal, and
4    the other one is they set the bond up to have the case
5    heard in circuit court.
6        Q   Okay.  So are there different date
7    requirements for that?  For example, is one done within
8    10 days and one done within 30 days?
9        A   Usually it's ten days.
10       Q   So they can file for the appeal noted within
11   ten days; is that generally correct?
12       A   Yes.  I know that's true on criminal.  I'm not
13   sure on civil but I believe it's the same.  But I
14   couldn't say that.
15       Q   And so what information would the clerk enter
16   if an appeal is noted?  Would that be a date or a check
17   or an "x" or something else?
18       A   I'd have to look at the screen shot.  They'd
19   enter the date.
20       Q   And appeal perfected, same thing, the clerk
21   would enter the date?
22       A   They'd enter the date.
23       Q   So is it accurate to say that the manner in
24   which the clerks record information about these three
25   different types of dispositions, vacated, satisfied,

1  appealed, are done in different ways?
2      A   Yes.
3      Q   There is a code for vacated but there is not a
4  code for satisfied or appeal; right?
5      A   That's correct.
6      Q   And for satisfied, that information and what
7  they enter into the system for that depends on
8  information that comes from outside the court's records?
9      A   That's correct.
10     Q   And for appeal, there are two different time
11 periods that could be relevant for appeals, both appeal
12 noted and appeal perfected?
13     A   That's correct.
14     Q   Let's go back to the discussion of the
15 information that was provided to public record vendors
16 on these computer cartridges that you were talking
17 about.
18         Was the information on those computer
19 cartridges the same information that was in the -- for
20 the types of -- well, strike that.
21         You said earlier that the information on the
22 computer cartridges came from the case management
23 systems in the general district courts and the circuit
24 courts; right?
25     A   That's correct.

1      Q   So if the clerks of the courts made a mistake
2  in how they entered information into the case management
3  system, then the information about that particular case
4  on the computer cartridge would also be erroneous; is
5  that correct?
6      A   That's correct.
7          MR. BENNETT:  We would so stipulate.
8  BY MR. LOVE:
9      Q   Ms. Soutter's attorneys in this case requested
10 the state to provide certain information as part of this
11 lawsuit.  Are you familiar with that?
12     A   Yes.
13     Q   Okay.  What is your knowledge of the
14 information that was requested by Ms. Soutter's counsel
15 in this case?
16     A   I believe the cases they asked for were
17 vacated cases, cases dismissed, satisfied and appealed.
18 I'm not sure if they asked for dismissals.  Somebody
19 would have to help you with that.  But I think there
20 were only three and it was vacated, satisfied and
21 appealed, and maybe dismissal.  I'm sorry.  I don't know
22 that part.
23     Q   And were you involved in preparing that
24 information?
25     A   No.

1      Q   Who was involved in preparing that
2  information, if you know?
3      A   Eddie Macon talked to the attorneys, Dave
4  Savage and Mamiko Barnard.
5      Q   Did you ever see a copy of the final list of
6  information that was produced?
7      A   No.
8      Q   Do you know whether Donna Soutter appeared on
9  a list of information that was produced?
10     A   I do.
11     Q   Did she appear?
12     A   No.
13     Q   And why didn't she appear on that list?
14     A   Because the request for information only asked
15 for certain types of cases, and the case that was
16 brought, the subsequent action that was brought, which
17 is the 01, was closed out with an other judgment which
18 was not vacated, and it wasn't satisfied, it wasn't
19 dismissed and it wasn't appealed.  And that's the reason
20 it wasn't on there.
21     Q   What does that mean, that it was closed out
22 with an other judgment?
23     A   Well, okay.  That was -- the 01 case which is
24 shown on Exhibit 2, I believe, okay, it shows the case
25 dismissed as other.  So what occurred in the court is

1  someone asked for a motion to vacate or dismiss the
2  original case, which was a judgment against Donna
3  Soutter.  And the judge basically agreed with them.  And
4  instead of the 01, that particular case shouldn't be
5  dismissed because that would say we're not going to
6  correct the record.  So what the judge entered or what
7  they did was they entered favorably for this, which is a
8  judgment.  They're saying okay, we approve your motion
9  and we're going to dismiss, we're going to enter a
10 dismissal on the 00 case.  So it wouldn't have shown on
11 their list.
12     Q   Was that the correct way to do it under the
13 policies and procedures that had been established by the
14 Supreme Court of Virginia?
15     A   We don't have a policy on how they should do
16 that.  That's one way of doing it.
17     Q   Okay.
18     A   I can't say -- it was a judgment so it can't
19 be a J, so it has to be an other judgment.  There aren't
20 any other codes unless you put vacated.  But that was a
21 clerk, a clerk's decision, I guess, who entered it.  But
22 they enter it as an O.
23     Q   All right.  Before information was provided to
24 public record vendors through the computer cartridges
25 that you described earlier, to your knowledge was there

1    another way that public records would pick up
2    information from the court about dispositions of
3    judgments?
4         A   List makers.
5         Q   What do you mean by list makers?
6         A   They go to the court and they get the
7    information from the court.
8         Q   Do you mean list makers being a company?
9         A   No.  Some are.  Some are companies that, like
10   Lexis probably has list makers.  A lot of companies sub
11   out work to somebody who goes to courts and looks
12   judgments up for them.  Like if there's a question on a
13   judgment, they go and look at the court papers.  So
14   that's what list makers do.  They basically sell their
15   services.  They go to court because they're local, and
16   they research data and they provide that data back.
17        Q   Have you ever heard of the word "strike" used
18   by any of these court clerks to describe a disposition
19   of a judgment?
20        A   I've heard the word "strike," meaning -- it
21   probably means they -- I don't know exactly what they're
22   doing when they do that.  So I don't know how that word
23   would apply in a legal term, okay?  So I couldn't answer
24   that.
25        Q   To your knowledge did any of the clerks of the

1    general district courts ever put disposition documents
2    concerning judgments into a box that would be made
3    available to the public record vendors?
4         A   Yes.  That's the abstract of judgment.  That's
5    how we created what we give to the vendors, is an
6    abstract of judgments.  And most people aren't concerned
7    with the ones that are settled or dismissed.  They're
8    primarily interested in the ones that have a judgment or
9    an other judgment, something occurs in the case, not the
10   settlements.  Those cases are not of interest to most
11   people.
12        Q   All right, sir.  Let me show you what we'll
13   mark as Exhibit 5.
14
15            (Mittendorff Deposition Exhibit Number 5
16             was marked for identification)
17
18   BY MR. LOVE:
19        Q   Can you identify this document?
20        A   No.  I'll have to read it more.  I've never
21   heard of the case, I don't think.
22        Q   When you say abstract of judgment, is this the
23   type of document that you're talking about?
24        A   No.
25        Q   If you look on this document, it has two

1    stamps on it.  One says "judgment of," and then it gives
2    a date, "is set aside and case disposed of as follows,"
3    and then it has some handwritten notes.  And there's
4    another stamp that says "on" and then it gives a date
5    and it says "strike from your records, Sandra C. Blount,
6    Clerk," and then a deputy clerk's signature.  Do you see
7    those two stamps?
8         A   Yes.
9         Q   To your knowledge, is this the type of thing
10   that a court clerk might put in a box for collection by
11   public record vendors, or do you have knowledge of that?
12        A   I don't have knowledge.
13        Q   Okay, sir.  Have you ever heard of a report
14   called a judgment satisfied report?
15        A   Yes.  That is when -- I think there is a
16   report you can run, that we could run for the clerks if
17   they ask for one.  But it's, it's -- I don't know if
18   people make it available.  I don't know, they don't have
19   to run it.  Sometimes it's used to check on stuff.  So I
20   can't, I can't speak to that.
21        Q   When the information on computer cartridges
22   was made available to public record vendors, did the
23   public record vendors pay for that service?
24        A   Yes, they did.
25        Q   And that process has been stopped now; is that

1    right?
2         A   That's true.
3         Q   And to your knowledge, since the information
4    on computer cartridges is no longer being sent to public
5    record vendors, do you know how public record vendors
6    are obtaining that same type of information now?
7         A   They get information off the web.
8         Q   Is the information that's on the web the same
9    information that was made available on the computer
10   cartridges?
11        A   No.
12        Q   How is it different?
13        A   It doesn't have address information.
14        Q   Aside from address information, are there any
15   other substantial differences between the information on
16   the web and the information that was provided on the
17   computer cartridges?
18        A   I don't think there would be many, but I
19   haven't done a comparison of all fields.  So it's close.
20   I mean, I can get a general information about the case
21   from what's on the web versus what's on the cartridges.
22   I can't say.
23            MR. LOVE:  All right.  Those are all the
24            questions I have.  Thank you.
25

1        E X A M I N A T I O N
2   BY MR. BENNETT:
3        Q   Sir, my name is Leonard Bennett.  Actually, I
4   haven't shaken your hand.  I don't want to be rude.
5   Good to meet you in person.
6            You and I spoke, maybe to your regret now,
7   months ago by telephone if I recall; is that correct?
8        A   I don't recall the conversation, but okay.
9        Q   The -- you understand the allegation in this
10  case is that -- well, let me proffer to you what the
11  allegation in the case is and ask what knowledge you
12  have as to that.
13           The allegation in this case is that the most
14  accurate information available on court records,
15  judgments and any disposition after judgment is in the
16  actual courthouse where the records are.  And the
17  allegation is that by automating this process, the
18  significant number of post-judgment changes that would
19  have, in a credit reporting context, been favorable to
20  the consumer, satisfactions, appeals or vacates or
21  anything that wipes away the judgment, were missed; that
22  the credit bureaus regularly, systematically picked up
23  the judgment event and irregularly and less than
24  systematically picked up the post-judgment events.
25           MR. LOVE:  Object to the form.

1   BY MR. BENNETT:
2        Q   What knowledge do you have as to this case as
3   to the basic allegations?  I understand this isn't your,
4   this isn't your -- you don't have a dog in this fight,
5   as the cliche is, right?  But what knowledge do you have
6   as to what allegations have been made?
7        A   For one, if you get a new copy of the
8   database, you will get the satisfieds because the
9   satisfieds are in those cartridges.  In other words, it
10  gives you another picture of the case later.  It doesn't
11  give you the appeals.  But the original intent was to
12  create an abstract of judgment, and that's what it did.
13           We didn't do dismissals so it doesn't show
14  dismissals.  I know the numbers of how many appeals
15  there are.  It's like .4 percent, okay?  The number of
16  satisfied is 15 percent, 15 to 16 percent.  So I know
17  what those numbers are.
18           But on every invoice that we send out with
19  those, we're not able to ask questions about what you
20  use the data for, who you give it to.  We're not able to
21  ask that under freedom of information, so we didn't ask
22  those questions.  But we did include in every invoice,
23  we said this is an abstract of the official record
24  that's in the court, depending on your use of the data,
25  you might need to check or you may need to check with a

1   clerk.  And that is on every invoice that went with
2   every copy.
3        Q   So LexisNexis, for example, when it would have
4   received invoices about the Virginia civil data, would
5   have received that disclaimer or that caution?
6        A   That's correct.  Just like if you go on the
7   web, it says on the web this is an abstract of a case,
8   it's not the official case on the web.  For the official
9   information, you have to go to a court.
10       Q   To the courthouses?
11       A   To the courthouse.
12       Q   When I -- I've only been practicing since '94,
13  which is getting to be longer than it was ten years ago,
14  but -- and at the time I grew up practicing in general
15  district court in Newport News.  The public record
16  vendors or list makers or whoever these individuals are
17  would come into the courthouse, often with laptops once
18  laptops were around.  I remember the big cellphone in
19  the bag.  You remember further back than that, of
20  course.  But they would come in with laptops and they
21  would review documents.
22           There was a weekly satisfactions report that
23  they would print out and then other -- the satisfaction
24  papers themselves, the orders vacating it and perfected
25  appeals would all be kept in a folder in a file cabinet.

1   We picked up this pattern when we asked six, seven years
2   ago -- well, longer than that, before you started
3   selling the lists to LexisNexis -- that why are these
4   folders always full.  And the clerks, they actually
5   consistently said, including the Richmond and Petersburg
6   clerks that we've spoken with in this case, that they
7   just, the list makers whose job it was to pick these up
8   never picked them up.  And that's why we got motivated.
9   That's questioned.  I mean, that's a statement and that
10  doesn't make it part of the record.
11           But with respect to the process for gathering
12  information, prior to the point when bulk data was
13  available, what is your understanding of how
14  post-judgment changes to the judgment would have been
15  made available to what you called list makers?
16           MR. LOVE:  Object to the form.
17           THE WITNESS:  Well, the biggest one was the
18  abstract of judgment.  And we were asked to
19  automate that one because that -- we weren't asked
20  to automate appeals or no one's ever asked us to
21  add additional fields on the jobs that we did to
22  cover the other items.
23           It's difficult for some of them, satisfactions
24  is one, because they occur at different times.  So
25  it's really difficult, but it's possible to run a

1    satisfied, a list just like the job we ran for you.
2        Had someone asked us to run a list, we could have
3    run a list.
4    BY MR. BENNETT:
5        Q    And the list that -- and I wasn't the one who
6    spoke with Mr. Macon.  And I understand it was -- we
7    have two other employees that Equifax is deposing who
8    participated in the, sort of the hands-on part of
9    preparing the data in response to our request; is that
10   correct?
11       A    Correct.
12       Q    And who are those individuals?
13       A    Dave Savage and Mamiko Barnard.
14       Q    Do you supervise those individuals?
15       A    No, not directly.
16       Q    Not directly.  But have you seen the list that
17   the state produced in our instance?
18       A    I saw part of the list.
19       Q    And that was for a specific task, as you just
20   said?
21       A    Right.
22       Q    For example, if we had asked for individuals
23   who had a satisfaction noted between -- in 2009, that
24   small -- that would be a subset, but that could have
25   been produced?

1        A    Yes.
2        Q    In this instance with Ms. Soutter, the first
3    page of the judgment disposition record -- and, I'm
4    sorry, I don't know what it was -- what does the green
5    sticker say on the bottom?
6            MR. KUGELMAN:  Just make sure we have the
7        right one.  Is that it?
8            MR. BENNETT:  That's it.
9            MR. KUGELMAN:  Exhibit 2.
10   BY MR. BENNETT:
11       Q    Exhibit 2, this is, at the top, it has a case
12   number.
13       A    Uh-huh.
14       Q    And it then says dash 00.  Do you see that?
15       A    Yes.
16       Q    On the second page of this, it has the same
17   case number and then it says dash 01?
18       A    That's correct.
19       Q    In Virginia when we have post-judgment
20   actions, in this instance a dismissal or a motion to
21   vacate, but maybe debtor interrogatories or garnishment
22   summons, how are those noted as connected to or a subset
23   of the original case?
24       A    They get a dash 01.  It's a suffix.  The case
25   number basically tells you the court.  It gives you the

1    year that it started.  It gives you a sequential number and
2    then a dash.  And that suffix 01 tells you that this is
3    part of the original case.  It's a subsequent action.
4    Another subsequent action would be a garnishment.  So on
5    garnishments, they would have been included in the bulk
6    data as well.
7        Q    And on the first page of this Exhibit 2, under
8    case disposition, on the left middle, that field has
9    "I"; is that correct?
10       A    That's correct.
11       Q    And that corresponds with the status case
12   dismissed; correct?
13       A    That's correct.
14       Q    At the top right of this document, it says
15   DEF1, and below that, DEF2.  Do you see that?
16       A    That's correct.
17       Q    This field is when there are multiple
18   defendants; is that correct?
19       A    Yes, that's correct.
20       Q    It's possible that you have judgment or a
21   vacate with respect to one defendant but not the other?
22       A    That's correct.
23       Q    And that's why you actually have different,
24   what I'll say status fields available for each defendant
25   here, and then you have just sort of the overall case

1    for the case disposition field on the left; correct?
2        A    That's correct.
3        Q    In this instance, the code for Donna Soutter,
4    DEF1 at the top right, is also "I"; correct?
5        A    That's correct.
6        Q    That is, I note from Exhibit 1, page five, the
7    code for case dismissed?
8        A    That's correct.
9        Q    Now, if -- let's -- I think you've already
10   suggested that if you looked at this screen on a
11   different day than this final output, if the status at
12   that time was different, the screen would look
13   different?
14       A    That's correct.
15       Q    For example, in this instance there was a
16   judgment that had been entered on the 29th of January.
17   If you were to look at the screen on the 29th of
18   January, it would be fair to presume that the case
19   disposition code would not have an "I" in it?
20       A    That's correct.
21       Q    Would it have a "P" in it for plaintiff if
22   judgment were taken in favor of the plaintiff, or is
23   there a different way that a judgment itself is noted?
24       A    No.  It would have a "P."
25       Q    And the top right corner for Donna Soutter

1  where it currently says "I," if the record at that time
2  was for a judgment that was still in favor of the
3  creditor, the plaintiff, what would that code say?
4      A   "P."
5      Q   Now, we are going back in time using what
6  tools are available to try to, from our perspective, the
7  plaintiff's side, try to fix credit reporting data that
8  we allege is inaccurate.  So that we're not suggesting
9  that this is -- that the data that you provided is the
10 best data in the history of data to measure what might
11 have happened in '06 or '05 or '08.  Your data records
12 the status as of today, the data you produced to us;
13 correct?
14     A   What we just produced on your --
15     Q   Yes.
16     A   Yes.
17     Q   The question Mr. Love asked was if the court
18 data that had been inputted into the CMS or the court
19 management system, if the actual mechanical input into
20 the computer was less accurate than the actual court
21 record in the clerk's office, your computer wouldn't
22 have a way to pick up that discrepancy.
23     A   That's correct.
24     Q   And the only way to have picked up that
25 discrepancy would actually have reviewed the court

1  record itself?
2      A   That's correct.
3      Q   We didn't ask for the "I" fields or the data
4  we have doesn't include any Is.  It doesn't include tax
5  liens.  It doesn't include circuit court data.  But is
6  there any -- would there be any difficulty -- I mean,
7  there is certainly work required, computer time
8  required.  But had we gone back and requested the "I"
9  field, is there any technical limitation that the
10 supreme court case management system would have in
11 providing that information?
12     A   We could do it.
13     Q   The --
14     A   But like you said before, we could do it, but
15 it would only be as accurate as whoever put the
16 information in.
17     Q   That's right.
18     A   Even your list may have some errors in it.
19     Q   That's right.
20     A   I can't tell you that.
21     Q   In our list, we're trying to compare -- we
22 also have received from Equifax data of who they are
23 reporting with judgments, and so we're going to overlay.
24 And so it's an imperfect process, but...
25         Are you aware of any better means to obtain

1  the current state of data within the computer systems in
2  our court system as to the current status of judgments
3  as of today?
4          That is, going back, we've asked for data
5  going back for the last decade.  Are you aware, is there
6  any other data source that would be more --
7      A   Yeah.  You could ask for every case.
8      Q   Every case.
9      A   And then the problem with your request and
10 somewhat what's on the cartridges, we create a job, that
11 creates the abstract of judgment.  That's what it was
12 because that's what people wanted.  They didn't want the
13 dismissals; okay?
14     Q   Right.
15     A   Now, this is -- and I don't know how many
16 cases this occurred.  It's kind of unusual for a case in
17 the district court to be later dismissed.  I don't know
18 how many there are but I don't imagine it happens very
19 often.  But the best way to do it would be that we go
20 through, and every court case have a final hearing.  It
21 wouldn't matter what happened earlier.  You'd get the
22 final hearing.  And it's -- and that way you would know
23 for every case, which one should be included and which
24 ones should not.  Because even if you got a copy of 00,
25 you would not see a "P" any more in there.  You would

1  see an "I."  So it was dismissed.
2          But the problem is, no one ever asked us to
3  produce a list of all the dismissals.  We got, we got
4  the dispositions that were in the abstract for judgment
5  file and that's what we provided.  If somebody said can
6  you run all the dismissals, of course.  We can give you
7  whichever way you want to cut it.  The problem is,
8  sometimes you have to think about the problem that
9  you're trying to solve.
10         And that's one of the things I said before.  I
11 do problem solving.  If you tell me the problem, we'll
12 figure out how we could run the job, because somebody
13 else trying to figure out how to run the job is going to
14 probably make some mistakes.  Just like the mistake you
15 made.  You missed the one that you wanted because you
16 didn't ask for J.  You just asked for the dismissals and
17 the other thing.  That's why you didn't see the case.
18 It wasn't on your list.
19     Q   Talk to my wife.  That's the least of my
20 mistakes.
21     A   Okay.  Anyway, well, it's possible to -- if
22 everybody wanted to fix the problem, we could work to
23 fix the problem.
24     Q   Now, is this also true with circuit court data
25 for those circuit courts that report to the supreme

court system?
A We could -- you know, if we ran the data and we ran what it has, we could potentially correct -- provide a means to correct. You still have the little problem of did somebody make a data entry error. You know, on the one side people are looking like they didn't vacate it, you put dismissed in, you put in other judgment versus a vacated; well --
Q Well, let me talk about that. The vacating, you understand, is the reopening of a case or elimination of the previous final judgment; correct?
MR. LOVE: Object to the form.
BY MR. BENNETT:
Q Is that --
A I'm not an attorney.
Q Okay. But you can vacate, have a judgment -- it's possible to have a judgment vacated and then have a trial later. Let's assume that there is -- a common reason for vacating is that there is no service or there was a mistake in service. They thought that they had service of process on someone and they didn't. So then the judgment could be vacated, later have a trial after service is corrected, and then the creditor plaintiff wins again at that trial and you have a judgment.
And another instance could be like this one,

where it's vacated, and in addition to being vacated, is dismissed. In circumstances where a judgment is vacated and then later tried again with judgment being entered again in favor of the plaintiff, how would that be properly displayed in the case management system?
MR. LOVE: Object to the form.
THE WITNESS: That's a combination question.
BY MR. BENNETT:
Q Sure. Just the last one instead of all the talking stuff that I won't get to use.
A Well, in each case, if the case was vacated, the court clerk could enter vacated and there wouldn't be -- at that time, let's suppose it was failed to deliver. In other words, it didn't get delivered correctly, couldn't find the thing and they vacated the case, whatever. It would be vacated. That would be the last action on the case until you got service.
When you got service, there would have to be a hearing date. So everything goes by hearing dates. If there is a hearing date set, when you open a case, there is a hearing date. Every case has to have a hearing date. So right now it's an active case if there is an open hearing date.
Until you get service, you're trying to schedule it for a date in the future. If you don't get

service, then until you get service, you'd have to continue the case because we weren't able to do it, or you could vacate it because you couldn't find them. But in some cases the parties would just come back and put a new hearing date on the case. So it depends on what happens.
Yeah, there are ways to handle almost anything that occurs in the court to put a disposition in for that particular hearing. Doesn't close the case out but -- and that's why we have this nifty little thing, we put the hearing dates on the side so we know what's the last thing that happened. But if you go to the file, there is something actually for all those dates. But what principally shows on here is what happens, it just gives you an abstract of the case. It's not the whole case.
So yeah, we can put different codes in. And for every hearing, there has to be some action. A lot of times that's just a "C," it's just continued and a new date is set. But there are ways to handle it.
Q And if a case is vacated and then later dismissed, what should be reflected in the case disposition?
A I can't answer that.
Q There's no right answer, is that -- I mean no

official --
A I can't answer that.
MR. LOVE: Object to the form.
THE WITNESS: I'm not, I'm not in judicial services. I'm in automation. I could handle it either way you put it in.
BY MR. BENNETT:
Q Got it.
A But I can't tell you the way to do it because I haven't gone to that training session to say, Oh, yeah, that's the way. You'd have to get somebody from judicial services who would give you the procedure. Dave Savage or Mamiko can't answer that question either.
Q Got it.
MR. LOVE: Can we go off the record just a moment while Mr. Bennett is looking at his notes here?

(Discussion off the record)

BY MR. BENNETT:
Q You have made a couple statements, and I want to delve more into that, about when LexisNexis and other, we call vendors, they vend to the credit bureaus, requested to purchase data from the supreme court

Page 70

1   system, they never asked to purchase vacated, appealed,
2   or dismissed judgments or dispositions; correct?
3       A   No.
4       Q   And is that true through today?
5       A   No one's asked for that except for you.
6       Q   Except for us.  Okay.
7           MR. BENNETT:  Let's go off the record a
8   second.
9
10          (Recess)
11
12          MR. BENNETT:  We don't have any more
13   questions.  I appreciate your time.  Mr. Love is
14   going to ask you something, I guess.
15
16              F U R T H E R
17           E X A M I N A T I O N
18   BY MR. LOVE:
19       Q   I just have a few follow-ups here.
20           First of all, you mentioned some data earlier,
21   .4 percent for appeals.  Does that include -- is that a
22   statistic that covers both the judgments in general
23   district court and circuit court?
24       A   Just general district.
25       Q   Just general district court.  So of all the

Page 71

1   judgments that are entered in general district courts in
2   Virginia, on average only .4 percent are actually
3   appealed?
4       A   That's numbers that I ran for 2008 and 2009.
5       Q   And then for satisfied you mentioned 15 to
6   16 percent.  Is that also just for the general district
7   court?
8       A   For the whole years of 8 and 9, and that
9   allows for cases up to now.  So if anything was
10   satisfied from 2000 -- ran the numbers yesterday so I
11   would know that number.  But if anybody ran a case in
12   2008 all the way up to 2010, that includes all of the
13   ones.  All the cases that were appealed from those two
14   years would have been .4 percent.  And any satisfactions
15   in that was actually 15.75, I believe, but it's not
16   quite 16 percent.
17       Q   Did you run the numbers on the percentage of
18   judgments that are vacated in the general district
19   court?
20       A   No.
21       Q   Do you have any idea what the percentage of
22   judgments are in the general district courts on average
23   that are vacated or set aside?
24       A   I'd just have to look at their numbers.  I
25   could use their numbers and give you your answer, but...

Page 72

1       Q   Let's talk about -- you talked about
2   satisfactions being difficult to automate.  And I wanted
3   to ask you to take another look at what was marked as
4   Exhibit 3 which is the training materials.
5       A   Okay.  Right.
6       Q   On page A5, in the middle of that page is a
7   sample screen shot from civil hearing disposition update
8   screen; right?
9       A   Right.
10       Q   And down at the bottom left of that screen
11   shot, we talked about this entry before, it says "JGMT
12   SAT"; right?
13       A   Right.
14       Q   And that means judgment satisfied?
15       A   Right.
16       Q   And on that line, if a district court clerk,
17   general district court clerk receives information from a
18   plaintiff or some outside source that notifies the clerk
19   that a judgment has been satisfied, then the clerk will
20   enter a date on that line; correct?
21       A   That's correct.
22       Q   And the date that it enters will be the date
23   that the clerk received notice of the satisfaction?
24       A   That's correct.
25       Q   Satisfaction could have been conducted or --

Page 73

1   that's not the right word.  The satisfaction could have
2   occurred prior to the date the clerk received notice?
3       A   Certainly.
4       Q   But for uniformity and the court's purposes,
5   the date that's entered for the judgment satisfied is
6   the date the court receives notice?
7       A   And there's a reason for that.
8       Q   What is the reason for that?
9       A   The reason for that is, that way someone can't
10   go back and say some decision was made based on -- we
11   used to just put a mark satisfied but we didn't know
12   when.  So somebody could claim that, Oh, it was done in
13   2007, when really as far as the clerk's office knew, it
14   didn't occur until 2009.  So if somebody went back and
15   checked judgments, they would see it wasn't satisfied
16   and it wasn't satisfied until 2009.  It may have been
17   satisfied in 2007, but the plaintiff didn't let the
18   clerk's office know.  And until the defendant said I
19   don't know why you still have that, it's been paid,
20   well, then you need to get the plaintiff to get in here
21   and get us a notice; okay?
22           I notice -- I know it's a problem sometimes
23   because somebody tries to close on a house and there is
24   a judgment outstanding, and they didn't realize it
25   because the judgment had been recorded in the circuit

19  (Pages 70 to 73)

Page 74

1  court and it's on the judgment lien docket in circuit
2  court. So somebody can't, can't get a closing until
3  they get that removed. But anyway, I've been in clerk's
4  office when that has occurred. But anyway, so everybody
5  runs around real quick and tries to get that paperwork
6  in so you can purchase your house; okay?
7      Q   And the information on the list that
8  Ms. Soutter's attorneys requested recently, that
9  information is all just from the general district courts
10 in Virginia; correct?
11     A   That's correct.
12     Q   It doesn't contain any information from any
13 circuit courts in Virginia?
14     A   That's correct.
15     MR. LOVE:  Those are all the questions I have.
16 Thank you, sir.
17     THE WITNESS:  Okay.
18     MR. KUGELMAN:  Any other --
19     MR. BENNETT:  No.  That's all.  Thank you.
20
21     AND FURTHER THIS DEPONENT SAITH NOT.
22
23     SIGNATURE OF THE WITNESS WAIVED BY
24 AGREEMENT OF COUNSEL AND THE WITNESS.
25

Page 75

1      (Deposition concluded at 11:44 a.m.)
2      * * * * *
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

Page 76

1  COMMONWEALTH OF VIRGINIA AT LARGE, to wit:
2      I, Gwenda E. Applegate, Court Reporter,
3  Notary Public in and for the Commonwealth of
4  Virginia at Large, and whose commission expires
5  November 30, 2013, do certify that the aforementioned
6  appeared before me, was sworn by me, and was thereupon
7  examined by counsel; and that the foregoing is a true,
8  correct, and full transcript of the testimony adduced.
9      I further certify that I am neither
10 related to nor associated with any counsel or party
11 to this proceeding, nor otherwise interested in the
12 event thereof.
13     Given under my hand and notarial seal at
14 Charlottesville, Virginia, this 8th day of October
15 2010.
16
17
18
19
20 _____
21     Gwenda E. Applegate, Notary Public
22     Commonwealth of Virginia at Large
23       Registration Number 115863
24
25

1
2  CHANGES REQUESTED TO THE DEPOSITION OF:
3       KEN MITTENDORFF
4     TAKEN:  October 6, 2010
5
6
7  PAGE/LINE:        DESCRIPTION
8  _____
9  _____
10 _____
11 _____
12 _____
13 _____
14 _____
15 _____
16
17
18   DATE: _____
19  SIGNATURE: _____
20
21 NOTARY PUBLIC: _____
22 MY COMMISSION EXPIRES: _____
23
24
25 REPORTED BY: GWENDA E. APPLEGATE, RPR, CRR

## A

**ability** 8:24,24 9:13
**able** 12:25 13:2 55:19,20 68:2
**abstract** 16:18 38:1 38:8 41:13 51:4,6 51:22 55:12,23 56:7 57:18 64:11 65:4 68:15
**abstracts** 38:3,10 38:12
**access** 10:13,23
**accurate** 45:23 54:14 62:20 63:15
**action** 1:6 14:19 23:1 44:10 48:16 60:3,4 67:17 68:18
**actions** 59:20
**active** 67:22
**activity** 31:13
**actual** 17:2 18:10 28:17 33:4 35:10 54:16 62:19,20
**add** 57:21
**added** 7:24 13:17 29:10
**addition** 67:1
**additional** 12:15 57:21
**address** 16:2,10 53:13,14
**adduced** 76:8
**administrative** 5:2
**advantages** 14:4,8
**advises** 43:23
**aforementioned** 76:5
**agencies** 5:3
**ago** 10:6 38:6 54:7 56:13 57:2
**agree** 17:8
**agreed** 49:3
**AGREEMENT** 74:24
**ahead** 17:22
**allegation** 54:9,11 54:13,17

**allegations** 55:3,6
**allege** 62:8
**allow** 9:2 13:8
**allowed** 34:11
**allows** 14:8 71:9
**amended** 22:15
**amount** 42:24
**answer** 29:23 34:8 34:23 50:23 68:24 68:25 69:2,13 71:25
**ANTHONY** 2:17
**anybody** 71:11
**anyway** 36:10 65:21 74:3,4
**appeal** 26:6,8,10,10 44:20,24 45:2,2,3 45:10,16,20 46:4 46:10,11,12
**appealed** 26:4 46:1 47:17,21 48:19 70:1 71:3,13
**appeals** 8:14,20 9:5 26:16 41:23 44:18 46:11 54:20 55:11 55:14 56:25 57:20 70:21
**appeal's** 44:24
**appear** 13:5 16:10 27:24 32:4 33:9 38:12 48:11,13
**APPEARANCES** 2:10
**appeared** 30:11 33:18 48:8 76:6
**appears** 18:19 20:2 31:8
**APPL** 26:12,14
**Applegate** 1:25 2:3 76:2,21 77:25
**apply** 19:15 50:23
**appreciate** 70:13
**approve** 49:8
**approximately** 39:2
**area** 19:18
**aside** 8:15 32:10 34:6,22 35:3 42:2

52:2 53:14 71:23
**asked** 38:6 47:16 47:18 48:14 49:1 57:1,18,19,20 58:2,22 62:17 64:4 65:2,16 70:1 70:5
**assigned** 15:5,9,9
**assist** 5:1
**assistant** 4:17
**associated** 76:10
**ASSOCIATES** 2:11
**assume** 14:23 66:18
**assumes** 29:18
**Atlanta** 2:17
**attorney** 2:20 66:15
**attorneys** 13:3 15:6 47:9 48:3 74:8
**automate** 38:7 57:19,20 72:2
**automated** 6:16 9:10
**automatic** 16:7
**automating** 6:5 54:17
**automation** 6:4 69:5
**available** 9:23,25 10:4,10,14 11:15 11:21 12:2 15:25 16:1,12,13,16 17:5,13 25:21 28:6 35:21 40:3 51:3 52:18,22 53:9 54:14 57:13 57:15 60:24 62:6
**average** 71:2,22
**awarded** 20:2
**aware** 14:18 36:2 37:3 63:25 64:5
**A-vacated** 27:14
**a.m** 1:16,16 2:7 4:1 75:1
**A2-00** 33:4
**A5** 27:4,7 34:25

42:5,18 44:19 72:6

## B

**B** 3:10
**back** 6:6,20 7:13 14:13 20:20 22:23 26:16 27:23 31:9 32:3 34:4 35:6 42:4 43:6 44:8 46:14 50:16 56:19 62:5 63:8 64:4,5 68:4 73:10,14
**bag** 56:19
**bankruptcy** 26:9
**bar** 12:24
**Barnard** 48:4 58:13
**based** 29:13 31:20 34:20 37:24 38:10 73:10
**basic** 36:5 55:3
**basically** 13:9 29:6 36:4 49:3 50:14 59:25
**behalf** 1:4 2:2
**believe** 26:5 45:13 47:16 48:24 71:15
**Bennett** 2:12 3:6 29:17 36:21,24 47:7 54:2,3 55:1 58:4 59:8,10 66:13 67:8 69:7 69:16,21 70:7,12 74:19
**best** 62:10 64:19
**better** 7:21 38:16 63:25
**big** 4:25 14:4,6 37:7 56:18
**biggest** 5:5 57:17
**Blount** 52:5
**bold** 24:3
**bond** 45:4
**bottom** 19:17 26:7 26:7,9 27:12 42:6 42:17,18 44:23 59:5 72:10

**Boulevard** 2:11
**box** 27:13,16 28:1 42:6 44:19 51:2 52:10
**brought** 48:16,16
**building** 35:7
**bulk** 57:12 60:5
**bureaus** 54:22 69:24

## C

**C** 52:5 68:19
**cabinet** 56:25
**CAIS** 9:9
**calendar** 38:4
**call** 9:8 36:11 69:24
**called** 11:12 14:3 14:20 37:4 52:14 57:15
**captioned** 32:9
**cartridge** 47:4
**cartridges** 39:11,12 39:13,16,19 40:6 40:14,22 41:6,23 41:25 46:16,19,22 49:24 52:21 53:4 53:10,17,21 55:9 64:10
**Cary** 2:8
**case** 4:11 6:10,12 8:1 9:11,12,15,23 10:3,20 11:7,12 11:14 13:2,2 15:2 15:4,7,16,25 16:6 16:12,19,20,22 17:24 18:9 19:2 19:15,17,19,22 20:7,12,25 21:1,9 21:12,13,23 22:9 22:15 23:4,19,24 24:7,8,21 25:14 25:20,21 27:1,1 27:20 28:15 30:5 31:1 32:25 33:2,3 33:4,6,10,12,17 35:15,21 40:11,14 40:19 42:12 43:12 44:9 45:4 46:22

47:2,3,9,15 48:15
48:23,24 49:2,4
49:10 51:9,21
52:2 53:20 54:10
54:11,13 55:2,10
56:7,8 57:6 59:11
59:17,23,24 60:3
60:8,11,25 61:1,7
61:18 63:10 64:7
64:8,16,20,23
65:17 66:10 67:5
67:11,11,16,17,20
67:21,22 68:2,5,9
68:15,16,21,22
71:11
cases 8:23,23,25
15:11,12 27:21
32:24 33:1,1
37:22 38:12,15
42:8 47:16,17,17
48:15 51:10 64:16
68:4 71:9,13
caution 56:5
cellphone 56:18
certain 25:4 47:10
48:15
certainly 20:15
63:7 73:3
certify 76:5,9
change 9:2 30:12
30:16 34:11
changed 13:18 30:8
31:19
changes 14:12
31:16 38:22 54:18
57:14 77:2
Charlottesville
76:14
chart 14:15 20:20
22:23 35:8,9,23
check 12:5 45:16
52:19 55:25,25
checked 73:15
checkmark 42:22
choose 28:9
chose 28:10
circuit 5:22 6:2,10
6:19,25 7:8,10

11:6,11,12,14,18
11:20,22 12:1
17:4,11 20:23
21:6,11,11,13
28:14 34:4 35:15
39:20,23,23 40:2
40:4,8,12,16,20
45:5 46:23 63:5
65:24,25 70:23
73:25 74:1,13
circumstances 67:2
civil 1:6 2:5 9:13
15:11 22:21,22
23:3 27:9 32:25
37:22,23 41:2
45:13 56:4 72:7
claim 19:3 73:12
clarify 43:16
clerk 6:18 7:15
11:23 15:18 21:5
21:12 34:10 35:14
42:11 43:3,12
45:15,20 49:21
52:6,10 56:1
67:12 72:16,17,18
72:19,23 73:2
clerks 5:12 6:1,15
8:8,17 9:7,16,22
11:21 12:1 17:9
28:13,14,25 34:5
34:11 42:7 45:24
47:1 50:18,25
52:16 57:4,6
clerk's 15:20 49:21
52:6 62:21 73:13
73:18 74:3
cliche 55:5
close 53:19 68:9
73:23
closed 48:17,21
closing 74:2
CMS 62:18
code 25:10 26:4,6
27:9 28:6,14
29:10 34:24 43:2
44:20 46:3,4 61:3
61:7,19 62:3
codes 24:24 25:4,7

25:13,21,25 26:3
27:18,24,24,25
34:4,15 42:7,8
49:20 68:17
coding 34:2
collection 52:10
combination 67:7
come 26:16 28:25
30:23 56:17,20
68:4
comes 15:4 44:8
46:8
commencing 2:7
commission 76:4
77:22
common 66:18
Commonwealth
2:4 76:1,3,22
companies 50:9,10
company 37:7 50:8
compare 63:21
comparison 16:18
53:19
complete 38:17
computer 7:17
8:19 9:9,16 15:23
17:12 39:13 40:6
40:10,21 41:6,23
41:25 46:16,18,22
47:4 49:24 52:21
53:4,9,17 62:20
62:21 63:7 64:1
computerized 6:24
8:3,9
concerned 51:6
concerning 8:20
19:3 31:1 51:2
concluded 75:1
conduct 28:12,23
conducted 72:25
connected 59:22
consistently 57:5
consumer 2:11
17:25 54:20
contain 39:16,19
41:23 42:1 74:12
contained 22:4
contains 42:6

context 54:19
continuances 15:11
15:12
continue 68:2
continued 15:13
68:19
conversation 54:8
copied 15:24
copies 11:4 14:9
32:22
copy 10:7 18:11
33:10 38:8 48:5
55:7 56:2 64:24
corner 24:2 27:5,12
61:25
correct 4:13 6:17
6:22 10:25 12:10
14:21 17:15 18:24
19:6,12,16 20:3,4
21:3,10,14 22:20
23:4,11,16,20,25
24:1,11 25:2,6,9
25:12,24 26:2,14
27:11,22 28:3,8
28:10,11 29:16
31:14,22 33:13,22
33:23,25 34:1
35:24 40:9,17
43:13,24 44:17,20
44:21 45:11 46:5
46:9,13,25 47:5,6
49:6,12 54:7 56:6
58:10,11 59:18
60:9,10,12,13,16
60:18,19,22 61:1
61:2,4,5,8,14,20
62:13,23 63:2
66:3,4,11 70:2
72:20,21,24 74:10
74:11,14 76:8
corrected 66:23
correctly 67:15
corresponds 60:11
costs 20:3
counsel 2:10,14,18
2:22 47:14 74:24
76:7,10
couple 69:22

course 36:24 56:20
65:6
court 1:1 2:3 4:9,18
5:13 6:4,10,14,19
6:19 7:15,16 8:11
8:13 9:4,7,12,15
9:22,23 10:3,12
10:19,24 11:2,11
11:12,14,16,20,22
12:1,9,10,25 13:1
13:10,12,13 14:18
14:19,24 15:1,18
15:19 16:6,12,25
17:1,2,10,11,14
18:5,23 19:14,18
20:2,10,16,23,24
21:1,6,6,9,11,12
21:13 22:1,19,21
22:23,25 23:3,23
25:1,18,19 28:5
29:14 30:25 32:25
33:19 34:15,15,20
35:10,11,14,15,15
35:20 36:12,16
38:17 39:23,23
42:7,11,24 43:2
43:22,23,25 44:2
44:15 45:5 48:25
49:14 50:2,6,7,13
50:15,18 52:10
54:14 55:24 56:9
56:15 59:25 62:17
62:18,20,25 63:5
63:10 64:2,17,20
65:24 66:1 67:12
68:8 69:25 70:23
70:23,25 71:7,19
72:16,17 73:6
74:1,2 76:2
courthouse 54:16
56:11,17
courthouses 56:10
courtroom 15:1
courtroom's 15:9
courts 5:18,22
6:2,2,6,11,15,16
6:22,25 7:5,8,8,10
7:14 8:9,18 9:17

10:8 11:6,17,18
11:20 13:17,17
17:3,4 19:8 25:4
26:25 27:9,19,21
28:13,14 34:3,4
36:7,11 39:17,20
39:20,21 40:2,4,8
40:12,15,16,20,20
46:23,24 47:1
50:11 51:1 65:25
71:1,22 74:9,13
court's 16:14 35:22
38:4 44:6,15 46:8
73:4
cover 57:22
covered 41:11
covers 70:22
create 12:11,13
14:15 55:12 64:10
created 12:8 51:5
creates 64:11
creating 12:9,18
credit 18:12 54:19
54:22 62:7 69:24
creditor 62:3 66:23
criminal 9:13
45:12
CRR 1:25 77:25
current 4:24 64:1,2
currently 62:1
cut 65:7

D

D 3:2
dash 59:14,17,24
60:2
data 8:4 9:13,13,14
10:7,11 11:5,21
11:22,22,23 12:11
12:25 13:1,12,13
13:14,19,20 14:9
14:10,14 15:6,22
15:23 17:6,7 36:7
36:13,14,17 37:25
38:8,16,21 41:20
50:16,16 55:20,24
56:4 57:12 58:9
60:6 62:7,9,10,10

62:11,12,18 63:3
63:5,22 64:1,4,6
65:24 66:2,5
69:25 70:20
database 13:20
14:3,11,12 38:22
55:8
date 9:3 10:16 13:3
15:7,8 19:10
22:11 29:6,8 30:3
30:9,10 31:24
32:1 33:4,5 39:4
40:23 43:1,8 45:6
45:16,19,21,22
52:2,4 67:19,20
67:21,22,23,25
68:5,20 72:20,22
72:22 73:2,5,6
77:18
dates 8:24 19:8,11
19:14 31:10 67:19
68:11,13
Dave 48:3 58:13
69:13
day 13:4,21 14:14
15:13,13,14,14,21
15:21 22:13 30:8
30:11 61:11 76:14
days 30:11,12 45:8
45:8,9,11
DB2 13:19,22,25
14:4,5 15:23 16:4
dealing 17:24
debt 3:16 14:20
18:5,22 19:13,22
33:7 35:12
debtor 44:1,12
59:21
decade 64:5
decision 49:21
73:10
defendant 1:8 2:2
2:18 4:8 13:12
19:4 38:13,14
60:21,24 73:18
defendants 60:18
DEF1 60:15 61:4
DEF2 60:15

deliver 67:14
delivered 67:14
delivers 10:19
delve 69:23
Department 4:17
28:18
depending 55:24
depends 13:23 46:7
68:5
Deponent 2:22
74:21
deposing 58:7
deposition 1:13 2:1
17:17,19,23 21:17
26:20 32:16 51:15
75:1 77:2
Depositions 2:6
deputy 52:6
describe 12:17
25:22 50:18
described 15:3
49:25
DESCRIPTION
3:11 77:7
designate 17:23
detailed 16:24
developed 8:3
difference 13:25
16:4 34:21 45:1
differences 53:15
different 13:20
19:14 30:13,14
31:10 43:4,6 45:6
45:25 46:1,10
53:12 57:24 60:23
61:11,12,13,23
68:17
difficult 57:23,25
72:2
difficulty 63:6
directly 58:15,16
director 4:17 5:8
disclaimer 56:5
discrepancy 62:22
62:25
discussing 26:16
discussion 20:21
32:16 35:6 46:14

69:19
disk 10:7
dismiss 49:1,9
dismissal 29:22
47:21 49:10 59:20
dismissals 47:18
55:13,14 64:13
65:3,6,16
dismissed 9:1 20:7
20:12 22:16 23:25
24:9,15 25:10
26:1 28:10 29:15
30:1 31:22 32:10
33:7,22 34:12,12
34:18,19,19 35:3
47:17 48:19,25
49:5 51:7 60:12
61:7 64:17 65:1
66:7 67:2 68:22
70:2
dismisses 15:15
displayed 67:5
disposed 52:2
disposition 3:13
19:17,19,23 24:7
24:21 25:14 27:10
44:5 50:18 51:1
54:15 59:3 60:8
61:1,19 68:8,23
72:7
dispositional 37:21
dispositions 8:25
9:18 11:8 27:21
37:14,25 38:11
40:25 45:25 50:2
65:4 70:2
distinction 34:5
district 1:1,2 5:13
5:17,18 6:1,9,15
6:19,22 7:14,16
8:9,18 9:7,12,15
9:17,21,23 10:3
10:19 11:17,20
13:24 14:18,19,24
15:1 16:6,12 17:3
17:10 18:5,23
19:8 20:23 21:1,5
21:9 22:1,19,23

23:3,23 25:1,4,18
25:19 27:8,19
28:4,13 30:25
32:25 34:3 35:15
39:17,20,21,24,25
40:15,20 46:23
51:1 56:15 64:17
70:23,24,25 71:1
71:6,18,22 72:16
72:17 74:9
division 1:3 22:22
23:3
DL1 14:3,6
DMV 5:3
docket 7:19 15:17
15:18 74:1
docketing 7:18
document 18:2,16
20:22 22:8,24
24:3 26:24 27:4,7
27:25 29:3 35:2,5
43:9,17 51:19,23
51:25 60:14
documents 3:12
18:10 21:7 34:2
35:10,13,16 51:1
56:21
dog 55:4
doing 39:5 49:16
50:22
Donna 1:4 18:8
21:25 22:8 24:15
29:14 31:1 32:8
48:8 49:2 61:3,25
drives 10:7
duly 4:4
D-defendant 27:14

E

E 1:25 2:3 3:2,10
4:5 54:1 70:16,17
76:2,21 77:25
earlier 19:7 24:18
31:14 35:7 39:4
40:1 46:21 49:25
64:21 70:20
early 6:6 7:21
East 2:8,20

**EASTERN** 1:2
**Eddie** 48:3
**either** 41:20 69:6
   69:13
**elected** 40:2
**elimination** 66:11
**employee** 7:16
   22:19 23:2,22
   24:25 25:18 26:3
**employees** 25:3
   27:8,18 28:4 58:7
**enter** 7:16 8:10,18
   8:22 9:7,13,17,22
   11:7 17:7,11 21:6
   21:12 25:19 27:1
   27:19 28:5,6 42:7
   42:11 45:15,19,21
   45:22 46:7 49:9
   49:22 67:12 72:20
**entered** 7:19 14:25
   15:5,6,7 19:24
   20:11,22,25 22:14
   22:17 23:23,24
   24:25 25:14,16
   29:22 32:5,8
   38:13 39:17 41:2
   47:2 49:6,7,21
   61:16 67:3 71:1
   73:5
**entering** 17:9
**enters** 15:15 17:6
   23:3 35:14 72:22
**entry** 15:6 27:2
   66:5 72:11
**Equifax** 1:7 4:8
   58:7 63:22
**equivalent** 37:25
**era** 10:15
**ERAUSQUIN** 2:13
**erroneous** 47:4
**error** 17:11,12 66:5
**errors** 63:18
**ESQ** 2:12,13,17,21
**established** 49:13
**estimate** 12:3
**event** 54:23 76:12
**events** 21:7 22:25
   23:4,14 25:4,22

54:24
**everybody** 7:5,6
   30:5 65:22 74:4
**evidence** 29:18
**evolved** 8:3
**exact** 10:16 12:4
   29:6,8 39:4
**exactly** 29:11 31:8
   50:21
**Examination** 3:5,6
**examined** 76:7
**example** 45:7 56:3
   58:22 61:15
**excuse** 19:21
**Executive** 4:19
**exhibit** 3:12,13,14
   3:15,16 17:17,19
   18:17 21:8,15,17
   21:21 22:18 23:18
   24:24 26:18,20
   27:23 28:1,5 29:4
   29:13 31:20,24
   32:2,3,17,21 33:2
   33:8,9 34:25,25
   35:6,12,17 42:4
   42:16 48:24 51:13
   51:15 59:9,11
   60:7 61:6 72:4
**exhibits** 42:15
**expanded** 7:5
**expires** 76:4 77:22
**explain** 37:17 38:1
   45:1
**extract** 40:18

**F**

**F** 70:16
**fact** 43:23
**facts** 29:18
**failed** 67:13
**fair** 8:2 20:17 25:23
   61:18
**familiar** 5:11,13,16
   5:21 22:3 47:11
**familiarity** 5:25
**far** 73:13
**favor** 61:22 62:2
   67:4

**favorable** 54:19
**favorably** 49:7
**February** 19:25
   41:16
**federal** 4:9
**field** 60:8,17 61:1
   63:9
**fields** 15:25 16:17
   53:19 57:21 60:24
   63:3
**fight** 55:4
**figure** 65:12,13
**file** 18:12 33:4
   35:11 45:10 56:25
   65:5 68:13
**filed** 14:23 17:3
   18:5
**filing** 14:20
**final** 19:19 23:7
   25:1 35:9,22 48:5
   61:11 64:20,22
   66:11
**finally** 35:19
**financial** 7:24,25
**find** 67:15 68:3
**first** 4:4 6:7,7,8
   8:22 10:13 11:19
   12:22 14:12 15:22
   18:21 19:10 22:25
   24:22 27:24 32:23
   32:24 59:2 60:7
   70:20
**five** 8:7,8,19 61:6
**fix** 62:7 65:22,23
**flow** 14:15 20:20
   22:23 35:7,8,9,22
**flows** 15:1
**folder** 56:25
**folders** 57:4
**following** 25:14
**follows** 4:4 52:2
**follow-ups** 70:19
**foregoing** 76:7
**form** 26:9 54:25
   57:16 66:12 67:6
   69:3
**fostered** 12:14
**found/unserved**

27:15
**freedom** 55:21
**full** 57:4 76:8
**functions** 5:2 7:23
**further** 56:19
   74:21 76:9
**future** 67:25

**G**

**GA** 2:17
**gain** 5:25
**garnishment** 44:9
   59:21 60:4
**garnishments** 60:5
**gather** 36:7 38:5
**gathering** 57:11
**general** 2:20 5:12
   5:17,18 6:1,9,15
   6:19,22 7:14,16
   8:8,18 9:7,9,11,15
   9:17,21,23 10:3
   10:19 11:17,19
   13:10,24 14:17,18
   14:24 15:1 16:6
   16:12,18 17:3,10
   18:5,23 19:7
   20:23 21:1,5,8
   22:1,19,22 23:2
   23:22 24:25 25:3
   25:18 27:8,19
   28:4,13 30:25
   32:25 34:3 35:15
   39:20,21,24,25
   40:15,20 46:23
   51:1 53:20 56:14
   70:22,24,25 71:1
   71:6,18,22 72:17
   74:9
**generally** 5:13,16
   5:21 18:4 20:15
   34:6 45:11
**generated** 20:20
**getting** 12:12,12,15
   56:13
**give** 6:13 51:5
   55:11,20 65:6
   69:12 71:25
**Given** 76:13

**gives** 52:1,4 55:10
   59:25 60:1 68:15
**go** 5:4 7:13 10:14
   13:11 14:2 16:20
   17:22 21:4 27:23
   31:9 32:3,3,13
   36:12,16 41:20
   42:4 43:6,7 46:14
   50:6,13,15 56:6,9
   64:19 68:12 69:15
   70:7 73:10
**goes** 17:2 25:19
   35:10 50:11 67:19
**going** 14:2,6 20:20
   22:23 30:15 34:4
   35:6 40:23,24
   49:5,9,9 62:5
   63:23 64:4,5
   65:13 70:14
**good** 36:9,9 54:5
**gradually** 13:17
**grants** 5:2
**green** 59:4
**grew** 56:14
**guess** 12:14 36:11
   49:21 70:14
**Guide** 3:14
**Gwenda** 1:25 2:3
   76:2,21 77:25

**H**

**H** 3:10 70:16
**hand** 54:4 76:13
**handle** 5:1 68:7,20
   69:5
**hands-on** 58:8
**handwritten** 20:5
   52:3
**happen** 20:25
**happened** 22:25
   23:18,21 25:8
   62:11 64:21 68:12
**happens** 64:18 68:6
   68:14
**head** 12:6
**heard** 45:5 50:17
   50:20 51:21 52:13
**hearing** 8:24 15:7,8

15:14 19:8,10,14
22:11,13 23:10,15
23:18,21,22,24
25:1,20,23 27:9
31:10 40:23,25
43:7 64:20,22
67:19,19,20,21,21
67:23 68:5,9,11
68:18 72:7
**hearings** 41:3,11
**held** 4:20 15:14
23:22
**help** 18:17 47:19
**helps** 34:17
**history** 62:10
**house** 73:23 74:6
**hundred-dollar-...**
44:4

**I**

**idea** 11:25 12:14,14
71:21
**identification**
17:20 21:18 26:21
32:17 51:16
**identify** 21:21
26:24 32:20 51:19
**imagine** 64:18
**imperfect** 63:24
**inaccurate** 62:8
**include** 8:14 11:17
11:22 40:21 41:6
55:22 63:4,4,5
70:21
**included** 8:5 40:5,8
40:14 41:5 60:5
64:23
**includes** 71:12
**including** 37:14
57:5
**index** 32:24
**indexed** 13:16,16
**indexes** 14:5
**indexing** 7:18
**indicate** 19:23 24:6
25:4 43:3
**indicating** 24:12
**individual** 13:16

28:19
**individuals** 1:5
28:21 56:16 58:12
58:14,22
**information** 1:7
4:18 6:13 7:15,20
8:4,10,14,17 9:8
9:10,18,21,25
10:3,9,19 11:2,8
11:15,17,19 12:2
12:9,18 13:10
14:16,25 15:19
16:2,5,9,10,11,15
16:22,23,24 17:4
17:10,13,25 18:19
19:2,3 20:25 21:6
21:12 22:4,17
23:3,23 24:24
25:20 27:10,20
28:5,15 33:17
35:7,8,20 36:15
36:15 37:13,19,22
38:5 39:1,9,16,19
40:3,5,13,19,21
41:5,22,23,25
42:1,8,11 45:15
45:24 46:6,8,15
46:18,19,21 47:2
47:3,10,14,24
48:2,6,9,14 49:23
50:2,7 52:21 53:3
53:6,7,8,9,13,14
53:15,16,20 54:14
55:21 56:9 57:12
63:11,16 72:17
74:7,9,12
**initially** 30:23
**initiated** 14:19
**input** 62:19
**inputted** 62:18
**installed** 6:10
**instance** 58:17 59:2
59:20 61:3,15
66:25
**intent** 55:11
**interest** 19:25
51:10
**interested** 51:8

76:11
**interface** 7:25,25
**internet** 3:15 9:24
10:1,5,10,13,20
10:21,23 11:23,24
14:14 15:24 16:1
16:3,19,23 32:23
**interrogatories**
59:21
**invoice** 55:18,22
56:1
**invoices** 56:4
**involved** 12:8
47:23 48:1
**irregularly** 54:23
**issue** 44:9
**items** 57:22
**I-dismissed** 27:15
28:2

**J**

**J** 2:13,17 20:6
49:19 65:16
**January** 23:9 40:24
41:3,14 61:16,18
**JGMT** 42:20 72:11
**JI** 24:19
**job** 1:24 4:16 57:7
58:1 64:10 65:12
65:13
**jobs** 57:21
**JR** 2:21
**judge** 15:9,15,17
34:10,13 49:3,6
**judgment** 14:24
15:15 19:21,23
20:11 22:11,13
23:1 24:16 29:14
32:8 33:6 34:22
35:1 38:1,10,11
38:13,14 41:1,9
41:13 42:12,19,23
43:3,8,9,12,18,22
44:1,2,12,12,14
48:17,22 49:2,8
49:18,19 50:13,19
51:4,8,9,22 52:1
52:14 54:15,21,23

55:12 57:14,18
59:3 60:20 61:16
61:22,23 62:2
64:11 65:4 66:8
66:11,16,17,22,24
67:2,3 72:14,19
73:5,24,25 74:1
**judgments** 8:14,15
8:20,21 9:1,18,19
11:8,9 37:14,15
38:3,9,10,12
39:17 41:2,7,8
42:1 50:3,12 51:2
51:6 54:15 63:23
64:2 70:2,22 71:1
71:18,22 73:15
**judgment's** 43:20
44:6
**judicial** 28:18 69:4
69:12
**July** 29:9
**J&DR** 6:9

**K**

**K** 1:4 32:9
**keep** 37:8
**keeping** 44:6
**KEN** 1:14 2:1 3:4
4:3 77:3
**kept** 56:25
**kind** 22:15 64:16
**KING** 2:16
**knew** 30:10 73:13
**know** 12:6,7 13:3,4
13:9,13 16:19
20:13,14 27:1
29:6,8 30:2,4
34:17 36:2 37:9
39:4 43:22,25
45:12 47:21 48:2
48:8 50:21,22
52:17,18 53:5
55:14,16 59:4
64:15,17,22 66:2
66:6 68:11 71:11
73:11,18,19,22
**knowledge** 18:18
29:14 34:20 37:6

47:13 49:25 50:25
52:9,11,12 53:3
54:11 55:2,5
**KUGELMAN** 2:21
24:10 29:23 59:6
59:9 74:18

**L**

**laptops** 56:17,18,20
**large** 2:5 76:1,4,22
**launched** 15:3
**law** 12:24
**lawsuit** 4:8 18:22
22:1 31:22 32:5
33:18 47:11
**layers** 6:11
**leading** 29:17
**left** 24:21 42:6
44:19 60:8 61:1
72:10
**left-hand** 19:18
27:12
**legal** 50:23
**Leonard** 2:12 54:3
**letter** 24:3,6
**letters** 27:13
**let's** 7:13 8:2,7
14:15,17,23 21:4
26:17 44:18 46:14
61:9 66:18 67:13
70:7 72:1
**level** 6:14 17:10,11
**Lexis** 50:10
**LexisNexis** 37:4,6
37:15 56:3 57:3
69:23
**lien** 74:1
**liens** 63:5
**limitation** 63:9
**limited** 10:11
**line** 10:14 12:19
38:23 44:23 72:16
72:20
**list** 4:25 36:11 38:4
38:5,7 48:5,9,13
49:11 50:4,5,8,10
50:14 56:16 57:7
57:15 58:1,2,3,5

58:16,18 63:18,21
65:3,18 74:7
**lists** 36:12 57:3
**LITIGATION**
2:11
**little** 6:13 26:17
39:3 66:4 68:10
**LLC** 1:7
**loaded** 16:6
**local** 50:15
**located** 26:8
**long** 4:20 29:3 38:6
**longer** 25:8 37:20
53:4 56:13 57:2
**look** 13:2,11,11,12
14:11,11 16:2,20
16:25 22:10 24:2
24:22 26:17 27:3
27:12,23 32:7
36:16 41:20 42:5
42:14,16,18 45:18
50:13 51:25 61:12
61:17 71:24 72:3
**looked** 23:6 28:2
35:6 38:24 61:10
**looking** 18:16
24:17 66:6 69:16
**looks** 17:2 50:11
**lost** 13:5
**lot** 7:23 15:12
28:21,24 50:10
68:18
**Love** 2:17 3:5 4:6,7
17:22 18:1 21:20
24:13 26:23 30:19
32:13,19 36:19,22
37:2 47:8 51:18
53:23 54:25 57:16
62:17 66:12 67:6
69:3,15 70:13,18
74:15
**lower** 24:21

**M**

**M** 4:5 54:1 70:17
**machine** 10:8,9
12:15 14:14 15:22
15:24 32:23

**Macon** 48:3 58:6
**mail** 39:14
**main** 2:20 16:4
**maintained** 5:12,17
5:22 6:1
**makers** 36:12 38:4
38:5,7 50:4,5,8,10
50:14 56:16 57:7
57:15
**making** 19:4 44:1,3
**Mamiko** 48:4
58:13 69:13
**management** 6:10
6:12 7:24 8:1,1
9:11,12,15,23
10:4,20 11:7,13
11:14 15:2 16:1,7
16:13 21:1,9,13
21:23 23:4 27:2
27:20 28:15 30:5
35:15 40:11,15,19
42:12 46:22 47:2
62:19 63:10 67:5
**manner** 39:2,7
45:23
**March** 23:7,8
25:15 31:21,25
33:5 39:8
**mark** 17:16 21:15
43:8 51:13 73:11
**marked** 3:11 17:20
18:16 21:8,18,21
23:17 26:18,21
29:4,15,15 32:17
32:21 51:16 72:3
**matches** 31:24,25
32:1 33:7
**materials** 72:4
**matter** 14:17 32:9
64:21
**MATTHEW** 2:13
**McGuire** 2:8
**mean** 7:4 12:14
20:10,13 25:16
29:5 34:8,18
48:21 50:5,8
53:20 57:9 63:6
68:25

**meaning** 50:20
**means** 24:8,8 25:10
25:25 38:20 50:21
63:25 66:4 72:14
**measure** 62:10
**mechanical** 62:19
**meet** 54:5
**meetings** 5:4
**mentioned** 16:9
19:7 40:1 70:20
71:5
**met** 4:13
**middle** 24:19 60:8
72:6
**mine** 4:25
**minute** 42:4 44:18
**missed** 44:8 54:21
65:15
**missing** 23:5,6
**mistake** 30:17 47:1
65:14 66:20
**mistakes** 65:14,20
**Mittendorff** 1:14
2:1 3:4 4:3,7
17:19 21:17 26:20
32:16 51:15 77:3
**moment** 32:14
69:16
**money** 12:22
**month** 38:18,19
41:10
**monthly** 37:24
**months** 38:18,19
41:15 44:14 54:7
**motion** 49:1,8
59:20
**motivated** 57:8
**move** 8:2 13:22
14:7 36:19,22,25
**moved** 6:9 13:19
**moves** 14:16
**multiple** 9:10 60:17

**N**

**N** 3:2 4:5,5 54:1,1
70:17,17
**name** 4:7 9:6,9
10:18 11:11 54:3

**necessarily** 29:20
**need** 55:25,25
73:20
**needs** 30:6
**neither** 76:9
**never** 4:13 18:14
29:15 51:20 57:8
70:1
**new** 14:4 39:17
41:6,20 55:7 68:5
68:20
**Newport** 2:12
56:15
**News** 2:12 56:15
**next-to-last** 32:4,7
**nifty** 68:10
**night** 10:7 14:10
15:23 16:5
**nonresponsive**
36:20,23
**normally** 5:9 34:13
**notarial** 76:13
**Notary** 2:3 76:3,21
77:21
**notation** 20:11
**note** 9:5 20:16
42:24 44:23 61:6
**noted** 26:5,6,8,10
26:12 29:21 45:2
45:10,16 46:12
58:23 59:22 61:23
**notes** 20:6 52:3
69:16
**notice** 2:6 72:23
73:2,6,21,22
**notifies** 44:15
72:18
**November** 76:5
**number** 1:6 3:11
12:4,5,6 15:4
17:19 19:11 21:17
22:12 25:21 26:20
32:17 51:15 54:18
55:15 59:12,17,25
60:1 71:11 76:23
**numbers** 55:14,17
71:4,10,17,24,25
**N-nonsuit** 27:15

**N.E** 2:16

**O**

**O** 4:5 49:22 54:1
70:17
**Object** 54:25 57:16
66:12 67:6 69:3
**Objection** 29:17
**obtain** 63:25
**obtained** 30:21,24
**obtaining** 53:6
**occur** 57:24 73:14
**occurred** 22:12
23:14 25:5,22
40:25 48:25 64:16
73:2 74:4
**occurs** 23:1 30:16
51:9 68:8
**October** 1:15 2:7
4:1 76:14 77:4
**office** 2:20 4:19 5:2
15:20 17:6 28:12
28:24 37:13 39:1
40:18 62:21 73:13
73:18 74:4
**official** 10:12 55:23
56:8,8 69:1
**oftentimes** 14:19
**oh** 42:16 69:10
73:12
**okay** 6:24 7:3 10:6
12:17 15:4 20:19
22:10 23:9,12,17
24:15,23 25:25
26:11 27:6 28:22
28:25 30:17,23
31:5,9,20 32:22
33:15 34:24 36:5
37:8,11,20 43:2
43:11,25 45:6
47:13 48:23,24
49:8,17 50:23
52:13 54:8 55:15
64:13 65:21 66:16
70:6 72:5 73:21
74:6,17
**old** 14:1,2,3
**once** 15:8,22 56:17

ones 40:11 51:7,8
   64:24 71:13
one's 57:20 70:5
open 44:14 67:20
   67:23
opt 11:21 40:4
opted 12:1
option 28:6
order 17:24 20:6
   32:4 34:9,9,19
   35:12
ordered 32:8 41:1
orders 56:24
original 22:10 49:2
   55:11 59:23 60:3
output 61:11
outside 46:8 72:18
outstanding 73:24
overall 60:25
overlay 63:23
overnight 13:21
   39:14
O-other 27:16

**P**

P 61:21,24 62:4
   64:25
page 19:10 27:4,7,7
   27:13,24 32:4,24
   42:15,17,18 44:19
   59:3,16 60:7 61:6
   72:6,6
PAGE/LINE 77:7
paid 73:19
papers 15:16,21
   16:25 17:2 50:13
   56:24
paperwork 74:5
part 5:5 7:21 20:8
   32:11 47:10,22
   57:10 58:8,18
   60:3
participate 40:3
participated 58:8
participating 40:4
particular 7:9
   19:15,21,22 28:19

30:8 47:3 49:4
   68:9
parties 15:5 68:4
parts 9:11
party 76:10
pattern 57:1
PAUL 2:21
pay 44:1 52:23
paying 44:13
payment 44:4
payments 44:1,7,7
Peachtree 2:16
pending 4:9
people 5:1 10:10
   12:12 13:2,4
   36:10,10,11,13
   38:6 51:6,11
   52:18 64:12 66:6
percent 19:25
   55:15,16,16 70:21
   71:2,6,14,16
percentage 11:25
   71:17,21
perfected 26:10,14
   44:25 45:2,20
   46:12 56:24
period 7:13 41:1
   44:13
periods 46:11
person 19:1 22:17
   54:5
personal 16:2,10
   16:23 17:25
personnel 12:12
   17:9
perspective 62:6
perusing 35:2
Petersburg 57:5
phone 4:10
pick 50:1 57:7
   62:22
picked 54:22,24
   57:1,8 62:24
picture 30:6,7
   31:16,17 41:14
   55:10
pilot 7:4 13:7
place 26:8 42:19,21

placed 38:3,4
plaintiff 18:9 19:2
   43:17 44:8 61:21
   61:22 62:3 66:23
   67:4 72:18 73:17
   73:20
Plaintiffs 1:6 2:14
plaintiff's 62:7
please 4:15 10:2
   42:5
plus 42:20
point 17:22 37:13
   57:12
police 5:3
policies 49:13
policy 49:15
portals 11:1
portion 10:22,23
   38:7
portions 36:20,22
   36:25
position 4:21,24
possible 31:9 44:11
   57:25 60:20 65:21
   66:17
post-judgment
   54:18,24 57:14
   59:19
potentially 66:3
practicing 56:12,14
prejudice 20:7,12
   29:22 32:10
preparing 17:4
   47:23 48:1 58:9
prepay 13:8
presume 61:18
previous 66:11
primarily 7:18,20
   12:8 16:21 51:8
principally 68:14
print 21:23,25
   29:19 30:1 33:14
   56:23
prior 18:9 57:12
   73:2
probably 5:4 10:15
   12:4 29:7 39:3
   50:10,21 65:14

problem 5:6 64:9
   65:2,7,8,11,11,22
   65:23 66:5 73:22
problems 5:1,4
procedure 2:6
   69:12
procedures 49:13
proceeding 76:11
process 22:24
   37:18 43:4 52:25
   54:17 57:11 63:24
   66:21
processor 10:6
procure 12:22
procurement 5:10
procuring 12:12
produce 65:3
produced 48:6,9
   58:17,25 62:12,14
production 10:8
proffer 54:10
project 12:24 13:7
properly 67:5
protective 17:24
provide 37:13,21
   47:10 50:16 66:4
provided 27:8
   41:22 46:15 49:23
   53:16 62:9 65:5
providing 39:1,6
   40:5,6 63:11
public 2:4 13:1,4
   18:18 34:2 35:21
   36:1,2,6 37:3,14
   39:1,9 46:15
   49:24 50:1 51:3
   52:11,22,23 53:4
   53:5 56:15 76:3
   76:21 77:21
purchase 69:25
   70:1 74:6
purchased 10:6
purposes 73:4
pursuant 2:5
put 6:7,8 8:23,25
   8:25 9:2 11:24
   13:20 14:10 15:18
   20:14 34:12,18

36:8 42:19,21,24
   42:24,25 43:8
   49:20 51:1 52:10
   63:15 66:7,7 68:4
   68:8,11,17 69:6
   73:11
P-plaintiff 27:14
P.C 2:11

**Q**

question 25:17
   29:17,23 34:8
   50:12 62:17 67:7
   69:13
questioned 57:9
questions 35:25
   53:24 55:19,22
   70:13 74:15
quick 74:5
quite 15:11 71:16

**R**

R 70:16,16
ran 41:15 58:1 66:2
   66:3 71:4,10,11
rate 19:25
read 51:20
reading 20:13
real 74:5
realize 73:24
really 5:5 16:19
   57:25 73:13
reason 7:9 43:21
   44:11 48:19 66:19
   73:7,8,9
recall 54:7,8
received 9:4 37:8
   43:9,17,19 56:4,5
   63:22 72:23 73:2
receives 72:17 73:6
Recess 70:10
recognize 18:4 31:7
record 10:12 15:19
   20:17,19,22,23
   32:14,16 36:1,2,6
   36:19 38:23 43:7
   45:24 46:15 49:6
   49:24 51:3 52:11
   52:22,23 53:5,5

55:23 56:15 57:10
59:3 62:1,21 63:1
69:15,19 70:7
**recorded** 73:25
**records** 5:11,14,17
5:22 6:1 8:1,1,11
8:13 18:8,18 34:3
34:10,20 37:3,8,8
37:14 38:24 39:2
39:8,10 44:6,15
46:8 50:1 52:5
54:14,16 62:11
**recreate** 31:17
**reflected** 17:13
18:20 22:18 24:23
28:1 35:16 68:22
**reflects** 22:8,24
23:14,18
**refresh** 38:21
**Registration** 76:23
**regret** 54:6
**regularly** 54:22
**related** 76:10
**relevant** 46:11
**Remarks** 16:15,16
**remember** 56:18
56:19
**removed** 74:3
**reopened** 33:6
**reopening** 66:10
**rephrase** 25:17
**replace** 31:15
**replicate** 13:19
14:9,10,13
**report** 36:8,13 41:3
52:13,14,16 56:22
65:25
**reported** 1:25
31:21 33:22,24
38:15 77:25
**Reporter** 2:3 76:2
**reporting** 54:19
62:7 63:23
**represent** 4:8
**represented** 35:11
35:8
**represents** 33:16
35:8
**request** 37:24

**38:20,21 48:14**
58:9 64:9
**requested** 30:24
47:9,14 63:8
69:25 74:8 77:2
**required** 12:20
63:7,8
**requirements** 45:7
**research** 50:16
**respect** 57:11 60:21
**response** 58:9
**responsibilities**
4:23
**responsive** 37:1
**restore** 14:14
**results** 14:24
**review** 29:13 56:21
**reviewed** 18:8
62:25
**revised** 29:9
**re-hearing** 22:14
23:6 33:6
**re-ran** 41:17
**Richmond** 1:3,17
2:8,21 4:9 5:12
22:1,19,22 23:2
24:25 25:18 30:25
32:24 57:5
**right** 4:11,15 5:7
6:23 17:5,8 18:11
19:5,11 21:2,9,13
23:5 24:11,17,18
24:19,20 25:5,8
25:11,15 26:4,13
26:15 27:3 28:2,7
29:2,24 31:23
32:13,20 33:9
35:2,5,9 36:18
37:12 40:1 42:21
43:5 44:3 46:4,24
49:23 51:12 53:1
53:23 55:5 58:21
59:7 60:14 61:4
61:25 63:17,19
64:14 67:22 68:25
72:5,8,9,12,13,15
73:1
**right-hand** 19:9

24:2 27:4
**role** 12:18
**rough** 11:25
**RPR** 1:25 77:25
**rude** 54:4
**Rule** 2:5
**Rules** 2:5
**run** 40:24,24 52:16
52:16,19 57:25
58:2,3 65:6,12,13
71:17
**running** 12:21
**runs** 74:5

---

## S

**S** 3:10
**SAITH** 74:21
**sample** 72:7
**Sandra** 52:5
**SAT** 42:20 72:12
**satisfaction** 9:3,4
44:16 56:23 58:23
72:23,25 73:1
**satisfactions** 8:15
8:20 41:6 54:20
56:22 57:23 71:14
72:2
**satisfied** 41:8,9,15
41:16,19 42:9,13
42:19,23,24,25
43:4,8,10,13,18
43:20,22 44:6,12
45:25 46:4,6
47:17,20 48:18
52:14 55:16 58:1
71:5,10 72:14,19
73:5,11,15,16,17
**satisfieds** 55:8,9
**Savage** 48:4 58:13
69:13
**saw** 58:18
**saying** 23:12 49:8
**says** 19:10 20:6
24:19,21 26:7,9
26:12 28:2 31:25
32:8 34:10,11,18
36:25 42:8,20
52:1,4,5 56:7

59:14,17 60:14
62:1 72:11
**schedule** 67:25
**screen** 3:15 21:23
21:25 22:3,5 23:8
23:14,17 27:2
29:6,19,25 30:9
30:10,20,24 31:3
31:10,12,18 32:22
33:3,10,14 35:17
41:4 45:18 61:10
61:12,17 72:7,8
72:10
**seal** 76:13
**second** 10:9 14:11
15:14 22:24 23:1
33:2,3 59:16 70:8
**Secretary** 4:19
**section** 19:13,23
26:11
**see** 12:25 13:1 20:5
20:6,7 24:3,4
27:16 32:10 41:13
41:16,17,18 44:3
48:5 52:6 59:14
60:15 64:25 65:1
65:17 73:15
**seen** 18:2,11 58:16
**select** 35:20
**sell** 50:14
**selling** 57:3
**send** 37:24,24,25
55:18
**sending** 38:18
**sent** 39:8,14 53:4
**sentence** 32:7
**separate** 23:15
34:24
**September** 33:11
33:12,13,13,19,21
**sequential** 60:1
**service** 52:23 66:19
66:20,21,23 67:17
67:18,24 68:1,1
**services** 1:7 28:18
50:15 69:5,12
**session** 69:10
**set** 6:14,21,24 7:14

8:24 15:8,8,10
19:9 32:10 34:6
34:22 35:3 42:2
45:4 52:2 67:20
68:20 71:23
**setting** 8:15
**settled** 9:1 51:7
**settlements** 51:10
**set-aside** 34:25
**seven** 57:1
**shaken** 54:4
**sheet** 15:17,18
**shot** 22:4,5 23:8,14
23:17 29:6 30:9
30:10,20 31:12,18
33:4,10 35:17
45:18 72:7,11
**shots** 3:15 30:25
31:3,10 32:22
41:4
**show** 17:16 21:15
27:20 42:12 43:19
51:12 55:13
**showing** 29:20
**shown** 11:23 21:7
23:10 28:5 29:25
35:4 42:15 48:24
49:10
**shows** 27:9 32:23
32:25 33:4,5
35:19 44:14 48:24
68:14
**side** 19:9,18 62:7
66:6 68:11
**sign** 5:9,9
**signature** 52:6
74:23 77:19
**signed** 15:16
**significant** 54:18
**similar** 41:4
**Similarly** 1:5
**sir** 4:15 14:18
18:11 24:14 26:24
27:3 32:20 35:5
35:25 36:18 40:1
40:13 45:1 51:12
52:13 54:3 74:16
**site** 10:11

Situated 1:5
six 57:1
slow 7:6
small 58:24
solve 4:25 5:4 65:9
solving 65:11
somebody 30:12
  34:11 36:14 43:23
  44:2 45:3 47:18
  50:11 65:5,12
  66:5 69:11 73:12
  73:14,23 74:2
somebody's 16:2
  37:24
somewhat 64:10
sorry 36:21 42:17
  47:21 59:4
sort 58:8 60:25
source 64:6 72:18
Soutter 1:4 3:12
  18:9,14 19:24
  20:3 24:15 32:9
  33:1 48:8 49:3
  59:2 61:3,25
Soutter's 18:12
  21:25 22:9 29:14
  31:1 32:5 33:10
  33:17 47:9,14
  74:8
space 42:22
SPALDING 2:16
speak 20:22 34:14
  37:22 52:20
specific 58:19
spoke 4:10 24:18
  54:6 58:6
spoken 18:14 57:6
stamp 52:4
stamps 52:1,7
start 39:1
started 6:5 7:4,12
  12:24 13:7 18:22
  19:1 33:13 37:18
  38:18 39:5 57:2
  60:1
state 5:3,3,19,23
  6:2 13:13,16
  28:22 37:12 38:25

  47:10 58:17 64:1
statement 57:9
statements 69:22
STATES 1:1
statistic 70:22
status 60:11,24
  61:11 62:12 64:2
step 21:4,5 22:24
  22:25 23:2 35:9
  35:13,13,22
steps 12:20
sticker 59:5
stipulate 47:7
stop 39:6
stopped 52:25
Street 2:8,16,20
strike 36:20,22,25
  46:20 50:17,20
  52:5
study 6:7
stuff 5:10 52:19
  67:10
sub 50:10
subject 17:23
subsequent 48:16
  60:3,4
subset 58:24 59:22
substantial 53:15
suffix 33:3 59:24
  60:2
suggested 61:10
suggesting 62:8
Suite 2:11
summons 13:6
  59:22
supervise 58:14
support 14:3
supported 14:5,6
suppose 67:13
supposed 13:5
supreme 4:18 6:4
  10:24 11:2,16
  12:9 17:1,14
  33:19 35:20 49:14
  63:10 65:25 69:25
sure 4:20 38:19
  45:13 47:18 59:6
  67:9

sworn 4:4 76:6
system 6:14,16,21
  6:24 7:14,17,24
  8:3,10,19 9:6,8,10
  9:11,12,16,16,23
  10:4,18,20 11:7
  11:12,13,14 13:23
  14:1,17 15:2,2
  16:1,7,7,13 17:7
  17:12 21:1,9,13
  21:24 23:4 27:20
  31:19 35:16 40:12
  42:12 46:7 47:3
  62:19 63:10 64:2
  66:1 67:5 70:1
systematically
  54:22,24
systems 4:18 6:7,8
  6:10,12 7:4,11
  28:15 29:14 40:15
  40:19 46:23 64:1

———————
T
———————
T 3:10 4:5 54:1
  70:16,17
take 2:6 14:9,17
  26:17 27:3 30:6
  72:3
taken 2:1 61:22
  77:4
talk 8:7 44:18
  65:19 66:9 72:1
talked 42:6 48:3
  72:1,11
talking 24:10 26:11
  33:18 41:2 46:16
  51:23 67:10
tapes 41:9,11
task 58:19
tax 63:4
technical 63:9
telephone 54:7
tell 4:16 10:2 14:25
  22:8,11 29:11
  31:6 34:16 37:10
  63:20 65:11 69:9
tells 44:2 59:25
  60:2

ten 4:22 10:16 29:7
  30:11 45:9,11
  56:13
term 50:23
terminal 15:20
termination 9:19
testified 4:4
testimony 76:8
Thank 53:24 74:16
  74:19
thereof 76:12
they'd 36:16 45:18
  45:22
thing 8:22 14:7
  30:5 34:7 41:13
  43:16 45:20 52:9
  65:17 67:15 68:10
  68:12
things 6:18 12:23
  65:10
think 18:21 24:10
  47:19 51:21 52:15
  53:18 61:9 65:8
third 15:14
thought 66:20
three 6:11 7:7,9
  24:23 27:24 40:12
  45:24 47:20
ticket 13:8
time 4:10 7:7,13,17
  7:21 15:10 19:10
  38:6 41:1 43:6
  46:10 56:14 61:12
  62:1,5 63:7 67:13
  70:13
times 15:12 57:24
  68:19
title 4:16
today 4:13 7:22
  18:9 62:12 64:3
  70:4
Tony 4:7 24:11
tool 26:25 29:12
tools 62:6
top 12:6 24:19
  59:11 60:14 61:4
  61:25
tough 5:5

traffic 9:13 13:8
trail 20:21
training 26:25 27:7
  28:13,17,23,24
  29:11 69:10 72:4
transcribed 2:2
transcript 37:1
  76:8
transmitted 37:19
  39:9
travel 28:22
treated 34:6
trial 66:18,22,24
tried 67:3
tries 73:23 74:5
true 4:12,14 14:22
  37:16 45:12 53:2
  65:24 70:4 76:7
try 14:15 36:8
  38:19 62:6,7
trying 63:21 65:9
  65:13 67:24
two 7:25 11:18
  30:11 32:25 35:14
  38:18,19 41:15
  46:10 51:25 52:7
  58:7 71:13
type 7:15 18:19
  19:2 20:16,19
  22:3,4 25:7 28:15
  51:23 52:9 53:6
typed 37:1
types 5:25 6:18
  8:17 35:13 45:25
  46:20 48:15

———————
U
———————
U 70:16
Uh-huh 24:5 27:17
  35:18 59:13
ultimate 29:20
understand 14:16
  18:17 20:16 30:6
  54:9 55:3 58:6
  66:10
understanding
  36:5 57:13
uniformity 73:4

**UNITED** 1:1
**unusual** 64:16
**update** 3:13 43:6
72:7
**updates** 38:20
**upper** 24:2,11 27:4
**UPS** 39:15
**use** 6:16 8:10 9:7,8
9:17 10:8 12:1
17:4 25:4,7,22
26:4 27:19 29:7
37:9 42:7 43:3
55:20,24 67:10
71:25
**User's** 3:14
**usually** 5:6 15:16
23:13 30:15,17
43:5 45:9
**U-not** 27:15

**V**

**v** 1:6
**VA** 2:12,21
**vacate** 49:1 59:21
60:21 66:7,16
68:3
**vacated** 20:7,11
28:7,9 29:15,21
33:24 34:6,13,13
34:22 35:3 42:2
45:25 46:3 47:17
47:20 48:18 49:20
66:8,17,22 67:1,1
67:2,11,12,15,16
68:21 70:1 71:18
71:23
**vacates** 54:20
**vacating** 8:21
56:24 66:9,19
**various** 6:15 17:3
42:7
**vend** 69:24
**vendor** 36:2,6 37:3
**vendors** 11:4 36:1
36:7 39:2,10
46:15 49:24 51:3
51:5 52:11,22,23
53:5,5 56:16

69:24
**verbiage** 25:8
**versus** 34:15 53:21
66:8
**Virginia** 1:2,17 2:4
2:9 4:9,19 5:13,19
5:23 6:3 8:9,18
9:17,22 10:24
11:2,6,16 12:10
12:19 17:1 18:6
18:18,23 20:24
25:19 34:3,4,21
34:21 35:20 36:1
37:12 38:25 40:16
49:14 56:4 59:19
71:2 74:10,13
76:1,4,14,22

**W**

**waiting** 16:5
**WAIVED** 74:23
**walk** 22:7
**want** 11:23 13:9
14:15 16:24 35:25
36:15 54:4 64:12
65:7 69:22
**wanted** 12:23,25
13:1 39:22,23,24
64:12 65:15,22
72:2
**wants** 45:3
**warrant** 3:16 14:20
14:23 15:4,5 18:4
18:22 19:13,22
33:7 35:12
**Warwick** 2:11
**wasn't** 33:14,24
48:18,18,19,20
58:5 65:18 73:15
73:16
**way** 13:15 19:1
30:11 34:9,9,10
36:14 41:12 43:21
44:3 49:12,16
50:1 61:23 62:22
62:24 64:19,22
65:7 69:6,9,11
71:12 73:9

**ways** 46:1 68:7,20
**web** 10:11 12:1
13:9 15:2 16:7
18:10 37:9 40:3
41:18,21 53:7,8
53:16,21 56:7,7,8
**website** 10:24 11:3
11:16 12:10,19
16:11,14 17:5,14
33:19 35:20,22
36:14
**websites** 36:8
**web-based** 12:9,18
**weekly** 56:22
**went** 10:10 12:19
38:23 41:17 56:1
73:14
**weren't** 7:10 57:19
68:2
**we'll** 21:15 26:16
51:12 65:11
**we're** 17:24 33:17
41:1 49:5,9,9
55:19,20 62:8
63:21,23
**we've** 4:13 57:6
64:4
**whichever** 39:22
65:7
**wife** 65:19
**wins** 66:24
**wipes** 54:21
**wit** 76:1
**witness** 3:3 29:18
29:25 57:17 67:7
69:4 74:17,23,24
**witnesses** 8:23
**Woods** 2:8
**word** 50:17,20,22
73:1
**words** 23:12 27:14
41:12 55:9 67:14
**work** 5:2,10 12:11
12:13 50:11 63:7
65:22
**worked** 6:4 37:17
**working** 18:18
**worth** 38:21

**wouldn't** 20:13
34:12 38:7,23
43:7,19 49:10
62:21 64:21 67:12
**write** 19:3,14,19
**written** 15:16 34:9

**X**

**x** 3:2,10 4:5 42:22
45:17 54:1 70:17

**Y**

**yeah** 16:8 31:23
42:16 64:7 68:7
68:17 69:11
**year** 29:10 33:11
33:14,15 60:1
**years** 4:22 6:5 8:3,7
8:8,19 10:6,17
29:5,8 56:13 57:1
71:8,14
**year's** 38:21
**yesterday** 71:10

**$**

**$14,403.79** 19:24
**$48** 20:3

**0**

**00** 49:10 59:14
64:24
**01** 48:17,23 49:4
59:17,24 60:2
**02** 33:2
**03/20/08** 22:14
**05** 22:12 62:11
**06** 62:11
**08** 23:9 31:25 62:11

**1**

**1** 3:12 17:17,19
18:17 21:8 31:24
32:2,3 33:2,8
35:12 61:6
**1/29** 22:12
**10** 45:8
**10:00** 1:16 2:7 4:1
**100** 2:11
**11:44** 1:16 75:1

**115863** 76:23
**1180** 2:16
**12515** 2:11
**15** 55:16,16 71:5
**15.75** 71:15
**16** 55:16 71:6,16
**17** 3:12
**1984** 6:8
**1995** 7:7

**2**

**2** 3:13 21:15,17,22
23:18 24:24 27:23
28:5 29:13 31:20
35:17 42:16 48:24
59:9,11 60:7
**20** 12:4 31:21
**20th** 23:7,8 31:25
33:5
**2000** 10:15 11:16
12:19 15:3 33:12
39:3 71:10
**2007** 13:24 19:25
31:18 33:13 73:13
73:17
**2008** 25:15 31:18
31:21 33:5 71:4
71:12
**2009** 39:8 40:24
58:23 71:4 73:14
73:16
**2010** 1:15 2:7 4:1
33:19,21 71:12
76:15 77:4
**2013** 76:5
**21** 3:13
**22** 19:25
**23219** 2:21
**23606** 2:12
**25** 12:4
**26** 3:14
**29th** 23:9 61:16,17

**3**

**3** 3:14 26:18,20
28:1 29:4 34:25
34:25 42:4 72:4
**3/20/08** 20:6
**3/20/2008** 20:10

**3:10cv107** 1:7
**30** 2:5 45:8 76:5
**30309** 2:17
**32** 3:15
**33526** 1:24
**35** 6:5

**4**

**4** 3:5,15 32:17,21
  33:9 35:6 55:15
  70:21 71:2,14

**5**

**5** 3:16 51:13,15
**51** 3:16
**54** 3:6

**6**

**6** 1:15 2:7 4:1 77:4

**7**

**7/10** 29:9
**70** 3:5

**8**

**8** 71:8
**8th** 76:14
**80s** 6:6
**84** 6:21 7:13
**85** 6:8,21 7:13

**9**

**9** 71:8
**9.99** 19:25
**900** 2:20
**901** 2:8
**94** 56:12
**95** 7:10