UNITED STATES DISTRICT COUT
EASTERN DISTRICT OF VIRGINIA
Richmond Division

DONNA K. SOUTTER,
*for herself and on behalf of all
similarly situated individuals*,

        PLAINTIFF

v.                                 Civil Action No. 3:10cv00107

EQUIFAX INFORMATION SERVICES, LLC,

        DEFENDANT

## DECLARATION OF LEONARD A. BENNETT

I, Leonard A. Bennett, declare:

1. My name is Leonard A. Bennett. I am over 21 years of age, of sound mind, capable of executing this declaration, and have personal knowledge of the facts stated herein, and they are all true and correct.

2. I am one of the attorneys working on behalf of the Plaintiff in the above styled litigation, and I am an attorney and a principal of Consumer Litigation Associates, P.C., a seven-attorney law firm with offices in Newport News and Fairfax, Virginia. My primary office is at 763 J. Clyde Morris Blvd, Suite 1A, Newport News, Virginia 23601.

3. Since 1996, my practice has been limited to consumer protection litigation. While my experience representing consumers has come within several areas, my most developed area of expertise is in plaintiffs litigation under the Federal Consumer Credit Protection Act, 15 U.S.C. § 1601, et seq., and in particular the Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681, *et seq.*, the Equal Credit Opportunity Act (ECOA), 15 U.S.C. § 1691, *et seq.*, and the Fair



Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692, *et seq.*

4. I have personally been involved with the investigation of this case and have interviewed potential witnesses and reviewed relevant documents. I have also reviewed the pleadings and records in federal litigation outside Virginia regarding the same basic issues as in this case. Further, I have litigated numerous Fair Credit Reporting Act cases brought by consumers against Equifax and am thus familiar with the identity and location of the primary evidentiary witnesses typically used by Equifax. I have also been either lead objective counsel or executive committee counsel in two other Equifax class actions, prosecuted under 15 U.S.C. 1681e(b), *Terri White, et al v. Experian Information Solutions, Inc.,* SACV05-1070 DOC (C.D. Cal.) and *Franklin E. Clark, et al v. Equifax, Inc.*, C/A No. 8:00-1218-24 (D.S.C.). In each, Equifax was able to determine settlement class membership for a class size numbering in the millions. In the *White* case, Equifax performed a significant amount of electronic class member identification in a short window of time prior to settlement in order to attempt to defeat class certification.

5. The Plaintiff's case arises from the manner in which Equifax obtains and reports civil General District Court judgments in Virginia. Plaintiff has alleged that Equifax has violated the FCRA, 15 U.S.C. §1681e(b). This is the section of the statute that governs the underlying accuracy of consumer credit reports.

6. Our investigation reveals that a workable class definition could be used to identify as ascertainable class of individuals who meet every one of the following definitional requirements.

    a. the computer database of the Executive Secretary of the Supreme Court of Virginia shows that the person was the defendant in a Virginia General District Court civil action or judgment;

2

  b. the computer database of the Executive Secretary of the Supreme Court of Virginia shows that as of the date 20 days after the Court's certification of this class, the civil action or judgment was dismissed, satisfied, appealed, or vacated on or before April 1, 2009 ("the disposition date");

  c. Equifax's records note receipt of a communication or dispute from that person about the accuracy of Equifax's reporting of that civil action or judgment status; and

  d. Equifax's records note that a credit report regarding the person was furnished to a third party who requested the credit report, other than for an employment purpose: (1.) no earlier than February 17, 2008, (2.) no later than February 21, 2013, (3.) after the date that Equifax's records note its receipt of the consumer dispute regarding the judgment status, and (4.) at least thirty (30) days after the disposition date but before the judgment notation was corrected by Equifax to report that it was satisfied, appealed or vacated.

  7. Equifax has stipulated to numerosity of the proper amended class by communication dated February 2, 2013 and February 7, 2013 (Exhibits "1" and "2" to this Declaration). Equifax has not stipulated as to the ascertainability of these class members, although I have been unable to understand what components Equifax asserts are not ascertainable.

  8. The third requirement (c.) is more cumbersome, but no less ascertainable. Equifax has produced records in this and other FCRA cases by which it can easily determine whether or not a consumer has previously communicated information about a judgment—usually in a written dispute. Finally, the last requirement (d.) simply requires a manual or electronic review—either would work—of Equifax's "frozen scans" for the narrowed list of consumers. As addressed below, these documents are routinely obtained in my Equifax FCRA litigation.

  9. Pursuant to this Court's Order resolving a previously pending Motion to Compel (Docket No. 61) Equifax claimed to have produced the name and address of each consumer that had made a dispute to Equifax regarding a Virginia General District Court judgment. Similarly, Equifax has previously produced in discovery the full consumer file for the named Plaintiff,

3

Donna Souter, that consisted of a record of correspondence it received from Ms. Soutter in which she notified Equifax that its reporting that she owed a judgment was inaccurate. Equifax's electronic records also contain the letter that Equifax provided in response, a full snapshot of Soutter's credit files on a monthly basis showing, among other things, the reported status of the judgment and a list of all entities that purchased Soutter's credit report from Equifax and the date that the report was sold. Equifax's records also include a "maintenance sheet" and an "ACIS case". These documents are Equifax's internal records that record the changes to and actions taken upon a consumer's credit file by Equifax. Collectively, I hereafter reference to these as the "Soutter documents."

10. In my litigation experience, both in this case and in literally hundreds of other Equifax cases, I have routinely received these categories of "Soutter documents" as they relate to the Plaintiff in any particular case.

11. Subsequent to Equifax's appeal in this case, the Plaintiff and her counsel have again obtained a complete database of records of General District Court judgments maintained by the Executive Secretary of the Supreme Court of Virginia. This database contains full information related to the status and disposition of judgments, including the date of the dispositions.

12. Using the database from the second copy of the Supreme Court of Virginia database cross compared against the dispute information and other databases Equifax has produced in discovery, we have learned that the size of the pre-May 2009 disposition class as defined above exceeds 500 persons.

13. Regardless, this class is readily ascertainable. Equifax maintains complete records on every consumer in its database, including, but not limited to, the categories of

documents referenced herein as the "Soutter documents". Equifax maintains records on every letter it receives, every letter it sends, and electronic databases more than sufficient to identify each class member.

14. Equifax routinely produces these documents in its standard Rule 26(a)(1) Disclosures in its individual FCRA cases, including the ones that I have litigated. Additionally, Equifax regularly relies on these documents to objective determine what item a consumer was reporting and when the dispute was made.

15. To further confirm the identities of the consumers that fall within the "pre-April 2009 disposition" class definition, and absent Equifax's cooperation, Plaintiff intends to conduct minimal discovery to construct the class list as follows:

16. The Plaintiff will obtain one authenticated final historical production of data from the Virginia Supreme Court of General District Court cases filed since August 17, 2000[1]. She will start with the subset of consumers in the Supreme Court database that show the judgment was satisfied, vacated, appealed or otherwise dismissed between February 17, 2008 and April 1, 2009. As to the Virginia Supreme Court database contains the names and address of these consumers, Equifax could easily identify class members from whom it received any communication or dispute regarding the status of their judgment. Indeed, Plaintiff has already performed this matching exercise for a subset of these class members. Based on her research, Plaintiff expects that there will ultimately be about 1,000 of these "pre-May 2009 disposition" class members. From its "frozen scan" data, Equifax would then be easily able to determine the identities of those consumers for which the accurate judgment status was not updated in their

---

[1] The Plaintiff is using a 7 and ½ year lookback window to satisfy the full time period during which judgments may be reported pursuant to 15 U.S.C. §1681c(a)(2).

credit files despite such notice form the class member and who were thereafter the subject of a "hard inquiry" credit report sold to a third party. Equifax would be able to efficiently and with minimal cost produce the complete consumer files, e.g., the "Soutter documents" for this modest but numerous set of consumers. Punitive class counsel would, of course, absorb the burden and responsibility of electronically organizing and confirming class membership from such files.

I declare under penalty of perjury of the laws of the United States that the foregoing is correct.

Signed this 12th day of September, 2014.

_____
Leonard Anthony Bennett

Leonard A. Bennett, VSB No. 37523
CONSUMER LITIGATION ASSOCIATES, P.C.
763 J. Clyde Morris Blvd. Suite 1-A
Newport News, VA 23601
(757) 930-3660 - Telephone
(757) 930-3662 - Facsimile
E-mail: lenbennett@clalegal.com

From: Leonard Bennett <lenbennett@clalegal.com>
Subject: **Soutter**
Date: February 2, 2013 5:17:04 PM EST
To: Barry Goheen <BGoheen@KSLAW.com>
Cc: Matt Erausquin <matt@clalegal.com>

Barry -

In getting our amended cert motion drafted we are confronting a problem that we can either cure by stipulation or by further data from Equifax. In September 2010, Equifax produced the list of consumers who had made a dispute of a judgment as satisfied, vacated, etc. Separately, you produced data from three sample zip codes. This later production included dates of credit hard inquiries. The first production did not.

We need to establish numerosity for the narrowed cert class - consumers who had notified Eqx of the inaccuracy before the 1681e(b) violation. For this we need inquiries dates and dates of correct (if any) for the first data set you produced. In the alternative, we could accept a stipulation as to numerosity and get the data after cert (or appeal if you go that route again in the event we are successful at the DC).

Unfortunately, we need to know something quickly.

Regards,
Len

EXHIBIT 1

From: Leonard Bennett <lenbennett@clalegal.com>
Subject: **Re: Soutter**
Date: February 7, 2013 4:02:30 PM EST
To: "Love, Tony" <TLove@KSLAW.com>
Cc: Barry Goheen <BGoheen@KSLAW.com>, Ann Broussard <ABroussard@KSLAW.com>, Matt Erausquin <matt@clalegal.com>

We accept your offer.

On Feb 7, 2013, at 12:29 PM, Love, Tony wrote:

> In response to your earlier email, Equifax is willing to stipulate that a class would be sufficiently numerous if plaintiff will forego the request for any additional discovery/data. Of course, this would not include a stipulation on ascertainability.
>
> King & Spalding Confidentiality Notice:
>
> This message is being sent by or on behalf of a lawyer. It is intended exclusively for the individual or entity to which it is addressed. This communication may contain information that is proprietary, privileged or confidential or otherwise legally exempt from disclosure. If you are not the named addressee, you are not authorized to read, print, retain, copy or disseminate this message or any part of it. If you have received this message in error, please notify the sender immediately by e-mail and delete all copies of the message.

EXHIBIT 2