## STIPULATION AND AGREEMENT OF SETTLEMENT

This Stipulation and Agreement of Settlement is entered into by and between plaintiff Donna K. Soutter, individually and as putative representative of the Settlement Class, on the one hand, and Trans Union LLC, on the other hand, subject to preliminary and final approval by the Court, by and through their respective counsel.[1]

## I.    RECITALS

This Agreement is made with reference to and in contemplation of the following facts and circumstances.

### 1.1    The Pending Action.

Plaintiff claims that TransUnion's procedures for obtaining information from Virginia General District Court or Virginia Circuit Court civil court records did not adequately capture information about events subsequent to a judgment, such as satisfaction or dismissal of the judgment. As a consequence, Plaintiff alleges that TransUnion issued inaccurate credit reports about certain Virginia consumers, supposedly in violation of Sections 1681e(b), 1681i, 1681n and 1681o of the FCRA.

### 1.2    TransUnion's Denial Of Liability.

TransUnion vigorously denies all claims asserted against it in the Action, denies all allegations of wrongdoing and liability and has denied all material allegations of the Amended Complaint. TransUnion expressly and specifically contends that its past and current procedures with respect to collecting and reporting public records, and handling disputes relating thereto, are and were reasonable and compliant with all laws, including, without limitation, the FCRA. Moreover, TransUnion vigorously denies that a litigation class could be certified in this Action. TransUnion nevertheless desires to settle all claims that are asserted, or which could have been asserted, in the Action, on the terms and conditions set forth herein, solely for the purpose of

---

[1]    Section II below contains the definitions of capitalized terms utilized herein unless otherwise noted.

LA 51669002v12



PLAINTIFF'S
EXHIBIT
H

Blumberg No. 5113

avoiding the burden, expense and uncertainty of continuing litigation and for the purpose of putting to rest the controversies engendered by the Action. Nothing in this Agreement or any other document shall be construed as an admission or evidence of any violation of any federal or state statute, rule or regulation, or principle of common law or equity, or of any liability or wrongdoing whatsoever, or of the truth of any of the claims asserted or to be asserted in the Action, or of the infirmity of any defenses that have been raised or could be raised by TransUnion against the operative Amended Complaint or any other pleading or document filed in the Action or any other litigation related to the Action, including, without limitation, the First Amended Complaint filed on or about February 22, 2011. Further, TransUnion is not estopped from challenging class certification in further proceedings in the Action or in any other action if the Settlement is not finally approved.

      1.3      Settlement Through Mediation.

Plaintiff, Class Counsel, TransUnion and TransUnion's Counsel engaged in extensive, good faith arms'-length negotiations under the supervision of U.S. Magistrate Judge M. Hannah Lauck, including by participating in two mediation sessions, one supervised by the Hon. Wayne Anderson (Ret.), JAMS, and the other supervised by the Hon. Stanley Birch (Ret.), JAMS. The negotiations and mediation sessions resulted in an agreement on the principal terms of a settlement. It is the desire and intention of the Parties by entering into this Agreement to effect a full, complete and final settlement and resolution of all existing disputes and claims that relate to or arise out of the facts and claims alleged in the Action.

      1.4      Class Counsel's Investigation.

Class Counsel has concluded that a settlement with TransUnion on the terms set forth herein is fair, reasonable, adequate and in the best interests of the Settlement Class based upon their investigation and discovery, and taking into account the sharply contested issues involved, the uncertainty and cost of further prosecution of the Action, and the substantial benefits to be received by the Settlement Class pursuant to this Agreement.

NOW, THEREFORE, in consideration of the promises and agreements set forth herein, it is hereby STIPULATED AND AGREED, subject to the Court's approval as required by Federal Rule of Civil Procedure 23, that each and every Released Claim, as described in Section 2.30 below, shall be fully and finally settled and compromised and dismissed with prejudice, and shall be fully discharged and released, upon and subject to the following terms and conditions:

## II.  DEFINITIONS

2.1     The "Action" means the putative class action entitled <u>Donna K. Soutter v. TransUnion, LLC,</u> United States District Court, Eastern District of Virginia, Case No. 3:10-cv-514-HEH.

2.2     "Activation Code" or "Activation Codes" means the alphanumeric code to be provided by TransUnion and distributed to each Settlement Class Member by the Settlement Administrator to activate a Credit Monitoring Subscription.

2.3     "Agreement" means this Stipulation and Agreement of Settlement, including all exhibits hereto.

2.4     The "Amended Complaint" means the operative Second Amended Class Action Complaint filed by Plaintiff in the Action on December 5, 2013.

2.5     "CAFA Notice" means the notice requirements imposed by 28 U.S.C. § 1715(b).

2.6     "Claim Form" means the claim form pursuant to which Settlement Class Members can submit claims, a proposed form of which is attached hereto as Exhibit C.

2.7     "Claim Payment" means a payment from the Settlement Fund to Settlement Class Members who submit a Valid Claim as set forth in Section 2.44 below.

2.8     "Class Counsel" means Leonard A. Bennett, Matthew Erausquin and Susan M. Rotkis.

2.9     "Class Notice" means the method of notice to the Settlement Class set forth in Section 7.3 below.

2.10    "Court" means the United States District Court, Eastern District of Virginia, the Hon. Henry Hudson presiding.

2.11    "Credit Monitoring Subscription" shall mean an internet-based, single-bureau, six-month TransUnion credit monitoring subscription, which shall include daily access to TransUnion credit reports and a VantageScore, and which shall be subject to the terms and conditions of similar credit monitoring subscriptions offered by TransUnion to paying consumers as of the time of activation. The Parties agree that this service need not be identical, but is intended to be comparable to TransUnion's "Credit Monitoring with a Free Credit Score" product that otherwise is currently priced at $14.95 per month.

2.12    "Effective Date" means fifteen (15) business days after the Judgment has become Final.

2.13    "FCRA" means the federal Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq., and, for purposes of the releases set forth herein, any and all similar or analogous state laws, including, without limitation, the common law of defamation and invasion of privacy.

2.14    "File" shall have the same meaning as set forth in 15 U.S.C. § 1681a(g).

2.15    "Final" means the date the Judgment becomes final for all purposes, except as set forth in Section 9.1(l) below, because either (i) no appeal has been filed and thirty (30) days have lapsed since entry of the Judgment, or (ii) if a timely appeal has been filed, the appeal is finally resolved, with no possibility of further appellate or other review, resulting in final judicial approval of the Settlement.

2.16    "Final Approval Order" means the order to be entered by the Court in the Action finally approving the Settlement and resolving all issues between the Parties, as provided for in Section 9.1 below, substantially in the form attached hereto as Exhibit G.

2.17    "Final Fairness Hearing" means the hearing at which the Court will consider and finally decide whether to approve the Settlement, enter Judgment and make such rulings contemplated by this Agreement.

2.18    "IP Address" means an internet protocol address, whether static or dynamic.

2.19    "Judgment" means a final judgment and order of dismissal with prejudice to be entered by the Court concurrently with the Final Approval Order.

2.20    "LexisNexis" means LexisNexis Risk Data Retrieval Services, LLC and LexisNexis Risk & Information Analytics Group, Inc.

2.21    "Long-Form Notice" means the notice informing Settlement Class Members of their rights under this Agreement, substantially in the form attached hereto as Exhibit B.

2.22    "Mediator" means the Honorable Stanley Birch (Ret.), JAMS, or if he becomes unable or unwilling to serve, such other person as may be mutually acceptable to Class Counsel and TransUnion's Counsel, but in the absence of a mutually-agreeable substitute, such United States Magistrate Judge as may be appointed by the Court shall perform the function of "Mediator" solely for purposes of Section 11.2 below.

2.23    "NCOA" means the United States Postal Service National Change of Address database.

2.24    "Net Settlement Fund" has the meaning given to that term in Section 4.5 of this Agreement.

2.25    "Opt-Out Form" means a document substantially in the form attached hereto as Exhibit D.

2.26    "Parties" means TransUnion and Plaintiff.

2.27    "Permissible Purpose Order" means an order, substantially in the form attached hereto as Exhibit H, entered by the Court permitting TransUnion to provide the Settlement Administrator and Class Counsel with the Settlement Class data as set forth in Section 7.2 below and stating expressly that providing such data does not violate 15 U.S.C. § 1681b or any other provision at law or common law right of similar effect.

2.28    "Plaintiff" means named plaintiff Donna K. Soutter, individually and as proposed representative of the Settlement Class.

2.29    "Preliminary Approval Order" means an order to be entered by the Court in the Action, as provided for in Section 8.1 below, substantially in the form attached hereto as Exhibit F.

2.30    "Released Claim" or "Released Claims" means any and all actual or potential claims, actions, causes of action, suits, counterclaims, cross claims, third-party claims, contentions, allegations, and assertions of wrongdoing, and any demands for any and all debts, obligations, liabilities, damages (whether actual, compensatory, treble, punitive, exemplary, statutory, or otherwise), attorneys' fees, costs, expenses, restitution, disgorgement, injunctive relief, any other type of equitable, legal or statutory relief, any other benefits, or any penalties of any type whatever, whether known or unknown, suspected or unsuspected, contingent or non-contingent, or discovered or undiscovered, whether asserted in federal court, state court, arbitration or otherwise, and whether triable before a judge or jury or otherwise, including, without limitation, those based on violation of the FCRA or any other federal, state or local law, statute, regulation or common law, that were alleged (or that could have been alleged based on the same facts and circumstances) in the Action, the Amended Complaint or any other complaints, pleadings or other papers filed or to be filed in the Action or any similar or related litigation, and that involved a Virginia General District Court or Virginia Circuit Court judgment appearing on a TransUnion consumer report or File disclosure, or a consumer report or File disclosure created from data provided by TransUnion, wherein such data inaccurately stated or suggested that such judgment was valid and had not been paid or satisfied.

2.31    "Released Parties" means TransUnion and each of its members, owners, shareholders, unitholders, predecessors, successors (including, without limitation, acquirers of all or substantially all of TransUnion's assets, stock, units or other ownership interests) and assigns; the past, present, and future, direct and indirect, parents (including, without limitation, holding companies), subsidiaries and affiliates of any of the above; and the past, present and future principals, trustees, partners, insurers, officers, directors, employees, agents, advisors, attorneys,

members, owners, shareholders, unitholders, predecessors, successors, assigns, representatives, heirs, executors, and administrators of any of the above. Released Parties also includes: (i) any and all resellers or retransmitters of TransUnion data, and (ii) LexisNexis and any consumer reporting agencies it owns or controls (through more than 50% ownership) (together, "Additional Released Parties"), but the release under this Agreement in favor of Additional Released Parties shall only release claims based on data delivered by TransUnion, shall not release claims that might be asserted under 15 U.S.C. § 1681k or 1681s-2(b), and shall otherwise be subject to the limitations set forth in Section 2.30 above.

2.32    "Request for Exclusion" has the meaning set forth in Section 8.4 below.

2.33    "Reservation of Rights" has the meaning set forth in Section 8.5 below.

2.34    "Reservation of Rights Form" means a document substantially in the form attached hereto as Exhibit E.

2.35    "Settlement" means this Agreement between Plaintiff, on behalf of herself and as proposed representative of the proposed Settlement Class, on the one hand, and TransUnion, on the other hand, to settle, compromise and release all of the Released Parties from all of the Released Claims, fully, finally and forever.

2.36    "Settlement Administrator" means such administrator as may be appointed by the Court in the Preliminary Approval Order upon Plaintiff's motion, or any successor or replacement administrator as the Court may appoint.

2.37    "Settlement Class," solely for purposes of this Settlement, means, includes and refers to all consumers in the United States who, between July 26, 2008, and the date of preliminary approval of the Settlement, had a hard inquiry on their TransUnion File resulting in the delivery of a TransUnion consumer report that reflected an unsatisfied Virginia General District Court or Virginia Circuit Court civil judgment, if at least 31 days prior to delivery of the consumer report, and on the date of delivery of the consumer report, such judgment had been satisfied, vacated or dismissed, as shown by the VSC Master File.

2.38    "Settlement Class Member" means, includes and refers to any individual within the Settlement Class who has not validly opted out of the Settlement pursuant to Section 8.4 below.

2.39    "Settlement Fund" means the amounts paid as described in Section 4.3 below.

2.40    "Summary Mailed Notice" means the form of notice set forth in Section 7.3(a) below, substantially in the form attached hereto as Exhibit A.

2.41    "Taxes" and "Tax Expenses" have the meanings set forth in Section 4.9(c) below.

2.42    "TransUnion" means and refers to Trans Union LLC.

2.43    "TransUnion's Counsel" means Strasburger & Price, LLP and Stroock & Stroock & Lavan LLP.

2.44    "Valid Claim" means a Claim Form that is submitted by a Settlement Class Member that: (i) is postmarked or received by the Settlement Administrator on or before the deadline set forth in the Class Notice; (ii) is sent to the address specified in the Class Notice; (iii) includes the Settlement Class Member's statement that he or she was injured by the inaccurate appearance on a TransUnion consumer report of an unsatisfied Virginia General District Court or Virginia Circuit Court civil judgment; and (iv) is personally signed by the Settlement Class Member. If the Settlement Administrator reasonably determines that the Class Member's statement is untrue or unverifiable, the Claim Form may be deemed invalid.

2.45    "VSC Master File" means the master file of the Virginia Supreme Court that reflects judgments and the status thereof entered in the Virginia General District Court or Virginia Circuit Court, as delivered to Plaintiff pursuant to a subpoena issued by Class Counsel on or about August 19, 2013.

2.46    "Website Code" or "Website Codes" means the alphanumeric code to be included on the Summary Mailed Notice and distributed to the Settlement Class by the Settlement Administrator as set forth in Section 7.3(a) below.

### III. THE SETTLEMENT CLASS

3.1     Certification Of Settlement Class For Settlement Purposes Only. TransUnion disputes that the elements of Federal Rule of Civil Procedure 23 are satisfied for purposes of a litigation class, disputes that a litigation class would be manageable and denies that any litigation class may be certified in the Action. However, solely for purposes of avoiding the expense and inconvenience of further litigation, TransUnion does not oppose certification of the Settlement Class for settlement purposes only. No statements, representations or agreements made by TransUnion in connection with the Settlement may be used to establish any of the elements of class certification, other than for settlement purposes. Preliminary certification of a Settlement Class shall not be deemed a concession that certification of a litigation class is appropriate, nor is TransUnion estopped from challenging class certification in further proceedings in the Action or in any other action, if the Settlement is not finally approved.

### IV. SETTLEMENT CONSIDERATION

4.1     Credit Monitoring Subscriptions. All Settlement Class Members shall be entitled to a Credit Monitoring Subscription without having to supply a credit card or other method of payment to activate the Credit Monitoring Subscription. TransUnion will provide the Settlement Administrator with a sufficient number of Activation Codes which shall be distributed to the Settlement Class as described in Sections 7.3(a), (b) below. Activation Codes will expire one hundred and eighty (180) days after the date on which they are sent to Settlement Class Members as described in Sections 7.3(a), (b) below. To activate a Credit Monitoring Subscription, the Settlement Class Member must provide TransUnion with a valid Activation Code, a valid electronic mail address, a valid mailing address and such other personal identifying information as may ordinarily be required by TransUnion to verify the identity of the Settlement Class Member for the delivery of this service. The dispute resolution provision of Section 11.2 below shall apply to Settlement Class Members with respect to any dispute relating to the credit monitoring subscription in lieu of any arbitration provision set forth in the subscription terms and conditions. Nor shall TransUnion assert, during the term or because of the Credit Monitoring

Subscription with respect to any Settlement Class Members who accept the Credit Monitoring Subscription, that any arbitration provision set forth in the subscription terms and conditions applies to FCRA claims, unless the Settlement Class Member provides express consent to arbitration in writing.

      4.2      Suspension of Credit Monitoring Subscription Pending Investigation. If TransUnion reasonably believes that a Credit Monitoring Subscription is being used to engage in identity theft, invasion of privacy, violations of the federal Credit Repair Organizations Act, or fraud, including, without limitation, the kind of activity described under the "Credit Repair Scams" and "Identity Theft" sections of the Federal Trade Commission's website located at www.ftc.gov/bcp/edu/pubs/consumer/credit/cre03.shtm (or a similar Federal Trade Commission website or other publication), TransUnion may initially decline to activate or may temporarily suspend the Credit Monitoring Subscription pending its investigation of the suspected activity. TransUnion will give notice to Class Counsel of such action within five (5) business days thereof along with the reason(s) for suspension. Any dispute regarding any suspension of a Credit Monitoring Subscription shall be resolved pursuant to Section 11.2 below.

      4.3      The Settlement Fund. TransUnion will pay a cash amount of one million four hundred and twenty-five thousand dollars ($1,425,000), less credits allowed pursuant to Sections 4.5 and 4.7 below, into a cash fund, not later than ten (10) business days following the Effective Date. For purposes of this definition, the term "Settlement Fund" is not intended to describe all monetary consideration provided to Settlement Class Members pursuant to the Settlement as it does not include the additional consideration provided herein in the form of the Credit Monitoring Subscription.

      4.4      Review of VSC Master File: Class Counsel represents that it has obtained and delivered the VSC Master File to TransUnion. TransUnion will at its own expense make a good faith effort to: (a) prepare a list of Settlement Class Members as set forth in Section 7.2, below; and (b) confirm that file data for all Virginia judgments used to prepare consumer reports is

appropriately updated in light of any satisfactions, vacaturs or dismissals set forth in the VSC Master File.

    4.5    <u>Net Settlement Fund</u>. The Net Settlement Fund is equal to the Settlement Fund plus interest accrued thereon subsequent to deposit, and less the following:

        a.    All costs and fees incurred by the Settlement Administrator, including, without limitation, all costs of Class Notice, and claims administration;

        b.    All Taxes and Tax Expenses;

        c.    Any Court-approved attorneys' fees, costs and expenses; and

        d.    Any Court-approved service award to Plaintiff.

    4.6    <u>Maintenance And Distribution Of The Settlement Fund</u>. The Settlement Administrator shall maintain the Settlement Fund until all money within the Settlement Fund is distributed pursuant to this Agreement. Upon determination of the Net Settlement Fund, the Settlement Administrator shall distribute the Net Settlement Fund to Settlement Class Members as set forth in Section 7.7 below.

    4.7    <u>Credit For Advances On Behalf Of The Settlement Fund</u>. Out-of-pocket payments by or on behalf of TransUnion of any and all amounts chargeable to the Settlement Fund, whether before or after the Settlement Fund is created, are to be treated as contributions to the Settlement Fund as set forth above in Section 4.3 and shall be credited in their entirety (100%) towards TransUnion's obligation thereunder.

    4.8    <u>Credit Based On Other Settlements</u>. If Plaintiff or Class Counsel, on behalf of a substantially congruent class to the Settlement Class herein or a class that includes a substantial portion of the Settlement Class herein, settles any Released Claim with any other consumer reporting agency (or affiliate thereof) meeting the criteria of 15 U.S.C. § 1681a(p) (<u>i.e.</u>, a consumer reporting agency that compiles and maintains Files, and sells credit reports about consumers on a nationwide basis), then TransUnion shall be entitled to a credit against the Settlement Fund (or a refund of amounts previously deposited) equal to one million four hundred

and twenty-five thousand dollars ($1,425,000) minus the cash consideration paid or promised to be paid in connection with each such other settlement, unless Class Counsel reasonably determine in the exercise of their professional judgment, based on a thorough analysis of the evidence, the posture and leverages of such case and the contemporaneous state of the law, that it is not feasible to recover more than one million four hundred and twenty-five thousand dollars ($1,425,000) on a classwide basis in a litigated case against such other consumer reporting agency, that litigation of such other claim(s) are not likely effective on a class basis or are more effective on an individual basis, or that such restriction would impair their ability to adequately represent such substantially congruent class. In no event shall the credit or refund allowed pursuant to this Section 4.8 exceed the amount awarded by the Court to Class Counsel.

    4.9    <u>Settlement Fund Tax Status</u>.

        a.    The Parties agree to treat the Settlement Fund as being at all times a "qualified settlement fund" within the meaning of Treas. Reg. § 1.468B-1. In addition, the Settlement Administrator shall timely make such elections as necessary or advisable to carry out the provisions of this Section, including the "relation back election" (as defined in Treas. Reg. § 1.468B-1) back to the earliest permitted date. Such elections shall be made in compliance with the procedures and requirements contained in such regulations. It shall be the responsibility of the Settlement Administrator to timely and properly prepare and deliver the necessary documentation for signature by all necessary parties, and thereafter to cause the appropriate filing to occur.

        b.    For the purpose of Treasury Regulation § 1.468B of the Internal Revenue Code of 1986, as amended, and the regulations promulgated thereunder, the "administrator" shall be the Settlement Administrator. The Settlement Administrator shall timely and properly file all informational and other tax

returns necessary or advisable with respect to the Settlement Fund (including, without limitation, the returns described in Treas. Reg. § 1.468B-2(k)). Such returns (as well as the election described in Section 4.8(a) above) shall be consistent with this Section and in all events shall reflect that all Taxes (including any estimated Taxes, interest or penalties) on the income earned by the Settlement Fund shall be paid out of the Settlement Fund as provided in Section 4.9(c).

c.      All (a) taxes (including any estimated taxes, interest or penalties) arising with respect to the income earned by the Settlement Fund, including any taxes or tax detriments that may be imposed upon the Released Parties with respect to any income earned by the Settlement Fund for any period during which the Settlement Fund does not qualify as a "qualified settlement fund" for federal or state income tax purposes ("Taxes"), and (b) expenses and costs incurred in connection with the operation and implementation of this Section (including, without limitation, expenses of tax attorneys and/or accountants and mailing and distribution costs and expenses relating to filing (or failing to file) the returns described in Section 4.9(b) ("Tax Expenses"), shall be paid out of the Settlement Fund; in no event shall the Released Parties have any responsibility for or liability with respect to the Taxes or the Tax Expenses. Taxes and Tax Expenses shall be timely paid by the Settlement Administrator out of the Settlement Fund without prior order from the Court, and the Settlement Administrator shall be obligated (notwithstanding anything herein to the contrary) to withhold from distribution any funds necessary to pay such amounts, including the establishment of adequate reserves for any Taxes and Tax Expenses (as well as any amounts that may be required to be

withheld under Treas. Reg. § 1.468B-2(l)); the Released Parties are not responsible therefor nor shall they have any liability with respect thereto. The Parties hereto agree to cooperate with the Settlement Administrator, each other, and their tax attorneys and accountants to the extent reasonably necessary to carry out the provisions of this Section.

## V.   ATTORNEYS' FEES AND COSTS AND SERVICE AWARDS TO PLAINTIFF

5.1     Class Counsel intends to apply to the Court for attorneys' fees and costs, and a service award for Plaintiff to be paid solely from the Settlement Fund.  TransUnion will not oppose Class Counsel's petition for fees, costs and a service award.  Failure by the Court to approve attorneys' fees, costs or the service award shall not be grounds for Plaintiff to withdraw from the Settlement, and shall not delay the Settlement's becoming Final as set forth in Section 2.15 above, and shall not delay the Effective Date of the releases described in Section 6.1 below. PLAINTIFF RECOGNIZES AND UNDERSTANDS THAT THE COURT MAY NOT APPROVE ANY SERVICE AWARD TO HER WHATSOEVER AND THAT HER SUPPORT OF THE SETTLEMENT IS IN NO WAY CONTINGENT ON ANY SERVICE AWARD. PLAINTIFF REPRESENTS AND WARRANTS THAT NO PROMISES OF ANY KIND HAVE BEEN MADE TO HER WITH RESPECT TO ANY SERVICE AWARD.

## VI.   RELEASE AND DISMISSAL

6.1     Release of Released Claims. As of the Effective Date of the Settlement, the Plaintiff and each Settlement Class Member, their respective heirs, executors, administrators, representatives, agents, attorneys, partners, successors, predecessors-in-interest, assigns and all persons acting for or on their behalf, shall be deemed to have fully, finally and forever released the Released Parties from all Released Claims described in Section 2.30 above.  Without limiting the foregoing, the Released Claims released pursuant to this Settlement specifically extend to all claims and potential claims that Settlement Class Members do not know or suspect to exist in their favor as of or prior to the Effective Date.  The Parties, and all Settlement Class Members,

Page 14 of 34

agree that this paragraph constitutes a waiver of any statutory provision, right or benefit of any state or territory of the United States or any jurisdiction, and any principle of common law at law or in equity that prohibits the waiver of unknown claims. THIS WAIVER INCLUDES WITHOUT LIMITATION WAIVER OF ALL RIGHTS UNDER CALIFORNIA CIVIL CODE SECTION 1542, WHICH PROVIDES, "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR." Plaintiff and each Settlement Class Member understands and acknowledges the significance of this waiver relating to limitations on releases. In connection with such waiver and relinquishment, Plaintiff and each Settlement Class Member acknowledge that they are aware that they may hereafter discover facts in addition to, or different from, those facts which they now know or believe to be true with respect to the subject matter of the Settlement, but that they release fully, finally and forever all Released Claims, and in furtherance of such intention, the release will remain in effect notwithstanding the discovery or existence of any such additional or different facts. The Parties acknowledge (and all Settlement Class Members by operation of law shall be deemed to have acknowledged) that the release of unknown Released Claims as set forth herein was separately bargained for and was a key element of the Settlement.

      6.2    Dismissal. Upon entry of the Final Approval Order, Plaintiff shall take all actions necessary to dismiss with prejudice all litigation by Plaintiff against TransUnion in any court, including, without limitation, the Action.

## VII.   NOTICE AND SETTLEMENT ADMINISTRATION

      7.1    Costs Of Notice And Administration. The costs of Class Notice and administration shall be paid or deducted from the Settlement Fund as described in Section 4.5 above. Prior to creation of the Settlement Fund, reasonable costs of Class Notice and

administration shall be advanced to the Settlement Administrator by TransUnion, subject to the limit set forth in Section 4.3 above, and TransUnion shall be entitled to credit for all advancement as set forth in Section 4.7 above.

    7.2    <u>Settlement Class Data To Be Provided To Settlement Administrator</u>. Within five (5) business days after entry of the Permissible Purpose Order, TransUnion will provide the following data, if present, readily determinable and capable of being reasonably matched to the TransUnion Files of individuals within the Settlement Class, regarding each individual within the Settlement Class, to the Settlement Administrator.

    a.    Name as it appears in his or her TransUnion File at the time the data is retrieved;

    b.    Address as it appears in his or her TransUnion File at the time the data is retrieved;

    c.    Court name as it appears in his or her TransUnion File at the time the data is retrieved;

    d.    Docket number as it appears in the individual's TransUnion File at the time the data is retrieved;

    e.    Original amount owed associated with the Docket Number in Section 7.2(d) as reflected in the individual's TransUnion File;

    f.    Filed date as reflected in the individual's TransUnion File;

    g.    Judgment data create date and update timestamp as can reasonably be determined by TransUnion.

The Settlement Administrator shall use the data to develop a list of individuals within the Settlement Class and may share the data provided by TransUnion pursuant to this section with Class Counsel. The deadlines set forth in this Agreement for sending Notice to the Settlement Class, for the Settlement Class to submit Claim Forms, Reservation of Rights Forms or Opt Out Forms are subject to change if, based on the data within and format of the VSC Master File,

TransUnion is not able to provide the data set forth in this Section 7.2 with sufficient time for the Settlement Administrator to mail Notice to the Settlement Class as set forth in Section 7.3. The Parties agree to cooperate reasonably in any request made to the Court to amend dates and deadlines pertinent to approval of this Settlement.

7.3     Class Notice. Notice to the Settlement Class shall be mailed no later than January 20, 2014, as follows:

a.      Summary Mailed Notice, substantially in the form attached hereto as Exhibit A, that are approved by the Court, will be mailed to the Settlement Class using the data TransUnion provides to the Settlement Administrator as set forth in Section 7.2 above. Addresses will be run once through the NCOA before mailing. The Summary Mailed Notice will contain a Website Code, and will direct its recipient to an Internet website established and operated by the Settlement Administrator. The Internet website will make available the Summary Mailed Notice, the Long-Form Notice, this Agreement, contact information for the Settlement Administrator, contact information for Class Counsel, the process for obtaining an Activation Code and any other material the Parties agree in writing to include. The Internet website also will direct visitors to enter his or her Website Code. Upon entry of the Website Code, visitors will be directed to a webpage that will make available the Claim Form, the Opt-Out Form and the Reservation of Rights Form, as well as give Settlement Class Members the option to provide the Settlement Administrator with an e-mail address to which the Settlement Administrator will send an Activation Code after the Settlement becomes Final.

b.      Settlement Class Members who decline to submit an e-mail address will receive their Activation Code by mail after the Settlement becomes Final.

       At TransUnion's request, all Activation Codes will be sent on a staggered basis, beginning not less than ten (10) days after the Effective Date and ending not more than sixty (60) days after the Effective Date.

c.    The Settlement Administrator shall also establish a physical address and toll-free telephone number that individuals within the Settlement Class may write or call to obtain information about the Settlement, request mailing of the Long-Form Notice, Claim Form, an Opt-Out Form or a Reservation of Rights Form. Every individual in the Settlement Class shall be permitted to request a Claim Form, an Opt-Out Form or a Reservation of Rights Form by physical mail or by telephone.

7.4    <u>Submission of Claim Forms</u>. Claim Forms shall be submitted and signed electronically via the Settlement Administrator's website, by no later than March 3, 2014. Settlement Class Members who request by telephone or by physical mail that the Settlement Administrator provide them with a paper Claim Form may submit a Claim Form by mail to the Settlement Administrator, but all mailed Claim Forms must be personally signed by the Settlement Class Member and postmarked no later than March 3, 2014. The Settlement Administrator shall determine what procedures are necessary to ensure that fraudulent, duplicative or bulk requests for Claim Payments are identified and rejected. If more than five Claim Forms are submitted electronically from the same IP Address, the Settlement Administrator shall presume that all such Claim Forms are fraudulent, subject to further determination by the Parties and their counsel.

7.5    <u>Calculation Of Claim Payments</u>. TransUnion shall provide to the Settlement Administrator such data as is reasonably necessary to determine whether a Settlement Class Member has submitted a Valid Claim and the amount of any corresponding Claim Payment using the following formula, permitting a point value of as low as one point and as high as five (5) points:

a.      Submission of a Valid Claim will be assigned a value of one point.

b.      If TransUnion's records show that a Settlement Class Member who submits a Valid Claim had, prior to the date of this Agreement, submitted a dispute to TransUnion regarding a Virginia General District Court and/or Virginia Circuit Court civil judgment, then the Settlement Class Member's Claim Form will be assigned two points in addition to the points awarded pursuant to Sections 7.5(a) or (c).

c.      If the Settlement Class Member's VantageScore™ increased by fifty or more points due to updating of judgment data pursuant to this Settlement, then the Settlement Class Member's Claim Form will be assigned two points in addition to the points awarded pursuant to Sections 7.5(a) or (b).

7.6     Point Value. The value of each point will be equal to the total amount in the Net Settlement Fund divided by the total number of points awarded to Settlement Class Members who submit Valid Claims. The Settlement Administrator will calculate this value. TransUnion shall make reasonable efforts to provide the dispute history and VantageScore™ information to the Settlement Administrator in a format and manner designed to minimize the costs of administration to be paid from the Settlement Fund.

7.7     Distribution Of Claim Payments. The Settlement Administrator will mail checks to Settlement Class Members entitled to a Claim Payment, based on the number of points awarded pursuant to Section 7.5 above and the point value calculated pursuant to Section 7.6 above, as promptly as is feasible after the Effective Date and after the total number of Valid Claims and associated point values are determined. No payments to Settlement Class Members shall be made prior to the Effective Date.

7.8     CAFA Notice. All relevant approval and court filing dates will be scheduled to ensure compliance with the Class Action Fairness Act. Plaintiff will cooperate reasonably with TransUnion to ensure compliance so that the releases described in Section 6.1 above are fully

enforceable. TransUnion and/or TransUnion's Counsel will be responsible for printing and sending CAFA Notice. The expense of printing and sending the CAFA Notice will not be charged against the Settlement Fund.

## VIII.  PRELIMINARY APPROVAL

8.1     Preliminary Approval Order.  Plaintiff will seek the Court's approval of this Agreement by filing an appropriate Motion for Preliminary Approval and seeking entry of a Preliminary Approval Order substantially in the form attached hereto as Exhibit F. The Parties shall cooperate in presenting such papers to the Court as may be necessary to effectuate the intent and purposes of this Agreement.  Among other things, the Preliminary Approval Order shall specifically include the following:

  a.    A determination that, for settlement purposes only, the Action may be maintained as a class action on behalf of the Settlement Class;

  b.    An appointment of the Settlement Administrator and a finding that the Class Notice as described in Section 7.3 above is the only notice to the Settlement Class that is required, and that such notice satisfies the requirements of Due Process, the Federal Rules of Civil Procedure and any other applicable laws;

  c.    A preliminary finding that the Settlement is fair, reasonable and adequate for the Settlement Class and within the range of possible approval;

  d.    A preliminary finding that Plaintiff fairly and adequately represents the interests of the Settlement Class;

  e.    A preliminary appointment of Class Counsel finding that Class Counsel are adequate to act as counsel for the Settlement Class;

  f.    Set a date for the Final Fairness Hearing, to determine whether there exists any reasonable basis why the Settlement should not be approved as being

fair, reasonable and adequate, and in the best interests of the Settlement Class and why Judgment should not be entered thereon;

g.  Establishment of a procedure for submitting Claim Forms and setting a deadline to submit Claim Forms of March 3, 2014;

h.  Establishment of a procedure for the Settlement Class to opt-out as set forth in Section 8.4 and setting a postmark deadline of March 3, 2014, after which no Settlement Class Member shall be allowed to opt-out;

i.  Establishment of a procedure for Settlement Class Members to object to the proposed Settlement and setting a postmark deadline of March 3, 2014, after which no Settlement Class Member shall be allowed to object to the proposed Settlement;

j.  Establishment of a procedure for Settlement Class Members to reserve their right to seek compensatory damages as set forth in Section 8.5 and setting a postmark deadline of March 3, 2014, after which no Settlement Class Member shall be allowed to submit a Reservation of Rights;

k.  Entry of a preliminary injunction as to Plaintiff, the Settlement Class and any person or entity allegedly acting on behalf of the Settlement Class, either directly, representatively or in any other capacity, enjoining them from commencing or prosecuting against the Released Parties, any action or proceeding in any court or tribunal asserting any of the Released Claims; and

l.  Entry of a stay of all proceedings in the Action except as may be necessary to implement the Settlement or comply with the terms of the Agreement.

8.2  Stay Following Preliminary Approval Order. Upon entry of the Preliminary Approval Order, the Parties shall promptly cooperate in filing such papers as may be necessary

to obtain a stay of the proceedings in the Action, except as may be necessary to implement the Settlement or comply with the terms of the Agreement.

8.3     Denial Of Preliminary Approval Order.  If the Court fails for any reason to enter the Preliminary Approval Order substantially in the form attached hereto as Exhibit F or to certify the Settlement Class for settlement purposes consistent with the provisions hereof, and if all Parties do not agree jointly to appeal such ruling, this Agreement shall terminate and be of no further force or effect without any further action by the Parties.  In the event that the Court fails to enter the Preliminary Approval Order substantially in the form attached hereto as Exhibit F, the Parties shall return to the status quo ante as of July 24, 2013, as if no Agreement had been negotiated or entered into.  Moreover, the Parties shall be deemed to have preserved all of their rights or defenses as of July 24, 2013, and shall not be deemed to have waived any substantive or procedural rights of any kind that they may have as to each other or any individual within the proposed Settlement Class.  In such an event, nothing in this Agreement or filed in connection with seeking entry of the Preliminary Approval Order shall be construed as an admission or concession by TransUnion of the allegations raised in the Action, or any other action, of any fault, wrongdoing or liability of any kind, nor is TransUnion estopped from challenging those allegations in further proceedings in the Action or in any other action.

8.4     Opt-Out/Requests For Exclusion From Settlement.

a.     Requests For Exclusion.  All Settlement Class Members shall be given the opportunity to opt out of the Settlement Class by submitting a Request for Exclusion.  All Requests for Exclusion must be in writing, sent to the Settlement Administrator and postmarked no later than March 3, 2014.  To be valid, a Request for Exclusion must be personally signed and must include:  (i) name, address and telephone number; (ii) a sentence stating that he or she is in the Settlement Class; and (iii) the following statement: "I request to be excluded from the class settlement in Donna K. Soutter v.

TransUnion LLC, United States District Court, Eastern District of Virginia, Case No. 3:10-cv-00514-HEH." A Request for Exclusion submitted on the Opt-Out Form shall be presumed valid. Notwithstanding the foregoing, no person within the Settlement Class, or any person acting on behalf of or in concert or participation with that person, may submit a Request for Exclusion of any other person within the Settlement Class. Requests for Exclusion submitted en masse will be presumed invalid.

b.    Delivery To Parties; Certification To The Court. The Settlement Administrator shall provide copies of the Requests for Exclusion to the Parties no later than March 10, 2014. The Settlement Administrator shall file with the Court a declaration verifying that Class Notice has been provided to the Settlement Class as set forth herein and listing all of the valid opt-outs received also by March 10, 2014.

c.    Effect. All individuals within the Settlement Class who timely submit a valid Request for Exclusion will exclude themselves from the Settlement Class and will preserve their ability to independently pursue, at their own expense, any individual, non-class, non-representative claims he or she claims to have against TransUnion. Any such individual within the Settlement Class who so opts out will not be bound by further orders or judgments in the Action as it relates to the Settlement Class, and will preserve their ability to independently pursue, at their own expense, any individual, non-class, non-representative claims for damages they may have against TransUnion. In the event of ambiguity as to whether someone has requested to be excluded (such as through submission of both an Opt-Out Form and a Claim Form), the Settlement Class Member

Page 23 of 34

shall be deemed <u>not</u> to have requested exclusion pursuant to this Section 8.4.

8.5     <u>Reservation Of Right To Seek Compensatory Damages</u>.

   a.     <u>Reservation Of Rights</u>.  All Settlement Class Members may obtain the Credit Monitoring Subscription and reserve the right to seek compensatory damages by following the procedure set forth in this Section 8.5.

   b.     <u>Procedure</u>.  A Settlement Class Member may reserve his right to seek compensatory damages only if he submits to the Settlement Administrator a fully-completed and personally-signed Reservation of Rights Form postmarked no later than March 3, 2014.  Within ninety (90) days thereafter, the electing Settlement Class Member must also submit to the Settlement Administrator (i) non-binding evidence and documentation the Settlement Class Member contends supports his or her claim for compensatory damages, and (ii) a non-binding estimate of the compensatory damages the Settlement Class Member claims to have suffered (the "NBE").  Within forty-five (45) days of TransUnion's Counsel's receipt from the Settlement Administrator of (i) and (ii) from a Settlement Class Member who submits a Reservation of Rights Form, TransUnion will make a good faith settlement proposal to the Settlement Class Member, to be communicated by the Settlement Administrator, which will remain open for thirty (30) days following the Settlement Administrator's sending the good faith settlement proposal to the Settlement Class Member.  A Settlement Class Member's failure to strictly follow the procedures set forth in this Section 8.5(b) shall result in the release, on the Effective Date, of any and all purportedly reserved claims.

    c.    <u>Effect</u>. If the Settlement Class Member who had submitted a valid Reservation of Rights and who had otherwise complied with the provisions of this Section 8.5 declines TransUnion's good faith settlement proposal, such Settlement Class Member (a "Reserving Member") may proceed in a separate action on an individual, non-class, non-representative basis only, at his or her own expense, against TransUnion to attempt recovery of his or her individual compensatory damages, but the Reserving Member will not be entitled to seek statutory or punitive damages or attorneys' fees pursuant to 15 U.S.C. § 1681n or attorneys' fees pursuant to 15 U.S.C. § 1681o. Notwithstanding the forgoing, the Reserving Member may seek attorneys' fees in the separate action if the Reserving Member prevails in the separate action and only if the damages award in his or her favor in the separate action exceeds the NBE described in Section 8.5(b) above. The right to sue pursuant to this Section 8.5 expires on the earlier of ninety (90) days after the expiration date of TransUnion's good faith settlement proposal, or the date the Reserving Member's claim is time-barred pursuant to 15 U.S.C. § 1681p.

    d.    <u>Withdrawal of Reservation of Rights</u>. Submission of a Claim Form concurrent with or subsequent to submission of a Reservation of Rights shall be deemed a withdrawal of the Reservation of Rights and a waiver of all claims thereunder.

8.6    <u>TransUnion's Right To Withdraw For Excessive Opt-Outs Or Reservations Of Rights</u>. If the sum of Requests for Exclusion plus Reservations of Rights exceeds the lesser of 750 individuals or one-half of one percent (0.5%) of the entire Settlement Class (the "triggering amount"), then TransUnion may, in its sole discretion, terminate the Agreement. If TransUnion exercises its right to terminate the Agreement pursuant to this paragraph, the Parties shall be

returned to the status quo ante as of July 24, 2013, for all litigation purposes, as if no settlement had been negotiated or entered into. If TransUnion declares this Agreement void, nothing in this Agreement or filed in connection with seeking entry of the Preliminary Approval Order shall be construed as an admission or concession by TransUnion of the allegations raised in the Action, or any other action, of any fault, wrongdoing or liability of any kind, nor is TransUnion estopped from challenging those allegations in further proceedings in the Action or in any other action. TransUnion's right to terminate pursuant to this Section 8.6 shall expire thirty (30) calendar days after TransUnion is sent written notice from the Settlement Administrator that the sum of Requests for Exclusion plus Reservations of Rights exceeds the triggering amount set forth in this Section.

 8.7 <u>Plaintiff's Right To Withdraw For Excessive Class Size</u>. If the Settlement Class population is determined to exceed 159,000 unique individuals and subsequent good faith negotiations over the appropriate size of the Settlement Fund are unsuccessful, Plaintiff may terminate the Agreement and the Parties shall be returned to the status quo ante as of July 24, 2013, for all litigation purposes, as if no settlement had been negotiated or entered into. If Plaintiff declares this Agreement void, nothing in this Agreement or filed in connection with seeking entry of the Preliminary Approval Order may be used or shall be construed as an admission or concession by TransUnion of any of the elements of class certification, or any of Plaintiff's other allegations, including but not limited to that any proposed litigation class is ascertainable. Plaintiff's right to terminate pursuant to this Section 8.7 shall expire thirty (30) calendar days after written notice is sent to Class Counsel from the Settlement Administrator that the Settlement Class population exceeds 159,000 unique individuals.

 8.8 <u>Objections To Settlement</u>.

  a. <u>Right To Object</u>. Any Settlement Class Member may appear at the Final Fairness Hearing to argue that the proposed Settlement should not be

approved and/or to oppose the application of Class Counsel for an award of attorneys' fees and costs and the service award to Plaintiff.

b.     <u>Deadline</u>. Any such objection must be filed with the Clerk of the United States District Court, Eastern District of Virginia, 701 East Broad Street, Richmond, Virginia 23219, not later than March 3, 2014. Copies of all objections also must be served electronically via the Court's ECF system or mailed, postmarked no later than March 3, 2014, to each of the following: Class Counsel, Leonard A. Bennett, Consumer Litigation Associates, 763 J Clyde Morris Boulevard, Suite 1A, Newport News, Virginia 23601; and TransUnion's Counsel, Paul L. Myers, Esq., Strasburger & Price, LLP, 2801 Network Blvd., Suite 600, Frisco, Texas 75034 and Stephen J. Newman, Esq., Stroock & Stroock & Lavan LLP, 2029 Century Park East, 16th Floor, Los Angeles, California 90067.

c.     <u>Content Of Objections</u>. All objections must include: (i) the objector's name, address and telephone number; (ii) a sentence stating that to the best of his or her knowledge he or she is a member of the Settlement Class; (iii) the factual basis and legal grounds for the objection to the Settlement; (iv) the identity of witnesses whom the objector may call to testify at the Final Fairness Hearing; and (v) copies of exhibits the objector may seek to offer into evidence at the Final Fairness Hearing.

## IX.   FINAL APPROVAL OF SETTLEMENT AND OTHER CONDITIONS

9.1     <u>Final Fairness Hearing</u>. On a date to be set by the Court, Plaintiff will seek entry of the Final Approval Order granting final approval of the Settlement and entering Judgment in the Action, substantially in the form attached hereto as Exhibit G. The Final Approval Order will:

a.  Provide that the Action, only for purposes of the Settlement, may be maintained as a class action on behalf of the Settlement Class;

b.  That Plaintiff fairly and adequately represents the interests of the Settlement Class;

c.  That Class Counsel adequately represents Plaintiff and the Settlement Class;

d.  That the Class Notice satisfied the requirements of Due Process, the Federal Rules of Civil Procedure and any other applicable laws;

e.  That the Settlement is fair, reasonable and adequate to the Settlement Class and that each Settlement Class Member shall be bound by the Settlement, including the releases contained in Section 6.1 above;

f.  That the Settlement represents a fair resolution of all Released Claims asserted on behalf of the Settlement Class and fully and finally resolves and releases all such Released Claims;

g.  That the Settlement should be, and is, approved;

h.  The amount of any attorneys' fees and costs awarded to Class Counsel and any service award to Plaintiff that may be paid from the Settlement Fund;

i.  Confirm the opt-outs from the Settlement;

j.  Overrule any objections;

k.  Dismiss, on the merits and with prejudice, all claims in the Action, and permanently enjoin each and every Settlement Class Member from bringing, joining or continuing to prosecute against the Released Parties any Released Claims, and enter Judgment thereon; and

l.  Retain jurisdiction of all matters relating to the modification, interpretation, administration, implementation, effectuation and enforcement of this Agreement and the Settlement.

## X.    TERMINATION OF AGREEMENT

10.1    Non-Approval Of Agreement.  This Agreement is conditioned upon final approval without material modification by the Court in the Action.  In the event that the Agreement is not so approved, the Parties shall return to the status quo ante as of July 24, 2013, as if no Agreement had been negotiated or entered into.  Moreover, the Parties shall be deemed to have preserved all of their rights or defenses as of July 24, 2013, and shall not be deemed to have waived any substantive or procedural rights of any kind that they may have as to each other or any member of the proposed Settlement Class.  In the event that the Agreement is approved without material modification by the Court, but is later reversed or vacated on appeal, each of the Parties shall have the right to withdraw from the Agreement and return to the status quo ante as of July 24, 2013, for all litigation purposes, as if no Agreement had been negotiated or entered into, and shall not be deemed to have waived any substantive or procedural rights of any kind that they may have as to each other or any member of the proposed Settlement Class.

## XI.    MISCELLANEOUS PROVISIONS

11.1    Further Assurances.  Each of the Parties shall execute all documents and perform all acts necessary and proper to effectuate the terms of this Agreement.

11.2    Dispute Resolution.  The Parties agree to meet and confer in good faith in regard to any dispute relating to the Settlement or to administration of the Settlement, including, without limitation, any disputes relating to the validity of any request for a Claim Payment and disputes relating to the suspension of a Credit Monitoring Subscription pursuant to Section 4.2 above.  Any dispute that cannot be resolved by the Parties shall be submitted to the Mediator for a written recommendation.  If the Mediator's recommendation does not resolve the dispute, either Party may seek appropriate relief from the Court, and in ruling on the dispute the Court may consider but shall not be bound by the Mediator's recommendation.  The Parties shall bear their own attorneys' fees and costs, except that the Party against whom the Mediator's recommendation is made shall pay the Mediator's costs, with respect to resolving any disputes

pursuant to this Section (except if the Court rejects the Mediator's recommendation, in which case the other Party shall pay the Mediator's costs).

      11.3    <u>Publicity And Non-Disparagement</u>. The Parties shall refrain from disparaging each other or taking any action designed to harm the public perception of each other regarding any issue related to the Settlement or the Action. The Parties, Class Counsel and TransUnion's Counsel further agree not to issue press releases or otherwise initiate communications with the media regarding this Settlement or the Action. Nothing in this Section shall be construed to preclude Class Counsel from communicating with Plaintiff or any Settlement Class Member. In particular, nothing in this Section shall be construed to preclude Class Counsel from advising Settlement Class Members on how to submit claims or how to obtain any of the other benefits of the Settlement.

      11.4    <u>Entire Agreement</u>. This Agreement constitutes the entire agreement between and among the Parties with respect to the Settlement. This Agreement supersedes all prior negotiations and agreements, including, without limitation, all proposals made by the Mediator, all term sheets exchanged at or prior to the mediation and all correspondence relating thereto. The Parties, and each of them, represent and warrant that no other party or any agent or attorney of any of the Parties has made any promise, representation or warranty whatsoever not contained in this Agreement to induce them to execute the same. The Parties, and each of them, represent and warrant that they have not executed this Agreement in reliance on any promise, representation or warranty not contained in this Agreement.

      11.5    <u>Confidentiality</u>. Any and all drafts of this Agreement and other settlement documents relating to the negotiations between the Parties will remain confidential and will not be disclosed or duplicated except as necessary to obtain preliminary and/or final Court approval. This provision will not prohibit the Parties from submitting this Agreement to the Court in order to obtain preliminary and/or final approval of the Settlement. It is agreed that, within thirty (30) days after the Effective Date, the originals and all copies of all confidential or highly confidential

documents and/or information subject to the protective order in the Action shall be destroyed or returned to the designating Parties.

      11.6    <u>Successors And Assigns</u>. The Agreement shall be binding upon, and inure to the benefit of, the heirs, successors and assigns of the Parties.

      11.7    <u>Competency Of Parties</u>. The Parties, and each of them, acknowledge, warrant, represent and agree that in executing and delivering this Agreement, they do so freely, knowingly and voluntarily, that they had an opportunity to and did discuss its terms and their implications with legal counsel, that they are fully aware of the contents and effect of the Agreement and that such execution and delivery is not the result of any fraud, duress, mistake or undue influence whatsoever.

      11.8    <u>Authority</u>. The person signing this Agreement on behalf of TransUnion warrants and represents that he or she is authorized to sign on its behalf. The Plaintiff has personally signed this Agreement.

      11.9    <u>Modification</u>. No modification of or amendment to this Agreement shall be valid unless it is in writing and signed by all Parties hereto.

      11.10   <u>Construction</u>. Each of the Parties has cooperated in the drafting and preparation of this Agreement. Hence, in any construction to be made of this Agreement, the same shall not be construed against any of the Parties. Before declaring any provision of this Agreement invalid, the Court shall first attempt to construe the provision valid to the fullest extent possible consistent with applicable precedent so as to find all provisions of this Agreement valid and enforceable. After applying this rule of construction and still finding a provision invalid, the Court shall thereupon interpret the invalid provision to the fullest extent possible to otherwise enforce the invalid provision. The invalidity of any one provision shall not render this Agreement otherwise invalid and unenforceable unless the provision found to be invalid materially affects the terms of this Agreement after application of the rules of construction set forth in this paragraph.

11.11   <u>No Waiver</u>.  The failure of any of the Parties to enforce at any time any provision of this Agreement shall not be construed to be a waiver of such provision, or any other provision, nor in any way to affect the validity of this Agreement or any part hereof, or the right of any of the Parties thereafter to enforce that provision or each and every other provision.  No waiver of any breach of this Agreement shall constitute or be deemed a waiver of any other breach.

11.12   <u>Notices/Communications</u>.  All requests, demands, claims and other communications hereunder shall:  (a) be in writing; (b) be delivered by U.S. Mail and facsimile; (c) be deemed to have been duly given on the date received; and (d) be addressed to the intended recipients as set forth below:

> <u>If to Plaintiff or the Settlement Class</u>:
> Leonard A. Bennett, Esq.
> Consumer Litigation Associates
> 763 J Clyde Morris Boulevard, Suite 1A
> Newport News, VA 23601
> Fax:  (757) 930-3662
>
> <u>If to TransUnion</u>:
> Daniel Halvorsen, Esq.
> TransUnion LLC
> 555 West Adams Street
> Chicago, IL 60661
> Fax:  (312) 466-6307
>
> and
>
> Stephen J. Newman, Esq.
> Stroock & Stroock & Lavan LLP
> 2029 Century Park East, 16th Floor
> Los Angeles, CA 90067
> Fax:  (310) 556-5959

LA 51669002v12

and

Paul L. Myers, Esq.
Strasburger & Price, LLP
2801 Network Blvd., Suite 600
Frisco, TX 75034
Fax: (469) 227-6584

Each of the Parties may change the address to which requests, demands, claims or other communications hereunder are to be delivered by giving the other Parties notice in the manner set forth herein.

11.13  Counterparts. This Agreement may be executed in one or more counterparts and, if so executed, the various counterparts shall be and constitute one instrument for all purposes and shall be binding on each of the Parties that executed it, provided, however, that none of the Parties shall be bound unless and until all Parties have executed this Agreement. For convenience, the several signature pages may be collected and annexed to one or more documents to form a complete counterpart. True and correct photocopies or electronic images (such as PDFs) of executed copies of this Agreement may be treated as originals.

[SIGNATURES APPEAR ON THE FOLLOWING PAGES]

LA 51669002v12

Agreed and accepted:

Dated: _____, 2013          By:_____
                                         Donna K. Soutter


Dated: _____, 2013          TRANSUNION LLC

                                 By_____
                                   Name:
                                   Title:


Approved as to form and content:

Dated: _____ 2013           CONSUMER LITIGATION ASSOCIATES

                                 By_____
                                         Leonard A. Bennett
                                 Attorneys for Plaintiff and the Settlement Class


Approved as to form:

Dated: _____, 2013          STROOCK & STROOCK & LAVAN LLP

                                 By_____
                                         Stephen J. Newman
                                 Attorneys for TransUnion LLC


Page 34 of 34

Agreed and accepted:

Dated: _____, 2013          By:_____
                                         Donna K. Soutter


Dated: _____, 2013          TRANSUNION LLC

                                 By _____
                                 Name: JOHN W. BLENKE
                                 Title: EXECUTIVE VICE PRESIDENT


Approved as to form and content:

Dated: _____, 2013          CONSUMER LITIGATION ASSOCIATES

                                 By_____
                                         Leonard A. Bennett
                                 Attorneys for Plaintiff and the Settlement Class


Approved as to form:

Dated: _____, 2013          STROOCK & STROOCK & LAVAN LLP

                                 By_____
                                         Stephen J. Newman
                                 Attorneys for TransUnion LLC

LA 51669002v12