## SETTLEMENT AGREEMENT

This Settlement Agreement is entered into by and between Plaintiffs Donna K. Soutter, Brenda Arnold, and Joyce Ridgley (the "Plaintiffs"), individually and as the putative representatives of the Settlement Class, and Equifax Information Services, LLC, ("Equifax") (collectively, "the Parties"), by and through their respective counsel, subject to preliminary and final approval by the Court.

## I.  RECITALS

This Agreement is made with reference to and in contemplation of the following facts and circumstances.

### 1.1  The Pending Action.

Plaintiffs claim that Equifax's procedures for obtaining information from Virginia General District Court civil court records did not adequately capture information about events subsequent to a judgment, such as the satisfaction, appeal, vacatur, or dismissal of the judgment. As a consequence, in *Donna K. Soutter v. Equifax Information Systems, LLC,*, Civil Action No. 3:10-cv-107-REP (E.D. Va.) and *Brenda Arnold v. Equifax Information Services, LLC,* Civil Action No. 3:15-cv-460-REP (E.D. Va.) (the "Action"), they allege that Equifax furnished inaccurate credit reports about certain Virginia consumers in violation of Section 1681e(b) of the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq. ("FCRA").

The litigation of *Soutter* has taken place over more than five years, with numerous motions and decisions at the United States District Court for the Eastern District of Virginia (the "Court") and two appeals to the United States Court of Appeals for the Fourth Circuit. Tens of thousands of pages of documents were discovered, reviewed and produced. Numerous depositions were taken. The case also included substantial discovery motions practice and third

DMSLIBRARY01\27694698.v1

party discovery.  While *Arnold* was more recently filed, all of the relevant issues therein were fully discovered in *Souter*.

**1.2    Equifax's Denial of Liability.**

Equifax vigorously denies all claims asserted against it in the Action, denies all allegations of wrongdoing and liability and has denied all material allegations of the Complaints. Equifax expressly and specifically contends that its past and current procedures with respect to collecting and reporting public records are and were reasonable and compliant with all laws, including, without limitation, the FCRA.  Equifax nevertheless desires to settle all claims that are asserted, or which could have been asserted, in the Action, on the terms and conditions set forth herein, solely for the purpose of avoiding the burden, expense and uncertainty of continuing litigation and for the purpose of putting to rest the controversies engendered by the Action. Nothing in this Agreement or any other document shall be construed as an admission or evidence of any violation of any federal or state statute, rule or regulation, or principle of common law or equity, or of any liability or wrongdoing whatsoever, or of the truth of any of the claims asserted or to be asserted in the Action, or of the infirmity of any defenses that have been raised or could be raised by Equifax against the Complaints or any other pleading or document filed in the Action or any other litigation related to the Action, including, without limitation, the Complaints. Further, Equifax is not estopped from opposing class certification in further proceedings in the Action if the Settlement is not finally approved, or in any other action.  Equifax does not, by entering into this agreement, waive or otherwise forego any defenses it may have to any future class actions under the FCRA and/or any other laws, including, but not limited to, defenses regarding ascertainability, typicality, commonality, predominance, superiority, and/or lack of standing.

DMSLIBRARY01\27694698.v1

**1.3** __Certification of Settlement Class for Settlement Purposes Only__.   Equifax disputes that the elements of Federal Rule of Civil Procedure 23 are satisfied for purposes of the Settlement Class, disputes that the Settlement Class would be manageable and denies that the Settlement Class would be eligible for certification in the Action.  However, solely for purposes of avoiding the expense and inconvenience of further litigation, Equifax does not oppose certification of the Settlement Class for settlement purposes only.  No statements, representations or agreements made by Equifax in connection with the Settlement may be used to establish any of the elements of class certification in this or any other case, other than for settlement purposes. Preliminary certification of a Settlement Class shall not be deemed a concession that certification of a litigation class is appropriate, nor is Equifax estopped from challenging class certification in further proceedings in the Action or in any other action, if the Settlement is not finally approved.

**1.4** __Settlement Through Mediation.__

The parties engaged in extensive, good faith, arms'-length negotiations during multiple mediation efforts supervised by Rodney Max, an experienced mediator with significant FCRA experience.  This process extended over a period of weeks after the initial in-person mediation, with numerous telephone conferences and written exchanges thereafter. The extensive negotiations and mediation sessions resulted in an agreement on the principal terms of a settlement.  It is the desire and intention of the Parties by entering into this Agreement to effectuate a full, complete and final settlement and resolution of all existing disputes and claims that relate to or arise out of the facts and claims alleged in the Action.

**1.5** __Class Counsel's Recommendation.__

After the extensive litigation and discovery in the Action, Class Counsel has concluded that a settlement with Equifax on the terms set forth herein is fair, reasonable, adequate and in

the best interests of the Settlement Class based upon their investigation and discovery, and taking into account the sharply contested issues involved, the uncertainty and cost of further prosecution of the Action, and the substantial benefits to be received by the Settlement Class pursuant to this Agreement.

NOW, THEREFORE, in consideration of the promises and agreements set forth herein, it is hereby STIPULATED AND AGREED, subject to the Court's approval as required by Federal Rule of Civil Procedure 23, that each and every Released Claim, as described in Section 2.19 below, shall be fully and finally settled and compromised and dismissed with prejudice, and shall be fully discharged and released, upon and subject to the following terms and conditions:

## II.    <u>DEFINITIONS</u>

2.1    **"Activation Code"** means a discrete and unique alphanumeric code for each individual Settlement Class Member who does not elect to receive a cash alternative for use by the class member to activate a Credit Monitoring Subscription**.**

2.2    **"Agreement"** and **"Settlement"** mean this Settlement Agreement, including all exhibits hereto.

2.3    **"Approval Notice"** means the notice notifying Settlement Class Members that the Settlement has received Final Approval and enclosing the Activation Codes.

2.4    **"Cash Fund"** means the amounts paid as described in Section 3.9 below.

2.5    **"Cash Fund Payment"** means a payment from the Settlement Fund to Settlement Class Members who submit a Valid Claim as set forth in Section 3.10 below.

2.6    **"Cash Fund Settlement Class Member"** means a member of the Settlement Class who verifies, under penalty of perjury and subject to reasonable verification by the Parties, that Equifax issued a credit report about him or her that included an open Virginia General

District Court judgment as owing when it was at that time vacated, dismissed, or appealed, or who has made a written demand or filed suit against Equifax based upon the allegation that it furnished a credit report containing an inaccurately reported Virginia General District Court judgment.

      **2.7**    **"Claim Form"** means the claim form pursuant to which Settlement Class Members can (i) elect not to receive a Credit Monitoring Subscription and instead to receive a $180 cash payment and (ii) submit a claim for pro rata distributions from the Cash Fund, a proposed form of which is attached hereto as Exhibit C.

      **2.8**    **"Class Counsel"** means Leonard A. Bennett, Matthew J. Erausquin, Susan M. Rotkis, and Casey S. Nash.

      **2.9**    **"Class Notice"** means the proposed notice to be mailed to the members of the Settlement Class, a proposed form of which is attached hereto as Exhibit A.

      **2.10**    The "**Complaints**" means the operative Second Amended Class Action Complaint filed in *Soutter* on August 14, 2014 and the Complaint filed in *Arnold* on August 6, 2015.

      **2.11**    **"Credit Monitoring Subscription"** means a subscription to Equifax Credit Watch Gold with Credit Scores (or an equivalent successor product, if Equifax Credit Watch Gold with Credit Scores is no longer available) for a period of 4 years following entry of the Final Approval Order (retail value of $14.95/month, totaling $ 717.60 in total retail value).

      **2.12**    **"Effective Date"** means fifteen (15) business days after the Judgment has become Final.

      **2.13**    **"File"** shall have the same meaning as set forth in 15 U.S.C. § 1681a(g).

DMSLIBRARY01\27694698.v1

**2.14** **"Final"** means the date the Judgment becomes final for all purposes, except as set forth in Section 9 below, because (i) no objections have been made to the Settlement and no party has sought to intervene, or (ii) if any objection or motion to intervene was made, no appeal has been filed and thirty (30) days have lapsed since entry of the Judgment, and if a timely appeal has been filed, the appeal is finally resolved, with no possibility of further appellate or other review, resulting in final judicial approval of the Settlement.

**2.15** **"Final Approval Order"** means the order to be entered by the Court in the Action finally approving the Settlement and resolving all issues between the Parties, as provided for in Section 8.1 below, a proposed form of which is attached hereto as Exhibit G.

**2.16** **"Judgment"** means a final judgment and order of dismissal with prejudice to be entered by the Court concurrently with the Final Approval Order.

**2.17** **"Opt-Out Form"** and **"Request for Exclusion"** means a document substantially in the form attached hereto as Exhibit D.

**2.18** **"Preliminary Approval Order"** means an order to be entered by the Court in the Action, as provided for in Section 7.1 below, substantially in the form attached hereto as Exhibit F.

**2.19** **"Released Claim"** or **"Released Claims"** means any and all legal or equitable claims pursuant to the FCRA and comparable state and federal laws, that were alleged (or that could have been alleged based on the same facts and circumstances) in the Action, the Complaints or any other complaints, pleadings or other papers filed or to be filed in the Action because of  Equifax's reporting of a Virginia General District Court judgment in an Equifax credit report or consumer report, or a credit report or a consumer report created from data

provided by Equifax, wherein such data inaccurately stated or suggested that such judgment was valid and had not been satisfied, dismissed, vacated, or appealed.

2.20    **"Released Parties"** means Equifax and its present or former officers, directors, employees, attorneys, agents, administrators, successors, assigns, subsidiaries, partners, corporate affiliates, sister corporations, parents, divisions, and predecessors.

2.21    **"Reservation of Actual Damages Form"** means a document substantially in the form attached hereto as Exhibit E.

2.22    "**Settlement Administrator**" means such administrator as may be appointed by the Court in the Preliminary Approval Order upon Plaintiffs' motion, or any successor or replacement administrator as the Court may appoint.

2.23    **"Settlement Class,"** solely for purposes of this Settlement, means, includes and refers to all consumers in the United States whose Equifax File contained a Virginia General District Court civil judgment, between January 1, 2003 and the date of preliminary approval of the Settlement, that was reporting as an open judgment, if at least 31 days prior to delivery of the consumer report, and on the date of delivery of the consumer report, such judgment had been satisfied, vacated, dismissed, or appealed as shown by the VSC Master File.   The Settlement Class does not include Defendant's officers, directors, and employees; Defendant's attorneys; Plaintiffs' attorneys; any Judge overseeing or considering the approval of the Settlement together with members of their immediate family and any judicial staff; anyone who was a named plaintiff (as opposed to a putative class member) in a lawsuit pending against Defendant as of the date of the order preliminarily approving this Settlement Agreement; and all persons who timely and validly request exclusion from the Class.

DMSLIBRARY01\27694698.v1

**2.24** **"Settlement Class Member"** means, includes and refers to any individual within the Settlement Class who has not validly opted out of the Settlement pursuant to Section 7.4 below.

**2.25** **"VSC Master File"** means the master file of the Virginia Supreme Court that reflects judgments and the status thereof entered in the Virginia General District Court, as delivered to Plaintiff in August 2015.

### III.   SETTLEMENT CONSIDERATION

**3.1** **Injunctive Relief**.  Equifax will remove and/or suppress the reporting of all Virginia General District Court judgments from the Files of all consumers.   Equifax will implement this change for a period of no less than five (5) years commencing no later than ninety (90) days after Final Approval.   This term will be stated within the Final Approval Order.

**3.2** **Review of VSC Master File**.  Class Counsel represents that it has obtained and delivered the VSC Master File to Equifax.  Equifax will, at its own expense, make a good faith effort to: (a) prepare a list of Settlement Class Members as set forth in Section 6.3, below; and (b) confirm that the file data for all Virginia General District Court judgments used to prepare consumer reports has been deleted. This term will be stated within the Final Approval Order.

**3.3** **Credit Monitoring Subscriptions**.  All Settlement Class Members will receive a Credit Monitoring Subscription, unless a Settlement Class Member elects to receive instead a cash amount equal to the face value of the Credit Monitoring Subscription for 12 months ($180.00).

**3.4** Equifax will provide the Settlement Administrator with a sufficient number of unique Activation Codes, which shall be distributed to the Settlement Class as described in Section 6.9 below.   Settlement Class Members will not be required to supply a credit card or

other method of payment to activate the Credit Monitoring Subscription and shall have two years from the postmark date of the Approval Notice to activate the Credit Monitoring Subscription. To activate a Credit Monitoring Subscription, the Settlement Class Member must provide Equifax with a valid Activation Code, a valid electronic mail address, a valid mailing address and such other personal identifying information as may ordinarily be required by Equifax to verify the identity of the Settlement Class Member for the delivery of this service.

      3.5     If Equifax reasonably believes that a Credit Monitoring Subscription is being used to engage in identity theft, invasion of privacy, violations of the federal Credit Repair Organizations Act, or fraud, including, without limitation, the kind of activity described under the "Credit Repair Scams" and "Identity Theft" sections of the Federal Trade Commission's website located at www.ftc.gov/bcp/edu/pubs/consumer/credit/cre03.shtm (or a similar Federal Trade Commission website or other publication), Equifax may initially unilaterally decline to activate or may temporarily suspend the Credit Monitoring Subscription pending its investigation of the suspected activity.  Equifax will give notice to Class Counsel of such action within five (5) business days thereof along with the reason(s) for suspension.

      3.6     Equifax will provide Settlement Class Members, in the Class Notice and the Final Approval Notice, contact information that a Settlement Class Member may use to address any failure of an Activation Code.

      3.7     **Cash Payment in Lieu of Credit Monitoring Subscription**. Settlement Class Members may elect to receive a cash payment in the amount of $180.00, equal to the cost of one year of the Credit Monitoring Subscription.  Settlement Class Members must notify the Settlement Administrator of this election by so indicating on the Claim Form, which must be returned no later than thirty (30) days following the postmark date of their Approval Notice.

DMSLIBRARY01\27694698.v1

Settlement Class Members who elect to submit a claim for this cash payment will forfeit any right to the Credit Monitoring Subscription described in Section 3.3 above.

3.8     Forty-five (45) days after the date of the last postmarked Approval Notice, the Settlement Administrator shall provide to Class Counsel and to Equifax by its counsel a list of the Settlement Class Members who provided a timely election to receive the cash payment in lieu of the Credit Monitoring Subscription.  Within fourteen (14) days after receiving this list, Equifax will pay a cash amount equal to the aggregate amount of all such elections into an escrow account or equivalent account reasonably approved by Equifax at a mutually agreed federally-insured depository bank.  This fund shall not be subject to reverter or escheat.  The Settlement Administrator shall mail such payments to electing class members within ten (10) days thereafter.  Such payments shall be made separately from any otherwise made to Cash Fund Settlement Class members pursuant to Section 3.10.

3.9     **The Cash Fund**.  Within ten (10) days after the Effective Date, Equifax will pay a cash amount of three million dollars ($3,000,000) into an escrow account or equivalent account reasonably approved by Equifax at a mutually agreed federally-insured depository bank.  This fund shall not be subject to reverter or escheat. The Cash Fund Class Members that make a valid claim will receive pro rata payments from the fund.  There will be no cap on payments from the Cash Fund, except that any actual damages recovered by a Settlement Class Member who recovers actual damages pursuant to a timely Reservation of Actual Damages will be reduced by the amount of any pro rata distribution the Settlement Class Member received from the Cash Fund.

3.10    The Settlement Administrator shall accept a claim as valid if the Cash Fund Class Member submits a Claim Form that substantially complies with the following

requirements: (i) it is postmarked or received by the Settlement Administrator no later than the deadline set forth in the Class Notice, which will be approximately thirty (30) days following the postmark date of the Approval Notice; (ii) it is sent to the address specified in the Class Notice; (iii) it includes the Cash Fund Settlement Class Member's verification, under penalty of perjury, that (a.) he or she was the subject of a Virginia General District Court judgment that had been vacated, dismissed, or appealed, and he or she believes that they were the subject of an Equifax credit report that inaccurately reported that judgment as outstanding; and/or (b.) that he or she has made a written demand or filed suit against Equifax based upon the allegation that it furnished a credit report containing an inaccurately reported Virginia General District Court judgment; (iv) it is personally signed by the Settlement Class Member; and (v) the Parties reasonably verify that the Settlement Class Member is eligible for a payment from the Cash Fund because these representations were correct.   If the Settlement Administrator reasonably determines that the Class Member's statement is untrue or unverifiable, the Claim Form may be deemed invalid, subject to the notice to the class member and the right to challenge that decision as provided in Section 3.12.  Class Counsel and Equifax shall promptly act to determine if the Claimant's challenge is correct.

**3.11**    The Settlement Administrator shall notify, in a prompt fashion, any claimant whose Cash Fund claim has been rejected, setting forth the reasons therefore. The Settlement Administrator shall timely provide copies of all rejection notices to Class Counsel and to Equifax's Counsel.  A Claimant shall have an additional twenty-one (21) days after the date this notice is mailed to correct and resubmit the defective claim.

**3.12**    The Settlement Administrator shall have the authority to determine whether a claim made by any Cash Fund Settlement Class Member is a valid claim.  The Settlement

Administrator's determination in this regard shall be final and non-appealable unless Equifax's Counsel or Class Counsel disagree or the class member wishes to further appeal such determination, in which case the determination shall be made by United States District Court Magistrate Judge David J. Novak.  Any Cash Fund Settlement Class Member whose claim is determined to be invalid shall in all other respects be bound by the terms of this Settlement Agreement and by the Final Approval Order entered in the Action.   The Settlement Administrator shall promptly notify such Settlement Class Member that his or her claim has been denied and why it has been denied.

3.13    Claims may be filed by deceased Cash Fund Claims Settlement Class Members through authorized representatives of their estates if appropriate documentation is provided.  Any claim paid to a deceased consumer shall be made payable to the estate of the deceased Cash Fund Settlement Class Member.

3.14    No person shall have any claim against Defendants, Plaintiffs, the Settlement Class, Class Counsel, Equifax's Counsel, or the Settlement Administrator based on any claims determinations made in accordance with this Settlement Agreement.

3.15    The Settlement Administrator shall mail Cash Fund payments to Cash Fund Class Members who have submitted valid claims within fourteen (14) days after the final date for acceptance of such claims.   Such payments shall be made separately from any payments otherwise made to class members electing a cash payment in lieu of the Credit Monitoring Subscription.

3.16    **Maintenance and Distribution of the Cash Fund.**    The Settlement Administrator shall maintain the Cash Fund until all money within the fund is distributed

pursuant to this Agreement.   The Settlement Administrator shall distribute the Cash Fund to Settlement Class Members as set forth in Section 3.15.

3.17   **Cash Fund Tax Status**.  The Parties agree to treat the Cash Fund as being at all times a "qualified settlement fund" within the meaning of Treas. Reg. § 1.468B-1.  In addition, the Settlement Administrator shall timely make such elections as necessary or advisable to carry out the provisions of this section, including the "relation back election" (as defined in Treas. Reg. § 1.468B-1) back to the earliest permitted date.  Such elections shall be made in compliance with the procedures and requirements contained in such regulations.  It shall be the responsibility of the Settlement Administrator to timely and properly prepare and deliver the necessary documentation for signature by all necessary parties, and thereafter to cause the appropriate filing to occur.

3.18   For the purpose of Treasury Regulation § 1.468B of the Internal Revenue Code of 1986, as amended, and the regulations promulgated thereunder, the "administrator" shall be the Settlement Administrator.   The Settlement Administrator shall timely and properly file all informational and other tax returns necessary or advisable with respect to the Settlement Fund (including, without limitation, the returns described in Treas. Reg. § 1.468B-2(k)).  Such returns shall be consistent with this Section and in all events shall reflect that all Taxes (including any estimated Taxes, interest or penalties) on the income earned by the Cash Fund shall be paid out of the Cash Fund.

3.19   All (a) taxes (including any estimated taxes, interest or penalties) arising with respect to the income earned by the Settlement Fund, including any taxes or tax detriments that may be imposed upon the Released Parties with respect to any income earned by the Cash Fund for any period during which the Cash Fund does not qualify as a "qualified settlement fund" for

federal or state income tax purposes ("Taxes"), and (b) expenses and costs incurred in connection with the operation and implementation of this Section (including, without limitation, expenses of tax attorneys and/or accountants and mailing and distribution costs and expenses relating to filing (or failing to file) the returns ("Tax Expenses"), shall be paid out of the Settlement Fund; in no event shall the Released Parties have any responsibility for or liability with respect to the Taxes or the Tax Expenses.  Taxes and Tax Expenses shall be timely paid by the Settlement Administrator out of the Cash Fund without prior order from the Court, and the Settlement Administrator shall be obligated (notwithstanding anything herein to the contrary) to withhold from distribution any funds necessary to pay such amounts, including the establishment of adequate reserves for any Taxes and Tax Expenses (as well as any amounts that may be required to be withheld under Treas. Reg. § 1.468B-2(l)); the Released Parties are not responsible therefor nor shall they have any liability with respect thereto.  The Parties hereto agree to cooperate with the Settlement Administrator, each other, and their tax attorneys and accountants to the extent reasonably necessary to carry out the provisions of this Section.

## IV.     ATTORNEYS' FEES AND COSTS AND SERVICE AWARDS TO PLAINTIFFS

**4.1**     After reaching agreement on all other material terms of settlement, the Parties negotiated an agreed recovery of attorneys' fees above and exclusive of all recoveries by the Settlement Class.  Class Counsel intends to apply to the Court for attorney's fees and costs, and a service award for the Plaintiffs to be paid by Equifax, separate and apart from the Settlement Fund.

**4.2**     Equifax has agreed that a reasonable amount for attorneys' fees and litigation costs will be three million seven hundred and twenty-five thousand dollars ($3,725,000.00), to include all trial counsel and all appellate counsel, and all costs of litigation of any kind.  Equifax

will not oppose and will agree to pay attorneys' fees and litigation costs, so long as the petition for fees and costs does not exceed this amount.

     **4.3**    After reaching agreement on all other material terms of settlement, the Parties also negotiated service awards that Equifax agrees to pay, for Plaintiff Soutter an amount that does not exceed twenty thousand dollars ($20,000.00), to Plaintiffs Arnold and Ridgley amounts that do not exceed two thousand five hundred dollars ($2,500.00) per individual.  Equifax will not oppose and will agree to pay service awards to Plaintiffs, so long as the petition for such awards does not exceed these amounts.

## V.    RELEASE AND DISMISSAL

     **5.1**    **Release of Released Claims**.  As of the Effective Date of the Settlement, the Plaintiffs and each Settlement Class Member, their respective heirs, executors, administrators, representatives, agents, attorneys, partners, successors, predecessors-in-interest, assigns and all persons acting for or on their behalf, shall be deemed to have fully, finally and forever released the Released Parties from all Released Claims described in Section 2.19 above.  Without limiting the foregoing, the Released Claims released pursuant to this Settlement specifically extend even as to all claims and potential claims that Settlement Class Members do not know or suspect to exist in their favor as of or prior to the Effective Date.  The Parties, and all Settlement Class Members, agree that this paragraph constitutes a waiver of any statutory provision, right or benefit of any state or territory of the United States or any jurisdiction, and any principle of common law at law or in equity that prohibits the waiver of unknown claims.  Plaintiffs and each Settlement Class Member understand and acknowledge the significance of this waiver relating to limitations on releases.  In connection with such waiver and relinquishment, Plaintiffs and each Settlement Class Member acknowledge that they are aware that they may hereafter discover facts

DMSLIBRARY01\27694698.v1

in addition to, or different from, those facts which they now know or believe to be true with respect to the subject matter of the Settlement, but that they release fully, finally and forever all Released Claims, and in furtherance of such intention, the release will remain in effect notwithstanding the discovery or existence of any such additional or different facts.  The Parties acknowledge (and all Settlement Class Members by operation of law shall be deemed to have acknowledged) that the release of unknown Released Claims as set forth herein was separately bargained for and was a key element of the Settlement.

      **5.2**    **Effect of Release.**   Each and every term of the Release described in the immediately preceding paragraph shall be binding upon the Releasing Parties, regardless of whether the Settlement Class Member submitted a claim or received any payment or credit pursuant to the Settlement, and will inure to the benefit of the Released Parties and any of their successors and representatives, which persons and entities are intended to be beneficiaries of this section.

      **5.3**    **Dismissal.**  Upon entry of the Final Approval Order, Plaintiffs shall take all actions necessary to dismiss with prejudice all litigation by Plaintiffs against Equifax in any court, including, without limitation, the Action.

      **5.4**    **No Solicitation**. Subject to Court approval and in accordance with any applicable rules of professional conduct, Plaintiff's Counsel represents and warrants that it will not solicit, directly or indirectly, any person for the prosecution of claims relating to Equifax's reporting of judgments after the date of settlement.

## VI.   NOTICE AND SETTLEMENT ADMINISTRATION

      **6.1**    **Costs of Notice and Administration**.  The costs of Class Notice and Administration shall be paid by Equifax, separate and apart from the Settlement Fund.

DMSLIBRARY01\27694698.v1

6.2	**Settlement Administrator Can be Contacted by Mail or Telephone**.   The Settlement Administrator shall also establish a mailing address and toll-free telephone number that individuals within the Settlement Class may write or call to obtain information about the Settlement, request mailing of the Class Notice, Claim Form, Opt-Out Form or a Reservation of Actual Damages Form.  Every individual in the Settlement Class shall be permitted to request such documents by physical mail or by telephone.

6.3	**Settlement Class Data to be Provided to Settlement Administrator**.   Within fifteen (15) business days after entry of the Preliminary Approval Order, Equifax will provide the name and current address for each Settlement Class Member to the Settlement Administrator. The Settlement Administrator shall run these addresses once through the National Change of Address database before mailing.

6.4	**Class Notice**.  For purposes of providing court-approved class notices and establishing that the best practicable notice has been given, class notice will be accomplished in accordance with the following provisions. Within the forty-five (45) days after Preliminary Approval, the Settlement Administrator will send the Class Notice by First Class U.S. mail, postage prepaid, to each Settlement Class Member identified on the class list.

6.5	For any mailed notice that is returned to the Settlement Administrator within 30 days of the postmark of the original notice and with a forwarding address, the Settlement Administrator shall re-mail the notice to the provided forwarding address within 5 business days of receipt.

6.6	**Internet Notice**. The Settlement Administrator must establish an Internet website for purposes of facilitating notice to, and communicating with, Settlement Class Members (the "Settlement Website"). The Settlement Administrator must make the Settlement Website

DMSLIBRARY01\27694698.v1

accessible no later than three (3) business days before the date on which the Class Notice is sent. The Settlement Administrator must set forth the following information on the Settlement Website immediately: (i) the full text of the Settlement Agreement; (ii) the Class Notice; (iii) the Opt-out Form, in PDF Format; (iv) the Claim Form, in PDF format; and (v) the Reservation of Actual Damages Form, in PDF format.; (vi) the Preliminary Approval Order; (vii) other documents from the Litigation that the Parties jointly determine to be appropriate; (viii) a mutually agreed section of frequently asked questions; and (ix) contact information for Settlement Class Counsel and the Settlement Administrator.  The Settlement Administrator must set forth the following information on the Settlement Website within three (3) days after the Court enters the Final Approval Order:  (i) the Final Approval Order; and (ii) the Approval Notice.

  **6.7**  The Settlement Website must also provide a conspicuous mechanism for any Settlement Class Member to provide an e-mail address to the Settlement Administrator for further communications, including for use to send the Approval Notice, whether or not that Settlement Class Member also submits any other forms.  The Settlement Administrator must not include any other material language on the Settlement Website in addition to the above-listed documents, except with written approval of the Parties.  Not later than ten (10) days before the Final Fairness Hearing, the Settlement Administrator must file proof of the establishment and maintenance of the Settlement Website with the Court. Approximately 180 days after the Effective Date, the Settlement Administrator must remove all information from the Settlement Website other than contact information for Class Counsel, the Class Notice, the Settlement Agreement, the Final Approval Order and information regarding activation the Credit

Monitoring Subscription.   The Settlement Administrator must disestablish the Settlement Website approximately two years and forty-five days after the Effective Date.

6.8     **Telephone Assistance Program.** The Settlement Administrator must establish a toll-free telephone number to answer questions from Settlement Class Members. The Settlement Administrator must activate the toll-free number no later than 3 business days before the date on which the Class Notice is sent. The Settlement Administrator must provide these services in English and Spanish.  Not later than ten (10) days before the Final Fairness Hearing, the Settlement Administrator must file proof of the establishment and maintenance of the Telephone Assistance Program with the Court.  The Settlement Administrator must deactivate the toll-free number within 180 days after the Effective Date.

6.9     **Approval Notice**. The Settlement Administrator shall also mail the Settlement Class Members the Approval Notice in substantially in the form attached hereto as Exhibit B, as approved by the Court.  The Approval Notice shall be mailed to the Settlement Class no later than 15 days after the Court enters the Final Approval Order.

6.10    No later than 10 days after the Court enters the Final Approval Order, Equifax will provide the Settlement Administrator one Activation Code for each individual Settlement Class Member for use by the class member to activate a Credit Monitoring Subscription.  The Settlement Administrator shall include the unique Activation Code within the Approval Notice sent to the corresponding class member.  The Approval Notice shall also advise the class member that the Activation Code will expire within two years of the Approval Notice mailing.

6.11    The Approval Notice again advise Settlement Class Members of their rights to submit a Cash Fund claim, to elect to receive the cash payment in lieu of the Credit Monitoring Subscription, and to reserve an actual damages claim.

DMSLIBRARY01\27694698.v1

**6.12** **CAFA Notice**.  All relevant approval and court filing dates will be scheduled to ensure compliance with the Class Action Fairness Act, 28 U.S.C. § 1715(b). The Settlement Administrator will be responsible for printing and sending CAFA Notice.  The expense of printing and sending the CAFA Notice will not be charged against the Settlement Fund.

## VII.   PRELIMINARY APPROVAL

**7.1**   **Preliminary Approval Order**.  Plaintiffs will seek the Court's approval of this Agreement by filing an appropriate Motion for Preliminary Approval and seeking entry of a Preliminary Approval Order substantially in the form attached hereto as Exhibit F.  The Parties shall cooperate in presenting such papers to the Court as may be necessary to effectuate the intent and purposes of this Agreement.

**7.2**   **Stay Following Preliminary Approval Order**.  Upon entry of the Preliminary Approval Order, the Parties shall promptly cooperate in filing such papers as may be necessary to obtain a stay of the proceedings in the Action, except as may be necessary to implement the Settlement or comply with the terms of the Agreement.

**7.3**   **Denial Of Preliminary Approval Order**.  If the Court fails for any reason to enter the Preliminary Approval Order substantially in the form attached hereto as Exhibit F or to certify the Settlement Class for settlement purposes consistent with the provisions hereof, and if all Parties do not agree jointly to appeal such ruling, this Agreement shall terminate and be of no further force or effect without any further action by the Parties.  In the event that the Court fails to enter the Preliminary Approval Order substantially in the form attached hereto as Exhibit F, the Parties shall return to the status quo ante as of July 6, 2015, as if no Agreement had been negotiated or entered into.  Moreover, the Parties shall be deemed to have preserved all of their rights or defenses as of July 6, 2015, and shall not be deemed to have waived any substantive or

procedural rights of any kind that they may have as to each other or any individual within the proposed Settlement Class.  In such an event, nothing in this Agreement or filed in connection with seeking entry of the Preliminary Approval Order shall be construed as an admission or concession by Equifax of the allegations raised in the Action, or any other action, of any fault, wrongdoing or liability of any kind, nor is Equifax estopped from challenging those allegations in further proceedings in the Action or in any other action.

       **7.4**    **Opt-Out/Requests For Exclusion From Settlement**.  All Settlement Class Members shall be given the opportunity to opt out of the Settlement Class by submitting a Request for Exclusion.  All Requests for Exclusion must be in writing, sent to the Settlement Administrator and postmarked no later than thirty (30) days before the Final Approval Hearing. To be valid, a Request for Exclusion must be personally signed and must include:  (i) name, address and telephone number; (ii) and a statement substantially to the effect that:  "I request to be excluded from the class settlement in Soutter v. Equifax Information Services, LLC, United States District Court, Eastern District of Virginia, Case No. 3:10-cv-00107-REP."  A Request for Exclusion submitted on the Opt-Out Form shall be presumed valid.  Notwithstanding the foregoing, no person within the Settlement Class, or any person acting on behalf of or in concert or participation with that person, may submit a Request for Exclusion of any other person within the Settlement Class.  Requests for Exclusion submitted en masse will be invalid.

       **7.5**    The Settlement Administrator shall provide copies of the Requests for Exclusion to the Parties no later than ten (10) days before the Final Approval Hearing.  By that same date, the Settlement Administrator shall provide to Class Counsel, who shall file it with the Court, a declaration verifying that Class Notice has been provided to the Settlement Class as set forth herein and listing all of the valid opt-outs received.

DMSLIBRARY01\27694698.v1

7.6     All individuals within the Settlement Class who timely submit a valid Request for Exclusion will exclude themselves from the Settlement Class and will preserve their ability to independently pursue, at their own expense, any individual, non-class, non-representative claims he or she claims to have against Equifax.  Any such individual within the Settlement Class who so opts out will not be bound by further orders or judgments in the Action as it relates to the Settlement Class, and will preserve their ability to independently pursue, at their own expense, any individual, non-class, non-representative claims for damages they may have against Equifax. In the event of ambiguity as to whether someone has requested to be excluded (such as through submission of both an Opt-Out Form and a Claim Form), the Settlement Class Member shall be deemed <u>not</u> to have requested exclusion pursuant to this Section 7.4.

7.7     <u>**Reservation of Right to Seek Actual Damages**</u>.  Any consumers who would otherwise be a Settlement Class Member may reserve a claim for actual damages.  A Settlement Class Member who wishes to reserve an actual damage claim must notify the Settlement Administrator that he or she reserves his or her actual damages claim within 30 days of the postmark date on the Approval Notice.  All Reservation of Actual Damages must be in writing, sent to the Settlement Administrator and postmarked no later than thirty (30) days after the date his or her Approval Notice is postmarked.  To be valid, a Reservation of Actual Damages must be personally signed and must include:  (i) name, address and telephone number; and (ii) a statement substantially to the effect that:  "I reserve my actual damage claim in <u>Soutter v. Equifax Information Services, LLC</u>, United States District Court, Eastern District of Virginia, Case No. 3:10-cv-00107-REP." A Reservation of Actual Damages submitted on the Reservation of Actual Damages Form shall be presumed valid.  A settlement class member who reserves an actual damages claim may not file a lawsuit against Equifax until he or she first provides Equifax

with a reasonable opportunity to resolve his or her claim for actual damages through the following dispute resolution process:  Before filing an individual lawsuit, that settlement class member must first make a demand in writing to Equifax's counsel.  Within 30 days of receiving that demand, Equifax may make a written offer to resolve the settlement class member's claim or other response.  The settlement class member may either accept or reject the offer within 30 days of the date of Equifax's offer.  At the expiration of that 30-day period, the class member may bring any action otherwise available.  Any applicable statute of limitations for that settlement class member's claim that had not yet expired on the date the class member sends his or her demand shall be tolled from that date and through the expiration of the 30-day period during which he or she can accept or reject Equifax's offer.

7.8     Settlement Class Members who reserve their actual damages claim may not recover outside the Settlement, under any circumstances, any damages other than actual damages.  Reserving class members still expressly release, waive, and agree not to pursue any additional damages or penalties, including (but not limited to) punitive damages and statutory damages.

7.9     Any amount of money an Actual Damages Settlement Class member recovers from the Cash Fund may setoff Equifax's obligation under any actual damages judgment later obtained as a result of a Settlement Class Member's prosecution of a claim he or she reserved by a Reservation of Actual Damages.

7.10    **Objections from Settlement Class Members**. Any Settlement Class Member who has not previously opted-out in accordance with the terms above may appear at the Final Fairness Hearing to argue that the proposed Settlement should not be approved and/or to oppose the application of Class Counsel for an award of attorneys' fees and costs and the service award

to Plaintiffs.   However, no individual within the Settlement Class shall be heard, and no objection may be considered, unless the individual files the objection in writing with the Court no later than thirty (30) days before the Final Fairness Hearing and serves the written objection so that it is received by Counsel and the Settlement Administrator no later than thirty (30) days before the Final Fairness Hearing.

7.11    Objections to the Class Counsel's attorneys' fees or the requested service awards may be supplemented up to seven (7) days after the filing of a motion for such fees or awards to address additional information or materials in the motion.

7.12    All objections must include:   (i) the objector's name, address and telephone number; (ii) a sentence stating that to the best of his or her knowledge he or she is a member of the Settlement Class; (iii) the factual basis and legal grounds for the objection to the Settlement; (iv) the identity of witnesses whom the objector may call to testify at the Final Fairness Hearing; and (v) copies of exhibits the objector may seek to offer into evidence at the Final Fairness Hearing.

7.13    The written objection must indicate whether the class member and/or his lawyer(s) intend to appear at the Final Fairness Hearing. Any lawyer who intends to appear at the Final Fairness Hearing must also enter a written Notice of Appearance of Counsel with the Clerk of the Court no later than thirty (30) days before the Final Fairness Hearing and shall include the full style and case number of each previous class action case in which that counsel has represented an objector.

7.14    Any such objection must be filed with the Clerk of the United States District Court, Eastern District of Virginia, 701 East Broad Street,  Richmond, Virginia 23219, not later than _____.   Copies of all objections also must be served electronically via the

Court's ECF system or mailed, postmarked no later than _____, to each of the following:  Class Counsel, Leonard A. Bennett, Consumer Litigation Associates, 763 J Clyde Morris Boulevard, Suite 1A, Newport News, Virginia 23601; and Equifax's Counsel, Phyllis B. Sumner, Esq., King & Spalding, LLP, 1180 Peachtree Street, Atlanta, GA 30309.

## VIII.   FINAL APPROVAL OF SETTLEMENT AND OTHER CONDITIONS

**8.1     Final Fairness Hearing**.  On a date to be set by the Court, Plaintiff will seek entry of the Final Approval Order granting final approval of the Settlement and entering Judgment in the Action, substantially in the form attached hereto as Exhibit G.   The Final Approval Order will (i.) provide that the Action, only for purposes of the Settlement, may be maintained as a class action on behalf of the Settlement Class; (ii.) provide that Plaintiffs fairly and adequately represent the interests of the Settlement Class; (iii.) provide that Class Counsel adequately represents Plaintiffs and the Settlement Class; (iv.) provide that the Class Notice satisfied the requirements of Due Process, the Federal Rules of Civil Procedure and any other applicable laws; (v.) provide that the Settlement is fair, reasonable and adequate to the Settlement Class and that each Settlement Class Member shall be bound by the Settlement, including the releases contained in Section 5 above; (vi.) provide that the Settlement represents a fair resolution of all Released Claims asserted on behalf of the Settlement Class and fully and finally resolves and releases all such Released Claims; (vii.) provide that the Settlement should be, and is, approved; (viii.) determine the amount of any attorneys' fees and costs awarded to Class Counsel and any service awards to Plaintiffs; (ix.) confirm the opt-outs from the Settlement; (x.) dispose of any objections; (xi.) dismiss, on the merits and with prejudice, all claims in the Action, and permanently enjoin each and every Settlement Class Member from bringing, joining or continuing to prosecute against the Released Parties any Released Claims,

and enter Judgment thereon; (xii.) order the Injunctive Relief; and (xiii.) retain jurisdiction of all matters relating to the modification, interpretation, administration, implementation, effectuation and enforcement of this Agreement and the Settlement.

## IX.    TERMINATION OF AGREEMENT

**9.1    Non-Approval of Agreement**. This Agreement is conditioned upon final approval without material modification by the Court in the Action.    In the event that the Agreement is not so approved, the Parties shall return to the status quo ante as of July 6, 2015, as if no Agreement had been negotiated or entered into.    Moreover, the Parties shall be deemed to have preserved all of their rights or defenses as of July 6, 2015, and shall not be deemed to have waived any substantive or procedural rights of any kind that they may have as to each other or any member of the proposed Settlement Class.    In the event that the Agreement is approved without material modification by the Court, but is later reversed or vacated on appeal, each of the Parties shall have the right to withdraw from the Agreement and return to the status quo ante as of July 6, 2015, for all litigation purposes, as if no Agreement had been negotiated or entered into, and shall not be deemed to have waived any substantive or procedural rights of any kind that they may have as to each other or any member of the proposed Settlement Class

**9.2    Equifax's Rights to Terminate Agreement**. Equifax's willingness to settle this Litigation on a class-action basis and to agree to the certification of the Settlement Class is dependent upon achieving finality in this Litigation, and the desire to avoid the expense of this and other litigation. Consequently, Equifax shall have the unilateral right in its sole discretion to individually terminate this Settlement Agreement, declare it null and void, and have no further obligations under this Settlement Agreement to the Plaintiffs, Settlement Class Members, or Class Counsel if any of the following conditions subsequently occurs: (1) the Court fails or

declines to grant Preliminary Approval pursuant to the terms of the Preliminary Approval Order; (2) more than 5% of the Settlement Class Members request to opt-out of the Settlement pursuant to Section 7.4; (3) the Court materially modifies the terms of the Release or the Released Parties; (4) the Effective Date does not occur for any reason, including the entry of an order by any court that would require either material modification or termination of the Settlement Agreement or the Final Approval Order.

       **9.3**    **<u>Plaintiffs' Rights to Terminate Agreement</u>**. Plaintiffs shall have the unilateral right in their sole discretion to individually terminate this Settlement Agreement, declare it null and void, and have no further obligations under this Settlement Agreement to Equifax if any of the following conditions subsequently occurs: (1) the Court fails or declines to grant Preliminary Approval pursuant to the terms of the Preliminary Approval Order; (2) the number of Actual Damage Settlement Class Members is greater than the estimate of class size stated herein by more than 5%, unless Equifax agrees to increase the gross amount of the Actual Damages Settlement Fund in proportion to the class size increase; (3) the Court materially modifies the terms of the Release or the Released Parties; (4) the Effective Date does not occur for any reason, including the entry of an order by any court that would require either material modification or termination of the Settlement Agreement or the Final Approval Order.

       **9.4**    Failure by the Court to approve attorneys' fees, costs or the service awards in the amounts sought, or at all, shall not be grounds for Plaintiffs to withdraw from the Settlement, and shall not delay the Settlement's becoming Final, and shall not delay the Effective Date of the releases.  Plaintiffs recognize and understand that the Court may not approve any service award to them whatsoever and that their support of the settlement is in no way contingent on any

service award.  Plaintiffs represent and warrant that no promises of any kind have been made to them with respect to any service award.

## X.     MISCELLANEOUS PROVISIONS

**10.1     Further Assurances**.   Each of the Parties shall execute all documents and perform all acts necessary and proper to effectuate the terms of this Agreement.

**10.2     Dispute Resolution**.  The Parties agree to meet and confer in good faith in regard to any dispute relating to the Settlement or to administration of the Settlement.  Any dispute that cannot be resolved by the Parties shall be submitted to United States Magistrate Judge David J. Novak for final decision.

**10.3     Entire Agreement**.  This Agreement constitutes the entire agreement between and among the Parties with respect to the Settlement.  This Agreement supersedes all prior negotiations and agreements, including, without limitation, all proposals made by the Mediator, all term sheets exchanged at or prior to the mediation and all correspondence relating thereto. The Parties, and each of them, represent and warrant that no other party or any agent or attorney of any of the Parties has made any promise, representation or warranty whatsoever not contained in this Agreement to induce them to execute the same.  The Parties, and each of them, represent and warrant that they have not executed this Agreement in reliance on any promise, representation or warranty not contained in this Agreement.

**10.4     Confidentiality**.  Any and all drafts of this Agreement and other settlement documents relating to the negotiations between the Parties will remain confidential and will not be disclosed or duplicated except as necessary to obtain preliminary and/or final Court approval. This provision will not prohibit the Parties from submitting this Agreement to the Court in order to obtain preliminary and/or final approval of the Settlement.  It is agreed that, within thirty (30)

DMSLIBRARY01\27694698.v1

days after the Effective Date, the originals and all copies of all confidential or highly confidential documents and/or information subject to the protective order in the Action shall be destroyed or returned to the designating Parties.

**10.5    Publication of Settlement.**    Neither Plaintiffs, Class Counsel, Equifax, nor Equifax's Counsel will affirmatively contact the news media; issue any press release; hold press conferences in any media; conduct on- camera, on-air or web-based interviews; or use any form of paid media or advertising to publicize, promote, or characterize the Settlement, the Parties, or the Parties' Counsel.  In response to inquiries from anyone other than a Class Member, Plaintiffs, Class Counsel, Equifax, and Equifax's counsel agree not to comment.   Class Counsel and Equifax's Counsel will describe their respective roles in marketing or other materials without characterizing the Settlement.

The restrictions of this paragraph will not prevent the disclosure of information concerning the proposed Settlement (a) to regulators, rating agencies, or financial analysts where a Party deems such disclosure desirable or necessary; and (b) to any other person or entity (such as experts, courts, and/or administrators) to which the Parties agree disclosure must be made in order to effectuate the terms and conditions of this Agreement.  If either Party receives a subpoena or other compulsory process seeking the production or other disclosure of confidential information related to this Action or this Settlement, the recipient of such a demand will give written notice (by hand, email, or facsimile transmission) to the non-recipient Party within five business days of receipt of such a demand (or if a response to the demand is due in less than five business days, at least 24 hours prior to the deadline for a response to the demand), identifying the information sought and enclosing a copy of the demand.  Absent agreement among the Parties or an order from a court of competent jurisdiction compelling production, the recipient of

DMSLIBRARY01\27694698.v1

such a demand must object to the production of the material on the grounds of the existence of this Settlement Agreement.  Nothing herein will be construed as requiring a challenge or appeal of any order requiring production of information related to this Action or this Settlement, or requiring that either Party subject itself to any penalties for noncompliance with any legal process or order. Compliance with any order directing production pursuant to a demand will not constitute a breach of this Settlement Agreement.

  10.6 **Successors and Assigns**.  The Agreement shall be binding upon, and inure to the benefit of, the heirs, successors and assigns of the Parties.

  10.7 **Competency of Parties**.  The Parties, and each of them, acknowledge, warrant, represent and agree that in executing and delivering this Agreement, they do so freely, knowingly and voluntarily, that they had an opportunity to and did discuss its terms and their implications with legal counsel, that they are fully aware of the contents and effect of the Agreement and that such execution and delivery is not the result of any fraud, duress, mistake or undue influence whatsoever.

  10.8 **Authority**.  The person signing this Agreement on behalf of Equifax warrants and represents that he or she is authorized to sign on its behalf.  The Plaintiff has personally signed this Agreement.

  10.9 **Modification**.  No modification of or amendment to this Agreement shall be valid unless it is in writing and signed by all Parties hereto unless stated expressly by both Parties on the record in the Action.

  10.10 **Construction**.  Each of the Parties has cooperated in the drafting and preparation of this Agreement.  Hence, in any construction to be made of this Agreement, the same shall not be construed against any of the Parties.  Before declaring any provision of this Agreement

DMSLIBRARY01\27694698.v1

invalid, the Court shall first attempt to construe the provision valid to the fullest extent possible consistent with applicable precedent so as to find all provisions of this Agreement valid and enforceable.  After applying this rule of construction and still finding a provision invalid, the Court shall thereupon interpret the invalid provision to the fullest extent possible to otherwise enforce the invalid provision.  The invalidity of any one provision shall not render this Agreement otherwise invalid and unenforceable unless the provision found to be invalid materially affects the terms of this Agreement after application of the rules of construction set forth in this paragraph.

**10.11   No Waiver**.  The failure of any of the Parties to enforce at any time any provision of this Agreement shall not be construed to be a waiver of such provision, or any other provision, nor in any way to affect the validity of this Agreement or any part hereof, or the right of any of the Parties thereafter to enforce that provision or each and every other provision.  No waiver of any breach of this Agreement shall constitute or be deemed a waiver of any other breach.

**10.12   Notices/Communications**.     All requests, demands, claims and other communications hereunder shall:  (a) be in writing; (b) be delivered by U.S. Mail and facsimile; (c) be deemed to have been duly given on the date received; and (d) be addressed to the intended recipients as set forth below:

> If to Plaintiff or the Settlement Class:
>
> Leonard A. Bennett, Esq.
> Consumer Litigation Associates
> 763 J Clyde Morris Boulevard, Suite 1A
> Newport News, VA 23601
> Fax:  (757) 930-3662
>
> If to Equifax:
>
> Phyllis B. Sumner, Esq.

King & Spalding, LLP
1180 Peachtree Street
Atlanta, GA 30309
Fax:  (404) 572-4600

Each of the Parties may change the address to which requests, demands, claims or other communications hereunder are to be delivered by giving the other Parties notice in the manner set forth herein.

**10.13** **Counterparts**.  This Agreement may be executed in one or more counterparts and, if so executed, the various counterparts shall be and constitute one instrument for all purposes and shall be binding on each of the Parties that executed it, provided, however, that none of the Parties shall be bound unless and until all Parties have executed this Agreement.  For convenience, the several signature pages may be collected and annexed to one or more documents to form a complete counterpart.  True and correct photocopies or electronic images (such as PDFs) of executed copies of this Agreement may be treated as originals.

[SIGNATURES APPEAR ON THE FOLLOWING PAGES]

DMSLIBRARY01\27694698.v1

EQUIFAX INFORMATION SERVICES, LLC

By: _____

Name: Troy Kubes

Title: VP - Legal

Dated: December 8, 2015

CONSUMER LITIGATION ASSOCIATES, P.C.

By: _____
    Leonard A. Bennett
    Attorney for Plaintiff and the Settlement Class

DMSLIBRARY01\27694698.v1

Dated: December 8, 2015

KING & SPALDING, LLP

By: _____

Zachary A. McEntyre
Attorney for Equifax Information Services, LLC