**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

DONNA K. SOUTTER, *for herself and on behalf
of other similarly situated individuals*

        Plaintiff,                Civil Action No. 3:10-cv-107

   v.

EQUIFAX INFORMATION SERVICES, LLC

        Defendant.

---

BRENDA ARNOLD and
JOYCE RIDGLEY, *on behalf of themselves
and all other similarly situated individuals*,

        Plaintiffs,              Civil Action No. 3:15-cv-460

v.

EQUIFAX INFORMATION
SERVICES, LLC

        Defendant.

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT AGREEMENT**

    Plaintiffs Donna K. Soutter, Brenda Arnold, and Joyce Ridgley ("Plaintiffs"), on behalf

of themselves and all others similarly situated (the "Class" as further defined below). Plaintiffs

entered into a Class Action Settlement ("Settlement Agreement" or "Agreement") with

Defendant Equifax Information Services, LLC ("Defendant" and, together with Plaintiffs, the

"Parties") and now seeks the Court's preliminary approval of the Settlement. In support of the

motion for an Order preliminarily approving the class action settlement, scheduling a fairness

hearing, certifying the proposed settlement class for purposes of the proposed class settlement,

appointing class counsel, and approving the form and manner of notice proposed to be sent to all members of the settlement class, the Plaintiffs submit this memorandum.

**INTRODUCTION**

On February 17, 2010, Plaintiff Donna K. Soutter filed a Complaint in the above-captioned class action (the "Lawsuit"), asserting class claims against Defendant for violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq*. More specifically, this case arises under 15 U.S.C. § 1681e(b) of the FCRA, which provides in relevant part:

> Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates.

15 U.S.C. § 1681e(b). Plaintiff Donna Soutter alleged that Equifax had a uniform policy of including Virginia state-court judgments in the consumer reports it prepares and sells, and listing the judgments as unpaid, even though its records do not contain information on the current status of those judgments, any of which may have been satisfied, vacated, or appealed since the date Equifax last received the data. As a result, a class of consumers had an inaccurate consumer report issued about them by Equifax—each of these consumer reports showed an unpaid judgment when in fact the court records showed that the judgment had been satisfied, vacated, or appealed at least thirty days before Equifax's report was prepared.[1]

As the Court is aware and the docket shows, this case have been vigorously litigated for over five and a half years. The Parties engaged in significant written and third-party discovery, conducted depositions, and engaged in extensive motions practice before Plaintiff Soutter filed her first class certification motion. After the Court granted that motion, Equifax filed an

---

[1] After the initial appeal reversing the Court's original Order granting class certification (*Soutter, et al. v. Equifax Information Services, LLC.,* 498 F. App'x (4th Cir. 2012), Souter narrowed the alleged class definition alleged in her case. Thereafter Brenda Arnold and Joyce Ridgley filed a related action against Equifax on August 5, 2015, alleging similar claims to the ones asserted by Ms. Soutter, and encompassing the full class originally pled. The Parties are collaterally moving to consolidate these two cases.

interlocutory appeal that was fully briefed and argued at the appellate level. After the Fourth Circuit overturned the certification decision and remanded the case, discovery was reopened. Plaintiff Soutter took numerous additional depositions and conducted other third-party discovery. Both parties filed and fully briefed additional motions. An amended complaint and two additional class certification motions were filed and briefed. Eventually, after a year of highly contentious litigation, this Court again certified a class, a decision which Equifax promptly appealed. However, the Fourth Circuit denied Equifax's request and the case was set for trial in February 2016, almost six years after the case was filed.

At all times during that six-year period, Equifax vigorously denied all claims asserted against it in the actions. It contended that its past and current procedures with respect to collecting and reporting public records were reasonable and compliant with the FCRA and certainly did not constitute a willful violation of the statute. As discussed above, Equifax's defense was vigorous and included defending against multiple class certification attempts and two appellate petitions. Throughout the case, Equifax was prepared to take this case to trial on the merits, and was not open to mediation or settlement of the case until its most recent class certification appeal was unsuccessful. Even then, Equifax was still prepared to try this case on its merits, exposing Plaintiffs to an uncertain outcome, particularly regarding the amount of damages available to the class.

Plaintiffs, Class Counsel, Equifax, and Equifax's Counsel engaged in extensive, good faith arm's-length negotiations under the supervision of Rodney Max, a skilled mediator with prior FCRA experience. The original in-person mediation session was followed by a substantial number of additional telephonic and written negotiations both through Mr. Max as well as directly between lead counsel.  This extended effort finally resulted in an agreement on the

principal terms of the settlement. Plaintiffs and their counsel have concluded that the settlement is fair, reasonable, adequate, and in the best interests of the Class based upon their investigation and discovery, and taking into account the sharply contested issues involved, the uncertainty and cost of further prosecution of the Action, and the substantial benefits to be received by the Settlement Class pursuant to the Settlement Agreement.

Pursuant to Fed. R. Civ. P. 23, the Plaintiffs now seek preliminary approval of the proposed class action settlement of the FCRA claims. Specifically, the Plaintiffs request that the Court preliminarily certify the proposed class and the proposed class settlement by entering the proposed Order of Preliminary Approval of Class Action Settlement (the "Preliminary Approval Order").

## PROPOSED CLASS ACTION SETTLEMENT

**A.      Settlement Terms**

The Parties settled the FCRA claims on a class basis ("Proposed Settlement") upon these basic terms:

1. Equifax will agree to remove all judgments entered in Virginia General District Courts from the credit files of the class members and all other individuals (including non-class members) who were the subject of such judgments for a period of no less than five years;

2. All class members will automatically receive four years of Equifax's leading credit monitoring service that it sells for $14.95 a month (a total value of $717.60) or may elect to forgo the credit monitoring benefit and instead receive a $180 cash payment. (Equifax Credit Watch Gold includes electronic monitoring and alerts of both the consumer's Equifax credit file and the credit score based on that file, unlimited access to and copies

of the consumer's Equifax file and credit report, and a live agent available 24-hours a day).

3. A $3 million settlement fund is created to provide additional compensation to Settlement Class Members who are most likely to have suffered credit injury. Class members are eligible to make claims from the cash fund by verifying that (i) Equifax issued a credit report about him or her that inaccurately included an open Virginia General District Court judgment as owing when it was at that time vacated, dismissed, or appealed; or (ii) he or she made a written demand or filed suit against Equifax based upon the allegation that it furnished a credit report containing an inaccurately reported Virginia General District Court judgment. The Settlement Class Members that make a valid claim will receive pro rata payments from the fund without any cap on their payment;

4. To accommodate the possibility that some consumers may claim larger than typical actual damages, Settlement Class Members who contend that they incurred actual damages as a result of Equifax inaccurately reporting a Virginia General District Court judgment may reserve claims for actual damages by submitting a Reservation of Actual Damages form. Settlement Class Members who reserve their actual damages claim may not recover outside the Settlement, under any circumstances, any damages other than actual damages. Reserving class members still expressly release, waive, and agree not to pursue any additional damages or penalties, including (but not limited to) punitive damages and statutory damages. Any amount of money an Actual Damages Settlement Class member recovers from the Actual Damages Settlement Fund may offset Equifax's obligation under any actual damages judgment later obtained as a result of a Settlement

Class Member's prosecution of a claim he or she reserved by a Reservation of Actual Damages;

5. The Settlement is narrowly tailored to settle and release only claims related to the Virginia General District Court judgments; and

6. The cost of Notice and Administration and Plaintiffs' counsel's attorneys' fees will be paid by Equifax, separate and apart from the settlement fund.

**B.      Certification of a Fed. R. Civ. P. 23(b)(3) Settlement Class.**

The Parties seek preliminary certification of a Fed. R. Civ. P. 23(b)(3) class, defined in the Settlement Agreement and proposed Agreed Preliminary Approval Order as follows:

> All consumers in the United States whose Equifax File contained a Virginia General District Court civil judgment, between January 1, 2003 and the date of preliminary approval of the Settlement, that was reporting as an open judgment, if at least 31 days prior to delivery of the consumer report, and on the date of delivery of the consumer report, such judgment had been satisfied, vacated, dismissed, or appealed as shown by the VSC Master File.

(Ex. 1, ¶ 2.20).

**C.      <u>Third-Party Settlement Administrator</u>**

Plaintiffs' counsel asks the Court to appoint and hire a third party class action settlement administrator (the "Settlement Administrator"), to oversee the administration of the settlement and the notification to Class Members. All costs and expenses for the Settlement Administrator shall be paid directly from Equifax and shall not be deducted from the Settlement Fund, pursuant to the Settlement Agreement ¶ 6.1. The Settlement Administrator will be responsible for mailing the approved class action notices and claim forms to the Class Members. A separate escrow account will be established by the Settlement Administrator for purposes of depositing the settlement funds after payment of all settlement costs for the sole purpose of issuing settlement checks to Class Members who submit claims. If this Class Action Settlement receives final

approval, the Class Administrator will verify that the settlement checks were mailed to the Class Members who made a valid claim.

### D.    Mailed Notice

Equifax is responsible for providing the last known address and identity of each Class Member.  As part of this process, the Parties agreed to a protective order permitting the disclosure of Class Member data and requiring the Settlement Administrator and Class Counsel to keep the Class Member information confidential. After completing the address updating process, in the manner prescribed in the Settlement Agreement, the Settlement Administrator will send, via First Class U.S. mail, the Court-approved written notice of the settlement to each Class Member at his or her last known valid address. If any notice is returned with a new address, the notice will be re-mailed by the Settlement Administrator to the new address. The notice shall be in substantially the form attached to the Settlement Agreement. In addition to the Mail Notice plan, the Settlement Administrator will establish a Settlement Website, containing relevant information such as the Settlement Agreement, the Mail Notice, Claim Form, Preliminary Approval Order, and contact information for the Settlement Administrator. Ex. 1, ¶ 6.6.    Finally, in accordance with the Court's instructions in an earlier case, the Parties have agreed that the Settlement Administrator will also send a notice of approval after the Final Fairness hearing in order to deliver the Credit Monitoring activation codes to each class member and permit a final set of claims or reservation of actual damage requests.

### E.    Class Counsel's Fees, Costs, and Expenses.

Defendant agreed not to contest Plaintiffs' counsel's motion for attorneys' fees and expenses as the successful party in the litigation, subject to court approval and for settlement purposes only. Plaintiffs may also ask the Court for service awards. Ex.1, ¶ 4.

**ARGUMENT**

"The class-action device was designed as 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'" *Gen. Tel. Co. of S.W. v. Falcon*, 457 U.S. 147, 155 (1982) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700-01 (1979)). "Class relief is 'peculiarly appropriate' when the 'issues involved are common to the class as a whole' and when they 'turn on questions of law applicable in the same manner to each member of the class.'" *Id*. "For in such cases, 'the class-action device saves the resources of both the courts and the parties by permitting an issue potentially affecting every [class member] to be litigated in an economical fashion under Rule 23.'" *Id.*

There is a strong judicial policy in favor of settlement, in order to conserve scarce resources that would otherwise be devoted to protracted litigation. *See In re MicroStrategy, Inc. Sec. Litig.,* 148 F. Supp. 2d 654, 663 (E.D. Va. 2001); *see also Ehrheart v. Verizon Wireless,* 609 F.3d 590, 595 (3d Cir. 2010) (there is an "especially strong" presumption in favor of voluntary settlements in "class actions . . . where substantial judicial resources can be conserved by avoiding formal litigation."); *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977) (same); *Van Bronkhorst v. Safeco Corp.,* 529 F.2d 943, 950 (9th Cir. 1976) (same); 2 Alba Conte & Herbert Newberg, *Newberg on Class Actions* § 11.41 (4th ed. 2002) ("The compromise of complex litigation is encouraged by the courts and favored by public policy."). This includes the "strong initial presumption" in class action cases "that the compromise is fair and reasonable." *In re MicroStrategy*, 148 F. Supp. 2d at 663 (internal quotation marks omitted). Proposed settlements must, nevertheless, satisfy the requirements of Rule 23. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 592 (1997).

Rule 23 "states that '[a] class action may be maintained' if two conditions are met: The suit must satisfy the criteria set forth in subdivision (a) (i.e., numerosity, commonality, typicality, and adequacy of representation), and it also must fit into one of the three categories described in subdivision (b)." *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.,* 599 U.S. 393, 398 (2010) (quoting Fed. R. Civ. P. 23). Although the Defendant specifically denies all claims asserted against it, the Rule 23(a) and (b) elements have already been established by prior Order of the Court. (Doc. 224).

## A. __The Rule 23(a) Requirements are Satisfied.__

Rule 23(a) sets forth four basic requirements for any class action—numerosity, commonality, typicality, and adequacy. This Lawsuit satisfies the Rule 23(a) prerequisites. Each Rule 23(a) factor is considered in turn below.

### 1. __Numerosity__

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." There is no set minimum number of potential class members that fulfills the numerosity requirement. *See Holsey v. Armour & Co.*, 743 F.2d 199, 217 (4th Cir. 1984) (citing *Kelley v. Norfolk & Western Ry. Co.*, 584 F.2d 34 (4th Cir. 1978)). However, where the class numbers 25 or more, joinder is usually impracticable. *Cypress v. Newport News General & Nonsectarian Hosp. Ass'n,* 375 F.2d 648, 653 (4th Cir. 1967) (18 class members sufficient); *cf. Kennedy v. Va. Polytechnic Inst. & State Univ.*, 2010 U.S. Dist. LEXIS 101491, at *6 (W.D. Va. Sept. 23, 2010) ("it is exceedingly rare to certify classes with less than 25 members").

The numerosity requirement is met here. There are approximately 90,000 class members, including the named Plaintiffs as class representatives. Joinder of this many individuals is neither possible nor practical, so the first prong of the certification test has been

met. *See Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417, 425 (4th Cir. 2003) (finding that a class of 1,400 members "easily satisfied Rule 23(a)(1)'s numerosity requirement").

### 2. Commonality

Rule 23(a)(2) requires that the court find that "there are questions of law or fact common to the class." "Commonality is satisfied where there is one question of law or fact common to the class, and a class action will not be defeated solely because of some factual variances in individual grievances." *Jeffreys v. Commc'ns Workers of Am., AFL-CIO*, 212 F.R.D. 320, 322 (E.D. Va. 2003). "Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury.'" *Wal-Mart Stores, Inc. v. Dukes*, ___ U.S. ___, 131 S. Ct. 2541, 2551 (2011) (quoting *Falcon*, 457 U.S. at 157). And the common issue must be such that "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* The standard is a liberal one that cannot be defeated by the mere existence of some factual variances in individual grievances among class members. *Jeffreys*, 212 F.R.D. at 322; *Mitchell-Tracey v. United Gen. Title Ins. Co.*, 237 F.R.D. 551, 557 (D. Md. 2006) (finding that factual differences among class members will not necessarily preclude certification "if the class members share the same legal theory.").

Here, as the Court has already found, by definition, members of the Settlement Class share the same questions of law and fact. The members of the Settlement Class are alleged to be the victims of policies and procedures whereby Defendant, in violation of the FCRA, failed to timely update judgment dispositions on consumers' consumer files and instead continued to incorrectly report them as outstanding. The theories of liability as to all Settlement Class members, therefore, arises from the same practices and present basic questions that are common to all members of the Settlement Class.

### 3. Typicality

In the typicality analysis, "[a] class representative must be part of the class and possess the same interest and suffer the same injury as the class members." *Lienhart v. Dryvit Sys., Inc.,* 255 F.3d 138, 146 (4th Cir. 2001). "Nevertheless, the class representatives and the class members need not have identical factual and legal claims in all respects. The proposed class satisfies the typicality requirement if the class representatives assert claims that fairly encompass those of the entire class, even if not identical." *Fisher v. Va. Elec. and Power Co.,* 217 F.R.D. 201, 212 (E.D. Va. 2003). "The typicality requirement mandates that Plaintiffs show (1) that their interests are squarely aligned with the interests of the class members and (2) that their claims arise from the same events and are premised on the same legal theories as the claims of the class members." *Jeffreys*, 212 F.R.D. at 322. Commonality and typicality tend to merge because both of them "serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Wal-Mart*, 131 S. Ct. at 2551 n.5.

Here, Plaintiffs' claims arise from Defendant's practices concerning the inaccurate reporting of public record information on consumers' consumer files after the judgment was satisfied, vacated, or appealed. As discussed in the previous section, these are the same claims advanced on behalf of all of the Settlement Class Members. Plaintiffs are Settlement Class Members. Plaintiffs' claims thus rest on the same legal and factual issues as those of the Settlement Class Members. Consequently, in seeking to prove their claims, Plaintiffs will necessarily advance the claims of Settlement Class Members. This is the hallmark of typicality. *See Deiter v. Microsoft Corp.*, 436 F.3d 461, 466 (4th Cir. 2001) (citing Fed. R. Civ. P.

23(a)(3)).[2]

### 4.    Adequacy of Representation

"Finally, under Rule 23(a)(4), the class representatives must adequately represent the interests of the class members, and legal counsel must be competent to litigate for the interests of the class." *Jeffreys,* 212 F.R.D. at 323. "Basic due process requires that the named plaintiffs possess undivided loyalties to absent class members." *Fisher*, 217 F.R.D. at 212 (citing *Broussard v. Meineke Disc. Muffler Shops,* 155 F.3d 331, 338 (4th Cir. 1998)).

The adequacy of representation requirement is met here. Plaintiffs understand and have accepted the obligations of a class representative, have adequately represented the interests of the putative class, and have retained experienced counsel who have handled numerous consumer-protection class actions. Plaintiffs' lead counsel has effectively handled numerous consumer-protection and complex class actions, typically as lead or co-lead counsel. *Soutter v. Equifax Info. Servs., LLC*, 2011 U.S. Dist. LEXIS 34267, at *28 (E.D. Va. Mar. 30, 2011) (stating "the Court finds that Soutter's counsel is qualified, experienced, and able to conduct this litigation. Counsel is experienced in class action work, as well as consumer protection issues, and has been approved by this Court and others as Class Counsel in numerous cases."); *James v. Experian Info. Solutions, Inc.*, No. 3:12CV902 (E.D. Va. Oct. 29, 2014) (ruling on final approval in open court and finding "experience of counsel on both sides is at the top level of representation in cases of this sort and, indeed, perhaps beyond that"). [Exhibit "A" – Declaration of Leonard A. Bennett].

Plaintiffs have no antagonistic or conflicting interests with the Class Members. Both Plaintiffs and the Class Members seek statutory and punitive damages for Defendant's

---

[2] Further, through the addition of Plaintiffs Arnold and Ridgley, neither or which made a dispute before the offending Equifax credit report, Plaintiffs collectively represent the full original class pled in Soutter's opening complaint – not merely the class certified solely as to Donna Soutter's facts.

alleged unlawful actions. The Plaintiffs are members of the Settlement Class. Considering the identity of claims, there is no potential for conflicting interests in this action. Accordingly, the class is adequately represented to meet Rule 23's requirements.

**B.    The Rule 23(b) Requirements are Satisfied.**

"In addition to satisfying Rule 23(a)'s prerequisites, parties seeking class certification must show that the action is maintainable under Rule 23(b)(1), (2), or (3)." *Amchem*, 521 U.S. at 614.  The Class provides for the provision of benefits to its members, such as credit-report monitoring and monetary payments and therefore must meet the requirements of Rule 23(b)(3): that questions of law or fact common to the members of the Class predominate over any questions affecting only individual members and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. *Eisen v. Carlisle Jacquelin*, 417 U.S. 156 (1974).

**1.    The Class Should Be Certified Under Rule 23(b)(3)**

Rule 23(b)(3) actions may be permitted in "situations in which class-action treatment is not as clearly called for, but may nevertheless be convenient and desirable." *Id*. at 615 (internal quotation marks omitted).  To certify such a class, the court must find that "the questions of law or fact common to the members of the class *predominate* over any questions affecting only individual members, and that a class action is *superior* to other available methods for the fair and efficient adjudication of the controversy."  Fed. R. Civ. P. 23(b)(3) (emphasis added). Preliminary certification of the proposed class is appropriate under Rule 23(b)(3).   The predominance and superiority factors are addressed below.

**a.    _Predominance_**

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently

cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623. "This analysis presumes that the existence of common issues of fact or law have been established pursuant to Rule 23(a)(2); thus, the presence of commonality alone is not sufficient to fulfill Rule 23(b)(3). In contrast to Rule 23(a)(2), Rule 23(b)(3) focuses on the relationship between the common and individual issues." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998).

Moreover, the Fourth Circuit has held that, even when present, individualized damage determinations may not preclude the conclusion that common questions of law and fact predominate. *See, e.g.*, *Ward v. Dixie Nat. Life. Ins. Co.*, 595 F.3d 164, 180 (4th Cir. 2010); *Gunnells*, 348 F.3d at 428. Instead, "[w]hen common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." 7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice & Procedure* § 1778 (2d ed. 1986).

The predominance requirement is satisfied here because the essential factual and legal issues regarding the Settlement Class Members' claims are common, *e.g.*, whether: (1) Defendant failed to timely update judgment information of the Settlement Class Members' consumer reports; (2) Defendant's failure to timely update judgment disposition information violated the FCRA; (3) the Defendant acted knowingly and intentionally or with conscious disregard of the consumers' rights; and (4) the appropriate amount of damages for the Defendant's violation of the FCRA. Because these issues are common, and indeed are determinative of the Rule 23(b)(3) Settlement Class Members' claims, they far outweigh the importance of any individual issues particular to Settlement Class Members.

This conclusion accords with the findings of courts examining predominance in the context of similar consumer claims, alleging that plaintiffs were the victims of common practices. *See, e.g.*, *Talbott* ("Here, common questions predominate because of the standardized nature of [defendant's] conduct . . . ") (Rule 23(b)(3) is normally satisfied where there is an essential common factual link, such as standardized documents and practices); *see also Amchem*, 521 U.S. at 625 (noting that "[p]redominance is a test readily met in certain cases alleging consumer or securities fraud… ."). In this case, the allegations are that the Defendant failed to timely update judgment dispositions as required by 15 U.S.C. § 1681e(b). Plaintiffs' and the putative class members' claims are identical, and all issues are subject to the same proof. Proof of the class claims will leave nothing for Plaintiffs to prove individually. Class-wide claims predominate over any individual claims.

b. ***Superiority***

The superiority inquiry requires that a class action be "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). When determining whether a class action is superior, the Court should consider the following factors:

> (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

*Jeffreys,* 212 F.R.D. at 323; *see also* Fed. R. Civ. P. 23(b)(3)(A)-(D).

"In determining superiority, courts also consider the anticipated amount of recovery for each plaintiff. Class actions are particularly appropriate where multiple lawsuits would not be justified because of the small amount of money sought by the individual plaintiffs." Advisory

Committee's Note to 1996 Amendment to Rule 23. In other words, a class action is superior when potential damages may be too insignificant to provide class members with incentive to pursue a claim individually. Thus, the class mechanism permits a large group of claimants to have their claims adjudicated in a single lawsuit. The same is true here. Common issues predominate among the Settlement Class. Further, the individual claims of the Settlement Class Members are small, thus providing little incentive for individual litigation, and the Settlement Class Members are dispersed over multiple states.[3] *See also Amchem*, 521 U.S. at 617 ("The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights.") (quoting *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (1997)). A class action in this case is superior to other available methods for the fair and efficient adjudication of the controversy because a class resolution of the issues described above outweighs the difficulties in management of separate and individual claims and allows access to the courts for those who might not gain such access standing alone, particularly in light of the relatively small amount of the actual and statutory damage claims that would be available to individuals. Moreover, such a certification permits individual claimants to opt-out and pursue their own actions separately if they believe they can recover more in an individual suit. Thus, both predominance and superiority are satisfied. "The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights." *Bush*, 2012 WL 1016871, at *11 (quoting *Amchem*, 521 U.S. at 617). Rule 23(b)(3) was designed for situations such as this, where the

---

[3] Manageability need not be considered in certifying a settlement class. *See Amchem*, 521 U.S. at 620 (1997) (stating that a trial court may disregard management issues in certifying a settlement class).

amount in controversy for any individual claimant is small, but injury is substantial in the aggregate.

The class action procedure is the superior mechanism for dispute resolution in this matter. The alternative mechanism, permitting individual lawsuits for a small statutory penalty, would be costly and duplicative. Through the class action procedure, these common claims can be brought in one proceeding, thereby eliminating unnecessary duplication, preserving limited judicial resources, and achieving economies of time, effort, and expense.

**C.** **The Proposed Settlement is Fundamentally Fair, Reasonable, and Adequate.**

With the Rule 23(a) and (b) elements previously established by the Court in certifying the class, it is still incumbent upon the Court to decide whether the proposed settlement is fair, reasonable and adequate. Although pretrial settlement of class actions is favored, "Rule 23(e) provides that 'a class action shall not be dismissed without the approval of the court." *In re Jiffy Lube Sec. Litig.*, 927 F.2d 155, 158 (4th Cir. 1991) (citations omitted). "To this end, 'the role of the Court reviewing the proposed settlement of a class action under Fed. R. Civ. P. 23(e) is to assure that the procedures followed meet the requirements of the Rule and . . . to examine the settlement for fairness and adequacy.'" *In re MicroStrategy*, 148 F. Supp. 2d at 663.

"[T]he Fourth Circuit [has] adopted a bifurcated analysis, separating the inquiry into a settlement's 'fairness' from the inquiry into a settlement's 'adequacy.'" *Id*. These safeguards ensure that "a proposed class has sufficient unity so that absent members can fairly be bound by decisions of class representatives." *Amchem*, 521 U.S. at 621; *see also In re Jiffy Lube*, 927 F.2d at 158 ("The primary concern addressed by Rule 23(e) is the protection of class members who rights may not have been given adequate consideration during the settlement negotiations."). In this case, each set of factors weighs in favor of approving the Settlement.

### 1. The Proposed Settlement is Fair.

When evaluating the fairness of a settlement, the Court must evaluate the settlement against the following criteria: "(1) the posture of the case at the time settlement was proposed, (2) the extent of discovery that had been conducted, (3) the circumstances surrounding the negotiations, and (4) the experience of counsel." *In re Jiffy Lube*, 927 F.2d at 159. The fairness inquiry ensures that "the settlement was reached as a result of good-faith bargaining at arm's length, without collusion." *Id*. These factors point persuasively to the conclusion that the settlement here is fair.

The settlement was reached after significant litigation of this case. The Parties engaged in significant discovery, took numerous depositions, conducted significant motions practice, completed two rounds of appellate briefing, and engaged in extensive third-party discovery. Further, the systems and procedures of Equifax's public records vendor, LexisNexis, were fully discovered through written document requests and interrogatories, third party subpoenas and numerous depositions.

The parties mediated the claims privately before an experienced mediator with prior FCRA experience, Rodney Max. The settlement was reached at arm's-length after an in-person mediation session in Richmond, Virginia, and by countless written and telephonic exchanges, with literally years of back-and-forth negotiations and both sides making substantial concessions.

Pursuant to the settlement, the putative class members are guaranteed a substantial recovery with a strong combination of cash payments, deletion of the public-record information from their credit reports, and credit monitoring for four years. The settlement is narrowly drawn to limit the release to matters regarding the Virginia civil judgments. Other public record FCRA claims are expressly excluded. And in the event a class member asserts unusually large actual

damages, he or she may expressly reserve and preserve those claims while still participating in the primary settlement benefits. Particularly considering the relief obtained here – the complete removal of all public record Virginia judgment information – this settlement is, in a word, unprecedented. Plaintiffs' counsel carefully monitor FCRA classes filed and settled across the country and can represent to the Court without qualification that such a sweeping landscape change has never been seen before in the history of FCRA class litigation.

Given the substantial relief obtained for the class members, when contrasted against the risks associated with litigating this matter, the proposed settlement is fair and appropriate for approval. *See S. Carolina Nat'l Bank v. Stone*, 139 F.R.D. 335, 339 (D.S.C. 1991) (concluding fairness met where "discovery was largely completed as to all issues and parties," settlement discussions "were, at times, supervised by a magistrate judge and were hard fought and always adversarial," and those negotiations "were conducted by able counsel" with substantial experience in the area of securities law).

### 2. The Proposed Settlement is Adequate.

In assessing the adequacy of the settlement, the Court should look to the following factors: "(1) the relative strength of the plaintiffs' case on the merits, (2) the existence of any difficulties of proof or strong defenses the plaintiffs are likely to encounter if the case goes to trial, (3) the anticipated duration and expense of additional litigation, (4) the solvency of the defendants and the likelihood of recovery on a litigated judgment, and (5) the degree of opposition to the settlement." *In re Jiffy Lube*, 927 F.2d at 159.

While it is too early to address the last factor, *i.e.*, the reaction of the Class Members to the proposed settlement, application of the other relevant factors confirms that the proposed settlement is adequate and should be preliminarily approved.

### i. The Relative Strength of the Plaintiffs' Case and the Difficulty in Proving Liability.

As noted, Defendant has disputed Plaintiffs' claims since the inception of this case and has raised a number of defenses to Plaintiffs' class claims. Given the Parties' arguments, the fact that some of the above issues are matters of first impression in Virginia and in the federal courts, the potential risks and expenses associated with continued prosecution of the Lawsuit, the probability of appeals, the certainty of delay, and the ultimate uncertainty of recovery through continued litigation, the proposed settlement is adequate.

### ii. The Anticipated Duration and Expense of Additional Litigation

Aside from the potential that either side will lose at trial, the Parties anticipate incurring substantial additional costs in pursuing this litigation further. The level of additional costs would significantly increase as Plaintiffs began their preparations for trial. Thus, the likelihood of substantial future costs favors approving the proposed settlement. This factor weighs heavily in favor of settlement for the Class as the removal of the Virginia General District Court judgments from the credit reports of every class member will end the potential credit obstacles many class members may face. (This is true even if Equifax had updated judgments to show them in their proper status as the Settlement will cause the removal of the entire judgment item – not merely require its update).

### iii. The Solvency of the Defendant and the Likelihood of Recovery

Defendant is solvent and could pay a reasonable judgment.

### iv. The Proposed Class Notice is the Best Notice Practicable under the Circumstances

"Adequate notice is critical to court approval of a class settlement under Rule 23(e)." *Hanlon*, 150 F.3d at 1025. Pursuant to Rule 23(c)(2)(B):

The notice [for Rule 23(b)(3) classes] must concisely and clearly state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on class members under Rule 23(c)(3).

Further, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by" the proposed settlement. Fed. R. Civ. P. 23(e)(1).

Individual notice is being provided directly to each Class Member. In addition, Class Counsel will establish a website with relevant information concerning the case and the Agreement. Before sending the written notice, Defendant and the Settlement Administrator will confirm and, if necessary, update the addresses for the Class Members through the standard methodology the administrator currently uses to update addresses so as to ensure the last known address for each Class Member is used.

The Parties propose that any Class Member who desires to be excluded from the class send a written request for exclusion to the class administrator with a postmark date no later than the date listed in the class notice to file written objections. The administrator shall provide a list of the names of each Class Member who submitted a timely exclusion to Class Counsel after the deadline passes, and the parties shall include a copy of the list along with the Motion for Final Approval of Class Action Settlement. Any Class Member who submits a valid and timely request for exclusion shall not be bound by the terms of this Agreement. Further, any Class Member who desires to enter an appearance in this case may do so.

The Class Members also have the opportunity to object to the proposed settlement. Any Class Member who intends to object to the fairness of this settlement must file a written objection with the Court after the Notice is mailed to the Class Members, and provide a copy to

Class Counsel and counsel for Defendant. The class members will be notified that they may enter an appearance through an attorney at their own expense if the member so desires.

Further, Plaintiffs have negotiated and Equifax has agreed to fund the sending of a second notice after final approval.

The proposed notice is appropriate and complies with both Rule 23(c)(2)(B) and (e)(1). The notice contains all of the required Rule 23 information and properly advises the Class Members of their rights. The proposed method for notifying the Class Members thus satisfies both Rule 23 and due process and constitutes the best notice practicable under the circumstances.

## CONCLUSION

The Court has previously certified the Class. For the foregoing reasons, Plaintiffs respectfully request the Court grant the consent motion and enter the Preliminary Approval Order:

(1) preliminarily approving a proposed class settlement,

(2) scheduling a fairness hearing.

(3) certifying the Settlement Class for purposes of the proposed class settlement,

(4) appointing Class Counsel, and

(5) approving the form and manner of notice proposed to be sent to all members of the Settlement Class.

Respectfully submitted,
**PLAINTIFFS,**
*individually and on behalf of all*
*others similarly situated*


By: _____/s/_____
           Of Counsel

Matthew J. Erausquin, VSB No. 65434
Casey S. Nash, VSB No. 84261
*Counsel for the Plaintiffs*
CONSUMER LITIGATION ASSOCIATES, P.C.
1800 Diagonal Road, Suite 600
Alexandria, VA 22314
Tel:    (703) 273-7770
Fax:    (888) 892-3512
matt@clalegal.com
casey@clalegal.com

Leonard A. Bennett, VSB No. 37523
Susan M. Rotkis, VSB No. 40693
*Counsel for the Plaintiffs*
CONSUMER LITIGATION ASSOCIATES, P.C.
763 J. Clyde Morris Blvd., Suite 1-A
Newport News, VA 23601
Tel:    (757) 930-3660
Fax:    (757) 930-3662
lenbennett@clalegal.com
srotkis@clalegal.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 8th day of December, 2015, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

John W. Montgomery, Jr.
JOHN W. MONTGOMERY, JR.
ATTORNEY, PLC
2116 Dabney Road, Suite A-1
Richmond, Virginia 23230
Tel:    (804) 355-8744
Fax:    (804) 355-8748
Email: jmontgomery@jwm-law.com

Barry Goheen
*PRO HAC VICE*
King & Spalding (GA-NA)
1180 Peachtree St NE
Atlanta, GA 30309-3521
Tel:    (404) 572-4618
Fax:    (404) 572-5142
Email: bgoheen@kslaw.com

*Counsel for the Defendant*

John Anthony Love
*PRO HAC VICE*
King & Spalding (GA-NA)
1180 Peachtree St NE
Atlanta, GA 30309-3521
Tel:    (404) 215-5913
Fax:    (404) 572-5100
Email: tlove@kslaw.com

Keasha Ann Broussard
*PRO HAC VICE*
King & Spalding (GA-NA)
1180 Peachtree St NE
Atlanta, GA 30309-3521
Tel:    (404) 215-5725
Fax:    (404) 572-5100
Email: abroussard@kslaw.com

_____/s/_____
Leonard A. Bennett, VSB No. 37523
CONSUMER LITIGATION ASSOCIATES, P.C.
763 J. Clyde Morris Blvd., Suite 1-A
Newport News, VA 23601
Tel:    (757) 930-3660
Fax:    (757) 930-3662
Email:  lenbennett@clalegal.com